**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION**

| | |
|---|---|
| JILL DILLARD, JESSE SEEWALD, ) <br> JINGER VUOLO and JOY DUGGAR, ) <br>     Plaintiffs, ) <br> ) <br>   and ) <br> ) <br> JOSHUA DUGGAR, ) <br>     Plaintiff-Intervenor, ) <br> ) <br>     v. ) <br> ) <br> CITY OF SPRINGDALE, ARKANSAS; ) <br> WASHINGTON COUNTY, ARKANSAS; ) <br> KATHY O'KELLEY, in her individual and ) <br> official capacities; ) <br> ERNEST CATE, in his individual and ) <br> official capacities; ) <br> RICK HOYT, in his individual and ) <br> official capacities; ) <br> STEVE ZEGA, in his official capacity; ) <br> BAUER PUBLISHING COMPANY, L.P.; ) <br> BAUER MAGAZINE, L.P.; ) <br> BAUER MEDIA GROUP, INC. ) <br> BAUER, INC.; ) <br> HEINRICH BAUER NORTH AMERICA, INC.) <br> BAUER MEDIA GROUP USA, LLC, and ) <br> DOES 1-10, inclusive, ) <br>     Defendants. ) | Case No. 5:17-cv-05089-TLB |

**COMPLAINT IN INTERVENTION**

**INTRODUCTION**

1. Plaintiff-Intervenor JOSHUA DUGGAR brings this action seeking injunctive relief, compensatory damages, and punitive damages against Defendants CITY OF SPRINGDALE, ARKANSAS; WASHINGTON COUNTY, ARKANSAS; KATHY O'KELLEY in her individual and official capacities; ERNEST CATE in his individual and official capacities; RICK HOYT in his individual and official capacities; STEVE ZEGA in his official capacity;

BAUER PUBLISHING COMPANY, L.P.; BAUER MAGAZINE, L.P.; BAUER MEDIA GROUP, INC.; BAUER,INC.; HEINRICH BAUER NORTH AMERICA, INC.; BAUER MEDIA GROUP USA, LLC; and DOES 1-10 (collectively "Defendants") for violating Plaintiff-Intervenor's civil and other rights under the Fourteenth Amendments of the U.S. Constitution and Arkansas law.

2.     In December 2006, investigators with the Springdale (Arkansas) Police Department initiated an investigation (the "Investigation") into allegations that Plaintiff-Intervenor, a minor at the time, had allegedly engaged in inappropriate sexual contact with other minors, events which occurred several years prior in 2002 and 2003. As part of the Investigation, police investigators interviewed all of the subjects. The investigators advised Plaintiff-Intervenor that any statements given to investigators would remain confidential under Arkansas law and never disclosed to the public. Plaintiff-Intervenor's parents, Jim Bob and Michelle Duggar, and other minor children also provided interviews under the promise of confidentiality. The contents of the Plaintiff-Intervenor's and his parents' interviews were documented in the CITY OF SPRINGDALE, ARKANSAS, Police Department ("Police Department") official Offense Report and the WASHINGTON COUNTY, ARKANSAS, Sheriff's Office ("Sheriff's Office") official Incident Report.

3.     Following the interviews, a Family In Need of Services ("FINS") petition was filed by the Washington County Prosecutor's Office at the request of the Police Department. However, no charges were brought.

4.     Nearly ten years later, Defendants BAUER PUBLISHING COMPANY, L.P.; BAUER MAGAZINE, L.P.; BAUER MEDIA GROUP, INC.; BAUER, INC.; HEINRICH BAUER NORTH AMERICA, INC.; and BAUER MEDIA GROUP USA, LLC (collectively,

"IN TOUCH DEFENDANTS"), seeking to exploit the investigation into Plaintiff-Intervenor's status as a possible underage juvenile for their own gain, began inquiring with the Police Department and the Sheriff's Office about the Investigation. On or about May 15, 2015, the IN TOUCH DEFENDANTS submitted Freedom of Information Act requests seeking copies of the Offense Report, Incident Report, and any other documentation related to the Investigation.

5.      In response to the IN TOUCH DEFENDANTS' requests, Defendant KATHY O'KELLEY ("O'KELLEY"), then Chief of the Police Department, and Defendant ERNEST CATE ("CATE"), Springdale City Attorney, in concert with others known and unknown to the Plaintiff-Intervenor, hastily and improperly determined that the Offense Report and the information contained therein should be released to the public. Acting under color of law and under the customs, practices, and policies of Defendant CITY OF SPRINGDALE, ARKANSAS, Defendant O'KELLEY and Defendant CATE directed, oversaw, and approved the Police Department's partial redaction and release of the Offense Report, in clear violation of the Arkansas Juvenile Code, the Arkansas Code, and the Arkansas and United States Constitutions.

6.      Similarly, Defendant RICK HOYT ("HOYT"), an Enforcement Major of the Sheriff's Office, and Defendant STEVE ZEGA ("ZEGA"), the then acting Washington County's Attorney, responded to the IN TOUCH DEFENDANTS' request by disclosing the Incident Report and the information contained therein. Defendant HOYT and Defendant ZEGA, acting under color of law and under the customs, practices, and policies of Defendant WASHINGTON COUNTY, ARKANSAS, directed, oversaw, and approved the partial redaction and release of the Incident Report, which included Plaintiff-Intervenor's parents' names, the family's address, and the age of at least one victim. The information revealed by the Incident Report permitted the

public to identify Plaintiff-Intervenor and each of the victims named in the Investigation. Disclosure of this information was in clear violation of the Arkansas and federal law.

7.      Specifically, the Arkansas Juvenile Code section 9-27-309(j) states: "Records of the arrest of a juvenile, the detention of a juvenile, and the proceedings under this subchapter shall be confidential and shall not be subject to disclosure under the Freedom of Information Act of 1967, § 25-19-101 et seq. unless: (1) Authorized by a written order of the juvenile division of circuit court; or (2) The arrest of the proceedings under this subchapter result in the juvenile's being formally charged in the criminal division of circuit court for a felony." Although the FINS case was filed, no charges were brought in relation to the Investigation, and no written order authorizing the disclosure was ever received. In fact, subsequent to the release of juvenile information by the City of Springdale and Washington County, there were several written orders by Judge Stacey Zimmerman of the juvenile division of the Washington County Circuit Court expressly condemning the disclosure of the information contained in the Offense Report and Incident Report.  Moreover, section 9-27-309(b)(2) states that the Court "shall expunge all the records of a juvenile upon his or her twenty-first birthday . . . ."

8.      Further, Arkansas Code Annotated section 12-18-104 provides that "[a]ny data, records, reports, or documents that are created, collected, or compiled by or on behalf of the Department of Human Services, the Department of Arkansas State Police, or other entity authorized under this chapter to perform investigations or provide services to children, individuals, or families shall not be subject to disclosure under the Freedom of Information Act of 1967, § 25-19-101 et seq."

9.      Defendants O'KELLEY, CATE, HOYT, and ZEGA egregiously and unnecessarily disclosed the contents of the Offense Report and Incident Reports and details of

the Investigation to the IN TOUCH DEFENDANTS and other members of the media in direct violation of Arkansas law and Plaintiff-Intervenor's privacy rights under the Arkansas and United States Constitutions. Defendants O'KELLEY, CATE, HOYT, and ZEGA knew or should have known that their release of this information would lead to widespread disclosure to the general public that would harm the Plaintiff-Intervenor.

10.    The misconduct of Defendants O'KELLEY, CATE, HOYT, and ZEGA did, in fact, lead to widespread publication of the Plaintiff-Intervenor's private information. On May 21, 2015, IN TOUCH DEFENDANTS posted or approved for posting the first of a series of articles on the world-wide *In Touch Weekly* website containing details of the Investigation and the Offense and Incident Reports. The article, posted under the salacious headline "Bombshell Duggar Police Report," included the complete text of the improperly released Offense Report. Almost immediately, other tabloids and users on social media picked up on the article, linking to the original post or summarizing its contents. Over the course of the next month, IN TOUCH DEFENDANTS published at least eight more articles describing the Investigation or linking to copies of the Offense Report and Police Report.

