**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**JILL DILLARD, JESSA SEEWALD,**                                      **PLAINTIFFS**
**JINGER VUOLO, and JOY DUGGAR**

**vs.**                                   **CASE NO. 5:17-CV-05089-TLB**

**CITY OF SPRINGDALE, ARKANSAS;**                          **DEFENDANTS**
**WASHINGTON COUNTY, ARKANSAS;**
**KATHY O'KELLEY, in her individual and**
**official capacities;**
**ERNEST CATE, in his individual and official capacities;**
**RICK HOYT, in his individual and official capacities;**
**STEVE ZEGA, in his official capacity;**
**BAUER PUBLISHING COMPANY, L.P.;**
**BAUER MAGAZINE, L.P.;**
**BAUER MEDIA GROUP, INC.;**
**BAUER, INC.;**
**HEINRICH BAUER NORTH AMERICA, INC.;**
**BAUER MEDIA GROUP USA, LLC; and**
**DOES 1-10, inclusive,**

**BRIEF IN SUPPORT OF MOTION TO DISMISS ON BEHALF OF**
**SEPARATE DEFENDANTS CITY OF SPRINGDALE,**
**ERNEST CATE, IN HIS INDIVIDUAL AND OFFICAL CAPACITIES, AND**
**KATHY O'KELLEY IN HER INDIVIDUAL AND OFFICIAL CAPACITIES**

COME NOW the Separate Defendants, City of Springdale, Ernest Cate ("Cate"), in his

individual and official capacities, and Kathy O'Kelley ("O'Kelley"), in her individual and

official capacities (collectively referred to herein as the "Springdale Defendants"), by and

through the undersigned attorneys, and for their Brief in Support of Motion to Dismiss state as

follows:

**BACKGROUND[1]**

On December 7, 2006, a person associated with the *Oprah Winfrey Show* placed a call to

the Arkansas Child Abuse Hotline to report an email that was sent in advance of an appearance

---

[1] This Background is provided to the Court solely for context and not for purposes of converting this motion to dismiss to a motion under Fed. R. Civ. P. 56 nor to advance facts not set forth in the Complaint.

by Jim Bob and Michelle Duggar on the popular television show.  The email contained allegations that Josh Duggar had molested several family members and stated that Jim Bob and Michelle Duggar had worked to conceal these incidents.  Following the Hotline call, criminal investigations were conducted by the Arkansas State Police, the Springdale Police Department and the Washington County Sheriff's Department.  Various interviews of witnesses were conducted by these law enforcement agencies, including interviews of minor children who were allegedly victims of the molestation.  At the time of the investigation in 2007, Josh Duggar was an adult.  The investigations, however, were closed when it was determined that the alleged crimes occurred outside of the statute of limitations.

On May 15, 2015, an attorney in Little Rock, Arkansas, faxed a letter titled "FOIA REQUEST" to the Springdale Police Department requesting a broad range of documents related to, and identifying, the police report of the investigation of Josh Duggar ("Springdale Police Report").  The fax of the FOIA request was incorrectly routed to a mailbox for an employee who was on vacation, so the request was not found until the requesting attorney inquired near the end of the three (3) day deadline for a response under the Arkansas Freedom of Information Act.  After seeking advice from the Arkansas Municipal League, the Arkansas State Police, the Washington County Juvenile Prosecuting Attorney and the Department of Human Services, the Springdale officials determined that the Springdale Police Report, with redactions throughout of names and identifying information of any minors, must be released.  Prior to the release of this redacted Springdale Police Report, a media outlet called *In Touch Weekly*, owned by a defendant in this case, began publishing stories regarding the allegations contained in the police report.  Around the same time the Springdale Police Report was released, the Washington County

Sheriff's office released a redacted investigation report ("Washington County Incident Report") of the same incident to the same attorney in Little Rock pursuant to a similar FOIA request.

In the months that followed, the City of Springdale received and responded to volumes of FOIA requests from various news media and other parties from across the country. Several legal proceedings also occurred, including one where one or more of the Plaintiffs in this matter intervened and litigated against the City of Springdale, in which the release of information regarding the police investigation was at issue.

## I.     INTRODUCTION

The Plaintiffs have sued the Springdale Defendants alleging a violation of the Plaintiffs' constitutional rights and the commission of certain intentional torts when the City of Springdale released a redacted police report pursuant to the Arkansas Freedom of Information Act codified at Ark. Code Ann. § 25-19-101 et seq. ("FOIA"). The Plaintiffs, as stated in the Complaint, have alleged the following six causes of action against the Springdale Defendants: 1) tort of invasion of privacy – public disclosure of private fact in violation of Arkansas law; 2) tort of invasion of privacy – intrusion upon seclusion in violation of Arkansas law; 3) tort of outrage in violation of Arkansas law; 4) violation of Arkansas Constitution – due process; 5) violation of 42 U.S.C. § 1983 – Fourteenth Amendment Due Process; and 6) violation of 42 U.S.C. § 1983 – *Monell*. These six causes of action alleged against the Springdale Defendants can generally be categorized as three Arkansas tort claims and three constitutional claims.

The Springdale Defendants move to dismiss the Plaintiffs' claims against them in their entirety as a matter of law and pursuant to Fed. R. Civ. P. 12(b)(6). As more specifically set forth below: 1) qualified immunity shields Cate, individually, and O'Kelley, individually, from personal liability for the Plaintiffs' constitutional claims; 2) the Plaintiffs have failed to state a

cause of action that the Springdale Defendants violated their constitutional rights; 3) statutory immunity bars the Plaintiffs' tort claims against the Springdale Defendants; and 4) the Plaintiffs have failed to state a claim upon which relief can be granted with regard to their Arkansas tort claims.

## II.    LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, "the complaint must include sufficient factual allegations to provide the grounds on which the claim rests."   *Drobnak v. Andersen Corp*., 561 F.3d 778, 783 (8th Cir. 2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The stated claim for relief must be "plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1974. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

While the Court must accept the factual allegations in the complaint as true and construe them in favor of the plaintiff, the Court must not "presume the truth of legal conclusions couched as factual allegations." *Id.*; *See also, Wiles v. Capitol Indem. Corp*., 280 F.3d 868, 870 (8th Cir. 2002) ("[T]he court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations.").  In short, "the pleading standard that Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 555).

While the Springdale Defendants would refute many of the allegations contained in the Plaintiffs' Complaint, for this purposes of this motion they do not do so at this stage.  Regardless,

even in accepting all of the factual allegations in the Complaint as true for purposes of this motion, the Plaintiffs have failed to state a cause of action against the Springdale Defendants and the individual Springdale Defendants are entitled to qualified immunity and the case must be dismissed.

### III.    ARGUMENT

**A. Springdale Defendants Cate and O'Kelley are Entitled to Qualified Immunity in Their Individual Capacities From Plaintiffs' Constitutional Claims.**

Qualified immunity shields government officials from the burdens of litigation as well as from judgments, unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011) (quoting *Harlow v. Fitzgerald*, 475 U.S. 800, 818 (1982)). Courts have discretion which of the two prongs of the qualified immunity defense to analyze first, i.e., the "merits" question or the "clearly established" question. *Id.* at 2080; *Pearson v. Callahan*, 555 U.S. 223, 236-38 (2009).

