**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION**

| | |
|---|---|
| **JILL DILLARD, JESSA SEEWALD, JINGER VUOLO, and JOY DUGGAR** | **PLAINTIFFS** |
| vs.   CASE NO. 5:17-5089-TLB | |
| **CITY OF SPRINGDALE, ARKANSAS; WASHINGTON COUNTY, ARKANSAS; KATHY O'KELLEY, in her individual and official capacities; ERNEST CATE, in his individual and official capacities; RICK HOYT, in his individual and official capacities; STEVE ZEGA, in his official capacity; BAUER PUBLISHING COMPANY, L.P.; BAUER MAGAZINE, L.P.; BAUER MEDIA GROUP, INC.; BAUER INC.; HEINRICH BAUER NORTH AMERICA, INC.; BAUER MEDIA GROUP USA, LLC; and DOES 1-10, inclusive** | **DEFENDANTS** |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO COUNTY DEFENDANTS' MOTION TO DISMISS**

**I.   INTRODUCTION**

This case is about the failure of Washington County (the "County"), Arkansas and officials and employees of the County, including Rick Hoyt and County Attorney Steve Zega (collectively with the County, the "County Defendants") to afford Plaintiffs, as minor victims of sexual molestation, privacy rights guaranteed by the federal and state constitution and Arkansas law. These rights were violated by County Defendants' improper and unlawful release of an Incident Report containing the intimate and humiliating details of Plaintiffs' sexual molestation allegations against their brother, Josh Duggar. Borrowing almost entirely from the City Defendants'

motion,[1] the County Defendants' Motion to Dismiss ("MTD"),[2] asserts that all claims against the County Defendants must be dismissed because they are entitled to qualified and statutory immunity and Plaintiffs failed to plead sufficient facts to support their claims. As with the City's motion to dismiss, these arguments, must fail as they misconstrue the allegations in the Complaint and the applicable law.

Defendant Hoyt has not satisfied his burden to establish qualified immunity. Relying largely on City Defendants' motion to dismiss, Defendant Hoyt ignores the actual allegations in the Complaint to argue that Plaintiffs have not demonstrated a fundamental privacy right in the information revealed by the Incident Report. Taking the Complaint as a whole, however, it is clear that Plaintiffs have demonstrated a fundamental right to privacy in the contents of the Incident Report under both state and federal law. Given the prior rulings on the subject, including cases protecting the rights of sexual assault victims, *see Bloch v. Ribar*, 156 F.3d 673, 686 (6th Cir. 1998); *Stafford-Pelt v. State of Calif.*, No. C-04-00496 RMW, 2005 WL 1457782, at *5 (N.D. Cal. June 20, 2005), and documented Freedom of Information Act exceptions for victim and minor information, *see* Ark. Code Ann. § 12-18-104(a); § 9-27-309(j); § 16-90-1104(b), the law was clearly established and Defendant Hoyt violated the law.

County Defendants' assertion of statutory immunity, which simply incorporates City Defendants' arguments wholesale, is equally inapplicable. Federal courts are bound by the Arkansas Supreme Court's ruling that statutory immunity applies only to negligence-based torts, not intentional torts as alleged here. *See Curtis Lumber Co. v. La. Pac. Corp.*, 618 F.3d 762, 771 (8th Cir. 2010) ("We are bound by decisions of the Arkansas Supreme Court as to the meaning

---

[1] City Defendants' Motion to Dismiss and Brief in Support are Docs. 21 and 22, respectively; Plaintiffs' Response in Opposition is Doc. 32.
[2] County Defendants' Motion to Dismiss and Brief in Support are Docs. 29 and 30, respectively.

2

of Arkansas law."); *Deitsch v. Tillery*, 309 Ark. 401, 833 S.W.2d 760 (1992); *City of Fayetteville v. Romine*, 373 Ark. 318, 320 S.W.3d 10 (2008). Moreover, County Defendants have failed to meet their burden of demonstrating that no liability policy exists or applies, as required under the statutory immunity case law. Ark. Code Ann. § 21-9-301(a); *Vent v. Johnson*, 2009 Ark. 92, 303 S.W.3d 46 (2009).

