**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION**

**JILL DILLARD, JESSA SEEWALD,
JINGER VUOLO, and JOY DUGGAR**                               **PLAINTIFFS**

**v.**                          **CASE NO. 5:17-5089-TLB**

**CITY OF SPRINGDALE, ARKANSAS;
WASHINGTON COUNTY, ARKANSAS;
KATHY O'KELLEY, in her individual and
official capacities;
ERNEST CATE, in his individual and official capacities;
RICK HOYT, in his individual and official capacities;
STEVE ZEGA, in his official capacity;
BAUER PUBLISHING COMPANY, L.P.;
BAUER MAGAZINE, L.P.;
BAUER MEDIA GROUP, INC.;
BAUER, INC.;
HEINRICH BAUER NORTH AMERICA, INC.;
BAUER MEDIA GROUP USA, LLC; and
DOES 1-10, inclusive**                               **DEFENDANTS**

**PLAINTIFFS' RESPONSE IN OPPOSITION TO BAUER DEFENDANTS'
MOTION TO DISMISS**

**I.      INTRODUCTION**

The First Amendment does not permit Bauer Defendants to trample Plaintiffs' rights by posting in lurid detail on its website, for all the world to see, unlawfully disclosed, confidential information about the sexual assault of Plaintiffs while minors.  If Bauer Defendants prevail in dismissing Plaintiffs' claims, the right to privacy under the most sensitive conceivable set of facts would be effectively eliminated.  Balancing the media's protections with minor sexual assault victims' right to privacy does not provide a blind, unlimited license to tabloids.

1

Plaintiffs' privacy rights are not trumped by tabloids' rights, especially under this set of facts per Arkansas law.  Bauer Defendants' Motion to Dismiss[1] must therefore be denied.

## II.    RELEVANT FACTS

On or about December 7, 2006, the Arkansas State Police Hotline Call Center received a report of child abuse naming Josh Duggar as the offender, alleging Duggar sexually abused minor children in 2002 and 2003.  *See* Complaint ¶ 1, May 18, 2017, ECF No. 1 ("Compl.").  Five days later, the Washington County Sherriff's Office conducted interviews with Plaintiff victims and their parents, and investigators advised that all statements would remain confidential per Arkansas law and would never be disclosed to the public.  *Id.* ¶¶ 4, 47.  The contents of the interviews in garish detail were documented in the City of Springdale, Arkansas Police Department Offense Report and the Washington County, Arkansas Sherriff's Office official Incident Report.  *Id.* ¶ 4.  Detective Hignite completed a Family in Need of Services ("FINS") affidavit, which was filed by the Washington County Prosecutor's Office at the Police Department's request, and private, confidential hearings began soon after.  *Id.* at ¶ 5.

Nine and a half years later, on May 15, 2015, law firm Cross, Gunter, Witherspoon & Galchus, P.C. submitted a Freedom of Information Act of 1967 ("FOIA") request, for purposes of media publication, on behalf of Bauer Defendants seeking copies of the Offense Report, Incident Report, and any other documentation related to the investigation concerning child sexual molestation allegations against Josh Duggar.  *Id.* ¶¶ 6, 48.  On May 19, 2015, <u>before</u> ever receiving documents responsive to the FOIA request, *In Touch Weekly* posted an article on its website under the headline "'19 Kids and Counting' Son Named in Underage Sex Probe."  *Id.*

---

[1] Doc. 43.

¶ 50, 51.  The article promoted sales of the hardcopy version: "for the latest inside Josh Duggar's shocking past, pick up the new issue of *In Touch Weekly*, on newsstands tomorrow!"  *Id.* ¶ 50. On the evening of May 20, 2015, the Springdale, Arkansas Police Department approved the Offense Report for distribution.  *Id.* ¶¶ 52-56.  The following day, the Washington County Sherriff's Department approved distribution of the Incident Report.  *Id.* ¶ 58.

