**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

| | |
|---|---|
| **JILL DILLARD, JESSA SEEWALD, JINGER VUOLO, and JOY DUGGAR**<br><br>**PLAINTIFFS**<br><br>vs.                    **CASE NO. 5:17-5089-TLB**<br><br>**CITY OF SPRINGDALE, ARKANSAS; WASHINGTON COUNTY, ARKANSAS; KATHY O'KELLEY, in her individual and official capacities; ERNEST CATE, in his individual and official capacities; RICK HOYT, in his individual and official capacities; STEVE ZEGA, in his official capacity; BAUER PUBLISHING COMPANY, L.P.; BAUER MAGAZINE, L.P.; BAUER MEDIA GROUP, INC.; BAUER INC.; HEINRICH BAUER NORTH AMERICA, INC.; BAUER MEDIA GROUP USA, LLC; and DOES 1-10, inclusive**<br><br><u>**DEFENDANTS**</u> | **[PROPOSED] AMENDED COMPLAINT INJUNCTIVE RELIEF AND DAMAGES, FOR:**<br><br>**(1)  INVASION OF PRIVACY – PUBLIC DISCLOSURE OF PRIVATE FACT;**<br>**(2)  INVASION OF PRIVACY – APPROPRIATION;**<br>**(3)  INVASION OF PRIVACY – INTRUSION UPON SECLUSION;**<br>**(4)  TORT OF OUTRAGE**<br>**(5)  ARKANSAS CONSTITUTION – DUE PROCESS**<br>**(6)  42 U.S.C. § 1983 – FOURTEENTH AMENDMENT**<br>**(7)  42 U.S.C. § 1983 –** *Monell*<br><br>**DEMAND FOR JURY TRIAL** |



EXHIBIT
A

**[PROPOSED] AMENDED COMPLAINT**

## [PROPOSED] AMENDED COMPLAINT AND JURY DEMAND

### INTRODUCTION

1.      Plaintiffs JILL DILLARD, JESSA SEEWALD, JINGER VUOLO, and JOY
DUGGAR (collectively, "Plaintiffs") bring this action seeking injunctive relief, compensatory
damages, and punitive damages against Defendants CITY OF SPRINGDALE; WASHINGTON
COUNTY; KATHY O'KELLEY; ERNEST CATE; RICK HOYT; STEVE ZEGA; BAUER
PUBLISHING COMPANY, L.P.; BAUER MAGAZINE, L.P.; BAUER MEDIA GROUP, INC.;
BAUER, INC.; HEINRICH BAUER NORTH AMERICA, INC.; BAUER MEDIA GROUP
USA, LLC; and DOES 1-10 (collectively "Defendants") for violating Plaintiffs' civil and other
rights under the Fourteenth Amendments of the U.S. Constitution and Arkansas law.

2.      In December 2006, the Police Department instituted an investigation (the
"Investigation") into allegations that Plaintiffs, who were under the age of sixteen at the time,
and one other female had been sexually assaulted on several occasions by Plaintiffs' brother,
Josh Duggar.  The Investigation involved allegations of molestation that occurred in 2002 and
2003 while Plaintiffs and Josh, were minors.  As part of the Investigation, police investigators
interviewed Plaintiffs.  The investigators promised Plaintiffs that their statements would remain
confidential and not be disclosed to the public.  Plaintiffs' parents, Jim Bob and Michelle
Duggar, and their siblings also provided interviews under the promise of confidentiality.  The
contents of the Plaintiffs' and their parents' interviews were documented in the CITY OF
SPRINGDALE Police Department ("Police Department") official Offense Report and the
Sheriff's Office ("Sheriff's Office") official Incident Report.

3.      Following the interviews, a Family In Need of Services ("FINS") petition was
filed by the Washington County prosecutor's office at the request of the Police Department.
However, no charges were brought against Josh.

4.      Nearly ten years later, Defendants BAUER PUBLISHING COMPANY, L.P.;
BAUER MAGAZINE, L.P.; BAUER MEDIA GROUP, INC.; BAUER, INC.; HEINRICH
BAUER NORTH AMERICA, INC.; BAUER MEDIA GROUP USA, LLC (collectively, "IN
TOUCH DEFENDANTS"), seeking to exploit Plaintiffs' experiences as victims of child

molestation for their own gain, began soliciting and encouraging a source with knowledge of the Police Department's and the Sheriff's Office's Investigation to disclose such information in violation of the law.  On or about May 15, 2015, armed with previously confidential information about the Investigation that the IN TOUCH DEFENDANTS knew was disclosed to them in violation of the law, the IN TOUCH DEFENDANTS submitted Freedom of Information Act requests seeking copies of the Offense Report, Incident Report, and any other documentation related to the Investigation in order to give themselves pretextual legal cover concerning their receipt of such information.

5.      In response to the IN TOUCH DEFENDANTS' requests, Defendant KATHY O'KELLEY ("O'KELLEY"), then Chief of the Police Department, and Defendant ERNEST CATE ("CATE"), Springdale City Attorney, hastily and improperly determined that the Offense Report and the information contained therein should be released to the public.  Acting under color of law and under the customs, practices, and policies of Defendant CITY OF SPRINGDALE, CITY DEFENDANTS, directed, oversaw, and approved the Police Department's redaction and release of the Offense Report, in clear violation of the Arkansas Juvenile Code, the Arkansas Code, and the Arkansas and United States Constitutions.

6.      Similarly, Defendant RICK HOYT ("HOYT"), an Enforcement Major of the Sheriff's Office, and Defendant STEVE ZEGA ("ZEGA"), Washington County's Attorney, responded to the IN TOUCH DEFENDANTS' request by disclosing the Incident Report and the information contained therein.  Defendant HOYT and Defendant ZEGA, acting under color of law and under the customs, practices, and policies of Defendant WASHINGTON COUNTY, directed, oversaw, and approved the redaction and release of the under-redacted Incident Report, which included Plaintiffs' parents' names, the family's address, and the age of at least one victim.  The information revealed by the under-redacted Incident Report permitted the public to identify each of the Plaintiffs as among the victims named in the Investigation.  Disclosure of this information was in clear violation of the Arkansas and federal law.

7.      Specifically, the Arkansas Juvenile Code section 9-27-309(j) states: "Records of the arrest of a juvenile, the detention of a juvenile, and the proceedings under this subchapter

shall be confidential and shall not be subject to disclosure under the Freedom of Information Act of 1967, § 25-19-101 et seq. unless: (1) Authorized by a written order of the juvenile division of circuit court; or (2) The arrest of the proceedings under this subchapter result in the juvenile's being formally charged in the criminal division of circuit court for a felony."  No charges were brought in relation to the Investigation, and no written order authorizing the disclosure was ever received.  In fact, there were several written orders by Judge Stacey Zimmerman of the juvenile division of the circuit court expressly condemning the disclosure of the information contained in the Offense Report and Incident Report.

8.      Further, Arkansas Code Annotated section 12-18-104 provides that "[a]ny data, records, reports, or documents that are created, collected, or compiled by or on behalf of the Department of Human Services, the Department of Arkansas State Police, or other entity authorized under this chapter to perform investigations or provide services to children, individuals, or families shall not be subject to disclosure under the Freedom of Information Act of 1967, § 25-19-101 et seq."

9.      Defendants O'KELLEY, CATE, HOYT, and ZEGA egregiously and unnecessarily disclosed the contents of the Offense Report and Incident Reports and details of the Investigation to the IN TOUCH DEFENDANTS and other members of the media in violation of Arkansas law and Plaintiffs' privacy rights under the Arkansas and United States Constitution. Defendants O'KELLEY, CATE, HOYT, and ZEGA knew or should have known that their release of this information would lead to widespread disclosure to the general public.

10.      The misconduct of Defendants O'KELLEY, CATE, HOYT, and ZEGA did, in fact, lead to widespread publication of the Plaintiffs' private information.  On May 21, 2015, IN TOUCH DEFENDANTS posted or approved for posting the first of a series of articles on the world-wide *In Touch Weekly* website containing details of the Investigation and the Offense and Incident Reports.  The article, posted under the salacious headline "Bombshell Duggar Police Report," included the complete text of the improperly released Offense Report.  Almost immediately, other tabloids and users on social media picked up on the article, linking to the original post or summarizing its contents.  Over the course of the next month, IN TOUCH

[PROPOSED] AMENDED COMPLAINT

DEFENDANTS published at least eight more articles describing the Investigation or linking to copies of the Offense Report and Police Report.

