1                    UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF ARKANSAS
2
                                          )
3     JILL DILLARD, JESSA SEEWALD,        )
      JINGER VUOLO, and JOY DUGGAR,       )
4                                         )
          Plaintiffs,                     )
5                                         )   CASE NO.
      VS.                                 )   5:17-cv-5089-TLB
6                                         )
                                          )
7     CITY OF SPRINGDALE, ARKANSAS;       )
      WASHINGTON COUNTY, ARKANSAS;        )
8     KATHY O'KELLEY, in her              )
      individual and official            )
9     capacities; ERNEST CATE, in        )
      his individual and official        )
10    capacities; RICK HOYT, in his      )
      individual and official            )
11    capacities; STEVE ZEGA, in         )
      his official capacity;             )
12    BAUER PUBLISHING COMPANY,           )
      L.P.; BAUER MAGAZINE L.P.;         )
13    BAUER MEDIA GROUP, L.P.;           )
      BAUER, INC.; HEINRICH BAUER        )
14    NORTH AMERICA, INC.; BAUER         )
      MEDIA GROUP USA, LLC; and          )
15    DOES 1-10, inclusive,              )
                                          )
16        Defendants.                     )

17
                      TRANSCRIPT OF MOTION HEARING
18           BEFORE THE HONORABLE TIMOTHY L. BROOKS
                  September 25, 2017; 10:48 a.m.
19                   FAYETTEVILLE, ARKANSAS

20

21    Proceedings recorded in realtime via machine shorthand.
      _____
22
                     Dana Hayden, CCR, RMR, CRR
23                Federal Official Court Reporter
                      35 East Mountain Street
24                Fayetteville, Arkansas 72701

25

```
 1                          APPEARANCES

 2   FOR THE PLAINTIFFS:

 3       Mr. Steven Bledsoe
         Larson O'Brien LLP
 4       555 S. Flower Street, Suite 4400
         Los Angeles, CA 90071
 5       (213) 436-4888
         sbledsoe@larsonobrienlaw.com
 6
         Mr. Shawn B Daniels and Ms. Sarah Coppola Jewell
 7       Hare, Wynn, Newell & Newton, L.L.P.
         129 W Sunbridge Dr
 8       Fayetteville, AR 72703
         479-521-7000 Phone
 9       479-437-2007 Fax
         Shawn@hwnn.com
10       Sjewell@hwnn.com

11
     FOR THE CITY OF SPRINGDALE, ARKANSAS DEFENDANTS:
12
         Messrs. Robert Justin Eichmann and
13       Thomas N. Kieklak
         Harrington Miller Attorneys
14       113 E. Emma Ave.
         P.O. Box 687
15       Springdale, AR 72764
         (479) 751-6464
16       jeichmann@arkansaslaw.com
         tkieklak@arkansaslaw.com
17
         Ms. Susan Keller Kendall
18       Kendall Law Firm, PLLC
         3706 Pinnacle Hills Parkway, Suite 201
19       Rogers, AR 72758
         (479) 464-9828
20       skk@kendalllawfirm.com

21
     APPEARING FOR THE WASHINGTON COUNTY DEFENDANTS:
22
         Mr. Jason E. Owens
23       Rainwater, Holt & Sexton, P.A.
         P.O. Box 17250
24       Little Rock, AR 72222-7250
         (501) 868-2500
25       owens@rainfirm.com
```

1                      APPEARANCES (cont'd)

2    APPEARING ON BEHALF OF BAUER PUBLISHING:

3        **Ms. Cynthia W. Kolb**.
         Cross, Gunter, Witherspoon & Galchus, P.C.
4        500 President Clinton Avenue, Suite 200
         Little Rock, Arkansas 72201
5        (501)371-9999
         Ckolb@cgwg.com
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

THE COURT:  The next matter to come before the Court today is the case involving plaintiffs Jill Dillard, Ginger Vuolo, Jessa Seewald, and Joy Duggar versus defendants -- let me group those a little bit -- the City of Springdale, Kathy O'Kelley, and Ernest Cate; and then with regard to Washington County defendants, Rick Hoyt and Steve Zega; and then there are a multiple set of defendants having to do with Bauer Publishing Company.  I'm just going to refer to those today as the Bauer defendants.

Our case number is 5:17-CV-5089.  The posture of this case is that the complaint has been filed and served upon all of these defendants.  The City and County defendants have filed motions to dismiss that have to do with their immunity and have sought and have previously obtained relief from the Court that all other aspects of the litigation effectively be stayed until the Court rules on the immunity issues, so we are here today to take up those motions that have been filed by the City of Springdale defendants and the County defendants respectively.

Appearing on behalf of the plaintiffs today to argue in opposition would include Shawn Daniels, Sarah Jewell and Steven Bledsoe.  Pleasure to have all of you here today.

1        Representing the City of Springdale is going to

2   be Justin Eichmann, Tom Kieklak, and Susan Kendall; and

3   representing the Washington County defendants would be

4   Jason Owens.  Pleasure to have all of you here as well.

10:48AM  5        Now, I understand that even though today's

6   motions do not pertain to the Bauer Publishing group of

7   defendants, we also have attorney Cynthia Kolb present

8   on behalf of Bauer.

9        MS. KOLB:  Yes, your Honor.

10:48AM  10        THE COURT:  Pleasure to have you here as well.

11        Well, the Court understands that the underlying

12  piece of litigation here involves the plaintiffs who,

13  back in 2016, were minors, I believe all 16 years of age

14  or younger, and they had been interviewed by law

10:48AM  15  enforcement authorities locally pertaining to

16  allegations of some type of sexual assault by a family

17  member.  There's an allegation that, in the course of

18  those investigations, the minors were promised the

19  statements and comments that they made in the interviews

10:48AM  20  would be, and would remain, confidential.

21        As a consequence of the evidence and statements

22  that were made at that time, the Washington County

23  prosecutor did file a FINS petition on behalf the

24  juvenile in the Washington County court, but there was

10:48AM  25  no criminal action pursued against the family member,

which was the brother of the minor females.  The Court understands from the briefing that that was due to the expiration of the statute of limitations against the brother.

So flash forward about nine or ten years and both the City and the County received FOIA requests from one or more of the Bauer Publishing entities, either directly or through their attorneys that have been retained to make requests on their behalf.

Although there is a lot of detail and nuance in between, the bottom line is that both the City of Springdale and the Washington County defendants released certain redacted incident reports that had been maintained since 2006.

Those were released on consecutive days in May of 2015; and both before and after those redacted incident reports were released, the Bauer Publishing defendants published sensationalized news tabloid type of stories about the plaintiff sisters being abused by their brother when they were minors.

So as it pertains to the motions today, there have been actions brought against certain employees of the City of Springdale:  Ernest Cate is the city attorney, and Kathy O'Kelley, who at the time was the chief of police in Springdale.  They are alleged to be

1    the decisionmakers as it relates to the release of the

2    nine- or ten-year-old incident reports.

3         As it relates to the Washington County

4    defendants, Major Rick Hoyt, who was an enforcement

5    major at the time, along with county attorney Steve

6    Zega, are named as defendants.  Kelley, Cate, and Hoyt

7    are sued in their official and individual capacities,

8    and that makes a difference, as we will learn; and

9    attorney Zega was sued in his official capacity.

10        There are both constitutional claims and tort

11   claims.  The constitutional claims include federal

12   constitutional claims under the Fourteenth Amendment.

13   They contend they were denied Fourteenth Amendment due

14   process as a consequence of violations of their right to

15   privacy and confidentiality.  Those actions are brought

16   pursuant to 42 U.S.C. Section 1983.

17        There are also claims under the Arkansas

18   Constitution for due process issues having to do with

19   privacy violations as well.  Those claims are brought

20   pursuant to the Arkansas Civil Rights Act.

21        And then so there are -- the motions, as I

22   understand them, all have to do with immunity, but we

23   certainly have immunity claims as it relates to the

24   constitutional claims; but there are also tort claims

25   that have been brought, two tort claims against the --

against these defendants, the public employee

defendants, two counts of invasion of privacy under

different legal theories and then also for the tort of

outrage.

10:48AM   So let me kind of determine who's going to be

arguing on behalf of the parties.  Mr. Eichmann, who's

going to be arguing on behalf of the Springdale

defendants?

MR. EICHMANN:  Your Honor, along with Tom and

10:48AM Susan, what we would like to ask the Court permission is

I would address the qualified immunity with regard to

O'Kelley, Tom will address the claims with regard to

municipal liability, and Susan would address the torts,

as well as the statutory immunity claims, if that is

10:48AM acceptable.

THE COURT:  All right.  That's fine.  I do want

to divide this up.  I want to take up the constitutional

claims first, let y'all make your presentation on those,

and then I'll let the plaintiffs respond and then we'll

10:48AM transition to the tort claims.  I'll let the plaintiffs

respond to those.

Mr. Bledsoe, who is going to be arguing on

behalf of the plaintiffs?

MR. BLEDSOE:  Me, your Honor.

10:48AM THE COURT:  And then, Mr. Owens, you're here

1    all by your lonesome.

2          MR. OWENS:  Genius stands alone, your Honor.

3          THE COURT:  All right.  So Mr. Owens will be

4    arguing on behalf of Washington County.

10:48AM    5          And Ms. Kolb, my assumption is that, as far as

6    today's proceedings go, you don't have a dog in the

7    proverbial hunt; is that correct?

8          MS. KOLB:  That's correct, your Honor.

9          THE COURT:  All right.  The Court has reviewed

10:48AM    10   the motions and briefs in support, as well as the brief

11   in response and the reply briefs.  So, Mr. Eichmann,

12   Ms. Kendall, I would ask the Springdale defendants to go

13   first as it relates to your motions to dismiss the

14   official and individual capacity constitutional claims.

10:48AM    15   I'll leave it to y'all to take up whichever issue first

16   based on how you've divided that up.

17          MR. EICHMANN:  Thank you, your Honor.  And

18   would you like me to speak from the podium?

19          THE COURT:  Please.

10:48AM    20          Thank you, your Honor.  Is this on?  Yes.

21          Thank your Honor.  I appreciate the opportunity

22   to speak to the Court today regarding our motions to

23   dismiss.

24          As I mentioned, Tom Kieklak, Susan Kendall, and

10:48AM    25   myself represent the City of Springdale, Ernest Cate in

1   his individual and official capacities, and chief --

2   former chief, retired chief, Kathy O'Kelley in her

3   individual and official capacities.

4          I think as the Court just went through for a

10:48AM  5   few minutes the structural background of this case,

6   there's quite a story here.  This is a matter which

7   began for the city in regarding the investigation back

8   in 2007; but what triggered this litigation began in

9   2015 with an FOI request that I received and so that's

10:48AM  10   where I think I'd like to begin because I don't think

11   you can talk about this case or these motions without

12   talking about the Arkansas Freedom of Information Act.

13          The Arkansas Freedom of Information Act was

14   actually adopted 50 years ago in 1967.  It was

10:48AM  15   considered a premier accomplishment, legislative

16   accomplishment, by Governor Rockefeller.  And if you

17   look at the Arkansas attorney general website, the FOI

18   handbook, which is published by the Arkansas Press and

19   the Arkansas AG's office are the preeminent authority on

10:48AM  20   the FOI, the book of Arkansas FOI published by Professor

21   Watkins and Peltz.  There's a statement that the

22   Arkansas FOI is one of the most and strongest open

23   record laws in the country, and there's 50 years of case

24   law to support that, but there's also something very

10:48AM  25   unique about the Arkansas FOI that is not found in other

legislation is that the Arkansas General Assembly in
1967 took the opportunity to set forth its legislative
intent, again which is rare and unique for Arkansas
legislation.

10:48AM      And that intent is set forth in 25-19-102 of
the FOI, and it begins with the statement of, "It is
vital in a democratic society that public business be
performed in an open and public manner so that the
electors shall be advised of the performance of public
10:48AM  officials and of the decisions that are reached in
public activity and in making public policy."

       So that sets forth the importance, and the
legislative intent goes on, but that sets forth the
importance of the legislature in establishing this open
10:48AM  records act 50 years ago.  And then from that there are
four principles of the FOI that I've grouped together
from case law and from the statute itself which have
been found prominent and preeminent in those 50 years,
and one of those is the public interest that the FOI was
10:48AM  passed wholly in the public interest and is to be
liberally interpreted.

       The language of the act is so clear and so
positive that it hardly needs to be interpreted, and the
statutes enacted for the interest and benefit -- of the
10:48AM  public interest and benefit are to be interpreted

1    favorably to the public.  And that comes to us from the

2    court -- the Arkansas Supreme Court in the Fayetteville

3    v. Edmark case.

4           Secondly, the Courts have established, and the

10:48AM    5    FOI is clear, that exceptions to the FOI are to be

6    interpreted narrowly.  Arkansas interpreted the

7    exceptions to the FOI nearly --

8           THE COURT:  Mr. Eichmann, I understand that the

9    core of all of the factual development of the case

10:48AM    10   relates to the FOIA, and but for that, these records

11   would not have been disclosed by the City; but your

12   motion is one seeking immunity from suit.

13          I think FOIA, while important and why we

14   understand that why we're here in many respects, I don't

10:48AM    15   know that that has a lot to do with the immunity issues

16   that the Court must rule on.

17          MR. EICHMANN:  Your Honor, it's the defendant's

18   position that the FOI colors that entire discussion

19   because in order to establish a violation of a right and

10:48AM    20   whether that right was clearly established, you have to

21   look at the underlying law in the State of Arkansas, and

22   that has to do with not only the preeminence of the FOIA

23   but also the exceptions to the FOIA which, as brought

24   forth in plaintiff's complaint, are the Child

10:49AM    25   Maltreatment Act of the Arkansas Juvenile Code, as well

1  as a statute from the criminal procedure code of the

2  State of Arkansas.

3      So what is important about that is that there's

4  this tension and so you have to resolve that tension in

10:49AM  5  order to find out whether there's been a violation of

6  underlying right and whether that right was clearly

7  established in Arkansas.

8      And, your Honor, I'll move forward perhaps with

9  just mentioning what my other two points petitioner --

10:49AM  10      THE COURT:  All right.

11      MR. EICHMANN:  -- and then I'll certainly

12  advance.

13      The third being that when a record obtains

14  exempt and nonexempt material that the FOIA instructs us

10:49AM  15  to segregate or to redact the material, and the fourth

16  being that there are criminal penalties associated with

17  the Freedom of Information Act, as well as attorneys'

18  fees provision.

19      So over 50 years, public officials have been

10:50AM  20  instructed through a wealth of case law on the

21  preeminence of the FOI and the importance in following

22  that, and I raise it because this case did begin with an

23  FOI, a request.  And for the purposes of the plaintiffs'

24  constitutional claims against Cate and O'Kelley, it's

10:50AM  25  important at this stage, and as we're at a motion to

dismiss, that we look at the facts that are alleged in
plaintiffs' complaint, and those two facts that I
believe are central to the claim for qualified immunity
are that the attorney in Little Rock, Abtin
Mehdizadegan, you know, May 15th, 2015, issued an FOI
request to the City of Springdale and to Washington
County, both on the same day.

That FOI request asks for files pertaining to
Josh Duggar, Michelle Duggar, and Jim Bob Duggar; and
the FOI request also mentions a police investigation and
that Springdale investigator, Mr. Darrell Hignite, was
involved in that investigation.

That in Paragraph 48 of the complaint, the
plaintiff mentions that a response to the FOIA is due in
May 20th, 2015; further, that on May 19th, the day
before the response was due, or the day before the City
and County responded, that In Touch magazine published
an article titled "'19 Kids and Counting' Son Named in
Underage Sex Probe," and the article -- and the
allegation continues that the article contained specific
allegations about the investigation.

And, lastly, that the report -- as your Honor
mentioned earlier, the report was redacted, and there
are no allegations in the complaint that any names or
ages of the victims were clear in that, for example, in

1   Paragraph 54 of the complaint that Chief O'Kelley

2   instructed members of the SPD to redact the police

3   report before releasing.

4          So we believe that in looking at the

10:52AM   5   qualified -- our qualified immunity argument that you

6   have to look at the FOI; you have to look at the facts

7   that are alleged in the complaint in order to establish

8   whether there was a violation of the underlying right

9   and whether there was -- whether that law would have

10:52AM   10   been clearly established.

11          With regard to qualified immunity, the City of

12   Springdale would like to point out that qualified

13   immunity exists in order to provide breathing room for

14   officials to make mistake in judgments, and it protects

10:53AM   15   all but the plainly incompetent or those who knowingly

16   violate the law.

17          There is ample noting in the briefing that is

18   before the Court on the purpose and the reasons of the

19   principles as of qualified immunity.  However, when it

10:53AM   20   comes to an evaluation of the claims, the Courts have

21   instructed us to look at either the violation of the

22   right or both, a violation -- whether there was a

23   violation of the constitutional right or whether that

24   law underlying the violation was clearly established at

10:53AM   25   that time.

1    With regard to the violation of the

2  constitutional right, the plaintiffs' claim consists

3  twofold:  One, that Springdale released confidential

4  information of a highly personal nature; and second is

5  of the promise of -- or the pledge of confidentiality

6  that was allegedly given to the plaintiffs.

7    I'd like to firstly point out that there is no

8  allegation in the complaint that there was a pledge of

9  confidentiality that came from any Springdale defendant

10  or Springdale employee; in fact, the opposite is true.

11  The pledge of confidentiality came, it is alleged in the

12  complaint, came from the Arkansas State Police and the

13  Arkansas State Police investigator.

14    With regard to the release of the confidential

15  and intimate, personal information of the plaintiffs,

16  what I believe the defendants' briefs point out, your

17  Honor, is that the plaintiffs failed to establish the

18  requisite culpability and that the facts were already

19  known to be public.

20    With regard to the failure to establish the

21  culpability, the defendants would like to point the

22  Court toward Hart v. Little Rock and that was a case

23  that came out of the Eastern District and was decided by

24  the Eighth Circuit Court of Appeals, and that case

25  involves the release of personnel files of police

1    officers pursuant -- in that case pursuant to a subpoena

2    that was issued by an attorney representing criminal

3    defendants.

4         The attorney received the personnel file,

5    handed it over to the criminal defendants; and as the

6    allegations go in the complaint, these criminal

7    defendants pled guilty but then used the information in

8    the report to harass or terrorize the officers over a

9    period of time in which the officers ended up suing the

10   City and individuals for invasion of privacy, and the

11   Eighth Circuit in that case groups together kind of the

12   culpability standards that are required in order to

13   establish a -- what's a 1983 claim for invasion of right

14   of privacy.

15        In that they say that mere negligence can never

16   be conscience-shocking and cannot support a claim

17   alleging a violation of substantive due process; that

18   gross negligence is not actionable; that the level of

19   abuse of power must be so brutal and offensive that it

20   does not comport with traditional ideas of fair play and

21   any humane -- fair play and decency; that it must be

22   inspired by malice or sadism rather than merely careless

23   or unwise excessive zeal and amounts to a brutal and

24   inhumane abuse of official power, literally shocking to

25   the conscience.

1    And it notes what the lowest standard available

2    is and that is that there is time to deliberate on the

3    decision and that being deliberate indifference; that at

4    the precise moment, as the Court says, at the precise

10:57AM  5    moment when the defendant released the records that he

6    or she recognized and deliberately disregarded the

7    substantial risk of serious harm.

8    In the brief, and before you today, is --

9    THE COURT:  Mr. Eichmann, in Alexander versus

10:57AM  10    Peffer, P-e-f-f-e-r, 1983 case out of the Eighth

11    Circuit -- you alluded to this a second ago -- there's

12    also this notion that there's a flagrant breach of a

13    pledge of confidentiality.

14    So two things:  A, I realize that you have

10:57AM  15    substantive defenses, factual defenses, to many of the

16    allegations; but, of course, the Court today must look

17    at the facts as stated in the complaint as true to draw

18    any reasonable inferences that may exist.

19    But this flagrant breach, are you saying that

10:58AM  20    the only way that that comes into play is if the party

21    defendant is literally the person that made the pledge

22    of confidentiality?

23    MR. EICHMANN:  Your Honor, if you look at the

24    complaint and take the facts as true, there is no

10:58AM  25    allegation -- we've established there's no allegation in

1    the complaint saying that any Springdale defendant made

2    that pledge of confidentiality.

3              However, it is the --

4              THE COURT:  Do you deny that a pledge of

10:58AM    5    confidentiality was made at the time that the interviews

6    were given?

7              MR. EICHMANN:  There's no allegation that one

8    was made.  And so the Springdale -- you know, what we

9    can do is go off of the allegations in the complaint,

10:59AM    10   and the complaint contains no such allegation that it

11   occurred.

12             And obviously should this case go forward, you

13   know, that would be, you know, facts that might come

14   forward in the future.  But this gets a little bit into

10:59AM    15   the interplay between the different agencies that were

16   involved in this investigation, and Springdale was

17   involved pursuant to a criminal investigation, which is

18   a little bit different than what the State Police and

19   DHS does.

10:59AM    20             But had there been a pledge of confidentiality

21   alleged, I would expect to have found it within the

22   pleading, and it is not -- it is simply not there.  But

23   even so, if you look at the allegations that are

24   contained in the complaint and in plaintiffs' response,

11:00AM    25   they speak more towards negligence than towards any type

1   of intent that would rise to deliberate indifference.

2         Those allegations include that defendants,

3   either Cate or O'Kelley, hastily or improperly released

4   the report, that they failed to consult, that they

11:00AM   5   attempted to take back the report, but it was too late,

6   all of which are actions that establish negligence in a

7   complaint, not of which shows that at the time when the

8   records were released, they recognized and deliberately

9   disregarded a substantial harm.  And again, there's no

11:01AM   10  allegation in the complaint that, as far as the

11  Springdale defendants go, that the names or the ages of

12  any of the plaintiffs were left unredacted in the

13  report.

14        The third point with regard to whether there

11:01AM   15  was a violation of the constitutional right is that the

16  facts were already public.  The complaint mentions that

17  the Washington County submitted -- or responded to the

18  FOI request --

19        THE COURT:  Excuse me.  I thought that I

11:01AM   20  recalled the allegations actually in Paragraph 2:  As

21  part of the investigation, police investigators

22  interviewed plaintiffs.  The investigators promised

23  plaintiffs that their statements would remain

24  confidential and not be disclosed to the public.

11:02AM   25        MR. EICHMANN:  If I recall that allegation

1 correctly, your Honor, in allegation 2 it talks about

2 the investigators, which, in this case there was

3 Springdale Police Department, Washington County,

4 Arkansas State Police, and DHS.

11:02AM 5      The -- I believe it's in --

6      THE COURT:  Well, a minute ago you were saying

7 that there was no such allegation in the complaint, and

8 I think that we've established that there is.  So the

9 next question is, is it your position that it's -- that

11:02AM 10 that prong of the Eighth Circuit case that I mentioned a

11 moment ago can only come into play if the city actor who

12 breached a pledge of confidentiality was the same actor

13 that made the pledge?  Is that what your position is?

14      MR. EICHMANN:  It is, your Honor.  Otherwise,

11:03AM 15 how could there be the pledge of confidentiality.  I

16 understand that when the plaintiffs would say --

17      THE COURT:  So in a combined -- in a

18 multijurisdictional investigation, the detective who is

19 acquiring statements and pledges, the confidentiality of

11:03AM 20 those statements to a minor and their parents, that

21 pledge is meaningless, is it not, if a different member

22 of a different law enforcement agency is permitted carte

23 blanche to violate that pledge?  Is that not the logical

24 extreme of what you're saying?

11:04AM 25      MR. EICHMANN:  Well, the -- your Honor, the

1    plaintiffs' complaint alleges that they were -- that an

2    investigator from the state police made the pledge and

3    then they set forth saying that that pledge was violated

4    by Springdale.  It stands to reason that Springdale

11:04AM    5    would have need to have made the pledge in order to have

6    violated it.

7              Your point is in the context of all of the

8    investigations, would it require a pledge from every

9    single agency.  Springdale's position is that it

11:04AM    10   violated no pledge, even if a pledge was given, because

11   it redacted the report as required by the FOI.  It

12   interpreted the privacy of the FOI and the narrowness of

13   the exceptions in the instruction for the General

14   Assembly to segregate and redact and that is what it

11:04AM    15   did.

16             So Springdale's position is that it didn't

17   violate any pledge, but it's also pointing out that

18   there's no allegation that it gave such a pledge.

19             THE COURT:  What difference does that make?

11:05AM    20            MR. EICHMANN:  What difference does the fact

21   that --

22             THE COURT:  That the fact that a City -- an

23   investigator employed by the City of Springdale, what

24   difference does it make that it was not a Springdale

11:05AM    25   city employee that made the pledge?

1          MR. EICHMANN:  Because, your Honor, it would

2    move over to the second prong of qualified immunity on

3    whether it is clear and established.  How would they

4    know they violated the law if they didn't give the

5    pledge.  And, you know, it doesn't speak necessarily to

6    the establishment of the constitutional right violation,

7    but it certainly speaks to whether that was clearly

8    established or not.  If it's not the -- if there's no

9    allegation that any Springdale official made such a

10   pledge of confidentiality, how could it have known that

11   it violated a right by disclosing a redacted report?

12          So the third part of Springdale defendants'

13   argument is that the facts were already public, that

14   Washington County -- it's alleged in the complaint that

15   Washington County, at the same time as it released the

16   Springdale police report, issued an underredacted report

17   that --

18          THE COURT:  It issued a what?

19          MR. EICHMANN:  An underredacted police report

20   in which it was -- it alleged that people were able to

21   specifically identify each of the plaintiffs from the

22   underredacted report and that was an FOI that was

23   responded to contemporaneous with the Springdale police

24   report; but also that you have the publishing of the

25   online article that states not only in the allegation

that it contained specific details about the
investigation, but it teased a promotion for a story
that was going to run the next day in the newsstand
article with more details about the incident.

So with those three component parts in mind,
you know, Springdale defendants would like to urge the
Court that there's not a violation of a constitutional
right that's been pled in the complaint; but even if
there is, we don't have to go that far because that
right was not clearly established.

In the case law that -- in the case law that
interprets the second prong of qualified immunity,
whether that right was clearly established or not, the
Court asked us to look into the violation -- excuse me.
The Court asked us to take a specific inquiry into
the -- or inquiry into the specific context of the case.

In the pleadings there's a disagreement between
the plaintiffs and the Springdale defendants over what
the nature of that inquiry should be.  Plaintiffs urge
this Court to take a broad view of whether or not the
law was clearly established, and defendants ask -- or
state that the Court should undertake a review,
undertaken in the light of the specific context of the
case into looking at whether the law was clearly
established.  The defense -- the plaintiffs cite to the

Lindsey case for the establishment that a broad view was
requested.

Your Honor, it's the belief of the Springdale
defendants that the plaintiffs are urging a broad view
review of whether the law was clearly established
because they can provide no case, no authority on point
which establishes that Springdale violated a
constitutional right in this case.

The specific context of this case is that there
was an Arkansas Freedom of Information Act request, that
two officials have been sued for responding to that
request, that the police report was redacted, that there
are no names or ages of the victims which are alleged to
have been disclosed, and that the report was released to
the specific requester, to the attorney, the attorney in
Little Rock.

Plaintiffs have supplied no case that involves
the Arkansas Freedom of Information Act that talks about
tension between that act and the statutory authorities
that it supplies; rather, the cases that are supplied do
not talk about a situation where a public official is
under compulsion to disclose a document such as a police
report; rather, the cases that they cite are situations
where the disclosal -- the disclosure is willful or with
malice or was something that was completely

1    discretionary for the City or the city official to do;

2    for instance, a press conference such as was done in

3    the -- I believe it's the Stafford/Pell case from the

4    Northern District of California; or in the Ribar case

11:11AM    5    out of the Sixth Circuit, it's the sheriff who discloses

6    the information about -- about the rape to -- in order

7    to justify, you know, kind of a lack of action, of an

8    investigation report.

