IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | | |
|---|---|---|
| JILL DILLARD; JESSA SEEWALD; JINGER VUOLO; and JOY DUGGAR | | PLAINTIFFS |
| V. | CASE NO. 5:17-CV-5089 | |
| CITY OF SPRINGDALE, ARKANSAS; WASHINGTON COUNTY, ARKANSAS; KATHY O'KELLEY, in her individual and official capacities; ERNEST CATE, in his individual and official capacities; RICK HOYT, in his individual and official capacities; and STEVE ZEGA, in his official capacity | | DEFENDANTS |

## MEMORANDUM OPINION AND ORDER

Currently before the Court is Plaintiffs' Motion for Leave to File an Amended Complaint (Doc. 74). The proposed amended complaint (Doc. 74-1) contains no new allegations against the current Defendants. Instead, it contains additional information about former defendants Bauer Publishing Company, L.P., Bauer Magazine, L.P., Bauer Media Group, Inc., Heinrich Bauer North America, Inc., and Bauer Media Group USA, LLC (collectively, "the former Bauer defendants"). These entities were dismissed from the lawsuit on October 12, 2017, pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] Plaintiffs believe they have now stated plausible claims against the former Bauer defendants and have cured the pleading deficiencies that the Court observed in its earlier Order of dismissal (Doc. 70). The Court disagrees and **DENIES** the Motion for the reasons stated below.

---

[1] All current Defendants filed responses in opposition to the Motion (Docs. 75–77), the former Bauer defendants filed a response (Doc. 78), and the Plaintiffs filed a reply (Doc. 83). The Motion is now ripe for decision.

1

## I.  BACKGROUND

During 2015, the former Bauer defendants published a web and print media tabloid called "In Touch Weekly."  Also in 2015, the Plaintiffs and their family starred in a popular, nationally syndicated reality-television show.  At some point that year, In Touch Weekly became aware that the Plaintiffs had been the subjects of a 2006 police investigation when they were minors.  The investigation revealed that the Plaintiffs' brother, who was also a minor at the time, had been accused of sexually molesting them.  On May 15, 2015, the reporters for the tabloid began submitting Freedom of Information Act ("FOIA") requests to the City of Springdale and to Washington County, Arkansas, seeking copies of the offense and incident reports from 2006, along with any other documents relating to the investigation.

On May 19, 2015, the former Bauer defendants caused an article to be published in In Touch Weekly naming the Plaintiffs' brother as the former target of an "Underage Sex Probe," and promising more details to come in future articles.  The next day, the City released the offense report to In Touch Weekly pursuant to the publication's FOIA request.  The County released an incident report to the publication the day after that.  In Touch Weekly then published both reports and many articles about the reports.  Though the reports had been redacted by the City and County, they contained enough unredacted information to permit readers to discover the identifies of the Plaintiffs.

Plaintiffs filed the instant lawsuit against City and County officials and the former Bauer defendants on May 18, 2017.  The causes of action that were then pending against the former Bauer defendants included three state-law claims for invasion of privacy and one claim for the tort of outrage.  On August 22, the former Bauer defendants filed a

motion to dismiss (Doc. 43), arguing that holding them liable for their newsgathering and reporting activities in this case would violate the First Amendment. The Court agreed and dismissed all claims against them on constitutional grounds. The following excerpts from the Court's Order of dismissal explain the Court's reasoning:

