```
1                 UNITED STATES DISTRICT COURT
                  WESTERN DISTRICT OF ARKANSAS
2                     FAYETTEVILLE DIVISION

3

4    JILL DILLARD, JESSA SEEWALD,              PLAINTIFFS
     JINGER VUOLO, and JOY DUGGAR,
5
     v.                              Civil No. 5:17-CV-5089
6
     CITY OF SPRINGDALE, ARKANSAS;             DEFENDANTS
7    WASHINGTON COUNTY, ARKANSAS;
     KATHY O'KELLEY, in her
8    individual and official
     capacities; ERNEST CATE, in
9    his individual and official
     capacities; RICK HOYT, in his
10   individual and official
     capacities; STEVE ZEGA, in
11   his official capacity;
     BAUER PUBLISHING COMPANY,
12   L.P.; BAUER MAGAZINE, L.P.;
     BAUER MEDIA GROUP, L.P.;
13   BAUER, INC.; HEINRICH BAUER
     NORTH AMERICA, INC.; BAUER
14   MEDIA GROUP USA, LLC; and
     DOES 1-10, inclusive.
15

16   _____

17

18            TRANSCRIPT OF STATUS CONFERENCE

19         HELD VIA VIDEOCONFERENCE TECHNOLOGY

20       BEFORE THE HONORABLE TIMOTHY L. BROOKS

21                  APRIL 29, 2021

22              FAYETTEVILLE, ARKANSAS

23   _____

24

25
```

1                          A P P E A R A N C E S

2

    FOR THE PLAINTIFFS:
3
    MESSIEURS STEVEN BLEDSOE & STEPHEN G. LARSON
4   MS. JENNIFER C. WON
    Larson, LLP
5   555 South Flower Street, Suite 4400
    Los Angeles, California 90071
6   (213) 436-4888
    sbledsoe@larsonllp.com
7   slarson@larsonllp.com
    jwon@larsonllp.com
8
    MR. SHAWN B. DANIELS
9   Daniels Law Firm, PLLC
    129 West Sunbridge Drive
10  Fayetteville, Arkansas 72703
    (479) 521-7000
11  shawn@danielsfirm.com

12  FOR THE CITY OF SPRINGDALE DEFENDANTS:

13  MESSIEURS THOMAS N. KIEKLAK & R. JUSTIN EICHMANN
    Harrington, Miller & Kieklak, P.A.
14  4710 South Thompson, Suite 102
    Springdale, Arkansas 72764
15  (479) 751-6464
    tkieklak@arkansaslaw.com
16  jeichmann@arkansaslaw.com

17  MS. SUSAN KELLER KENDALL
    Kendall Law Firm, PLLC
18  3706 Pinnacle Hills Parkway, Suite 201
    Rogers, Arkansas 72758
19  (479) 464-9828
    skk@kendalllawfirm.com
20
    FOR THE WASHINGTON COUNTY DEFENDANTS:
21
    MR. JASON E. OWENS
22  Jason Owens Law Firm, P.A.
    1023 Main Street, Suite 204
23  Conway, Arkansas 72032
    (501) 764-4334
24  owens@jowenslawfirm.com

25

1          THE COURT:  The next matter on the Court's docket

2   is the matter of Dillard and others versus the City of

3   Springdale and others, Case Number 5:17-CV-05089.

4          The matter is before the Court for purposes of an

5   interim status conference.  We're proceeding by

6   videoconference today.  Let me announce appearances and try

7   to orient myself to where everyone is on the video screen

8   here.

9          The plaintiffs are represented by Jennifer Won.

10  Good afternoon.

11          MS. WON:  Good afternoon, Your Honor.

12          THE COURT:  And then --

13          MS. WON:  And also joined by my colleagues this

14  afternoon.

15          THE COURT:  Steven Bledsoe and Stephen Larson.

16  Good afternoon, gentlemen.

17          MR. BLEDSOE:  Good afternoon.

18          THE COURT:  And then more locally, Shawn Daniels.

19  Good afternoon, Mr. Daniels.

20          MR. DANIELS:  Good afternoon, Your Honor.

21          THE COURT:  Okay.  And then on behalf of what I

22  will call the Springdale defendants, looks like they are

23  all in the same Zoom screen, Justin Eichmann, Tom Kieklak,

24  and Susan Kendall.  Good afternoon, counsel.

25          MR. KIEKLAK:  Good afternoon, Judge.

1          THE COURT:  And then we have Jason Owens

2   representing the county defendants.  Good afternoon,

3   Mr. Owens.

4          MR. OWENS:  Good afternoon, Your Honor.

5          THE COURT:  So let me tee up our conversation a

6   little bit.

7          The case here has had a complex and somewhat

8   tortured procedural history up to this point in time.

9   Various accusations and causes of action were made against,

10  or by the plaintiffs against the City and certain officers

11  acting on behalf of the City of Springdale and the release

12  of certain investigative information pertaining to the

13  plaintiffs when they were minors.  The same accusation is

14  made against Washington County.

15         The lawsuit here was originally filed four years

16  ago.  Four.  Four years ago, May of 2017.  At that time,

17  there were some private parties named as defendants as

18  well.  The claims were numerous.  Categorically, they

19  included claims of defamation, invasion of privacy, that

20  sort of thing.  There were also civil rights claims brought

21  against the City and the County for which the plaintiffs

22  were seeking vindication of their Constitutional rights.