11.    As a direct and proximate result of Defendants' misconduct in disclosing Plaintiff-Intervenor's juvenile records that he had a reasonable expectation should have been expunged upon his 21st birthday, he endured harsh and unwarranted public scrutiny. Defendants' actions forced Plaintiff-Intervenor to relive painful memories and experiences that occurred almost ten years prior, resulting in Plaintiff-Intervenor suffering severe mental anguish and distress. Plaintiff-Intervenor was also subject to the humiliation and extreme mental anguish of being publicly identified nation and world-wide as the perpetrator of sexual contact as a minor and having the details of the most private and painful aspects of his life released and published to friends,

associates, and tens of millions of people throughout the United States and world. As a result of this identification, the Plaintiff-Intervenor was forced into seclusion for fear of his safety, Plaintiff-Intervenor was forced to retain round-the-clock security due to threats he and his family were receiving, and he suffered real financial loss in excess of the federal minimums.

12.     Plaintiff-Intervenor had no knowledge that the highly personal and painful details revealed in his confidential interviews would be disclosed to anyone except law enforcement and child services personnel. Indeed, he was instructed that his statements would remain confidential and not be released to the public. Plaintiff-Intervenor had a reasonable expectation of privacy in the statements he made to law enforcement under the U.S. Constitution, the Arkansas Constitution, and the Arkansas Child Maltreatment Act. Further, as an underage juvenile offender, Plaintiff-Intervenor had a reasonable expectation of privacy in his identity and in the specific details of the allegations.

13.     Defendants' disclosures of the highly personal details of Plaintiff-Intervenor allegations of sexual contact as well as the IN TOUCH DEFENDANTS' posting of those details on the *In Touch Weekly* website, constitute a clear and unwarranted invasion of Plaintiff-Intervenor's right of privacy and other rights as discussed herein.

## JURISDICTION AND VENUE

14.     This case arises under 42 U.S.C. § 1983 and Arkansas law. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

15.     Venue is proper in the Western District of Arkansas under 28 U.S.C. § 1931(b)(2) because a substantial part of the events or omissions giving rise to the claims herein occurred in the district, and this is where Plaintiff-Intervenor has suffered the primary harm from Defendants' actions.

## THE PARTIES

16.     Plaintiff-Intervenor JOSH DUGGAR currently resides in Washington County, Arkansas, and was at all times relevant to this Complaint a resident or property owner in Washington County, Arkansas or Benton County, Arkansas and a citizen of the United States and the State of Arkansas.

17.     Defendant CITY OF SPRINGDALE, ARKANSAS ("CITY") is a municipal corporation organized and existing under the laws of the State of Arkansas and located in Washington County, Arkansas.    Defendant CITY is and was at all relevant times mentioned herein, responsible for the actions and/or omissions and the policies, procedures, customs, and practices of the Police Department, the Springdale City Attorney's Office ("City Attorney's Office"), and their respective employees, agents, and officers.

18.     At all relevant times, Defendant Kathy O'Kelley ("O'KELLEY") was the Chief of Police for the City of Springdale, Arkansas, and was employed by and was an agent of the CITY. In that capacity, she was the official responsible for setting and enforcing the policies, customs and practices of the Police Department. At all relevant times, Defendant O'KELLEY directed, authorized, and/or ratified the actions of other Police Department employees, agents, and officials. Based on information and belief, and as described herein, Defendant O'KELLEY directed, authorized, and/or ratified the Police Department's unlawful release of the Offense Report to the IN TOUCH DEFENDANTS. On information and belief, and as described herein, Defendant O'KELLEY also directed and participated in the Police Department's unlawful release of the Offense Report to the IN TOUCH DEFENDANTS. Among other actions, Defendant O'KELLEY personally reviewed and sent the Offense Report to the IN TOUCH DEFENDANTS and other

third parties, both known and unknown to the Plaintiff-Intervenor, in violation of PLAINTIFF-INTERVENOR'S Fourteenth Amendment and Arkansas privacy rights.

19.     At all relevant times, Defendant ERNEST CATE ("CATE") was the City Attorney for the City of Springdale, Arkansas.  He is employed by and is an agent of Defendant CITY and the City Attorney's Office. Based on information and belief, and as described herein, Defendant CATE directed and participated in the City of Springdale's unlawful release of the Offense Report. For instance, Defendant CATE personally reviewed and participated in creating and approving the copy of the Offense Report that was improperly redacted and released to the IN TOUCH DEFENDANTS and others in violation of PLAINTIFF-INTERVENOR'S Fourteenth Amendment and Arkansas privacy rights. Based on information and belief, and as described herein, Defendant CATE directed, authorized, and/or ratified the Police Department's unlawful release of the Offense Report to the IN TOUCH DEFENDANTS.

20.     At all relevant times, CITY employed Defendant O'KELLEY and Defendant CATE (Collectively CITY, O'KELLY and CATE shall be referred to hereinafter as "CITY DEFENDANTS"). At all times material to this Complaint, CITY DEFENDANTS acted under color of law, acted in concert with one another, and acted under the customs, policies, practices, and usages of CITY.

21.     Defendant WASHINGTON COUNTY, ARKANSAS ("COUNTY") is a municipal corporation organized and existing under the laws of the State of Arkansas. Defendant COUNTY is, and was at all relevant times mentioned herein, responsible for the actions and/or omissions and the policies, procedures, customs, and practices of the Sheriff's Office, the Washington County Attorney's Office ("County Attorney's Office"), and their respective employees, agents, and officers.

22.     At all relevant times, Defendant RICK HOYT ("HOYT") was at all times relevant and is believed to be a current member of the Washington County Sheriff's Office. He is employed by and is an agent of Defendant COUNTY and the Sheriff's Office. Based on information and belief, and as described herein, Defendant HOYT directed and participated in the Sheriffs Office's unlawful release of the Incident Report and Plaintiff-Intervenor's highly confidential, sensitive, and private personal information contained in the Incident Report.

23.     At all relevant times, Defendant STEVE ZEGA ("ZEGA") was the County Attorney for Washington County, Arkansas, and was employed by and an agent of Defendant COUNTY and the County Attorney's Office.  On information and belief, and as described herein, Defendant ZEGA directed and participated in the Sheriffs Office's unlawful release of the Incident Report and the highly confidential, sensitive, and private personal information contained therein.  Claims against Defendant ZEGA are brought against him only in his official capacity as County Attorney for Washington County.

24.     At all relevant times, COUNTY employed Defendant HOYT and Defendant ZEGA (Collectively COUNTY, HOYT and ZEGA shall be referred to hereinafter as "COUNTY DEFENDANTS"). At all times material to this Complaint, COUNTY DEFENDANTS acted under color of law, acted in concert with one another, and acted under the customs, policies, practices, and usages of COUNTY.

25.     Upon information and belief, Defendant BAUER PUBLISHING COMPANY, L.P. is, and at all relevant times was, a limited partnership organized under the laws of the State of New Jersey with its principal place of business in Englewood Cliffs, New Jersey, and is engaged in business in the Western District of Arkansas.

26.     Upon information and belief, Defendant BAUER MAGAZINE, L.P. is, and at all relevant times was, a limited partnership organized under the laws of the State of Delaware with its principal place of business in Englewood Cliffs, New Jersey, and is engaged in business in the Western District of Arkansas.

27.     Upon information and belief, Defendant BAUER MEDIA GROUP, INC. is, and at all relevant times was, a corporation formed under the laws of the State of Delaware with its principal place of business in New York, New York, and is engaged in business in the Western District of Arkansas.

28.     Upon information and belief, Defendant BAUER, INC. is, and at all relevant times was, a corporation formed under the laws of the state of Delaware with its principal place of business in Englewood Cliffs, New Jersey, and is engaged in business in the Western District of Arkansas.

29.     Upon information and belief, Defendant HEINRICH BAUER NORTH AMERICA, INC. is, and at all relevant times was, a corporation formed under the laws of the state of Delaware with its principal place of business in Englewood Cliffs, New Jersey, and is engaged in business in the Western District of Arkansas.