Qualified immunity serves important policy purposes: First, "'[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments,'" and protects "'all but the plainly incompetent or those who knowingly violate the law.'" *Stanton v. Sims*, 134 S. Ct. 3, 4 (2013) (*per curiam*) (quoting *al-Kidd*, 563 U.S. at 735). Secondly, it enables courts to avoid deciding constitutional questions unnecessarily—if a right was not clearly established, a court need not determine whether the officer's actions were objectively reasonable or, as alleged in part here, violated the substantive due process component of the Fourteenth Amendment. *Reichle v. Howards*, 566 U.S. 658, 664, 132 S.Ct. 2088, 2093 (2012).

A constitutional right is not clearly established unless "every reasonable officer" would know that the action taken violated the right at issue. *Id*. That is, the constitutional question must

be "beyond debate" at the time of the challenged conduct. *Id*. A court must look only to the law that was clearly established at the time of the challenged conduct, not thereafter, for later legal developments cannot put an officer on fair notice of the constitutionality of his or her actions. *See De La Rosa v. White*, 852 F.3d 740, 745 (8th Cir. 2017) (discussing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In deciding the second prong of qualified immunity—whether the law was clearly established at the time of the challenged conduct—the Court does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *De La Rosa*, 852 F.3d at 745. "Absent a case that is controlling authority in our jurisdiction, we look for 'a robust consensus of cases of persuasive authority.'" *Id* (quoting *al-Kidd*, 563 U.S. at 731, 742).

Qualified immunity is an *immunity from suit*, which is effectively lost if a case is erroneously permitted to go to trial. *Pearson*, 555 U.S. at 231-232. (Emphasis supplied). Therefore, it is important to resolve the issue at the earliest stage possible. *Id*. at 232. An interlocutory appeal for a qualified immunity defense is available to challenge the trial court's rejection of the defense "where the defendant contends that on stipulated facts, or on the facts that the plaintiff alleges are true, or on the facts favorable to the plaintiff that the trial judge concluded the jury might find, the immunity defense is established as a matter of law because those facts show either that he 'didn't do it' or that it was objectively reasonable for him to believe that his action did not violate clearly established law." *Salim v. Proulx*, 93 F.3d 86, 90 (2d Cir. 1996) (citing *Johnson v. Jones*, 115 S. Ct. 2151, 2156 (1995)). A "district court's mere assertion that disputed factual issues exist," however, is not "enough to preclude an immediate appeal." *Salim*, 93 F. 3d at 89.

6

Additionally, the Arkansas Supreme Court has held that the legal principles that govern questions of qualified immunity in federal § 1983 claims also apply to claims brought under the Arkansas Civil Rights Act.[2] *Hudson v. Norris*, 227 F.3d 1047, 1054 (8th Cir. 2000); *See Robinson v. Langdon*, 333 Ark. 662, 667, 970 S.W.2d 292, 295 (1998). Thus, qualified immunity is appropriate for alleged violations of the Arkansas Constitution or Arkansas statutes based on actions done in an individual or official capacity. *Gentry v. Robinson*, 2009 Ark. 634, 361 S.W.3d 788 (finding County Judge immune in his official capacity because of failure to demonstrate underlying constitutional violation in response to motion for summary judgment); *Simons v. Marshall*, 369 Ark. 447, 255 S.W.3d 838 (2007); *see also Smith v. Brt,* 363 Ark. 126, 130-31, 211 S.W.3d 485, 489 (2005).

As shown below, Separate Defendants are entitled to qualified immunity because Plaintiffs cannot show that Separate Defendants violated any constitutional right possessed by Plaintiffs. Even assuming *arguendo* Separate Defendants violated any of Plaintiffs' constitutional rights, Plaintiffs cannot show that the law was clearly established at the time of the violation, such that every reasonable officer in Separate Defendants' position would know their conduct violated such right(s).

**1. The Claims Against Cate and O'Kelley Individually, Which Depend Upon the Allegation that the Release of the Redacted Report Violated Plaintiffs' Fundamental Privacy Rights, Fail When Subjected to the Qualified Immunity Analysis**

Plaintiffs allege that Separate Defendants "released and distributed confidential and intimate personal information relating to Plaintiffs' status as victims of sexual assault by their

---

[2] Plaintiffs 5th Cause of Action is a due process claim brought pursuant to the Arkansas Constitution. The Arkansas Constitution does not contain enabling legislation for violation of constitutional rights. The Arkansas Civil Rights Act of 1993, known as the Arkansas Civil Rights Act of 1993 codified at Ark. Code Ann. § 16-123-101 et seq. ("ACRA") provides a cause of action for the violation of constitutional rights, but the Plaintiffs failed to assert a claim pursuant to ACRA and therefore the Arkansas due process claim must be dismissed. In the event that the claim should be analyzed pursuant to ACRA, the Springdale Defendants offer the analysis that follows.

brother." Additionally, Plaintiffs allege that "[t]he information disclosed was obtained during interviews given by Plaintiffs to the Police Department under the promise of confidentiality," and "disclosure of the information was a flagrant breach of this pledge." Plaintiffs do not allege that the Springdale Defendants made any pledge to them of confidentiality; rather, they allege this promise was made by an Arkansas State Police Investigator.

The Supreme Court of the United States has recognized that notions of substantive due process contained within the Fourteenth Amendment safeguard individuals from unwarranted governmental intrusions into their personal lives. *Whalen v. Roe,* 429 U.S. 589, 598 n. 23, 97 S.Ct. 869, 876 n. 23, 51 L.Ed.2d 64 (1977). This right to privacy actually encompasses two separate types of interests. *Id.* at 598–99, 97 S.Ct. at 875–76. "One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." *Id* at 599–600, 97 S.Ct. at 876 (footnote omitted). At issue in this case is the former, which has been characterized as the right to confidentiality.

The protection against public dissemination of information is limited and extends only to highly personal matters representing "the most intimate aspects of human affairs." *Wade v. Goodwin,* 843 F.2d 1150, 1153 (8th Cir.), *cert. denied,* 488 U.S. 854, 109 S.Ct. 142, 102 L.Ed.2d 114 (1988). "[T]o violate [a person's] constitutional right of privacy the information disclosed must be either a shocking degradation or an egregious humiliation of her to further some specific state interest, or a flagrant bre[a]ch of a pledge of confidentiality which was instrumental in obtaining the personal information." *Alexander v. Peffer,* 993 F.2d 1348, 1350 (8th Cir. 1993). To determine whether a particular disclosure satisfies what our Court of Appeals has referred to as an "exacting standard," a court must examine the nature of the material opened to public view to assess whether the person had a legitimate expectation that the information would remain

confidential while in the state's possession. *Sheets v. Salt Lake County,* 45 F.3d 1383, 1387–88 (10th Cir.), *cert. denied,* 516 U.S. 817, 116 S.Ct. 74, 133 L.Ed.2d 34 (1995); *see also Nixon v. Administrator of Gen. Servs.,* 433 U.S. 425, 457–58, 97 S.Ct. 2777, 2797–98, 53 L.Ed.2d 867 (1977) (suggesting that an individual's legitimate expectation of privacy plays a pivotal role in this constitutional analysis).