Further, given that Plaintiffs need only allege facts establishing a plausible entitlement to relief, County Defendants' other allegations fail. When viewed in its totality, the Complaint presents sufficient facts to survive a motion to dismiss.

For the reasons set forth herein, County Defendants' MTD should be denied.

## II.   RELEVANT FACTS

In December 2006, the Springdale Police Department initiated an investigation (the "Investigation") into allegations that Plaintiffs and one other female had been sexually assaulted on several occasions in 2002 and 2003 by Plaintiffs' brother, Josh Duggar. Compl. ¶ 39. In December 2006, as part of the Investigation, police investigators interviewed Plaintiffs and their siblings, who were minors at the time of the interviews, as well as their parents and Josh. *Id.* ¶¶ 39-43. Plaintiffs and their parents were promised that their statements, which were taken at the Children's Safety Center in Washington County, Arkansas, would remain confidential and not be disclosed to the public. *Id.* ¶¶ 41-43. These interviews were documented in an official Offense Report maintained by the City of Springdale and an Incident Report maintained by Defendant Washington County. *Id.* ¶ 43.

Following the interviews, the Springdale Police Department requested a Family In Need of Services ("FINS") case be opened and a FINS petition was filed by the Washington County prosecutor's office at the request of the Police Department. *Id.* ¶ 44.

Nearly ten years later, on or about May 15, 2015, County Defendants received a Freedom of Information Act ("FOIA") request from a law firm purporting to represent In Touch magazine. *Id.* ¶¶ 49-50. The request sought all files related to or mentioning Josh, Plaintiffs' parents, and any of the addresses purportedly related to their family. *Id.* The City of Springdale Police Department received a similar request. *Id.* ¶ 46.

On or about May 21, 2015, Defendants Hoyt and Zega, acting under the official policies and procedures of the County, directed employees from the Sheriff's Office, including employees in the Records, Dispatch, and Criminal Investigation Divisions, to copy and mail a version of the Incident Report and other documents to the requesting law firm, which had personal ties to members of the City Springdale Police Department. *Id.* ¶¶ 59-60. Though the County Defendants purported to redact the Incident Report to comply with applicable law, they made no more than a pretextual effort to protect Plaintiffs' privacy. *Id.* ¶ 60. Despite a handful of cosmetic redactions, the released Incident Report included information identifying Plaintiffs as the victims of sexual assault, including Jim Bob Duggar's and Michelle Duggar's names, the family's current and former address, and other personal details about each individual Plaintiff. *Id.* In particular, the released Incident Report expressly identified one of Josh's victims as his then 5-year-old sister, thereby definitively identifying Plaintiff Joy Duggar as one of the victims. *Id.* The other victims were similarly identifiable by facts described in the Incident Report. *Id.*

That same day, Judge Stacey Zimmerman, a juvenile court judge for the Circuit Court of Washington County, Arkansas ruled that the corresponding Offense Report, which contained similar information to the Incident Report, should be destroyed in order to protect the identity of the victims, one of whom was still a minor. *Id.* ¶ 70. Judge Zimmerman pointed specifically to Arkansas Code Annotated section 16-90-1104's prohibition against law enforcement disclosure

of information "directly or indirectly identifying the victim of a sex crime." *Id.* Five days later, Judge Zimmerman issued another order ruling that the juvenile records, including the Plaintiffs' interviews and the information about their sexual assaults, were not subject to FOIA disclosure under the "liberally construed" Arkansas Juvenile Code. *Id.* ¶71.

Plaintiffs' Complaint clearly alleges that County Defendants, and in particular Defendant Zega as County Attorney, acted under color of state law and the customs, practices, and policies of Washington County by overseeing and approving the Incident Report for distribution to the public. The misconduct of County Defendants led to widespread publication of the Plaintiffs' private information in violation of specific Arkansas statutes and the Arkansas and United States Constitutions. Plaintiffs, who were told that their statements and information would remain confidential, had a reasonable expectation of privacy of that information. County Defendants' disclosures of the highly personal details of Plaintiffs' molestation constitute a clear and unwarranted invasion of Plaintiffs' right of privacy and other rights, rights that were clearly established at the time the Incident Report was released. County Defendants therefore can and should be held liable for the violation of Plaintiffs' rights.