On May 21, 2015, *In Touch Weekly* posted a partially-redacted copy of a Springdale Police Department Offense Report that *In Touch Weekly* received through FOIA Requests.  *Id.* ¶ 65.  The partially-redacted Offense Report redacted Josh Duggar's and the victims' names, but failed to redact Jim Bob Duggar's or Michelle Duggar's names, the family's address, and personal information regarding the victims, including that the four were Josh's sisters who slept in a common room at the time of the alleged events.  *Id.*  That day, the Sheriff's Office released to Bauer Defendants the Incident Report with similar merely cosmetic redactions.  *Id.* ¶ 59.  The Incident Report expressly identified one of the alleged victims as Josh Duggar's then 5 year-old sister.  *Id.*

That same day, May 21, 2015, Judge Zimmerman, a juvenile court judge for the Circuit Court of Washington County, Arkansas, entered an order expunging the Offense Report from the public record to protect the identities of the victims. *Id.* ¶ 70.  Judge Zimmerman pointed specifically to Arkansas Code Annotated § 16-90-1104's prohibition against law enforcement disclosure of information "directly or indirectly identifying the victim of a sex crime."  *Id.*

Five days later, on May 26, 2015, *In Touch Weekly* posted an article entitled "Josh Duggar's Youngest Molestation Victim May Have Been as Young as 5-Years-Old."  *Id.* ¶ 71. The article highlights details to make it clear that four of the underage victims lived at home with Jim Bob and Michelle Duggar, and were therefore Josh's younger sisters.  *Id.*  The article even

stated that although the Offense Report includes redactions, it was obvious one of Josh's victims was as young as 5 years old.  *Id.*  That day, Judge Zimmerman entered an order ruling that juvenile records, including Plaintiffs' interviews and the information about their sexual assaults, are confidential and thereby not subject to FOIA disclosure under the "liberally construed" Arkansas Juvenile Code.  *Id.*

*In Touch Weekly* continued to publish articles after Judge Zimmerman's May 26, 2015 ruling containing lurid details about the sexual molestations, by either linking to prior articles containing the Reports or including actual images from the report.[2]  *Id.*  *In Touch Weekly* published numerous such articles throughout the first two weeks of June 2015.  *Id.*  In just a week and a half, Bauer Defendants posted or approved the posting of at least eight articles including copies of the thirty-three (33) page Offense Report itself and/or details of confidential interviews contained therein.  *Id.*

On June 1, 2015, Judge Zimmerman issued a supplemental order reiterating her prior orders that the police reports and Plaintiffs' information contained therein were confidential and not subject to FOIA disclosure.  *Id.* ¶ 72.  Nevertheless, seeking to capitalize on continued publicity generated by Plaintiffs' tragic story, on the morning of June 3, 2015, *In Touch Weekly* published yet another article on its website, this time including a partially-redacted copy of an Incident Report from the Washington County Sheriff's Office.  *Id.* ¶ 73.  The Incident Report removed the victims' names, but failed to redact Jim Bob's and Michelle's names, the family's address, and other personal information.  Notably, the Incident Report included a passage clearly identifying one of the 2003 victims as Josh's then 5-year-old sister.  *Id.* ¶ 71.  Notably, these

---

[2] http://www.intouchweekly.com/posts/jim-bob-duggar-stopped-cooperating-with-police-during-josh-s-molestation-investigation-59483; http://www.intouchweekly.com/posts/josh-duggar-chilling-molestation-confession-in-new-police-report-59752.

articles remain to this day on the Internet, and *In Touch Weekly* referenced Plaintiffs' sexual molestation in an April 2017 blog article.[3]

## III.    LEGAL STANDARD

A motion to dismiss a complaint for failure to state a claim tests the legal sufficiency of the complaint.  "Dismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief.  *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004) (internal citations omitted).  The allegations in the complaint should be construed in favor of the pleader.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  Additionally, allegations must be reviewed in their totality and "not parsed piece by piece to determine whether each allegation, in isolation, is plausible."  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (citing *Villa v. Inter-Am Inv. Corp.*, 570 F.3d 274, 285 (D.C. Cir. 2009) (factual allegations should be "viewed in their totality") and *Tellabs, Inc. v. Major Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007) ("The injury is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard.").  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

Taking the Complaint as a whole, Plaintiffs set forth in their Complaint far more than plausible allegations to hold Bauer Defendants accountable for their violation of Plaintiffs' constitutional and state-law rights.

---

[3] http://www.intouchweekly.com/posts/duggar-in-laws-131211/photos/joseph-duggar-kendra-caldwell-248651.