11.     As a direct and proximate result of Defendants' misconduct, Plaintiffs endured harsh and unwarranted public scrutiny.  Defendants' actions forced Plaintiffs to relive painful memories and experiences that occurred almost ten years prior, resulting in Plaintiffs suffering severe mental anguish and distress.  Plaintiffs were also subject to the humiliation and extreme mental anguish of being publicly identified nation and world-wide as being victims of sexual abuse as minors and having the details of the most private and painful aspects of their lives released and published to friends, associates, and tens of millions of people throughout the United States and world.

12.     Plaintiffs had no knowledge that the highly personal and painful details revealed in their confidential interviews would be disclosed to anyone except law enforcement and child services personnel.  Indeed, they were instructed that their statements would remain confidential and not be released to the public.  Plaintiffs had reasonable expectation of privacy in the statements they made to law enforcement under the U.S. Constitution, the Arkansas Constitution, and the Arkansas Child Maltreatment Act.  Further, as minor victims of sexual abuse, Plaintiffs had a reasonable expectation of privacy in their identities as victims, and in the specific details of the abuse.

13.     Defendants' disclosures of the highly personal details of Plaintiffs' molestation as well as the IN TOUCH DEFENDANTS' posting of those details on the *In Touch Weekly* website, constitute a clear and unwarranted invasion of Plaintiffs' right of privacy and other rights as discussed herein.

## JURISDICTION AND VENUE

14.     This case arises under 42 U.S.C. § 1983 and Arkansas law.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

15.     Venue is proper in the Western District of Arkansas under 28 U.S.C. § 1931(b)(2) because a substantial part of the events or omissions giving rise to the claims herein occurred in the district, plaintiffs were residents of the district at the time of Defendants'

publications, and this is where plaintiffs have suffered the primary harm from Defendants' actions.

## THE PARTIES

16.     Plaintiff JILL DILLARD currently resides in Washington County, Arkansas, and was at all times relevant to this Complaint a resident of Washington County, Arkansas or Benton County, Arkansas and a citizen of the United States and the State of Arkansas.

17.     Plaintiff JESSA SEEWALD is, and at all relevant times has been, a resident of Washington County, Arkansas and a citizen of the United States and the State of Arkansas.

18.     Plaintiff JINGER VUOLO currently resides in the Laredo, Texas area, but was at all times relevant to this Complaint a resident of Washington County, Arkansas and a citizen of the United States and the State of Arkansas.

19.     Plaintiff JOY DUGGAR is, and at all relevant times has been, a resident of Washington County, Arkansas and a citizen of the United States and the State of Arkansas. Plaintiff JOY DUGGAR was a minor at all times relevant to this Complaint.

20.     Defendant CITY OF SPRINGDALE ("CITY") is a municipal corporation organized and existing under the laws of the State of Arkansas.  Defendant CITY is, and was at all relevant times mentioned herein, responsible for the actions and/or omissions and the policies, procedures, customs, and practices of the Police Department, the Springdale City Attorney's Office ("City Attorney's Office"), and their respective employees, agents, and officers.

21.     At all relevant times, Defendant Kathy O'Kelley ("O'KELLEY") was the Chief of Police for the City of Springdale, Arkansas, and was employed by and was an agent of the CITY.  In that capacity, she was the official responsible for setting and enforcing the policies, customs, and practices of the Police Department.  At all relevant times, Defendant O'KELLEY directed, authorized, and/or ratified the actions of other Police Department employees, agents, and officials.  Based on information and belief, and as described herein, Defendant O'KELLEY directed, authorized, and/or ratified the Police Department's unlawful release of the Offense Report to the IN TOUCH DEFENDANTS.  On information and belief, and as described herein, Defendant O'KELLEY also directed and participated in the Police Department's unlawful

**[PROPOSED] AMENDED COMPLAINT**

release of the Offense Report to the IN TOUCH DEFENDANTS.  Among other actions, Defendant O'KELLEY personally reviewed and sent the Offense Report to the IN TOUCH DEFENDANTS and other third parties in violation of PLAINTIFFS' Fourteenth Amendment and Arkansas privacy rights.

22.     At all relevant times, Defendant ERNEST CATE ("CATE") was the City Attorney for the City of Springdale.  He is employed by and is an agent of Defendant CITY and the City Attorney's Office.  Based on information and belief, and as described herein, Defendant CATE directed and participated in the City of Springdale's unlawful release of the Offense Report.  For instance, Defendant CATE personally reviewed and participated in creating and approving the copy of the Offense Report that was improperly released to the IN TOUCH DEFENDANTS and others in violation of PLAINTIFFS' Fourteenth Amendment and Arkansas privacy rights.  Based on information and belief, and as described herein, Defendant CATE directed, authorized, and/or ratified the Police Department's unlawful release of the Offense Report to the IN TOUCH DEFENDANTS.

23.     At all relevant times, CITY employed Defendant O'KELLEY and Defendant CATE (collectively, "CITY DEFENDANTS").  At all times material to this Complaint, CITY DEFENDANTS acted under color of law, acted in concert with one another, and acted under the customs, policies, practices, and usages of CITY.

24.     Defendant COUNTY OF WASHINGTON ("COUNTY") is a municipal corporation organized and existing under the laws of the State of Arkansas.  Defendant COUNTY is, and was at all relevant times mentioned herein, responsible for the actions and/or omissions and the policies, procedures, customs, and practices of the Sheriff's Office, the Washington County Attorney's Office ("County Attorney's Office"), and their respective employees, agents, and officers.

25.     At all relevant times, Defendant RICK HOYT ("HOYT") was and is a member of the Sheriff's Office.  He is employed by and is an agent of Defendant COUNTY and the Sheriff's Office.  Based on information and belief, and as described herein, Defendant HOYT directed and participated in the Sheriff's Office's unlawful release of the Incident Report and

Plaintiffs' highly confidential, sensitive, and private personal information contained in the Incident Report.

26.     At all relevant times, Defendant STEVE ZEGA ("ZEGA") was the County Attorney for Washington County and was employed by and an agent of Defendant COUNTY and the County Attorney's Office.  On information and belief, and as described herein, Defendant ZEGA directed and participated in the Sheriff's Office's unlawful release of the Incident Report and the highly confidential, sensitive, and private personal information contained therein.  Claims against Defendant ZEGA are brought against him only in his official capacity as County Attorney for Washington County.

27.     At all relevant times, COUNTY employed Defendant HOYT and Defendant ZEGA (collectively "COUNTY DEFENDANTS").  At all times material to this Complaint, COUNTY DEFENDANTS acted under color of law, acted in concert with one another, and acted under the customs, policies, practices, and usages of COUNTY.

28.     Upon information and belief, Defendant BAUER PUBLISHING COMPANY, L.P. is, and at all relevant times was, a limited partnership organized under the laws of the State of New Jersey with its principal place of business in Englewood Cliffs, New Jersey, and is engaged in business in Washington County, Arkansas.

29.     Upon information and belief, Defendant BAUER MAGAZINE, L.P. is, and at all relevant times was, a limited partnership organized under the laws of the State of Delaware with its principal place of business in Englewood Cliffs, New Jersey, and is engaged in business in Washington County, Arkansas.

30.     Upon information and belief, Defendant BAUER MEDIA GROUP, INC. is, and at all relevant times was, a corporation formed under the laws of the State of Delaware with its principal place of business in New York, New York, and is engaged in business in Washington County, Arkansas.

31.     Upon information and belief, Defendant BAUER, INC. is, and at all relevant times was, a corporation formed under the laws of the state of Delaware with its principal place

**[PROPOSED] AMENDED COMPLAINT**

of business in Englewood Cliffs, New Jersey, and is engaged in business in Washington County, Arkansas.

32.     Upon information and belief, Defendant HEINRICH BAUER NORTH AMERICA, INC. is, and at all relevant times was, a corporation formed under the laws of the state of Delaware with its principal place of business in Englewood Cliffs, New Jersey, and is engaged in business in Washington County, Arkansas.

33.     Upon information and belief, Defendant BAUER MEDIA GROUP USA, LLC is, and at all relevant times was, a limited liability company organized under the laws of the state of Delaware, and is engaged in business in Washington County, Arkansas.

34.     The IN TOUCH DEFENDANTS own, control, and/or publish the tabloid publication *In Touch Weekly*, which they cause to be distributed in print throughout the world, including in Washington County, Arkansas.