9          THE COURT:  Do you think that the then-minor

11:11AM    10   sisters had a legitimate expectation that the

11   information that they gave in what was deemed to be a

12   confidential interview, do you believe that they had a

13   legitimate expectation that that would remain private?

14         MR. EICHMANN:  Yes, to the extent that the law

11:11AM    15   requires; and this is the tension that is here between

16   the FOI and its exceptions and how you have to interpret

17   that, which for 50 years has been the preeminence of the

18   FOI and the narrowness of the exceptions to the extent

19   that you redact documents, and for 50 years that's what

11:12AM    20   people have done.

21         I realize this is not a part of the pleadings,

22   but we don't need to leave our awareness of what's in

23   the paper every day go by, where you see even multiple

24   stories involving crimes, even crimes of a sexual nature

11:12AM    25   against a child in which, you know, the facts have

1   established, you know, a 3-year-old at -- you know, at a

2   house, the redacted facts of what happened and who the

3   name of the perpetrator was and so forth and so on.

4          That has been the response of public officials

11:12AM   5   to the FOI for 50 years and so, you know, that

6   expectation of privacy comes through with redaction; and

7   if the claim is that a online user on a celebrity, fan

8   or not fan -- website -- I'm not sure which one it is --

9   was able to sleuth the identities of who these

11:13AM   10   plaintiffs were, as it says in the allegations, by the

11   length of the redaction or by the fact that there's

12   international celebrity involved, one, that -- you know,

13   if there's an allegation that it was underredacted, that

14   brings into play negligence and not intent.

11:13AM   15          THE COURT:  But it also brings into play

16   whether that's merits issue or an immunity issue, does

17   it not?

18          MR. EICHMANN:  But all we can go by is by the

19   allegations that are contained in the complaint; and the

11:13AM   20   allegations that are contained in the complaint is that

21   a report was redacted and that neither the plaintiffs'

22   names or the ages, there's no allegation that that

23   information was provided.

24          You know, the plaintiffs did not attach the

11:14AM   25   police reports to the complaint; but we believe that

1   based upon the allegations, even if you take those to be

2   wholly true, that doesn't establish anything but

3   negligence, from what they've set forth so far.

4            So, your Honor, what's before you then, what

11:14AM   5   they have offered as what's clearly established are

6   three statutes, one of which is -- three statutes and --

7   excuse me -- some AG opinions regarding the statutes.

8            One of the statutes is a juvenile code, and the

9   Arkansas Juvenile Code is not applicable to this case

11:15AM   10   because it pertains to records relating to the arrest,

11   detention, or proceeding, juvenile proceeding; and as is

12   established by the facts alleged in the complaint,

13   there's no arrest in this case.

14            I think it states in the complaint that Josh

11:15AM   15   Duggar was never arrested, there was no -- therefore,

16   there was no detention and there was no criminal

17   proceeding regarding Josh Duggar; but also, Josh Duggar

18   was not a juvenile under the definition of "juvenile" in

19   the juvenile code.  He was an adult at the time of the

11:15AM   20   investigation.  So it is Springdale defendants' position

21   that the juvenile code simply does not apply.

22            Secondly, with regard to the criminal procedure

23   statute that prohibits the release of identifying

24   information that would directly or indirectly identify

11:16AM   25   the plaintiff, there's no explicit provision in there

saying that this is an exception to the Arkansas FOI.
The plaintiffs cite to an AG opinion citing the treatise
that I mentioned earlier from Watkins and Peltz that it
could likely be -- or likely create an exemption to the
FOI; but likely creating the exemption, it's certainly
not an establishment of a clearly -- clearly established
right.

And thirdly, the plaintiffs bring forward the
Child Maltreatment Act; and I believe Mr. Owens will
probably have something to say about that as well
because we gleaned from his writing in this case that if
you look at the wording of the Child Maltreatment Act,
the -- it's hopelessly absurd.

The act reads -- and the prohibitive language
in the act reads that any data, records, reports,
documents that are created or collected or compiled by
or on behalf of the Department of Human Services, the
department of Arkansas State Police or other entity
authorized under this chapter to perform investigations
or provide services to children, individuals, or
families shall not be subject to disclosure in the
Freedom of Information Act.

By the plain reading of that act, that states
that any data, report, document whatsoever from these
three entities are exempt from the FOI, and that just

cannot be.  It cannot be that the Department of Human

Services is exempt from the FOI.

You have to read -- you have to either read

information, read provisions into this act to have that

11:18AM  narrowed down to, you know, pertaining to crimes against

a child or some type of limiting information there, or

you have to just assume that DHS and the department of

state police are completely exempt from the FOI.

THE COURT:  Well, what role did DHS play in

11:18AM  bringing the FINS petition?

MR. EICHMANN:  Your Honor, the FINS petition is

brought -- the Child Maltreatment Act concerns kind of

these administrative procedures on what you do when

there's a complaint; when there's a hotline call, what

11:18AM  do you do.

My understanding of how that came to be

developed is that they used to be done entirely by DHS.

DHS handled all of it.  Whether that was an issue

administratively that DHS would handle internally or

11:18AM  whether it rose to such a level that they needed

investigatory help, they would bring in the State

police.  They would bring in -- you know, they would

make a referral to a sheriff's department or a referral

to a city's police department for a criminal

11:19AM  investigation.

11:19AM
1          So the criminal investigations fall outside of
2    the Child Maltreatment Act; but administratively within
3    the Child Maltreatment Act, there is kind of a long list
4    of different types of conduct and who handles what,
5    between the DHS and between the Crimes Against Children
6    division.

7          THE COURT:  But to the extent DHS is involved
8    in conducting an investigation into a child's home
9    situation that ultimately leads to the filing of a
11:19AM 10    Family in Need of Services petition in the juvenile
11    court, are you saying that that investigation, because
12    it's a state agency, is always subject to FOI?

13          MR. EICHMANN:  Your Honor, I'm not -- I'm not
14    making that statement because I think it's clear that
11:19AM 15    DHS falls under the Child Maltreatment Act, but it is
16    unclear what the scope of the Child Maltreatment Act is
17    by the wording of it; and in order for you to arrive at
18    that decision that it's -- I mean, there are other
19    activities that DHS, Department of Human Services, does
11:20AM 20    besides child maltreatment.

21          I'm sure the department receives regular FOIs
22    that it responds to; but if you take the wording of this
23    act, the exemption from the FOI, it reads as if the
24    entire DHS or the entire state police is exempt because
11:20AM 25    they do these type of -- these type of investigations.

1          And what our argument is is that there's a

2    question -- there's an unclear issue of what the scope

3    of this exception is; and the FOI tells us if there is

4    an unclear -- if the scope is unclear, you have to not

5    only tailor that exemption narrowly, but you have to err

6    on the side of public disclosure, which is why in this

7    case and in countless others that happen every day

8    across the state, when a criminal investigation file

9    does not fall within the confines of the Child

10   Maltreatment Act, when that file is FOIed, you know, to

11   a city or to a sheriff's office, the procedure is -- and

12   that instruction has been for 50 years -- to redact, to

13   redact names, to redact -- to redact ages; and if

14   there's a redaction issue, then that falls under

15   negligence.  It doesn't fall -- there's no allegation

16   here that there was any requisite intent.

17          THE COURT:  Doesn't that go to the merits?  I

18   mean, the Court is obligated to look at the allegations

19   and the reasonable inferences to be drawn from those

20   allegations in the light most favorable to the

21   plaintiffs; and you're asking the Court to say, well, we

22   made redactions, and to the extent that there is a lack

23   of clarity as to how the plaintiffs are characterizing

24   the extent to which there is a lack of proper redacting,

25   that's a fatal error at the immunity issue level.

1          MR. EICHMANN:  You also have to take that in

2    light of the fact that there's no allegations of the

3    requisite intent.  The allegations are that Springdale

4    acted hastily, improperly, failed to consult, attempted

11:22AM  5    to take back but was too late.  Those are all

6    negligence-type allegations and not the deliberate

7    indifference standard that the Court in <u>Hart</u> looked at

8    and said at the time of the release of the document that

9    they knew what they were doing, that it was going to

11:22AM  10   cause harm.  Those allegations do not appear in the

11   complaint.

12          I think the fact that the report was redacted

13   shows that Springdale went to the length that it does

14   with every such request that commingles exempt and

11:23AM  15   nonexempt information that redacted that information and

16   released it in compliance with the --

17          THE COURT:  That's my point.  Should the Court

18   engage in an analysis at this level as to the

19   sufficiency of the redacting?

11:23AM  20         MR. EICHMANN:  I don't think the Court has to

21   because the complaint fails to allege that requisite

22   intent.  And the fact that the complaint also alleges

23   that the report was redacted, it works together to show

24   that that intent did not look at.

11:23AM  25         I mean, I think had that been provided in the

complaint, had the police report been attached, then

that review could occur to see that the names were taken

out, to see that the agents were taken out, to see that

pronouns were taken out, to see that that type of

11:24AM   identifying information was there.

        And by the way, the complaint points out that,

you know -- takes issue with the fact that Michelle and

Jim Bob Duggar's name appears in the document and that

way you can use it to identify, Michelle and Jim Bob

11:24AM   Duggar were the target of the FOI.

        The subject of the FOI was Josh Duggar, Jim Bob

Duggar, and Michelle Duggar.  That appears in the

complaint, so it's not surprising that if a person's FOI

for documents relating to those three people that those

11:24AM   three names are going to come back.

        Again, the fact that a website was able to

sleuth using -- and this is -- obviously this is an

allegation; I have no idea whether this is true or not.

But whether the sleuth -- the length of the redaction to

11:24AM   be able to tell who the names were, you know, does not

go to show any type of deliberate indifference.  That's

a -- that's a rarity that occurs because of celebrity.

        THE COURT:  All right.  I'm going to give you

three or four more minutes to wrap up your part of the

11:25AM   presentation.

1          MR. EICHMANN:  Your Honor, I'm -- and I

2     apologize for taking so much time, but I am at the end

3     at least of my argument except that, you know, even if

4     you -- you know, the component parts we discussed are

11:25AM  5     whether there's a violation of the underlying right, and

6     the plaintiffs' position is that -- the defendants'

7     position is that that culpability has not been -- has

8     not been met to establish a 1983 claim.

9          Secondly, the law between the -- that tension

11:25AM 10     between the FOI and the Child Maltreatment Act is not

11     clearly established; in fact, the opposite is true.  The

12     law for 50 years has clearly established that the FOI

13     has preeminence and that exceptions are narrowly

14     construed.

11:25AM 15          And thirdly, that even if it was found as a

16     violation of right that it was clearly established that

17     O'Kelley and Cate acted objectively and reasonable in

18     releasing the report pursuant to an FOI that has

19     criminal penalties; and that has been, you know, such a

11:26AM 20     serious part of public life in Arkansas for 50 years.

21          So that concludes my part.  I'll turn it over

22     to my colleagues.

23          THE COURT:  All right.  Mr. Kieklak, are you --

24          MR. KIEKLAK:  Judge, what would you like to

11:26AM 25     hear?  I'm prepared to talk about the liability, what

1    they call municipal liability, or would you like to

2    delve into courts or --

3         THE COURT:  No, I want to flesh out all of the

4    bases of the defense motions as it relates to the

11:26AM  5    constitutional claims and, in particular, the immunities

6    that have been alleged.  So let's go to the Washington

7    County defendant.

8         All right.  Mr. Owens?

9         MR. OWENS:  Thank your Honor.

11:27AM  10        I do represent Washington County and Rick Hoyt.

11   The Court mentioned that Steve Zega had also been named

12   as a defendant but only in his official capacity, which

13   is redundant of the claim against the county, of course,

14   and so on their behalf, I would make the following

11:27AM  15   arguments with respect to the constitutional claims.

16        The principle distinction between the

17   disclosure by the county as opposed to disclosure by the

18   city is that the county's exposure -- or the complaint

19   and concessions in the briefing -- pardon me --

11:27AM  20   respective to the motions to dismiss that the county's

21   disclosure came after the city's disclosure.  The city's

22   disclosure was the one that was publicized by the Bauer

23   defendants in the publications thereafter.

24        That's very important, I think, for purposes of

11:27AM  25   our first argument, which is that this information, or

the vast majority of it, was already public by the time

that the County's disclosure was made.

In fact, in the response to the motion to

dismiss, the plaintiffs identify only one item of

information about the plaintiffs in this lawsuit.  They

identify information about the parents and the brother,

who aren't plaintiffs in this lawsuit, but only one item

of information was allegedly disclosed by Washington

County for the first time.

Of course, on some level they can't -- the

complaint can't even speak to that because they allege a

leak occurred.  They allege that the Bauer defendants

had some version of this report, perhaps an unredacted

version, before any of this ever happened.  But to the

extent they do speak to that, the only item of

information is the age of one of the plaintiffs.

Of course, there's no case that has ever said

that -- or even hinted at the fact that a public

figure's age is somehow entitled to a constitutional

privacy right.  The -- and that's the seminal question

for qualified immunity, of course, is could this

officer -- in this case Rick Hoyt, who's here today --

could he have been on reasonable notice that what he was

disclosing -- and I would echo what Mr. Eichmann said

about pursuant to the preeminent disclosure statute in

the State of Arkansas, which used to be liberally

construed, exemptions to be narrowly construed and, most

importantly, under threat of criminal prosecution.

This is one of the few, if not the only --

well, one of the few duties, I'll say, of public

officials in the State of Arkansas that is done under

the threat of criminal prosecution.  There's no criminal

prosecution -- and it's unilateral criminal prosecution.

So it's only criminal prosecution if you fail to

disclose something that should have been disclosed, not

the other way.

And so the public official is faced with the

prospect of, I've either -- in this case, even if these

lawyers had come in and talked to Major Hoyt two days

before he made this disclosure, he would have had to

weigh, "Well, do I disclose based on what I think about

the FOIA and all the other law in the State of Arkansas

and beyond, do I disclose and face a lawsuit, or do I

not disclose and face criminal prosecution."

I would posit that the Constitution doesn't

require such a Hobson's choice of public officials.  But

brings me back to, the information was already public.

The only information that they allege the Washington

County defendants newly disclosed was the age of one the

other plaintiffs.  Certainly the other plaintiffs

couldn't rely on that to assert a claim and so there is

some distinction between the plaintiffs' claims in this

matterO.

THE COURT:  What was the timing on the 20th and

21st?  May I --

MR. OWENS:  My recollection from the complaint

is that the City disclosed one day, but my recollection

is that they disclosed by e-mail and then the County put

it in the U.S. mail, snail mail, the next day and that

the Bauer defendants utilized and posted the Springdale

defendants' disclosure.

I don't know if there's an allegation in the

complaint about whether they then publicized the

Washington County defendants, but I don't -- disclosure,

but I don't believe that there is, and they can tell me

if I'm wrong.  I'm sure they will.

But it gets back to what is the specific -- and

part of that is the burden of proof issue that --

particularly at this stage of the proceedings.  This is

a motion to dismiss.  Everything they claim has got to

be deemed true, whether it is or not, by the Court, and

the Court's got to give all reasonable inferences.

But this case is all about the disclosure of

information.  That's the allegation.  If you boil it

down to one sentence, the allegation is, at least as

1   against the public entities, the disclosure of

2   information violated the right of privacy.

3           Under those allegations, whatever category they

4   want to state them -- state tort, constitutional claim,

11:32AM  5   whatever -- you have to clearly delineate what

6   information was disclosed to carry the day; and to the

7   extent they do that as against Washington County, it's

8   only this age issue.  All the rest relates to other

9   nonparties or was already disclosed.

11:33AM  10          And, of course, we said in our motion -- and I

11  don't think there's any case law that would refute this

12  notion -- and it's the notion that once private matters

13  have been publicly disclosed, the privacy right

14  evaporates completely about that item of information.

11:33AM  15          THE COURT:  What if it was confidential

16  information?

17          MR. OWENS:  Well --

18          THE COURT:  Under a pledge of confidentiality?

19          MR. OWENS:  Right.  And you asked Mr. Eichmann

11:33AM  20  about that.  My response to that is I don't believe

21  there's any such thing as constructive knowledge for

22  purposes of constitutional claims, by agency is what I

23  mean.

24          So --

11:33AM  25          THE COURT:  Well, how does this information get

1  in the county's incident report without knowledge that

2  it was obtained pursuant to a pledge of confidentiality?

3        MR. OWENS:  I can't speak to that.  I just

4  don't know.  The complaint certainly doesn't allege

11:34AM  5  anything about that question.  The -- and there's no

6  allegation that Mr. Hoyt knew about that.

7        THE COURT:  Well, did Washington County

8  employees participate in the investigation of child

9  abuse?

11:34AM  10        MR. OWENS:  That's the allegation in the

11  complaint, that Washington County employees,

12  investigators, did.

13        THE COURT:  And was the --

14        MR. OWENS:  No allegation that Major Hoyt was

11:34AM  15  present.

16        THE COURT:  Well, I understand that, but do you

17  concede that the complaint says that during the course

18  of the investigation, investigators obtained statements

19  from the minors under a pledge of confidentiality?

11:34AM  20        MR. OWENS:  Yes, and it says something very

21  similar to that in Paragraph 2, which you read into the

22  record.

23        THE COURT:  All right.  So nine years later,

24  one of the investigating authorities releases --

11:35AM  25        MR. OWENS:  Right.

1          THE COURT:  -- this information that had

2     been -- I'm talking about what's alleged in the

3     complaint.

4          MR. OWENS:  Right.

11:35AM  5          THE COURT:  -- releases information that had

6     been obtained from a minor under a pledge of

7     confidentiality.

8          A, does it matter that Major Hoyt, at the time

9     that he released it, was unaware of it; B, does it

11:35AM  10    matter at this stage of the proceedings; and C, assuming

11    that we get past one and two, do you not agree that that

12    was a clearly established -- that would be a clearly

13    established constitutional violation as of the point in

14    time when the release of information was made?

11:36AM  15         MR. OWENS:  Well, let me respond to the first

16    two.  Does it matter that Hoyt didn't know?  And there's

17    no allegation that Hoyt knew -- and it's our position

18    that the complaint is required to say he knew if he

19    knew, if that's the allegation -- and I believe it

11:36AM  20    doesn't say it because he didn't know.  There's

21    certainly no proof to that effect; I think that's what

22    he'll say.

23         But, yes, it matters.  It matters very much

24    because there's no vicarious liability under Section

11:36AM  25    1983.  Section 1983, the actual language of Section 1983

1  says that liability attaches when a person subjects

2  another person to the deprivation of his constitutional

3  rights, not when a person who coulda/woulda/shoulda

4  known that another person did something earlier; and had

11:36AM  5  he known, then -- there's no vicarious liability.

6          I'm normally in front of this court on

7  deliberate --

8          THE COURT:  Well, it's not a matter of

9  vicarious liability.  It's a matter of vicarious

11:37AM  10  knowledge.

11          MR. OWENS:  Constructive knowledge.

12          THE COURT:  Constructive knowledge, yes.

13          MR. OWENS:  By being employed by the same

14  entity ten years apart.  There's no basis for that kind

11:37AM  15  of liability in the case law, I would submit.  In fact,

16  I think the case law stands for the opposite

17  proposition.  If you read the deliberate indifference

18  cases over and over again --

19          THE COURT:  But isn't that a Rule 56 issue?

11:37AM  20          MR. OWENS:  I don't think so.  I don't think it

21  is, your Honor, because if you look at deliberate

22  indifference cases as an example -- and the deliberate

23  indifference standard is cited by the Eighth Circuit in

24  these cases.

11:37AM  25          It's not a question of, "Well, one guy on the

1   jail staff knew and we sued everybody else."  That's not

2   good enough.  You've got to show that the person who

3   disregarded the risk actually knew.

4          That's at the core of these kinds of cases

11:37AM   5   because it doesn't allow that kind of constructive

6   knowledge.  It has to be you as the public officer

7   personally that subjects this in order for individual

8   liability to attach.

9          Now, would that give rise to municipal or

11:38AM   10   county liability?  That's a different question.  But as

11   to individual liability, I don't believe there's any

12   case that suggests that constructive knowledge by agency

13   is sufficient to establish the link that the plaintiffs

14   want to try to establish.  In fact, I think the case law

11:38AM   15   is uniformly against that proposition and so I do think

16   it's the Court's obligation at this point to make that

17   finding and find in favor of our motion to dismiss.

18          The third question was?  I'm sorry.

19          THE COURT:  Well, I think the third question

11:38AM   20   was the stage, whether it makes a difference at this

21   stage or whether it should be a Rule 56 issue.

22          MR. OWENS:  I do think it makes a difference.

23   Now, if the Court sees fit to allow the plaintiff to

24   amend to say that Hoyt knew, if they think he knew?

11:39AM   25          THE COURT:  I'm sorry.  The third question was

do you concede that the release of -- or the breach of a
pledge of confidentiality is a constitutional violation
that was clearly established prior to 2015.

MR. OWENS:  My recollection in that case -- I
don't have it in front of me, but my recollection of
that case is that that's one of the factors, that it's
important to a consideration, but it's not the only
factor.

Of course, confidentiality, in this case these
folks were being, according to the complaint,
interviewed by criminal investigators.  I mean, on some
level that's happening for a reason, presumably with an
eye on criminal prosecution; and in order for there to
be a criminal prosecution, somebody would have to be
notified.

And so there is some vagueness there, despite
the allegations; and, of course, the allegations are all
made against nonparties, at least with respect to
Washington County.  These investigators have not been
sued, and I don't even know if they were still employed
at the time of the disclosure.

But I think it's a -- I think it's a factor.  I
don't think it conclusively establishes one way or the
other is my recollection of the case.

THE COURT:  Well, are the plaintiffs entitled

1   to discovery to determine the extent to which the files

2   were marked confidential or pledge of confidentiality

3   had been given, "Do not further disclose," something

4   like that?

11:40AM   5         MR. OWENS:  Well, if they had alleged that, if

6   they had alleged that Rick Hoyt knew, before he

7   disclosed these, that these things were to be held

8   confidential, whatever that means in the context of a

9   criminal investigation, which is aimed at something --

11:41AM  10   and presumably the prosecutor's going to see this one

11   way or the other no matter what happens in those

12   interviews -- and is that confidential?  I don't know

13   what the primus was, if there was one.

14         But -- now, I think they have got to allege it

11:41AM  15   to get to discovery, and they haven't alleged it, and I

16   don't think they can allege it.  I don't think there's

17   any indication of that.  I think -- I just don't

18   think -- I don't think there's any basis for them to

19   make that allegation.

11:41AM  20         And that's one of the things that separates

21   this case from the cases they've cited in their

22   briefing.  The cases they've cited in their briefing are

23   cases where personal animus and retaliation are right on

24   the surface.

11:41AM  25         The only circuit case that they cite, the <u>Ribar</u>

case out of the Sixth Circuit, in that case the privacy

claim was dismissed on the basis of qualified immunity

because the law was unsettled.  The only thing that went

forward was a retaliation claim, which we don't have in

11:42AM  this case.  That's pretty illustrative of the cases they

cite entirely.

It's simply a different matter when a public

officer takes it into his hands to retaliate against

someone by disclosing information.  It's a different

11:42AM  matter; it's a different cause of action than this right

of privacy cause, as determined by the Court in Ribar.

We don't have any allegations of that because

it didn't happen.  We don't have any allegations of

retaliation because it didn't happen.  It just wasn't

11:42AM  part of this.

Instead, these were public officers, in good

faith, responding under a statute in which they have

been told to liberally construe and narrowly construe

exceptions and been told they will be prosecuted if they

11:43AM  don't disclose.  No FOI cases in Arkansas cited for the

proposition that an FOI disclosure of any sort violates

a right of privacy, much less in the specific context of

this case in order to put this officer on reasonable

notice.

11:43AM  There's also -- speak to these state law

allegations that really seems to be the core and the
impetus for this suit is that somehow these disclosures
violated state law, and I'll speak to each of them in
turn briefly.

11:43AM

First of all, the Child Maltreatment Act
relates only to records of the arrest, detention of a
juvenile or proceedings under the sub chapter.
Tellingly, this statute was amended.  That's why we've
called it "Josh's Law."  It was amended to deal with

11:44AM

this specific circumstance after all this occurred,
which just tells you all you need to know about the
status of the law.

It wasn't only unsettled; it went in the
opposite direction.  It was clear to the legislature at

11:44AM

least that they needed to do something to amend this
law -- and that's 9-27-309 -- to add in this proviso
about an adult relating to an offense when he was a
juvenile.  That part was revised, amended, and added
after -- after all this happened.  That tells you all

11:44AM

you need to know, I think, about the state of the
Arkansas law on that point.

The -- and I'm sorry.  I called it the Child
Maltreatment Act.  That's 9-27-309.  I may have my Child
Maltreatment Act and Juvenile Code mixed up, but it's

11:45AM

9-27-309 is that statute.

1       12-18-104, the confidentiality statute they

2  cite to, is just missing a clause.  It just is.  There's

3  no "related to" or "regarding" clause in 12-18-104(a).

4  Instead, it says, quote:  "Any data, records, reports,

11:45AM   5  or documents that are created, collected, or compiled by

6  or on behalf of."

7       Now, to my reading that's every document in the

8  possession of the entities that come in the list after

9  this, which is Department of Human Services, state

11:45AM  10  police, or any other entity organized under this chapter

11  to perform investigations or provide services to

12  children, individuals, or families.

13       If -- it's a little easier to read if you,

14  instead of the list, just focus on one of those.  Let's

11:46AM  15  focus on the Department of State Police.  Then this act

16  reads, 12-18-104(a) reads:  Any data, records, reports,

17  or documents that are created, collected, or compiled by

18  or on behalf of the Arkansas State Police shall not be

19  subject to disclosure under the Freedom of Information

11:46AM  20  Act of 1967.

21       So it does work in absurdity.  It repeals the

22  FOIA if you take it at face value.  Now, if this Court

23  wants to rule that the FOIA has been repealed by this

24  legislation, you know, I'm sure my other 54 counties

11:46AM  25  would be happy to hear about that.

1          I don't think that's the case, and I don't

2     think this statute should even be read that way.  It's

3     missing a clause and so we don't know what the scope of

4     this is or was intended to be.  There's no way this

11:46AM  5     statute could have put anybody on reasonable notice by

6     not disclosing this particular type of information,

7     particularly in Washington County's case where we're

8     talking about the age of one public figure.

9          16-90-1104, nondisclosure of information about

11:47AM  10    a victim, is also problematic because it's hopelessly

11    circular.  In subsection (b), it says a law enforcement

12    agency shall not disclose to the public information,

13    directly or indirectly, identifying the victim of a sex

14    offense.

11:47AM  15         Number one, we didn't have a sex offense here.

16    There was no conviction, ever, not even a charge, in

17    fact.  There was an allegation.  I don't think that

18    constitutes a sex offense under this subchapter.

19         Except to the extent that disclosure is -- and

11:47AM  20    subsection 2 says "required by law."  So the statute

21    says some of this information that may or may not be the

22    information we're talking about in this case should be

23    disclosed -- should not be disclosed; in other words,

24    there's an exemption to the FOI -- unless it's required

11:47AM  25    by law to be disclosed.

1    Well, the FOI presumptively requires all public

2    records to be subject to disclosure.  And so you've got

3    this hopelessly circular legislation, at most, that

4    somebody would have to deal with.