> It is rare that this Court is presented with a motion to dismiss that may be resolved simply by citing to a solitary controlling Supreme Court case. But that is essentially the situation here with respect to the Bauer Defendants' Motions to Dismiss. In *Florida Star v. B.J.F.*, the United States Supreme Court reaffirmed that the First Amendment requires that "if a newspaper lawfully obtains truthful information about a matter of public significance then state officials may not constitutionally punish publication of the information, absent a need to further a state interest of the highest order." 491 U.S. 524, 533 (1989) (quoting *Smith v. Daily Mail Pub. Co.*, 443 U.S. 97, 103 (1979)) (alterations omitted).
>
> In that case, a local police department had inadvertently included a rape victim's name in a report that was made publicly available in a police station press room. *See id.* at 527. A newspaper then published the name of that rape victim in an article, in contravention of not only a Florida statute but also the newspaper's own internal policies. *See id.* at 527–28. The victim sued the newspaper and won a verdict at trial, but the Supreme Court reversed. *See id.* at 528–29. The Court reasoned that the published information was true, *id.* at 536, that it was obtained lawfully, *id.*, and that the newspaper was entitled to presume that it was on a matter of public significance since it concerned a crime and was information that the police department saw fit to disclose in the first place, *see id.*; *cf. id.* at 535 ("[W]here the government has made certain information publicly available, it is highly anomalous to sanction persons other than the source of its release. . . . By placing the information in the public domain on official court records, the State must be presumed to have concluded that the public interest was thereby being served." (internal quotation marks omitted)). Similarly, the Court found that imposing liability on the newspaper in question was not a "narrowly tailored" means of effectuating "a state interest of the highest order," *see id.* at 541, since "the government itself provide[d] [the] information to the media," *see id.* at 538. "Where, as here, the government has failed to police itself in disseminating information, it is clear . . . that the imposition of damages against the press for its subsequent publication can hardly be said to be a narrowly tailored means of safeguarding anonymity." *Id.*
>
> Here, . . . none of the Plaintiffs allege that the Bauer Defendants ever published untruthful information about them. They acknowledge that the

> Bauer Defendants submitted FOIA requests to the City and the County, and that the Springdale and Washington County Defendants provided the reports of the police investigation pursuant to those FOIA requests. Under the reasoning of *Florida Star*, the Bauer Defendants were entitled to assume that the information contained therein was a matter of public significance, since it was disclosed by public entities pursuant to a statute that is explicitly designed to effectuate a public policy in favor of disclosing public records. And even if one assumes that the disclosures failed to comply with Arkansas statutory redaction requirements, *Florida Star* is clear that the Bauer Defendants cannot be held liable for the City's and County's failure to follow the law. Although the Court in *Florida Star* was very careful to emphasize that its holding was "relying on limited principles that sweep no more broadly than the appropriate context of the instant case," *id.* at 533, that "appropriate context" is so strongly analogous to the facts alleged in [this Complaint] that this Court believes it cannot permit the Bauer Defendants to be held liable for their conduct here without defying binding Supreme Court precedent.

(Doc. 70, pp. 6–8).

All claims against the former Bauer defendants were dismissed on October 12, 2017. On October 26, 2017, the Plaintiffs filed the instant Motion and proposed amended complaint.[2] The Plaintiffs have added certain facts to the original Complaint in an attempt to show that the former Bauer defendants' conduct in this case does not fall within the ambit of protected First Amendment speech. In particular, the Plaintiffs point out that First Amendment protection should only be granted under *Florida Star* for printing information that was "lawfully obtained." 491 U.S. at 536 (citation omitted). They contend that the new facts in their proposed amended complaint demonstrate that the information published was not lawfully obtained because the reporters essentially colluded with

---

[2] The Court stayed the case on October 25, 2017 (Doc. 73), just after the City and County Defendants filed an interlocutory appeal of the Court's decision to deny them qualified immunity. The case remained stayed until July 7, 2020, the date the Court received the Eighth Circuit's mandate and judgment on the interlocutory appeal. (Doc. 89). On July 29, 2020, the Court held a telephonic status conference with the parties, and counsel for the Plaintiffs and counsel for the former Bauer defendants presented oral argument on the pending Motion. The Court then took the matter under advisement.

unnamed sources in law enforcement to violate state law. Plaintiffs claim that the reporters "solicited and encouraged individuals to commit unlawful acts and illegally disclose the confidential information contained in the Offense and Incident Reports" and thereby failed to obtain information about the case lawfully. (Doc. 83, p. 5).