23         Along the way, various motions to dismiss were

24  filed.  Various motions asserting entitlement to qualified

25  immunity were filed.  This Court made certain rulings that

had the effect of dismissing the private entity defendants, but the Court left standing civil rights and some companion state law claims against the City and the County.

The Court's opinion denying qualified immunity was appealed and affirmed before en banc review was sought, at which time the en banc court reversed, or overruled, the panel decision and found, as to the civil rights claims, that the City and County were entitled to qualified immunity and that those claims should be dismissed.  A writ was sought from the Supreme Court.  That was ultimately denied.

And so from the original filing of the complaint on May 18, 2017, the steps that I just recited took until January 11th, 2021, so a few months ago, for it to reach the point where the Supreme Court denied the petition for writ that had been sought.  Basically, they denied to accept the case.  And so it made its way back for this Court to try the portions of the original claims that remain.

The original claims that remain categorically are two.  First, we have the privacy claims.  These are state claims under state law, but they are claims that this Court had pendant jurisdiction, or what we call supplemental jurisdiction of in the first instance, so they are properly -- they properly remain before the Court at this time.  And

1   then in a separate category are some claims brought under

2   the Arkansas Civil Rights Act.  These were piggyback claims

3   to the federal civil rights claims that were pursued.  So

4   that's all that's left to be tried.

5           On March 1st, two months ago, this Court entered

6   a case management order setting the case for trial for nine

7   and a half months later on September 20th.  Is that nine

8   and a half months?  Eight and a half months?  Way off in

9   the fall.  So filed the order on March 1st setting it for

10  trial on September 20th, which seemed reasonable to the

11  Court given that the matter was filed in 2017 and is

12  literally, with one oddball exception, the oldest matter on

13  this Court's docket.

14          The case management order set forth a glide path

15  of tasks that the lawyers would need to complete and abide

16  by to bring us in for a trial that would commence on

17  September 20th.  More recently, the Court chambers was

18  contacted by the defense with significant concerns about

19  the viability of the Court's glide path of tasks.  The

20  defendants believe that it's too aggressive and that

21  there's too much remaining discovery, that it's just not

22  feasible that the case can be tried on September 20th.

23          Essentially, a motion capturing these sentiments,

24  which is styled as a "Motion for expansion of discovery

25  scope and period," was filed on April 14th.  And they

1  accurately lay out the history of the case, which I
2  summarized.  But they also point out that lots of fact
3  witnesses that have been identified, we have all these
4  damages issues, lots and lots of handwringing, and there's
5  just no way we can get this done, it's impossible.  And we
6  need to have those deadlines extended, we need to have the
7  trial date kicked down the road, and we need the Court to
8  authorize more depositions and interrogatories than the
9  rules would ordinarily envision.

10         To the Court's knowledge, the plaintiffs have not
11  filed a response to the motion.  I'm not sure whether --
12  technically, whether their time to file a response has run
13  or not.  It's close.  But we did receive from Mr. Bledsoe
14  an e-mail on April 15th that, to a certain extent, they
15  agree that the timeline and glide path to trial is
16  aggressive, but my take-away was that they are willing to
17  meet it, and they think that they can meet it.  Perhaps we
18  can rearrange some of the dates, extend some of the
19  individual line items within the scheduling order, but they
20  think it's doable to try the case in September.  And that's
21  a high-level summary.

22         Then, this week, the defense files Document 109
23  which is titled, "Defendant's joint motion for dismissal
24  with and without prejudice."  The defendants point
25  categorically to two different situations here.  One is

1  these Arkansas Civil Rights Act claims, these state law
2  claims, that were hanging out in the shadows of the federal
3  civil rights claims that, after the appellate history of
4  the case that I recited a few moments ago completed and had
5  been disposed of, technically these ACRA claims are still
6  there, although they are no longer in the shadow because
7  there is nothing to cover them.  And they say that for the
8  same reasons that the federal civil rights claims have been
9  dismissed, that the state civil rights claims should be
10  dismissed as well, and with prejudice.

11        Separately from that issue, the defendants say,
12  and while we're at it, there's some other state law claims,
13  namely the substance of the plaintiffs' remaining claims,
14  the privacy tort claims, that this Court has proper
15  jurisdiction of, given the procedural history of the case,
16  that those should be dismissed without prejudice so that
17  the plaintiffs, if they choose, could refile them in state
18  court.  And basically the state court judge, they are sure,
19  would be delighted to have this case tried in his or her
20  venue and would have more time, you know, to work on stuff
21  like this.

22        This was just filed a couple of days ago, so
23  obviously, the Court wouldn't necessarily expect the
24  plaintiffs to have filed a response yet.  But we need to at
25  least air some of these things out.  Why don't we go after

1  the low-hanging fruit first.

2              The notion that the Arkansas civil rights claims

3  should be dismissed with prejudice does not strike me as

4  something that should be very controversial.

5              Who would like to address that for the

6  plaintiffs?