30.     Upon information and belief, Defendant BAUER MEDIA GROUP USA, LLC is, and at all relevant times was, a limited liability company organized under the laws of the state of Delaware, and is engaged in business in the Western District of Arkansas.

31.     The IN TOUCH DEFENDANTS own, control, and/or publish the tabloid publication *In Touch Weekly,* which they cause to be distributed in print throughout the world, including in the Western District of Arkansas.

32.     In addition to publishing print publications, the IN TOUCH DEFENDANTS frequently publish their articles on their Internet web site in order to promote the sale of their tabloid publications. The Internet publications are available to Internet users located in the Western District of Arkansas.

33.     Plaintiff-Intervenor is informed and believes, and based thereon alleges, that at all relevant times, the IN TOUCH DEFENDANTS have operated as a joint venture dividing revenues and profits among them and seeking by their joint efforts to maximize gains and minimize losses. Plaintiff-Intervenor further is informed and believes, and based thereon alleges, that at all relevant times, the acts and conduct herein alleged of each of the IN TOUCH DEFENDANTS were known to, authorized by, or ratified by the other IN TOUCH DEFENDANTS. As such, each and every IN TOUCH DEFENDANT is equally responsible in whole or in part for each and every act alleged herein.

34.     The true names and identities of Defendants DOES 1-10 are currently unknown to Plaintiff-Intervenor. Plaintiff-Intervenor will seek leave to amend this Complaint when the names and identities of DOES 1-10 have been ascertained. Based on information and belief, and as described herein, Defendants DOES 1-10 are the writers, photographers, editors, distributors, retailers, attorneys, elected officials of the CITY, former elected officials of the COUNTY, employees of the Police Department, City Attorney's Office, Sheriff's Office, and County Attorney's Office, and others involved in the acts, occurrences, and events alleged in this Complaint, and are liable to Plaintiff-Intervenor therefore.

## FACTUAL ALLEGATIONS

35.     That Plaintiff-Intervenor JOSH DUGGAR is the eldest son of Jim Bob Duggar and Michelle Duggar.

36.     That on or about December 7, 2006, the Arkansas State Police received an Arkansas State Police Hotline report regarding an alleged incident of sexual abuse occurring in Springdale, Arkansas.

37.     That on or about December 7, 2006, the Arkansas State Police referred said report to the Springdale Police Department for the Police Department to create, collect or compile records and reports on their behalf.

38.     That on or about December 7, 2006, the Police Department received the referred report from the Arkansas State Police from an unknown individual claiming alleging that Plaintiff-Intervenor had inappropriate sexual contact with four (4) minor female siblings, and another minor female. The alleged contact had taken place years earlier from March 2002 to March 2003 while each of the subjects were minor children. The Police Department subsequently opened the Investigation and requested that Plaintiff-Intervenor be brought to the Children's Safety Center located in Washington County, Arkansas, for an interview.

39.     That on or about December 7, 2006, Springdale Police Detective Darrell Hignite contacted the Sheriff's Office to notify the Sheriff's Office of the Investigation and institute an "agency assist" between the two departments.

40.     That on or about December 12, 2006, Plaintiffs, with their parents, arrived at the Children's Safety Center for interviews with Investigator Whitney Taylor of the Arkansas State Police, Detective Darrell Hignite of the Springdale Police Department and Detective Gary Conner of the Washington County Sheriff's Office.  The alleged victims were interviewed individually by Investigator Taylor and were reportedly assured and promised that the interviews would remain confidential in accordance with Arkansas law.  Investigator Taylor asked Plaintiffs about the details of the alleged incidents, including the name of the person responsible. Plaintiffs and their

siblings were asked specific questions about individually-identifying personal information, such as their hobbies, their grades in school, and where they were sleeping at the time of the incidents. The interviews were summarized and included in the Police Department's official Offense Report in which the name of Plaintiff-Intervenor appears throughout.

41.     That Plaintiff-Intervenor understood, believed and expected that the interviews of his family members were confidential and could not be disclosed to the public. The promise of confidentiality was instrumental in all parties' consent to and understanding of the interviews.

42.     That on the same day, as part of the agency assist implemented by the Police Department and the Sheriff's Office, Sheriff's Office Detective Gary Conner interviewed Jim Bob and Michelle Duggar.  Jim Bob and Michelle provided Detective Conner with details of the alleged sexual contact, including who had been inappropriately touched, how many times, and where those contacts took place.  In particular, Jim Bob and Michelle were asked about the ages of each of their children and details about the family's sleeping arrangements. The contents of Detective Conner's interview with Jim Bob and Michelle was summarized and included in the Police Department's official Offense Report and the Sheriff's Office's official Incident Report, in which Plaintiff-Intervenor's name appears throughout.

43.     That on or about December 20, 2006, Detective Hignite submitted a Family In Need of Services ("FINS") Affidavit with the Washington County Juvenile Court to initiate a FINS case and provision of services.  Plaintiff-Intervenor is also informed and believes, and thereupon alleges, that Detective Hignite provided his FINS Affidavit to the Washington County Prosecutor's Office for review though his report suggests that he was unable to identify to an offense occurring within the appropriate statute of limitations.

44.     That no charges related to the Investigation were brought against Plaintiff-Intervenor or any other member of the Duggar family arising from the investigation. Plaintiff-Intervenor believed the details of the reports would remain confidential.

### CITY and COUNTY DEFENDANTS Rushed to Release Information to
### IN TOUCH DEFENDANTS

45.     Plaintiff-Intervenor is informed and believes, and thereupon alleges, that on or about May 15, 2015, the IN TOUCH DEFENDANTS, through their attorney Abtin Mehdizadegan, though he know or should have known such records to be exempt under Arkansas law, submitted a Freedom of Information Act ("FOIA") request to the Police Department seeking all files related to or mentioning Plaintiff-Intervenor, his parents Michelle Duggar and Jim Bob Duggar, and multiple addresses allegedly related to the Duggars.  Despite the fact that no charges resulted from the Investigation and its results had not been made public, the FOIA request stated the IN TOUCH DEFENDANTS had cause to believe that an incident report had been filed with the Police Department and that Detective Hignite had participated in the investigation.

46.     That Mr. Mehdizadegan is a member of the law firm Cross, Gunter, Witherspoon & Galchus, P.C. ("CGWG").  Plaintiff-Intervenor is informed and believes and upon that basis alleges that one of the partners of CGWG, Carolyn B. Witherspoon, is a close and personal friend of Defendant O'KELLEY.

47.     That on information and belief, Defendant O'KELLEY oversaw correspondence between the Police Department and Mr. Mehdizadegan regarding disclosure of the Offense Report.  For instance, Defendant O'KELLEY reassured Mr. Mehdizadegan that the redacted Offense Report would be provided by the evening of May 20, 2015, the date when Arkansas law ostensibly required production of the FOIA request.  Nonetheless, Arkansas law permits agencies

to obtain time extensions under the Act, precisely to give agencies time to consider the sometimes complicated legal ramifications of disclosure.

48.     That on information and belief, the IN TOUCH DEFENDANTS, through Mr. Mehdizadegan, though he knew or should have known such records to be exempt under Arkansas law, also faxed a FOIA request to the Sheriff's Office on or about May 15, 2015. Similar to the FOIA request to the Police Department, the FOIA request to the Sheriff's Office requested all files related to or mentioning Plaintiff-Intervenor, Michelle Duggar, Jim Bob Duggar, and multiple addresses alleged to be related to the Duggars. The FOIA request also stated that the IN TOUCH DEFENDANTS had cause to believe that an incident report was filed with the Sheriff's Office even though no charges had ever been brought against Plaintiff-Intervenor and that no public information had yet been released.

49.     That Plaintiff-Intervenor is informed and thereupon alleges that COUNTY DEFENDANTS directed and personally participated in preparing documents, including the Incident Report, in response to the FOIA requests.  On information and belief, Defendant HOYT, in his official capacity, organized, oversaw, and approved the Sheriffs Office's preparation of the redacted Incident Report. Defendant ZEGA, in his official capacity as County Attorney, oversaw, counseled, and approved the Sheriffs Office's release of the redacted Incident Report to the IN TOUCH DEFENDANTS and others.