     **a.  The Information Contained in the Redacted Springdale Police Report Does Not Establish a Violation of a Fundamental Right to Privacy.**

Plaintiffs have not pled a viable claim for invasion of their constitutional right to privacy against the Springdale Defendants and, thus, they retain immunity. The Eighth Circuit has set a demanding standard for such claims: " '[T]o violate [a person's] constitutional right of privacy the information disclosed must be either a shocking degradation or an egregious humiliation of her to further some specific state interest, or a flagrant bre[a]ch of a pledge of confidentiality which was instrumental in obtaining the personal information.' " *Eagle v. Morgan,* 88 F.3d 620, 625 (8th Cir.1996) (quoting *Alexander v. Peffer,* 993 F.2d 1348, 1350 (8th Cir.1993)). Plaintiffs have not pled any facts alleging that the Springdale Defendants intentionally invaded their constitutional right to privacy. In fact, the facts in which they have alleged, showing that Separate Defendants redacted the Springdale Police Report, show the exact opposite of intent to invade their privacy, and is at most negligence. Importantly, negligence, even gross negligence, cannot state a claim under Section 1983 and negligence, in the least, is immunized under Arkansas law for municipal officials via Ark. Code Ann. § 21-9-301. *See Hart v. City of Little Rock*, 432 F.3d 801, 805 (8th Cir. 2005) (citing *Terry B. v. Gilkey*, 229 F.3d 680, 684 (8th Cir. 2000); *Sellers By and Through Sellers v. Baer*, 28 F.3d, 895, 902–03 (8th Cir. 1994)).

### i. Plaintiffs' Allegations Fail to Establish That Identifiable Information was Released in the Redacted Springdale Police Report.

Plaintiffs do not allege acts satisfying the demanding standard to show their due process rights were violated via an alleged violation of their right to privacy. That is, Plaintiffs' allegations cannot overcome a motion to dismiss premised on qualified immunity because they fail to allege any facts constituting an underlying constitutional violation caused by the Springdale Defendants. Plaintiffs do not allege, because it is not true, that their names were released via the response to the FOIA request; rather, Plaintiffs admit that information was redacted from the Springdale Police Report. Plaintiffs also do not allege that the Springdale Defendants made any promise of confidentiality to them and, thus, cannot allege a breach of the same. Rather, Plaintiffs allege such a promise was made by an Arkansas State Police Investigator and not by the Springdale Defendants.  In no part of the Complaint do the Plaintiffs allege facts indicating that either the names of the Plaintiffs, or their ages, were disclosed.  Rather, Plaintiffs allege their opinion that they were identified and such allegations are conclusory and not entitled to be considered as true to survive a motion to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).

Consequently, the complaint fails to claim an underlying constitutional violation committed by the Springdale Defendants and the Springdale Defendants, therefore, retain qualified immunity against Plaintiffs' legal claims.

### ii. Plaintiffs' Claims Fail Because They Concede that Information from the Redacted Police Report was made public by a Media Outlet prior to the Release of the Redacted Police Report.

Paragraphs 51 and 52 of Plaintiffs' Complaint, (*Docket No. 1*) sets forth that on May 19, 2015, prior to the release of the Springdale Police Report, a media outlet published a story with the headline "'19 Kids and Counting' Son Named in Underage Sex Probe" containing specific

details contained in the police report.  In *McNally v. Pulitzer Pub. Co*., 532 F.2d 69, 79 (8th Cir. 1976) the Eighth Circuit found there was not invasion of constitutional privacy or a tortious public disclosure of private facts when facts are already known publicly.  The Court, in so ruling, relied upon the Restatement (Second) of Torts § 652D, comment c (Tent. Draft No. 13, 1967), which provides:  "There is no liability when the defendant merely gives further publicity to information about the plaintiff which is already public. Thus there is no liability for giving publicity to facts about the plaintiff's life which are matters of public record."  The fact that the news of the molestation was already published, as alleged in the Complaint at paragraphs 51 through 53, further bolster Cate's and O'Kelley's entitlement to qualified immunity.

### iii. Plaintiffs' Allegations that the County Defendant Released a Report with Identifying Information Shields the Springdale Defendants from Liability.

As set forth above, a constitutional violation must be established by the allegations or qualified immunity is appropriate.  *al-Kidd*, 131 at 2080.  The allegations in paragraph 6 of the Complaint set forth:

> "The information revealed by the under-redacted [Washington County] Incident Report permitted the public to identify each of the Plaintiffs as among the victims in the Investigation."

In contrast to the Springdale Redacted Report, here the Plaintiffs establish that the privacy violation they allege is the result of under-redaction in the Washington County Incident report. The under-redacted Washington County Incident Report was sent to the same attorney in Little Rock contemporaneous with the Springdale Police Report. This is fatal to Plaintiffs' attempts to assign liability to the Springdale Defendants for the underlying privacy violation.

**2. Any Law Requiring Prohibition of the Release of the Redacted Springdale Police Report, in Response to an FOIA Request, was not 'Clearly Established' at the Time of the Alleged Misconduct.**

Plaintiffs claim that Springdale Defendants violated their constitutional right to privacy when they released information regarding an investigation of Plaintiffs' molestation by their brother, pursuant to a FOIA request. Plaintiffs alleged that the release of this information violated Arkansas law, specifically, Ark. Code Ann. § 9-27-309(j) and Ark. Code Ann. § 12-18-104 ("Child Maltreatment Act"). However, even assuming *arguendo* that Springdale Defendants violated Plaintiffs' constitutional rights, the law was not clearly established at the time of the alleged misconduct, thus Cate and O'Kelley, individually, are entitled to qualified immunity.

In *Alexander v. Peffer,* 993 F.2d 1348, 1350 (8th Cir. 1993), the Eight Circuit said: " . . . tortious conduct even when performed under the color of law does not become a constitutional wrong." *Id*. In *Eagle*, our Court of Appeals said: " . . .courts have traditionally been reluctant to expand this branch of privacy beyond those categories of data which, by any estimation, must be considered extremely personal." 88 F.3d at 625. There, the Court, citing numerous cases, discussed various examples of information disclosures that were found to have violated a person's right to privacy and disclosures that were not. *Id*. The information disclosed in this case, does not fit any category of information found by the Eight Circuit to violate one's right to privacy.

So, alternatively, because of the facts alleged and the prevailing law, Plaintiffs have failed to allege the violation of a clearly established right by the Springdale Defendants, i.e., the issue under the second prong of the qualified immunity defense. Given that Plaintiffs' names were redacted before release and because there was no alleged promise of confidentiality or breach of the same by the Springdale Defendants, if the Court were to conclude the facts alleged

demonstrate an alleged underlying constitutional violation by the Springdale Defendants, it was not "beyond debate" at the time of the challenged conduct, i.e., release of the redacted information. Therefore, every reasonable official would not and could not know that release of the redacted information would violate the rights of the Plaintiffs and, on this basis alone, Separate Defendants retain qualified immunity.

### a. The Scope, Intent and Release Requirements of the FOIA is Clear in Arkansas Law.

There simply has been no controlling case law placing the question of releasing documents relating to an investigation of molestation of a juvenile pursuant to the Freedom of Information Act beyond debate, nor a "robust consensus of cases of persuasive authority." *De La Rosa*, 852 F.3d at 746. In fact, "[u]nlike many cases involving statutory interpretation, the FOIA specifically states the legislative intent." *City of Fayetteville v. Edmark*, 304 Ark. 179,184,801 S.W.2d 275, 277 (1990). The General Assembly's judgment, expressed in the FOIA, is that "it is vital in a democratic society that public business be performed in an open and public manner so that the electors shall be advised of the performance of public officials and of the decisions that are reached in public activity and in making public policy." Ark. Code Ann. § 25-19-102. "Toward this end," the General Assembly "adopted" the FOIA, "making it possible for [the electors] or their representatives to learn and to report fully the activities of their public officials." *Id*.