### III. LEGAL STANDARD

A motion to dismiss a complaint for failure to state a claim tests the legal sufficiency of the complaint. "Dismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004) (internal citations omitted). The allegations in the complaint should be construed in favor of the pleader. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). In addition, allegations must be viewed in their totality and "not parsed piece by piece to determine whether each allegation, in isolation, is plausible."

5

*Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (citing *Villa v. Inter-Am Inv. Corp.*, 570 F.3d 274, 285 (D.C. Cir. 2009) (factual allegations should be "viewed in their totality") and *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007) ("The inquiry [under the Private Securities Litigation Reform Act] is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard."). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

Taking the Complaint as a whole, Plaintiffs set forth more than sufficient allegations to hold County Defendants accountable for their unlawful conduct in violation of Plaintiffs' constitutional and state-law rights.

## IV. THE CAUSES OF ACTION AGAINST THE COUNTY DEFENDANTS SHOULD NOT BE DISMISSED

### A. Defendant Hoyt is Not Entitled to Qualified Immunity From Plaintiffs' Constitutional Claims.

Officers and municipal employees sued in their personal capacities are entitled to qualified immunity unless: (1) they violated a federal constitutional or statutory right belonging to plaintiffs; and (2) that right was clearly established at the time of the violation such that reasonable officials would have known that they were violating that right. *See Livers v. Schenck*, 700 F.3d 340, 350 (8th Cir. 2012). Courts have discretion which of the two prongs of the qualified immunity defense to analyze first, i.e., the "merits" question or the "clearly established" question. *Pearson v. Callahan*, 555 U.S. 223, 236-38 (2009). "The defendants bear the burden to establish the relevant facts supporting qualified immunity, while [plaintiff]

6

receives the benefit of all reasonable inferences." *Ingrassia v. Schafer*, 825 F.3d 891, 898 (8th Cir. 2016) (citing *Wallingford v. Olson*, 592 F.3d 888, 892 (8th Cir. 2010)). For the reasons set forth below, Defendant Hoyt has failed to meet his burden to establish qualified immunity as to Plaintiffs' claims; therefore, the Court should deny County Defendants' MTD on this ground.

As County Defendants properly note, the protection against public disclosure of information extends "only to highly personal matters representing 'the most intimate aspects of human affairs.'" MTD at 6 (citing *Wadey v. Goodwin*, 843 F.2d 1150, 1153 (8th Cir. 1988)). To determine whether a particular disclosure violates the Fourteenth Amendment, the court will consider the nature of the material opened to public view to assess whether the person had a legitimate expectation that the information would remain confidential while in the state's possession. *See Eagle, v. Morgan*, 88 F.3d 620, 625 (8th Cir. 1996). "'When the information is inherently private, it is entitled to protection.'" *Id.* (quoting *Fraternal Order of Police, Lodge 5 v. City of Phila.*, 812 F.2d 105, 116 (3d Cir. 1987).

Defendant Hoyt argues that Plaintiffs failed to sufficiently plead a violation of their constitutional rights because the information released in the Incident Report was public. MTD at 7. He erroneously points to the fact that the news of the molestation had already been published in an article posted by *In Touch Weekly*. *Id.* While it is true that *In Touch Weekly* published an article revealing that Josh Duggar had been investigated for sexual assault, that article addressed information entirely different from the information later disclosed in the Incident Report. *See* Compl. ¶ 51. The article did not reveal Plaintiffs' identities as the victims nor any other specific details of the alleged molestations, including the number of victims, their relationship to Josh, or even that they were all minor females at the time of the incidents. It is those specific details, not

7

merely the fact of the Investigation, that Plaintiffs allege were not part of the public record and form the basis of their constitutional privacy claims.