IV.     **THE CAUSES OF ACTION AGAINST BAUER DEFENDANTS SHOULD NOT
        BE DISMISSED.**

Most of Bauer Defendants' motion to dismiss operates from the premise that the

information obtained about Plaintiffs through FOIA requests was lawful.  However, the

lawfulness of the disclosures about Plaintiffs is an issue at the heart of this case.  Even the most

cursory inquiry into Arkansas law is clear that the Arkansas Child Maltreatment Act and

Arkansas Juvenile Code mandate that juvenile investigations and proceedings remain

confidential and private.  *See* A.C.A. § 12-18-101 *et seq.* and A.C.A. § 9-27-301 *et seq. See also*

Compl. ¶ 7.  Further, pursuant to A.C.A. § 16-90-1104(b), Arkansas law mandates that a "law

enforcement agency shall not disclose to the public information directly or indirectly identifying

the victim of a sex crime."

The facts at issue here – revelation of intimate and specific details of the sexual assault of

minors – were recorded in connection with a FINS case investigating allegations of sexual abuse

against Josh Duggar; therefore, the information is FOIA-exempt under Arkansas Juvenile Code

§ 9-27-309(j); *see also* Compl. ¶ 4.  FINS hearings are closed to the public, and all records are

confidential.  A.C.A. § 9-27-309; s*ee also* Rachel Runnels, 5 Arkansas Family Law and Practice

§ 15:4.  Allegedly pursuant to FOIA, law firm Cross, Gunter, Witherspoon & Galchus, P.C.

submitted FOIA requests on behalf of Bauer Defendants for purposes of media publication.  *See*

Compl. ¶ 6.  Ignorance of the parameters of the very law under which Bauer Defendants sought

to obtain information about Plaintiffs' sexual assaults certainly cannot equate to blind licensure

under the First Amendment.

Bauer Defendants cannot merely blame the Washington County Sheriff's Department

and Springdale, Arkansas Police Department for the illegal release of information.  Plaintiffs

6

pled sufficient facts to support Bauer Defendants' complicity in the illegal release of the records of Plaintiffs' sexual abuse while they were minors.  *See* Compl. ¶¶ 45-64.  Most notably, Bauer Defendants began publishing details about Plaintiffs' sexual abuse *before* even receiving responses to its FOIA requests.  *Id.* ¶¶ 50, 51.  Bauer Defendants' FOIA request was submitted by a law firm with clear ties to the Springdale, Arkansas Police Department.  *Id.* ¶ 46.  Defendant O'Kelley, Chief of Police for the City of Springdale, was a close personal friend of Carolyn Witherspoon, a named partner at the firm, and O'Kelley even suggested that the firm be consulted regarding the propriety of the release of the records.  *Id.*  ¶¶ 53-56.  Police Chief O'Kelley herself, rather than a public records officer, worked late into the night to produce records responsive to Bauer Defendants' FOIA request to help Bauer Defendants meet its publication deadline.[4]  *Id.* ¶¶ 55-56.  Moreover, the information contained in the FOIA request and *In Touch Weekly*'s initial article goes a step beyond mere speculation, and suggests that Bauer Defendants were receiving information from an inside source prior to obtaining the actual Offense Report and Incident Report.  Bauer Defendants' lawyer somehow knew which officers were involved in submitting the reports.

Bauer Defendants' motion to dismiss should be denied, as Plaintiffs pled more than plausible claims in their Complaint.

---

[4] Emails between O'Kelley and Bauer Defendants' lawyer verify that O'Kelley herself worked on the night of May 20, 2015 to expedite the release of records at 8:58p.m. only 5 days after the Springdale Police Department received Bauer Defendants' FOIA request.  These emails also verify the personal relationship between O'Kelley and Carolyn Witherspoon, a partner of law firm Cross, Gunter, Witherspoon & Galchus, P.C.

A.      **Plaintiffs' Invasion of Privacy – Public Disclosure of Private Fact Claim Should Not Be Dismissed.**

The tort of public disclosure of private fact "recognizes a cause of action in publicity, of a highly objectionable kind, given to private information about a plaintiff even though it is true and no defamation action would life." *Williams v. Am. Broad. Companies, Inc.*, 96 F.R.D. 658, 669 (W.D. Ark. 1983). To establish a claim for invasion of privacy due to public disclosure of a private fact, a plaintiff must prove: (1) the defendant made a public disclosure of a fact about plaintiff; (2) before this disclosure, the fact was not known to the public; (3) a reasonable person would find disclosure of the fact highly offensive; (4) that defendant knew or should have known that the disclosed fact was private; (5) That the fact was not of legitimate public concern; and (6) the public disclosure of the fact was a proximate cause of plaintiff's damages. *See* Ark. Model Jury Instr., Civil AMI 422. As discussed below, Plaintiffs have sufficiently alleged a *prima facie* case for public disclosure of private facts.