35.     In addition to publishing print publications, the IN TOUCH DEFENDANTS frequently publish their articles on their Internet web site in order to promote the sale of their tabloid publications.  The Internet publications are available to Internet users located in Washington County, Arkansas.

36.     Plaintiffs are informed and believe, and based thereon allege, that at all relevant times, the IN TOUCH DEFENDANTS have operated as a joint venture dividing revenues and profits among them and seeking by their joint efforts to maximize gains and minimize losses. Plaintiffs further are informed and believe, and based thereon allege, that at all relevant times, the acts and conduct herein alleged of each of the IN TOUCH DEFENDANTS were known to, authorized by, or ratified by the other IN TOUCH DEFENDANTS.  As such, each and every IN TOUCH DEFENDANT is equally responsible in whole or in part for each and every act alleged herein.

37.     The true names and identities of Defendants DOES 1–10 are currently unknown to Plaintiffs.  Plaintiffs will seek leave to amend this Complaint when the names and identities of DOES 1–10 have been ascertained.  Based on information and belief, and as described herein, Defendants DOES 1–10 are the writers, photographers, editors, distributors, retailers, attorneys,

**[PROPOSED] AMENDED COMPLAINT**

employees of the Police Department, City Attorney's Office, Sheriff's Office, and County

Attorney's Office, and others involved in the acts, occurrences, and events alleged in this

Complaint, and are liable to Plaintiffs therefore.

### FACTUAL ALLEGATIONS

38.     Plaintiffs JILL DILLARD, JESSA SEEWALD, JINGER VUOLO, and JOY

DUGGAR are sisters and the daughters of Jim Bob Duggar and Michelle Duggar.

39.     Plaintiffs are informed and believe, and based thereon allege, that on or about

December 7, 2006, an unknown individual placed an anonymous phone call to the Arkansas

State Police Child Abuse Hotline claiming that Josh Duggar had sexually molested Plaintiffs

JILL DILLARD, JESSA SEEWALD, JINGER VUOLO, and JOY DUGGAR and another

female individual.  The alleged molestations took place from March 2002 to March 2003 while

each Plaintiff was a minor child.  The Police Department subsequently opened the Investigation

and requested that Plaintiffs be brought to the Children's Safety Center located in Washington

County, Arkansas, for interviews.

40.     On information and belief, on or about December 7, 2006, Springdale Police

Detective Darrell Hignite contacted the Sheriff's Office to notify the Sheriff's Office of the

Investigation and institute an "agency assist" between the two departments.

41.     On December 12, 2006, Plaintiffs arrived at the Children's Safety Center for

interviews with the Police Department.  Plaintiffs as well as three other siblings were

interviewed individually by State Police Investigator Whitney Taylor.  Plaintiffs were assured

and promised that the interviews would remain confidential.  Investigator Taylor asked each

Plaintiff the details of the alleged sexual molestation, including where and how on their bodies

Plaintiffs were touched and any other details Plaintiffs could remember.  In addition, Plaintiffs

and their siblings were asked specific questions about individually-identifying personal

information, such as their hobbies, their grades in school, and where they were sleeping at the

time of the incidents.  The interviews were summarized and included in the Police Department's

official Offense Report.

**[PROPOSED] AMENDED COMPLAINT**

42.     Plaintiffs, who were under the age of sixteen at the time, understood, believed, and expected that the interviews were confidential and would not be disclosed to the public.  The promise of confidentiality was instrumental in Plaintiffs' understanding of the interviews.

43.     The same day, as part of the agency assist implemented by the Police Department and the Sheriff's Office, Sheriff's Office Detective Gary Conner interviewed Jim Bob and Michelle Duggar.  Jim Bob and Michelle provided Detective Conner with details of the alleged sexual molestation, including who had been molested, how many times, and where those molestations took place.  In particular, Jim Bob and Michelle were asked about the ages of each victim and details about the family's sleeping arrangements.  The contents of Detective Conner's interview with Jim Bob and Michelle was summarized and included in the Police Department's official Offense Report and the Sheriff's Office's official Incident Report.

44.     On or about December 20, 2006, Detective Hignite submitted a Family In Needs of Services ("FINS") Affidavit with the Washington County FINS Division to institute a FINS case.  Plaintiffs are also informed and believe, and thereupon allege that Detective Hignite provided his FINS Affidavit to the Washington County Prosecutor's Office for review.

45.     No charges related to the Investigation were brought against Josh or any other member of the Duggar family.  Plaintiffs believed the details of their experiences would remain confidential.

<u>**CITY and COUNTY DEFENDANTS Rush to Release Information to IN TOUCH DEFENDANTS**</u>

46.     Plaintiffs are informed and believe, and thereupon allege, that on or about May 15, 2015, the IN TOUCH DEFENDANTS, through their attorney Abtin Mehdizadegan, submitted a Freedom of Information Act ("FOIA") request to the Police Department seeking all files related to or mentioning Josh Duggar, Michelle Duggar, Jim Bob Duggar, and multiple addresses allegedly related to the Duggars.  Despite the fact that no charges resulted from the Investigation and its results had not been made public, the FOIA request contained details about the Investigation, including that the IN TOUCH DEFENDANTS had cause to believe that an incident report had been filed with the Police Department and that Detective Hignite had

**[PROPOSED] AMENDED COMPLAINT**

participated in the investigation.  The IN TOUCH DEFENDANTS submitted the Freedom of

Information Act requests seeking copies of the Offense Report, Incident Report, and any other

documentation related to the Investigation in order to give themselves pretextual legal cover

concerning their receipt of such information even though they knew that disclosure of such

information was prohibited by law.

47.     Mr. Mehdizadegan is a member of the law firm Cross, Gunter, Witherspoon &

Galchus, P.C. ("CGWG").  Plaintiffs are informed and believe and upon that basis allege that

one of the partners of CGWG, Carolyn B. Witherspoon, is a close and personal friend of

Defendant O'KELLEY.

48.     On information and belief, Defendant O'KELLEY oversaw correspondence

between the Police Department and Mr. Mehdizadegan regarding disclosure of the Offense

Report.  For instance, Defendant O'KELLEY reassured Mr. Mehdizadegan that the redacted

Offense Report would be provided by the evening of May 20, 2015, the date when Arkansas law

ostensibly required production of the FOIA request.  Nonetheless, Arkansas law permits agencies

to obtain time extensions under the Act, precisely to give agencies time to consider the

sometimes complicated legal ramifications of disclosure.

49.     On information and belief, the IN TOUCH DEFENDANTS, through Mr.

Mehdizadegan, also faxed a FOIA request to the Sheriff's Office on or about May 15, 2015.

Similar to the FOIA request to the Police Department, the FOIA request to the Sheriff's Office

requested all files related to or mentioning Josh Duggar, Michelle Duggar, Jim Bob Duggar, and

multiple addresses alleged to be related to the Duggars.  Again, although no formal charges had

been filed and the Investigation was confidential, the FOIA request also stated that the IN

TOUCH DEFENDANTS had cause to believe that an incident report was filed with the Sheriff's

Office even though no charges had ever been brought against Josh.

50.     Plaintiffs are informed and thereupon allege that COUNTY DEFENDANTS

directed and personally participated in preparing documents, including the Incident Report, in

response to the FOIA requests.  On information and belief, Defendant HOYT, in his official

capacity, organized, oversaw, and approved the Sheriff's Office's preparation of the redacted

Incident Report.  Defendant ZEGA, in his official capacity as County Attorney, oversaw, counseled, and approved the Sheriff's Office's release of the redacted Incident Report to the IN TOUCH DEFENDANTS and others.

51.     At approximately 3:15 p.m. on May 19, 2015, the IN TOUCH DEFENDANTS posted an article on the *In Touch Weekly* website under the headline "'19 Kids and Counting' Son Named in Underage Sex Probe" (the "May 19th Post").  The May 19th Post stated the IN TOUCH DEFENDANTS were "reporting exclusively" that Josh had been investigated for sexual assault.  Although the Investigation and the contents of the Offense and Incident Reports were confidential under Arkansas law, the May 19th Post reported details from "multiple sources who have seen the police report," including that Josh was investigated for sexual assault in the fourth degree.  The post also quoted a source who "saw and read" the Reports and explained that the Reports "clearly stated that Jim Bob brought his son Josh into the Arkansas State Police and spoke to a state trooper about Josh's involvement in alleged inappropriate touching with a minor."  Additionally, the post included specific details about the Investigation, including the fact that Detective Hignite was involved and that the CITY and COUNTY had not moved forward with the case due to the statute of limitations.  Notably, the May 19th Post stated that Detective Hignite cautioned the IN TOUCH DEFENDANTS that he could not comment or discuss the Investigation because of its sensitive nature and the fact that it involved a juvenile. The post concluded with a promotion for sales of the hardcopy version of *In Touch Weekly*, noting that for "the latest inside Josh Duggar's shocking past, pick up the new issue of *In Touch Weekly*, on newsstands tomorrow!"