11:48AM  5    Of course, all of these are outside the four

6    corners of the FOIA, in other areas of the code, in

7    disparate areas of the code, follow 9, 12, and 16

8    respectively.

9    No case has ever found that records should not

11:48AM  10   have been disclosed even under those subsections.  So

11   there's been no interpretive case law on those points,

12   certainly none cited in this case.

13   I've spoken to the information about nonparties

14   and disclosures.  There's also this question about

11:48AM  15   policy and custom with respect to county liability on

16   these constitutional claims.  There's just been no

17   allegation of municipal policy or custom on the county's

18   part that this ever happened before or since or that,

19   you know, anyone ever complained about these specific

11:49AM  20   issues before or since without those allegations.

21   Without allegation of a policy, there can't be any

22   county liability on these constitutional claims.

23   And on a final point I would add, I don't think

24   I've heard an argument about this, but I think the

11:49AM  25   Arkansas law is fairly clear that the Arkansas

1   constitutional claims should be analyzed in exactly the

2   same manner as the federal claim.  I don't think there

3   was a contrary response on that point.

4           THE COURT:  All right.  Thank you, Mr. Owens.

11:49AM   5           Mr. Kieklak, I think I'm going to go over to

6   the plaintiffs and ask Mr. Bledsoe to respond.  If --

7           MR. KIEKLAK:  Yes, sir.

8           THE COURT:  -- he invokes something about

9   Monell claims that you disagree with, I'll give you a

11:49AM   10  chance to respond.

11          MR. KIEKLAK:  Yes, sir.

12          THE COURT:  Mr. Bledsoe?

13          MR. BLEDSOE:  Thank you, your Honor.  I'm

14  delighted to be in your courtroom today.  I have not

11:50AM   15  been to Arkansas before.

16          THE COURT:  Well, we're glad to have you.

17          MR. BLEDSOE:  Didn't even know the University

18  of Arkansas was in Fayetteville, although I was a big

19  fan of the Arkansas basketball team.  I think it was in

11:50AM   20  the early Nineties, when they won at least one national

21  championship.

22          One thing I wanted to do is to introduce myself

23  briefly, and also just let the Court know -- because I

24  saw some other members refer to each other by first name

11:50AM   25  and appear to be on a first-name basis with your Honor,

1    certainly not within the courtroom.

2          I've been practicing law for 26 years in Los

3    Angeles.  I'm a defense lawyer, spent my entire career,

4    until very recently, at a large national firm doing

11:50AM    5    defense work.  I'm not used to sitting on this side of

6    the table.

7          A group of us, including -- Mr. Larson, is a

8    former federal judge, Robert Larson is a federal Bush

9    appointee -- left a national firm a couple years ago,

11:51AM   10    started our own firm, had more freedom to do the type of

11    cases we wanted to handle.  This is the type of case we

12    want to handle.  I still do primarily defense work, but

13    I found this case particularly compelling.

14          And just one last thing I want to mention.  I

11:51AM   15    know the Court addressed me first as plaintiffs'

16    counsel.  Shawn Daniels is not my local counsel.  Shawn

17    Daniels and Hare Wynn are cocounsel in this case.  Both

18    firms, both were all in on this case and that's why I

19    came out from California to do this argument.  But there

11:51AM   20    may be occasions when I'm not here and that's not

21    because I'm deferring to local counsel.  Mr. Daniels

22    stands shoulder to shoulder with our firm and me on this

23    case.

24          There is a well-known judge in the Central

11:52AM   25    District, Judge Lew, who, when you appear before him,

1   typically asks you, "Counsel, do you have anything to

2   say that's not in your papers?"  And if you say yes,

3   then he says, "Well, why wasn't that in your papers."

4   So at this point I don't think we have a lot to say.

11:52AM   5   I'll make a brief argument, but our papers have

6   addressed all of the issues, I believe, that the defense

7   has raised.

8          I did make a few notes on the plane yesterday.

9   I do have a few thoughts on this case.  First, I'm

11:52AM   10   appalled, appalled by the conduct in the City and the

11   County.  Despite my youthful good looks, I have a

12   daughter and I have a granddaughter.  I'll tell ya,

13   there's no greater violation -- other than committing

14   the sexual assault yourself, there's no greater

11:53AM   15   violation you can do to a young person -- in this case

16   four beautiful, innocent, sweet, young girls -- than to

17   broadcast the details of their sexual assault to the

18   world in this case.

19          This wasn't -- this was a known disclosure to

11:53AM   20   tabloids concerning the sexual assaults committed on

21   four sweet, innocent girls when they were minors, which

22   they only disclosed under a promise of confidentiality.

23   No right-thinking person would do such a thing.

24          THE COURT:  Do you believe that the City and

11:53AM   25   County defendants believed that they were under a duty

1    to disclose this information --

2         MR. BLEDSOE:  I think --

3         THE COURT:  -- or do you believe there's

4    something more nefarious about it?

11:54AM    5         MR. BLEDSOE:  We've alleged there's something

6    more nefarious about it.  I think Police Chief Cate

7    seemed to have a relationship with the plaintiffs' firm.

8    There were e-mails going back and forth.  There seemed

9    to be -- I don't know if it was jealousy; I don't know

11:54AM   10    if it was spite.  We don't know.  We haven't taken the

11    discovery yet, but there was something going -- there

12    was a rush to get this information out to the tabloids,

13    and it smacks of intentional conduct or at least

14    deliberate indifference.

11:54AM   15         THE COURT:  Well, they certainly have certain

16    duties to comply with FOIA, correct?

17         MR. BLEDSOE:  Sure, and we --

18         THE COURT:  So where did they go astray?

19         MR. BLEDSOE:  Well, counsel for the county

11:54AM   20    pointed to the language of the Child Maltreatment Act,

21    specifically Arkansas Annotated Code 12-18-104, and said

22    if you read it broadly, it eviscerates FOIA.  Well, what

23    he didn't indicate is this statute, which protects all

24    records, is limited to records under the Child

11:55AM   25    Maltreatment Act.  This statute specifically protects

1   children and ends with "shall not be subject to

2   disclosure under the Freedom of Information Act."

3          There's no clause missing.  It's a statute

4   protecting children and information concerning children,

11:55AM  5   particularly children who are victims of sexual assault.

6   And there's other statutes protecting victims of sexual

7   offenses, victims of sexual assault.

8          I don't know how it could be any more clear,

9   frankly.

11:55AM  10          THE COURT:  The entirety of the document is

11   protected?  Is that -- is that your point, or are you

12   suggesting that they did not conduct sufficient

13   redacting?

14          MR. BLEDSOE:  Well, in this case I think the

11:56AM  15   term "redaction" is charitable because there appear -- I

16   think the entire document was protected because it was a

17   document under the Child Maltreatment Act.

18          There was a, at most, halfhearted, indifferent

19   effort to redact, where anybody who knew anything about

11:56AM  20   the family -- and this was going to the tabloids --

21   could figure out, by reading the document, who was

22   involved.

23          And there's been an argument that the

24   information was already made public.  Well, that's

11:56AM  25   false, and we've explained in our briefing that's false.

1  There was information in the public that Josh Duggar

2  was -- or had been investigated concerning allegations

3  of a sexual assault.  There was nothing public about who

4  was involved.  Could have been a third-party nonfamily

11:57AM  5  member.

6       The City and the County were at least specific

7  information with redactions that were effectively

8  meaningless under the circumstances because the

9  information released by the City allowed anyone who knew

11:57AM  10  anything about the situation to identify the victims.

11       The County piled on, released the same

12  information, I believe, before In Touch magazine

13  published it.  But the County held on and identified the

14  specific age of one of the victims, as well as providing

11:57AM  15  the other information that had been obtained.

16       So, you know, if you're Joy Duggar, that was a

17  meaningful disclosure.  If you're these other girls,

18  those were meaningful disclosures which were

19  humiliating, which were embarrassing, which put -- I

11:58AM  20  mean, put a Scarlet Letter on them almost.

21       The rest of their lives, these girls, people

22  look at them and say, "Oh, yeah.  She was the one

23  molested by her brother."  It's despicable what happened

24  here and, you know, we -- I almost prefer to save most

11:58AM  25  of my argument for summary judgment because what we've

1    heard here are effectively summary judgment-type

2    arguments.

3           The standard on a motion to dismiss is the

4    dismissal is inappropriate unless it appears beyond

11:58AM  5    doubt that the plaintiffs can prove no set of facts in

6    support of their claims which would entitle them for

7    relief.  We have an extremely detailed complaint which

8    sets forth facts which we believe entitle these

9    beautiful, sweet girls to relief, and we've pled those

11:59AM  10   facts sufficiently.

11          And unless the Court has other specific

12   questions, I would reserve my argument for plaintiffs to

13   have more argument, or really, frankly for summary

14   judgment because that's what the type of arguments that

11:59AM  15   we have been faced this morning.

16          THE COURT:  Well, the defendants contend that

17   to the extent that you have stated facts from which the

18   Court can construe that there was a violation of a

19   constitutional right that it wasn't clearly established

11:59AM  20   in this circuit that that set of facts would constitute

21   something of a constitutional dimension.  What is your

22   response to that?

23          MR. BLEDSOE:  Your Honor, I read their briefs

24   yesterday, flying right over them.  I made note I could

12:00PM  25   hardly believe what I was reading.  This is the City's

1    brief; the County basically parroted it.

2            Page 8, third paragraph starts, "The protection

3    against public dissemination of information is limited

4    and extends only to highly personal matters,

12:00PM    5    representing the most intimate aspects of human affairs.

6    To violate a person's constitutional right of privacy,

7    the information disclosed must either be a shocking

8    degradation or an egregious humiliation to further some

9    specific state interest or a flagrant breach of a pledge

12:00PM   10    of confidentiality which was instrumental in obtaining

11    the personal information."

12            I wrote down in the margin exactly what

13    happened here.  There are statute -- it's hard to

14    conceive of more personal, more intimate, more violative

12:01PM   15    disclosures than to disclose not only the identity of

16    minors who are victims of sexual assaults but to

17    disclose the details of those sexual assaults.

18            THE COURT:  Defendants say they didn't disclose

19    any identities.

12:01PM   20            MR. BLEDSOE:  Well, they did.  They didn't say

21    the names, but they disclosed pages and pages of

22    information that a reader could figure out who they

23    were.

24            With respect to Joy Duggar, they did disclose

12:01PM   25    her age at the time so that anybody could figure out

and, in fact, people on the Internet did identify the
victims and that's --

THE COURT:  So if you are employed by a county
or local government and you're tasked with complying
12:02PM with FOIA requests, do you have one set of rules for
high-profile -- people who are mentioned of high-profile
and public records and then have a different set for
people who are not high-profile?

MR. BLEDSOE:  That's not what we're saying.
12:02PM But I'll tell you, that distinction is lost if you're
one of those poor girls.

What I'm saying is you cannot release
information which identifies the victim of a sexual
assault.  The identity of these girls was released.
12:02PM Information sufficient to identify them was released,
and there are statutes directly on point.

I've read -- I've read one.  You can't release
information sufficient to identify the victim of a
sexual assault, and you can't release records relating
12:03PM to the minor victims of a sexual assault.

So we're not saying -- the distinction is
without a difference if you're one of the four girls and
the County releases information sufficient to identify
you.  Granted, they did not release the names of the
12:03PM girls, but they released pages of information which was

1    sufficient for not just the public at large but anyone

2    in the community and that's why it doesn't matter if

3    you're famous or not famous.

4         Members in this community who knew the Duggar

12:04PM   5    family, irrespective of any publicity, could identify

6    them from the records that were released and that's why

7    we're not making an argument that the City or the County

8    should be held to a different standard because the

9    Duggars, you know, had a TV show -- or have a TV show.

12:04PM   10        I will say, though, that anyone should have

11   known the records of children who report details of

12   their sexual assault are confidential under the law, and

13   there's multiple statutes covering that.

14        This was not something that was difficult to

12:04PM   15   figure out, and the statute specifically exempts those

16   records from disclosure under FOIA.

17        I don't think -- you know, this weighing FOIA

18   versus weighing -- there's a statute directly on point.

19   No weighing had to be done.  The law was clearly

12:05PM   20   established.  It can't be more clearly established than

21   to say "are not subject to disclosure under FOIA."

22        THE COURT:  All right.  What about official

23   policies or unofficial customs of the City or the

24   County?

12:05PM   25        MR. BLEDSOE:  We've addressed that in our

1    briefing, but at this point -- we've addressed that in

2    our briefing sufficiently, we believe, to get past the

3    motion to dismiss.  That's going to be a subject of

4    discovery because either they had policies in place

12:05PM    5    which they followed, which were a problem, or they

6    didn't have policies in place, which, they should have.

7    And so that's really -- that's really to be subject of

8    discovery.  We've cited, I think, case law that confirms

9    that at this stage.

12:05PM    10           THE COURT:  Where does your complaint state

11    these allegations sufficient to survive a plausibility

12    test?

13           MR. BLEDSOE:  Let me just go back to my

14    argument.  I believe it's complaint paragraph 141.  The

12:06PM    15    plaintiffs allege that the City and County maintain

16    policies and practices that permitted the improper

17    release of information obtained under a promise of

18    confidentiality.

19           In addition the plaintiffs allege that the City

12:06PM    20    and County failed to implement a policy concerning

21    consultation which juvenile services, family services or

22    other departments prior to releasing information which

23    would have protected plaintiffs from the improper

24    disclosure.

12:06PM    25           And I'll just notice the Eighth Circuit

recognized in <u>Doe versus School District of Norfolk</u>, a
plaintiff at the pleading stage may not be privy to the
facts necessary to accurately describe or identify any
policies or customs which may have caused the
12:07PM   deprivation of a constitutional right; thus, under
Eighth Circuit law, a plaintiff need not specifically
plead the existence of an unconstitutional policy or
custom to survive a motion to dismiss.  And that's --

THE COURT:  All right.  So it's paragraphs 141
12:07PM   and, by extension, 142, and that's it?

MR. BLEDSOE:  Yes, your Honor.

THE COURT:  Anything else you'd like to add?

MR. BLEDSOE:  No.  No, your Honor.  Thank you.

THE COURT:  All right.  Thank you.

12:07PM   Let's shift over now and let's take up the tort
claims.  I understand that -- Ms. Kendall, were you
going to take up that issue?

MS. KENDALL:  Yes, your Honor.

THE COURT:  You may proceed.

12:08PM   MS. KENDALL:  Okay.

Morning, your Honor.  Susan Kendall on behalf
of Springdale defendants.

I guess that I'll begin with the intrusion upon
seclusion, if that's acceptable with the Court, and
12:08PM   there's a few different arguments with respect to the

tort claims.  One is under Rule 12(b)(6), the plaintiffs have simply failed to allege facts sufficient to support a claim; it must be dismissed.

On the intrusion upon seclusion, one of the elements on there is that the defendants intentionally intruded and that they had to believe or were substantially certain that they lacked the necessary legal authority or permission to do so; and, your Honor, there are no allegations in the complaint that the City of Springdale, Chief O'Kelley or Ernest Cate believed, or that they were substantially certain, that they lacked the necessary authority or permission to release the redacted police report pursuant to FOIA.

There are -- Paragraphs 46 through 57 of the plaintiffs' complaint even specifically reference the fact that the plaintiffs were -- excuse me, that the defendants were releasing the police reports pursuant to FOIA.

The standard under intrusion upon seclusion is not whether they knew or should have known.  It's whether they believed or were substantially certain; and in this case, the plaintiffs had made the allegation that the plaintiffs knew or should have known.  That's a negligence standard, your Honor.

What this boils down to is that the plaintiffs

1    have complained that the Springdale defendants have

2    negligently released a police report pursuant to FOIA.

3    There's not an intentional element claimed that they

4    believed or were substantially certain.

12:10PM    5         And, your Honor, if I could segue for just a

6    minute, there's been a lot of talk about the Child

7    Maltreatment Act and whether -- excuse me -- the

8    Springdale police record, police report, was a record

9    under the Arkansas Child Maltreatment Act.

12:10PM    10        The Arkansas Child Maltreatment Act is not an

11   act pertaining to criminal investigations.  It's an

12   administrative act.  What the Arkansas Child

13   Maltreatment Act does is it sets up the hotline, the

14   child reporting hotline, child abuse reporting hotline;

12:10PM    15   and there are two entities, two agencies, that are

16   charged with that.  That is the Arkansas State Police

17   Crimes Against Children division and the Department of

18   Human Services.

19        So what happens is there's a report that comes

12:10PM    20   through the hotline; and under the Child Maltreatment

21   Act, one of those two agencies are charged with

22   investigation of that report.  And there is an agreement

23   that's entered into every year between these two

24   agencies, and they determine who's going to investigate

12:11PM    25   this report.

1          This is not a criminal investigation.  Child

2    Maltreatment Act is not a criminal investigation

3    statute.  Now, the Child Maltreatment Act encourages

4    cooperation with law enforcement; it doesn't authorize

12:11PM    5    law enforcement to conduct criminal investigations that

6    come in.  Under 12-18-102, the Child Maltreatment Act

7    says it encourages cooperation with law enforcement; it

8    does not authorize law enforcement to conduct these

9    investigations.

12:11PM    10         So what happens under the Child Maltreatment

11   Act is hotline report comes in; they're set into two

12   different priorities, priority one and priority two.

13   Priority one goes to the Crimes Against Children

14   division of the Arkansas State Police.  They are the

12:12PM    15   more severe allegations.  Priority two goes through the

16   Arkansas Department of Human Services.

17         Depending on the priority, one of those two

18   agencies is granted the authority and the obligation,

19   under the Child Maltreatment Act, to conduct an

12:12PM    20   investigation.  The investigation that's conducted by

21   the Arkansas State Police, the Crimes Against Children

22   division, is actually done by civilians.  It's not a

23   criminal investigation.

24         If the allegation is severe enough, at that

12:12PM    25   point the civilian staff of the Crimes Against Children

refers that to local law enforcement for local law
enforcement to determine how they want to proceed.
They're not required to proceed with an investigation
and that is a criminal investigation outside of the
Child Maltreatment Act.

So we go back into the Child Maltreatment Act.
So it's severe enough, Child Maltreatment -- or, excuse
me, CAC refers that out to law enforcement for criminal
investigation.

THE COURT:  Ms. Kendall, I --

MS. KENDALL:  Yes, sir.

THE COURT:  I understand what you're saying.
What I don't understand procedurally is whether that is
an issue that we take up on the pleadings or whether
it's an issue that we have to wait until there's some
discovery and it comes back up on Rule 56.

What I think that we're here on is, to the
extent that you are contending that any of the tort
claims are barred by immunity, I'd like to hear about
that.

MS. KENDALL:  Sure.

THE COURT:  And to the extent that you
contend -- and this may be kind of what you were getting
at -- that there's a pleading sufficiency under
12(b)(6), and we can talk about that.

1          MS. KENDALL:  Sure.

2          THE COURT:  But I think where you're going is a

3      little bit beyond simply accepting the facts as stated

4      as true, which is -- the Court is bound by that at this

12:14PM   5      stage.

6          MS. KENDALL:  Sure.  And I appreciate that,

7      your Honor, and I'll move forward.

8          THE COURT:  Why don't we start with immunity.

9      Are there any -- do you believe there are any immunity

12:14PM  10      issues that --

11          MS. KENDALL:  Well, I do think to the extent

12      that the Court was focusing on earlier, on whether it

13      was relevant or not that the state police investigator

14      with the Crimes Against Children division of the State

12:14PM  15      police, who was a civilian, made a promise of

16      confidential.  That was a promise of confidentiality

17      made in a Child Maltreatment Act investigation.  The

18      City of Springdale was not involved in the Child

19      Maltreatment Act investigation.  They were conducting a

12:14PM  20      criminal investigation.

21          So to that extent -- and I apologize if I got

22      too bogged down in the weeds, your Honor.

23          THE COURT:  That's all right.

24          MS. KENDALL:  That's what I was trying to get

12:14PM  25      to very quickly is any promises of confidentiality were

1  made in a child maltreatment investigation.  City of

2  Springdale was conducting a criminal investigation.

3       Now, while there may be some overlap between

4  the two, our report was a report of a police report,

5  criminal investigation police report.  And so that goes

6  back to we could not have believed or were substantially

7  certain that we lacked the necessary authority or

8  permission to do so because it was a closed criminal

9  police investigation; and under FOIA, it's clear that

10  those are subject to FOIA; and when minors are involved,

11  we simply redact.

12       So in going back to the -- excuse me.  I

13  apologize, your Honor.  Going back to the intrusion upon

14  seclusion claim, they could not have believed or been

15  substantially certain that they lacked the necessary

16  legal authority to do so, so they have not been able to

17  meet their element of intrusion upon seclusion, which is

18  somewhat commingled with the fact that when they don't

19  have that necessary requisite intent, they are entitled

20  to qualified immunity.

21       Moving on -- and, your Honor, I'm happy to move

22  on to the immunity issue.  It's a bit muddled in

23  Arkansas when it comes to statutory immunity and

24  qualified immunity with respect to intentional torts.

25       THE COURT:  Well, let's start with this

12:15PM (line 5)
12:15PM (line 10)
12:15PM (line 15)
12:16PM (line 20)
12:16PM (line 25)

1    proposition.

2          MS. KENDALL:  Sure.

3          THE COURT:  Do we agree that your two invasion

4    of privacy claims and your outrage claim are all

12:16PM  5    intentional torts?

6          MS. KENDALL:  Yes, sir.

7          THE COURT:  And do we agree that statutory --

8    Arkansas statutory immunity does not apply to

9    intentional torts?

12:16PM  10          MS. KENDALL:  I apologize.  What was that, your

11    Honor?

12          THE COURT:  Do you concede that Arkansas

13    statutory immunity does not apply to intentional torts?

14          MS. KENDALL:  I can't concede to that, your

12:16PM  15    Honor, and I think there's a lengthy analysis in our

16    brief.  I think at best, the law in Arkansas is

17    completely unclear as to whether it applies or not.

18          In the most recent cases that have come out of

19    the Arkansas --

12:17PM  20          THE COURT:  What about --

21          MS. KENDALL:  Yes, sir.

22          THE COURT:  -- the '92 case as of Deitsch

23    versus Tillery, which was, in effect, ratified again by

24    the Supreme Court in Trammell versus Wright last year?

12:17PM  25          MS. KENDALL:  Correct, your Honor.  And in

1   <u>Trammell</u> actually -- the Court did not decide that issue

2   in <u>Trammell</u>.  The argument was made in <u>Trammell</u>, and the

3   Court said we're going to decide -- what they ruled in

4   that case, it was a false arrest case and they ruled in

12:17PM  5   that case that it was a negligent act and not an

6   intentional act and so for that point, they did not get

7   into an analysis of whether the intentional -- statutory

8   immunity applied to intentional torts or not.

9          THE COURT:  Where has the Arkansas Supreme

12:17PM  10  Court ever left any gray area --

11          MS. KENDALL:  Sure.

12          THE COURT:  -- as to the point of statutory

13  immunity does not apply to intentional acts?

14          MS. KENDALL:  Sure.  So, your Honor, the

12:17PM  15  landmark case that seemed to have come out with the

16  proposition that statutory immunity only applies to

17  negligence claims is this <u>Battle</u> case that came out in

18  1989.  If you look at the plain language of the statute

19  or immunities statute, it has no limitations.  It simply

12:18PM  20  says that counties, municipal corporations, and so on

21  shall be immune from liability and from suit for damages

22  except to the extent that they may be covered by

23  liability insurance.  There's no limiting language with

24  respect to tort of intentional torts or negligent torts.

12:18PM  25          Conversely, if you look at the claims against

1   the state, it's specifically limited, where there is

2   tort immunity for acts or omissions other than malicious

3   acts or omissions.

4            So just the plain language, the plain reading

12:18PM   5   of the statute indicates that the tort immunity for

6   cities is not limited solely to negligence claims.  This

7   proposition seemed to appear first in this case of

8   Battle.  It was the -- it's cited in our brief and it's

9   a 1989 case.  In that case Battle -- the Court in

12:19PM   10   Battle, with absolutely no analysis, stated that the

11   tort immunity statute only provided -- only applies to

12   negligence and not to intentional torts.

13            In their -- the small analysis that they did do

14   was even flawed because they relied on -- that Court

12:19PM   15   relied on the Autry v. Lawrence decision in doing so for

16   the proposition that tort immunity applies to negligence

17   claims.  But the Autry v. Lawrence case was an

18   intentional tort case.  And so what's happened since

19   then is the Battle Court put it out there and it has

12:19PM   20   been picked up by other courts without analysis.

21            But there have been recent analyses about this

22   situation -- about this issue.  Recently in Williams v.

23   Pate -- it's a 2015 Ark. App. 327.  And I do understand

24   that this is an Arkansas Court of Appeals decision.

12:20PM   25   However, the rehearing was denied by the Arkansas

1    Supreme Court over a rather strong dissent that the

2    Arkansas Supreme -- the -- a rather strong dissent

3    requesting that the Court hear it because -- and I

4    apologize.  I can't read the justice who was dissenting,

12:20PM  5    and it said the <u>Williams v. Pate</u> decision is contrary to

6    the <u>Battle</u> decision.

7            So very recently, 2015, at <u>Williams v. Pate</u>, it

8    was a Arkansas Court of Appeals case in which a --

9    allegations were made for conversion, trespass, and

12:20PM  10   felony tort.  The Court reviewed the allegations and

11   said, although it's an intentional tort, we're going

12   to -- our analysis doesn't stop there.  Let's go look at

13   what the actor actually did and did they have knowledge

14   that they were committing intentional torts.

12:20PM  15           THE COURT:  Well --

16           MS. KENDALL:  And in that case, the Court says

17   there was no knowledge.  Although they committed this

18   intention tort, there was no knowledge they committed an

19   intentional tort.

12:21PM  20           THE COURT:  Well, what about the Trammell

21   versus Wright case from last year?

22           MS. KENDALL:  Sure.

23           THE COURT:  And the quote that I wrote down was

24   the Arkansas Supreme Court, quote, "has consistently

12:21PM  25   held that Section 21-9-301 provides City employees with

1  immunity from civil liability for negligent acts but not

2  for intentional acts."

3       MS. KENDALL:  Sure.  And, your Honor, in that

4  same paragraph, that's where the Court says that Officer

12:21PM  5  Trammell was arguing to the Court that although it was

6  an intentional tort that he committed, he should have

7  been afforded immunity.

8       And the Court goes on to say, because we hold

9  that Officer Trammell had not committed any intentional

12:21PM  10  torts, we will not address his last point on appeal as

11  to whether the tort immunity statute provides immunity

12  against all torts, including intentional torts.

13       So in that case, your Honor, although they said

14  they have consistently held that, they went on to say

12:21PM  15  "We're not going to address the argument that was

16  submitted in Trammell," which is the same argument we're

17  submitting here today, your Honor.  We're not going to

18  address the argument that was submitted in Trammell

19  because they decided it based on different grounds.

12:22PM  20       And if you look at the concurring opinion that

21  special justice Gardner provided, a rather long

22  concurring opinion, and really cautioned the Court and

23  said, "We've got inconsistencies, and it's not enough to

24  look at whether there is a tort for negligence and tort

12:22PM  25  for intentional versus negligent -- excuse me.  Excuse

me, your Honor -- immunity for intentional versus

negligent torts; we have got to look further into that.

And -- but he specifically says that applying immunity

based solely on negligence versus intentional tort

12:22PM   analysis is insufficient.  In this Court's opinion, in

Battle and other similar cases should be qualified, to

the extent necessary, to accommodate the additional

analysis.

And the additional analysis is the analysis

12:23PM   that was set forth in the Williams v. Pate case in which

the Arkansas Supreme Court denied rehearing.