The former Bauer defendants point out in their response that the Plaintiffs have introduced no newly discovered facts but have instead reframed or recharacterized the original facts to attempt to distinguish them from *Florida Star*. They believe the Court should deny the Motion for Leave to Amend as futile, and they assert that the facts as pleaded in the proposed amended complaint still do not show that they unlawfully obtained the information that they printed about the Plaintiffs.

## II.  LEGAL STANDARD

Under Rule 15(a)(2), a court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, this policy is not absolute, and leave may be denied "where it will result in 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment.'" *Dennis v. Dillard Dep't Stores, Inc.*, 207 F.3d 523, 525 (8th Cir. 2000) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "A court can deny leave to amend as futile where the amended pleading would not survive a motion to dismiss." *Sentell v. RPM Mgmt. Co.*, 653 F. Supp. 2d 917, 919 (E.D. Ark. 2009) (citing *Owen v. Gen. Motors Corp.*, 533 F.3d 913, 921 (8th Cir. 2008)). To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the court assumes that "all factual allegations in the pleadings are true and interpret[s] them in the light most favorable to the nonmoving party." *Bell v. Pfizer, Inc.*, 716 F.3d 1087, 1091 (8th Cir. 2013) (internal quotation omitted).

### III.  DISCUSSION

Plaintiffs introduce their Motion by asserting that the Court misconstrued the facts in their original Complaint.  In order to "clarify their allegations," the Plaintiffs amended the facts in an attempt to show "that [the former Bauer defendants] did not 'lawfully obtain' Plaintiffs information and therefore, Bauer Defendants' conduct is not protected by the First Amendment."  (Doc. 74, p. 2).  The proposed amendments appear in eleven paragraphs in the proposed new pleading; however, many of the changes are duplicative, so the Court has grouped and summarized them below.

Paragraphs 4, 46, 49, 88, 92, 101, and 112 have been revised to describe in greater detail how the former Bauer defendants' reporters secured an unnamed source or sources inside the City's police department and/or the County's sheriff's department who was leaking information to them about the 2006 sexual assault investigation.  The Plaintiffs claim this source was leaking information to the reporters *before* the City and County released redacted police reports and investigation materials to In Touch Weekly in response to FOIA requests.  For example, Paragraph 4's amended language explains that the reporters "began soliciting and encouraging" the source or sources "to disclose such information in violation of law," (Doc. 74-1, p. 3), and that the reporters continued to do this even though law enforcement's official position to date had been "that the

information about the matter was confidential and not subject to disclosure." *Id.* at pp. 22–23.

The amendments to Paragraphs 51, 54, and 55 do little more than quote from articles published by In Touch Weekly about the investigation. The existence of these articles is not new, and the articles were, in fact, mentioned in the original Complaint. The articles were published on May 19 and 20, 2015, before the FOIA requests were officially fulfilled, and they include certain information about the 2006 investigation that was leaked by an unnamed source or sources "who saw and read the Reports." *Id.* at p. 13. The reporters acknowledge that law enforcement officials refused to identify themselves on the record and make an official statement about the case because they claimed that "Arkansas law prohibits any comment about confidential information regarding a minor." *Id.* at p. 14.

As for new paragraph 125, this states that the reporters from In Touch Weekly knew that Arkansas law prohibited law enforcement from commenting about the confidential information of minors and of sexual assault victims, but the reporters "nevertheless solicited and disclosed" this information "in violation of the law for the purposes of disclosing it publically [sic] and obtaining financial gain." *Id.* at p. 30.