7              MR. BLEDSOE:  Your Honor, this is Steve Bledsoe.

8  I think that's right.  We wanted to take a -- our

9  opposition to this motion I believe is due May 10th.  We

10 want to take just a quick look at that, but frankly, I

11 think if they had approached us, we probably would have

12 stipulated to the dismissal of these claims.  So I think

13 that's right, although Ms. Won, on our team, is taking a

14 final look at that.  We understood those claims would be

15 gone, so unless we find something that surprises us, that's

16 right.

17             THE COURT:  All right.  So we will certainly

18 allow you to respond, but just kind of for planning

19 purposes, we're thinking that the ACRA claims will go away.

20             And, again, your time hasn't run, but can you

21 share any of your thinking on the defense suggestion that

22 my colleagues down the street would be a much better venue

23 to try the remaining claims and whether you join in that

24 suggestion or not?

25             MR. BLEDSOE:  Well, and I could do -- I have a

1    little argument on that, but I'll just give you, the short

2    version is, the Court -- we have great respect for the

3    Court.  And Your Honor has put a lot of time, effort, and

4    work into this case, and knows the case pretty well.  I've

5    been back to Arkansas in front of you a couple of times.

6         We think for purposes of fairness to the

7    plaintiffs, who have been waiting to have their day in

8    Court for four years, and judicial efficiency and kind of

9    all those rules, that we're going to ask that this Court

10   keep jurisdiction over this case and that it go to trial if

11   not in September, then a reasonably short period of time.

12   So we're going to oppose that aspect of the motion, for

13   sure.

14        THE COURT:  All right.  Well, the Court will

15   exercise restraint for the time being until it sees the

16   official responsive position, but I don't think it's going

17   to come as any surprise, given the amount of time that this

18   Court has invested in this matter, and in the interest of

19   judicial efficiency overall, the Court has proper

20   jurisdiction.  It does not envision a scenario, absent

21   agreement of the parties especially, in which it is going

22   to be what effectively would be granting a motion to

23   remand.  I'm just not going to do that.  That's my

24   inclination, subject to seeing the plaintiffs' response.

25        So from reading the tea leaves here, that means

1   that the remaining state law claims, which is to say the

2   non-ACRA claims, remain for trial.  And now we need to

3   discuss why it is that we can't be ready to go to trial on

4   September 20th.

5           In reading through the defendants' motion, having

6   been in similar shoes in a prior lifetime, I get where you

7   all are coming from.  It seems like an incredibly daunting

8   task.  I certainly do not see anything inappropriate or

9   untoward about you laying all of this out and asking the

10  Court for this.  And I am certainly willing to work with

11  the parties on reframing some of the task deadlines and

12  using any other tools available on the Court's tool belt to

13  develop a glide past that will work better.  I still would

14  like to get the case to trial on September 20th.  You may

15  very well convince me that it just isn't possible, but your

16  motion doesn't do that.  Your motion says there's a lot of

17  witnesses and we're going to have to take depositions and

18  there are experts and this stuff takes time.  Okay.  Those

19  statements are all true in the abstract.

20          But there was an initial Joint Rule 26 report

21  that the parties filed in September of 2017.  Ya'll have

22  met before.  The issues have been exhaustively briefed at

23  every conceivable level of the federal court system.  The

24  facts as to what occurred as it relates to police report,

25  police interviews, many years later, the subsequent release

1  of the statements, publication of those statements, there

2  are large swaths that are not in dispute.

3        It occurs to me that the damages area is a little

4  dicey because while the plaintiffs, through FOIA, probably

5  know all there is for the defendants to say, the defendants

6  do not know all that there is that the plaintiffs might

7  say, especially on how damages are being calculated.  Okay.

8  That's fair.  But if the Court could use some of the tools

9  on its tool belt to shorten response times, to order ya'll

10 to clear various weeks on your calendars so that we're

11 going to set aside two weeks to take these 20-something

12 fact witness depositions, and then we're going to pre-set

13 aside another week or two for expert depositions, we can

14 move some of the task deadlines back.

15       Although not ideal, we can still be conducting

16 discovery into August.  It's not ideal, I get it.  But nor

17 is it ideal that a case that has been pending for four

18 years would be further continued.  And what's layered on

19 top of all of this is that, for the most part, for the last

20 year, we've been under a jury trial moratorium in this

21 district because of COVID.  I think, and I'm proud of the

22 fact that we have been able to move our docket along as

23 well as we have.  But there are just certain -- there's

24 just a certain pile of cases where the litigants have

25 represented to the Court that they are going to have to be

1  tried, and so every time we would extend the moratorium, we
2  would have to kick their trial down the road again.  So, I
3  mean, from the Court's perspective, I feel a little bit
4  like an air traffic controller in a bad storm.  We have all
5  these planes that are circling waiting for the skies to
6  clear, and as soon as they do, we have one plane after
7  another after another that needs to land.

8            And I appreciate that your calendars, this has
9  all wreaked havoc on your calendars.  And I get that.  I
10  understand that.  But from my side of the ledger, this
11  isn't as simple as, "Just give us three months."  I don't
12  have an opening three months out, unless I kick somebody
13  else out of their slot.  So I hear what you're saying.  You
14  may very well convince me that it's impossible.  I have
15  been in the trenches.  Ya'll know that I have been in the
16  trenches before I came to this position.  I have empathy
17  for your situation.  I would not want to be you and what
18  your summer would look like, and I'm empathetic towards
19  that.  But I'd like to try the case on September 20th.  And
20  if there is a way that ya'll can agree on deadlines to make
21  that happen, that remains my -- that remains what the Court
22  would like to do.

23            All right.  I've said my spiel.  My
24  understanding, Mr. Bledsoe, I've kind of told you what my
25  understanding of the plaintiffs' position is, but I'm just

1  working from your e-mail.  Before I turn to the defendants

2  and let them attempt to persuade me otherwise, what is the

3  plaintiffs' position?

4        MR. BLEDSOE:  We would like to keep the

5  September 20 trial date as well, Your Honor.  I will say a

6  little bit of new information.  I didn't have this

7  information at the time I sent my e-mail because our expert

8  reports weren't as far along, and I wasn't sure what the

9  damages claims were.

10        But we are streamlining this case.  We are not

11  seeking -- we're not going to seek any damages for lost

12  wages, lost past earnings, or lost future earnings.  The

13  categories of damages we're going to seek, it's basically

14  all going to be based on the witnesses' testimony.  And our

15  experts would be a life care plan involving the cost of

16  therapeutic intervention in these four women's lives over a

17  period of time to address the emotional issues that are

18  arisen from this nationwide disclosure since they're public

19  figures.  And then the emotional distress type damages and

20  punitive damages.  So that removes kind of a major element

21  of deposition and even expert work from this case.

22        So we're happy to work with the defendants on

23  deadlines.  But the depositions, we don't think they need

24  25 depositions, but if they want to take 25 depositions,

25  I'm not going to light myself on fire to stop that.  But

1   this is not a case that I think is going to be ripe for

2   summary judgment for either party, so the summary judgment

3   dates are for the most part irrelevant.  We'll be ready to

4   produce our expert reports on Monday.  They'll see what we

5   are claiming, because that was the date, May 3rd, and then

6   we can go forward with depositions.

7           We're going to put on a pretty streamlined,

8   direct case.  We're not going to lard it up with a bunch of

9   additional extraneous witnesses, so I think we can get it

10  done.  I don't think they need 25 depositions.  If they

11  want to take 15, I mean, one of the positions that he says,

12  oh, we need to depose people to see who held documents.

13  Well, clearly, more than just the immediate family and the

14  police department -- I'll just give this as an example --

15  knew something had happened to someone.  But the way they

16  are pursuing this we don't think is a defense, because

17  there's no question that the public at large and the nation

18  at large was not aware of who did what to whom specific.

19          I mean, it just is -- a lot of what they have

20  asked for we think is not proper or not even going to be a

21  valid defense.  But I'm not going to light myself on fire

22  to stop them from taking depositions if they think they

23  need it.  We think we can extend the fact cutoff date and

24  get everything done, because the summary judgment date is

25  really going to be irrelevant from our perspective on that.

1   That's the short -- that's kind of the short version of our

2   position, I guess.  Maybe not so short.

3          THE COURT:  Okay.  But just to be sure I

4   understand what you're saying about damages, the plaintiffs

5   were on a television program that ultimately was canceled,

6   and at least there was a temporal relationship to the

7   canceling of that programming with the disclosures that

8   were made.

9          Do I hear you saying that the plaintiffs are not

10  seeking any damages from any resulting economic impact of

11  the disclosure of this information on their T.V. careers,

12  for lack of a better term?

13         MR. BLEDSOE:  That is correct, Your Honor.  And

14  you didn't really ask the question, but, frankly, on the

15  way the T.V. show was set up, the family got most of the

16  money.  The girls were working, I don't know what the

17  numbers were, but for 15 or 20 dollars an hour.  That

18  aspect of the case would take more trouble to try, cost

19  more in experts than we think makes sense, because we think

20  that the guts of the case is the emotional damages and cost

21  to these girls.

22         THE COURT:  Okay.  All right.  Thank you very

23  much.  I'm going to mute ya'll, Mr. Bledsoe, or you can.

24  Thank you.

25         Mr. Eichmann, you want to go first?  Mr. Kieklak,

1  who wants to go first?

2  　　　　　MR. EICHMANN:  Your Honor, may it please the

3  Court.  Thank you very much for your time.  I want to make

4  sure you hear me all right, Judge Brooks.

5  　　　　　THE COURT:  I can hear you, but I can't see who

6  you are.  Let me change my view.  There we go.  I've got

7  you on full screen.

8  　　　　　MR. KIEKLAK:  Oh, I'm sorry to hear that.

9  　　　　　So, Your Honor, again, may it please the Court,

10  and thank you for hearing us.  Justin and Susan are in the

11  room with me, and I know that Jason put a lot of work into

12  the motion.  I'm sure he's going to want to speak too, so I

13  won't take all of that thunder away, if that's okay, Your

14  Honor.

15  　　　　　But what I want to start off with is what

16  opposing counsel just ended with.  And it is striking.  It

17  is striking, Your Honor.  Opposing counsel just suggested

18  that you don't need to have a summary judgment deadline in

19  this case.  Let's look back real quick about your

20  exposition of the case.  Everything that you mentioned in

21  those four years occurred on the complaint, on the

22  complaint itself.  The issues were not joined until after

23  the Eighth Circuit -- I'm sorry -- after the Supreme Court

24  denied Cert.  The issues were not joined until then.  So

25  you haven't considered in this case, Your Honor, a single

1  fact that is a fact as the kind of facts that the Court or

2  a jury finds after the issues are joined.  It's never -- no

3  fact has ever been introduced to you; only allegations.

4  And now you have the plaintiff telling you that you won't

5  even need summary judgment.

6          Your Honor, there's a story that the Court has no

7  idea exists.  And that story has several pieces.  And they

8  relate both to liability in this case under the remaining

9  claims, and of course to damages.  And, Your Honor, I think

10  we all hear you loud and clear.  I know I do hear you loud

11  and clear.  And I want to say right away, you tell us to

12  try this case in September, we will try this case in

13  September.  It's that simple.  We will.  But I wanted to

14  explain to you a little bit more about what we're thinking

15  and try to take it out of the, you know, "We have busy

16  calendars, it's just not possible," to what this case

17  really is about and what really is going on out there.

18          So I think your order in March did set a trial, I

19  think in six months.  And we are accustomed to a case

20  management hearing before the Court.  And the Court has

21  educated us on the value of those and the way the Court

22  conducts them and how useful they can be in not just

23  narrowing topics, but focusing on discovery, the kind of

24  things that will need to be done and methods that will be

25  used.  We haven't had that in this case.

1          The Rule 26 report that you mentioned, Your

2     Honor, these plaintiffs -- these defendants, Springdale and

3     Washington County, were not a part of that.  We did not

4     participate in that because we had, at that point, received

5     a stay from the Court on disclosures and a stay from

6     discovery.  And that stay remained in effect -- actually,

7     I'm sure it's been formally removed, but certainly we would

8     consider it removed now that the administrative stay has

9     been lifted.  So we had not participated -- we have not --

10    until the ensuing weeks.  We have worked with opposing

11    counsel now, and I must say very cordially, if I may,

12    regarding disclosures and having sort of a Rule 26 initial

13    meeting that you would require.  That had not been done

14    until now.  That had not been done until the recent weeks.

15    And so while the case is very old, we really are beginning

16    the case now.

17          Your Honor, you might say, "Well, what have you

18    been doing for four years?"  And of course there was

19    briefing, quite a bit of briefing.  And in addition to

20    that, we have undergone some investigation.  Not

21    intensively, but some investigation.  And one of the

22    reasons is, is because of the very, very sort of persistent

23    information, as I think opposing counsel alluded to, that

24    the allegations in the police report were known in the

25    community.  And in fact the existence of the police report,

 1   and even perhaps copies of the police report were known in

 2   the community.  And so when opposing counsel -- and I don't

 3   blame him -- dismisses that fact by saying, "Well, we do

 4   know this, it wasn't known to the country."  Well, we don't

 5   know that, Your Honor.  Nor do we know what the legal

 6   distinction is under these two state torts, which I believe

 7   Your Honor has described as "novel" in your opinions, Your

 8   Honor.

 9            What's the distinction between five people or 50

10   or 500 knowing?  Or people in one state, or two states, or

11   four states?  Or maybe the entire internet knowing about

12   the allegations, about the abuse, and about the police

13   involvement?  And so we believe that it is important to our

14   clients, to the defendants, and they deserve a thorough

15   investigation of that and discovery in that, which we have

16   begun and we are now doing in earnest.  And we believe that

17   they are entitled to that because that may very well be a

18   bar to recovery.  In other words, it may go to liability,

19   which would be properly brought to you under Rule 56, Your

20   Honor, which we fully intend to do if those facts bear out

21   like they are being indicated right now.

22            Just as an example --

23            THE COURT:  Let me just interrupt on this one

24   point.

25            I hear what you're saying about the matter

1   spending time on appeal, that you being granted stay not to

2   do certain things pending the Court's rulings.  This whole

3   thing about the administrative stay.  The term

4   "administrative," that's a courtside, back-office entry.

5   The Court never stayed your ability, certainly not after

6   the Supreme Court ruled, to start working on the case.

7           But separate and apart from all of that, the

8   rules of discovery envision that there are certain things

9   that you can do to make discovery about the other side's

10  case, the formal mechanisms by which you do that, the

11  written discovery, the noticing of depositions.  But what

12  you've just transitioned to start talking about is your

13  side of the case and your own investigation.  And I don't

14  understand under what procedural rule or order that you

15  were barred from representing your clients and conducting

16  your own investigation for the last four years.

17          MR. KIEKLAK:  Very fair, Your Honor.

18          What we will require now to present facts in

19  court and possibly to the jury are third-party depositions,

20  and maybe third-party discovery.  In other words, one of

21  the most well known is that when the family was going to be

22  on the Oprah show a few years ago, a tip was given to the

23  Oprah show producers about the abuse.  This was several

24  years prior to the FOIA release.  And the Oprah producers

25  did enough investigation to where they canceled the show

1    and made a call to the hotline that eventually generated

2    the police investigation.  So we know that there are people

3    who we need to establish in Illinois that knew about the

4    abuse, how they found out about it, and to what extent they

5    spread that information.

6              We also know that in paragraph 51 of the

7    complaint itself, the plaintiffs allege that the magazine

8    that published it indicated that they knew about the

9    existence of the abuse and the report.  They were seeking a

10   copy of it, an official copy of it, perhaps.  They may have

11   already had another copy, but wanted cover before they

12   published.  There again, that allegation is their

13   allegation so we need to nail that down again with

14   third-party discovery, probably of the people who were at

15   the magazine, which I believe that's New Jersey and

16   Los Angeles.

17             And so when we are talking about that sort of

18   far-flung discovery -- and, again, that's a result of our

19   investigation -- but we need to now nail that down with the

20   discovery rules, the federal discovery rules, Your Honor.

21   And so those are some of the reasons that we were thinking,

22   whew, we've got a lot to do in six months.

23             And I need to be very candid with the Court.  At

24   the time of that motion, we had a conflict as well.  Two of

25   us were in trial.  That trial just got moved, Your Honor,

1  this week, in fact yesterday to another date down the road.

2  So we no longer have an actual conflict with two trials.  I

3  wanted to make sure the Court was aware of that, much as

4  I'm chagrined to say.  So we don't have a conflict.

5        And so those things, the fact that we're in

6  discovery now where I don't know that we would have been

7  able to conduct actual depositions and use subpoenas of the

8  Court prior to when the Court had jurisdiction.  Those are

9  a few things I wanted to mention.  There are some more

10  details that Jason may want to go through.  And, Judge, I

11  would like to answer any questions you may have about that.

12        THE COURT:  All right.  Thank you, Mr. Kieklak.

13        Mr. Owens?

14        MR. OWENS:  Thank you, Your Honor.

15        Good afternoon.  A couple of points that I would

16  add.  Tom brought up that the public defendants, which

17  would be the County and the City folks, were not part of

18  the Rule 26 report that was filed earlier in this case.

19  That's accurate.  We are not signatories to that report.

20        In that report, the plaintiffs and the private

21  defendants agreed that 12 months would be an appropriate

22  time to conduct discovery in this case.  They also agreed

23  at that point that they didn't envision any expert

24  testimony in the case at that time.  Now they do envision

25  expert testimony, but think that the discovery deadline

1  should be three months instead of 12.  The damages claims

2  are identical except for the concession that was made

3  moments ago, and there was an e-mail to that effect a few

4  days ago, I believe.

5        It's the defendants' position that we still need

6  to conduct some probably rather substantial discovery on

7  economic condition, because the economic condition of these

8  plaintiffs substantially improved after these disclosures

9  precisely because, it's our understanding, they chose to

10  sell this story in various ways, both on television and in

11  an upcoming book, I believe, and in other manners.  And

12  that's obviously very relevant to these questions of harm

13  and the need for therapeutic intervention, particularly in

14  the long term, which is apparently where the plaintiffs

15  have shifted on damages.  Certainly, they have changed from

16  thinking there would be no expert witnesses to now there

17  are going to be expert witnesses first part of next week.

18  All of those things we think stretch out the appeal

19  deadline -- not the appeal deadline, I'm sorry -- the

20  discovery deadline.

21        I would also point out that, as Tom said, the

22  Washington County defendants certainly anticipate filing a

23  motion for summary judgment in this case.  And I would

24  certainly anticipate that we would raise the defense of

25  qualified immunity again.  The Supreme Court has

1    specifically held that that defense can be raised both at
2    the motion to dismiss and the summary judgment phase.
3    Obviously, I can't prognosticate about the likelihood of
4    any further interlocutory appeals in this case because we
5    don't know how the facts are going to shake out, and
6    certainly don't know how the Court would rule based on the
7    full factual recitations of all the parties.
8            But I did want to raise that to the Court just so
9    that there's no surprise for anyone, that this is the way
10   the defendants see the case.  That we certainly intend to
11   make motions for summary judgment to allow the Court to see
12   all of the facts that we're able to discover, which I think
13   will take significant, not only discovery in the normal
14   sense of deposing the seven parties and the 21 witnesses
15   that the plaintiffs have disclosed, in addition to the
16   expert witnesses that they have not yet disclosed.  But
17   these will be all over the country.  We anticipate we will
18   do discovery, at least currently in Chicago, in Los
19   Angeles, in New York.  And all that just takes some time.
20           I certainly would agree with Tom.  We will jump
21   on it with all vigor and pursue this as quickly as the
22   Court orders.  But we just wanted to let the Court know
23   what's behind our request here.
24           THE COURT:  I'm trying to get my mind wrapped
25   around something that you just said.

1          MR. OWENS:  Yes, Your Honor.

2          THE COURT:  Which is that it would be your

3    intention under Rule 56 to file a dispositive motion based

4    on qualified immunity.

5          MR. OWENS:  Yes, Your Honor.

6          THE COURT:  And hypothetically, if the Court

7    denied your motion, are you suggesting that you would

8    procedurally be entitled to a second interlocutory appeal?

9          MR. OWENS:  It's my understanding of the law,

10   Your Honor, is that there are entitlements to raise

11   qualified immunity, including through an interlocutory

12   appeal, at both phases of the pretrial case.

13          I apologize that I don't have a citation on that.

14   I've previously done the research on that, Your Honor.  I

15   believe there's a Supreme Court case, and I'll find that

16   and send that to the Court's attention.  I apologize for

17   not having it today.

18          THE COURT:  Well, I consider you a subject matter

19   expert in this field, so I take what you're saying at face

20   value.  If you would find that cite and send it to me.  I'm

21   still trying to get my mind wrapped around that.  And,

22   frankly, that's not something that I had considered would

23   be possible, so please do that.

24          MR. BLEDSOE:  Your Honor, could I address one

25   issue?

1              THE COURT:  Please.

2              MR. BLEDSOE:  If they want to take a bunch of

3    depositions, like I mentioned before, frankly, we're not

4    going to light ourselves on fire to oppose that.  But I

5    will say, and this is kind of maybe the only area in life

6    where COVID has sped up things.  These depositions are

7    going to happen over Zoom.  People aren't going to be

8    flying into Jersey and Los Angeles and Chicago.  Frankly,

9    it's a lot easier to get these things scheduled and get

10   them done quickly when you don't have to travel.

11             So if they want to take their depositions, I

12   think 25 seems like a pretty large number, and I doubt that

13   actually, frankly, they will actually get anywhere close to

14   that.  I think a lot of this is posturing to get a

15   continuance.  But with the advent of Zoom depositions,

16   these could all be done if we just extended the fact

17   discovery cutoff to August 6th as we already essentially

18   tacitly agreed to.

19             THE COURT:  So you mentioned earlier that you've

20   scaled back your damages theory.  When and in what format

21   do you plan to lay that out for the defendants?

22             MR. BLEDSOE:  The damages that we'll be seeking,

23   I've sent them a couple of e-mails, but I realize that's

24   not formal.  Our damages theories will be laid out in the

25   expert reports.  Because the expert reports will include

1  essentially a damage figure, a specific dollar amount for a

2  life care type plan.  And then suggest that the -- it will

3  discuss in detail the emotional distress, anguish and pain

4  and suffering essentially caused by this conduct.  And then

5  that's going to be left up to the jury.  I don't have a

6  number for that.  That's something that's going to be

7  squarely within the province of the jury.

8          THE COURT:  Right.  And that's Monday, then?

9          MR. BLEDSOE:  Yes.

10          THE COURT:  All right.  Let me throw out a

11  suggestion and what the Court would be inclined to do as it

12  relates to expanding the scope of discovery permissible

13  under the rules.

14          I hear where the defendants are coming from.

15  There is a certain good deal of merit to their argument.  I

16  don't completely buy the notion that something has

17  prevented them from investigating things, because they have

18  been representing these clients for well over four years at

19  this point, and there's nothing under the rules that would

20  have prevented them from running down witnesses and that

21  sort of thing.  The only way they have been hamstrung is in

22  perpetuating testimony or formal interrogatories among the

23  parties.  But third-party discovery or third-party

24  investigations, I mean, they've had four years to do that.

25          Nevertheless, here's where we find ourselves.  I

1  would like the parties, upon completion of this phone call,
2  to either stay on the line, we'll move you to your own
3  private Zoom room or whatever we need to do.  But either
4  today, or if you would prefer certainly by the end of the
5  day tomorrow, to figure out when ya'll can block off a half
6  day, if it takes that much on your calendars, sometime
7  after Monday, but preferably next week, to take a hard
8  look.  This will be after the defendants will know what the
9  damages theory is going to be.  To get a calendar out and
10 to take a hard look at scheduling depositions and revising
11 dates on the Court's glide path, if you need to, and
12 basically to work this out among yourselves.  And if you
13 need an order of the Court to shorten the time to do
14 things, if you need the Court's assistance in requiring
15 people to appear, whatever the case may be, the Court will
16 help out.

17         In terms of expanding the scope of discovery, I'm
18 not just going to blindly expand it, especially if there's
19 opposition, to 21 or 25, whatever the request was, in one
20 bite.  What seems more logical would be to, let's say
21 expand it to 15 initially.  Take those 15 depositions.
22 This will force the parties to prioritize who it is that
23 they are deposing.  After you have used up those 15
24 depositions, then you're in a much better position to come
25 back to the Court and say, "Here's how we have used our 15,

1 there are still two more, five more, 10 more, depositions

2 that are crucial for us to take for these reasons."  That

3 lets the Court -- it gives the Court better information to

4 go on, rather than just this abstract notion that, "We need

5 25 because we just think it's going to take that many."

6      So when you sit down and talk about it,

7 understand that at least the first cut is, you are going to

8 be limited -- the Court will expand it, but the limit will

9 be 15 per side.  In this conference, I also want you to

10 identify days or blocks of weeks in the near future when,

11 even if you don't have the names of who is going to be

12 deposed, even if you haven't sent out the notices yet, you

13 at least have these days reserved on your respective

14 calendars.

15      Through the course of your meeting and

16 conferring, through the course of the plaintiffs' better

17 understanding how the defendants potentially would be

18 prejudiced by this timeline, maybe ya'll come back to the

19 Court with a status report that I will require and you

20 agree.  And through that mechanism, maybe the Court would

21 entertain moving the case.  But I'm not going to move it,

22 I'm not going to move the trial until ya'll have seriously

23 sat down across the table, so to speak, and explored a

24 pathway forward that will preserve this September 20th

25 date.

1          If you both do it in good faith and come back and

2     say, "It can't be done," I would be inclined to go along

3     with that, understanding that I have no idea when I will be

4     able to get you back in.  If you can't agree, then in the

5     status report that you will submit, the defendants can

6     further refine exactly what the stumbling blocks are with

7     more specificity.  I understand the big picture that you've

8     laid out in your motion and that you have argued today.

9     But in your status report following your good faith meet

10    and confer, you can add some more context and some more

11    specificity as to what the particular stumbling block is.

12    And understand if it's running down the names of some

13    witnesses that you could have been doing in the last four

14    years and you need more time to do that, that won't be very

15    persuasive.  But if there are more structural things, I

16    haven't made up my mind.  I will still hear you out.  But I

17    would like ya'll to meet and confer soon, and I would like

18    a joint status report e-mailed to chambers by no later than

19    the end of business on May 10th.

20          And this will be a report of your meeting, what

21    you were able to agree on in terms of agreements to dates

22    that are currently in the case management order, agreements

23    to modifying certain of those dates.  And then each side

24    can have a section in the joint report where you state your

25    position at that point in time and why you disagree with

1  the other side, if you do disagree.

2            And like I said, if you come back after a good

3  faith conferral process and you're agreed that it can't be

4  done, well, I'll have to take a look at that.  I just don't

5  know when I would be able to get you in.  And then I would

6  also appreciate, as I said, Mr. Owens sending us that case,

7  because that is a potential wrench that the Court hadn't

8  even considered.

9            MR. OWENS:  Well, one of the other advantages of

10  being able to do these hearings on Zoom is the ability to

11  do such research while you're sitting here.

12            The case is *Behrens v. Pelletier*.  That's an

13  Arkansas pronunciation.  But it's 516 U.S. 299.  516 U.S.

14  299.  It's a 1996 decision.

15            THE COURT:  '96?

16            MR. OWENS:  And it held that -- the question was

17  whether you can take a second interlocutory appeal after

18  your interlocutory appeal on a motion to dismiss was

19  rejected.  And the Supreme Court answered yes.

20            THE COURT:  The law on qualified immunity has

21  reinvented itself three times since '96.

22            MR. OWENS:  At least.

23            THE COURT:  Okay.  We'll take a look at that.

24            MR. OWENS:  Thank you, Your Honor.

25            MR. BLEDSOE:  Your Honor, can I raise one more

1  issue?

2          THE COURT:  Yes.

3          MR. BLEDSOE:  I hesitate to do that because I'm

4  actually late for a meeting.

5          Would Your Honor in this type of case where I

6  would say that the expert reports are going to contain very

7  personal and private information, including information on

8  marital relations, would Your Honor entertain a protective

9  order with the additional "attorneys' eyes only" level of

10 protection?

11         This is about as sensitive as it gets, so I just

12 want to raise that issue.  Because otherwise, we will just

13 stipulate to the other one, because we need to get a

14 protective order in place pretty quickly.

15         THE COURT:  I will certainly entertain it.

16 Please confer with the other side.  Certainly, if you

17 agree, that's fine.

18         MR. BLEDSOE:  We will discuss that in our

19 conference.  Because we've proposed it, but we haven't

20 heard back from them.  But I think there was maybe some

21 concern that, Your Honor, those were disfavored.  But I

22 think this is a pretty unique situation.

23         THE COURT:  I agree.  I agree.

24         MR. BLEDSOE:  Thank you, Your Honor.

25         THE COURT:  All right.  I don't know where you

1   all are physically situated, so let me offer you a couple
2   of options here.
3        Ya'll can just agree on the record now to get
4   together later today or tomorrow to set a date next week
5   for your meet and confer, or we can segregate you off into
6   a private Zoom room and ya'll can continue the discussion
7   right now.
8        What would you prefer, Mr. Bledsoe?
9        MR. BLEDSOE:  Your Honor, Mr. Larson and I are
10  actually in Logan, Utah, in a diner because we're headed to
11  a client meeting.  We flew up here this morning.
12       So what I would suggest is that we -- we've had
13  really good relations with the other party.  We've had no
14  trouble scheduling meet and confers so far.  So I would
15  suggest, I'll send out an e-mail on my way to the meeting
16  suggesting some times tomorrow or Monday, and then we will
17  do it that way, if that's okay.
18       THE COURT:  That's fine.  That's fine.
19       MR. BLEDSOE:  Okay.
20       THE COURT:  All right.  Anything else from the
21  defense, Mr. Kieklak?
22       MR. KIEKLAK:  Thank you, Your Honor.  I think in
23  that meet and confer, we will handle some of the other
24  disclosure issues as well, Your Honor.  We'll try to get as
25  much of that done as we can.  So thank you.

1          THE COURT:  All right.  Anything else, Mr. Owens?

2          MR. OWENS:  No, Your Honor.  Thank you.

3          THE COURT:  All right.  Thank you all very much.

4   I appreciate it.  We'll go off the record.

5          (proceedings concluded at 2:45 p.m.)

C E R T I F I C A T E

      I, Paula K. Barden, CCR, RPR, RMR, Federal Official Court Reporter, in and for the United States District Court for the Western District of Arkansas, do hereby certify that pursuant to Section 753, Title 28, United States Code that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

      Dated this 3rd day of May 2021.

Paula K. Barden, CCR, RPR, RMR, # 700
Federal Official Court Reporter
Western District of Arkansas