50.     That at approximately 3:15 p.m. on May 19, 2015, the IN TOUCH DEFENDANTS posted an article on the *In Touch Weekly* website under the headline "'19 Kids and Counting' Son Named in Underage Sex Probe."  The post stated the IN TOUCH DEFENDANTS were "reporting exclusively" that Plaintiff-Intervenor had been investigated for sexual assault.  Although the Investigation had not been made public, the article included

specific details about the Investigation, including the fact that Detective Hignite was involved and that the CITY and COUNTY had not moved forward with the case due to the statute of limitations. The post concluded with a promotion for sales of the hardcopy version of *In Touch Weekly,* noting that "for the latest inside Josh Duggar's shocking past, pick up the new issue of *In Touch Weekly,* on newsstands tomorrow!"

51.     That on information and belief, neither the Police Department nor the Sheriff's Office had officially or formally responded to the FOIA requests at the time the May 19th article was posted on the *In Touch Weekly* website.

52.     That shortly after the article was posted, the Police Department received numerous FOIA requests for documents related to the Duggars and the Investigation. On information and belief, the influx of FOIA requests and the level of detail contained in the IN TOUCH DEFENDANTS' website post led members of the Police Department to suspect that a Department source was leaking information to the media.  The steady leaking of information encouraged and reinforced the Department's sense of urgency to release the lurid details of Plaintiff-Intervenor's case to the media.  The increase in media requests caused Defendant O'KELLEY to contemplate whether the Police Department would soon end up in the tabloids, creating the prospect of worldwide media attention for what was otherwise a sleepy, small-town police department.  Of course, it was precisely the identity of the parties involved that would invite such public scrutiny upon Springdale.  A response to the FOIA request that did not include the parties' identifying details, or the lurid minutiae of their ordeal, would not have attracted the desired public attention.

53.     That Plaintiff-Intervenor is informed and thereupon alleges that Defendant O'KELLEY, acting under a sense of urgency from the May 20, 2015 deadline and recognizing the potential for increased publicity for the Police Department, rushed to prepare the Offense

Report for distribution to the IN TOUCH DEFENDANTS and other members of the media. Defendant O'KELLEY instructed members of the Police Department, including Captain Ron Hritz, to redact certain personal information from the Offense Report.

54.     That on information and belief, Defendant O'KELLEY spoke with Mr. Mehdizadegan on the afternoon of May 20, 2015 and assured him the Police Department would produce documents responsive to the FOIA request later that evening.

55.     That at approximately 6:45 p.m. on May 20, 2015, Defendant O'KELLEY received the redacted copy from Captain Ron Hritz.  Approximately thirty-five minutes later, she forwarded the copy to Defendant CATE for review and final approval for external circulation. However, on information and belief, Defendant O'KELLEY did not wait for a response from Defendant CATE, nor did she seek an extension of the deadline.  Instead, Defendant O'KELLEY sent the partially-redacted Offense Report to Mr. Mehdizadegan at approximately 8:58 p.m. Defendant O'KELLEY also sent the Offense Report to a local news organization pursuant to a separate FOIA request.

56.     Several minutes later at approximately 9:03 p.m., Defendant CATE replied that he approved the redacted Offense Report for public distribution.  He noted, however, that the Police Department and the City Attorney's Office should consult with Carolyn Witherspoon from CGWG, the law firm facilitating the request for the documents, about the redactions.

57.     Contrary to Arkansas law and the bounds of human decency, the Offense Report approved for distribution included information clearly identifying Plaintiffs as the alleged sexual contact victims. The unredacted information released to the media for the express purpose of publication included Jim Bob Duggar's and Michelle Duggar's names, the family's current and former address, other personal details about each individual victim and the identity

of the alleged underage juvenile offender.  To compound Plaintiff-Intervenor's humiliation, the Police Department released the quasi-redacted Offense Report to the public containing the full descriptions of the alleged victims' confidential interviews with Investigator Taylor. Thus, each alleged victim was not only obviously identifiable from the facts publicized by Defendants, but each alleged victim  was forced to endure the publication of graphic descriptions about the alleged sexual contact.

58.     That similarly, on or about May 21, 2015, Defendants HOYT and ZEGA, acting under the official policies and procedures of the COUNTY, directed employees from the Sheriff's Office, including employees in the Records, Dispatch, and Criminal Investigation Divisions, to copy and mail the redacted Incident Report and other documents to Mr. Mehdizadegan.

59.     That the "redacted" version of the Incident Report the COUNTY DEFENDANTS released to the IN TOUCH DEFENDANTS made no more than a pretextual effort at protecting the rights of Plaintiff-Intervenor's and Plaintiffs' rights. Despite a handful of cosmetic redactions, the released Incident Report included information identifying Plaintiff-Intervenor as the alleged juvenile offender, Plaintiffs as the alleged victims, included Jim Bob Duggar's and Michelle Duggar's names, the family's current and former address, and other personal details about Plaintiff-Intervenor and each individual Plaintiff. In particular, the released Incident Report expressly identified one of the alleged victims as his then 5-year-old sister, thereby identifying Plaintiff Joy Duggar as one of the alleged victims. The other alleged victims were similarly identifiable by facts described in the Incident Report.

60.     That Plaintiff-Intervenor is informed and thereupon alleges that after seeing the IN TOUCH DEFENDANTS' salacious May 19, 2015 article, CITY DEFENDANTS and

COUNTY DEFENDANTS rushed to prepare redacted copies of the Offense Report and Incident Report and provide them to IN TOUCH DEFENDANTS and the media.

61.     That on information and belief, Defendant O'KELLEY, Defendant CATE, the Police Department, and the City Attorney's Office did not wait to seek external guidance from the Arkansas Municipal League or the CITY's child services departments regarding the disclosure of confidential sexual abuse information obtained from a minor at any point prior to releasing the information to the IN TOUCH DEFENDANTS.

62.     That the publication of the Investigation's details brought the expected scrutiny upon Springdale and its law enforcement agencies, but not all of that attention was favorable. In particular, public backlash formed against the intentional release and publication of details of Plaintiff-Intervenor's juvenile incident reports.  Plaintiff-Intervenor is informed and believes and on that basis alleges that after the release of the Offense Report, Defendant CATE for the first time asked the Arkansas Municipal League to review the information to determine if it was subject to disclosure under the Arkansas FOIA. Almost immediately upon receiving the inquiry, Municipal League attorneys noted that Arkansas law prohibited disclosure of the identity of victims of sex crimes. A few hours later, the Municipal League determined that the released information was indeed exempt from FOIA disclosure.

63.     That similarly, Plaintiff-Intervenor is informed and on that basis alleges, CITY DEFENDANTS did not send the Offense Report to the Arkansas Department of Health Services ("DHS") until the morning of May 21, 2015, after the documents had been released to the IN TOUCH DEFENDANTS and others.  Defendants neglected to send DHS the Offense Report even though it was part of a FINS case, one in which the DHS generally provides services designed to protect any involved juveniles and their families.  DHS's review occurred at its own

request only after a DHS attorney called Defendant CATE, having become aware of the release of Plaintiff-Intervenor's information, and requested the opportunity to determine if any objectionable or improper information had been disclosed.  Upon information and belief, despite the fact that a FINS case had been opened, the Police Department and the City Attorney's Office did not request DHS assistance at any time prior to releasing the Offense Report.

64.     That caught having improperly released Plaintiff-Intervenor's information in violation of Arkansas law, Defendant O'KELLEY now called Mr. Mehdizadegan and took the position that the certain identifying information her Department released should no longer be published. Specifically, she requested that the IN TOUCH DEFENDANTS refrain from using Jim Bob and Michelle's names as those facts identified Plaintiff-Intervenor and Plaintiffs and therefore violated Arkansas law.  Defendant O'KELLEY further requested that Mr. Mehdizadegan accept a different redacted version of the Offense Report.

## Unlawful Publication of The Offense Report, Incident Report. and

## Details of The Investigation

65.     That despite Defendant O'KELLEY's belated request that the IN TOUCH DEFENDANTS delay the Offense Report's publication, Defendants published the previously-produced Offense Report on their *In Touch Weekly* Site on May 21, 2015, under the headline "Bombshell Duggar Police Report: Jim Bob Duggar Didn't Report Son Josh's Alleged Sex Offenses For More Than A Year."  The post contained the full thirty-three (33) page copy of the Offense Report as well as a narrative describing its contents along with the warning:

---

**WARNING: Graphic descriptions contained in police report.**

---

On information and belief, the post was written, edited, and posted by employees of the IN TOUCH DEFENDANTS. Unsurprisingly, the IN TOUCH DEFENDANTS included every identifying fact released by the Police Department before its belated attempt to correct the disclosure.

66.     That as mentioned above, almost immediately after publication, while the name of Plaintiff-Intervenor was blared in the headlines, users on social media and online forums began identifying which members of the Duggar family were the alleged victims of sexual contact. For example, a user on the online forum "freejinger.org" commented that from the length of the redacted names and the details of the interviews, each victim's identity could be determined. Many on social media disparaged Plaintiff-Intervenor while expressing concern for the victims, including Plaintiffs, noting that Plaintiffs had been re-victimized by having the details of their sexual contact reverberating through the media as a result of Defendants' actions.

67.     That others, however, were far less kind. Plaintiff-Intervenor and Plaintiffs were subjected to spiteful and harsh comments and harassment on the Internet and in their daily lives and some used the opportunity to provide unwarranted commentary on all aspects of the family members' lives. Others simply reveled in the *ad hoc* disclosure of the lurid details of the allegations made against Plaintiff-Intervenor.

68.     Numerous media outlets and websites picked up on the story and posted links to it, further exposing millions of people to the Offense Report released by the Police Department and its "graphic" descriptions of intimate details of Plaintiff-Intervenor's alleged actions. As a natural and foreseeable consequence of the IN TOUCH DEFENDANTS' conduct, massive numbers of individuals visited the *In Touch Weekly* site and purchased the print version of *In*

*Touch Weekly,* for which the IN TOUCH DEFENDANTS have been unjustly enriched through increased revenues and profits.

69.     Concurrently, in order to protect the victims' identities, JOY DUGGAR, then a minor, filed a motion with the Circuit Court of Washington County, Arkansas to expunge the Offense Report from the public record. On May 21, 2015, Judge Stacey Zimmerman granted the motion and ordered the Offense Report expunged from the public record and any and all copies destroyed. Judge Zimmerman specifically noted:

> *Pursuant to Ark. Code Ann. § 16-90-1104 ("Section 1104"), [a] law enforcement agency shall not disclose to the public information directly or indirectly identifying the victim of a sex crime...."*

The Order explained that the Offense Report contained information that could directly or indirectly identify JOY DUGGAR as a victim of a sex crime in violation of Arkansas Code Section 16-901104.

70.     On May 26, 2015, Judge Zimmerman issued another order ruling that the juvenile records, including the interviews of the minor children and the information about their alleged sexual contacts, were not subject to FOIA disclosure. Judge Zimmerman concluded:

> *The juvenile records concerning this Family In Need of Services case are confidential and shall not be subject to disclosure under the Freedom of Information Act as no formal charges were ever filed, and the purpose of the Arkansas Juvenile Code will not be furthered by disclosure.*

Plaintiff-Intervenor's information and statements were made in connection with a FINS case and therefore FOIA-exempt under Arkansas Juvenile Code section 9-27-309(j). Judge Zimmerman further noted that the Arkansas Juvenile Code should be "liberally construed" to effectuate its purpose, including protecting the juvenile's health, safety, and emotional, mental, and physical welfare. In Judge Zimmerman's opinion, the Juvenile Code's purpose is not furthered by disclosing reports containing Plaintiff-Intervenor's information.

71.     Despite the court orders determining that the information contained in the police reports was confidential, the IN TOUCH DEFENDANTS continued to post copies of the Offense Report, post articles containing lurid details about the sexual contact, and provide links to other offending articles on the *In Touch Weekly* website. On May 26, 2015, for example, IN TOUCH DEFENDANTS posted or approved for posting an article under the headline "Josh Duggar's Youngest Molestation Victim May Have Been As Young As 5-Years Old." In addition to reposting the Offense Report, the article highlights details to make it clear that four of the underage victims lived at home with Jim Bob and Michelle. The article further stated that although the Offense Report includes redactions, it was suggested that one of the alleged victims was as young as five years old. In just a week and a half, the IN TOUCH DEFENDANTS posted or approved the posting of at least eight articles including copies of the Offense Report itself, or details of the confidential interviews contained therein.

72.     On June 1, 2015, Judge Zimmerman issued a supplemental order reiterating her prior orders that the police reports and Plaintiff's' information contained therein were confidential and not subject to FOIA disclosure.

73.     Nevertheless, seeking to capitalize on the continuing publicity generated by Plaintiff-Intervenor's story, on June 3, 2015, Defendants published another article on the *In Touch Weekly* site containing intimate details about the alleged sexual contact. The article, entitled "Josh Duggar Chilling Molestation Confession in New Police Report," included a copy of the Incident Report, which failed to redact the names of Jim Bob and Michelle Duggar, the family's address, and other details that enabled direct and indirect identification of Plaintiffs as the alleged minor victims mentioned in the Incident Report.

74.     Plaintiff-Intervenor and his family have been since subjected to extreme mental anguish and emotional distress both privately and publicly as a result of their trauma being publicized.  Paparazzi began stalking Plaintiff-Intervenor, camping out in front of his home and intruding upon his day-to-day activities.

75.     Ignoring this, the IN TOUCH DEFENDANTS continue to post and publicize articles containing details of the Investigation or articles linking to its prior articles about the Investigation. As of May 2017, the IN TOUCH DEFENDANTS have ignored every single court order and continue to publish articles containing the confidential details of Plaintiff-Intervenor's juvenile investigation.  In fact, as recently as April 2017, the IN TOUCH DEFENDANTS championed their role in Plaintiff-Intervenor's misfortunes, publishing an article that stated the family's show was cancelled after the magazine "exclusively revealed" the details from the protected juvenile offense report.

## FIRST CAUSE OF ACTION

### Invasion of Privacy — Public Disclosure of Private Fact

(Against CITY DEFENDANTS, COUNTY DEFENDANTS, and IN TOUCH DEFENDANTS)

### Release of the Offense Report, Incident Report., and Details of the Alleged Sexual

### Contact by CITY DEFENDANTS and COUNTY DEFENDANTS

76.     That Plaintiff-Intervenor re-alleges and incorporates each allegation in paragraphs 1 through 75 of this Complaint as though fully set forth herein.

77.     That agents and employees of the Police Department and Sheriff's Office disclosed to the public confidential and highly personal details of Plaintiff-Intervenor's protected juvenile offense report, including his identity and the identities of the alleged victims.  Plaintiff-Intervenor alleges this claim against those Defendants who participated in and approved the

disclosure of their information to the IN TOUCH DEFENDANTS and others, including but not limited to the CITY DEFENDANTS and the COUNTY DEFENDANTS.

78.     That the CITY DEFENDANTS and the COUNTY DEFENDANTS knew or should have known that the Offense Report and Incident Report and the information contained therein constituted private and confidential information, and that Plaintiff-Intervenor had a reasonable expectation of privacy in that information being protected from public disclosure. For example, the information contained in the Offense Report and Incident Report was solicited from Plaintiff-Intervenor and his family members under the promise of confidentiality and in relation to a FINS case. The information, therefore, was protected from disclosure pursuant to the Arkansas Juvenile Code and other provisions of Arkansas law.

79.     That prior to the CITY DEFENDANTS' and COUNTY DEFENDANTS' unauthorized disclosure, the information related to the Investigation was not known to the general public.

80.     That the CITY DEFENDANTS' and COUNTY DEFENDANTS' dissemination of the specific details of the sexual contact involving Plaintiffs, including intimate details, was not carried out for reasonable or legitimate purposes.  Plaintiff-Intervenor did not consent to the release of such details to anyone other than the necessary law enforcement and family service personnel.

81.     That the unauthorized disclosure of Plaintiff-Intervenor's private facts to the media and the public is highly offensive and objectionable to Plaintiff-Intervenor, as well as to any reasonable person of ordinary sensibilities.  For example, posts on social media described the revelation of Plaintiff-Intervenor's juvenile offense report and the painful allegations contained therein by the CITY DEFENDANTS and the COUNTY DEFENDANTS as a horrific violation

of privacy. Some even called for Defendant O'KELLEY's resignation. Plaintiff-Intervenor continues to be emotionally upset and humiliated by the disclosure of his identity as an alleged underage juvenile offender and the intimate details of those acts, including the fact that his siblings were the alleged victims.

82.     Plaintiff-Intervenor is informed and believes and on that basis alleges that CITY DEFENDANTS and COUNTY DEFENDANTS acted with reckless disregard for Plaintiff-Intervenor's rights of privacy.

83.     As a direct and proximate result of CITY DEFENDANTS' and COUNTY DEFENDANTS' aforementioned actions, Plaintiff-Intervenor has suffered substantial emotional distress, mental anguish, embarrassment, humiliation, and economic harm, including reputational and professional harm, in an amount to be proved at trial.

**Publication of the Offense Report, Incident Report, and Details of the Alleged Sexual Contact by the IN TOUCH DEFENDANTS**

84.     Plaintiff-Intervenor re-alleges and incorporates each allegation in paragraphs 1 through 83 of this Complaint as though fully set forth herein.

85.     The IN TOUCH DEFENDANTS publicly disclosed confidential and highly personal details from Plaintiff-Intervenor's juvenile offense reports, including where and how the acts occurred and that the alleged victims were his siblings.  The IN TOUCH DEFENDANTS knew or should have known that the Offense Report, Incident Report, and the details contained in those documents were private and confidential information, and that Plaintiff-Intervenor had a reasonable expectation of privacy in that information being protected from public disclosure.  By way of example, the IN TOUCH DEFENDANTS knew that Judge Zimmerman had ordered the

Offense Report and details of the Investigation sealed and excluded from disclosure under FOIA pursuant to the Arkansas Juvenile Code.

86.     The IN TOUCH DEFENDANTS' publishing, posting, and disseminating the specific details of the allegations against Plaintiff-Intervenor, including his identity and specific allegations, was not carried out for reasonable or legitimate purposes.  Instead, the IN TOUCH DEFENDANTS sought to exploit the sensitive and lurid nature of the allegations against Plaintiff-Intervenor to create hype and publicity with which they could increase sales of their magazine.   The primary purpose of the disclosure was to increase the IN TOUCH DEFENDANTS' profits.

87.     The unauthorized publication of Plaintiff-Intervenor's private facts by the IN TOUCH DEFENDANTS is highly offensive and objectionable to Plaintiff-Intervenor, as well as to any reasonable person of ordinary sensibilities.  The IN TOUCH DEFENDANTS employed sensationalized headlines to lure readers into salacious stories and exploited Plaintiff-Intervenor's humiliation, pain and suffering.  Through their disclosure of the Offense Report, Incident Report, and details of the Investigation, the IN TOUCH DEFENDANTS scandalized Plaintiff-Intervenor's painful experiences as a youthful offender.  Comments on social media expressed dismay at the publication of Plaintiff-Intervenor's intimate and private experiences by the IN TOUCH DEFENDANTS, noting that such publication unfairly dragged Plaintiff-Intervenor and his alleged victims' experiences into the spotlight.  Plaintiff-Intervenor was and continues to be extremely upset and humiliated by the disclosure of the intimate details of the events.

88.     Plaintiff-Intervenor had no prior knowledge of, and did not consent to, the publication of such details.

89.     Prior to the IN TOUCH DEFENDANTS' unauthorized disclosure, the information related to the Investigation was not known to the general public.

90.     Plaintiff-Intervenor suffered harm as a direct and proximate result of the IN TOUCH DEFENDANTS' conduct and is entitled to injunctive relief, compensatory damage, attorney's fees, costs, and any other available remedies and relief.

**SECOND CAUSE OF ACTION**

**Invasion of Privacy — Appropriation**

(Against IN TOUCH DEFENDANTS)

91.     That Plaintiff-Intervenor re-alleges and incorporates each allegation in paragraphs 1 through 90 of this Complaint as though fully set forth herein.

92.     That over the course of just two weeks from May 19, 2015 to June 3, 2015, the IN TOUCH DEFENDANTS posted over eight (8) articles relating to the Investigation, each of which exploited Plaintiff-Intervenor's name, identity, and likeness for the IN TOUCH DEFENDANTS' commercial gain. The IN TOUCH DEFENDANTS continue to post articles citing to or posting portions of the protected reports of the Investigation.

93.     That the information published by the IN TOUCH DEFENDANTS was sufficiently detailed to allow the public to identify Plaintiff-Intervenor as the underage juvenile offender and Plaintiffs as the alleged victims named in the Investigation.  For example, only a few hours after the IN TOUCH DEFENDANTS posted the first article on the *In Touch Weekly* website touting Plaintiff-Intervenor in the headlines, users on online forums could identify each Plaintiff as a victim named in the Offense Report.  Similarly, the Incident Report posted by the IN TOUCH DEFENDANTS on June 3, 2015, contained the age of at least one Plaintiff, allowing the public to identify her as a victim.

94.     That the IN TOUCH DEFENDANTS' unauthorized use of Plaintiff-Intervenor's identity, image, and persona in connection with articles and online posts exploiting the details of the sexual contact that by law are to be protected from dissemination constitutes a misappropriation and violation of Plaintiff-Intervenor's right of privacy. The IN TOUCH DEFENDANTS sensationalized Plaintiff-Intervenor's experience to enhance sales of the IN TOUCH DEFENDANTS' publications and increase site visits to the *In Touch Weekly* website.

95.     That Plaintiff-Intervenor is informed and believes, and thereupon alleges, that the aforementioned acts were intentional and done with a conscious or reckless disregard of Plaintiff-Intervenor's privacy rights, without his consent, for the purpose of commercial gain.

96.     That as a direct and proximate result of the IN TOUCH DEFENDANTS' conduct, the IN TOUCH DEFENDANTS have earned substantial profits attributable to the unauthorized commercial use and exploitation of Plaintiff-Intervenor's family name, his image and identity. Plaintiff-Intervenor is entitled to recover and hereby seek all unjustly earned profits related to the IN TOUCH DEFENDANTS' unauthorized commercial exploitation and violation of Plaintiff-Intervenor's privacy rights.

97.     That Plaintiff-Intervenor further seeks the market value of the IN TOUCH DEFENDANTS' unsanctioned commercial use of his image and identity related to the release of the protected records.

98.     That on information and belief, the IN TOUCH DEFENDANTS acted intentionally and with a conscious and reckless disregard of Plaintiff-Intervenor's rights.

99.     That as a result of the IN TOUCH DEFENDANTS' conduct, Plaintiff-Intervenor suffered harm and is entitled to declaratory relief, injunctive relief, compensatory damages, punitive damages, attorneys' fees, costs, and any other available remedies and relief.

## THIRD CAUSE OF ACTION

### Invasion of Privacy — Intrusion Upon Seclusion

(Against CITY DEFENDANTS, HOYT, and IN TOUCH DEFENDANTS)

### Release of the Offense Report, Incident Report, and Details of the Alleged Sexual

### Contact by the CITY DEFENDANTS and the COUNTY DEFENDANTS

100.    That Plaintiff-Intervenor re-alleges and incorporates each allegation in paragraphs 1 through 99 of this Complaint as though fully set forth herein.

101.    That the CITY DEFENDANTS and Defendant HOYT intentionally intruded upon Plaintiff-Intervenor's solitude and seclusion. The CITY DEFENDANTS and Defendant HOYT knowingly released documents containing sensitive personal information regarding Plaintiff-Intervenor in violation of a promise of confidentiality and of his reasonable expectation that said records would be expunged and thereby intruded upon Plaintiff-Intervenor's emotional sanctum and violated the basic notions of civility and personal dignity expected in society.  As a result of this disclosure, Plaintiff-Intervenor was forced to contend with harsh and unwarranted public scrutiny and was forced to relive painful experiences that occurred almost ten years prior. Plaintiff-Intervenor was also harassed and stalked by the media.

102.    That the CITY DEFENDANTS and Defendant HOYT knew or should have known that they lacked the necessary legal authority or permission to release the intimate and personal information contained in the Offense Report and Release Report or disclose the identities of the minors named therein.  The information disclosed was compiled in relation to a FINS case and deemed protected from disclosure by an Arkansas state court judge pursuant to Arkansas law.

103.    That the unauthorized intrusion into Plaintiff-Intervenor's private life is highly offensive and objectionable to any reasonable person of ordinary sensibilities and is the result of conduct to which a reasonable person would strongly object,

104.    That at all times prior to the disclosure, Plaintiff-Intervenor conducted himself in a manner consistent with an actual expectation of privacy.

105.    That as a direct and proximate result of the CITY DEFENDANTS' and Defendant HOYT's misconduct as described herein, Plaintiff-Intervenor did and continues to suffer emotional and psychological pain, humiliation, embarrassment, suffering, and mental anguish.

106.    That as a result of the conduct of Defendants O'KELLEY, CATE, and ZEGA, Plaintiff-Intervenor suffered harm and is entitled to declaratory relief, injunctive relief, compensatory damages, punitive damages, attorneys' fees, costs, and any other available remedies and relief.

### Publication of the Offense Report, Incident Report, and Details of the Alleged Sexual Contact by the IN TOUCH DEFENDANTS

107.    That Plaintiff-Intervenor re-alleges and incorporates each allegation in paragraphs 1 through 106 of this Complaint as though fully set forth herein.

108.    That the IN TOUCH DEFENDANTS intentionally intruded upon Plaintiff-Intervenor's solitude and seclusion.  By publishing and promoting stories containing sensitive descriptions from his juvenile offense report, the IN TOUCH DEFENDANTS intruded upon Plaintiff-Intervenor's emotional sanctum and violated the basic notions of civility and personal dignity expected in society.  As a natural and foreseeable consequence of the IN TOUCH DEFENDANTS' publications, Plaintiff-Intervenor was victimized and forced to relive the painful and difficult circumstances of a traumatic experience as a juvenile.

109.    That on information and belief, the IN TOUCH DEFENDANTS knew or should have known that they lacked the necessary authority or permission to widely publicize Plaintiff-Intervenor's intimate and personal information and disclose his identity as it appeared in the juvenile offense report.   For instance, the IN TOUCH DEFENDANTS had been notified by Defendant O'KELLEY that the information contained in the Offense Report violated the Arkansas Code provisions expressly prohibiting disclosure of information identifying juveniles.   Further, the IN TOUCH DEFENDANTS were on notice based on the Judge Zimmerman's several orders ruling the details of the Investigation sealed and excluded from FOIA disclosure.

110.    That the IN TOUCH DEFENDANTS' unauthorized intrusion into Plaintiff-Intervenor's private life and protected records is highly offensive and objectionable to him, as well as to any reasonable person of ordinary sensibilities and is the result of conduct to which a reasonable person would strongly object.

111.    That at all times prior to the IN TOUCH DEFENDANTS' publication, having been protected by state law, Plaintiff-Intervenor conducted himself in a manner consistent with an actual expectation of privacy.

112.    That as a direct and proximate result of the IN TOUCH DEFENDANTS' misconduct as described herein, Plaintiff-Intervenor did and continues to suffer emotional and psychological pain, humiliation, embarrassment, suffering, and mental anguish.

113.    That Plaintiff-Intervenor suffered harm as a direct result of the IN TOUCH DEFENDANTS' conduct and is entitled to injunctive relief, compensatory damage, attorney's fees, costs, and any other available remedies and relief.

## FOURTH CAUSE OF ACTION

### Tort of Outrage

(Against CITY DEFENDANTS, HOYT, and IN TOUCH DEFENDANTS)

**Release of the Offense Report. Incident Report and Details of the Alleged Sexual Contact by the CITY DEFENDANTS and COUNTY DEFENDANTS**

114.    That Plaintiff-Intervenor re-alleges and incorporates each allegation in paragraphs 1 through 113 of this Complaint as though fully set forth herein.

115.    That the CITY DEFENDANTS and Defendant HOYT acted intentionally and unreasonably in releasing the Offense Report, Incident Report, and information contained in those documents. The CITY DEFENDANTS and Defendant HOYT knew or should have known that the unauthorized release of Plaintiff-Intervenor's intimate and personal information to third parties, including the tabloids and news outlets, would cause him to endure severe emotional distress.

116.    That the CITY DEFENDANTS' and Defendant HOYT's conduct was extreme and outrageous and beyond all possible bounds of decency in a civilized community.  The CITY DEFENDANTS and Defendant HOYT acted intentionally and unreasonably in reviewing, redacting, and approving for distribution the Offense Report, Incident Report, and details of the Investigation in violation of Arkansas laws to protect alleged juvenile offenders and minor victims of sexual offenses and in FINS cases.

117.    That Plaintiff-Intervenor is informed and believes and thereupon alleges that the CITY DEFENDANTS and Defendant HOYT acted hastily and with reckless disregard of the probability of causing Plaintiff-Intervenor emotional distress.

118.    That the CITY DEFENDANTS' and Defendant HOYT's extreme and outrageous conduct was a direct and proximate cause of Plaintiff-Intervenor's severe emotional, mental, and psychological distress.

119.    That Plaintiff-Intervenor suffered harm as a direct result of the CITY DEFENDANTS' and Defendant HOYT conduct and is entitled to injunctive relief, compensatory damage, attorney's fees, costs, and any other available remedies and relief.

**Publication of the Offense Report Incident Report and Details of the Alleged Sexual Contact by the IN TOUCH DEFENDANTS**

120.    That Plaintiff-Intervenor re-alleges and incorporates each allegation in paragraphs 1 through 119 of this Complaint as though fully set forth herein.

121.    That the IN TOUCH DEFENDANTS acted intentionally and unreasonably in requesting, acquiring, publishing, and promoting articles containing the Offense Report, Incident Report, and information contained therein. The IN TOUCH DEFENDANTS knew or should have known that Plaintiff-Intervenor would suffer severe emotional distress as a result of the IN TOUCH DEFENDANTS' conduct.  Nevertheless, the IN TOUCH DEFENDANTS continued to publish and disseminate Plaintiff-Intervenor's personal information.

122.    That in light of the particularly sensitive nature of Plaintiff-Intervenor's personal information, the IN TOUCH DEFENDANTS' conduct in continually publishing and promoting stories revealing Plaintiff-Intervenor's information was extreme and outrageous and beyond all possible bounds of decency in a civilized community. The IN TOUCH DEFENDANTS sensationalized Plaintiff-Intervenor's traumatizing experiences for pecuniary gains.

123.    That Plaintiff-Intervenor is informed and believes and thereupon alleges that the IN TOUCH DEFENDANTS acted with actual malice and reckless disregard of Plaintiff-Intervenor's right of privacy.  In fact, as recently as April 2017, the IN TOUCH DEFENDANTS proudly proclaim that they broke the story regarding Plaintiff-Intervenor's juvenile investigation and that the Duggars' television show was cancelled as a result.

124.    That as a result of the IN TOUCH DEFENDANTS' conduct, Plaintiff-Intervenor suffered severe emotional, mental, and psychological distress.

125.    That Plaintiff-Intervenor has suffered harm as a direct result of the IN TOUCH DEFENDANTS' conduct and is entitled to injunctive relief, compensatory damage, attorney's fees, costs, and any other available remedies and relief.

### FIFTH CAUSE OF ACTION

**Violation of the Arkansas Constitution — Due Process**

(Against Defendants the CITY and COUNTY DEFENDANTS)

126.    That Plaintiff-Intervenor re-alleges and incorporates each allegation in paragraphs 1 through 125 of this Complaint as though fully set forth herein.

127.    That on information and belief, agents and employees of the Police Department and the Sheriff's Office acting under color of law, improperly released or authorized for release an Offense Report and Incident Report containing Plaintiff-Intervenor's highly intimate and egregiously humiliating personal details.  Plaintiff-Intervenor alleges this claim against those Defendants who released or caused to be released the Offense Report and Incident Report, including but not limited to the CITY DEFENDANTS and the COUNTY DEFENDANTS.

128.    That the CITY DEFENDANTS and the COUNTY DEFENDANTS released and distributed confidential and intimate personal information relating to Plaintiff-Intervenor's status as an underage juvenile offender.  The information disclosed represented the most intimate aspects of Plaintiff-Intervenor's youth and is the type of information that a reasonable person would expect to remain private while in law enforcement's possession and expunged thereafter. Arkansas has recognized the significance of such information by indicating that it is exempt from

disclosure under the Arkansas Child Maltreatment Act and provisions of the Arkansas Juvenile Code.

129.    That the CITY DEFENDANTS and the COUNTY DEFENDANTS disclosed information that was obtained during interviews given at the Police Department under the promise of confidentiality. The promise of confidentiality was instrumental in obtaining information contained in the reports and the CITY DEFENDANTS' and the COUNTY DEFENDANTS' disclosure was a flagrant breach of this promise.

130.    That the CITY DEFENDANTS' and the COUNTY DEFENDANTS' release of this information was unreasonable and served no legitimate purpose, thereby violating Plaintiff-Intervenor's privacy rights under the Due Process guarantees of the Arkansas Constitution.

131.    That as a result of the CITY DEFENDANTS' and the COUNTY DEFENDANTS' conduct, Plaintiff-Intervenor suffered harm and is entitled to declaratory relief, injunctive relief, compensatory damages, punitive damages, attorneys' fees, costs, and any other available remedies and relief.

## SIXTH CAUSE OF ACTION

### 42 U.S.C. § 1983 — Fourteenth Amendment Due Process

(Against CITY DEFENDANTS and COUNTY DEFENDANTS)

132.    That Plaintiff-Intervenor re-alleges and incorporates each allegation in paragraphs 1 through 131 of this Complaint as though fully set forth herein.

133.    That on information and belief, agents and employees of the Police Department and the Sheriff's Office acting under color of law, released and distributed confidential and intimate personal information contained in Plaintiff-Intervenor's protected juvenile reports. Plaintiff-Intervenor alleges this claim against those Defendants who released, or caused to be

released, the Offense Report and Incident Report, including but not limited to the CITY DEFENDANTS and the COUNTY DEFENDANTS.

134.    That facing increasing pressure from the media, including the IN TOUCH DEFENDANTS, the CITY DEFENDANTS and the COUNTY DEFENDANTS hastily and recklessly released or authorized for release an Offense Report and Incident Report containing Plaintiff-Intervenor's highly intimate and egregiously humiliating personal details.  The CITY DEFENDANTS and the COUNTY DEFENDANTS disclosed this information despite Arkansas law protecting the information from disclosure and without consultation to DHS or other agencies involved in the FINS case.  The information disclosed was obtained during interviews given to the Police Department under the promise of confidentiality, and the CITY DEFENDANTS' and the COUNTY DEFENDANTS' disclosure of the information was a flagrant breach of this pledge.   The promise of confidentiality was instrumental in obtaining the information subsequently disclosed.

135.    That Plaintiff-Intervenor had a legitimate expectation of privacy of his highly personal information contained in his juvenile records.  The information disclosed represented the most intimate aspects of Plaintiff-Intervenor's youth and is the type of information that a reasonable person would expect to remain private while in law enforcement's possession and expunged thereafter.  Further, as part of a FINS case, Plaintiff-Intervenor's information and the resulting interviews were exempt from disclosure under the Arkansas Child Maltreatment Act and provisions of the Arkansas Juvenile Code.

136.    That the CITY DEFENDANTS' and the COUNTY DEFENDANTS' release of this information was unreasonable and served no legitimate purpose, and thereby violated Plaintiff-Intervenor's privacy rights under the Fourteenth Amendment.

137.    That as a result of the CITY DEFENDANTS' and the COUNTY DEFENDANTS' conduct, Plaintiff-Intervenor suffered harm and is entitled to declaratory relief, injunctive relief, compensatory damages, punitive damages, attorneys' fees, costs, and any other available remedies and relief.

### SEVENTH CAUSE OF ACTION

#### 42 U.S.C. § 1983 — *Monell*

(Against Defendants CITY and COUNTY)

138.    That Plaintiff-Intervenor re-alleges and incorporates each allegation in paragraphs 1 through 137 of this Complaint as though fully set forth herein.

139.    That CITY's and COUNTY's official policies, practices, customs, and/or usages violated Plaintiff-Intervenor's rights under the Fourteenth Amendment. CITY's and COUNTY's official policies, practices, customs, and/or usages directly and proximately injured Plaintiff-Intervenor, as alleged, entitling Plaintiff-Intervenor to recover damages pursuant to 42 U.S.C. § 1983.

140.    That specifically, CITY and COUNTY maintained or permitted the following official policies, practices, customs, and/or usages:

a. Permitting, condoning, and/or ratifying CITY and COUNTY employees, including members of the Police Department, the Sheriff's Office, the City Attorney's Office, and County Attorney's Office to release personal and private information obtained under the promise of confidentiality in violation of the Arkansas Juvenile Code and the Arkansas Code;

b. Failure to provide adequate training or protocols to the Police Department, the

38

Sheriff's Office, the City Attorney's Office, and County Attorney's Office regarding

appropriate disclosure of information under FOIA and the exceptions to FOIA;

c. Failure to provide adequate training or protocols to the Police Department, the Sheriff's

Office, the City Attorney's Office, and County Attorney's Office requiring consultation

with juvenile services, family services, the Municipal League, or other departments prior

to releasing information related to FINS cases;

d. Ratification by the highest levels of authority of the specific unconstitutional acts

alleged in this Complaint.

141.    That as a direct and proximate result of the official policies, practices, customs,

and/or usages, CITY and COUNTY violated Plaintiff-Intervenor's rights to privacy secured by

the Fourteenth Amendment. Plaintiff-Intervenor is therefore entitled to compensatory and

punitive damages in an amount to be proved at trial.

142.    That as a result of Defendants' conduct, Plaintiff-Intervenor suffered harm and are

entitled to declaratory relief, injunctive relief, compensatory damages, punitive damages,

attorneys' fees, costs, and any other available remedies and relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff-Intervenor demands judgment against Defendants CITY OF

SPRINGDALE, ARKANSAS; WASHINGTON COUNTY, ARKANSAS; KATHY

O'KELLEY; ERNEST CATE; RICK HOYT; STEVE ZEGA; BAUER PUBLISHING

COMPANY, L.P.; BAUER MAGAZINE, L.P.; BAUER MEDIA GROUP, INC.; BAUER,

INC.; HEINRICH BAUER NORTH AMERICA, INC.; BAUER MEDIA GROUP USA, LLC;

and DOES 1-10 for Compensatory damages, to be proven at trial; punitive Damages against

Defendants, to be proven at trial; an award of reasonable attorneys' fees, costs, and expenses to

Plaintiff-Intervenor pursuant to 42 U.S.C. § 1983, in an amount to be proven at trial; and  any

such  other and further  relief the Court deems just and proper in the circumstance.

Respectfully submitted,

STORY LAW FIRM, PLLC

By _____
Travis W. Story (2008274)
Gregory F. Payne (2017008)
438 E. Millsap Rd., Suite 103
Fayetteville, AR  72703
(479) 443-3700
Fax (479) 443-3701
travis@storylawfirm.com
greg@storylawfirm.com

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Complaint in Intervention has been served this _____ day of _____, 2017 to the following counsel by CM/ECF:

Shawn Daniels and
Sarah Jewell
Hare, Wynn, Newell and Newton, LLP
129 W. Sunbridge Drive
Fayetteville, AR  72703

Robert O'Brien,
Steven Bledsoe and
Lauren Wulfe
Larson O'Brien LLP
555 South Flower Street, Suite 4400
Los Angeles, CA  90071

_____
Travis W. Story