The Arkansas Supreme Court's longstanding precedent recognizes that "the intent of the FOIA establishes the right of the public to be fully apprised of the conduct of public business." *Bryant v. Weiss*, 335 Ark. 534, 538, 983 S.W.2d 902, 904 (1998). "[T]he Freedom of Information Act was passed wholly in the public interest and is to be liberally interpreted to the end that its praiseworthy purposes may be achieved. The language of the act is so clear, so

13

positive that there is hardly any need for interpretation…" *City of Fayetteville*, 304 Ark. at 184, 801 S.W.2d at 278 (quoting *Laman v. McCord*, 245 Ark. 401, 432 S.W.2d 753 (1968)). Arkansas Courts construe exemptions to the FOIA narrowly, and, "when the scope of an exemption is unclear or ambiguous, [the Court] interpret[s] it in a manner that favors disclosure." *Young v. Rice,* 308 Ark. 593, 596, 826 S.W.2d 252,254 (1992). The party alleging an exemption "has the burden of proving the records are exempt from disclosure." *Id.; see also Orsini v. State,* 340 Ark. 665, 670-71, 13 S.W.3d 167,' 170 (2000).

  The Supreme Court of Arkansas has explained:

> We liberally interpret the FOIA to accomplish its broad and laudable purpose that public business be performed in an open and public manner. Furthermore, this cou1d broadly construe the Act in favor of disclosure. **In conjunction with these rules of construction, we narrowly construe exceptions to the FOIA to counterbalance the self-protective instincts of the government bureaucracy. A statutory provision for nondisclosure must be specific. Less than clear or ambiguous exemptions will be interpreted in a manner favoring disclosure. At the same time, we will balance the interests between disclosure and nondisclosure, using a common sense approach.**

*Thomas v. Hall,* 2012 Ark. 66, 4-5, 399 S.W.3d 387, 390 (2012) (citations omitted). Thus, the actions of the individual Springdale Defendants in redacting and releasing the police report, as alleged, are clearly consistent with the Arkansas Freedom of Information Act as written and enforced through numerous opinions by Arkansas courts. The directives of the Arkansas Freedom of Information Act are unequivocal and the Arkansas Supreme Court requires prompt and comprehensive compliance with the liberal interpretation militating for prompt disclosure.

  The Complaint alleges that the Springdale Defendants were "acting under a sense of urgency" to meet a deadline to fulfill obligations under the Arkansas Freedom of Information Act. (*Complaint* at paragraph 54). The Arkansas Freedom of Information Act

requires immediate compliance with a records request. Ark. Code Ann. § 25-19-105(a)(1)(A). If the records being requested are in "active use or storage," the custodian must so certify, and must provide the records within three (3) days. Ark. Code Ann. § 25-19-105(e). Further, the statutory direction in Ark. Code Ann. § 25-19-105(f) is clear and unambiguous:

> (1) No request to inspect, copy, or obtain copies of public records shall be denied on the ground that information exempt from disclosure is commingled with nonexempt information.
> (2) Any reasonably segregable portion of a record shall be provided after deletion of the exempt information.

To enforce these requirements, the statute is penal (Ark. Code Ann. § 25-19-104) and provides for attorneys fees and costs for the prevailing plaintiff (Ark. Code Ann. § 25-19-107). Thus, there is simply no ambiguity in the case law or the statutory language of the Freedom of Information Act.

> **b. There is No Law, Clear or Otherwise, Establishing that the Child Maltreatment Act Should be Treated Differently Than Any Other FOIA Exemption.**

In comparison, there is simply no case law in Arkansas interpreting or applying the specific exemption found within the Child Maltreatment Act at Ark. Code. Ann. § 12-18-104(a), nor any law that sets forth that this exemption should be treated any differently than other exemptions to the FOIA. Therefore, the only guidance for the Springdale Defendants was the Arkansas Supreme Court admonition that FOIA is construed broadly, and its exemptions are construed narrowly "in a manner that favors disclosure." *Young, supra*.

Finally, an alleged violation of those statutes does not amount to a constitutional violation, and the statutes do not carry a private right of action for alleged unauthorized release of information. *See Gonzaga University v. Doe*, 536 U.S. 273, 283 (2002) ("[t]he question

whether Congress…intended to create a private right of action [is] definitively answered in the negative" where a "statute by its terms grants no private rights to any identifiable class."). Thus, Cate and O'Kelley are entitled to qualified immunity on this basis alone as they could not have been on notice that that their conduct would be unconstitutional where the established law commands them to redact and release.

### c.  There is No Law, Clear or Otherwise, Establishing that The Springdale Police Report Implicates the Child Maltreatment Act.

Further adding to the uncertainty involving the Child Maltreatment Act and the appropriateness of qualified immunity, there is a lack of any law establishing that a municipal police report, having the presumption of being a public record (See Ark. Code Ann. § 25-19-103(7)(A) ("[a]ll records maintained in public offices or by public employees within the scope of their employment shall be presumed to be public records), would be, in its entirety, exempt from the FOIA.   There is no law that implicates the Springdale Defendants, nor includes the Springdale Police Report, as an "other entity authorized" by the Child Maltreatment Act.   See Ark. Code Ann. § 12-18-104.   The Complaint alleges at paragraphs 39 through 45 that the Springdale Police Report was produced prior to any action regarding a FINS case.   As such, and without further guidance from Arkansas Courts of the Child Maltreatment Act, Cate and O'Kelley could not have been on notice that redacting and releasing a presumed public record would even violate state law, let alone the constitutional rights of the Plaintiffs.   This uncertainty and lack of clearly established law is the very heart of qualified immunity, and is why Cate and O'Kelley are entitled to its application.

### d.  The Arkansas Juvenile Code Does Not Apply.

Plaintiffs' Complaint at paragraph 71 refers to the Arkansas Juvenile Code at Ark. Code Ann. § 9-27-309(j) for argument that the redacted police or incident reports should not have been released.  That statute states:

> Records of the arrest of a juvenile, the detention of a juvenile, and the proceedings under this subchapter shall be confidential and shall not be subject to disclosure under the [FOIA]….

There are no allegations in the Complaint that Josh Duggar was a juvenile at the time of the investigation contained in the Springdale Police Report, nor are there any allegations that he was arrested or detained as required to invoke this statute.  As such, any claims depending upon the Arkansas Juvenile Code are inapposite and should fail.

### B.  Springdale Defendants are Entitled to Both Statutory and Qualified Immunity From Plaintiffs' Tort Claims Based on Ark. Code Ann. § 21-9-301(a) and Arkansas Supreme Court Precedent.

The Springdale Defendants argue that they are entitled to statutory immunity pursuant to Ark. Code Ann. § 21-9-301(a) for the torts of invasion of privacy by public disclosure of private fact, invasion of privacy by intrusion upon seclusion, and tort of outrage. Ark. Code Ann. § 21-9-301(a) provides:

> It is declared to be the public policy of the State of Arkansas that all counties, municipal corporations, school districts, public charter schools, special improvement districts, and other political subdivisions of the state and any of their boards, commissions, agencies, authorities, or other governing bodies shall be immune from liability and from suit for damages except to the extent that they may be covered by liability insurance.

First, despite the allegations being labeled as an "intentional tort," the factual allegations in the Complaint, even if taken as true, amount to nothing more than negligence, thus the Springdale Defendants retain statutory immunity. The Arkansas courts have found that while the "[tort] may

be categorized as an "intentional tort," an analysis of the application of qualified immunity does not stop with that determination. "Simply because an actor's conduct satisfies the type of intent necessary to establish the [tort], it does not follow that the same conduct is necessarily an intentional tort act that bars an application of the doctrine of qualified immunity." *Williams v. Pate*, 2015 Ark. App. 327, 463 S.W.3d 734, 737 (2015). It is not the legal claim that the Court should look to in deciding whether immunity applies for a state tort; rather, as the Arkansas Supreme Court recently made clear, the Court should look to the facts. *Trammell v. Wright*, 2016 Ark. 147, 489 S.W.3d 636 (2016); See *Autry v. Lawrence*, 286 Ark. 501, 696 S.W.2d 315 (1985) (finding that immunity applied against the state intentional tort of malicious prosecution); *See also City of Alexander v. Doss*, 102 Ark. App. 232, 283 S.W.3d 74 (2008) (qualified immunity applied to intentional tort where there was no deliberate conduct). And here, although denied, assuming *arguendo* negligence, the Springdale Defendants are immune from suit.

Second, the Springdale Defendants cannot be liable for an intentional tort under § 21-9-301, because it is clear that the Arkansas General Assembly intended municipalities and their employees to be entitled to immunity for *all* torts under this statute. This argument was discussed in *Trammell*, but not decided. 2016 Ark. at 639.

"Municipal immunity for governmental functions has been the rule in Arkansas for over a hundred years." *Matthews v. Martin*, 280 Ark. 345, 346, 658 S.W.2d 374, 375 (1983). Three key arguments show why the statute should apply to all torts and not just negligence. First, Arkansas courts have applied the statute, albeit inconsistently, to intentional torts in the past. Second, statutory construction requires the statute to be applied to intentional torts because the language itself is clear and unambiguous. Finally, the policy and intent of the statute was to protect municipalities from "high judgments," whether from negligent or intentional torts. Accordingly,

there is a good faith argument that Separate Defendants are entitled to dismissal because they have immunity from all tort claims under § 21-9-301.

### 1.   Ark. Code Ann. § 21-9-301(a) is not Consistently Applied to Intentional Torts.

While it is true that the Arkansas Supreme Court has held that § 21-9-301 only immunizes cities and city officials from negligence actions, *see Deitsch v. Tillery*, 309 Ark. 401, 833 S.W.2d 760 (1992), no case provides explanation for how the court arrived at this interpretation. In *Deitsch*, the court cited to *Waire v. Joseph*, 308 Ark. 528, 825 S.W.2d 760 (1992), and in *Waire* the court cited to *Battle v. Harris*, 298 Ark. 241, 766 S.W.2d 431 (1989). The court simply stated that Ark. Code Ann. § 21-9-301 was never interpreted to include intentional torts committed by public officials. 241 Ark at 245, 766 S.W.2d at 433.

However, prior to *Battle*, courts did apply the statute to intentional torts. In *Autry v. Lawrence*, 286 Ark. at 503, the court applied the immunity provided by the statute to an action against a police officer for the tort of malicious prosecution. In *Harrington v. City of Greenbrier*, the court applied this immunity to the tort of "deliberate fraud." 262 Ark. 773, 775, 561 S.W.2d 302, 304 (1978). Federal courts applying Arkansas law have granted immunity under the statute for intentional torts as well. See *Mosier v. Robinson*, 722 F. Supp. 555, 556 (W.D. Ark. 1989) (granting summary judgment to the county when a sheriff, while under the influence of alcohol, was alleged to have beaten a person in custody); *Dumond v. Conlee*, 710 F. Supp. 1270, 1273 (E.D. Ark. 1988) (finding the county to be immune under the above statute when a sheriff was alleged to have seized a castration victim's testicles, placed them in a jar, showed them to visitors in the sheriff's office, and ultimately flushed them down the toilet).

Even after *Battle*, courts sometimes applied the statute to intentional torts. In *Loren D. Buttolph Trust v. Jarnagan*, the court held that a mayor/waterworks manager was immune from

liability under the statute for refusing to provide water service to a non-resident customer. 302 Ark. 393, 394–95, 789 S.W.2d 466, 467 (1990). In *City of Alexander v. Doss*, the Arkansas Court of Appeals stated that actions for trespass would be immunized under § 21-9-301. 102 Ark. App. at 236. Even more recently, in July of 2011, an Arkansas court held that an officer had qualified immunity from a claim of intentional battery based on § 21-9-301. *Brooks v. Hallum*, 2010 Ark. App. 193, 12, 374 S.W.3d 152, 160 (2010).  The case law indicates the courts' willingness to apply the statute to intentional torts, and is void of justification for the current application of the law. Going forward, the statute should be applied consistently to all torts based on the language and the policy reasons of the statute.

> **2. The Language of Ark. Code Ann. § 21-9-301 is Clear and Unambiguous and, Under the Rules of Statutory Construction, the Statute Should be Applied to Intentional Torts.**

"The first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language." *Quanex Ark. Okla. Gas Corp. v. Macsteel Div. of Quanex*, 370 Ark. 481, 485, 262 S.W.3d 147, 150 (2007) (citing *Weiss v. McFadden*, 353 Ark. 868, 120 S.W.3d 545 (2003). "Where the language of a statute is clear and unambiguous and susceptible of a sensible construction, resort to extrinsic and collateral aids in construing it is not permitted. *Britt v. State*, 261 Ark. 488, 495, 549 S.W.2d 84, 87 (1977) (citing *Cross v. Graham*, 224 Ark. 277, 272 S.W.2d 682 (1954)); *Ark. State Licensing Board for General Contractors v. Lane*, 214 Ark. 312, 215 S.W.2d 707 (1948). "A statute is ambiguous only where it is open to two or more constructions, or where it is of such obscure or doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning." *City of Fort Smith v. Carter*, 364 Ark. 100, 108, 216 S.W.3d 594, 599 (2005) (citing *ACW, Inc. v. Weiss*, 329 Ark. 302, 947 S.W.2d. 770 (1997).  Statutes are construed "so that no

word is left void, superfluous or insignificant," and every word is given meaning and effect if possible. *Weiss v. Maples,* 369 Ark. 282, 286, 253 S.W.3d 907, 911 (2007); *Jeske*, 365 Ark. at 279, 229 S.W.3d at 23; *See also* Fitzhugh, *supra.*

The language of Ark. Code Ann. § 21-9-301 is clear and unambiguous. *See Hardin v. City of Devalls Bluff*, 256 Ark. 480, 483, 508 S.W.2d 559, 562 (1974) (*quoting Sullivan, Adm'r. v. Pulaski Cnty.*, 247 Ark. 259, 445 S.W.2d 94 (1969) (stating that a previous version of the act was "a statement of public policy that is plain and unambiguous and leaves no room for doubt."). The statute plainly states that municipalities "shall be immune from liability and from suit for damages." Ark. Code Ann. § 21-9-301 (a). It is the court's duty "to declare what the law is, and not what it ought to be." *Hardin*, 256 Ark. at 485. No language in the statute indicates that the immunity applies only to negligent torts. Conversely, the counterpart tort immunity statute that applies to state employees, Ark. Code Ann. § 19-10-305, contains an exception to immunity for malicious acts or omissions. No such excepting language is in the municipal tort immunity statute. There is no such basis to interpret such limiting language in the municipal tort immunity statute. Had the legislature intended to include such limiting language, it would have done so. To interpret as such requires the addition of words to the statute that are plainly not there.

**3. The Intent of the Legislature in Enacting Ark. Code Ann. § 21-9-301 was to Protect Municipalities From "High Judgments," Whether From Negligent or Intentional Torts.**

"The basic rule of statutory construction is to give effect to the intent of the legislature." *Weiss v. Maples*, 369 Ark. at 286; *State ex rel. Ark. Dep't of Parks and Tourism v. Jeske*, 365 at 285. "[W]e ascertain the legislative intent from the language used in the statute itself." *Britt v. State*, 261 at 495.

In a concurring opinion in *Southwest Ark. Communications, Inc. v. Arrington*, Justice Glaze lamented that the lack of a system of record keeping for proceedings in the General Assembly makes it difficult to construe the intent of the legislators. 296 Ark. 141, 149, 753 S.W.2d 267, 271 (1988) (Glaze J., concurring). The paucity of information regarding legislative history in Arkansas makes it necessary to rely on the Act itself and its title to ascertain the intent of the legislature. *Id*. at 148, 270; *See also Consumers Utilities Rate Advocacy Division v. Ark. Public Svc. Comm'n*, 99 Ark. App. 228, 235, 258 S.W.3d 758, 765 (2007) ("The title of an act, while not part of the law, may be referred to in order to help ascertain the intent of the General Assembly").

Here, Ark Code. Ann. § 21-9-301 was initially enacted as Act 165 in 1969. The title of the Act reads as follows:

> AN ACT to Declare It to Be the Public Policy of the State of Arkansas That the State and Its Political Subdivision Shall Not Be Liable for Tort Under the Laws of the State of Arkansas and to Provide That No Action Shall Be Maintained Therefor; to Require All Political Subdivisions to Carry Liability Insurance On Their Motor Vehicles; to Declare An Emergency; and for Other Purposes.

Section 4 of the Act reads:

> It is hereby found and determined by the General Assembly that because of the decision of the Arkansas Supreme Court in Parish v. Pitts, 244 Ark. 1239, municipalities and all units of local government are in imminent danger of bankruptcy because of tort lawsuits and vital public services are in danger of being discontinued. Therefore, an emergency is hereby declared to exist and this Act being immediately necessary to protect the public peace, health and safety, shall take effect immediately on its passage and approval.

In *Thompson v. Sanford*, the court recognized that the valid legislative purpose of Ark. Code. Ann. § 21-9-301 involved the need for immunity to protect governmental entities "from exposure to high judgments which would destroy them." 281 Ark. 365, 368, 663 S.W.2d 932, 934 (1984); s*ee also White v. City of Newport*, 326 Ark. 667, 672, 933 S.W.2d 800, 803 (1996).

22

The language of the Act clearly and unambiguously shows that the intent of the legislature was to protect the municipalities from high judgments. There is no indication that the concern expressed by the legislature in Section 4 of the Act was limited only to negligent torts. Actions based on intentional torts have just as much potential to result in high judgments as do actions based on negligence. There is nothing to indicate that the legislature intended to protect governmental entities from only judgments resulting from negligence claims and not claims based on intentional torts. Based on the language and policy of the statute, the court should find that Ark. Code Ann. § 21-9-301 applies equally to negligence claims and intentional tort claims, and accordingly, find that Springdale Defendants are immune from suit and entitled to dismissal of this action.

## C. Plaintiffs' Claims Against the City of Springdale Under § 1983-*Monell* Should be Dismissed for the Failure to State a Constitutional Violation.

Plaintiffs have also sued the City of Springdale ("City") explicitly and implicitly by suing the named Defendants in their official capacities. Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; in this case, the City. *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). Plaintiffs cannot prevail on their claims against the City because there is no underlying constitutional violation, as discussed above. Absent such, a municipality may not be held liable under § 1983. *Los Angeles v. Heller*, 475 U.S. 796 (1986). Assuming *arguendo* the existence of an underlying constitutional violation, a dismissal of Plaintiffs' claims is appropriate because they have not stated facts alleging that a custom, policy, or practice of the City acted as the motivating force behind the alleged constitutional violations. They have also not stated facts sufficient to allege that the City failed to train its officers.

1. **Plaintiffs Have Not Pled Factual Allegations Sufficient to Establish that a Custom, Policy, or Practice of the City Acted as the Motivating Force Behind the Alleged Constitutional Violation.**

Even assuming a violation, the City may be held liable only if an official municipal policy or widespread custom is the moving force behind a constitutional violation. *Wedemeier v. City of Ballwin*, *Mo*., 931 F.2d 24, 26 (8th Cir. 1991). The policy or custom requirement means that a municipality cannot be held vicariously liable for its employees' unconstitutional acts. *Monell v. Dept of Social Servs.*, 436 U.S. 658, 691 (1978); *see also Springdale Educ. Assn*. v. Springdale Sch. Dist., 133 F.3d 649, 651 (8th Cir. 1998)(local government cannot be held liable under § 1983 on respondeat superior theory).

Additionally, liability may be imposed not only where the challenged conduct executes or implements a formally adopted policy, but also where the conduct reflects practices of government officials "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell*, 436 U.S. at 691 (quoting *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)); *see also Springdale Educ. Assn*., 133 F.3d at 651.  To establish the existence of a municipal custom, Plaintiffs must demonstrate: (1) the existence of a widespread, continuing pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to, or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that they were injured by acts pursuant to the alleged custom. *Thelma D. ex. rel. Delores A. v. Bd. of Educ.,* 934 F.2d 929, 932–33 (8th Cir.1991). "To establish a city's liability based on its failure to prevent misconduct by employees, the plaintiff must show that city officials had knowledge of <u>prior</u> incidents of police misconduct and deliberately failed to take remedial action." *Andrews v. Fowler*, 98 F.3d 1069, 1075 (8th Cir. 1996) (emphasis supplied) (quoting *Parrish v. Luckie*, 963 F.2d 201, 204 (8th Cir.

1992).

First, Plaintiffs' Complaint fails to identify or cite to *any* official policy or custom of the City of Springdale that is so widespread that it has the force of law, and would be responsible for the alleged harm. This failure alone is grounds for dismissal of the City from this suit, with prejudice, per a previous ruling by the United States Court of Appeals for the Eighth Circuit *Springdale Educ. Assn.* 133 F.3d at 652-53 (affirming dismissal by District Court of complaint failing to allege policy or custom). Furthermore, Plaintiffs fail to allege facts that establish a violation of their constitutional rights based on policy, custom, or practice. Rather, the allegations in Plaintiffs' Complaint are merely conclusory, and such allegations are not entitled to be considered as true to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. at 681.

Additionally, it is important to note that Cate is the City Attorney for the City of Springdale, and O'Kelley is the former Chief of Police for the City of Springdale. Neither have the authority to hold the City liable because they are not final policymakers. It is not enough that a chief of police might be a "principal" policymaker in order to hold the city liable; rather he must be the "final" policymaker whose actions were unconstrained by further significant review or written policies. *McGautha v. Jackson County, Mo. Collections Dept*., 36 F.3d 53, 56 (8th Cir. 1994), *cert. denied,* 115 S.Ct. 2561.  What person has the final authority to make policy with respect to a particular issue is a question of state law.  *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 737 (1989).  This is a legal question that must be resolved by the court prior to submitting the case to a jury. *Id.* Arkansas state law places the final policymaking authority for police departments on the City Council in cities of the first class (Springdale is a city of the first class). *Brinkley v. Helena-West Helena*, 2014 WL 4164614, at *4 (E.D. Ark. Aug. 21, 2014) (citing *Breedlove v. City of Coal Hill*, Civil No. 08-2018, 2009 WL 160301, *6 (W.D. Ark. Jan. 21,

2009); *Graves v. Sullivan*, No. 4:06-CV-1710 SWW (E.D. Ark. May 21, 2008)). In other words, none of the Springdale Defendants are final policy makers, and an isolated violation by one who is not a final policy maker is insufficient to establish a municipal policy or custom, *see City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985).

## 2. Plaintiffs Have Not Pled Factual Allegations Sufficient to Establish Municipal Liability Based on Failure to Train.

A plaintiff may establish municipal liability by presenting evidence demonstrating that the city failed to adequately train its employees. *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010).  To state a claim for a city's failure to train, a plaintiff must show: (1) the municipality's training practices were inadequate; (2) the municipality was deliberately indifferent to the rights of others when adopting them, such that the failure to train reflects a deliberate or conscious choice; and (3) a deficiency in the training procedures actually caused the plaintiff's injury. *Id*. (citing *Andrews* 98 F.3d at 1076.

"In other words, the plaintiff must demonstrate that the city had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *Andrews*, 98 F.3d at 1076 (quoting *Thelma D. v. Bd. of Educ.*, 934 F.2d at 934 (internal quotations omitted)). "Notice may be implied when (1) the failure to train is so likely to result in a constitutional violation that the need for training is patently obvious or (2) a pattern of misconduct indicates that the current training is insufficient to protect citizens' constitutional rights." *Thelma* 934 F.2d at 934-935. Where the plaintiff claims that the municipality did not directly injure them, but caused an employee to do so, the causation standard is a "rigorous" one. *Parrish*, 594 F.3d at 1000 (citing *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 390 (8th Cir. 2007) (en banc)).

In order to succeed on a failure to train claim, Plaintiffs must prove that an alleged failure to train "actually caused" the constitutional deprivation of which they complain. *Parrish* 594

F.3d at 1002 (quoting *Andrews* 98 F.3d at 1078). Plaintiffs have not alleged sufficient facts to establish a constitutional violation based on a failure to train. Rather, Plaintiffs' allegations are merely conclusory, and therefore are not entitled to be considered as true to survive a motion to dismiss. *Iqbal* 556 at 681. Plaintiffs do not allege that Springdale Defendants had any notice of any alleged inadequate training, or that the alleged failure to train actually caused a violation of their constitutional rights. For these reasons, Plaintiffs' claims against the City should be dismissed.

### D. Plaintiffs Have Failed to Allege Intentional Conduct Requisite for Intentional Torts under Arkansas Law.

#### 1. No Facts Alleged to Establish the Tort Outrage Against the City Defendants.

In order to establish a prima facie case for their outrage claims, the Plaintiffs must show: (1) Springdale Defendants intended to inflict emotional distress or willfully and wantonly knew or should have known that emotional distress would be the likely result of their conduct; (2) the conduct was extreme and outrageous; (3) the actions of the Springdale Defendants were the cause of the Plaintiffs' distress; and (4) the emotional distress sustained by the Plaintiff was so severe that no reasonable person could be expected to endure it. *Finch v. Texarkana Sch. Dist. No. 7 of Miller Cty.,* 557 F. Supp. 2d 976, 984–85 (W.D. Ark. 2008)*; Thornton v. Squyres*, 317 Ark. 374, 376, 877 S.W.2d 921 (1994).  By accepting the allegations in the Complaint as true, the Plaintiffs have failed to state a claim upon which relief may be granted.    As this Court has previously held:

> "The test for outrage is an extremely narrow test that is committed by the most heinous conduct." *Forrest City Mach. Works, Inc. v. Mosbacher,* 312 Ark. 578, 585, 851 S.W.2d 443, 447 (1993). "Merely describing the conduct as outrageous does not make it so." *Fuqua v. Flowers*, 341 Ark. 901, 907, 20 S.W.3d 388, 392 (2000). Extreme and outrageous conduct is conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to

be regarded as atrocious, and utterly intolerable in a civilized society.*" M.B.M. Co., Inc. v. Counce*, 268 Ark. 269, 280, 596 S.W.2d 681, 687 (1980).

*Wolfe v. Fayetteville, Arkansas Sch. Dist*., 600 F. Supp. 2d 1011, 1022 (W.D. Ark. 2009).

The case of *Wolfe v. Fayetteville* is analogous to the issue at bar, and this Court's legal analysis contained therein is applicable to the present facts.   *Id.*   In *Wolfe,* the plaintiffs, as next of friends of WW, alleged that over the course of several years the juvenile was subjected to anti-gay harassment by his fellow-students in the Fayetteville School District.   The Plaintiffs further claimed that the response by the Fayetteville School District was inadequate and violated Arkansas law. The plaintiffs alleged that a vice principal within the school district (1) inquired into WW's sexual orientation on multiple occasions; (2) stated that WW "got what he deserved" in response to an altercation with another student; (3) turned over student records regarding WW, which were protected from disclosure pursuant to federal law, and were subsequently then published in the Northwest Arkansas Times; and (4) engaged in an untruthful public relations campaign with members of the media regarding WW.    The plaintiffs alleged multiple claims against the school district, including the tort of outrage.

In analyzing the outrage claim, this Court determined that the plaintiffs failed to allege a cause of action for the tort of outrage.   This Court reasoned "the truly egregious conduct at issue in this case was that of students [accused of bullying WW], not of [the school district official]. The students' conduct, while it may evidence an inadequate response on the part of the [official], cannot be imputed to him to make his conduct shocking." *Id.*

Similarly, in the present case, the truly egregious conduct at issue was that of Josh Duggar and not the Springdale Defendants.   The allegations against the Springdale Defendants amount to, at their best, the negligent release of a redacted police report.   Such alleged actions by the Springdale Defendants are not so outrageous in character or so extreme in degree that they go

beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society as a matter of law.   Further, there are *no* factual allegations in the Complaint that they Springdale Defendants "intended to inflict emotional distress or willfully and wantonly knew or should have known that emotional distress was the likely result of their conduct" as a required element of the tort.   As such, the Plaintiffs' state law claim for outrage must be dismissed.

Alternatively, City Defendants are entitled to statutory immunity with respect to the claim of outrage pursuant to Ark. Code Ann. § 21-9-301(a) for the reasons set forth in *Wolfe*, supra.

### 2. The Plaintiffs Have Failed to Allege a Cause of Action for the Tort of Invasion of Privacy – Public Disclosure of Private Facts Under Arkansas Law.

Arkansas Courts have recognized that there are four actionable forms of the tort of invasion of privacy: (1) appropriation; (2) intrusion; (3) public disclosure of private facts; and (4) false light in the public eye. *Jegley v. Picado*, 349 Ark. 600, 80 S.W.3d 332 (2002); *Cannady v. St. Vincent Infirmary Med. Ctr.*, 2012 Ark. 369, 4 (Ark. Oct. 4, 2012).  There are, however, few cases on the tort of invasion of privacy – public disclosure of private facts, and so the Arkansas Model Jury Instructions help to establish the required elements and burden. See *Ark. Model Jury Instr*. 422.

As set discussed in more detail above and in paragraphs 51 and 52 of Plaintiffs' Complaint, news reports of details in the police reports were published before the release of the Springdale Police Report, therefore the element of lack of public knowledge cannot be met. Further, Plaintiffs' notoriety is clear from the Complaint, from the discussion of their television show to mention of online blogs dedicated or concerned with their public identity.  Such public notoriety indicates that Plaintiffs cannot establish that the redacted Springdale Police Report was

not a matter of legitimate public concern.  See *Id*.  See also *McCambridge v. City of Little Rock*, 298 Ark. 219, 766 S.W.2d 909 (1989) (intimate details contained in a handwritten suicide and other personal details could not be kept from disclosure for the FOIA because that the governmental interest in disclosure under the FOIA outweighed the father's privacy interest). Further, the United States Supreme Court has held that the First Amendment limits the availability of civil damages for truthful publication of lawfully obtained information concerning a matter of public concern.  See *Bartnicki v. Vopper*, 532 U.S. 514, 121 S.Ct. 1753 (2001); *Florida Star v. B.L.F.*, 491 U.S. 524, 109 S.Ct. 2603 (1989).   Ultimately, Plaintiffs cannot maintain a claim for this tort.

Because the Complaint fails to meet the elements required to bring a claim for invasion of privacy by public disclosure of private facts under Arkansas law, Plaintiffs' claim should be dismissed.

### 3.   The Plaintiffs Have Failed to Allege a Cause of Action for the Tort of Invasion of Privacy – Intrusion Upon Seclusion, Under Arkansas Law.

Arkansas Courts have found that a claim for the tort of invasion of privacy by intrusion upon seclusion would follow the elements as set forth in the Restatement (Second) of Torts.  The Restatement defines liability for intrusion upon seclusion as follows: "One who intentionally intrudes, physically or otherwise, upon the solicitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person Restatement (Second) of Torts § 652B (1977)". *Fletcher v. Price Chopper Foods of Trumann, Inc*., 220 F.3d 871, 875 (8th Cir. 2000).  Arkansas Courts have set forth the required elements of the tort as follows:

First, that he sustained damages;

Second, that the defendant intentionally intruded physically or otherwise

upon plaintiff's solitude or seclusion and believed or was substantially certain that he lacked the necessary legal authority or personal permission, invitation, or valid consent to commit the intrusive act;

Third, that the intrusion was of a kind that would be highly offensive to a reasonable person, as the result of conduct to which a reasonable person would strongly object;

Fourth, that the plaintiff conducted himself in a manner consistent with an actual expectation of privacy; and

Fifth, that the defendant's intrusion was the proximate cause of the plaintiff's damages.

*Coombs v. J.B. Hunt Transp., Inc*., 2012 Ark. App. 24, 4-5 (2012) (citing *Ark. Model Jury Instr*. 420 (2011)).

There is no allegation in the Plaintiffs' Complaint that the Springdale Defendants intentionally intruded upon their solitude or seclusion.  Furthermore, as set forth in detail above, there is no allegation that the Springdale Defendants made a promise of confidentiality to the Plaintiffs as the Complaint in paragraph 41 sets forth that such promise was made by the Arkansas State Police.   As set forth in *Coombs*, an essential element to the tort requires that defendant "believed or was substantially certain that he or she lacked the necessary legal authority or personal permission."   Plaintiffs' Complaint contains no allegation that the Springdale Defendants believed, or were substantially certain, that they lacked the necessary legal authority to release the redacted report.[3]  Paragraphs 46 through 57 of the Complaint contain allegations that Cate and O'Kelley consistently acted under the belief that they were not only authorized, *but required*, the released the redacted report.  Because the allegations of the Complaint fail to meet the required elements of the tort, this claim should fail.

_____

[3] Plaintiffs' Complaint in Paragraph 103 mistakenly assigns liability because the Springdale Defendants "knew or *should have known*" that they did not have authority.  This negligence standard is inapplicable.

## IV.    CONCLUSION

In their Complaint against the Springdale Defendants the Plaintiffs use such turns of phrase as "contrary to the bounds of human decency" and "basic notions of civility and personal dignity" and "horrible and blatant re-victimization" in order to advance claims for damages against the City of Springdale and its public servants as well as others.   The allegations of fact in the Complaint, rather than the hyperbolic turns of phrase, are assumed to be true at this stage, yet a close examination of the alleged facts reveals that individual Springdale Defendants acted not outrageously, but well within the protection provided by the doctrine of qualified immunity. Because there are substantial legal doubts as to whether Cate and O'Kelley violated a constitutional right, and even more doubts as to whether their actions violated "clearly established law", the claims against them should be dismissed as a matter of law.  Further, such allegations are deficient to establish liability under the tort theories claimed by the Plaintiffs and should be dismissed for failure to state a claim.   Lastly, the individual are entitled to tort immunity from all claims.

Respectfully Submitted,

/s/ R. Justin Eichmann
R. Justin Eichmann (Ark. Bar No. 2003145)
E-mail:  jeichmann@arkansaslaw.com
Thomas N. Kieklak (Ark. Bar No. 92262)
Email:  tkieklak@arkansaslaw.com
HARRINGTON, MILLER, KIEKLAK,
EICHMANN & BROWN, P.A.
4710 S. Thompson, Suite 102
Springdale, AR  72764
Phone: (479) 751-6464
Fax: (479) 751-3715

and

Susan Keller Kendall (Ark. Bar No. 98119)
KENDALL LAW FIRM, PLLC
3706 Pinnacle Hills Parkway, Suite 201
Rogers, Arkansas 72758
Email:  skk@kendalllawfirm.com
Phone: (479) 464-9828
Fax: (479) 464-9768
**COUNSEL FOR SPRINGDALE
DEFENDANTS**

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that on the 29th day of June, 2017, a true and correct copy of the above and foregoing Brief in Support of Motion to Dismiss on Behalf of Separate Defendants was filed with the Clerk via the CM/ECF system which will send notification of filing to the following:

Lauren S. Wulfe
Robert C.  O'Brien
Steven E. Bledsoe
LARSON O'BRIEN, LLP
555 S. Flower Street
Suite 4400
Los Angeles, CA 90071
(213) 436-4888
lwulfe@larsonobrienlaw.com
robrien@larsonobrienlaw.com
sbledsoe@larsonobrienlaw.com

Shawn B. Daniels
Sara C. Jewell
HARE, WYNN, NEWELL & NEWTON, LLP
129 W. Sunbridge Drive
Fayetteville, AR 72703
479-521-7000
Fax: 479-437-2007
shawm@hwnn.com
sjewell@hwnn.com

Cynthia W. Kolb
CROSS, GUNTER, WITHERSPOON & GALCHUS, P.C.
500 President Clinton Avenue
Suite 200
Little Rock, AR 72201
(501) 371-9999
Fax: (501) 371-0035
ckolb@cgwg.com

/s/ R. Justin Eichmann
R. Justin Eichmann
Arkansas Bar No. 2003145
HARRINGTON, MILLER, KIEKLAK,
EICHMANN AND BROWN, P.A.
*Attorney for Springdale Defendants*
4710 S. Thompson, Suite 102
Springdale, AR 72764
(479)751-6464