Defendant Hoyt's argument that he is shielded from liability because the Springdale Defendants had released a copy of their Offense Report, which was then published by *In Touch*, similarly misses the mark. Defendant Hoyt ignores the fact that the Incident Report released to *In Touch* disclosed different personal information that was not released by the Offense Report. *See* Compl. ¶¶ 58, 60. Notably, the Offense Report and *In Touch* article did not note any of the ages of the victims, information that was clearly revealed by the under-redacted Incident Report. *Compare McNally v. Pulitzer Publishing Co.*, 532 F.2d 69, 79 (8th Cir. 1976) (holding no liability where prior newspaper article contained little if anything not generally disclosed in open court).

Contrary to Defendant Hoyt's other arguments, which adopt wholesale City Defendants' arguments, Plaintiffs' Complaint demonstrates a fundamental right to privacy in the information released in the Incident Report. As explained more fully in Plaintiffs' Response to City Defendants' Motion to Dismiss ("Response to City's MTD"),[3] incorporated herein by reference, individuals have a constitutional right to privacy in personal sexual matters including the intimate details of a sexual assault. *See* Response to City's MTD at 8-9; *see also Bloch v. Ribar*, 156 F.3d 673, 686 (6th Cir. 1998) (concluding that a rape victim "has a fundamental right of privacy in preventing government officials from gratuitously and unnecessarily releasing the intimate details of the rape"); *Orff v. City of Imperial*, No. 17-cv-0116 W (AGS), 2017 WL 2537250, at *5 (S.D. Cal. June 12, 2017) (denying motion to dismiss Fourteenth Amendment privacy claim against police chief based on disclosure of sexual assault allegations because

---

[3] Doc. 32.

plaintiff "is a victim of a sexual assault [and] is entitled to privacy surrounding the details of that assault"); *Stafford-Pelt v. State of Calif.*, No. C-04-00496 RMW, 2005 WL 1457782, at *5 (N.D. Cal. June 20, 2005) (holding that plaintiff, "as the victim of a sexual assault when she was minor . . . had a legitimate expectation that the government officials would not arbitrarily release sensitive information about her allegations about her half-brother"). Given the existing constitutional authority, every reasonable official would have and could have known that release of the Incident Report, even if redacted, would violate Plaintiffs' rights. Defendant Hoyt, therefore, is not entitled to qualified immunity.

Further, while "the mere violation of a state law or rule does not constitute a federal due process violation," *see* MTD at 9 (quoting *Williams v. Nix*, 1 F.3d 712, 717 (8th Cir. 1992)), state statutes and regulations can inform the court's judgment regarding the scope of constitutional rights. *See Eagle*, 88 F.3d at 626 n. 3 (quoting *Nilson v. Layton City*, 45 F.3d 369, 372 (10th Cir. 1995). As discussed in the Response to City's MTD, incorporated by reference, it was clearly established that the Arkansas law that the Arkansas Child Maltreatment Act, the Arkansas Juvenile Code, and the Arkansas Code Annotated section 16-90-1104(b) created express Freedom of Information Act exemptions for the information contained in the Incident Report. *See* Response to City's MTD at 9-10, 13-15. The obviousness of these violations is confirmed by Judge Zimmerman's order that the police reports concerning the Investigation be kept confidential, which was issued the day Defendant Hoyt and Defendant Zega placed the Incident Report in the mail. *See* Compl. ¶¶ 70-71.

Further misconstruing Plaintiffs' Complaint and the applicable law, County Defendants contend that the release of the names of Plaintiffs' parents, the family's current and former

9

addresses, and "other personal details about each individual Plaintiff"[4], are irrelevant to the analysis of Plaintiffs' constitutional privacy rights. This argument ignores the fact that such information can and was used to identify Plaintiffs' as the victims named in the Incident Report. Such a statement is not, as County Defendants allege, "entirely conclusory" and not entitled to be considered true on a motion to dismiss. *See* MTD at 9. Plaintiffs' Complaint clearly alleges that numerous users on blogs and social media began identifying Plaintiffs as the victims and even provides an example of a post on the site "freejinger.com." *See* Compl. ¶ 67. Further, the Arkansas Municipal League determined that release of Plaintiffs' parents' names clearly violated Arkansas Code Annotated section 16-90-1104(b), which protects victims of sex crimes from improper disclosure of public information directly or *indirectly* identifying them as victims of that crime. *Id.* ¶ 63-65.

Because the law regarding disclosure of the Incident Report was clearly established both under Due Process privacy case law and Arkansas state law and Defendant Hoyt violated that clearly established law, Defendant Hoyt is not entitled to qualified immunity.

B. **The County Defendants are Not Entitled to Statutory Immunity From Plaintiffs' Tort Claims.**

Section 21-9-301(a) of the Arkansas Code Annotated provides municipal entities with immunity against negligence claims except to the extent such claims are covered by liability insurance. Ark. Code Ann. § 21-9-301(a). County Defendants, like City Defendants, have failed to meet their burden of demonstrating the affirmative defense of statutory immunity applies to Plaintiffs' tort claims. *See Vent v. Johnson*, 303 S.W.3d 46, 2009 Ark. 92 (2009). The reasons for

---

[4] County Defendants' MTD incorrectly states "other personal details about each individual defendant." *See* MTD at 9.

such failures are addressed more fully by Plaintiffs' Response to City's MTD, incorporated herein by reference. *See* Response to City's MTD at 17-20.

In short, the Arkansas Supreme Court repeatedly has held that section 21-9-301 applies only to negligence actions, not intentional torts, as alleged in Plaintiffs' Complaint. *City of Fayetteville v. Romine*, 373 Ark. 318, 284 S.W.3d 10 (2008) ("This court has consistently held that § 21-9-301 provides city employees with immunity from civil liability for negligent acts, but not for intentional acts."). The federal district court is bound by this interpretation of Arkansas state law. *Curtis Lumber Co. v. La. Pac. Corp.*, 618 F.3d 762, 771 (8th Cir. 2010) ("We are bound by decisions of the Arkansas Supreme Court as to the meaning of Arkansas law."). Further, section 21-9-301 is not a complete shield from liability and applies "except to the extent [the claims] are covered by liability insurance." Ark. Code Ann. § 21-9-301. County Defendants bear the burden of demonstrating that no liability coverage exists for the relevant claims in order to prove that section 21-9-301's immunity applies. *See Vent*, 303 S.W.3d 46, 2009 Ark. 92. As County Defendants make no allegations about liability coverage, and their statutory immunity arguments must fail.

**C. Plaintiffs' Complaint Sufficiently Alleges The Tort of Invasion of Privacy – Intrusion Upon Seclusion.**

To prove intrusion upon seclusion under Arkansas law, a plaintiff must establish:

i. That he suffered damages;
ii. The defendant intentionally intruded physically or otherwise upon plaintiff's solitude or seclusion and believed or was substantially certain that he lacked the necessary legal authority or personal permission, invitation, or valid consent to commit the intrusive act;
iii. The intrusion was of the kind that would be highly offensive to a reasonable person; put differently, the intrusion is the result of conduct to which a reasonable person would strongly object;
iv. The plaintiff conducted herself in a manner consistent with an actual expectation of privacy; and
v. The defendant's intrusion was the proximate cause of the plaintiff's damages.

11

*See Coombs v. J.B. Hunt Transport, Inc.*, 388 S.W.3d 456, 460-461 (Ark. Ct. App. 2012); Ark. Model Jury Instr., Civil AMI 420.

County Defendants contend that "neither an intrusion or seclusion has been plead." MTD at 12. The Complaint, however, clearly alleges that County Defendants' disclosure of the Incident Report revealed previously-unknown facts to the general public thereby infringing upon Plaintiffs' rights to be left alone. Compl. ¶¶ 60-63, 67-69. "Intrusion" is not limited to intrusions into plaintiffs' physical space; it includes invasion of the physical realm as well as infringement upon a person's emotional sanctum and the notions of civility and personal dignity. *Coombs*, 388 S.W.3d at 461; *see also Fletcher v. Price Chopper Foods of Trumann, Inc.*, 220 F.3d 871, 876 (8th Cir. 2000) (applying Arkansas law; holding employer's use of an employee's medical authorization from a workers' compensation form "left little doubt that [the employer] intruded" upon employee's seclusion). Similarly, here, revealing of the Incident Report was an intrusion upon the Plaintiffs' emotional sanctum and personal dignity even though it involved no physical intrusion of personal space.

Further, Plaintiffs do, in fact, allege seclusion. Seclusion is relative and merely because some aspects of Plaintiffs lives were public does not mean that all aspects of their lives are outside the scope of seclusion or solitude. *See Coombs*, 388 S.W.3d at 461 (quoting *Sanders v. Am. Broadcasting Cos.*, 20 Cal. 4th 907 (1999)). Although Plaintiffs may have had appeared on TV, that fact does not prevent them from seeking to protect their seclusion, particularly as it pertains to the most intimate details of the most traumatic experiences of their lives. *See* John J. Watkins, *The Privacy Tort: An Arkansas Guide*, 1993 Ark. L. Notes 91, 98 (1993) ("Despite having a significantly reduced zone of privacy, however, such public figures obviously cannot be considered fair game with respect to financial information, sexual relationships, and other

intimate details of their private lives."). Further, Plaintiffs were acting with a reasonable expectation that the Incident Report would be kept private both as a result of a promise of confidentiality from the State Police, who were working with County Defendants, and under Arkansas law. *See* Compl. ¶¶ 41-43.

Thus, Plaintiffs have alleged both an intrusion and seclusion. County Defendants' motion to dismiss the invasion of privacy – intrusion upon seclusion claim fails.

### D. Plaintiffs Have Sufficiently Alleged A Claim for Invasion of Privacy – Public Disclosure of Private Facts.

The tort of public disclosure of private fact "recognizes a cause of action in publicity, of a highly objectionable kind, given to private information about a plaintiff even though it is true and no defamation action would lie." *Williams v. Am. Broad. Co., Inc.*, 96 F.R.D. 658, 669 (W.D. Ark. 1983). County Defendants argue that Plaintiffs fail to state a claim for public disclosure of private fact because the information was already public before they disclosed it to *In Touch Weekly*. MTD at 12. As discussed previously, however, the initial *In Touch Weekly* article addressed only the bare facts that Josh had been investigated in relation to molestation accusations made while he was a minor. Compl. ¶¶ 51, 60. The story did not reveal any of the information at the heart of this lawsuit. *Id.* It revealed nothing about the victims or the details of the sexual assaults as that information was not yet known to the public or part of the public record. Further, the information revealed by the City Defendants was different than that revealed by the County Defendants. *See id.* ¶¶ 58, 60.

County Defendants further allege that Plaintiffs' claim fails for lack of publication. MTD at 12. County Defendants rely on two cases, *Wood v. Nat'l Computer Sys., Inc.*, 814 F.2d 544, 545 (8th Cir. 1987) and *C.L., M.L. ex rel C.A.L. v. Village of Riverside*, 13 C 1476, 2013

13

4538836 (N.D. Ill. Aug. 27, 2013), where the court held that disclosure to one or two individuals did not constitute sufficient disclosure to be actionable. County Defendants ignore, however, that the disclosure in those cases was made to single individuals, not an entire corporation whose business involves publication of sometimes personal and embarrassing facts as was done here. The cases cited by County Defendants are clearly distinguishable.

County Defendants' arguments that the information disclosed is somehow privileged is also unpersuasive. *See* MTD at 13. While Plaintiffs agree that entities should receive leeway when disclosing information that bears on the public interest, the information at issue in this case falls outside any public interest. County Defendants note a recognized public interest in identifying sex offenders by setting up registries. MTD at 13. This misses the issue raised in Plaintiffs' Complaint. Plaintiffs were the victims, not the perpetrators. To attempt to equate sex offender registries, which are utilized to warn and protect the public from sex offenders, to minor victims of sexual molestation is misguided at best. These two categories of interests could not be further apart in terms of similarity of public interest. Significantly, Arkansas has an established state interest in preserving the confidentiality of records to protect rights of children and victims. *See* Ark. Code Ann. § 12-18-102(5); § 16-90-1104(b). This is particularly true where a sex offense is alleged. *See People v. Ramirez*, 55 Cal. App. 4th 47, 53 (1997) ("There can be little dispute that the state's interest in protecting the privacy of sex offense victims is extremely strong and fully justified.").

County Defendants' reliance on *Hubbard v. Journal Pub. Co.*, 368 P.2d 147 (N.M. 1962) is equally inapposite. Unlike here, where the information disclosed was not in the public record and was protected from disclosure by state law, the information revealed in *Hubbard* was part of court records and court orders open to the public. *Id.* at 148-149.

Plaintiffs have alleged sufficient facts to bring a claim for invasion of privacy for public disclosure of private facts. County Defendants' motion to dismiss against this claim should be denied.

**E. Plaintiffs Have Alleged Facts Sufficient To Support A Claim For The Tort of Outrage.**

To establish a claim for outrage, a plaintiff must demonstrate the following elements: (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was extreme and outrageous, beyond all possible bounds of decency, and was utterly intolerable in a civilized community; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it. *Cannady v. St. Vincent Infirmary Med. Ctr.*, 2012 Ark. 369, 423 S.W.3d 548, 554-55 (2012).

County Defendants provide a scattershot list of cases that they contend involve conduct more egregious than in this case. *See* MTD at 14-15. However, the type of conduct that meets the standard for an outrage claim is evaluated on a case-by-case basis. *McQuay v. Guntharp*, 331 Ark. 466, 963 S.W.2d 583, 585 (Ark. 1998). Moreover, the extreme and outrageous nature of a defendants' conduct depends not only on the conduct alleged but also on the relationship and power dynamic between the parties. *See M.B.M. Co. v. Counce*, 268 Ark. 269, 281, 596 S.W.2d 681, 688 (1980). County Defendants disclosed a report, the entirety of which was protected under Arkansas law and had been secured under a promise of confidentiality made to child victims of sex crimes. The nature of the information revealed coupled with the unique nature of the tort of outrage analysis demonstrate that County Defendants' arguments are unpersuasive. Their motion to dismiss this claim should be denied.

### F. Plaintiffs Have Alleged Sufficient Facts To Establish A Section 1983 Claim Against the County Of Washington.

Under *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 690-91 (1978), a municipality like the County of Washington is "a person" that can be subject to liability under section 1983. Section 1983 liability will "attach to a municipality if the violation resulted from (1) an 'official municipal policy,'; (2) an unofficial 'custom'; or (3) a deliberately indifferent failure to train or supervise." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013) (internal citations omitted). Where no written policy is a "moving force" behind allegedly unconstitutional conduct, section 1983 liability may nevertheless be imposed where that conduct was committed or ratified by a person who has "final policymaking authority" for the municipality. *See id*. Courts consider two primary sources when determining if a particular individual holds "final policymaking authority": (1) state and local positive law; and (2) state and local "custom of usage having the force of law." *Id.* at 1215 (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). Whether an individual is a final policymaker for purposes of section 1983 liability is a question of state law. *Id.* at 1214-1215 (citing *St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (plurality opinion); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (plurality opinion).

County Defendants argue that Plaintiffs have made no allegations that could give rise to county liability because they assert no policy or custom as the moving force behind an underlying violation. MTD at 16. Plaintiffs do, however, allege that the Incident Report was released by the County at the direction of Defendants Hoyt and Zega, who, pursuant to County policy oversaw the process for release of records by the Records, Dispatch, and Criminal Investigation Division under FOIA. *See* Compl. ¶ 59. Pursuant to the County's Code of

16

Ordinances section 2-174, Defendant Zega as the County Attorney was responsible for furnishing written opinions upon subjects of a legal nature as well as providing legal advice to authorities of the County. Washington County Ordinances § 2-174. This includes determinations and advice concerning disclosure of documents pursuant to FOIA. *See* Washington County, Arkansas, County Attorney, https://www.co.washington.ar.us, https://www.co.washington.ar.us/government/departments-a-e/county-attorney (last visited July 23, 2017). Defendant Zega, therefore, was the final policymaker charged with determining whether the redacted Incident Report could appropriately be released in response to the FOIA requests.

Given this, Plaintiffs have alleged sufficient facts to demonstrate a policy or practice. Under certain circumstances, "municipal liability may be imposed under 42 U.S.C.A. § 1983 for a single decision by municipal policymakers." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). Further, "an unconstitutional government policy could be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988). As explained previously, Plaintiffs have alleged sufficient facts to prevail on their claims against County Defendants, thereby opening the door to holding the County liable under *Monell*. Moreover, Plaintiffs have alleged that Defendant Zega participated in and approved the decision to disclose the Incident Report, and in related redaction decisions. *See* Compl. ¶¶ 6, 59-61. Pursuant to the County's official policies, the decisions of Defendant Zega with respect to the release of the Incident Report constituted the County's official policy on the matter.

Thus, County Defendants' motion to dismiss this claim should be denied.

## V. CONCLUSION

For the reasons articulated above, County Defendants' motion to dismiss should be denied.

Date: July 24, 2017

Respectfully submitted,

/s/Shawn B. Daniels

Shawn B. Daniels, AR No. 99126
Sarah C. Jewell, AR No. 2015169
HARE, WYNN, NEWELL & NEWTON, LLP
129 W. Sunbridge Drive
Fayetteville, AR 72703
479-521-7000
shawn@hwnn.com
sjewell@hwnn.com

and

Robert C. O'Brien (admitted *pro hac vice*)
Steven E. Bledsoe (admitted *pro hac vice*)
Lauren S. Wulfe (admitted *pro hac vice*)
LARSON O'BRIEN LLP
555 South Flower Street, Suite 4400 Los Angeles, California 90071
213-436-4888
robrien@larsonobrienlaw.com
sbledsoe@larsonobrienlaw.com
lwulfe@larsonobrienlaw.com

*Attorneys for Plaintiffs JILL DILLARD, JESSA SEEWALD, JINGER VUOLO, and JOY DUGGAR*

## CERTIFICATE OF SERVICE

      I, Shawn Daniels, do hereby certify that on the 24th day of July, 2017, a true and correct copy of the above and foregoing Response to Motion to Dismiss was filed with the Clerk via the CM/ECF system, which will send notification of filing to the following:

Robert Justin Eichmann
Harrington, Miller, Kieklak, Eichmann & Brown, P.A.
4710 S. Thompson, Ste. 102
Springdale, AR 72764
jeichmann@arkansaslaw.com,
cmiller@arkansaslaw.com

Thomas N. Kieklak
Harrington, Miller, Kieklak, Eichmann & Brown, P.A.
4710 S. Thompson, Ste. 102
Springdale, AR 72764
tkieklak@arkansaslaw.com,
cmiller@arkansaslaw.com

Susan Keller Kendall
Kendall Law Firm, PLLC
3706 Pinnacle Hills Parkway
Suite 201
Rogers, AR 72758
skk@kendalllawfirm.com,
joan@kendalllawfirm.com

Cynthia W. Kolb
Cross, Gunter, Witherspoon & Galchus, P.C.
500 President Clinton Avenue
Suite 200
Little Rock, AR 72201
ckolb@cgwg.com, dclark@cgwg.com

Elizabeth Anne McNamara
Davis Wright Tremaine LLP
1251 Avenue of the Americas
21st Floor
New York, NY 10020
lizmcnamara@dwt.com,
jamieraghu@dwt.com

Jamie Somoza Raghu
Davis Wright Tremaine LLP
1251 Avenue of the Americas
21st Floor
New York, NY 10020
jamieraghu@dwt.com

/s/Shawn B. Daniels