Bauer Defendants do not dispute nor can they that (1) they made public disclosures of private facts regarding Plaintiffs' molestation (2) that were unknown to the public prior to Bauer Defendants' disclosure. *Id.* ¶ 50. Publication of the Offense Report and Incident Report online made it available to anyone in the public free of charge. *Id.* ¶¶ 65, 73. Regarding the third element of the claim, any reasonable person would find disclosure of facts concerning minor victims' sexual molestation highly offensive, and Plaintiffs sufficiently pled such facts. *Id.* ¶ 87. Likewise, Bauer Defendants do not contest that the material it published was offensive nor can they. Rather, Defendants knew that posting lurid details of children's sexual molestation was highly offensive, such that it posted the following disclaimer:

> WARNING: Graphic descriptions contained in police report.

*Id.* ¶ 65.  With the warning, Defendants posted the full thirty-three (33) page Offense Report and a narrative describing its contents under the headline "Jim Bob Duggar Didn't Report Son Josh's Alleged Sex Offenses For More Than a Year."  *Id.*  The publication was so offensive that users on social media and online forums immediately began identifying which members of the Duggar family were the alleged sexual abuse victims and expressing concern and sympathy for the exposed victims.  *Id.* ¶¶ 66-68.  This warning further demonstrates that publication of the facts included in the Offense Report were offensive and objectionable to a reasonable person of ordinary sensibilities and even more offensive to the Plaintiffs who believed the allegations had long since been resolved.

Fourth, Bauer Defendants knew or should have known that the facts disclosed were private.  To support a claim for public disclosure of private fact, the fact disclosed must be actually private in nature and not a matter of public record.  *See Coplin v. Fairfield Pub. Access Television Comm.*, 111 F.3d 1395, 1404 (8th Cir. 1997).  Poignantly here, pursuant to Arkansas law, FINS hearings are closed to the public, and all records are confidential.  A.C.A. § 9-27-309. *See also* Rachel Runnels, 5 Arkansas Family Law and Practice § 15:4.

All facts at issue here remained private, outside the public eye, from when the events occurred in 2002 and 2003 through May 19, 2015 when *In Touch Weekly* began blasting headlines about minors' sexual assaults on the Internet.  *Id.* ¶¶ 50, 51.  On or about December 7, 2016, the Arkansas State Police Hotline Call Center received a report of child abuse naming Josh Duggar as the offender, alleging he had sexually assaulted minor children, events having occurred at least three and a half years prior, in 2002 and 2003.  *Id.* ¶ 1.  The Washington County

Sherriff's Office investigated, and on December 20, 2006, Detective Hignite filled out a FINS affidavit, which was filed by the Washington County Prosecutor's Office, and subsequent juvenile hearings commenced against alleged juvenile offender Josh Duggar.  *Id.* ¶ 5.  All facts concerning Plaintiffs' sexual abuse was kept private, unknown to the public, for nine and a half (9 ½) years after the FINS case was opened and nearly 13 years since the sexual abuse began. *Id.* ¶ 6.  These facts remained confidential until law firm Cross, Gunter, Witherspoon & Galchus, P.C. submitted FOIA requests on behalf of Bauer Defendants for purposes of media publication, although Defendants immediately disclosed the private facts of sexual abuse to the public – even before recipients of the FOIA requests had even responded.  *Id.* ¶¶ 6, 50-51.  Bauer Defendants disclosed to the public intimate and specific facts about Plaintiffs' sexual assaults along with identifying information about Plaintiffs that Arkansas law governing FINS hearings and juvenile records mandates must remain confidential and private.

Fifth, the facts disclosed concerning Plaintiffs' sexual assault by their older brother are not matters of legitimate public concern.  Bauer Defendants rely on the Supreme Court's decision in *The Florida Star v. B.J.F.*, 491 U.S. 524, 109 S. Ct. 2603 (1989), wherein the Court held that a statute imposing civil damages on a newspaper for accurately publishing the lawfully-obtained name of a rape victim violated the First Amendment.  Following *Florida Star*, cases rejecting public disclosure of private fact claims brought by rape or attach victims emphasize that the rulings are limited to the specific facts of the case.  *See e.g., Ross v. Midwest Commc'n, Inc.*, 870 F.2d 271, 275 (5th Cir. 1989) (noting court's decision turned on the peculiar facts in the case and identifying situations where release of victim information or attack details were not of public concern, emphasizing a state's power to protect rape victims' privacy by preserving the confidentiality of various state records).

Bauer Defendants published facts concerning Plaintiffs' sexual assault that were not crucial to reporting the news, including specifics about how and where Plaintiffs were molested. *In Touch Weekly* included a disclaimer on its first post containing the Offense Report, which stated "WARNING: Graphic descriptions contained in police report."[5]  *See* Compl. ¶ 65.  While certain basic facts, such as dates and general locations are crucial to newsworthy reporting on the allegations, the "graphic descriptions" absolutely are not.  The "graphic descriptions" were included precisely to pinpoint Plaintiffs as the victims, identify that they were Duggar daughters, and to incite a frenzy of tabloid readership.

Bauer Defendants do not contest whether Plaintiffs met the sixth and final element of a claim for public disclosure of private facts under Arkansas law.  Plaintiffs sufficiently pled in their Complaint that Bauer Defendants' public disclosure of private facts was the direct and proximate cause of the harm Plaintiffs suffered.  *Id.* ¶ 85-90.

In response to a motion to dismiss, Plaintiffs are required only to show that when all facts alleged are presume true and all inferences are construed in their favor, they have plausible claims that the revelation of graphic descriptions of their sexual assault and facts not crucial to simply reporting the case are not matters of public concern such that public disclosure is improper.  The facts alleged in Plaintiffs' Complaint are more than sufficient to chin this bar.

**B.    Plaintiffs' Invasion of Privacy – Appropriation Claim Should Not Be Dismissed.**

Taking the facts alleged in the Complaint as true, Plaintiffs are far more than plausibly entitled to maintain their claims for invasion of privacy due to appropriation.  To support such

---

[5] http://www.intouchweekly.com/posts/bombshell-duggar-police-report-jim-bob-duggar-didn-t-report-son-josh-s-alleged-sex-offenses-for-more-than-a-year -58906.

claim, a plaintiff must show: (1) the defendant must have used plaintiff's name or likeness; (2) the public must be able to identify plaintiff in defendant's use of the name or likeness; (3) defendant's use of plaintiff's name or likeness was for defendant's own purposes or benefit, commercial or otherwise; and (4) defendant's actions were a proximate cause of plaintiff's damages. *Stanley v. General Media Comm'n*, 149 F.Supp. 2d 701, 708 (W.D. Ark. 2001). *See also* Ark. Model Jury Instr. Civil § 421. In short, "an actionable claim for appropriation invasion-of-privacy claim, in turn, consists of use of the plaintiff's name or likeness for defendants' benefit. *LasikPlus Murphy, M.D., P.A. v. LCA-Vision, Inc.*, 776 F.Supp. 886, 899 (E.D. Ark. 2011) (citing *Milam v. Bank of Cabot*, 327 Ark. 256, 263, 937 S.W.2d 653, 657 (1997)). "The defendant must have capitalized on the use of the plaintiff's likeness or name by selling more of a product or service" or otherwise employing a "commercial use of a person's name or likeness." *Stanley*, 149 F.Supp. at 706.

In their motion to dismiss, Bauer Defendants contend that "plaintiffs cannot as a matter of law claim the Articles were for a commercial use and their appropriation claim must be dismissed." MTD at 25. First, proof "as a matter of law" is not the legal standard by which a motion to dismiss is to be judged. In fact, Plaintiffs *can* and *did* plead in their Complaint that Bauer Defendants published a myriad of articles on the Internet and in print. *See* Compl. ¶¶ 50, 57. To illustrate Bauer Defendants' commercial use of Plaintiffs' likeness, the May 19, 2015 *In Touch Weekly* website hosted the headline "'19 Kids and Counting' Son Named in Underage Sex Probe," and the post concluded with a sales promotion for the hardcopy version: "for the latest inside Josh Duggar's shocking past, pick up the new issue of *In Touch Weekly*, on newsstands tomorrow!" *Id.* This, by definition, constitutes use for the commercial purpose of increasing tabloid sales.

Plaintiffs' claim of invasion of privacy by appropriation is certainly plausible as pled, and Bauer Defendants' motion to dismiss this claim fails.

## C. Plaintiffs' Invasion of Privacy – Intrusion Upon Seclusion Claim Should Not Be Dismissed.

Plaintiffs' Complaint alleges plausible claims for invasion of privacy for intrusion upon seclusion, alleging both intrusion and seclusion. *See* Compl. ¶¶ 108-113. Thus, Bauer Defendants' motion to dismiss the invasion of privacy for intrusion upon seclusion must fail. To prove intrusion upon seclusion under Arkansas law, a plaintiff must establish: (1) that he suffered damages; (2) the defendant intentionally intruded physically or otherwise upon plaintiff's solitude or seclusion and believed or was substantially certain that he lacked the necessary legal authority or personal permission, invitation, or valid consent to commit the intrusive act; (3) the intrusion was of the kind that would be highly offensive to a reasonable person; put differently, the intrusion is the result of conduct to which a reasonable person would strongly object; (4) the plaintiff conducted herself in a manner consistent with an actual expectation of privacy; and (5) the defendants' intrusion was the proximate cause of the plaintiff's damages. *See Coombs v. J.B. Hunt Transport, Inc.*, 388 S.W.3d 456, 460-462 (Ark. Ct. App. 2012); Ark. Model Jury Instr. Civil § 420.

Bauer Defendants contend that "Plaintiffs have not plausibly alleged that an actionable intrusion occurred." MTD at 26. The Complaint, however, clearly alleges that Defendants committed an intrusion when they published on the Internet intimate details of sexual assaults with identifying information from the Offense Report and Incident Report, as well as the full thirty-three page Offense Report itself. *See* Compl. ¶¶ 65-69, 108-113. These facts were

previously-unknown facts to the general public; therefore, Bauer Defendants' publication infringed upon Plaintiffs' right to be left alone. *Id.*

"Intrusion" is not limited to intrusions into plaintiffs' physical space; it includes invasion of the physical realm as well as infringement upon a person's emotional sanctum and notions of civility and personal dignity. *Coombs*, 388 S.W.3d at 461; *see also Fletcher v. Price Chopper Foods of Trumann, Inc.*, 220 F.3d 871, 876 (8th Cir. 2000) (applying Arkansas law; holding employer's use of employee's medical authorization from a workers compensation form "left little doubt that [the employer] intruded" upon employee's seclusion). Similarly, here, revealing intimate details of Plaintiffs' sexual assault, the thirty-three Offense Report, and the Incident Report was an intrusion upon Plaintiffs' emotional sanctum and personal dignity though it did not involve physical intrusion of personal space.

Thus, Plaintiffs have sufficiently alleged intrusion, and Bauer Defendants' motion to dismiss the invasion of privacy for intrusion upon seclusion claim fails.

### D.    Plaintiffs' Tort of Outrage Claim Should Not Be Dismissed.

Plaintiffs sufficiently pled the extreme and outrageous nature of Bauer Defendants' publications concerning Plaintiffs' sexual abuse, and their claims should not be dismissed. See Compl. ¶¶ 121-125. To establish an outrage claim, a plaintiff must demonstrate: (1) the defendant intended to inflict emotional distress or knew or should have known that emotional distress was likely the result of his conduct; (2) the conduct was "extreme and outrageous," "beyond all possibly bounds of decency," and "utterly intolerable in a civilized community"; (3) the actions of the defendant were the cause of plaintiff's distress; and (4) The emotional distress sustained by the plaintiff was so severe no reasonable person could expect to endure it. *See*

*Cannady v. St. Vincent Infirmary Med. Ctr.*, 2012 Ark. 369, 423 S.W.3d 548, 554-55 (2012); *See also McQuay v. Guntharp*, 963 S.W.2d 583, 585 (Ark. 1998); Ark. Model Jury Instr. Civil § 401.

      The type of conduct that meets the standard for a claim of outrage is determined on a case-by-case basis. *McQuay*, 963 S.W.2d at 585. The Arkansas Supreme Court recognizes "the tort of outrage should not and does not open the doors to the courts to every slight insult or indignity one must endure in life." *Travelers Ins. Co. v. Smith*, 338 Ark. 81, 89 (1999). To illustrate, in *Stanley*, the court found that publishing a photograph of plaintiffs engaged in a blindfolded condom-fitting contest was not "'intolerable in a civilized community' or beyond all possible bounds of decency, especially considering the strict approach the Arkansas Supreme Court has taken in denying outrage claims." *Stanley*, 149 F.Supp. 2d at 708.

      Here, in stark contrast to *Stanley*, Plaintiffs did not consent to participation in the acts described in the Offense Report and Incident Report, and Plaintiffs had a reasonable expectation of privacy in the statements they made in 2006 while they were minors. *Id.* ¶¶ 4, 5, 47. Information about the sexual abuse was recorded in connection with the FINS case, and Arkansas law and Judge Zimmerman's orders mandated privacy and confidentiality. *Id.* ¶¶ 4, 5, 7, 47; *See also* A.C.A. § 16-90-1104(b), A.C.A. § 12-18-101 *et seq.* and A.C.A. § 9-27-301 *et seq.* Further, as a result of *In Touch Weekly*'s publication of the Reports, Plaintiffs' lives were thrown into turmoil, as evidenced by the fact that Jill and Jessa felt compelled to participate in an interview on national television to clarify the events disclosed by the magazine. Notably, other news outlets, including The Associated Press and The Washington Post, and even some on social media refrained from publishing the police reports or any specific details from the Reports that

could identify the victims, further showing that *In Touch Weekly* acted with intent and beyond the bounds of decency.[6]

Plaintiffs' claim for the tort of outrage is plausible as pled in the Complaint, and Bauer Defendants' motion to dismiss this claim fails.

### E.     The Fair Report Privilege Does Not Apply, and Therefore Does Not Bar Plaintiffs' Claims.

In their motion to dismiss, Bauer Defendants unfairly represent the purpose, intent, and parameters of the Fair Report Privilege.  Defendants cite *Butler v. Hearst-Arygyle Television, Inc.*, 49 S.W.3d 116 (Ark. 2001) as recognizing the fair report privilege as defined in the Restatement (Second) of Torts § 611.  MTD at 20.  First, the Arkansas Supreme Court's decision in *Butler* hinged on whether the fair report privilege barred plaintiff's claim for defamation. *Butler*, 49 S.W.3d at 470.  The very definition of the fair report privilege under the Restatement (Second) of Torts § 611, captioned "Report of Official Proceeding or Public Meeting," is quoted verbatim in *Butler*: "the privilege of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported."  *Butler*, 49 S.W.3d at 477-78.

Poignantly, in their Complaint, Plaintiffs did not assert a defamation claim.  Further, the contents of the Offense Report and Incident Report were documented as part of a confidential FINS proceeding, not as part of an official public record or public meeting.  *See* Compl. ¶ 4.  Just

---

[6] https://www.washingtonpost.com/news/acts-of-faith/wp/2015/06/03/what-to-expect-from-the-fox-news-interview-with-josh-duggars-parents/?utm_term=.f6f3f719d965
http://www.theblaze.com/news/2015/06/03/sister-of-reality-star-josh-duggar-says-she-was-a-victim-but-defends-him/ http://atlanta.cbslocal.com/2015/06/03/josh-duggars-sister-says-she-was-victim-of-her-older-brother/

as Judge Zimmerman recognized and so ordered, the Arkansas Juvenile Code and the Arkansas

Child Maltreatment Act mandate confidentiality of the investigation.  *Id.* ¶ 72; *See also* A.C.A. §

16-90-1104(b), A.C.A. § 12-18-101 *et seq.* and A.C.A. § 9-27-301 *et seq.*  Besides Arkansas law

protecting minors, the Arkansas FOIA statute mandates that any identifying information remain

private.  A.C.A. § 25-19-105(b)(13).  Further, Bauer Defendants did not even possess documents

responsive to their FOIA requests when they began publically disclosing private facts of

Plaintiffs' sexual abuse to the public.  *Id.* ¶¶ 6, 50-51.  Lurid details of Plaintiffs' sexual abuse

while minors were recorded as confidential FINS proceedings not as part of the public record.  It

was Bauer Defendants who publicized what had remained private from 2002 until 2015.  *Id.* ¶¶

5, 6, 50, 51.  The fair report privilege does not apply and does not bar Plaintiffs' claims.

## IV.   PLAINTIFFS' CLAIMS ARE NOT SUBJECT TO THE ARKANSAS ANTI-SLAPP STATUTE.

The Arkansas Anti-SLAPP statute does not apply to this case; therefore, it does not bar

Plaintiffs' claim.  Strategic lawsuits against public participation, or "SLAPPs" are civil actions

filed against individuals in retaliation for simply exercising the right to tell the government what

individuals "think, want, or believe in."  George W. Pring & Penelope Canan, *SLAPs Getting*

*Sued for Speaking Out* 1 (1996).  Arkansas' Anti-SLAPP statutes are commonly known as the

"Citizen Participation in Government Act" (hereinafter "the Act").  *See* Caleb Patterson, *Have I*

*Been Slapped? Arkansas' Attempt to Curb Abusive Litigation: The Citizen Participation in*

*Government Act*, 60 ARK. L. REV. 506, 520 (2007) (citing Ark. Code. Ann. §§ 16-63-502 *et seq.*

(2005)).  The purpose of and public policy behind the statute is clear: "it is in the public interest

to encourage participation by the citizens of the State of Arkansas in matters of public

significance through the exercise of their constitutional rights of freedom of speech and the right

to petition government for a redress of grievances."  A.C.A. § 16-63-502.  The Act provides a remedy for "any person making a privileged communication … in connection with an issue of public interest or concern shall be immune from civil liability, unless a statement or report was made with knowledge that it was false."  Ark. Code Ann. § 16-63-504.  Notably, "nothing in [the Act] shall affect or preclude the right of any party to any recovery otherwise authorized by common law, statute, or rule."  Ark. Code Ann. § 16-63-508.

The Act clearly does not apply to this case.  In no way is this lawsuit a civil action filed against an individual in retaliation for exercising the right to tell the government what they believe.  Bauer Defendants are not individuals, and its communications were neither privileged nor to the government.  The purpose of the Act is to provide a sort of whistleblower remedy for individual citizens making privileged communications to the government about matters of public interest.  It is unequivocal that the Act does not preclude or abridge the rights of recovery afforded by common law, statute or rule.  Ark. Code Ann. § 16-63-508.  Bauer Defendants' argument is entirely without merit.  Plaintiffs' claims against Bauer Defendants are plausible claims recognized by and actionable under Arkansas law.

## V.     CONCLUSION

For the reasons articulated above, Plaintiffs' claims taken as true are more than plausible; thus, this Court should deny Bauer Defendants' motion to dismiss.

Respectfully Submitted,


/s/      Shawn B. Daniels
Shawn B. Daniels, Arkansas Bar No. 99126
Sarah C. Jewell, Arkansas Bar No. 2015169
Hare, Wynn, Newell & Newton, L.L.P.
129 West Sunbridge Drive
Fayetteville, AR 72703

18

479-521-7000
shawn@hwnn.com
sjewell@hwnn.com

and

Lauren Wulfe (admitted *pro hac vice*)
Steven Bledsoe (admitted *pro hac vice*)
Robert O'Brien (admitted *pro hac vice*)
Larson O'Brien LLP
555 S. Flower Street, Suite 4400
Los Angeles, CA 90071
Phone: 213- 436-4888
lwulfe@larsonobrienlaw.com
sbledsoe@larsonobrienlaw.com
robrien@larsonobrienlaw.com

*Attorneys for Plaintiffs JILL DILLARD,*
*JESSA SEEWALD, JINGER VUOLO, and*
*JOY DUGGAR*

19

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 5th day of September, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to the following:

Jason E. Owens
Rainwater, Holt & Sexton, P.A.
P.O. Box 17250
6315 Ranch Drive
Little Rock, Arkansas 72222-7250
Telephone (501) 868-2500
Telefax (501) 868-2505
email:owens@rainfirm.com

*ATTORNEYS FOR COUNTY*
*DEFENDANTS*

Susan Keller Kendall
Kendall Drewyor Law Firm
3706 Pinnacle Hills Parkway
Suite 201
Rogers, AR 72758
skk@kendalllawfirm.com

Thomas N. Kieklak
Robert Justin Eichmann
Harrington, Miller, Kieklak, Eichmann & Brown, P.A.
P.O. Box 687
113 East Emma Avenue
Springdale, AR 72765-6765
tkieklak@arkansaslaw.com
jeichmann@arkansaslaw.com

*ATTORNEYS FOR CITY DEFENDANTS*

Cynthia W. Kolb
Cross, Gunter, Witherspoon & Galchus, P.
500 President Clinton Avenue
Suite 200
Little Rock, AR 72201
ckolb@cgwg.com

Elizabeth Anne McNamara
Davis Wright Tremaine LLP
1251 Avenue of the Americas
21st Floor
New York, NY 10020
lizmcnamara@dwt.com

Jamie Somoza Raghu
Davis Wright Tremaine LLP
1251 Avenue of the Americas
21st Floor
New York, NY 10020
jamieraghu@dwt.com

*ATTORNEYS FOR BAUER DEFENDANTS*

/s/ Shawn B. Daniels