52.     On information and belief, neither the Police Department nor the Sheriff's Office had officially or formally responded to the FOIA requests at the time the May 19th Post was posted on the *In Touch Weekly* website.

53.     Shortly after the article was posted, the Police Department received numerous FOIA requests for documents related to the Duggars and the Investigation.  On information and belief, the influx of FOIA requests and the level of detail contained in the IN TOUCH DEFENDANTS' website post led members of the Police Department to suspect that a

Department source was leaking information to the media.  The steady leaking of information encouraged and reinforced the Department's sense of urgency to release the lurid details of Plaintiffs' abuse to the media.  The increase in media requests caused Defendant O'KELLEY to contemplate whether the Police Department would soon end up in the tabloids, creating the prospect of worldwide media attention for what was otherwise a sleepy, small-town police department.  Of course, it was precisely the identity of the victims that would invite such public scrutiny upon Springdale.  A response to the FOIA request that did not include the victims' identifying details, or the lurid minutiae of their ordeal, would not have attracted the desired public attention.

54.      The following morning, May 20, 2015, a companion print article entitled "Josh Duggar Named In Underage Sex Probe" (the "May 20th Article") was made available for sale in the print version of *In Touch Weekly*.  The May 20th Article contained many of the same details as the May 19th Post but included additional details confirming the IN TOUCH DEFENDANTS were receiving information from inside sources whom they knew were disclosing the information in violation of the law.  Specifically, the May 20th Article noted that "several sources, who have seen the police report," suggested that the Reports had been buried and that a state trooper named Joseph Hutchens had "really dropped the ball."  The May 20th Article further reveals that the IN TOUCH DEFENDANTS had been informed by three separate members of law enforcement that the information about the matter was confidential and not subject to disclosure, including being specifically informed that "Arkansas law prohibits any comment about confidential information regarding a minor."

55.      On information and belief, neither the Police Department nor the Sheriff's Office had officially or formally responded to the FOIA requests at the time the May 20th Article was made available for purchase.

56.      Plaintiffs are informed and thereupon allege that Defendant O'KELLEY, acting under a sense of urgency from the May 20, 2015 deadline and recognizing the potential for increased publicity for the Police Department, rushed to prepare the Offense Report for distribution to the IN TOUCH DEFENDANTS and other members of the media.  Defendant

**[PROPOSED] AMENDED COMPLAINT**

O'KELLEY instructed members of the Police Department, including Captain Ron Hritz, to redact certain personal information from the Offense Report.

57.     On information and belief, Defendant O'KELLEY spoke with Mr. Mehdizadegan on the afternoon of May 20, 2015 and assured him the Police Department would produce documents responsive to the FOIA request later that evening.

58.     At approximately 6:45 p.m. on May 20, 2015, Defendant O'KELLEY received the redacted copy from Captain Ron Hritz.  Approximately thirty-five minutes later, she forwarded the copy to Defendant CATE for review and final approval for external circulation. However, on information and belief, Defendant O'KELLEY did not wait for a response from Defendant CATE.  Nor did she seek an extension of the deadline.  Instead, Defendant O'KELLEY sent the partially-redacted Offense Report to Mr. Mehdizadegan at approximately 8:58 p.m.  Defendant O'KELLEY also sent the Offense Report to a local news organization pursuant to a separate FOIA request.

59.     Several minutes later at approximately 9:03 p.m., Defendant CATE replied that he approved the redacted Offense Report for public distribution.  He noted, however, that the Police Department and the City Attorney's Office should consult with Carolyn Witherspoon from CGWG, the law firm facilitating the request for the documents, about the redactions.

60.     Contrary to Arkansas law and the bounds of human decency, the Offense Report approved for distribution included information clearly identifying Plaintiffs as sexual assault victims.  The unredacted information released to the media for the express purpose of publication included Jim Bob Duggar's and Michelle Duggar's names, the family's current and former address, and other personal details about each individual victim.  To compound Plaintiffs' humiliation, the Police Department released the improperly-redacted Offense Report to the public containing the full descriptions of Plaintiffs' and their siblings' confidential interviews with Investigator Taylor.  Thus, each Plaintiff was not only obviously identifiable from the facts publicized by Defendants, but each Plaintiff was forced to endure the publication of graphic descriptions about their molestation.

**[PROPOSED] AMENDED COMPLAINT**

61.     Similarly, on or about May 21, 2015, Defendants HOYT and ZEGA, acting under the official policies and procedures of the COUNTY, directed employees from the Sheriff's Office, including employees in the Records, Dispatch, and Criminal Investigation Divisions, to copy and mail the redacted Incident Report and other documents to Mr. Mehdizadegan.

62.     The "redacted" version of the Incident Report the COUNTY DEFENDANTS released to the IN TOUCH DEFENDANTS made no more than a pretextual effort at protecting Plaintiffs' rights.  Despite a handful of cosmetic redactions, the released Incident Report included information identifying Plaintiffs as the victims of sexual assault, including Jim Bob Duggar's and Michelle Duggar's names, the family's current and former address, and other personal details about each individual Plaintiff.  In particular, the released Incident Report expressly identified one of Josh's victims as his then 5-year-old sister, thereby identifying Plaintiff JANE DOE 2 as one of the victims.  The other victims were similarly identifiable by facts described in the Incident Report.

63.     Plaintiffs are informed and thereupon allege that after seeing the IN TOUCH DEFENDANTS' salacious May 19th Article, CITY DEFENDANTS and COUNTY DEFENDANTS rushed to prepare redacted copies of the Offense Report and Incident Report and provide them to IN TOUCH DEFENDANTS and the media.

64.     On information and belief, Defendant O'KELLEY, Defendant CATE, the Police Department, and the City Attorney's Office did not wait to seek external guidance from the Arkansas Municipal League or the CITY's child services departments regarding the disclosure of confidential sexual abuse information obtained from a minor at any point prior to releasing the information to the IN TOUCH DEFENDANTS.

65.     The publication of the Investigation's details brought the expected scrutiny upon Springdale and its law enforcement agencies, but not all of that attention was favorable.  In particular, public backlash formed against the intentional release and publication of details of Plaintiffs' sexual victimization.   Plaintiffs are informed and believe and on that basis allege that after the release of the Offense Report, Defendant CATE for the first time asked the Arkansas Municipal League to review the information to determine if it was subject to disclosure under the

Arkansas FOIA.  Almost immediately upon receiving the inquiry, Municipal League attorneys noted that Arkansas law prohibited disclosure of the identity of victims of sex crimes.  A few hours later, the Municipal League determined that the released information was indeed exempt from FOIA disclosure.

66.     Similarly, Plaintiffs are informed and on that basis allege, CITY DEFENDANTS did not send the Offense Report to the Arkansas Department of Health Services ("DHS"), until the morning of May 21, 2015, after the documents had been released to the IN TOUCH DEFENDANTS and others.  Defendants neglected to send DHS the Offense Report even though it was part of a FINS case, one in which the DHS generally provides services designed to protect any involved juveniles and their families.  DHS's review occurred at its own request only after a DHS attorney called Defendant CATE, having become aware of the release of Plaintiffs' information, and requested the opportunity to determine if any objectionable or improper information had been disclosed.  Upon information and belief, despite the fact that a FINS case had been opened, the Police Department and the City Attorney's Office did not request DHS assistance at any time prior to releasing the Offense Report.

67.     Caught having improperly released Plaintiffs' information in violation of Arkansas law, Defendant O'KELLEY now called Mr. Mehdizadegan and took the position that the certain identifying information her Department released should no longer be published.  Specifically, she requested that the IN TOUCH DEFENDANTS refrain from using Jim Bob and Michelle's names as those facts identified Plaintiffs and therefore violated Arkansas law.  Defendant O'KELLEY further requested that Mr. Mehdizadegan accept a different redacted version of the Offense Report.

### Unlawful Publication of The Offense Report, Incident Report, and Details of The Investigation

68.     Despite Defendant O'KELLEY's belated request that the IN TOUCH DEFENDANTS delay the Offense Report's publication, Defendants published the previously-produced Offense Report on their *In Touch Weekly* Site on May 21, 2015, under the headline

WARNING: Graphic descriptions contained in police report.

[PROPOSED] AMENDED COMPLAINT

"Bombshell Duggar Police Report: Jim Bob Duggar Didn't Report Son Josh's Alleged Sex

Offenses For More Than A Year."  The post contained the full thirty-three (33) page copy of the

Offense Report as well as a narrative describing its contents along with the warning:

On information and belief, the post was written, edited, and posted by employees of the IN

TOUCH DEFENDANTS.  Unsurprisingly, the IN TOUCH DEFENDANTS included every

identifying fact released by the Police Department before its belated attempt to correct the

disclosure.

69.     As mentioned above, almost immediately after publication, users on social media

and online forums began identifying which members of the Duggar family were victims of

Josh's actions.  For example, a user on the online forum "freejinger.org" commented that from

the length of the redacted names and the details of the interviews, each victim's identity could be

determined.  Many on social media expressed concern for the victims, including Plaintiffs,

noting that Plaintiffs had been re-victimized by having the details of their sexual assault

reverberating through the media as a result of Defendants' actions.

70.     Others, however, were far less kind.  Plaintiffs were subjected to spiteful and

harsh comments and harassment on the Internet and in their daily lives.  Some chastised their

personal decision to forgive their brother while others used the opportunity to provide

unwarranted commentary on all aspects of Plaintiffs' lives.  Others simply reveled in the *ad hoc*

disclosure of the lurid details of Plaintiffs' suffering.

71.     Numerous media outlets and websites picked up on the story, and posted links to

it, further exposing millions of people to the Offense Report released by the Police Department

and its "graphic" descriptions of intimate details of Plaintiffs' molestation.  As a natural and

foreseeable consequence of the IN TOUCH DEFENDANTS' conduct, massive numbers of

individuals visited the *In Touch Weekly* site and purchased the print version of *In Touch Weekly*,

for which the IN TOUCH DEFENDANTS have been unjustly enriched through increased

revenues and profits.

[PROPOSED] AMENDED COMPLAINT

72.     Concurrently, in order to protect the victims' identities, JOY DUGGAR, then a minor, filed a motion with the Circuit Court of Washington County, Arkansas to expunge the Offense Report from the public record.  On May 21, 2015, Judge Stacey Zimmerman granted the motion and ordered the Offense Report expunged from the public record and any and all copies destroyed.  Judge Zimmerman specifically noted:

The Order explained that the Offense Report contained information that could directly or

> 1.     Pursuant to Ark. Code Ann. § 16-90-1104 ("Section 1104"), "[a] law enforcement agency shall not disclose to the public information directly or indirectly identifying the victim of a sex crime…."

indirectly identify JOY DUGGAR as a victim of a sex crime in violation of Arkansas Code Section 16-90-1104.

73.     On May 26, 2015, Judge Zimmerman issued another order ruling that the juvenile records, including the Plaintiffs' interviews and the information about their sexual assaults, were not subject to FOIA disclosure.  Judge Zimmerman concluded:

Plaintiffs' information and statements were made in connection with a FINS case and therefore

> The juvenile records concerning this Family in Need of Services case are confidential and shall not be subject to disclosure under the Freedom of Information Act as  no formal charges were ever filed, and the purposes of the Arkansas Juvenile Code will **not** be furthered by disclosure.

FOIA-exempt under Arkansas Juvenile Code section 9-27-309(j).  Judge Zimmerman further noted that the Arkansas Juvenile Code should be "liberally construed" to effectuate its purpose, including protecting the juvenile's health, safety, and emotional, mental, and physical welfare. In Judge Zimmerman's opinion, the Juvenile Code's purpose is not furthered by disclosing reports containing Plaintiffs' information.

74.     Despite the court orders determining that the information contained in the police reports was confidential, the IN TOUCH DEFENDANTS continued to post copies of the Offense Report, post articles containing lurid details about the sexual molestations, and provide links to other offending articles on the *In Touch Weekly* website.  On May 26, 2015, for example,

IN TOUCH DEFENDANTS posted or approved for posting an article under the headline "Josh Duggar's Youngest Molestation Victim May Have Been As Young As 5-Years Old." In addition to reposting the Offense Report, the article highlights details to make it clear that four of the underage victims lived at home with Jim Bob and Michelle, and were therefore Josh's younger sisters. The article further stated that although the Offense Report includes redactions, it was obvious that one of Josh's victims was as young as five years old. In just a week and a half, the IN TOUCH DEFENDANTS posted or approved the posting of at least eight articles including copies of the Offense Report itself, or details of the confidential interviews contained therein.

75.    On June 1, 2015, Judge Zimmerman issued a supplemental order reiterating her prior orders that the police reports and Plaintiffs' information contained therein were confidential and not subject to FOIA disclosure.

76.    Nevertheless, seeking to capitalize on the continuing publicity generated by Plaintiffs' story, on June 3, 2015, Defendants published another article on the *In Touch Weekly* site containing intimate details about Plaintiffs' molestations. The article, entitled "Josh Duggar Chilling Molestation Confession in New Police Report," included a copy of the Incident Report, which failed to redact the names of Jim Bob and Michelle Duggar, the family's address, and other details that enabled direct and indirect identification of Plaintiffs as the minor victims mentioned in the Incident Report.

77.    Plaintiffs and their families have been since subjected to extreme mental anguish and emotional distress both privately and publicly as a result of their trauma being publicized. Paparazzi began stalking Plaintiffs, camping out in front of their homes and intruding upon their day-to-day activities.

78.    Ignoring this, the IN TOUCH DEFENDANTS continue to post and publicize articles containing details of the Investigation or articles linking to its prior articles about the Investigation. As of May 2017, the IN TOUCH DEFENDANTS have ignored every single court order and continue to publish articles containing the confidential details of Plaintiffs' sexual victimization. In fact, as recently as April 2017, the IN TOUCH DEFENDANTS championed

**[PROPOSED] AMENDED COMPLAINT**

their role in Plaintiffs' misfortunes, publishing an article that stated the family's show was cancelled after the magazine "exclusively revealed" the details of Plaintiffs' victimization.

## FIRST CAUSE OF ACTION

### Invasion of Privacy – Public Disclosure of Private Fact

(Against CITY DEFENDANTS, COUNTY DEFENDANTS, and IN TOUCH DEFENDANTS)

### Release of the Offense Report, Incident Report, and Details of the Alleged Sexual Molestation by CITY DEFENDANTS and COUNTY DEFENDANTS

79.     Plaintiffs re-allege and incorporate each allegation in paragraphs 1 through 76 of this Complaint as though fully set forth herein.

80.     Agents and employees of the Police Department and Sheriff's Office, disclosed to the public confidential and highly personal details of Plaintiffs' sexual molestation, including their identities as sexual assault victims.  Plaintiffs allege this claim against those Defendants who participated in and approved the disclosure of their information to the IN TOUCH DEFENDANTS and others, including but not limited to the CITY DEFENDANTS and the COUNTY DEFENDANTS.

81.     The CITY DEFENDANTS and the COUNTY DEFENDANTS knew or should have known that the Offense Report and Incident Report and the information contained therein, constituted private and confidential information, and that Plaintiffs had reasonable expectations of privacy in that information being protected from public disclosure.  For example, the information contained in the Offense Report and Incident Report was solicited from Plaintiffs and their family members under the promise of confidentiality and in relation to a FINS case. The information, therefore, was protected from disclosure pursuant to the Arkansas Juvenile Code and other provisions of Arkansas law.

82.     Prior to the CITY DEFENDANTS' and COUNTY DEFENDANTS' unauthorized disclosure, the information related to the Investigation was not known to the general public.

83.     The CITY DEFENDANTS' and COUNTY DEFENDANTS' dissemination of the specific details of the sexual assaults against Plaintiffs, including where and how they were molested and that the alleged assailant was their brother, was not carried out for reasonable or

legitimate purposes.  Plaintiffs did not consent to, the release of such details to anyone other than the necessary law enforcement and family service personnel.

84.     The unauthorized disclosure of Plaintiffs' private facts to the media and the public is highly offensive and objectionable to Plaintiffs, as well as to any reasonable person of ordinary sensibilities.  For example, posts on social media described the revelation of Plaintiffs' intimate and private experiences by the CITY DEFENDANTS and the COUNTY DEFENDANTS as a horrible and blatant re-victimization of Plaintiffs.  Some even called for Defendant O'KELLEY's resignation.  Plaintiffs continue to be emotionally upset and humiliated by the disclosure of their identities as underage molestation victims and the intimate details of those assaults, including the fact that their brother was their assailant.

85.     Plaintiffs are informed and believe and on that basis allege that CITY DEFENDANTS and COUNTY DEFENDANTS acted with reckless disregard for Plaintiffs' rights of privacy.

86.     As a direct and proximate result of CITY DEFENDANTS' and COUNTY DEFENDANTS' aforementioned actions, Plaintiffs have suffered substantial emotional distress, mental anguish, embarrassment, humiliation, and economic harm, including reputational and professional harm, in an amount to be proved at trial.

**Publication of the Offense Report, Incident Report, and Details of the Alleged Sexual Molestation by the IN TOUCH DEFENDANTS**

87.     Plaintiffs re-allege and incorporate each allegation in paragraphs 1 through 76 of this Complaint as though fully set forth herein.

88.     The IN TOUCH DEFENDANTS publicly disclosed confidential and highly personal details of Plaintiffs' sexual molestation, including where and how they were molested and that the alleged assailant was their brother.  The IN TOUCH DEFENDANTS knew that the Offense Report, Incident Report, and the details contained in those documents were private and confidential information, and that Plaintiffs had reasonable expectations of privacy in that information was protected from public disclosure.  By way of example, the IN TOUCH DEFENDANTS had been informed by three separate members of law enforcement that the

information about the matter was confidential and not subject to disclosure, including being specifically informed that "Arkansas law prohibits any comment about confidential information regarding a minor." In addition, IN TOUCH DEFENDANTS knew that Judge Zimmerman had ordered the Offense Report and details of the Investigation sealed and excluded from disclosure under FOIA pursuant to the Arkansas Juvenile Code.

89.     The IN TOUCH DEFENDANTS' publishing, posting, and disseminating the specific details of the sexual assaults against Plaintiffs, including their identities as minor victims of sexual assault by their brother and the specific details of their molestation, was not carried out for reasonable or legitimate purposes. Instead, the IN TOUCH DEFENDANTS sought to exploit Plaintiffs' sexual abuse to create hype and publicity with which they could increase sales of their magazine. The primary purpose of the disclosure was to increase the IN TOUCH DEFENDANTS' profits.

90.     The unauthorized publication of Plaintiffs' private facts by the IN TOUCH DEFENDANTS is highly offensive and objectionable to Plaintiffs, as well as to any reasonable person of ordinary sensibilities. The IN TOUCH DEFENDANTS employed sensationalized headlines to lure readers into salacious stories and exploited Plaintiffs' pain and suffering. Through their disclosure of the Offense Report, Incident Report, and details of the Investigation, the IN TOUCH DEFENDANTS scandalized Plaintiffs' experiences as victims of sexual abuse by their brother. Comments on social media expressed dismay at the publication of Plaintiffs' intimate and private experiences by the IN TOUCH DEFENDANTS, noting that such publication unfairly dragged Plaintiffs' experiences into the spotlight. Plaintiffs were and continue to be extremely upset and humiliated by the disclosure of the intimate details of the assaults, including allegations that they were victims of potential incest.

91.     Plaintiffs had no prior knowledge of, and did not consent to, the publication of such details.

92.     Prior to the IN TOUCH DEFENDANTS' unauthorized disclosure, the information related to the Investigation was not known to the general public. IN TOUCH DEFENDANTS knew that the information related to the Investigation was protected from

**[PROPOSED] AMENDED COMPLAINT**

disclosure to the general public but nevertheless the IN TOUCH DEFENDANTS actively

solicited and encouraged the disclosure of such information from one or more individuals whom

they knew would be and were violating the law by disclosing the information to IN TOUCH

DEFENDANTS.  IN TOUCH DEFENDANTS solicited and encouraged the disclosure of this

information in violation of the law for the purposes of disclosing it publically for their own

financial gain.

93.     Plaintiffs suffered harm as a direct and proximate result of the IN TOUCH

DEFENDANTS' conduct and are entitled to injunctive relief, compensatory damage, attorney's

fees, costs, and any other available remedies and relief.

**SECOND CAUSE OF ACTION**

**Invasion of Privacy – Appropriation**

(Against IN TOUCH DEFENDANTS)

94.     Plaintiffs re-alleges and incorporates each allegation in paragraphs 1 through 76

of this Complaint as though fully set forth herein.

95.     Over the course of just two weeks from May 19, 2015 to June 3, 2015, the IN

TOUCH DEFENDANTS posted over eight (8) articles relating to the Investigation, each of

which exploited Plaintiffs' name, identity, and likeness for the IN TOUCH DEFENDANTS'

commercial gain.  The IN TOUCH DEFENDANTS continue to post articles citing to or posting

portions of the Investigation.

96.     The information published by the IN TOUCH DEFENDANTS was sufficiently

detailed to allow the public to identify Plaintiffs as the victims named in the Investigation.  For

example, only a few hours after the IN TOUCH DEFENDANTS posted the first article on the *In

Touch Weekly* website, users on online forums could identify each Plaintiff as a victim named in

the Offense Report.  Similarly, the Incident Report posted by the IN TOUCH DEFENDANTS on

June 3, 2015, contained the age of at least one Plaintiff, allowing the public to identify her as a

victim.

97.     The IN TOUCH DEFENDANTS' unauthorized use of Plaintiffs' identity, image,

and persona in connection with articles and online posts exploiting the details of the sexual abuse

that Plaintiffs suffered constitutes a misappropriation and violation of Plaintiffs' right of privacy. The IN TOUCH DEFENDANTS sensationalized Plaintiffs' experiences to enhance sales of the IN TOUCH DEFENDANTS' publications and increase site visits to the *In Touch Weekly* website.

98.     Plaintiffs are informed and believe, and thereupon allege, that the aforementioned acts were intentional and done with a conscious or reckless disregard of Plaintiffs' privacy rights, without Plaintiffs' consent, for the purpose of commercial gain.

99.     As a direct and proximate result of the IN TOUCH DEFENDANTS' conduct, the IN TOUCH DEFENDANTS have earned substantial profits attributable to the unauthorized commercial use and exploitation of Plaintiffs' images and identities.  Plaintiffs are entitled to recover and hereby seek all unjustly earned profits related to the IN TOUCH DEFENDANTS' unauthorized commercial exploitation and violation of Plaintiffs' privacy rights.

100.    Plaintiffs further seek the market value of the IN TOUCH DEFENDANTS' unsanctioned commercial use of their images and identities.

101.    On information and belief, the IN TOUCH DEFENDANTS acted intentionally and with a conscious and reckless disregard of Plaintiffs' rights.  IN TOUCH DEFENDANTS knew that the information related to the Investigation was protected from disclosure to the general public but nevertheless the IN TOUCH DEFENDANTS actively solicited and encouraged the disclosure of such information from one or more individuals whom they knew would be and were violating the law by disclosing the information to IN TOUCH DEFENDANTS.  IN TOUCH DEFENDANTS solicited and encouraged the disclosure of this information in violation of the law for the purposes of disclosing it publically for their own financial gain.

102.    As a result of the IN TOUCH DEFENDANTS' conduct, Plaintiffs, and each of them, suffered harm and are entitled to declaratory relief, injunctive relief, compensatory damages, punitive damages, attorneys' fees, costs, and any other available remedies and relief.

## THIRD CAUSE OF ACTION

### Invasion of Privacy – Intrusion Upon Seclusion

(Against CITY DEFENDANTS, HOYT, and IN TOUCH DEFENDANTS)

### Release of the Offense Report, Incident Report, and Details of the Alleged Sexual Molestation by the CITY DEFENDANTS and the COUNTY DEFENDANTS

103.     Plaintiffs re-allege and incorporate each allegation in paragraphs 1 through 76 of this Complaint as though fully set forth herein.

104.     The CITY DEFENDANTS and Defendant HOYT intentionally intruded upon Plaintiffs' solitude and seclusion.  The CITY DEFENDANTS and Defendant HOYT knowingly released documents containing sensitive personal information regarding Plaintiffs' sexual molestation in violation of a promise of confidentiality and thereby intruded upon Plaintiffs' emotional sanctum and violated the basic notions of civility and personal dignity expected in society.  As a result of this disclosure, Plaintiffs were forced to contend with harsh and unwarranted public scrutiny and were forced to relive painful experiences that occurred almost ten years prior.  Plaintiffs were also harassed and stalked by the media.

105.     The CITY DEFENDANTS and Defendant HOYT knew or should have known that they lacked the necessary legal authority or permission to release the intimate and personal information contained in the Offense Report and Release Report or disclose Plaintiffs' identities as minor victims of sexual molestation.  The information disclosed was compiled in relation to a FINS case and deemed protected from disclosure by an Arkansas state court judge pursuant to Arkansas law.

106.     The unauthorized intrusion into Plaintiffs' private life is highly offensive and objectionable to any reasonable person of ordinary sensibilities and is the result of conduct to which a reasonable person would strongly object.

107.     At all times prior to the disclosure, Plaintiffs conducted themselves in a manner consistent with an actual expectation of privacy.

**[PROPOSED] AMENDED COMPLAINT**

108.     As a direct and proximate result of the CITY DEFENDANTS' and Defendant HOYT's misconduct as described herein, Plaintiffs did and continue to suffer emotional and psychological pain, humiliation, embarrassment, suffering, and mental anguish.

109.     As a result of the conduct of Defendants O'KELLEY, CATE, and ZEGA, Plaintiffs, and each of them, suffered harm and are entitled to declaratory relief, injunctive relief, compensatory damages, punitive damages, attorneys' fees, costs, and any other available remedies and relief.

### Publication of the Offense Report, Incident Report, and Details of the Alleged Sexual Molestation by the IN TOUCH DEFENDANTS

110.     Plaintiffs re-allege and incorporate each allegation in paragraphs 1 through 76 of this Complaint as though fully set forth herein.

111.     The IN TOUCH DEFENDANTS intentionally intruded upon Plaintiffs' solitude and seclusion.  By publishing and promoting stories containing sensitive descriptions of Plaintiffs' sexual molestation, the IN TOUCH DEFENDANTS intruded upon Plaintiffs' emotional sanctum and violated the basic notions of civility and personal dignity expected in society.  As a natural and foreseeable consequence of the IN TOUCH DEFENDANTS' publications, Plaintiffs were re-victimized and forced to relive the painful and difficult circumstances of their molestation.

112.     On information and belief, the IN TOUCH DEFENDANTS knew or should have known that they lacked the necessary authority or permission to widely publicize Plaintiffs' intimate and personal information and disclose their identities as underage victims of sexual assault.  IN TOUCH DEFENDANTS knew that the information related to the Investigation was protected from disclosure to the general public but nevertheless the IN TOUCH DEFENDANTS actively solicited and encouraged the disclosure of such information from one or more individuals whom they knew would be and were violating the law by disclosing the information to IN TOUCH DEFENDANTS.  The IN TOUCH DEFENDANTS were told by law enforcement that Arkansas law prohibits any comment about the confidential information of a minor.  The IN TOUCH DEFENDANTS had also been notified by Defendant O'KELLEY that the information

contained in the Offense Report violated the Arkansas Code provisions expressly prohibiting disclosure of information identifying the victim of sexual assault.  Further, the IN TOUCH DEFENDANTS were on notice based on the Judge Zimmerman's several orders ruling the details of the Investigation sealed and excluded from FOIA disclosure.

113.    The IN TOUCH DEFENDANTS' unauthorized intrusion into Plaintiffs' private life is highly offensive and objectionable to Plaintiffs, as well as to any reasonable person of ordinary sensibilities and is the result of conduct to which a reasonable person would strongly object.  By way of example, numerous comments on social media condemned the unauthorized disclosure of Plaintiffs' identities and information as a disdainful and regrettable re-victimization of Plaintiffs.

114.    At all times prior to the IN TOUCH DEFENDANTS' publication, Plaintiffs conducted themselves in a manner consistent with an actual expectation of privacy.

115.    As a direct and proximate result of the IN TOUCH DEFENDANTS' misconduct as described herein, Plaintiffs did and continue to suffer emotional and psychological pain, humiliation, embarrassment, suffering, and mental anguish.

116.    Plaintiffs suffered harm as a direct result of the IN TOUCH DEFENDANTS' conduct and are entitled to injunctive relief, compensatory damage, attorney's fees, costs, and any other available remedies and relief.

## FOURTH CAUSE OF ACTION

### Tort of Outrage

(Against CITY DEFENDANTS, HOYT, and IN TOUCH DEFENDANTS)

**Release of the Offense Report, Incident Report, and Details of the Alleged Sexual Molestation by the CITY DEFENDANTS and COUNTY DEFENDANTS**

117.    Plaintiffs re-allege and incorporate each allegation in paragraphs 1 through 76 of this Complaint as though fully set forth herein.

118.    The CITY DEFENDANTS and Defendant HOYT acted intentionally and unreasonably in releasing the Offense Report, Incident Report, and information contained in those documents.  The CITY DEFENDANTS and Defendant HOYT knew or should have

known that the unauthorized release of Plaintiffs' intimate and personal information to third parties, including the tabloids and news outlets, would cause Plaintiffs to endure severe emotional distress.

119.    The CITY DEFENDANTS' and Defendant HOYT's conduct was extreme and outrageous and beyond all possible bounds of decency in a civilized community.  The CITY DEFENDANTS and Defendant HOYT acted intentionally and unreasonably in reviewing, redacting, and approving for distribution the Offense Report, Incident Report, and details of the Investigation in violation of Arkansas laws to protect victims of sexual abuse and protect juveniles in FINS cases.

120.    Plaintiffs are informed and believe and thereupon allege that the CITY DEFENDANTS and Defendant HOYT acted hastily and with reckless disregard of the probability of causing Plaintiffs emotional distress.

121.    The CITY DEFENDANTS' and Defendant HOYT's extreme and outrageous conduct was a direct and proximate cause of Plaintiffs' severe emotional, mental, and psychological distress.

122.    Plaintiffs suffered harm as a direct result of the CITY DEFENDANTS' and Defendant HOYT conduct and are entitled to injunctive relief, compensatory damage, attorney's fees, costs, and any other available remedies and relief.

**Publication of the Offense Report, Incident Report, and Details of the Alleged Sexual Molestation by the IN TOUCH DEFENDANTS**

123.    Plaintiffs re-allege and incorporate each allegation in paragraphs 1 through 76 of this Complaint as though fully set forth herein.

124.    The IN TOUCH DEFENDANTS acted intentionally and unreasonably in requesting, acquiring, publishing, and promoting articles containing the Offense Report, Incident Report, and information contained therein.  The IN TOUCH DEFENDANTS knew or should have known that Plaintiffs would suffer severe emotional distress as a result of the IN TOUCH DEFENDANTS' conduct.  Nevertheless, the IN TOUCH DEFENDANTS continued to publish and disseminate Plaintiffs' information.

125.     IN TOUCH DEFENDANTS knew that the information related to the Investigation was protected from disclosure to the general public but nevertheless solicited and encouraged the disclosure of the information in violation of the law for the purposes of disclosing it publically and obtaining financial gain.  The IN TOUCH DEFENDANTS were told by law enforcement that Arkansas law prohibits any comment about the confidential information of a minor.  The IN TOUCH DEFENDANTS had also been notified by Defendant O'KELLEY that the information contained in the Offense Report violated the Arkansas Code provisions expressly prohibiting disclosure of information identifying the victim of sexual assault.  Further, the IN TOUCH DEFENDANTS were on notice based on the Judge Zimmerman's several orders ruling the details of the Investigation sealed and excluded from FOIA disclosure.

126.     In light of the particularly sensitive nature of Plaintiffs' personal information, the IN TOUCH DEFENDANTS' conduct in continually publishing and promoting stories revealing Plaintiffs' information was extreme and outrageous and beyond all possible bounds of decency in a civilized community.  The IN TOUCH DEFENDANTS sensationalized Plaintiffs' traumatizing experiences as victims of sexual assault for pecuniary gain.

127.     Plaintiffs are informed and believe and thereupon allege that the IN TOUCH DEFENDANTS acted with actual malice and reckless disregard of Plaintiffs' right of privacy. In fact, as recently as April 2017, the IN TOUCH DEFENDANTS proudly proclaim that they broke the story regarding Plaintiffs' molestation and that the Duggars' television show was cancelled as a result.

128.     As a result of the IN TOUCH DEFENDANTS' conduct, Plaintiffs, and each of them, suffered severe emotional, mental, and psychological distress.

129.     Plaintiffs suffered harm as a direct result of the IN TOUCH DEFENDANTS' conduct and are entitled to injunctive relief, compensatory damage, attorney's fees, costs, and any other available remedies and relief.

## FIFTH CAUSE OF ACTION

### Violation of the Arkansas Constitution – Due Process

(Against Defendants the CITY and COUNTY DEFENDANTS)

130.     Plaintiffs re-allege and incorporate each allegation in paragraphs 1 through 76 of this Complaint as though fully set forth herein.

131.     On information and belief, agents and employees of the Police Department and the Sheriff's Office acting under color of law, improperly released or authorized for release an Offense Report and Incident Report containing Plaintiffs' highly intimate and egregiously humiliating personal details.  Plaintiffs allege this claim against those Defendants who released or caused to be released the Offense Report and Incident Report, including but not limited to the CITY DEFENDANTS and the COUNTY DEFENDANTS.

132.     The CITY DEFENDANTS and the COUNTY DEFENDANTS released and distributed confidential and intimate personal information relating to Plaintiffs' status as victims of sexual assault by their brother.  The information disclosed represented the most intimate aspects of Plaintiffs' affairs and is the type of information that a reasonable person would expect to remain private while in law enforcement's possession.  Arkansas has recognized the significance of such information by indicating that it is exempt from disclosure under the Arkansas Child Maltreatment Act and provisions of the Arkansas Juvenile Code.

133.     The CITY DEFENDANTS and the COUNTY DEFENDANTS disclosed information that was obtained during interviews given by Plaintiffs to the Police Department under the promise of confidentiality.  The promise of confidentiality was instrumental in obtaining Plaintiffs' interviews, and the CITY DEFENDANTS' and the COUNTY DEFENDANTS' disclosure was a flagrant breach of this promise.

134.     The CITY DEFENDANTS' and the COUNTY DEFENDANTS' release of this information was unreasonable and served no legitimate purpose, thereby violating Plaintiffs' privacy rights under the Due Process guarantees of the Arkansas Constitution.

135.     As a result of the CITY DEFENDANTS' and the COUNTY DEFENDANTS' conduct, Plaintiffs, and each of them, suffered harm and are entitled to declaratory relief, injunctive relief, compensatory damages, punitive damages, attorneys' fees, costs, and any other available remedies and relief.

**[PROPOSED] AMENDED COMPLAINT**

## SIXTH CAUSE OF ACTION

### 42 U.S.C. § 1983 – Fourteenth Amendment Due Process

(Against CITY DEFENDANTS and COUNTY DEFENDANTS)

136.     Plaintiffs re-allege and incorporate each allegation in paragraphs 1 through 76 of this Complaint as though fully set forth herein.

137.     On information and belief, agents and employees of the Police Department and the Sheriff's Office acting under color of law, released and distributed confidential and intimate personal information relating to Plaintiffs' status as victims of sexual assault by their brother. Plaintiffs allege this claim against those Defendants who released, or caused to be released, the Offense Report and Incident Report, including but not limited to the CITY DEFENDANTS and the COUNTY DEFENDANTS.

138.     Facing increasing pressure from the media, including the IN TOUCH DEFENDANTS, the CITY DEFENDANTS and the COUNTY DEFENDANTS hastily and recklessly released or authorized for release an Offense Report and Incident Report containing Plaintiffs' highly intimate and egregiously humiliating personal details.  The CITY DEFENDANTS and the COUNTY DEFENDANTS disclosed this information despite Arkansas law protecting the information from disclosure and without consultation to DHS or other agencies involved in the FINS case.  The information disclosed was obtained during interviews given by Plaintiffs to the Police Department under the promise of confidentiality, and the CITY DEFENDANTS' and the COUNTY DEFENDANTS' disclosure of the information was a flagrant breach of this pledge.  The promise of confidentiality was instrumental in obtaining Plaintiffs' interviews.

139.     Plaintiffs had a legitimate expectation of privacy in their highly personal information.  The information disclosed represented the most intimate aspects of Plaintiffs' affairs and is the type of information that a reasonable person would expect to remain private while in law enforcement's possession.  Further, as part of a FINS case, Plaintiffs' information and interviews were exempt from disclosure under the Arkansas Child Maltreatment Act and provisions of the Arkansas Juvenile Code.

- 31 -          [PROPOSED] AMENDED COMPLAINT

140.    The CITY DEFENDANTS' and the COUNTY DEFENDANTS' release of this information was unreasonable and served no legitimate purpose, and thereby violated Plaintiffs' privacy rights under the Fourteenth Amendment.

141.    As a result of the CITY DEFENDANTS' and the COUNTY DEFENDANTS' conduct, Plaintiffs, and each of them suffered harm and are entitled to declaratory relief, injunctive relief, compensatory damages, punitive damages, attorneys' fees, costs, and any other available remedies and relief.

## SEVENTH CAUSE OF ACTION

### 42 U.S.C. § 1983 – *Monell*

(Against Defendants CITY and COUNTY)

142.    PLAINTIFFS re-allege and incorporate each allegation in paragraphs 1 through 76 of this Complaint as though fully set forth herein.

143.    CITY's and COUNTY's official policies, practices, customs, and/or usages violated Plaintiffs' rights under the Fourteenth Amendment.  CITY's and COUNTY's official policies, practices, customs, and/or usages directly and proximately injured Plaintiffs, as alleged, entitling Plaintiffs to recover damages pursuant to 42 U.S.C. § 1983.

144.    Specifically, CITY and COUNTY maintained or permitted the following official policies, practices, customs, and/or usages

a) Permitting, condoning, and/or ratifying CITY and COUNTY employees, including members of the Police Department, the Sheriff's Office, the City Attorney's Office, and County Attorney's Office to release personal and private information obtained under the promise of confidentiality in violation of the Arkansas Juvenile Code and the Arkansas Code;

b) Failure to provide adequate training or protocols to the Police Department, the Sheriff's Office, the City Attorney's Office, and County Attorney's Office regarding appropriate disclosure of information under FOIA and the exceptions to FOIA;

**[PROPOSED] AMENDED COMPLAINT**

    c) Failure to provide adequate training or protocols to the Police Department, the Sheriff's Office, the City Attorney's Office, and County Attorney's Office requiring consultation with juvenile services, family services, the Municipal League, or other departments prior to releasing information related to FINS cases;

    d) Ratification by the highest levels of authority of the specific unconstitutional acts alleged in this Complaint.

145.    As a direct and proximate result of the official policies, practices, customs, and/or usages, CITY and COUNTY violated Plaintiffs' rights to privacy secured by the Fourteenth Amendment. Plaintiffs are therefore entitled to compensatory and punitive damages in an amount to be proved at trial.

146.    As a result of Defendants' conduct, Plaintiffs, and each of them, suffered harm and are entitled to declaratory relief, injunctive relief, compensatory damages, punitive damages, attorneys' fees, costs, and any other available remedies and relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs JILL DILLARD, JESSA SEEWALD, JINGER VUOLO, and JOY DUGGAR demand judgment against Defendants CITY OF SPRINGDALE; WASHINGTON COUNTY; KATHY O'KELLEY; ERNEST CATE; RICK HOYT; STEVE ZEGA; BAUER PUBLISHING COMPANY, L.P.; BAUER MAGAZINE, L.P.; BAUER MEDIA GROUP, INC.; BAUER, INC.; HEINRICH BAUER NORTH AMERICA, INC.; BAUER MEDIA GROUP USA, LLC; and DOES 1-10 as follows:

    A.    Compensatory damages, to be proven at trial;

    B.    Punitive Damages against Defendants, to be proven at trial;

    C.    An award of reasonable attorneys' fees, costs, and expenses to Plaintiffs, pursuant to 42 U.S.C. § 1983, in an amount to be proven at trial;

    D.    Such other and further relief as this Court shall find just and proper.

## DEMAND FOR JURY TRIAL

    [PROPOSED] AMENDED COMPLAINT

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by jury of all issues so triable.


Dated:  October 24, 2017


By:_____
     SHAWN B. DANIELS
     **HARE WYNN NEWTON & NEWELL LLP**

     ROBERT C. O'BRIEN
     STEVEN E. BLEDSOE
     LAUREN S. WULFE
     **LARSON O'BRIEN LLP**

     Attorneys for Plaintiffs JILL DILLARD, JESSA
     SEEWALD, JINGER VUOLO, and JOY
     DUGGAR