THE COURT:  All right.  Let's go to your

12(b)(6) argument.

MS. KENDALL:  Sure.

12:23PM   THE COURT:  And let's --

MS. KENDALL:  And, your Honor, if I could just

very briefly.  After Battle -- before Battle, there were

Arkansas Supreme Court cases that applied immunity to

intentional tort claims.  They are cited in our brief.

12:23PM   And after Battle, there continue to be Arkansas Supreme

Court cases that apply qualified immunity to intentional

torts, even after Battle.  The law is very inconsistent

in Arkansas on that issue.

Okay.  Yes.  So --

12:23PM   THE COURT:  On your first invasion of privacy

1 claim, the disclosure -- public disclosure of a private

2 fact, which elements of that cause of action, as we

3 understand from either the restatements second or the

4 AMI --

12:23PM 5    MS. KENDALL:  Sure, your Honor.  I'm sorry.

6    THE COURT:  -- are missing from the same

7 complaint?

8    MS. KENDALL:  Thank you.

9    Your Honor, there was public disclosure of a

12:24PM 10 private factor, two elements that are missing there.

11 First of all, it was already public.  The information

12 that was provided in the redacted police report was

13 information that had already been published.  It had

14 been published online by In Touch.

12:24PM 15    It was known to family -- by their own

16 admissions, it was known to family, it was known by

17 friends, it was known by members of the church.  It was

18 known by the person who anonymously reported it to the

19 Oprah Winfrey show.  So these were not private facts.

12:24PM 20 They had already made their way into the public

21 domain -- or, excuse me, they were private facts that

22 had already been made public by the time we released our

23 police report under FOIA.

24    The other issue is it was only published to one

12:24PM 25 party, and there's an Eighth Circuit court case that

1   discusses the fact that -- and I think this is actually

2   cited extensively in Mr. Owens' brief -- that it was

3   only published to one party, and disclosure to one party

4   was insufficient to state a claim.

12:25PM   5        Your Honor, the FOIA request came from an

6   attorney's office.  It did not come from In Touch, and

7   there was nothing in the FOIA request that indicated

8   that it was from In Touch or that they were releasing

9   information to In Touch.  We released information to one

12:25PM   10   attorney, and the case law is clear that disclosure

11   by -- to one party is insufficient.

12        So for those reasons, the public disclosure of

13   private facts fails.

14        THE COURT:  All right.  And intrusion upon

12:25PM   15   seclusion?

16        MS. KENDALL:  Sure.  Your Honor, I cited

17   this -- to this Court, its previous decision in the

18   Wolfe v. Fayetteville School District case.  Outrage is

19   a very, very narrow test, as this Court's aware.  I'm

12:25PM   20   not going to reiterate too much.  It's a narrow test.

21   It's reserved for the most heinous conduct.  There are

22   cases within Arkansas that say kicking, racial slurs,

23   death threats, those don't rise to the level of outrage.

24        In this case what we have is, at best, at best,

12:26PM   25   the negligent release of a FOIA -- of a police report

1   under FOIA.  We don't have an intention to act willfully

2   or wantonly.  We don't have extreme or outrageous

3   conduct.  And for that reason, your Honor -- for those

4   reasons, your Honor, plaintiffs have failed to reach

12:26PM   5   their burden of establishing claim for outrage by the

6   allegations in their complaint.

7           THE COURT:  All right.  Thank you very much.

8           MS. KENDALL:  Thank you, your Honor.

9           THE COURT:  Mr. Owens, would you like to pile

12:26PM   10   on to anything Ms. Kendall has had to say?

11          MR. OWENS:  Happily, your Honor.  I've just got

12   a few things I want to go over.

13          With respect to the immunity issues, we

14   likewise believe that statutory immunity should be

12:26PM   15   afforded in light of the uncertainty created by Williams

16   versus Pate and the Supreme Court not reaching the issue

17   when it easily could have in the other case -- I believe

18   it was Trammell -- when they easily could have said,

19   well, immunity doesn't apply here; but even though it

12:27PM   20   doesn't apply, it could have easily reached that issue.

21          Now, the other argument could be made as well,

22   but we think there's enough uncertainty that the Court

23   ought to look to the plain language of the statute.

24   Immunity from suit doesn't mean affirmative defense.  It

12:27PM   25   means immunity from suit.  That's our position.

1   Immunity from suit in tort doesn't mean some torts; it

2   means all torts.  That's just our position based on the

3   plain language of the statute.

4          We've also asserted, I believe, qualified

12:27PM   5   immunity.  The Arkansas law broadly grants qualified

6   immunity to public officers for violation of any

7   clearly -- anything that's not a violation of clearly

8   established law across the spectrum.  We don't think

9   that any of that has been alleged here.

12:28PM   10          With respect to intrusion upon seclusion, it's

11   hard to find an element that has been pled.  The

12   intrusion, I guess, is the disclosure of eight or ten

13   pieces of paper to a third party.  Hard to see how that

14   intrudes upon the plaintiffs in this case.

12:28PM   15          Seclusion, as well, hard to see what kind of

16   seclusion we're talking about.  Certainly these things

17   aren't pled.  What's really being alleged here is some

18   sort of vicarious intrusion upon seclusion.

19          This idea that we disclosed something, the

12:28PM   20   county disclosed something which caused somebody else to

21   intrude upon their seclusion, that's not a recognized

22   tort.  It's certainly not clearly established law.

23          The restatements and the Arkansas case law

24   require an actual intrusion.  Doesn't have to be

12:29PM   25   physical, but it has to be an intrusion, and it has to

1    actually be seclusion.  Far from secluded; these

2    plaintiffs were public figures.

3         With respect to public disclosure of private

4    facts, it also fails on several counts.  First is

12:29PM  5    publication.  This was disclosed to one lawyer.  The

6    plaintiffs assert that that constitutes publication

7    because we should have known that that lawyer

8    represented the press somehow; and the assertion that

9    the press should somehow get less in FOI than everybody

12:30PM  10   else.

11        That's the assertion made in plaintiffs'

12   response:  That even though we only disclosed it to one

13   lawyer that because we somehow should have known that

14   that lawyer represented a press entity that we should

12:30PM  15   have afforded them less in terms of disclosure than

16   someone else.  I don't see that anywhere in the FOIA or

17   in the case law; in fact, the FOIA was largely promoted

18   and prompted by the Courts.  It's a very oppressed,

19   friendly statute.

12:30PM  20        The waiver of privilege is another matter.  You

21   know, the question there is whether this touched on

22   matters of public concern.  Well, obviously the public

23   is concerned about sexual offenses.  We've got a whole

24   registry set up in the State of Arkansas to register sex

12:31PM  25   offenders.

1        The plaintiff here, the plaintiffs have felt

2  free throughout the briefing and the arguments here to

3  call him a criminal and say he committed a criminal

4  offense and a sexual assault.  I rarely, if at all,

12:31PM   5  heard the word "alleged" because this guy was never

6  charged or convicted of anything.  But nevertheless, the

7  terms are "sexual assault" and "sexual offense" that are

8  being used in the briefing by plaintiff and plaintiffs'

9  counsel and, yet, somehow the fact that this guy

12:31PM  10  committed a sexual offense according to the plaintiffs

11  and it was never reported to the public at large, you

12  know, what about the day care he applies to?  Don't they

13  have some right to know that this guy allegedly

14  committed these offenses?  That's what the whole sex

12:32PM  15  register -- sex offender registry is set up for.

16        There's certainly a massive amount of public

17  concern for the identity and location of sex offenders.

18  Now, they say, "Well, we're talking about the victims

19  here"; but in the same breath, they concede that the

12:32PM  20  victims' names were redacted.  No one's ever contested

21  that fact.  So we think that there's a privilege there

22  because these were matters of public concerns and a

23  privilege that we were acting under statutory authority;

24  indeed, statutory duty under the FOIA.

12:32PM  25        I think that's all I have on the statutory

arguments.  I mean, essentially we're saying that they

just haven't alleged -- well, outrage is the last one I

didn't speak to, but outrage is such a narrow claim in

Arkansas.  You have to allege so much.

12:32PM

Outrage is kind of the satisfaction of a FOIA

request, even if you presume the alleged underredaction

that the plaintiffs allege in their complaint just

doesn't rise to the level of outrage.  Thank your Honor.

THE COURT:  All right.  Thank you, Mr. Owens.

12:33PM

Mr. Bledsoe, would you like to respond?

MR. BLEDSOE:  Your Honor, we've briefed these

issues.  I really don't have much to add, other than I'm

outraged.  No admission of wrongdoing, no shame, no

apology, no "We'll never let this happen again to any

12:33PM

little girl."

They released the details, not just the

identities but the details of sexual assaults on minors.

These four girls are going to live the rest of their

lives --

12:34PM

THE COURT:  Mr. Bledsoe, I don't know of anyone

in this courtroom that is going to take the other side

of the argument that sexual abuse of a young girl is a

bad thing.  You're not going to find many, if anyone, to

oppose you on that.  I don't really think that's the

12:34PM

issue before the Court today, though.

1          MR. BLEDSOE:  I'll get to the heart of the

2   matter.  This court is not the place to overrule the

3   Arkansas Supreme Court.  Arkansas law, as it stands,

4   does not extend immunity to tort.  It also, frankly,

12:34PM   5   doesn't extend immunity to negligent actions in the

6   cases where there's insurance.  There's been no

7   allegation here that there isn't insurance on behalf of

8   the City and the County.

9          So we believe -- they are making, in many

12:34PM   10   instances -- in almost every instance -- Rule 56

11   arguments.  As far as the pleading goes, we've pled

12   intentional conduct, we've pled that they -- this wasn't

13   just a disclosure to one lawyer in Little Rock.

14          We have pled that they knew where this was

12:35PM   15   going; they knew it was being disclosed to the press.

16   They disclosed it, the City disclosed it, and rushed to

17   disclose it in time to meet a publication deadline.

18   That wasn't a lawyer's publication deadline.  That was

19   In Touch magazine's publication deadline.

12:35PM   20          So we -- our complaint addresses all of the

21   issues they've raised.  If they want to bring them up

22   again on summary judgment, that's fine, but I really

23   don't have anything more to add than our briefing

24   because between the complaint and our briefing, we have

12:35PM   25   addressed all of these arguments, your Honor.

1    THE COURT:  And I guess you agree that all of

2  your torts as alleged are intentional torts that require

3  intentional conduct; is that right?

4    MR. BLEDSOE:  Yes.

12:36PM  5    THE COURT:  And as a consequence of that, there

6  is no statutory immunity?

7    MR. BLEDSOE:  Yes.

8    THE COURT:  All right.

9    MR. BLEDSOE:  But to the extent they are going

12:36PM  10  to fall back on negligence, unless there's an absence of

11  insurance coverage, which has not been raised, we

12  believe we could allege negligence as a basis for

13  liability, not on the intentional torts but just on the

14  conduct.

12:36PM  15    THE COURT:  You could.  What I'm trying to get

16  you to acknowledge is that as pled in the current

17  version of the complaint, you have alleged three

18  intentional torts.

19    MR. BLEDSOE:  Yes.

12:36PM  20    THE COURT:  You mentioned that you had never

21  been to Arkansas before.  Have you had an opportunity to

22  read the rather dim view that the Arkansas Supreme Court

23  takes of the tort of outrage?

24    MR. BLEDSOE:  No.  That would be a situation

12:37PM  25  where I'm relying on my cocounsel, but -- and I say that

1   in jest.  But, no, I have not read a case addressing the

2   issue that your Honor just raised.

3           We believe that on these facts, the knowing

4   disclosure for publication by a tabloid of the details

12:37PM   5   of the sexual assault on minors, not just identities but

6   the details, satisfies those elements.

7           THE COURT:  All right.  Thank you as such,

8   Mr. Bledsoe.

9           MR. BLEDSOE:  Thank your Honor.

12:37PM   10          THE COURT:  The Court is going to take the

11  defendants' motions under advisement.  I have to have an

12  opinion out within the week.

13          My understanding, Mr. Eichmann and Mr. Owens,

14  is that to the extent that the Court were to rule

12:38PM   15  against you -- I'm not saying that the Court is; I'm

16  just saying to the extent that the Court does, you are

17  planning on taking an interlocutory appeal of that; is

18  that correct?

19          MR. OWENS:  Your Honor, I always hesitate to

12:38PM   20  say because the Court may convince me otherwise, but --

21          THE COURT:  Well, let me make -- see if you can

22  help me with this.  To the extent, A, that the Court

23  does rule against you -- and I'm not saying that it is,

24  but if it were to, and you make a decision that you're

12:38PM   25  not going to take an interlocutory appeal, then as soon

1    as you have reached that conclusion, will you please let

2    us know because we do need to schedule a case management

3    hearing and that's the only reason why I'm pressing you

4    on it today.

12:38PM    5         MR. OWENS:  Absolutely, your Honor.  We'll do

6    that with all due speed.

7         MR. EICHMANN:  Yes, your Honor, we'll be

8    expeditious in that decision.

9         THE COURT:  All right.  I think that will

12:38PM   10    conclude our hearing today, although I would like to ask

11    to see certain counsel in chambers.  I'd like to see

12    Mr. Bledsoe, Mr. Daniels, and one member of the City's

13    team -- well, the County's defense team, which would be

14    Mr. Owens, and Ms. Kolb, if she cares to.

12:39PM   15         We're adjourned.

16         (Proceedings adjourned at 12:39 p.m.)

17

18

19

20

21

22

23

24

25

1          CERTIFICATE OF OFFICIAL REPORTER

2

3          I, Dana Hayden, Federal Official Realtime Court

4   Reporter, in and for the United States District Court

5   for the Western District of Arkansas, do hereby certify

6   that pursuant to Section 753, Title 28, United States

7   Code that the foregoing is a true and correct transcript

8   of the stenographically reported proceedings held in the

9   above-entitled matter and that the transcript page

10  format is in conformance with the regulations of the

11  Judicial Conference of the United States.

12          Dated this 29th day of November 2017.

13

14

15

16   _____*Dana Hayden*_____

17          Dana Hayden, CCR, RMR, CRR
             Federal Official Court Reporter

18

19

20

21

22

23

24

25

**'**

**'19** [1] - 14:18
**'92** [1] - 70:22

# 1

**1-10** [1] - 1:15
**10:48** [1] - 1:18
**113** [1] - 2:14
**12** [1] - 51:7
**12(b)(6** [3] - 64:1, 67:25, 75:13
**12-18-102** [1] - 66:6
**12-18-104** [2] - 49:1, 55:21
**12-18-104(a** [1] - 49:16
**12-18-104(a)** [1] - 49:3
**129** [1] - 2:7
**12:39** [1] - 86:16
**141** [2] - 62:14, 63:9
**142** [1] - 63:10
**15th** [1] - 14:5
**16** [2] - 5:13, 51:7
**16-90-1104** [1] - 50:9
**17250** [1] - 2:23
**1967** [3] - 10:14, 11:2, 49:20
**1983** [7] - 7:16, 17:13, 18:10, 35:8, 42:25
**1989** [2] - 71:18, 72:19
**19th** [1] - 14:15

# 2

**2** [4] - 20:20, 21:1, 41:21, 50:20
**200** [1] - 2:4
**2006** [1] - 6:14
**2007** [1] - 10:8
**201** [1] - 2:18
**2015** [7] - 6:16, 10:9, 14:5, 14:15, 45:3, 72:23, 73:7
**2016** [1] - 5:13
**2017** [2] - 1:18, 87:12
**20th** [2] - 14:15, 39:4
**21-9-301** [1] - 73:25
**213** [1] - 2:5
**21st** [1] - 39:5
**25** [1] - 1:18
**25-19-102** [1] - 11:5
**26** [1] - 53:2
**28** [1] - 87:6
**29th** [1] - 87:12

# 3

**3-year-old** [1] - 27:1
**327** [1] - 72:23

**35** [1] - 1:23
**3706** [1] - 2:18

# 4

**42** [1] - 7:16
**436-4888** [1] - 2:5
**4400** [1] - 2:4
**46** [1] - 64:14
**464-9828** [1] - 2:19
**479** [2] - 2:15, 2:19
**479-437-2007** [1] - 2:9
**479-521-7000** [1] - 2:8
**48** [1] - 14:13

# 5

**50** [11] - 10:14, 10:23, 11:15, 11:18, 13:19, 26:17, 26:19, 27:5, 32:12, 35:12, 35:20
**500** [1] - 3:4
**501** [1] - 2:24
**501/371-9999** [1] - 3:5
**54** [2] - 15:1, 49:24
**555** [1] - 2:4
**56** [4] - 43:19, 44:21, 67:16, 83:10
**57** [1] - 64:14
**5:17-CV-5089** [1] - 4:11
**5:17-cv-5089-TLB** [1] - 1:5

# 6

**687** [1] - 2:14

# 7

**72201** [1] - 3:4
**72222-7250** [1] - 2:24
**72701** [1] - 1:24
**72703** [1] - 2:8
**72758** [1] - 2:19
**72764** [1] - 2:15
**751-6464** [1] - 2:15
**753** [1] - 87:6

# 8

**8** [1] - 59:2
**868-2500** [1] - 2:24

# 9

**9** [1] - 51:7
**9-27-309** [3] - 48:16, 48:23, 48:25
**90071** [1] - 2:4

# A

**a.m** [1] - 1:18
**able** [5] - 23:20, 27:9, 34:16, 34:20, 69:16
**above-entitled** [1] - 87:9
**absence** [1] - 84:10
**absolutely** [2] - 72:10, 86:5
**absurd** [1] - 29:13
**absurdity** [1] - 49:21
**Abtin** [1] - 14:4
**abuse** [5] - 17:19, 17:24, 41:9, 65:14, 82:22
**abused** [1] - 6:19
**acceptable** [2] - 8:15, 63:24
**accepting** [1] - 68:3
**accommodate** [1] - 75:7
**accomplishment** [2] - 10:15, 10:16
**according** [2] - 45:10, 81:10
**accurately** [1] - 63:3
**acknowledge** [1] - 84:16
**acquiring** [1] - 21:19
**Act** [39] - 7:20, 10:12, 10:13, 12:25, 13:17, 25:10, 25:18, 29:9, 29:12, 29:22, 30:12, 31:2, 31:3, 31:15, 31:16, 32:10, 35:10, 48:5, 48:23, 48:24, 49:20, 55:20, 55:25, 56:2, 56:17, 65:7, 65:9, 65:10, 65:13, 65:21, 66:2, 66:3, 66:6, 66:11, 66:19, 67:5, 67:6, 68:17, 68:19
**act** [14] - 11:15, 11:22, 25:19, 29:14, 29:15, 29:23, 30:4, 31:23, 49:15, 65:11, 65:12, 71:5, 71:6, 78:1
**acted** [2] - 33:4, 35:17
**acting** [1] - 81:23
**action** [4] - 5:25, 26:7, 47:10, 76:2
**actionable** [1] - 17:18
**actions** [4] - 6:22, 7:15, 20:6, 83:5
**activities** [1] - 31:19
**activity** [1] - 11:11
**actor** [3] - 21:11, 21:12, 73:13

**acts** [5] - 71:13, 72:2, 72:3, 74:1, 74:2
**actual** [2] - 42:25, 79:24
**add** [5] - 48:16, 51:23, 63:12, 82:12, 83:23
**added** [1] - 48:18
**addition** [1] - 62:19
**additional** [2] - 75:7, 75:9
**address** [6] - 8:11, 8:12, 8:13, 74:10, 74:15, 74:18
**addressed** [5] - 53:15, 54:6, 61:25, 62:1, 83:25
**addresses** [1] - 83:20
**addressing** [1] - 85:1
**adjourned** [2] - 86:15, 86:16
**administrative** [2] - 30:13, 65:12
**administratively** [2] - 30:19, 31:2
**admission** [1] - 82:13
**admissions** [1] - 76:16
**adopted** [1] - 10:14
**adult** [2] - 28:19, 48:17
**advance** [1] - 13:12
**advised** [1] - 11:9
**advisement** [1] - 85:11
**affairs** [1] - 59:5
**afforded** [3] - 74:7, 78:15, 80:15
**AG** [2] - 28:7, 29:2
**AG's** [1] - 10:19
**age** [8] - 5:13, 37:16, 37:19, 38:24, 40:8, 50:8, 57:14, 59:25
**agencies** [5] - 19:15, 65:15, 65:21, 65:24, 66:18
**agency** [6] - 21:22, 22:9, 31:12, 40:22, 44:12, 50:12
**agents** [1] - 34:3
**ages** [5] - 14:25, 20:11, 25:13, 27:22, 32:13
**ago** [6] - 10:14, 11:15, 18:11, 21:6, 21:11, 53:9
**agree** [4] - 42:11, 70:3, 70:7, 84:1
**agreement** [1] - 65:22
**aimed** [1] - 46:9
**Alexander** [1] - 18:9

**allegation** [33] - 5:17, 14:20, 16:8, 18:25, 19:7, 19:10, 20:10, 20:25, 21:1, 21:7, 22:18, 23:9, 23:25, 27:13, 27:22, 32:15, 34:18, 39:12, 39:24, 39:25, 41:6, 41:10, 41:14, 42:17, 42:19, 46:19, 50:17, 51:17, 51:21, 64:22, 66:24, 83:7
**allegations** [33] - 5:16, 14:21, 14:24, 17:6, 18:16, 19:9, 19:23, 20:2, 20:20, 27:10, 27:19, 27:20, 28:1, 32:18, 32:20, 33:2, 33:3, 33:6, 33:10, 40:3, 45:17, 47:12, 47:13, 48:1, 51:20, 57:2, 62:11, 64:9, 66:15, 73:9, 73:10, 78:6
**allege** [13] - 33:21, 37:11, 37:12, 38:23, 41:4, 46:14, 46:16, 62:15, 62:19, 64:2, 82:4, 82:7, 84:12
**alleged** [22] - 6:25, 14:1, 15:7, 16:11, 19:21, 23:14, 23:20, 25:13, 28:12, 36:6, 42:2, 46:5, 46:6, 46:15, 55:5, 79:9, 79:17, 81:5, 82:2, 82:6, 84:2, 84:17
**allegedly** [3] - 16:6, 37:8, 81:13
**alleges** [2] - 22:1, 33:22
**alleging** [1] - 17:17
**allow** [2] - 44:5, 44:23
**allowed** [1] - 57:9
**alluded** [1] - 18:11
**almost** [3] - 57:20, 57:24, 83:10
**alone** [1] - 9:2
**amend** [2] - 44:24, 48:15
**amended** [3] - 48:8, 48:9, 48:18
**Amendment** [2] - 7:12, 7:13
**AMERICA** [1] - 1:14
**AMI** [1] - 76:4
**amount** [1] - 81:16
**amounts** [1] - 17:23
**ample** [1] - 15:17
**analyses** [1] - 72:21

**analysis** [11] - 33:18, 70:15, 71:7, 72:10, 72:13, 72:20, 73:12, 75:5, 75:8, 75:9
**analyzed** [1] - 52:1
**Angeles** [2] - 2:4, 53:3
**animus** [1] - 46:23
**Annotated** [1] - 55:21
**anonymously** [1] - 76:18
**apart** [1] - 43:14
**apologize** [5] - 35:2, 68:21, 69:13, 70:10, 73:4
**apology** [1] - 82:14
**App** [1] - 72:23
**appalled** [2] - 54:10
**appeal** [3] - 74:10, 85:17, 85:25
**Appeals** [3] - 16:24, 72:24, 73:8
**appear** [5] - 33:10, 52:25, 53:25, 56:15, 72:7
**APPEARANCES** [2] - 2:1, 3:1
**APPEARING** [2] - 2:21, 3:2
**appearing** [1] - 4:22
**applicable** [1] - 28:9
**applied** [2] - 71:8, 75:18
**applies** [5] - 70:17, 71:16, 72:11, 72:16, 81:12
**apply** [7] - 28:21, 70:8, 70:13, 71:13, 75:21, 78:19, 78:20
**applying** [1] - 75:3
**appointee** [1] - 53:9
**appreciate** [2] - 9:21, 68:6
**AR** [4] - 2:8, 2:15, 2:19, 2:24
**area** [1] - 71:10
**areas** [2] - 51:6, 51:7
**argue** [1] - 4:23
**arguing** [5] - 8:6, 8:7, 8:22, 9:4, 74:5
**argument** [21] - 15:5, 23:13, 32:1, 35:3, 36:25, 51:24, 53:19, 54:5, 56:23, 57:25, 58:12, 58:13, 61:7, 62:14, 71:2, 74:15, 74:16, 74:18, 75:13, 78:21, 82:22
**arguments** [8] - 36:15, 58:2, 58:14, 63:25, 81:2, 82:1, 83:11,

83:25
**Ark** [1] - 72:23
**Arkansas** [73] - 1:24, 3:4, 7:17, 7:20, 10:12, 10:13, 10:17, 10:18, 10:19, 10:20, 10:22, 10:25, 11:1, 11:3, 12:2, 12:6, 12:21, 12:25, 13:2, 13:7, 16:12, 16:13, 21:4, 25:10, 25:18, 28:9, 29:1, 29:18, 35:20, 38:1, 38:6, 38:17, 47:20, 48:21, 49:18, 51:25, 52:15, 52:18, 52:19, 55:21, 65:9, 65:10, 65:12, 65:16, 66:14, 66:16, 66:21, 69:23, 70:8, 70:12, 70:16, 70:19, 71:9, 72:24, 72:25, 73:2, 73:8, 73:24, 75:11, 75:18, 75:20, 75:23, 77:22, 79:5, 79:23, 80:24, 82:4, 83:3, 84:21, 84:22, 87:5
**ARKANSAS** [5] - 1:1, 1:7, 1:7, 1:19, 2:11
**arrest** [4] - 28:10, 28:13, 48:6, 71:4
**arrested** [1] - 28:15
**arrive** [1] - 31:17
**article** [5] - 14:18, 14:19, 14:20, 23:25, 24:4
**aspects** [2] - 4:17, 59:5
**assault** [13] - 5:16, 54:14, 54:17, 56:5, 56:7, 57:3, 60:14, 60:19, 60:20, 61:12, 81:4, 81:7, 85:5
**assaults** [4] - 54:20, 59:16, 59:17, 82:17
**Assembly** [2] - 11:1, 22:14
**assert** [2] - 39:1, 80:6
**asserted** [1] - 79:4
**assertion** [2] - 80:8, 80:11
**associated** [1] - 13:16
**assume** [1] - 30:7
**assuming** [1] - 42:10
**assumption** [1] - 9:5
**astray** [1] - 55:18
**attach** [2] - 27:24, 44:8
**attached** [1] - 34:1
**attaches** [1] - 43:1

**attempted** [2] - 20:5, 33:4
**attorney** [11] - 5:7, 6:24, 7:5, 7:9, 10:17, 14:4, 17:2, 17:4, 25:15, 77:10
**attorney's** [1] - 77:6
**Attorneys** [1] - 2:13
**attorneys** [1] - 6:8
**attorneys'** [1] - 13:17
**authorities** [5] - 5:15, 25:19, 41:24
**authority** [8] - 10:19, 25:6, 64:8, 64:12, 66:18, 69:7, 69:16, 81:23
**authorize** [2] - 66:4, 66:8
**authorized** [1] - 29:19
**Autry** [2] - 72:15, 72:17
**available** [1] - 18:1
**Ave** [1] - 2:14
**Avenue** [1] - 3:4
**aware** [1] - 77:19
**awareness** [1] - 26:22

### B

**background** [1] - 10:5
**bad** [1] - 82:23
**barred** [1] - 67:19
**based** [6] - 9:16, 28:1, 38:16, 74:19, 75:4, 79:2
**bases** [1] - 36:4
**basis** [5] - 43:14, 46:18, 47:2, 52:25, 84:12
**basketball** [1] - 52:19
**Battle** [11] - 71:17, 72:8, 72:9, 72:10, 72:19, 73:6, 75:6, 75:17, 75:20, 75:22
**Bauer** [9] - 4:8, 4:10, 5:6, 5:8, 6:7, 6:17, 36:22, 37:12, 39:10
**BAUER** [7] - 1:12, 1:12, 1:13, 1:13, 1:14, 3:2
**beautiful** [2] - 54:16, 58:9
**BEFORE** [1] - 1:18
**began** [2] - 10:7, 10:8
**begin** [3] - 10:10, 13:22, 63:23
**begins** [1] - 11:6
**behalf** [14] - 4:22, 5:8, 5:23, 6:9, 8:6, 8:7, 8:23, 9:4, 29:17,

36:14, 49:6, 49:18, 63:21, 83:7
**BEHALF** [1] - 3:2
**belief** [1] - 25:3
**benefit** [2] - 11:24, 11:25
**best** [3] - 70:16, 77:24
**between** [14] - 6:11, 19:15, 24:17, 25:19, 26:15, 31:5, 35:9, 35:10, 36:16, 39:2, 65:23, 69:3, 83:24
**beyond** [3] - 38:18, 58:4, 68:3
**big** [1] - 52:18
**bit** [5] - 4:4, 19:14, 19:18, 68:3, 69:22
**blanche** [1] - 21:23
**BLEDSOE** [23] - 8:24, 52:13, 52:17, 55:2, 55:5, 55:17, 55:19, 56:14, 58:23, 59:20, 60:9, 61:25, 62:13, 63:11, 63:13, 82:11, 83:1, 84:4, 84:7, 84:9, 84:19, 84:24, 85:9
**Bledsoe** [9] - 2:3, 4:24, 8:22, 52:6, 52:12, 82:10, 82:20, 85:8, 86:12
**Bob** [4] - 14:9, 34:8, 34:9, 34:11
**bogged** [1] - 68:22
**boil** [1] - 39:24
**boils** [1] - 64:25
**book** [1] - 10:20
**bottom** [1] - 6:11
**bound** [1] - 68:4
**Box** [2] - 2:14, 2:23
**breach** [4] - 18:12, 18:19, 45:1, 59:9
**breached** [1] - 21:12
**breath** [1] - 81:19
**breathing** [1] - 15:13
**brief** [8] - 9:10, 18:8, 54:5, 59:1, 70:16, 72:8, 75:19, 77:2
**briefed** [1] - 82:11
**briefing** [12] - 6:2, 15:17, 36:19, 46:22, 56:25, 62:1, 62:2, 81:2, 81:8, 83:23, 83:24
**briefly** [3] - 48:4, 52:23, 75:17
**briefs** [4] - 9:10, 9:11, 16:16, 58:23
**bring** [4] - 29:8, 30:21, 30:22, 83:21

**bringing** [1] - 30:10
**brings** [3] - 27:14, 27:15, 38:22
**broad** [3] - 24:20, 25:1, 25:4
**broadcast** [1] - 54:17
**broadly** [2] - 55:22, 79:5
**BROOKS** [1] - 1:18
**brother** [5] - 6:1, 6:4, 6:20, 37:6, 57:23
**brought** [6] - 6:22, 7:15, 7:19, 7:25, 12:23, 30:12
**brutal** [2] - 17:19, 17:23
**burden** [2] - 39:18, 78:5
**Bush** [1] - 53:8
**business** [1] - 11:7

### C

**CA** [1] - 2:4
**CAC** [1] - 67:8
**California** [2] - 26:4, 53:19
**cannot** [4] - 17:16, 30:1, 60:12
**capacities** [6] - 1:9, 1:10, 1:11, 7:7, 10:1, 10:3
**capacity** [4] - 1:11, 7:9, 9:14, 36:12
**care** [1] - 81:12
**career** [1] - 53:3
**careless** [1] - 17:22
**cares** [1] - 86:14
**carry** [1] - 40:6
**carte** [1] - 21:22
**case** [96] - 4:2, 4:11, 4:12, 10:5, 10:11, 10:23, 11:17, 12:3, 12:9, 13:20, 13:22, 16:22, 16:24, 17:1, 17:11, 18:10, 19:12, 21:2, 21:10, 24:11, 24:16, 24:24, 25:1, 25:6, 25:8, 25:9, 25:17, 26:3, 26:4, 28:9, 28:13, 29:11, 32:7, 37:17, 37:22, 38:13, 39:23, 40:11, 43:15, 43:16, 44:12, 44:14, 45:4, 45:6, 45:9, 45:24, 46:21, 46:25, 47:1, 47:5, 47:23, 50:1, 50:7, 50:22, 51:9, 51:11, 51:12, 53:11, 53:13,

53:17, 53:18, 53:23,
54:9, 54:15, 54:18,
56:14, 62:8, 64:22,
70:22, 71:4, 71:5,
71:15, 71:17, 72:7,
72:9, 72:17, 72:18,
73:8, 73:16, 73:21,
74:13, 75:10, 76:25,
77:10, 77:18, 77:24,
78:17, 79:14, 79:23,
80:17, 85:1, 86:2
**CASE** [1] - 1:5
**cases** [18] - 25:20,
25:23, 43:18, 43:22,
43:24, 44:4, 46:21,
46:22, 46:23, 47:5,
47:20, 53:11, 70:18,
75:6, 75:18, 75:21,
77:22, 83:6
**Cate** [9] - 4:5, 6:23,
7:6, 9:25, 13:24,
20:3, 35:17, 55:6,
64:10
**CATE** [1] - 1:9
**category** [1] - 40:3
**caused** [2] - 63:4,
79:20
**cautioned** [1] - 74:22
**CCR** [2] - 1:22, 87:17
**celebrity** [3] - 27:7,
27:12, 34:22
**Central** [1] - 53:24
**central** [1] - 14:3
**certain** [10] - 6:13,
6:22, 55:15, 64:7,
64:11, 64:21, 65:4,
69:7, 69:15, 86:11
**certainly** [13] - 7:23,
13:11, 23:7, 29:5,
38:25, 41:4, 42:21,
51:12, 53:1, 55:15,
79:16, 79:22, 81:16
**CERTIFICATE** [1] -
87:1
**certify** [1] - 87:5
**chambers** [1] - 86:11
**championship** [1] -
52:21
**chance** [1] - 52:10
**chapter** [3] - 29:19,
48:7, 49:10
**characterizing** [1] -
32:23
**charge** [1] - 50:16
**charged** [3] - 65:16,
65:21, 81:6
**charitable** [1] - 56:15
**chief** [4] - 6:25, 10:1,
10:2
**Chief** [3] - 15:1, 55:6,

64:10
**child** [7] - 26:25, 30:6,
31:20, 41:8, 65:14,
69:1
**Child** [31] - 12:24,
29:9, 29:12, 30:12,
31:2, 31:3, 31:15,
31:16, 32:9, 35:10,
48:5, 48:22, 48:23,
55:20, 55:24, 56:17,
65:6, 65:9, 65:10,
65:12, 65:20, 66:1,
66:3, 66:6, 66:10,
66:19, 67:5, 67:6,
67:7, 68:17, 68:18
**child's** [1] - 31:8
**children** [7] - 29:20,
49:12, 56:1, 56:4,
56:5, 61:11
**Children** [6] - 31:5,
65:17, 66:13, 66:21,
66:25, 68:14
**choice** [1] - 38:21
**church** [1] - 76:17
**Circuit** [10] - 16:24,
17:11, 18:11, 21:10,
26:5, 43:23, 47:1,
62:25, 63:6, 76:25
**circuit** [2] - 46:25,
58:20
**circular** [2] - 50:11,
51:3
**circumstance** [1] -
48:10
**circumstances** [1] -
57:8
**cite** [6] - 24:25, 25:23,
29:2, 46:25, 47:6,
49:2
**cited** [10] - 43:23,
46:21, 46:22, 47:20,
51:12, 62:8, 72:8,
75:19, 77:2, 77:16
**cities** [1] - 72:6
**citing** [1] - 29:2
**CITY** [2] - 1:7, 2:11
**City** [29] - 4:5, 4:13,
4:20, 5:1, 6:6, 6:11,
6:23, 9:25, 12:11,
14:6, 14:16, 15:11,
17:10, 22:22, 22:23,
39:7, 54:10, 54:24,
57:6, 57:9, 61:7,
61:23, 62:15, 62:19,
64:9, 68:18, 69:1,
73:25, 83:16
**city** [9] - 6:23, 10:7,
21:11, 22:25, 26:1,
32:11, 36:18, 83:8
**city's** [3] - 30:24,

36:21
**City's** [2] - 58:25,
86:12
**civil** [1] - 74:1
**Civil** [1] - 7:20
**civilian** [2] - 66:25,
68:15
**civilians** [1] - 66:22
**ckolb@cgwg.com** [1]
- 3:5
**claim** [20] - 14:3, 16:2,
17:13, 17:16, 27:7,
35:8, 36:13, 39:1,
39:20, 40:4, 47:2,
47:4, 52:2, 64:3,
69:14, 70:4, 76:1,
77:4, 78:5, 82:3
**claimed** [1] - 65:3
**claims** [35] - 7:10,
7:11, 7:12, 7:17,
7:19, 7:23, 7:24,
7:25, 8:12, 8:14,
8:18, 8:20, 9:14,
13:24, 15:20, 36:5,
36:15, 39:2, 40:22,
51:16, 51:22, 52:1,
52:9, 58:6, 63:16,
64:1, 67:19, 70:4,
71:17, 71:25, 72:6,
72:17, 75:19
**clarity** [1] - 32:23
**clause** [4] - 49:2, 49:3,
50:3, 56:3
**clear** [10] - 11:22,
12:5, 14:25, 23:3,
31:14, 48:14, 51:25,
56:8, 69:9, 77:10
**clearly** [26] - 12:20,
13:6, 15:10, 15:24,
23:7, 24:10, 24:13,
24:21, 24:24, 25:5,
28:5, 29:6, 35:11,
35:12, 35:16, 40:5,
42:12, 45:3, 58:19,
61:19, 61:20, 79:7,
79:22
**Clinton** [1] - 3:4
**closed** [1] - 69:8
**cocounsel** [2] - 53:17,
84:25
**Code** [5] - 12:25, 28:9,
48:24, 55:21, 87:7
**code** [6] - 13:1, 28:8,
28:19, 28:21, 51:6,
51:7
**colleagues** [1] - 35:22
**collected** [3] - 29:16,
49:5, 49:17
**colors** [1] - 12:18
**combined** [1] - 21:17

**comments** [1] - 5:19
**commingled** [1] -
69:18
**commingles** [1] -
33:14
**committed** [8] - 54:20,
73:17, 73:18, 74:6,
74:9, 81:3, 81:10,
81:14
**committing** [2] -
54:13, 73:14
**community** [2] - 61:2,
61:4
**Company** [1] - 4:9
**COMPANY** [1] - 1:12
**compelling** [1] - 53:13
**compiled** [3] - 29:16,
49:5, 49:17
**complained** [2] -
51:19, 65:1
**complaint** [56] - 4:12,
12:24, 14:2, 14:13,
14:24, 15:1, 15:7,
16:8, 16:12, 17:6,
18:17, 18:24, 19:1,
19:9, 19:10, 19:24,
20:7, 20:10, 20:16,
21:7, 22:1, 23:14,
24:8, 27:19, 27:20,
27:25, 28:12, 28:14,
30:14, 33:11, 33:21,
33:22, 34:1, 34:6,
34:13, 36:18, 37:11,
39:6, 39:13, 41:4,
41:11, 41:17, 42:3,
42:18, 45:10, 58:7,
62:10, 62:14, 64:9,
64:15, 76:7, 78:6,
82:7, 83:20, 83:24,
84:17
**completely** [4] -
25:25, 30:8, 40:14,
70:17
**compliance** [1] -
33:16
**comply** [1] - 55:16
**complying** [1] - 60:4
**component** [2] - 24:5,
35:4
**comport** [1] - 17:20
**compulsion** [1] -
25:22
**concede** [5] - 41:17,
45:1, 70:12, 70:14,
81:19
**conceive** [1] - 59:14
**concern** [2] - 80:22,
81:17
**concerned** [1] - 80:23
**concerning** [4] -

54:20, 56:4, 57:2,
62:20
**concerns** [2] - 30:12,
81:22
**concessions** [1] -
36:19
**conclude** [1] - 86:10
**concludes** [1] - 35:21
**conclusion** [1] - 86:1
**conclusively** [1] -
45:23
**concurring** [2] -
74:20, 74:22
**conduct** [12] - 31:4,
54:10, 55:13, 56:12,
66:5, 66:8, 66:19,
77:21, 78:3, 83:12,
84:3, 84:14
**conducted** [1] - 66:20
**conducting** [3] - 31:8,
68:19, 69:2
**conference** [1] - 26:2
**Conference** [1] -
87:11
**confidential** [11] -
5:20, 16:3, 16:14,
20:24, 26:12, 40:15,
46:2, 46:8, 46:12,
61:12, 68:16
**confidentiality** [26] -
7:15, 16:5, 16:9,
16:11, 18:13, 18:22,
19:2, 19:5, 19:20,
21:12, 21:15, 21:19,
23:10, 40:18, 41:2,
41:19, 42:7, 45:2,
45:9, 46:2, 49:1,
54:22, 59:10, 62:18,
68:16, 68:25
**confines** [1] - 32:9
**confirms** [1] - 62:8
**conformance** [1] -
87:10
**conscience** [2] -
17:16, 17:25
**conscience-
shocking** [1] - 17:16
**consecutive** [1] - 6:15
**consequence** [3] -
5:21, 7:14, 84:5
**consideration** [1] -
45:7
**considered** [1] - 10:15
**consistently** [2] -
73:24, 74:14
**consists** [1] - 16:2
**constitute** [1] - 58:20
**constitutes** [2] -
50:18, 80:6
**Constitution** [2] -

7:18, 38:20

**constitutional** [28] - 7:10, 7:11, 7:12, 7:24, 8:17, 9:14, 13:24, 15:23, 16:2, 20:15, 23:6, 24:7, 25:8, 36:5, 36:15, 37:19, 40:4, 40:22, 42:13, 43:2, 45:2, 51:16, 51:22, 52:1, 58:19, 58:21, 59:6, 63:5

**constructive** [5] - 40:21, 43:11, 43:12, 44:5, 44:12

**construe** [3] - 47:18, 58:18

**construed** [3] - 35:14, 38:2

**consult** [2] - 20:4, 33:4

**consultation** [1] - 62:21

**cont'd** [1] - 3:1

**contained** [5] - 14:20, 19:24, 24:1, 27:19, 27:20

**contains** [1] - 19:10

**contemporaneous** [1] - 23:23

**contend** [3] - 7:13, 58:16, 67:23

**contending** [1] - 67:18

**contested** [1] - 81:20

**context** [6] - 22:7, 24:16, 24:23, 25:9, 46:8, 47:22

**continue** [1] - 75:20

**continues** [1] - 14:20

**contrary** [2] - 52:3, 73:5

**conversely** [1] - 71:25

**conversion** [1] - 73:9

**convicted** [1] - 81:6

**conviction** [1] - 50:16

**convince** [1] - 85:20

**cooperation** [2] - 66:4, 66:7

**Coppola** [1] - 2:6

**core** [3] - 12:9, 44:4, 48:1

**corners** [1] - 51:6

**corporations** [1] - 71:20

**correct** [6] - 9:7, 9:8, 55:16, 70:25, 85:18, 87:7

**correctly** [1] - 21:1

**coulda/woulda/ shoulda** [1] - 43:3

**counsel** [7] - 53:16, 53:21, 54:1, 55:19, 81:9, 86:11

**counties** [2] - 49:24, 71:20

**Counting'** [1] - 14:18

**countless** [1] - 32:7

**country** [1] - 10:23

**counts** [2] - 8:2, 80:4

**COUNTY** [2] - 1:7, 2:21

**County** [34] - 4:6, 4:20, 5:3, 5:22, 5:24, 6:6, 6:12, 7:3, 9:4, 14:7, 20:17, 21:3, 23:14, 23:15, 36:7, 36:10, 37:9, 38:24, 39:8, 39:14, 40:7, 41:7, 41:11, 45:19, 54:11, 54:25, 57:6, 57:11, 57:13, 60:23, 61:7, 61:24, 62:15, 62:20

**county** [13] - 4:14, 7:5, 14:17, 36:13, 36:17, 44:10, 51:15, 51:22, 55:19, 59:1, 60:3, 79:20, 83:8

**county's** [4] - 36:18, 36:20, 41:1, 51:17

**County's** [3] - 37:2, 50:7, 86:13

**couple** [1] - 53:9

**course** [11] - 5:17, 18:16, 36:13, 37:10, 37:17, 37:21, 40:10, 41:17, 45:9, 45:17, 51:5

**Court's** [75] - 1:23, 4:2, 4:16, 4:18, 5:11, 6:1, 8:10, 9:9, 9:22, 10:4, 12:2, 12:16, 15:18, 16:22, 16:24, 18:4, 18:16, 24:7, 24:14, 24:15, 24:20, 24:22, 32:18, 32:21, 33:7, 33:17, 33:20, 36:11, 39:21, 44:23, 47:11, 49:22, 52:23, 53:15, 58:11, 58:18, 63:24, 68:4, 68:12, 70:24, 71:1, 71:3, 71:10, 72:9, 72:14, 72:19, 72:24, 73:1, 73:3, 73:8, 73:10, 73:16, 73:24, 74:4, 74:5, 74:8, 74:22, 75:11, 75:18, 75:21, 77:17, 78:16, 78:22, 82:25, 83:3, 84:22, 85:10,

85:14, 85:15, 85:16, 85:20, 85:22, 87:3, 87:4, 87:17

**COURT** [96] - 1:1, 4:1, 5:10, 8:16, 8:25, 9:3, 9:9, 9:19, 12:8, 13:10, 18:9, 19:4, 20:19, 21:6, 21:17, 22:19, 22:22, 23:18, 26:9, 27:15, 30:9, 31:7, 32:17, 33:17, 34:23, 35:23, 36:3, 39:4, 40:15, 40:18, 40:25, 41:7, 41:13, 41:16, 41:23, 42:1, 42:5, 43:8, 43:12, 43:19, 44:19, 44:25, 45:25, 52:4, 52:8, 52:12, 52:16, 54:24, 55:3, 55:15, 55:18, 56:10, 58:16, 59:18, 60:3, 61:22, 62:10, 63:9, 63:12, 63:14, 63:19, 67:10, 67:12, 67:22, 68:2, 68:8, 68:23, 69:25, 70:3, 70:7, 70:12, 70:20, 70:22, 71:9, 71:12, 73:15, 73:20, 73:23, 75:12, 75:15, 75:25, 76:6, 77:14, 78:7, 78:9, 82:9, 82:20, 84:1, 84:5, 84:8, 84:15, 84:20, 85:7, 85:10, 85:21, 86:9

**court** [6] - 5:24, 12:2, 31:11, 43:6, 76:25, 83:2

**Court's** [4] - 39:22, 44:16, 75:5, 77:19

**courtroom** [3] - 52:14, 53:1, 82:21

**Courts** [3] - 12:4, 15:20, 80:18

**courts** [2] - 36:2, 72:20

**coverage** [1] - 84:11

**covered** [1] - 71:22

**covering** [1] - 61:13

**create** [1] - 29:4

**created** [4] - 29:16, 49:5, 49:17, 78:15

**creating** [1] - 29:5

**Crimes** [6] - 31:5, 65:17, 66:13, 66:21, 66:25, 68:14

**crimes** [3] - 26:24, 30:5

**criminal** [36] - 5:25, 13:1, 13:16, 17:2,

17:5, 17:6, 19:17, 28:16, 28:22, 30:24, 31:1, 32:8, 35:19, 38:3, 38:7, 38:8, 38:9, 38:19, 45:11, 45:13, 45:14, 46:9, 65:11, 66:1, 66:2, 66:5, 66:23, 67:4, 67:8, 68:20, 69:2, 69:5, 69:8, 81:3

**Cross** [1] - 3:3

**CRR** [2] - 1:22, 87:17

**culpability** [4] - 16:18, 16:21, 17:12, 35:7

**current** [1] - 84:16

**custom** [3] - 51:15, 51:17, 63:8

**customs** [2] - 61:23, 63:4

**Cynthia** [2] - 3:3, 5:7

## D

**damages** [1] - 71:21

**Dana** [3] - 1:22, 87:3, 87:17

**Daniels** [6] - 2:6, 4:23, 53:16, 53:17, 53:21, 86:12

**Darrell** [1] - 14:11

**data** [4] - 29:15, 29:24, 49:4, 49:16

**Dated** [1] - 87:12

**daughter** [1] - 54:12

**days** [2] - 6:15, 38:14

**deadline** [3] - 83:17, 83:18, 83:19

**deal** [2] - 48:9, 51:4

**death** [1] - 77:23

**decency** [1] - 17:21

**decide** [2] - 71:1, 71:3

**decided** [2] - 16:23, 74:19

**decision** [3] - 18:3, 31:18, 72:15, 72:24, 73:5, 73:6, 77:17, 85:24, 86:8

**decisionmakers** [1] - 7:1

**decisions** [1] - 11:10

**deemed** [2] - 26:11, 39:21

**defendant** [6] - 16:9, 18:5, 18:21, 19:1, 36:7, 36:12

**defendant's** [1] - 12:17

**DEFENDANTS** [2] - 2:11, 2:21

**defendants** [41] -

1:16, 4:4, 4:6, 4:8, 4:10, 4:13, 4:14, 4:20, 4:21, 5:3, 5:7, 6:12, 6:18, 7:4, 7:6, 8:1, 8:2, 8:8, 9:12, 16:21, 17:3, 17:5, 17:7, 20:2, 20:11, 24:6, 24:18, 24:21, 25:4, 36:23, 37:12, 38:24, 39:10, 39:14, 54:25, 58:16, 59:18, 63:22, 64:5, 64:17, 65:1

**defendants'** [6] - 16:16, 23:12, 28:20, 35:6, 39:11, 85:11

**defense** [8] - 24:25, 36:4, 53:3, 53:5, 53:12, 54:6, 78:24, 86:13

**defenses** [2] - 18:15

**deferring** [1] - 53:21

**definition** [1] - 28:18

**degradation** [1] - 59:8

**Deitsch** [1] - 70:22

**deliberate** [10] - 18:2, 18:3, 20:1, 33:6, 34:21, 43:7, 43:17, 43:21, 43:22, 55:14

**deliberately** [2] - 18:6, 20:8

**delighted** [1] - 52:14

**delineate** [1] - 40:5

**delve** [1] - 36:2

**democratic** [1] - 11:7

**denied** [3] - 7:13, 72:25, 75:11

**deny** [1] - 19:4

**Department** [8] - 21:3, 29:17, 30:1, 31:19, 49:9, 49:15, 65:17, 66:16

**department** [5] - 29:18, 30:7, 30:23, 30:24, 31:21

**departments** [1] - 62:22

**deprivation** [2] - 43:2, 63:5

**describe** [1] - 63:3

**despicable** [1] - 57:23

**despite** [2] - 45:16, 54:11

**detail** [1] - 6:10

**detailed** [1] - 58:7

**details** [9] - 24:1, 24:4, 54:17, 59:17, 61:11, 82:16, 82:17, 85:4, 85:6

**detective** [1] - 21:18

**detention** [3] - 28:11, 28:16, 48:6
**determine** [4] - 8:5, 46:1, 65:24, 67:2
**determined** [1] - 47:11
**developed** [1] - 30:17
**development** [1] - 12:9
**DHS** [12] - 19:19, 21:4, 30:7, 30:9, 30:17, 30:18, 30:19, 31:5, 31:7, 31:15, 31:19, 31:24
**difference** [7] - 7:8, 22:19, 22:20, 22:24, 44:20, 44:22, 60:22
**different** [15] - 8:3, 19:15, 19:18, 21:11, 21:22, 31:4, 44:10, 47:7, 47:9, 47:10, 60:7, 61:8, 63:25, 66:12, 74:19
**difficult** [1] - 61:14
**Dillard** [1] - 4:3
**DILLARD** [1] - 1:3
**dim** [1] - 84:22
**dimension** [1] - 58:21
**direction** [1] - 48:14
**directly** [5] - 6:8, 28:24, 50:13, 60:16, 61:18
**disagree** [1] - 52:9
**disagreement** [1] - 24:17
**disclosal** [1] - 25:24
**disclose** [14] - 25:22, 38:10, 38:16, 38:18, 38:19, 46:3, 47:20, 50:12, 55:1, 59:15, 59:17, 59:18, 59:24, 83:17
**disclosed** [26] - 12:11, 20:24, 25:14, 37:8, 38:10, 38:24, 39:7, 39:8, 40:6, 40:9, 40:13, 46:7, 50:23, 50:25, 51:10, 54:22, 59:7, 59:21, 79:19, 79:20, 80:5, 80:12, 83:15, 83:16
**discloses** [1] - 26:5
**disclosing** [4] - 23:11, 37:24, 47:9, 50:6
**disclosure** [37] - 25:24, 29:21, 32:6, 36:17, 36:21, 36:22, 37:2, 37:25, 38:15, 39:11, 39:14, 39:23, 40:1, 45:21, 47:21, 49:19, 50:19, 51:2,

54:19, 56:2, 57:17, 61:16, 61:21, 62:24, 76:1, 76:9, 77:3, 77:10, 77:12, 79:12, 80:3, 80:15, 83:13, 85:4
**disclosures** [4] - 48:2, 51:14, 57:18, 59:15
**discovery** [6] - 46:1, 46:15, 55:11, 62:4, 62:8, 67:16
**discretionary** [1] - 26:1
**discussed** [1] - 35:4
**discusses** [1] - 77:1
**discussion** [1] - 12:18
**dismiss** [11] - 4:14, 9:13, 9:23, 14:1, 36:20, 37:4, 39:20, 44:17, 58:3, 62:3, 63:8
**dismissal** [1] - 58:4
**dismissed** [2] - 47:2, 64:3
**disparate** [1] - 51:7
**disregarded** [3] - 18:6, 20:9, 44:3
**dissemination** [1] - 59:3
**dissent** [2] - 73:1, 73:2
**dissenting** [1] - 73:4
**distinction** [4] - 36:16, 39:2, 60:10, 60:21
**District** [7] - 16:23, 26:4, 53:25, 63:1, 77:18, 87:4, 87:5
**DISTRICT** [2] - 1:1, 1:1
**divide** [1] - 8:17
**divided** [1] - 9:16
**division** [5] - 31:6, 65:17, 66:14, 66:22, 68:14
**document** [9] - 25:22, 29:24, 33:8, 34:8, 49:7, 56:10, 56:16, 56:17, 56:21
**documents** [5] - 26:19, 29:16, 34:14, 49:5, 49:17
**Doe** [1] - 63:1
**DOES** [1] - 1:15
**dog** [1] - 9:6
**domain** [1] - 76:21
**done** [6] - 26:2, 26:20, 30:17, 38:6, 61:19, 66:22
**doubt** [1] - 58:5
**down** [6] - 30:5, 39:25, 59:12, 64:25, 68:22,

73:23
**Dr** [1] - 2:7
**draw** [1] - 18:17
**drawn** [1] - 32:19
**due** [7] - 6:2, 7:13, 7:18, 14:14, 14:16, 17:17, 86:6
**DUGGAR** [1] - 1:3
**Duggar** [15] - 4:3, 14:9, 28:15, 28:17, 34:10, 34:11, 34:12, 57:1, 57:16, 59:24, 61:4
**Duggar's** [1] - 34:8
**Duggars** [1] - 61:9
**during** [1] - 41:17
**duties** [2] - 38:5, 55:16
**duty** [2] - 54:25, 81:24

# E

**e-mail** [1] - 39:8
**e-mails** [1] - 55:8
**early** [1] - 52:20
**easier** [1] - 49:13
**easily** [3] - 78:17, 78:18, 78:20
**East** [1] - 1:23
**Eastern** [1] - 16:23
**echo** [1] - 37:24
**Edmark** [1] - 12:3
**effect** [2] - 42:21, 70:23
**effectively** [3] - 4:17, 57:7, 58:1
**effort** [1] - 56:19
**egregious** [1] - 59:8
**EICHMANN** [20] - 8:9, 9:17, 12:17, 13:11, 18:23, 19:7, 20:25, 21:14, 21:25, 22:20, 23:1, 23:19, 26:14, 27:18, 30:11, 31:13, 33:1, 33:20, 35:1, 36:7
**Eichmann** [9] - 2:12, 5:2, 8:6, 9:11, 12:8, 18:9, 37:24, 40:19, 85:13
**eight** [1] - 79:12
**Eighth** [8] - 16:24, 17:11, 18:10, 21:10, 43:23, 62:25, 63:6, 76:25
**either** [8] - 6:7, 15:21, 20:3, 30:3, 38:13, 59:7, 62:4, 76:3
**electors** [1] - 11:9
**element** [3] - 65:3,

69:17, 79:11
**elements** [4] - 64:5, 76:2, 76:10, 85:6
**embarrassing** [1] - 57:19
**Emma** [1] - 2:14
**employed** [4] - 22:23, 43:13, 45:20, 60:3
**employee** [3] - 8:1, 16:10, 22:25
**employees** [4] - 6:22, 41:8, 41:11, 73:25
**enacted** [1] - 11:24
**encourages** [2] - 66:3, 66:7
**end** [1] - 35:2
**ended** [1] - 17:9
**ends** [1] - 56:1
**enforcement** [11] - 5:15, 7:4, 21:22, 50:11, 66:4, 66:5, 66:7, 66:8, 67:1, 67:2, 67:8
**engage** [1] - 33:18
**entered** [1] - 65:23
**entire** [5] - 12:18, 31:24, 53:3, 56:16
**entirely** [2] - 30:17, 47:6
**entirety** [1] - 56:10
**entities** [5] - 6:7, 29:25, 40:1, 49:8, 65:15
**entitle** [2] - 58:6, 58:8
**entitled** [4] - 37:19, 45:25, 69:19, 87:9
**entity** [4] - 29:18, 43:14, 49:10, 80:14
**Ernest** [4] - 4:5, 6:23, 9:25, 64:10
**ERNEST** [1] - 1:9
**err** [1] - 32:5
**error** [1] - 32:25
**essentially** [1] - 82:1
**establish** [10] - 12:19, 15:7, 16:17, 16:20, 17:13, 20:6, 28:2, 35:8, 44:13, 44:14
**established** [29] - 12:4, 12:20, 13:7, 15:10, 15:24, 18:25, 21:8, 23:3, 23:8, 24:10, 24:13, 24:21, 24:25, 25:5, 27:1, 28:5, 28:12, 29:6, 35:11, 35:12, 35:16, 42:12, 42:13, 45:3, 58:19, 61:20, 79:8, 79:22
**establishes** [2] - 25:7,

45:23
**establishing** [2] - 11:14, 78:5
**establishment** [3] - 23:6, 25:1, 29:6
**evaluation** [1] - 15:20
**evaporates** [1] - 40:14
**evidence** [1] - 5:21
**eviscerates** [1] - 55:22
**exactly** [2] - 52:1, 59:12
**example** [2] - 14:25, 43:22
**except** [3] - 35:3, 50:19, 71:22
**exception** [2] - 29:1, 32:3
**exceptions** [8] - 12:5, 12:7, 12:23, 22:13, 26:16, 26:18, 35:13, 47:19
**excessive** [1] - 17:23
**excuse** [10] - 20:19, 24:14, 28:7, 64:16, 65:7, 67:7, 69:12, 74:25, 76:21
**exempt** [6] - 13:14, 29:25, 30:2, 30:8, 31:24, 33:14
**exemption** [5] - 29:4, 29:5, 31:23, 32:5, 50:24
**exemptions** [1] - 38:2
**exempts** [1] - 61:15
**exist** [1] - 18:18
**existence** [1] - 63:7
**exists** [1] - 15:13
**expect** [1] - 19:21
**expectation** [3] - 26:10, 26:13, 27:6
**expeditious** [1] - 86:8
**expiration** [1] - 6:3
**explained** [1] - 56:25
**explicit** [1] - 28:25
**exposure** [1] - 36:18
**extend** [2] - 83:4, 83:5
**extends** [1] - 59:4
**extension** [1] - 63:10
**extensively** [1] - 77:2
**extent** [20] - 26:14, 26:18, 31:7, 32:22, 32:24, 37:15, 40:7, 46:1, 50:19, 58:17, 67:18, 67:22, 68:11, 68:21, 71:22, 75:7, 84:9, 85:14, 85:16, 85:22
**extreme** [2] - 21:24, 78:2
**extremely** [1] - 58:7

**eye** [1] - 45:13

## F

**face** [3] - 38:18, 38:19, 49:22
**faced** [2] - 38:12, 58:15
**fact** [23] - 16:10, 22:20, 22:22, 27:11, 33:2, 33:12, 33:22, 34:7, 34:16, 35:11, 37:3, 37:18, 43:15, 44:14, 50:17, 60:1, 64:16, 69:18, 76:2, 77:1, 80:17, 81:9, 81:21
**factor** [3] - 45:8, 45:22, 76:10
**factors** [1] - 45:6
**facts** [25] - 14:1, 14:2, 15:6, 16:18, 18:17, 18:24, 19:13, 20:16, 23:13, 26:25, 27:2, 28:12, 58:5, 58:8, 58:10, 58:17, 58:20, 63:3, 64:2, 68:3, 76:19, 76:21, 77:13, 80:4, 85:3
**factual** [2] - 12:9, 18:15
**fail** [1] - 38:9
**failed** [6] - 16:17, 20:4, 33:4, 62:20, 64:2, 78:4
**fails** [3] - 33:21, 77:13, 80:4
**failure** [1] - 16:20
**fair** [2] - 17:20, 17:21
**fairly** [1] - 51:25
**faith** [1] - 47:17
**fall** [4] - 31:1, 32:9, 32:15, 84:10
**falls** [2] - 31:15, 32:14
**false** [3] - 56:25, 71:4
**families** [2] - 29:21, 49:12
**family** [7] - 5:16, 5:25, 56:20, 61:5, 62:21, 76:15, 76:16
**Family** [1] - 31:10
**famous** [2] - 61:3
**fan** [3] - 27:7, 27:8, 52:19
**far** [6] - 9:5, 20:10, 24:9, 28:3, 80:1, 83:11
**fatal** [1] - 32:25
**favor** [1] - 44:17
**favorable** [1] - 32:20

**favorably** [1] - 12:1
**Fax** [1] - 2:9
**FAYETTEVILLE** [1] - 1:19
**Fayetteville** [5] - 1:24, 2:8, 12:2, 52:18, 77:18
**federal** [4] - 7:11, 52:2, 53:8
**Federal** [3] - 1:23, 87:3, 87:17
**fees** [1] - 13:18
**felony** [1] - 73:10
**felt** [1] - 81:1
**females** [1] - 6:1
**few** [7] - 10:5, 38:4, 38:5, 54:8, 54:9, 63:25, 78:12
**figure** [5] - 50:8, 56:21, 59:22, 59:25, 61:15
**figure's** [1] - 37:19
**figures** [1] - 80:2
**file** [4] - 5:23, 17:4, 32:8, 32:10
**filed** [3] - 4:12, 4:14, 4:19
**files** [3] - 14:8, 16:25, 46:1
**filing** [1] - 31:9
**final** [1] - 51:23
**fine** [2] - 8:16, 83:22
**FINS** [3] - 5:23, 30:10, 30:11
**Firm** [1] - 2:18
**firm** [5] - 53:4, 53:9, 53:10, 53:22, 55:7
**firms** [1] - 53:18
**first** [15] - 8:18, 9:13, 9:15, 36:25, 37:9, 42:15, 48:5, 52:24, 52:25, 53:15, 54:9, 72:7, 75:25, 76:11, 80:4
**first-name** [1] - 52:25
**firstly** [1] - 16:7
**fit** [1] - 44:23
**flagrant** [3] - 18:12, 18:19, 59:9
**flash** [1] - 6:5
**flawed** [1] - 72:14
**flesh** [1] - 36:3
**Flower** [1] - 2:4
**flying** [1] - 58:24
**focus** [2] - 49:14, 49:15
**focusing** [1] - 68:12
**FOI** [45] - 10:9, 10:17, 10:20, 10:22, 10:25, 11:6, 11:16, 11:19,

12:5, 12:7, 12:18, 13:21, 13:23, 14:5, 14:8, 14:10, 15:6, 20:18, 22:11, 22:12, 23:22, 26:16, 26:18, 27:5, 29:1, 29:5, 29:25, 30:2, 30:8, 31:12, 31:23, 32:3, 34:10, 34:11, 34:13, 35:10, 35:12, 35:18, 47:20, 47:21, 50:24, 51:1, 80:9
**FOIA** [31] - 6:6, 12:10, 12:13, 12:22, 12:23, 13:14, 14:14, 38:17, 49:22, 49:23, 51:6, 55:16, 55:22, 60:5, 61:16, 61:17, 61:21, 64:13, 64:18, 65:2, 69:9, 69:10, 76:23, 77:5, 77:7, 77:25, 78:1, 80:16, 80:17, 81:24, 82:5
**FOIed** [1] - 32:10
**FOIs** [1] - 31:21
**folks** [1] - 45:10
**follow** [1] - 51:7
**followed** [1] - 62:5
**following** [2] - 13:21, 36:14
**FOR** [3] - 2:2, 2:11, 2:21
**foregoing** [1] - 87:7
**format** [1] - 87:10
**former** [2] - 10:2, 53:8
**forth** [11] - 11:2, 11:5, 11:12, 11:13, 12:24, 22:3, 27:3, 28:3, 55:8, 58:8, 75:10
**forward** [7] - 6:5, 13:8, 19:12, 19:14, 29:8, 47:4, 68:7
**four** [7] - 11:16, 34:24, 51:5, 54:16, 54:21, 60:22, 82:18
**Fourteenth** [2] - 7:12, 7:13
**fourth** [1] - 13:15
**frankly** [3] - 56:9, 58:13, 83:4
**free** [1] - 81:2
**freedom** [1] - 53:10
**Freedom** [8] - 10:12, 10:13, 13:17, 25:10, 25:18, 29:22, 49:19, 56:2
**friendly** [1] - 80:19
**friends** [1] - 77:2
**front** [2] - 43:6, 45:5
**future** [1] - 19:14

## G

**Galchus** [1] - 3:3
**Gardner** [1] - 74:21
**general** [1] - 10:17
**General** [2] - 11:1, 22:13
**genius** [1] - 9:2
**Ginger** [1] - 4:3
**girl** [2] - 82:15, 82:22
**girls** [10] - 54:16, 54:21, 57:17, 57:21, 58:9, 60:11, 60:14, 60:22, 60:25, 82:18
**given** [4] - 16:6, 19:6, 22:10, 46:3
**glad** [1] - 52:16
**gleaned** [1] - 29:11
**government** [1] - 60:4
**governor** [1] - 10:16
**granddaughter** [1] - 54:12
**granted** [2] - 60:24, 66:18
**grants** [1] - 79:5
**gray** [1] - 71:10
**greater** [2] - 54:13, 54:14
**gross** [1] - 17:18
**grounds** [1] - 74:19
**group** [3] - 4:4, 5:6, 53:7
**GROUP** [2] - 1:13, 1:14
**grouped** [1] - 11:16
**groups** [1] - 17:11
**guess** [3] - 63:23, 79:12, 84:1
**guilty** [1] - 17:7
**Gunter** [1] - 3:3
**guy** [4] - 43:25, 81:5, 81:9, 81:13

## H

**halfhearted** [1] - 56:18
**handbook** [1] - 10:18
**handed** [1] - 17:5
**handle** [3] - 30:19, 53:11, 53:12
**handled** [1] - 30:18
**handles** [1] - 31:4
**hands** [1] - 47:8
**happily** [1] - 78:11
**happy** [2] - 49:25, 69:21
**harass** [1] - 17:8
**hard** [4] - 59:13, 79:11, 79:13, 79:15
**hardly** [2] - 11:23,

58:25
**Hare** [2] - 2:7, 53:17
**harm** [3] - 18:7, 20:9, 33:10
**Harrington** [1] - 2:13
**Hart** [2] - 16:22, 33:7
**hastily** [2] - 20:3, 33:4
**Hayden** [3] - 1:22, 87:3, 87:17
**hear** [4] - 35:25, 49:25, 67:19, 73:3
**heard** [3] - 51:24, 58:1, 81:5
**HEARING** [1] - 1:17
**hearing** [2] - 86:3, 86:10
**heart** [1] - 83:1
**heinous** [1] - 77:21
**HEINRICH** [1] - 1:13
**held** [6] - 46:7, 57:13, 61:8, 73:25, 74:14, 87:8
**help** [2] - 30:21, 85:22
**hereby** [1] - 87:5
**hesitate** [1] - 85:19
**high** [3] - 60:6, 60:8
**high-profile** [2] - 60:6, 60:8
**highly** [2] - 16:4, 59:4
**Hignite** [1] - 14:11
**Hills** [1] - 2:13
**hinted** [1] - 37:18
**Hobson's** [1] - 38:21
**hold** [1] - 74:8
**Holt** [1] - 2:23
**home** [1] - 31:8
**Honor** [63] - 5:9, 8:9, 8:24, 9:2, 9:8, 9:17, 9:20, 9:21, 12:17, 13:8, 14:22, 16:17, 18:23, 21:11, 21:14, 21:25, 23:1, 25:3, 28:4, 30:11, 31:13, 35:1, 36:9, 43:21, 52:13, 52:25, 58:23, 63:11, 63:13, 63:18, 63:21, 64:8, 64:24, 65:5, 68:7, 68:22, 69:13, 69:21, 70:11, 70:15, 70:25, 71:14, 74:3, 74:13, 74:17, 75:1, 75:16, 76:5, 76:9, 77:5, 77:16, 78:3, 78:4, 78:8, 78:11, 82:8, 82:11, 83:25, 85:2, 85:9, 85:19, 86:5, 86:7
**HONORABLE** [1] - 1:18
**hopelessly** [3] - 29:13,

50:10, 51:3
**hotline** [6] - 30:14, 65:13, 65:14, 65:20, 66:11
**house** [1] - 27:2
**HOYT** [1] - 1:10
**Hoyt** [13] - 4:7, 7:4, 7:6, 36:10, 37:22, 38:14, 41:6, 41:14, 42:8, 42:16, 42:17, 44:24, 46:6
**human** [1] - 59:5
**Human** [6] - 29:17, 30:1, 31:19, 49:9, 65:18, 66:16
**humane** [1] - 17:21
**humiliating** [1] - 57:19
**humiliation** [1] - 59:8
**hunt** [1] - 9:7

**I**

**idea** [2] - 34:18, 79:19
**ideas** [1] - 17:20
**identified** [1] - 57:13
**identifies** [1] - 60:13
**identify** [12] - 23:21, 28:24, 34:9, 37:4, 37:6, 57:10, 60:1, 60:15, 60:18, 60:23, 61:5, 63:3
**identifying** [3] - 28:23, 34:5, 50:13
**identities** [4] - 27:9, 59:19, 82:17, 85:5
**identity** [3] - 59:15, 60:14, 81:17
**illustrative** [1] - 47:5
**immune** [1] - 71:21
**immunities** [2] - 36:5, 71:19
**immunity** [54] - 4:15, 4:18, 7:22, 7:23, 8:11, 8:14, 12:12, 12:15, 14:3, 15:5, 15:11, 15:13, 15:19, 23:2, 24:12, 27:16, 32:25, 37:21, 47:2, 67:19, 68:8, 68:9, 69:20, 69:22, 69:23, 69:24, 70:8, 70:13, 71:8, 71:13, 71:16, 72:2, 72:5, 72:11, 72:16, 74:1, 74:7, 74:11, 75:1, 75:3, 75:18, 75:21, 78:13, 78:14, 78:19, 78:24, 78:25, 79:1, 79:5, 79:6, 83:4, 83:5, 84:6

**impetus** [1] - 48:2
**implement** [1] - 62:20
**importance** [3] - 11:12, 11:14, 13:21
**important** [5] - 12:13, 13:3, 13:25, 36:24, 45:7
**importantly** [1] - 38:3
**improper** [2] - 62:16, 62:23
**improperly** [2] - 20:3, 33:4
**inappropriate** [1] - 58:4
**INC** [2] - 1:13, 1:14
**incident** [5] - 6:13, 6:17, 7:2, 24:4, 41:1
**include** [4] - 4:23, 7:11, 20:2
**including** [2] - 53:7, 74:12
**inclusive** [1] - 1:15
**incompetent** [1] - 15:15
**inconsistencies** [1] - 74:23
**inconsistent** [1] - 75:22
**indeed** [1] - 81:24
**indicate** [1] - 55:23
**indicated** [1] - 77:7
**indicates** [1] - 72:5
**indication** [1] - 46:17
**indifference** [8] - 18:3, 20:1, 33:7, 34:21, 43:17, 43:22, 43:23, 55:14
**indifferent** [1] - 50:4
**indirectly** [2] - 28:24, 50:13
**individual** [9] - 1:8, 1:9, 1:10, 7:7, 9:14, 10:1, 10:3, 44:7, 44:11
**individuals** [3] - 17:10, 29:20, 49:12
**inferences** [3] - 18:18, 32:19, 39:22
**Information** [8] - 10:12, 10:13, 13:17, 25:10, 25:18, 29:22, 49:19, 56:2
**information** [59] - 16:4, 16:15, 17:7, 26:6, 26:11, 27:23, 28:24, 30:4, 30:6, 33:15, 34:5, 36:25, 37:5, 37:6, 37:8, 37:16, 38:22, 38:23, 39:24, 40:2, 40:6,

40:14, 40:16, 40:25, 42:1, 42:5, 42:14, 47:9, 50:6, 50:9, 50:12, 50:21, 50:22, 51:13, 55:1, 55:12, 56:4, 56:24, 57:1, 57:7, 57:9, 57:12, 57:15, 59:3, 59:7, 59:11, 59:22, 60:13, 60:15, 60:18, 60:23, 60:25, 62:17, 62:22, 76:11, 76:13, 77:9
**inhumane** [1] - 17:24
**innocent** [2] - 54:16, 54:21
**inquiry** [3] - 24:15, 24:16, 24:19
**inspired** [1] - 17:22
**instance** [2] - 26:2, 83:10
**instances** [1] - 83:10
**instead** [3] - 47:16, 49:4, 49:14
**instructed** [3] - 13:20, 15:2, 15:21
**instruction** [2] - 22:13, 32:12
**instructs** [1] - 13:14
**instrumental** [1] - 59:10
**insufficient** [3] - 75:5, 77:4, 77:11
**insurance** [4] - 71:23, 83:6, 83:7, 84:11
**intended** [1] - 50:4
**intent** [10] - 11:3, 11:5, 11:13, 20:1, 27:14, 32:16, 33:3, 33:22, 33:24, 69:19
**intention** [2] - 73:18, 78:1
**intentional** [30] - 55:13, 65:3, 69:24, 70:5, 70:9, 70:13, 71:6, 71:7, 71:8, 71:13, 71:24, 72:12, 72:18, 73:11, 73:14, 73:19, 74:2, 74:6, 74:9, 74:12, 74:25, 75:1, 75:4, 75:19, 75:21, 83:12, 84:2, 84:3, 84:13, 84:18
**intentionally** [1] - 64:5
**interest** [5] - 11:19, 11:20, 11:24, 11:25, 59:9
**interlocutory** [2] - 85:17, 85:25
**internally** [1] - 30:19
**international** [1] -

27:12
**Internet** [1] - 60:1
**interplay** [1] - 19:15
**interpret** [1] - 26:16
**interpreted** [6] - 11:21, 11:23, 11:25, 12:6, 22:12
**interpretive** [1] - 51:11
**interprets** [1] - 24:12
**interview** [1] - 26:12
**interviewed** [3] - 5:14, 20:22, 45:11
**interviews** [3] - 5:19, 19:5, 46:12
**intimate** [3] - 16:15, 59:5, 59:14
**introduce** [1] - 52:22
**intrude** [1] - 79:21
**intruded** [1] - 64:6
**intrudes** [1] - 79:14
**intrusion** [11] - 63:23, 64:4, 64:19, 69:13, 69:17, 77:14, 79:10, 79:12, 79:18, 79:24, 79:25
**invasion** [5] - 8:2, 17:10, 17:13, 70:3, 75:25
**investigate** [1] - 65:24
**investigated** [1] - 57:2
**investigating** [1] - 41:24
**investigation** [34] - 10:7, 14:10, 14:12, 14:21, 19:16, 19:17, 20:21, 21:18, 24:2, 26:8, 28:20, 30:25, 31:8, 31:11, 32:8, 41:8, 41:18, 46:9, 65:22, 66:1, 66:2, 66:20, 66:23, 67:3, 67:4, 67:9, 68:17, 68:19, 68:20, 69:1, 69:2, 69:5, 69:9
**investigations** [9] - 5:18, 22:8, 29:19, 31:1, 31:25, 49:11, 65:11, 66:5, 66:9
**investigator** [5] - 14:11, 16:13, 22:2, 22:23, 68:13
**investigators** [7] - 20:21, 20:22, 21:2, 41:12, 41:18, 45:11, 45:19
**investigatory** [1] - 30:21
**invokes** [1] - 52:8
**involved** [9] - 14:12, 19:16, 19:17, 27:12,

31:7, 56:22, 57:4, 68:18, 69:10
**involves** [3] - 5:12, 16:25, 25:17
**involving** [2] - 4:2, 26:24
**irrespective** [1] - 61:5
**issue** [24] - 9:15, 27:16, 30:18, 32:2, 32:14, 32:25, 34:7, 39:18, 40:8, 43:19, 44:21, 63:17, 67:14, 67:15, 69:22, 71:1, 72:22, 75:23, 76:24, 78:16, 78:20, 82:25, 85:2
**issued** [4] - 14:5, 17:2, 23:16, 23:18
**issues** [9] - 4:18, 7:18, 12:15, 51:20, 54:6, 68:10, 78:13, 82:12, 83:21
**item** [4] - 37:4, 37:7, 37:15, 40:14
**itself** [1] - 11:17

**J**

**jail** [1] - 44:1
**Jason** [2] - 2:22, 5:4
**jealousy** [1] - 55:9
**jeichmann@ arkansaslaw.com** [1] - 2:16
**Jessa** [1] - 4:3
**JESSA** [1] - 1:3
**jest** [1] - 85:1
**Jewell** [2] - 2:6, 4:24
**JILL** [1] - 1:3
**Jill** [1] - 4:2
**Jim** [4] - 14:9, 34:8, 34:9, 34:11
**JINGER** [1] - 1:3
**Josh** [6] - 14:9, 28:14, 28:17, 34:11, 57:1
**Josh's** [1] - 48:9
**joy** [3] - 4:3, 57:16, 59:24
**JOY** [1] - 1:3
**Judge** [2] - 35:24, 53:25
**judge** [2] - 53:8, 53:24
**judgment** [4] - 57:25, 58:1, 58:14, 83:22
**judgment-type** [1] - 58:1
**judgments** [1] - 15:14
**Judicial** [1] - 87:11
**justice** [2] - 73:4, 74:21

justify [1] - 26:7
Justin [2] - 2:12, 5:2
Juvenile [3] - 12:25, 28:9, 48:24
juvenile [11] - 5:24, 28:8, 28:11, 28:18, 28:19, 28:21, 31:10, 48:7, 48:18, 62:21

## K

KATHY [1] - 1:8
Kathy [3] - 4:5, 6:24, 10:2
Keller [1] - 2:17
Kelley [1] - 7:6
KENDALL [25] - 63:18, 63:20, 67:11, 67:21, 68:1, 68:6, 68:11, 68:24, 70:2, 70:6, 70:10, 70:14, 70:21, 70:25, 71:11, 71:14, 73:16, 73:22, 74:3, 75:14, 75:16, 76:5, 76:8, 77:16, 78:8
Kendall [9] - 2:17, 2:18, 5:2, 9:12, 9:24, 63:16, 63:21, 67:10, 78:10
kicking [1] - 77:22
Kids [1] - 14:18
KIEKLAK [3] - 35:24, 52:7, 52:11
Kieklak [5] - 2:13, 5:2, 9:24, 35:23, 52:5
kind [10] - 8:5, 17:11, 26:7, 30:12, 31:3, 43:14, 44:5, 67:23, 79:15, 82:5
kinds [1] - 44:4
knowing [1] - 85:3
knowingly [1] - 15:15
knowledge [10] - 40:21, 41:1, 43:10, 43:11, 43:12, 44:6, 44:12, 73:13, 73:17, 73:18
known [16] - 16:19, 23:10, 43:4, 43:5, 53:24, 54:19, 61:11, 64:20, 64:23, 76:15, 76:16, 76:17, 76:18, 80:7, 80:13
KOLB [2] - 5:9, 9:8
Kolb [4] - 3:3, 5:7, 9:5, 86:14

## L

L.L.P [1] - 2:7
L.P [3] - 1:12, 1:13
lack [3] - 26:7, 32:22, 32:24
lacked [4] - 64:7, 64:12, 69:7, 69:15
landmark [1] - 71:15
language [9] - 11:22, 29:14, 42:25, 55:20, 71:18, 71:23, 72:4, 78:23, 79:3
large [3] - 53:4, 61:1, 81:11
largely [1] - 80:17
Larson [3] - 2:3, 53:7, 53:8
last [5] - 53:14, 70:24, 73:21, 74:10, 82:2
lastly [1] - 14:22
late [2] - 20:5, 33:5
law [56] - 5:14, 10:24, 11:17, 12:21, 13:20, 15:9, 15:16, 15:24, 21:22, 23:4, 24:11, 24:21, 24:24, 25:5, 26:14, 35:9, 35:12, 38:17, 40:11, 43:15, 43:16, 44:14, 47:3, 47:25, 48:3, 48:9, 48:12, 48:16, 48:21, 50:11, 50:20, 50:25, 51:11, 51:25, 53:2, 61:12, 61:19, 62:8, 63:6, 66:4, 66:5, 66:7, 66:8, 67:1, 67:8, 70:16, 75:22, 77:10, 79:5, 79:8, 79:22, 79:23, 80:17, 83:3
Law [1] - 2:18
Lawrence [2] - 72:15, 72:17
laws [1] - 10:23
lawsuit [3] - 37:5, 37:7, 38:18
lawyer [6] - 53:3, 80:5, 80:7, 80:13, 80:14, 83:13
lawyer's [1] - 83:18
lawyers [1] - 38:14
leads [1] - 31:9
leak [1] - 37:12
learn [1] - 7:8
least [7] - 35:3, 39:25, 45:18, 48:15, 52:20, 55:13, 57:6
leave [2] - 9:15, 26:22
left [3] - 20:12, 53:9,

71:10
legal [3] - 8:3, 64:8, 69:16
legislation [4] - 11:1, 11:4, 49:24, 51:3
legislative [3] - 10:15, 11:2, 11:13
legislature [2] - 11:14, 48:14
legitimate [2] - 26:10, 26:13
length [3] - 27:11, 33:13, 34:19
lengthy [1] - 70:15
less [3] - 47:22, 80:9, 80:15
Letter [1] - 57:20
level [8] - 17:18, 30:20, 32:25, 33:18, 37:10, 45:12, 77:23, 82:8
Lew [1] - 53:25
liability [8] - 8:13, 35:25, 36:1, 42:24, 43:1, 43:5, 43:9, 43:15, 44:8, 44:10, 44:11, 51:15, 51:22, 71:21, 71:23, 74:1, 84:13
liberally [3] - 11:21, 38:1, 47:18
life [1] - 35:20
light [4] - 24:23, 32:20, 33:2, 78:15
likely [3] - 29:4, 29:5
likewise [1] - 78:14
limitations [2] - 6:3, 71:19
limited [4] - 55:24, 59:3, 72:1, 72:6
limiting [1] - 30:6, 71:23
Lindsey [1] - 25:1
line [1] - 6:11
link [1] - 44:13
list [3] - 31:3, 49:8, 49:14
literally [1] - 17:24, 18:21
litigation [3] - 4:17, 5:12, 10:8
live [1] - 82:18
lives [2] - 57:21, 82:19
LLC [1] - 1:14
LLP [1] - 2:3
local [5] - 53:16, 53:21, 60:4, 67:1
locally [1] - 5:15
location [1] - 81:17
logical [1] - 21:23

lonesome [1] - 9:1
look [22] - 10:17, 12:21, 14:1, 15:6, 15:21, 18:16, 18:23, 19:23, 24:14, 29:12, 32:18, 33:24, 43:21, 57:22, 71:18, 71:25, 73:12, 74:20, 74:24, 75:2, 78:23
looked [1] - 33:7
looking [2] - 15:4, 24:24
looks [1] - 54:11
Los [2] - 2:4, 53:2
lost [1] - 60:10
lowest [1] - 18:1

## M

machine [1] - 1:21
MAGAZINE [1] - 1:12
magazine [2] - 14:17, 57:12
magazine's [1] - 83:19
mail [3] - 39:8, 39:9
mails [1] - 55:8
maintain [1] - 62:15
maintained [1] - 6:14
Major [4] - 7:4, 38:14, 41:14, 42:8
major [1] - 7:5
majority [1] - 37:1
malice [2] - 17:22, 25:25
malicious [1] - 72:2
maltreatment [2] - 31:20, 69:1
Maltreatment [31] - 12:25, 29:9, 29:12, 30:12, 31:2, 31:3, 31:15, 31:16, 32:10, 35:10, 48:5, 48:23, 48:24, 55:20, 55:25, 56:17, 65:7, 65:9, 65:10, 65:13, 65:20, 66:2, 66:3, 66:6, 66:10, 66:19, 67:5, 67:6, 67:7, 68:17, 68:19
management [1] - 86:2
manner [2] - 11:8, 52:2
margin [1] - 59:12
marked [1] - 46:2
massive [1] - 81:16
material [2] - 13:14, 13:15
matter [14] - 4:1, 10:6, 42:8, 42:10, 42:16,

43:8, 43:9, 46:11, 47:7, 47:10, 61:2, 80:20, 83:2, 87:9
matter0 [1] - 39:3
matters [6] - 40:12, 42:23, 59:4, 80:22, 81:22
mean [9] - 31:18, 32:18, 33:25, 40:23, 45:11, 57:20, 78:24, 79:1, 82:1
meaningful [2] - 57:17, 57:18
meaningless [2] - 21:21, 57:8
means [3] - 46:8, 78:25, 79:2
MEDIA [2] - 1:13, 1:14
meet [2] - 69:17, 83:17
Mehdizadegan [1] - 14:5
member [5] - 5:17, 5:25, 21:21, 57:5, 86:12
members [4] - 15:2, 52:24, 61:4, 76:17
mention [1] - 53:14
mentioned [7] - 9:24, 14:23, 21:10, 29:3, 36:11, 60:6, 84:20
mentioning [1] - 13:9
mentions [4] - 14:10, 14:14, 20:16
mere [1] - 17:15
merely [1] - 17:22
merits [2] - 27:16, 32:17
Messrs [1] - 2:12
met [1] - 35:8
Michelle [4] - 14:9, 34:7, 34:9, 34:12
might [1] - 19:13
Miller [1] - 2:13
mind [1] - 24:5
minor [5] - 6:1, 21:20, 26:9, 42:6, 60:20
minors [9] - 5:13, 5:18, 6:20, 41:19, 54:21, 59:16, 69:10, 82:17, 85:5
minute [2] - 21:6, 65:6
minutes [2] - 10:5, 34:24
missing [5] - 49:2, 50:3, 56:3, 76:6, 76:10
mistake [1] - 15:14
mixed [1] - 48:24
molested [1] - 57:23
moment [3] - 18:4,

18:5, 21:11
**Monell** [1] - 52:9
**morning** [2] - 58:15, 63:21
**most** [9] - 10:22, 32:20, 38:2, 51:3, 56:18, 57:24, 59:5, 70:18, 77:21
**motion** [9] - 12:12, 13:25, 37:3, 39:20, 40:10, 44:17, 58:3, 62:3, 63:8
**MOTION** [1] - 1:17
**motions** [12] - 4:14, 4:19, 5:6, 6:21, 7:21, 9:10, 9:13, 9:22, 10:11, 36:4, 36:20, 85:11
**Mountain** [1] - 1:23
**move** [4] - 13:8, 23:2, 68:7, 69:21
**moving** [1] - 69:21
**MR** [67] - 8:9, 8:24, 9:2, 9:17, 12:17, 13:11, 18:23, 19:7, 20:25, 21:14, 21:25, 22:20, 23:1, 23:19, 26:14, 27:18, 30:11, 31:13, 33:1, 33:20, 35:1, 35:24, 36:9, 39:6, 40:17, 40:19, 41:3, 41:10, 41:14, 41:20, 41:25, 42:4, 42:15, 43:11, 43:13, 43:20, 44:22, 45:4, 46:5, 52:7, 52:11, 52:13, 52:17, 55:2, 55:5, 55:17, 55:19, 56:14, 58:23, 59:20, 60:9, 61:25, 62:13, 63:11, 63:13, 78:11, 82:11, 83:1, 84:4, 84:7, 84:9, 84:19, 84:24, 85:9, 85:19, 86:5, 86:7
**MS** [27] - 5:9, 9:8, 63:18, 63:20, 67:11, 67:21, 68:1, 68:6, 68:11, 68:24, 70:2, 70:6, 70:10, 70:14, 70:21, 70:25, 71:11, 71:14, 73:16, 73:22, 74:3, 75:14, 75:16, 76:5, 76:8, 77:16, 78:8
**muddled** [1] - 69:22
**multijurisdictional** [1] - 21:18
**multiple** [3] - 4:7, 26:23, 61:13

**municipal** [5] - 8:13, 36:1, 44:9, 51:17, 71:20
**must** [6] - 12:16, 17:19, 17:21, 18:16, 59:7, 64:3

## N

**name** [4] - 27:3, 34:8, 52:24, 52:25
**named** [2] - 7:6, 36:11
**Named** [1] - 1:14
**names** [11] - 14:24, 20:11, 25:13, 27:22, 32:13, 34:2, 34:15, 34:20, 59:21, 60:24, 81:20
**narrow** [3] - 77:19, 77:20, 82:3
**narrowed** [1] - 30:5
**narrowly** [5] - 12:6, 32:5, 35:13, 38:2, 47:18
**narrowness** [2] - 22:12, 26:18
**national** [3] - 52:20, 53:4, 53:9
**nature** [3] - 16:4, 24:19, 26:24
**nearly** [1] - 12:7
**necessarily** [1] - 23:5
**necessary** [7] - 63:3, 64:7, 64:12, 69:7, 69:15, 69:19, 75:7
**Need** [1] - 31:10
**need** [6] - 22:5, 26:22, 48:11, 48:20, 63:6, 86:2
**needed** [2] - 30:20, 48:15
**needs** [1] - 11:23
**nefarious** [2] - 55:4, 55:6
**negligence** [17] - 17:15, 17:18, 19:25, 20:6, 27:14, 28:3, 32:15, 33:6, 64:24, 71:17, 72:6, 72:12, 72:16, 74:24, 75:4, 84:10, 84:12
**negligence-type** [1] - 33:6
**negligent** [7] - 71:5, 71:24, 74:1, 74:25, 75:2, 77:25, 83:5
**negligently** [1] - 65:2
**never** [6] - 17:15, 28:15, 81:5, 81:11, 82:14, 84:20

**nevertheless** [1] - 81:6
**Newell** [1] - 2:7
**newly** [1] - 38:24
**news** [1] - 6:18
**newsstand** [1] - 24:3
**Newton** [1] - 2:7
**next** [4] - 4:1, 21:9, 24:3, 39:9
**nine** [3] - 6:5, 7:2, 41:23
**Nineties** [1] - 52:20
**NO** [1] - 1:5
**nondisclosure** [1] - 50:9
**none** [1] - 51:12
**nonexempt** [2] - 13:14, 33:15
**nonfamily** [1] - 57:4
**nonparties** [3] - 40:9, 45:18, 51:13
**Norfolk** [1] - 63:1
**normally** [1] - 43:6
**NORTH** [1] - 1:14
**Northern** [1] - 26:4
**note** [1] - 58:24
**notes** [2] - 18:1, 54:8
**nothing** [2] - 57:3, 77:7
**notice** [4] - 37:23, 47:24, 50:5, 62:25
**notified** [1] - 45:15
**noting** [1] - 15:17
**notion** [3] - 18:12, 40:12
**November** [1] - 87:12
**nuance** [1] - 6:10
**number** [2] - 4:11, 50:15

## O

**O'Brien** [1] - 2:3
**O'Kelley** [9] - 4:5, 6:24, 8:12, 10:2, 13:24, 15:1, 20:3, 35:17, 64:10
**objectively** [1] - 35:17
**obligated** [1] - 32:18
**obligation** [2] - 44:16, 66:18
**obtained** [6] - 4:16, 41:2, 41:18, 42:6, 57:15, 62:17
**obtaining** [1] - 59:10
**obtains** [1] - 13:13
**obviously** [3] - 19:12, 34:17, 80:22
**occasions** [1] - 53:20
**occur** [1] - 34:2

**occurred** [3] - 19:11, 37:12, 48:10
**occurs** [1] - 34:22
**OF** [6] - 1:1, 1:7, 1:17, 2:11, 3:2, 87:1
**offender** [1] - 81:15
**offenders** [2] - 80:25, 81:17
**offense** [7] - 48:17, 50:14, 50:15, 50:18, 81:4, 81:7, 81:10
**offenses** [3] - 56:7, 80:23, 81:14
**offensive** [1] - 17:19
**offered** [1] - 28:5
**office** [3] - 10:19, 32:11, 77:6
**Officer** [2] - 74:4, 74:9
**officer** [4] - 37:22, 44:6, 47:8, 47:23
**officers** [5] - 17:1, 17:8, 17:9, 47:16, 79:6
**official** [16] - 1:8, 1:9, 1:10, 1:11, 7:7, 7:9, 9:14, 10:1, 10:3, 17:24, 23:9, 25:21, 26:1, 36:12, 38:12, 61:22
**OFFICIAL** [1] - 87:1
**Official** [3] - 1:23, 87:3, 87:17
**officials** [7] - 11:10, 13:19, 15:14, 25:11, 27:4, 38:6, 38:21
**old** [1] - 7:2
**omissions** [2] - 72:2, 72:3
**ON** [1] - 3:2
**once** [1] - 40:12
**one** [55] - 6:7, 10:22, 11:19, 12:12, 16:3, 19:7, 27:8, 27:12, 28:6, 28:8, 36:22, 37:4, 37:7, 37:16, 38:4, 38:5, 38:24, 39:7, 39:25, 41:24, 42:11, 43:25, 45:6, 45:23, 46:10, 46:13, 46:20, 49:14, 50:8, 50:15, 52:20, 52:22, 53:14, 57:14, 57:22, 60:5, 60:11, 60:17, 60:22, 64:1, 64:4, 65:21, 66:12, 66:13, 66:17, 76:24, 77:3, 77:9, 77:11, 80:5, 80:12, 82:2, 83:13, 86:12
**one's** [1] - 81:20

**online** [3] - 23:25, 27:7, 76:14
**open** [3] - 10:22, 11:8, 11:14
**opinion** [5] - 29:2, 74:20, 74:22, 75:5, 85:12
**opinions** [1] - 28:7
**opportunity** [3] - 9:21, 11:2, 84:21
**oppose** [1] - 82:24
**opposed** [1] - 36:17
**opposite** [4] - 16:10, 35:11, 43:16, 48:14
**opposition** [1] - 4:23
**oppressed** [1] - 80:18
**Oprah** [1] - 76:19
**order** [11] - 12:19, 13:5, 15:7, 15:13, 17:12, 22:5, 26:6, 31:17, 44:7, 45:13, 47:23
**organized** [1] - 49:10
**otherwise** [2] - 21:14, 85:20
**ought** [1] - 78:23
**outrage** [10] - 8:4, 70:4, 77:18, 77:23, 78:5, 82:2, 82:3, 82:5, 82:8, 84:23
**outraged** [1] - 82:13
**outrageous** [1] - 78:2
**outside** [3] - 31:1, 51:5, 67:4
**overlap** [1] - 69:3
**overrule** [1] - 83:2
**OWENS** [21] - 9:2, 36:9, 39:6, 40:17, 40:19, 41:3, 41:10, 41:14, 41:20, 41:25, 42:4, 42:15, 43:11, 43:13, 43:20, 44:22, 45:4, 46:5, 78:11, 85:19, 86:5
**Owens** [11] - 2:22, 5:4, 8:25, 9:3, 29:9, 36:8, 52:4, 78:9, 82:9, 85:13, 86:14
**Owens'** [1] - 77:2
**owens@rainfirm. com** [1] - 2:25
**own** [2] - 53:10, 76:15
**O'KELLEY** [1] - 1:8

## P

**P.A** [1] - 2:23
**P.C** [1] - 3:3
**p.m** [1] - 86:16
**P.O** [2] - 2:14, 2:23

**Page** [1] - 59:2
**page** [1] - 87:9
**pages** [3] - 59:21, 60:25
**paper** [2] - 26:23, 79:13
**papers** [3] - 54:2, 54:3, 54:5
**paragraph** [7] - 14:13, 15:1, 20:20, 41:21, 59:2, 62:14, 74:4
**paragraphs** [2] - 63:9, 64:14
**pardon** [1] - 36:19
**parents** [2] - 21:20, 37:6
**Parkway** [1] - 2:18
**parroted** [1] - 59:1
**part** [10] - 20:21, 23:12, 26:21, 34:24, 35:20, 35:21, 39:18, 47:15, 48:18, 51:18
**participate** [1] - 41:8
**particular** [2] - 36:5, 50:6
**particularly** [4] - 39:19, 50:7, 53:13, 56:5
**parties** [1] - 8:6
**parts** [2] - 24:5, 35:4
**party** [7] - 18:20, 57:4, 76:25, 77:3, 77:11, 79:13
**passed** [1] - 11:20
**past** [2] - 42:11, 62:2
**Pate** [5] - 72:23, 73:5, 73:7, 75:10, 78:16
**Peffer** [1] - 18:10
**PEFFER** [1] - 18:10
**Peltz** [2] - 10:21, 29:3
**penalties** [2] - 13:16, 35:19
**people** [7] - 23:20, 26:20, 34:14, 57:21, 60:1, 60:6, 60:8
**perform** [2] - 29:19, 49:11
**performance** [1] - 11:9
**performed** [1] - 11:8
**perhaps** [2] - 13:8, 37:13
**period** [1] - 17:9
**permission** [4] - 8:10, 64:8, 64:12, 69:8
**permitted** [2] - 21:22, 62:16
**perpetrator** [1] - 27:3
**person** [9] - 18:21, 43:1, 43:2, 43:3,

43:4, 44:2, 54:15, 54:23, 76:18
**person's** [2] - 34:13, 59:6
**personal** [6] - 16:4, 16:15, 46:23, 59:4, 59:11, 59:14
**personally** [1] - 44:7
**personnel** [2] - 16:25, 17:4
**pertain** [1] - 5:6
**pertaining** [4] - 5:15, 14:8, 30:5, 65:11
**pertains** [2] - 6:21, 28:10
**petition** [4] - 5:23, 30:10, 30:11, 31:10
**petitioner** [1] - 13:9
**Phone** [1] - 2:8
**physical** [1] - 79:25
**picked** [1] - 72:20
**piece** [1] - 5:12
**pieces** [1] - 79:13
**pile** [1] - 78:9
**piled** [1] - 57:11
**Pinnacle** [1] - 2:18
**place** [3] - 62:4, 62:6, 83:2
**plain** [6] - 29:23, 71:18, 72:4, 78:23, 79:3
**plainly** [1] - 15:15
**plaintiff** [8] - 6:19, 14:14, 28:25, 44:23, 63:2, 63:6, 81:1, 81:8
**plaintiff's** [1] - 12:24
**plaintiffs** [51] - 4:2, 4:22, 5:12, 8:19, 8:20, 8:23, 16:6, 16:15, 16:17, 20:12, 20:22, 20:23, 21:16, 23:21, 24:18, 24:19, 24:25, 25:4, 25:17, 27:10, 27:24, 29:2, 29:8, 32:21, 32:23, 37:4, 37:5, 37:7, 37:16, 38:25, 44:13, 45:25, 52:6, 58:5, 58:12, 62:15, 62:19, 62:23, 64:1, 64:16, 64:22, 64:23, 64:25, 78:4, 79:14, 80:2, 80:6, 81:1, 81:10, 82:7
**PLAINTIFFS** [1] - 2:2
**Plaintiffs** [1] - 1:4
**plaintiffs'** [13] - 13:23, 14:2, 16:2, 19:24, 22:1, 27:21, 35:6,

39:2, 53:15, 55:7, 64:15, 80:11, 81:8
**plane** [1] - 54:8
**planning** [1] - 85:17
**plausibility** [1] - 62:11
**play** [7] - 17:20, 17:21, 18:20, 21:11, 27:14, 27:15, 30:9
**plead** [1] - 63:7
**pleading** [4] - 19:22, 63:2, 67:24, 83:11
**pleadings** [3] - 24:17, 26:21, 67:14
**pleasure** [3] - 4:24, 5:4, 5:10
**pled** [9] - 17:7, 24:8, 58:9, 79:11, 79:17, 83:11, 83:12, 83:14, 84:16
**pledge** [31] - 16:5, 16:8, 16:11, 18:13, 18:21, 19:2, 19:4, 19:20, 21:12, 21:13, 21:15, 21:21, 21:23, 22:2, 22:3, 22:5, 22:8, 22:10, 22:17, 22:18, 22:25, 23:5, 23:10, 40:18, 41:2, 41:19, 42:6, 45:2, 46:2, 59:9
**pledges** [1] - 21:19
**PLLC** [1] - 2:18
**podium** [1] - 9:18
**point** [22] - 15:12, 16:7, 16:16, 16:21, 20:14, 22:7, 25:6, 33:17, 42:13, 44:16, 48:21, 51:23, 52:3, 54:4, 56:11, 60:16, 61:18, 62:1, 66:25, 71:6, 71:12, 74:10
**pointed** [1] - 55:20
**pointing** [1] - 22:17
**points** [3] - 13:9, 34:6, 51:11
**Police** [7] - 21:3, 29:18, 49:18, 55:6, 65:16, 66:14, 66:21
**police** [36] - 6:25, 14:10, 15:2, 16:12, 16:13, 16:25, 19:18, 20:21, 21:4, 22:2, 23:16, 23:19, 23:23, 25:12, 25:22, 27:25, 30:8, 30:22, 30:24, 31:24, 34:1, 49:10, 49:15, 64:13, 64:17, 65:2, 65:8, 68:13, 68:15, 69:4, 69:5, 69:9, 76:12, 76:23,

77:25
**policies** [5] - 61:23, 62:4, 62:6, 62:16, 63:4
**policy** [6] - 11:11, 51:15, 51:17, 51:21, 62:20, 63:7
**poor** [1] - 60:11
**posit** [1] - 38:20
**position** [11] - 12:18, 21:9, 21:13, 22:9, 22:16, 28:20, 35:6, 35:7, 42:17, 78:25, 79:2
**positive** [1] - 11:23
**possession** [1] - 49:8
**posted** [1] - 39:10
**posture** [1] - 4:11
**power** [2] - 17:19, 17:24
**practices** [1] - 62:16
**practicing** [1] - 53:2
**precise** [2] - 18:4
**preeminence** [4] - 12:22, 13:21, 26:17, 35:13
**preeminent** [3] - 10:19, 11:18, 37:25
**prefer** [1] - 57:24
**premier** [1] - 10:15
**prepared** [1] - 35:25
**present** [2] - 5:7, 41:15
**presentation** [2] - 8:18, 34:25
**President** [1] - 3:4
**press** [6] - 10:18, 26:2, 80:8, 80:9, 80:14, 83:15
**pressing** [1] - 86:3
**presumably** [2] - 45:12, 46:10
**presume** [1] - 82:6
**presumptively** [1] - 51:1
**pretty** [1] - 47:5
**previous** [1] - 77:17
**previously** [1] - 4:16
**primarily** [1] - 53:12
**primus** [1] - 46:13
**principle** [1] - 36:16
**principles** [2] - 11:16, 15:19
**priorities** [1] - 66:12
**priority** [5] - 66:12, 66:13, 66:15, 66:17
**privacy** [16] - 7:15, 7:19, 8:2, 17:10, 17:14, 22:12, 27:6, 37:20, 40:2, 40:13,

47:1, 47:11, 47:22, 59:6, 70:4, 75:25
**private** [8] - 26:13, 40:12, 76:1, 76:10, 76:19, 76:21, 77:13, 80:3
**privilege** [3] - 80:20, 81:21, 81:23
**privy** [1] - 63:2
**Probe** [1] - 14:19
**problem** [1] - 62:5
**problematic** [1] - 50:10
**procedurally** [1] - 67:13
**procedure** [3] - 13:1, 28:22, 32:11
**procedures** [1] - 30:13
**proceed** [3] - 63:19, 67:2, 67:3
**proceeding** [3] - 28:11, 28:17
**proceedings** [6] - 9:6, 39:19, 42:10, 48:7, 86:16, 87:8
**Proceedings** [1] - 1:21
**process** [3] - 7:14, 7:18, 17:17
**professor** [1] - 10:20
**profile** [3] - 60:6, 60:8
**prohibitive** [1] - 29:14
**prohibits** [1] - 28:23
**prominent** [1] - 11:18
**promise** [5] - 16:5, 54:22, 62:17, 68:15, 68:16
**promised** [2] - 5:18, 20:22
**promises** [1] - 68:25
**promoted** [1] - 80:17
**promotion** [1] - 24:2
**prompted** [1] - 80:18
**prong** [3] - 21:10, 23:2, 24:12
**pronouns** [1] - 34:4
**proof** [2] - 39:18, 42:21
**proper** [1] - 32:24
**proposition** [7] - 43:17, 44:15, 47:21, 70:1, 71:16, 72:7, 72:16
**prosecuted** [1] - 47:19
**prosecution** [8] - 38:3, 38:7, 38:8, 38:9, 38:19, 45:13, 45:14
**prosecutor** [1] - 5:23
**prosecutor's** [1] -

46:10
**prospect** [1] - 38:13
**protected** [3] - 56:11, 56:16, 62:23
**protecting** [2] - 56:4, 56:6
**protection** [1] - 59:2
**protects** [3] - 15:14, 55:23, 55:25
**prove** [1] - 58:5
**proverbial** [1] - 9:7
**provide** [4] - 15:13, 25:6, 29:20, 49:11
**provided** [5] - 27:23, 33:25, 72:11, 74:21, 76:12
**provides** [2] - 73:25, 74:11
**providing** [1] - 57:14
**provision** [2] - 13:18, 28:25
**provisions** [1] - 30:4
**proviso** [1] - 48:16
**public** [52] - 8:1, 11:7, 11:8, 11:9, 11:11, 11:19, 11:20, 11:25, 12:1, 13:19, 16:19, 20:16, 20:24, 23:13, 25:21, 27:4, 32:6, 35:20, 37:1, 37:18, 38:5, 38:12, 38:21, 38:22, 40:1, 44:6, 47:7, 47:16, 50:8, 50:12, 51:1, 56:24, 57:1, 57:3, 59:3, 60:7, 61:1, 76:1, 76:9, 76:11, 76:20, 76:22, 77:12, 79:6, 80:2, 80:3, 80:22, 81:11, 81:16, 81:22
**publication** [6] - 80:5, 80:6, 83:17, 83:18, 83:19, 85:4
**publications** [1] - 36:23
**publicity** [1] - 61:5
**publicized** [2] - 36:22, 39:13
**publicly** [1] - 40:13
**published** [9] - 6:18, 10:18, 10:20, 14:17, 57:13, 76:13, 76:14, 76:24, 77:3
**PUBLISHING** [2] - 1:12, 3:2
**Publishing** [4] - 4:8, 5:6, 6:7, 6:17
**publishing** [1] - 23:24
**purpose** [1] - 15:18
**purposes** [3] - 13:23,

36:24, 40:22
**pursuant** [12] - 7:16, 7:20, 17:1, 19:17, 35:18, 37:25, 41:2, 64:13, 64:17, 65:2, 87:6
**pursued** [1] - 5:25
**put** [6] - 39:8, 47:23, 50:5, 57:19, 57:20, 72:19

## Q

**qualified** [17] - 8:11, 14:3, 15:5, 15:11, 15:12, 15:19, 23:2, 24:12, 37:21, 47:2, 69:20, 69:24, 75:6, 75:21, 79:4, 79:5
**questions** [1] - 58:12
**quickly** [1] - 68:25
**quite** [1] - 10:6
**quote** [3] - 49:4, 73:23, 73:24

## R

**racial** [1] - 77:22
**Rainwater** [1] - 2:23
**raise** [1] - 13:22
**raised** [4] - 54:7, 83:21, 84:11, 85:2
**rape** [1] - 26:6
**rare** [1] - 11:3
**rarely** [1] - 81:4
**rarity** [1] - 34:22
**rather** [7] - 17:22, 25:20, 25:23, 73:1, 73:2, 74:21, 84:22
**ratified** [1] - 70:23
**reach** [1] - 78:4
**reached** [3] - 11:10, 78:20, 86:1
**reaching** [1] - 78:16
**read** [14] - 30:3, 30:4, 41:21, 43:17, 49:13, 50:2, 55:22, 58:23, 60:17, 73:4, 84:22, 85:1
**reader** [1] - 59:22
**reading** [5] - 29:23, 49:7, 56:21, 58:25, 72:4
**reads** [5] - 29:14, 29:15, 31:23, 49:16
**realize** [2] - 18:14, 26:21
**really** [9] - 48:1, 58:13, 62:7, 74:22, 79:17, 82:12, 82:24, 83:22

**realtime** [1] - 1:21
**Realtime** [1] - 87:3
**reason** [4] - 22:4, 45:12, 78:3, 86:3
**reasonable** [7] - 18:18, 32:19, 35:17, 37:23, 39:22, 47:23, 50:5
**reasons** [3] - 15:18, 77:12, 78:4
**recalled** [1] - 20:20
**received** [3] - 6:6, 10:9, 17:4
**receives** [1] - 31:21
**recent** [2] - 70:18, 72:21
**recently** [3] - 53:4, 72:22, 73:7
**recognized** [4] - 18:6, 20:8, 63:1, 79:21
**recollection** [5] - 39:6, 39:7, 45:4, 45:5, 45:24
**record** [5] - 10:23, 13:13, 41:22, 65:8
**recorded** [1] - 1:21
**records** [18] - 11:15, 12:10, 18:5, 20:8, 28:10, 29:15, 48:6, 49:4, 49:16, 51:2, 51:9, 55:24, 60:7, 60:19, 61:6, 61:11, 61:16
**redact** [10] - 13:15, 15:2, 22:14, 26:19, 32:12, 32:13, 56:19, 69:11
**redacted** [14] - 6:13, 6:16, 14:23, 22:11, 23:11, 25:12, 27:2, 27:21, 33:12, 33:15, 33:23, 64:13, 76:12, 81:20
**redacting** [1] - 32:24, 33:19, 56:13
**redaction** [5] - 27:6, 27:11, 32:14, 34:19, 56:15
**redactions** [2] - 32:22, 57:7
**redundant** [1] - 36:13
**refer** [2] - 4:9, 52:24
**reference** [1] - 64:15
**referral** [2] - 30:23
**refers** [2] - 67:1, 67:8
**refute** [1] - 40:11
**regard** [9] - 4:6, 8:11, 8:12, 15:11, 16:1, 16:14, 16:20, 20:14, 28:22

**regarding** [5] - 9:22, 10:7, 28:7, 28:17, 49:3
**register** [2] - 80:24, 81:15
**registry** [2] - 80:24, 81:15
**regular** [1] - 31:21
**regulations** [1] - 87:10
**rehearing** [2] - 72:25, 75:11
**reiterate** [1] - 77:20
**related** [1] - 49:3
**relates** [8] - 7:1, 7:3, 7:23, 9:13, 12:10, 36:4, 40:8, 48:6
**relating** [4] - 28:10, 34:14, 48:17, 60:19
**relationship** [1] - 55:7
**release** [14] - 7:1, 16:14, 16:25, 28:23, 33:8, 42:14, 45:1, 60:12, 60:17, 60:19, 60:24, 62:17, 64:12, 77:25
**released** [21] - 6:12, 6:15, 6:17, 16:3, 18:5, 20:3, 20:8, 23:15, 25:14, 33:16, 42:9, 57:9, 57:11, 60:14, 60:15, 60:25, 61:6, 65:2, 76:22, 77:9, 82:16
**releases** [1] - 41:24, 42:5, 60:23
**releasing** [5] - 15:3, 35:18, 62:22, 64:17, 77:8
**relevant** [1] - 68:13
**relied** [2] - 72:14, 72:15
**relief** [3] - 4:16, 58:7, 58:9
**rely** [1] - 39:1
**relying** [1] - 84:25
**remain** [3] - 5:20, 20:23, 26:13
**repealed** [1] - 49:23
**repeals** [1] - 49:21
**reply** [1] - 9:11
**report** [41] - 14:22, 14:23, 15:3, 17:8, 20:4, 20:5, 20:13, 22:11, 23:11, 23:16, 23:19, 23:22, 23:24, 25:12, 25:14, 25:23, 26:8, 27:21, 29:24, 33:12, 33:23, 34:1, 35:18, 37:13, 41:1, 61:11, 64:13, 65:2,

65:8, 65:19, 65:22, 65:25, 66:11, 69:4, 69:5, 76:12, 76:23, 77:25
**reported** [3] - 76:18, 81:11, 87:8
**Reporter** [3] - 1:23, 87:4, 87:17
**REPORTER** [1] - 87:1
**reporting** [2] - 65:14
**reports** [8] - 6:13, 6:17, 7:2, 27:25, 29:15, 49:4, 49:16, 64:17
**represent** [2] - 9:25, 36:10
**represented** [2] - 80:8, 80:14
**representing** [4] - 5:1, 5:3, 17:2, 59:5
**request** [12] - 10:9, 13:23, 14:6, 14:8, 14:10, 20:18, 25:10, 25:12, 33:14, 77:5, 77:7, 82:6
**requested** [1] - 25:2
**requester** [1] - 25:15
**requesting** [1] - 49:23
**requests** [3] - 6:6, 6:9, 60:5
**require** [4] - 22:8, 38:21, 79:24, 84:2
**required** [6] - 17:12, 22:11, 42:18, 50:20, 50:24, 67:3
**requires** [2] - 26:15, 51:1
**requisite** [5] - 16:18, 32:16, 33:3, 33:21, 69:19
**reserve** [1] - 58:12
**reserved** [1] - 77:21
**resolve** [1] - 13:4
**respect** [10] - 36:15, 45:18, 51:15, 59:24, 63:25, 69:24, 71:24, 78:13, 79:10, 80:3
**respective** [1] - 36:20
**respectively** [2] - 4:21, 51:8
**respects** [1] - 12:14
**respond** [6] - 8:19, 8:21, 42:15, 52:6, 52:10, 82:10
**responded** [3] - 14:17, 20:17, 23:23
**responding** [2] - 25:11, 47:17
**responds** [1] - 31:22
**response** [10] - 9:11,

**14**:14, 14:16, 19:24, 27:4, 37:3, 40:20, 52:3, 58:22, 80:12

**rest** [3] - 40:8, 57:21, 82:18

**restatements** [2] - 76:3, 79:23

**retained** [1] - 6:9

**retaliate** [1] - 47:8

**retaliation** [3] - 46:23, 47:4, 47:14

**retired** [1] - 10:2

**review** [3] - 24:22, 25:5, 34:2

**reviewed** [2] - 9:9, 73:10

**revised** [1] - 48:18

**Ribar** [3] - 26:4, 46:25, 47:11

**RICK** [1] - 1:10

**Rick** [5] - 4:7, 7:4, 36:10, 37:22, 46:6

**right-thinking** [1] - 54:23

**rights** [1] - 43:3

**Rights** [1] - 7:20

**rise** [4] - 20:1, 44:9, 77:23, 82:8

**risk** [2] - 18:7, 44:3

**RMR** [2] - 1:22, 87:17

**Robert** [2] - 2:12, 53:8

**Rock** [6] - 2:24, 3:4, 14:4, 16:22, 25:16, 83:13

**Rockefeller** [1] - 10:16

**Rogers** [1] - 2:19

**role** [1] - 30:9

**room** [1] - 15:13

**rose** [1] - 30:20

**rule** [4] - 12:16, 49:23, 85:14, 85:23

**Rule** [5] - 43:19, 44:21, 64:1, 67:16, 83:10

**ruled** [2] - 71:3, 71:4

**rules** [2] - 4:18, 60:5

**run** [1] - 24:3

**rush** [1] - 55:12

**rushed** [1] - 83:16

---

## S

**sadism** [1] - 17:22

**Sarah** [2] - 2:6, 4:23

**satisfaction** [1] - 82:5

**satisfies** [1] - 85:6

**save** [1] - 57:24

**saw** [1] - 52:24

**sbledsoe@ larsonobrienlaw.**

---

**com** [1] - 2:5

**Scarlet** [1] - 57:20

**schedule** [1] - 86:2

**School** [2] - 63:1, 77:18

**scope** [4] - 31:16, 32:2, 32:4, 50:3

**SEAWALD** [1] - 1:3

**secluded** [1] - 80:1

**seclusion** [12] - 63:24, 64:4, 64:19, 69:14, 69:17, 77:15, 79:10, 79:15, 79:16, 79:18, 79:21, 80:1

**second** [5] - 16:4, 18:11, 23:2, 24:12, 76:3

**secondly** [3] - 12:4, 28:22, 35:9

**Section** [6] - 7:16, 42:24, 42:25, 73:25, 87:6

**see** [12] - 26:23, 34:2, 34:3, 34:4, 46:10, 79:13, 79:15, 80:16, 85:21, 86:11

**seeking** [1] - 12:12

**sees** [1] - 44:23

**Seewald** [1] - 4:3

**segregate** [2] - 13:15, 22:14

**segue** [1] - 65:5

**seminal** [1] - 37:20

**sensationalized** [1] - 6:18

**sentence** [1] - 39:25

**separates** [1] - 46:20

**September** [1] - 1:18

**serious** [2] - 18:7, 35:20

**served** [1] - 4:13

**Services** [7] - 29:17, 30:2, 31:10, 31:19, 49:9, 65:18, 66:16

**services** [4] - 29:20, 49:11, 62:21

**set** [13] - 4:8, 11:2, 11:5, 22:3, 28:3, 58:5, 58:20, 60:5, 60:7, 66:11, 75:10, 80:24, 81:15

**sets** [4] - 11:12, 11:13, 58:8, 65:13

**several** [1] - 80:4

**severe** [3] - 66:15, 66:24, 67:7

**sex** [7] - 50:13, 50:15, 50:18, 80:24, 81:14, 81:15, 81:17

**Sex** [1] - 14:19

---

**Sexton** [1] - 2:23

**sexual** [23] - 5:16, 26:24, 54:14, 54:17, 54:20, 56:5, 56:6, 56:7, 57:3, 59:16, 59:17, 60:13, 60:19, 60:20, 61:12, 80:23, 81:4, 81:7, 81:10, 82:17, 82:22, 85:5

**shall** [6] - 11:9, 29:21, 49:18, 50:12, 56:1, 71:21

**shame** [1] - 82:13

**Shawn** [4] - 2:6, 4:23, 53:16

**Shawn@hwnn.com** [1] - 2:9

**sheriff** [1] - 26:5

**sheriff's** [2] - 30:23, 32:11

**shift** [1] - 63:15

**shocking** [3] - 17:16, 17:24, 59:7

**shorthand** [1] - 1:21

**shoulder** [2] - 53:22

**show** [6] - 33:23, 34:21, 44:2, 61:9, 76:19

**shows** [2] - 20:7, 33:13

**side** [3] - 32:6, 53:5, 82:21

**similar** [2] - 41:21, 75:6

**simply** [7] - 19:22, 28:21, 47:7, 64:2, 68:3, 69:11, 71:19

**single** [1] - 22:9

**sisters** [2] - 6:19, 26:10

**sitting** [1] - 53:5

**situation** [5] - 25:21, 31:9, 57:10, 72:22, 84:24

**situations** [1] - 25:23

**Sixth** [2] - 26:5, 47:1

**sjewell@hwnn.com** [1] - 2:10

**skk@kendalllawfirm .com** [1] - 2:20

**sleuth** [3] - 27:9, 34:17, 34:19

**slurs** [1] - 77:22

**smacks** [1] - 55:13

**small** [1] - 72:13

**snail** [1] - 39:9

**society** [1] - 11:7

**solely** [2] - 72:6, 75:4

**someone** [2] - 47:9, 80:16

---

**somewhat** [1] - 69:18

**Son** [1] - 14:18

**soon** [1] - 85:25

**sorry** [4] - 44:18, 44:25, 48:22, 76:5

**sort** [2] - 47:21, 79:18

**sought** [1] - 4:15

**SPD** [1] - 15:2

**speaks** [1] - 23:7

**special** [1] - 74:21

**specific** [15] - 14:20, 24:1, 24:15, 24:16, 24:23, 25:9, 25:15, 39:17, 47:22, 48:10, 51:19, 57:6, 57:14, 58:11, 59:9

**specifically** [8] - 23:21, 55:21, 55:25, 61:15, 63:6, 64:15, 72:1, 75:3

**spectrum** [1] - 79:8

**speed** [1] - 86:6

**spent** [1] - 53:3

**spite** [1] - 55:10

**spoken** [1] - 51:13

**Springdale** [43] - 2:15, 4:5, 4:20, 5:1, 6:12, 6:23, 6:25, 8:7, 9:12, 9:25, 14:6, 14:11, 15:12, 16:3, 16:9, 16:10, 19:1, 19:8, 19:16, 20:11, 21:3, 22:4, 22:23, 22:24, 23:9, 23:12, 23:16, 23:23, 24:6, 24:18, 25:3, 25:7, 28:20, 33:3, 33:13, 39:10, 63:22, 64:10, 65:1, 65:8, 68:18, 69:2

**SPRINGDALE** [2] - 1:7, 2:11

**Springdale's** [2] - 22:9, 22:16

**staff** [2] - 44:1, 66:25

**Stafford/Pell** [1] - 26:3

**stage** [8] - 13:25, 39:19, 42:10, 44:20, 44:21, 62:9, 63:2, 68:5

**standard** [7] - 18:1, 33:7, 43:23, 58:3, 61:8, 64:19, 64:24

**standards** [1] - 17:12

**stands** [5] - 9:2, 22:4, 43:16, 53:22, 83:3

**start** [2] - 68:8, 69:25

**started** [1] - 53:10

**starts** [1] - 59:2

**state** [17] - 22:2, 24:22, 30:8, 31:12,

---

**31**:24, 32:8, 40:4, 47:25, 48:3, 48:20, 49:9, 59:9, 62:10, 68:13, 72:1, 77:4

**State** [18] - 12:21, 13:2, 16:12, 16:13, 19:18, 21:4, 29:18, 30:21, 38:1, 38:6, 38:17, 49:15, 49:18, 65:16, 66:14, 66:21, 68:14, 80:24

**statement** [3] - 10:21, 11:6, 31:14

**statements** [6] - 5:19, 5:21, 20:23, 21:19, 21:20, 41:18

**STATES** [1] - 1:1

**states** [3] - 23:25, 28:14, 29:23

**States** [3] - 87:4, 87:6, 87:11

**status** [1] - 48:12

**statute** [27] - 6:3, 11:17, 13:1, 28:23, 37:25, 47:17, 48:8, 48:25, 49:1, 50:2, 50:5, 50:20, 55:23, 55:25, 56:3, 59:13, 61:15, 61:18, 66:3, 71:18, 71:19, 72:5, 72:11, 74:11, 78:23, 79:3, 80:19

**statutes** [8] - 11:24, 28:6, 28:7, 28:8, 56:6, 60:16, 61:13

**statutory** [14] - 8:14, 25:19, 69:23, 70:7, 70:8, 70:13, 71:7, 71:12, 71:16, 78:14, 81:23, 81:24, 81:25, 84:6

**stayed** [1] - 4:17

**stenographically** [1] - 87:8

**STEVE** [1] - 1:11

**Steve** [3] - 4:7, 7:5, 36:11

**Steven** [2] - 2:3, 4:24

**still** [2] - 45:20, 53:12

**stop** [1] - 73:12

**stories** [2] - 6:19, 26:24

**story** [2] - 10:6, 24:2

**Street** [2] - 1:23, 2:4

**strong** [2] - 73:1, 73:2

**strongest** [1] - 10:22

**structural** [1] - 10:5

**sub** [1] - 48:7

**subchapter** [1] - 50:18

**subject** [10] - 29:21,

31:12, 34:11, 49:19,
51:2, 56:1, 61:21,
62:3, 62:7, 69:10
**subjects** [2] - 43:1,
44:7
**submit** [1] - 43:15
**submitted** [3] - 20:17,
74:16, 74:18
**submitting** [1] - 74:17
**subpoena** [1] - 17:1
**subsection** [2] -
50:11, 50:20
**subsections** [1] -
51:10
**substantial** [2] - 18:7,
20:9
**substantially** [6] -
64:7, 64:11, 64:21,
65:4, 69:6, 69:15
**substantive** [2] -
17:17, 18:15
**sued** [5] - 7:7, 7:9,
25:11, 44:1, 45:20
**sufficiency** [1] -
33:19, 67:24
**sufficient** [8] - 44:13,
56:12, 60:15, 60:18,
60:23, 61:1, 62:11,
64:2
**sufficiently** [1] -
58:10, 62:1
**suggesting** [1] - 56:12
**suggests** [1] - 44:12
**suing** [1] - 17:9
**suit** [6] - 12:12, 48:2,
71:21, 78:24, 78:25,
79:1
**Suite** [3] - 2:4, 2:18,
3:4
**summary** [4] - 57:25,
58:1, 58:13, 83:22
**Sunbridge** [1] - 2:7
**supplied** [2] - 25:17,
25:20
**supplies** [1] - 25:20
**support** [5] - 9:10,
10:24, 17:16, 58:6,
64:2
**supreme** [1] - 73:2
**Supreme** [11] - 12:2,
70:24, 71:9, 73:1,
73:24, 75:11, 75:18,
75:20, 78:16, 83:3,
84:22
**surface** [1] - 46:24
**surprising** [1] - 34:13
**survive** [2] - 62:11,
63:8
**Susan** [6] - 2:17, 5:2,
8:10, 8:13, 9:24,

63:21
**sweet** [3] - 54:16,
54:21, 58:9

**T**

**table** [1] - 53:6
**tabloid** [2] - 6:18, 85:4
**tabloids** [3] - 54:20,
55:12, 56:20
**tailor** [1] - 32:5
**talks** [2] - 21:1, 25:18
**target** [1] - 34:10
**tasked** [1] - 60:4
**team** [3] - 52:19, 86:13
**teased** [1] - 24:2
**tellingly** [1] - 48:8
**ten** [4] - 6:5, 7:2,
43:14, 79:12
**ten-year-old** [1] - 7:2
**tension** [5] - 13:4,
25:19, 26:15, 35:9
**term** [1] - 56:15
**terms** [2] - 80:15, 81:7
**terrorize** [1] - 17:8
**test** [3] - 62:12, 77:19,
77:20
**THE** [99] - 1:18, 2:2,
2:11, 2:21, 4:1, 5:10,
8:16, 8:25, 9:3, 9:9,
9:19, 12:8, 13:10,
18:9, 19:4, 20:19,
21:6, 21:17, 22:19,
22:22, 23:18, 26:9,
27:15, 30:9, 31:7,
32:17, 33:17, 34:23,
35:23, 36:3, 39:4,
40:15, 40:18, 40:25,
41:7, 41:13, 41:16,
41:23, 42:1, 42:5,
43:8, 43:12, 43:19,
44:19, 44:25, 45:25,
52:4, 52:8, 52:12,
52:16, 54:24, 55:3,
55:15, 55:18, 56:10,
58:16, 59:18, 60:3,
61:22, 62:10, 63:9,
63:12, 63:14, 63:19,
67:10, 67:12, 67:22,
68:2, 68:8, 68:23,
69:25, 70:3, 70:7,
70:12, 70:20, 70:22,
71:9, 71:12, 73:15,
73:20, 73:23, 75:12,
75:15, 75:25, 76:6,
77:14, 78:7, 78:9,
82:9, 82:20, 84:1,
84:5, 84:8, 84:15,
84:20, 85:7, 85:10,
85:21, 86:9

**then-minor** [1] - 26:9
**theories** [1] - 8:3
**thereafter** [1] - 36:23
**therefore** [1] - 28:15
**they've** [4] - 28:3,
46:21, 46:22, 83:21
**thinking** [1] - 54:23
**third** [9] - 13:13,
20:14, 23:12, 44:18,
44:19, 44:25, 57:4,
59:2, 79:13
**third-party** [1] - 57:4
**thirdly** [2] - 29:8,
35:15
**Thomas** [1] - 2:13
**thoughts** [1] - 54:9
**threat** [2] - 38:3, 38:7
**threats** [1] - 77:23
**three** [8] - 24:5, 28:6,
29:25, 34:14, 34:15,
34:24, 84:17
**throughout** [1] - 81:2
**Tillery** [1] - 70:23
**timing** [1] - 39:4
**TIMOTHY** [1] - 1:18
**Title** [1] - 87:6
**titled** [1] - 14:18
tkieklak@
arkansaslaw.com
[1] - 2:16
**today** [15] - 4:2, 4:9,
4:19, 4:22, 4:25,
6:21, 9:22, 18:8,
18:16, 37:22, 52:14,
74:17, 82:25, 86:4,
86:10
**today's** [2] - 5:5, 9:6
**together** [3] - 11:16,
17:11, 33:23
**Tom** [4] - 5:2, 8:9,
8:12, 9:24
**took** [1] - 11:2
**tort** [29] - 7:10, 7:24,
7:25, 8:3, 8:20, 40:4,
63:15, 64:1, 67:18,
71:24, 72:2, 72:5,
72:11, 72:16, 72:18,
73:10, 73:11, 73:18,
73:19, 74:6, 74:11,
74:24, 75:4, 75:19,
79:1, 79:22, 83:4,
84:23
**torts** [21] - 8:13, 69:24,
70:5, 70:9, 70:13,
71:8, 71:24, 72:12,
73:14, 74:10, 74:12,
75:2, 75:22, 79:1,
79:2, 84:2, 84:13,
84:18
**Touch** [7] - 14:17,

57:12, 76:14, 77:6,
77:8, 77:9, 83:19
**touched** [1] - 80:21
**toward** [1] - 16:22
**towards** [2] - 19:25
**traditional** [1] - 17:20
**Trammell** [10] - 70:24,
71:1, 71:2, 73:20,
74:5, 74:9, 74:16,
74:18, 78:18
**TRANSCRIPT** [1] -
1:17
**transcript** [2] - 87:7,
87:9
**transition** [1] - 8:20
**treatise** [1] - 29:2
**trespass** [1] - 73:9
**triggered** [1] - 10:8
**true** [9] - 16:10, 18:17,
18:24, 28:2, 34:18,
35:11, 39:21, 68:4,
87:7
**try** [1] - 44:14
**trying** [2] - 68:24,
84:15
**turn** [2] - 35:21, 48:4
**TV** [2] - 61:9
**two** [20] - 7:25, 8:2,
13:9, 14:2, 18:14,
25:11, 38:14, 42:11,
42:16, 65:15, 65:21,
65:23, 66:11, 66:12,
66:15, 66:17, 69:4,
70:3, 76:10
**twofold** [1] - 16:3
**type** [14] - 5:16, 6:18,
19:25, 30:6, 31:25,
33:6, 34:4, 34:21,
50:6, 53:10, 53:11,
58:1, 58:14
**types** [1] - 31:4
**typically** [1] - 54:1

**U**

**U.S** [1] - 39:9
**U.S.C** [1] - 7:16
**ultimately** [1] - 31:9
**unaware** [1] - 42:9
**uncertainty** [2] -
78:15, 78:22
**unclear** [5] - 31:16,
32:2, 32:4, 70:17
**unconstitutional** [1] -
63:7
**under** [46] - 7:12, 7:17,
8:2, 25:22, 28:18,
29:19, 31:15, 32:14,
38:3, 38:6, 40:3,
40:18, 41:19, 42:6,

42:24, 47:17, 48:7,
49:10, 49:19, 50:18,
51:10, 54:22, 54:25,
55:24, 56:2, 56:17,
57:8, 61:12, 61:16,
61:21, 62:17, 63:5,
64:1, 64:19, 65:9,
65:20, 66:6, 66:10,
66:19, 67:24, 69:9,
76:23, 78:1, 81:23,
81:24, 85:11
**Underage** [1] - 14:19
**underlying** [6] - 5:11,
12:21, 13:6, 15:8,
15:24, 35:5
**underredacted** [4] -
23:16, 23:19, 23:22,
27:13
**underredaction** [1] -
82:6
**undertake** [1] - 24:22
**undertaken** [1] - 24:23
**uniformly** [1] - 44:15
**unilateral** [1] - 38:8
**unique** [2] - 10:25,
11:3
**United** [3] - 87:4, 87:6,
87:11
**UNITED** [1] - 1:1
**University** [1] - 52:17
**unless** [4] - 50:24,
58:4, 58:11, 84:10
**unofficial** [1] - 61:23
**unredacted** [2] -
20:12, 37:13
**unsettled** [2] - 47:3,
48:13
**unwise** [1] - 17:23
**up** [17] - 4:19, 8:17,
9:15, 9:16, 17:9,
34:24, 48:24, 63:15,
63:17, 65:13, 67:14,
67:16, 72:20, 80:24,
81:15, 83:21
**urge** [2] - 24:6, 24:19
**urging** [1] - 25:4
**USA** [1] - 1:14
**user** [1] - 27:7
**utilized** [1] - 39:10

**V**

**vagueness** [1] - 45:16
**value** [1] - 49:22
**vast** [1] - 37:1
**version** [3] - 37:13,
37:14, 84:17
**versus** [11] - 4:4, 18:9,
61:18, 63:1, 70:23,
70:24, 73:21, 74:25,

75:1, 75:4, 78:16
**via** [1] - 1:21
**vicarious** [5] - 42:24,
43:5, 43:9, 79:18
**victim** [4] - 50:10,
50:13, 60:13, 60:18
**victims** [11] - 14:25,
25:13, 56:5, 56:6,
56:7, 57:10, 57:14,
59:16, 60:2, 60:20,
81:18
**victims'** [1] - 81:20
**view** [4] - 24:20, 25:1,
25:4, 84:22
**violate** [4] - 15:16,
21:23, 22:17, 59:6
**violated** [8] - 22:3,
22:6, 22:10, 23:4,
23:11, 25:7, 40:2,
48:3
**violates** [1] - 47:21
**violation** [22] - 12:19,
13:5, 15:8, 15:21,
15:22, 15:23, 15:24,
16:1, 17:17, 20:15,
23:6, 24:7, 24:14,
35:5, 35:16, 42:13,
45:2, 54:13, 54:15,
58:18, 79:6, 79:7
**violations** [2] - 7:14,
7:19
**violative** [1] - 59:14
**vital** [1] - 11:7
**VS** [1] - 1:5
**Vuolo** [1] - 4:3
**VUOLO** [1] - 1:3

## W

**wait** [1] - 67:15
**waiver** [1] - 80:20
**wantonly** [1] - 78:2
**wants** [1] - 49:23
**WASHINGTON** [2] -
1:7, 2:21
**Washington** [22] - 4:6,
5:3, 5:22, 5:24, 6:12,
7:3, 9:4, 14:6, 20:17,
21:3, 23:14, 23:15,
36:6, 36:10, 37:8,
38:23, 39:14, 40:7,
41:7, 41:11, 45:19,
50:7
**Watkins** [2] - 10:21,
29:3
**wealth** [1] - 13:20
**website** [3] - 10:17,
27:8, 34:16
**weeds** [1] - 68:22
**week** [1] - 85:12

**weigh** [1] - 38:16
**weighing** [3] - 61:17,
61:18, 61:19
**well-known** [1] - 53:24
**WESTERN** [1] - 1:1
**Western** [1] - 87:5
**whatsoever** [1] -
29:24
**whichever** [1] - 9:15
**whole** [2] - 80:23,
81:14
**wholly** [2] - 11:20,
28:2
**willful** [1] - 25:24
**willfully** [1] - 78:1
**Williams** [5] - 72:22,
73:5, 73:7, 75:10,
78:15
**Winfrey** [1] - 76:19
**Witherspoon** [1] - 3:3
**Wolfe** [1] - 77:18
**won** [1] - 52:20
**word** [1] - 81:5
**wording** [3] - 29:12,
31:17, 31:22
**words** [1] - 50:23
**works** [1] - 33:23
**world** [1] - 54:18
**wrap** [1] - 34:24
**Wright** [2] - 70:24,
73:21
**writing** [1] - 29:11
**wrongdoing** [1] -
82:13
**wrote** [2] - 59:12,
73:23
**Wynn** [2] - 2:7, 53:17

## Y

**y'all** [2] - 8:18, 9:15
**year** [4] - 7:2, 65:23,
70:24, 73:21
**years** [17] - 5:13, 6:5,
10:14, 10:23, 11:15,
11:18, 13:19, 26:17,
26:19, 27:5, 32:12,
35:12, 35:20, 41:23,
43:14, 53:2, 53:9
**yesterday** [2] - 54:8,
58:24
**young** [3] - 54:15,
54:16, 82:22
**younger** [1] - 5:14
**yourself** [1] - 54:14
**youthful** [1] - 54:11

## Z

**zeal** [1] - 17:23

**ZEGA** [1] - 1:11
**Zega** [4] - 4:7, 7:6, 7:9,
36:11