The Court finds that the proposed amendments to the Complaint, taken as true, still do not plausibly state any valid claim for relief. This is because there are no facts that indicate that the information the former Bauer defendants received from both confidential informants within law enforcement and from responses to FOIA requests was not lawfully obtained. As the Court explained in its earlier dismissal Order, "*Florida Star* is clear that the Bauer Defendants cannot be held liable for the City's and County's failure to follow

the law." (Doc. 70, p. 8). Even if the former Bauer defendants knew that their sources were leaking confidential information in violation of law and in violation of the City and County's policies—and even if they encouraged the leaks—that does not mean the former Bauer defendants violated the law. No party has offered, nor does the Court find, that these facts place the former Bauer defendants in violation of any specific state or federal law.

The "new" facts in the proposed amended pleading are not new; they were not discovered after the Court issued its earlier Order of dismissal. Instead, Plaintiffs have simply reframed the old facts to try to create the inference that since the reporters knew their sources were disclosing private information about the Plaintiffs contrary to law, the reporters' encouragement of these sources and solicitation of this information was, itself, unlawful. There is no precedent for such a sweeping view of the press's liability. Under these facts, the only potential wrongdoers were those in law enforcement who disclosed the sensitive information to the press, not the members of the press who asked them for that information. In other words, what happened here was that "the government . . . failed to police itself in disseminating information," not that the press engaged in wrongdoing by receiving and then publishing the information. *Florida Star v. B.J.F.*, 491 U.S. 524, 538 (1989). There is nothing unlawful about a reporter receiving information from a confidential source who is employed by state law enforcement and has access to police reports. "Where the government itself provides information to the media, it is most appropriate to assume that the government had, but failed to utilize, far more limited means of guarding against dissemination than the extreme step of punishing truthful speech." *Florida Star*, 491 U.S. at 538.

The Plaintiffs rely on *Peavy v. WFAA-TV, Inc.*, a decision published by the Fifth Circuit about a month after *Florida Star* was decided, for the proposition that when a reporter encourages a private individual to commit an unlawful act—which in that case was the recording of private telephone conversations in violation of the federal wiretapping laws—the First Amendment will not shield the reporter's conduct. 221 F.3d 158 (5th Cir. 2000). However, the reporter's conduct in *Peavy* is distinguishable from the reporters' conduct in the instant case. The reporter in *Peavy* was alleged to have taken an active role in his source's illegal activity because he "instructed the [source] *not* to turn the tape recorder on and off while recording intercepted conversations, and *not* to edit them, so that the tapes' authenticity could *not* be challenged." *Id.* at 164 (emphasis in original). Indeed, the Supreme Court in *Bartnicki v. Vopper* described *Peavy* as a case in which "the media defendant in fact *participated* in the interceptions at issue." 532 U.S. 514, 522 n.5 (2001) (emphasis added). By contrast, there are no facts in the proposed amended complaint that indicate that the reporters "participated" in the act of reading police reports and investigation notes and then printing that information. The reporters in the case at bar merely asked for the information, and certain law enforcement personnel leaked it to the reporters. Even if the reporters "had reason to know" that the information they received was obtained contrary to law, their "access to the information . . . was obtained lawfully, even though the information itself was intercepted unlawfully by someone else." *Id.* at 525 (citing to *Florida Star*, 491 U.S. at 536).

For these reasons, the Court finds that permitting the Plaintiffs to file the proposed amended complaint would be futile. The allegations against the previously dismissed defendants have not materially changed; instead, the Plaintiffs have rephrased or

9

reframed the same facts so as to insinuate that the defendants obtained information unlawfully or otherwise participated in the allegedly unlawful conduct that the City and County engaged in when their officers divulged the sensitive information. As explained herein, the Court finds that none of the "new" facts alleged show that the reporters working for the former Bauer defendants participated in illegal activity in order to obtain the information that was disclosed to them by sources within law enforcement and by official FOIA requests. The new claims against the former Bauer defendants would be subject to dismissal for the same reasons they were dismissed earlier.

## IV.  CONCLUSION

**IT IS THEREFORE ORDERED** that the Plaintiffs' Motion for Leave to File an Amended Complaint (Doc. 74) is **DENIED**.

**IT IS SO ORDERED** on this 9th day of September, 2020.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE