IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| JILL DILLARD, JESSA SEAWALD, JINGER VUOLO, and JOY DUGGAR | PLAINTIFFS |
| VS. | NO. 17-CV-05089-TLB |
| CITY OF SPRINGDALE, ARKANSAS; WASHINGTON COUNTY, ARKANSAS; KATHY O'KELLEY, in her individual and official capacities; RICK HOYT, in his individual and official capacities; STEVE ZEGA, in his official capacity; BAUER PUBLISHING COMPANY, L.P.; BAUER MAGAZINE L.P.; BAUER MEDIA GROUP, L.P.; BAUER, INC.; HENRICH BAUER NORTH AMERICA, INC.; BAUER MEDIA GROUP USA, LLC; and DOES 1-10, inclusive | DEFENDANTS |

**BRIEF IN SUPPORT OF DEFENDANTS'
JOINT MOTION FOR JUDGMENT ON THE PLEADINGS**

**I. INTRODUCTION**

The Plaintiffs filed their Complaint in this case on May 18, 2017, alleging a number of legal causes of action against a host of Defendants. Doc. # 1. Through an extended procedural lead-up (actually, just the full resolutions of initial motions to dismiss by all Defendants), those claims have now been narrowed, as has the pool of Defendants. The Plaintiffs' three remaining claims - now made against only a few Defendants affiliated with Washington County and the City of Springdale, respectively - are tort claims made under Arkansas law: (1) Outrage, (2) Invasion of Privacy by Intrusion upon Seclusion, and (3) Invasion of Privacy by Public Disclosure of Private Facts. Those ***exact*** claims were made by the Plaintiffs' brother, however, in the ***exact*** factual context of this case - in fact, the relevant allegations and other pleading incidents in the two cases are substantively identical -

and were dismissed by an Arkansas Circuit Court on motions by the Defendants for judgment on the pleadings. That dismissal was affirmed by the Arkansas Court of Appeals in *[Joshua ] Duggar v. City of Springdale*, 2020 Ark.App. 220. Critically, Duggar then sought to appeal that holding, but the Supreme Court rejected the appeal; that rejection can only be viewed as evincing the Supreme Court's satisfaction with the correctness o the Court of Appeals' holdings. Based on the Court of Appeals opinion in *Duggar* (with which the Arkansas Supreme Court found no fault despite being invited to do so), and for the same reasons delineated therein, the Defendants in this case are entitled to judgment on the pleadings[1] and the dismissal of the Plaintiff's claims against them.

## II. ARGUMENT

The Plaintiffs remaining claims are: 1) Outrage, (2) Invasion of Privacy by Intrusion upon Seclusion, and (3) Invasion of Privacy by Public Disclosure of Private Facts. Doc. # 1. The Arkansas Court of Appeals affirmed the dismissal of all of those claims in exactly the same factual context and in light of substantively identical pleadings. *See Duggar v. City of Springdale*, 2020 Ark.App. 220. Respectfully, that case should control and dictates the dismissal of the Plaintiffs' Complaint on the pleadings in this case.

### Federal Court Decisions on State Law Claims

"When [the highest court of a state, here the Arkansas Supreme Court] has spoken[2], its pronouncement is to be accepted by federal courts as defining state law unless it has later given clear and persuasive indication that its pronouncement will be modified, limited or

---

[1] The Defendants plan to file motions for summary judgment, as well, as the *Duggar* case entitles them to judgment on the undisputed facts as surely as on the pleadings.

[2] The Defendants respectfully contend that the Arkansas Supreme Court has spoken by rejecting Duggar's appeal from the Arkansas Court of Appeals. This rejection speaks volumes, of course, as the Supreme Court surely would have heard the appeal if it thought the Court of Appeals got it wrong.

restricted." *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236, 61 S. Ct. 179, 183, 85 L. Ed. 139 (1940). Where that has not occurred, a reviewing court must "predict" how the Arkansas Supreme Court would interpret the law. *See Nebraska Plastics, Inc. v. Holland Colors Americas, Inc.*, 408 F.3d 410, 420 (8th Cir. 2005)(citing *Ehlis v. Shire Richwood, Inc.*, 367 F.3d 1013, 1016 (8th Cir. 2004)). "The highest state court is the final authority on state law, but it is still the duty of the federal courts, where the state law supplies the rule of decision, to ascertain and apply that law even though it has not been expounded by the highest court of the State." *Fid. Union Tr. Co. v. Field*, 311 U.S. 169, 177-80, 61 S. Ct. 176, 85 L. Ed. 109 (1940). An intermediate state court in declaring and applying the state law is acting as an organ of the State and its determination, in the absence of more convincing evidence of what the state law is, should be followed by a federal court in deciding a state question. *Id.*

In *West v. American Telephone and Telegraph Co.*, 311 U.S. 223, 61 S. Ct. 179, 85 L. Ed. 139 (1940), the U.S. Supreme Court decided a case where an intermediate appellate court of the State had decided the question as between the same parties in a prior suit. In *West*, the highest state court refused to review the lower court's decision, but set forth the broader principle as applicable to the decision of an intermediate court, in the absence of a decision by the highest court, whether the question is one of statute or common law. In fact, the U.S. Supreme Court has held that, while an opinion of the State's highest court is preferred where available, a trial-level court's opinion is entitled to "like respect as announcing the law of the State." *Fid. Union Tr. Co.*, 311 U.S. at 180. Later decisions held that federal courts may no longer be bound by state trial or intermediate court opinions, but "should attribute [them] some weight . . . where the highest court of the State has not spoken on the point." *Comm'r v. Estate of Bosch*, 387 U.S. at 465 ("[A]n intermediate appellate state court [decision] is a datum for ascertaining state law which is not to be disregarded by a

3

federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." (citation and internal quotation marks omitted))); *see also* 17A James Wm. Moore et al., Moore's Federal Practice § 124.20 (3d ed. 1999)("Decisions of intermediate state appellate courts usually must be followed . . . [and] federal courts should give some weight to state trial courts decisions." (emphasis and title case omitted)). The Eighth Circuit has stated it this way in an Iowa case: "We must predict how the Iowa Supreme Court would rule, and we follow decisions of the intermediate state court when they are the best evidence of Iowa law." *Amera-Seiki Corp. v. Cincinnati Ins. Co.*, 721 F.3d 582, 585 (8th Cir. 2013).

In light of the above citations, the Defendants respectfully contend that the Arkansas Supreme Courts's express declination of the plaintiff's appeal from the opinion of the Arkansas Court of Appeals in *Duggar v. City of Springdale*, 2020 Ark.App. 220 imbues the *Duggar* opinion with binding effect, particularly where it is a highly similar case on a factual level (or, as here, substantively identical) and/or presents the only substantive law on a claim(s).

### Judgment on the Pleadings Standard

The opinion in *Duggar v. City of Springdale*, 2020 Ark.App. 220 affirmed the dismissal of the plaintiff's claims on motions for judgment on the pleadings by the City of Springdale and Washington County and the Arkansas Supreme Court thereafter affirmed the Court of Appeals, directly or indirectly, by rejecting Duggar's appeal from the holdings by the Court of appeals in that case. As such, the *Duggar* opinon should be read as binding and, because this case presents substantively identical allegations, the same result should occur here.

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is reviewed using the same standard that governs a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *NanoMech, Inc. v. Suresh*, 777 F.3d 1020, 1023 (8th Cir. 2015) (citing *McIvor v. Credit Control Servs., Inc.*, 773 F.3d 909, 912-13 (8th Cir. 2014)). Therefore, courts must consider whether the complaint pleads "'enough

facts to state a claim that is plausible on its face.'" *NanoMech*, 777 F.3d at 1023 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). "'[L]egal conclusions' and 'threadbare recitations of the elements of a cause of action, supported by mere conclusory statements,' are not entitled to a presumption of truth when considering the sufficiency of a complaint." *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678). The complaint's factual allegations must be "sufficient [*3] to 'raise a right to relief above the speculative level . . . .'" *McDonough v. Anoka Cty.*, 799 F.3d 931, 946 (8th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555). The Court does not accept as true any "'legal conclusion couched as a factual allegation.'" *Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 373 (8th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678). Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 960 (8th Cir. 2015) (quoting Iqbal, 556 U.S. at 678). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Mickelson v. Cty. of Ramsey*, 823 F.3d 918, 923 (8th Cir. 2016) (alteration in original) (quoting *Iqbal*, 556 U.S. at 679).

### 1. **No Outrage**

In Josh Duggar's case in state court, the Arkansas Court of Appeals held as follows regarding his claim for outrage:

> B. Outrage
>
> The tort of outrage—also known as the intentional infliction of emotional distress—subjects an actor to civil liability for committing extreme

> and outrageous behavior. *Sawada v. Walmart Stores, Inc.*, 2015 Ark. App. 549, 473 S.W.3d 60. To succeed on an outrage claim, a plaintiff must demonstrate four elements: (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was "extreme and outrageous," "beyond all possible bounds of decency," and "utterly intolerable in a civilized community"; (3) the actions of the defendant were the cause of the plaintiffs distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it. *Id.* at 15, 473 S.W.3d at 60. The type of conduct that constitutes outrage must be determined on a case-by-case basis. *Holman v. Flores*, 2018 Ark. App. 298, 551 S.W.3d 1. The tort of outrage is narrowly viewed by Arkansas appellate courts, which require clear-cut proof to establish the elements. *Id.* Merely describing conduct as outrageous does not make it so. *Id.* The tort of outrage "should not and does not open the doors of the courthouse to every slight insult or indignity one must endure in life." *Id.* at 6-7, 551 S.W.3d at 4 (citing *Kiersey v. Jeffrey*, 369 Ark. 220, 222, 253 S.W.3d 438, 441 (2007)).
>
> In his complaint, Duggar alleges that the juvenile code and the Arkansas Child Maltreatment Act provide that juvenile records shall not be subject to disclosure under FOIA; that there is a public policy that juvenile records "should not follow individuals into adult life and the harmful consequences resulting from said disclosure"; that as a result of the disclosure of protected juvenile records, he has sustained damages; that such disclosure of protected juvenile records "relating to activities which occurred when [Duggar] was not in possession of the full faculties of personal discretion and discernment typically available to an adult" in violation of Arkansas law constitutes "willful, wanton, extreme and outrageous conduct"; and such conduct caused damage to Duggar in the form of severe emotional distress.
>
> We hold that the circuit court correctly dismissed Duggar's outrage claim because he did not state facts sufficient to support his claim. Duggar makes no allegation that any person intended to inflict emotional distress upon him. Duggar also failed to allege how he suffered mental distress. Discomfort, upset, embarrassment, anxiety, loss of sleep, and depression do not meet the "mental distress" element of the tort of outrage. *Coombs v. J.B. Hunt Transport, Inc.*, 2012 Ark. App. 24, 388 S.W.3d 456. *See also Kiersey, supra.* Duggar does not even allege this type of mental distress; he simply asserts that the conduct caused him "severe emotional distress." Again, merely alleging that conduct is outrageous does not make it so. *Holman, supra.* We affirm the circuit court's dismissal of Duggar's claim of outrage.

*Duggar v. City of Springdale*, 2020 Ark .App. 220, 10.

In this case, the Plaintiffs alleged, in substantively identical fashion (in fact, if anything, the Plaintiffs in this case have pleaded less than did Duggar in the state court case),

that the Juvenile Code and the Arkansas Child Maltreatment Act provide that juvenile records shall not be subject to disclosure under FOIA (Doc. # 1, e.g., ¶¶ 5, 12, 71, 79, 129, & 136); that there is a public policy that juvenile records should not follow individuals into adult life and the harmful consequences resulting from said disclosure (Doc. # 1, e.g., ¶¶ 131 & 137); that as a result of the disclosure of protected juvenile records, they sustained damages (Doc. # 1, e.g., ¶¶ 142 & 143, & "Prayer for Relief"); that such disclosure of protected juvenile records constitutes "extreme and outrageous conduct"(Doc. # 1, e.g., ¶¶ 117, 119 & 123); and that such conduct caused damage to them in the form of severe emotional distress (Doc. # 1, ¶ 116). Notably, the Plaintiffs in this case did not even allege, as did Josh Duggar in the state court case, that the Defendants' actions constituted "willful" or "wanton" conduct. Doc. # 1.

The holding by the Arkansas Court of Appeals should likewise govern the outcome of the Plaintiffs' outrage claim in this case because, as the Circuit Court and the Court of Appeals both held in *Duggar* (and the Supreme Court effectively affirmed by not even hearing an appeal of the *Duggar* opinion), sufficient facts were not pleaded to support an outrage claim. As in *Duggar*, the Plaintiffs in this case make no allegation that any person intended to inflict emotional distress upon them. Instead, they allege that the City and County Defendants "acted intentionally and unreasonably ***in releasing***" the reports. Doc. # 1, ¶¶116 & 117 (emphasis added). In fact, the Plaintiffs in this case specifically avoided alleging intentional infliction of emotional distress (as opposed to intentional fulfillment of any FOIA request) by any of the City or County Defendants in this case (presumably because, as discovery has borne out, they had no colorable basis to make such an unfounded allegation), instead alleging - as did Duggar in state court - that the City and County Defendants acted with "reckless disregard" in relation to their outrage claim. Doc. # 1, ¶118;

*see also* Wash. Co. Circ. Ct., Case # 72CV-18-668-1, Duggar's Complaint (March 9, 2018), ¶ 25. Such allegations were not sufficient for the Arkansas Court of Appeals in *Duggar* (or the Supreme Court, which rejected a subsequent appeal) and likewise call for dismissal in this case.

The Plaintiffs in this case - like Duggar - also failed to allege *how* they suffered mental distress as a result of the allegedly outrageous conduct by the City and County Defendants. This was important to the Court of Appeals, because, as it noted in its opinion. "comfort, upset, embarrassment, anxiety, loss of sleep, and depression do not meet the "mental distress" element of the tort of outrage." *Id.* (citing *Coombs v. J.B. Hunt Transport, Inc.*, 2012 Ark. App. 24, 388 S.W.3d 456 & *Kiersey, supra*). The Court of appeals noted that Duggar did not even allege this type of mental distress, but simply that the allegedly outrageous conduct caused him "severe emotional distress." The Plaintiffs in this case make a substantively identical allegation in their outrage claim, asserting only that the City and County Defendants' allegedly outrageous conduct caused them "several emotional, mental, and psyshological distress." Doc. #1, 119. The addition of synonymous, conclusory adjectives to the Plaintiff's substantively identical allegations certainly does not save the Plaintiffs' outrage claim. *See, e.g., Zink, supra.* To the contrary, the Arkansas Court of Appeals opinion controls and dictates the dismissal of the Plaintiffs' outrage claim here for (at least) precisely the same reasons articulated in the *Duggar* case.

### 2. No Violation of Privacy by Intrusion Upon Seclusion

In the lawsuit filed by the Plaintiffs' brother, and decided last year by the Arkansas Court of Appeals, the Court upheld the dismissal of his claim of invasion of privacy by intrusion upon seclusion (and the Supreme Court refused to even hear an appeal of that holding, effectively affirming it):

C. Invasion of Privacy by Intrusion Upon Seclusion

Arkansas recognizes intrusion as one of the four actionable forms of invasion of privacy. *Pingatore v. Union Pac. R.R. Co.*, 2017 Ark. App. 459, 530 S.W.3d 372. To prove intrusion upon seclusion, a plaintiff must establish (1) that the plaintiff sustained damages; (2) that the defendant intentionally intruded physically or otherwise upon plaintiffs solitude or seclusion and believed or was substantially certain that the defendant lacked the necessary legal authority or personal permission, invitation, or valid consent to commit the intrusive act; (3) that the intrusion was of a kind that would be highly offensive to a reasonable person, as the result of conduct to which a reasonable person would strongly object; (4) that the plaintiff conducted himself or herself in a manner consistent with an actual expectation of privacy; and (5) that the defendant's intrusion was the proximate cause of the plaintiff's damages. *Coombs*, 2012 Ark. App. 24, at 4-5, 388 S.W.3d at 460-61.

To support his claim for intrusion upon seclusion, Duggar alleged the City and County intentionally intruded upon his seclusion by releasing protected juvenile-investigation reports; they lacked the necessary legal authority, as well as the personal permission, invitation, or valid consent to release said records; such intrusion was of a kind that would be highly objectionable to a reasonable person; he "conducted himself and engaged in a public life consisting of appearance in a popular reality TV series, leadership in national political and civic organizations, public speaking, and otherwise in a manner consistent with his actual expectation of privacy"; he sustained damages in the form of significant emotional distress, mental anguish, and substantial lost income; and the City's and County's intrusions were a proximate cause of his damages.

Duggar relies on Arkansas Code Annotated section 9.27-309(j) in arguing that the circuit court abused its discretion in dismissing his claim for intrusion upon seclusion. When the City and County released the records, in May 2015, that subsection provided:

> Records of the arrest of a juvenile, the detention of a juvenile, and the proceedings under this subchapter shall be confidential and shall not be subject to disclosure under the Freedom of Information Act of 1967, § 25-19-101 et seq., unless:
> (1) Authorized by a written order of the juvenile division of circuit court;
> (2) the arrest or the proceedings under this subchapter result in the juvenile's being formally charged in the criminal division of circuit court for a felony; or
> (3) As allowed under the section or § 9-27-320.

Ark. Code Ann. § 9.27-309(j) (Supp. 2019).

But Duggar, born in 1988, was not a juvenile at the time of the investigation in December 2006, even though the conduct that was investigated allegedly occurred when Duggar was a juvenile.2 This section therefore does not protect the records at issue from disclosure.

Duggar also relies on the Child Maltreatment Act to support his claim for

9

> intrusion by seclusion. Arkansas Code Annotated section 12.18-104(a) (Repl. 2016) provides:
>
>> Any data, records, reports, or documents that are created, collected, or compiled by or on behalf of the Department of Human Services, the Department of Arkansas State Police, or other entity authorized under this chapter to perform investigations or provide services to children, individuals, or families shall not be subject to disclosure under the Freedom of Information Act of 1967, § 25.19-101 et seq.
>
> Duggar's complaint fails to state a claim upon which relief can be granted in three respects. First, even if the records in question were protected from release under this statutory provision, Duggar failed to state facts showing that the City's and County's release of the records in contravention of the statute was intentional. This circuit court will not presume intent. It must be proved, and in the pleadings phase, it must be alleged to withstand a motion to dismiss under Rule 12(b)(6). At most, the allegations reflect that the City's and County's release of the records may have been negligent or the result of a misinterpretation of the law. But there are no allegations that anyone acted intentionally.
>
> Second, Duggar failed to state facts as to how he conducted himself in a manner consistent with an actual expectation of privacy. Duggar stated in his complaint that he and his family were subjects of a reality television series "from which a certain level of celebrity locally, nationally, and internationally was attributable to each and every member of the immediate family." Finally, Duggar failed to state how he suffered damages. He makes a generalized statement that he was emotionally distressed, mentally anguished, and had "substantial lost income," which is not sufficient to support a claim for relief.

*Duggar v. City of Springdale*, 2020 Ark. App. 220, 11-14.

In this case, the Plaintiffs alleged, in substantively identical fashion (in fact, if anything, the Plaintiffs in this case have pleaded less than did Duggar in the state court case), that the City and County intruded upon their seclusion by releasing allegedly protected juvenile-investigation reports; (importantly, the Plaintiffs in this case alleged that reports were released "knowingly" instead of "intentionally," as alleged by their brother, Josh, in his case) (Doc. # 1, ¶ 102); that they lacked the necessary legal authority, as well as the personal permission, invitation, or valid consent to release said records (Doc. # 1, ¶ 103); that such intrusion was of a kind that would be highly objectionable to a reasonable person (Doc. # 1, ¶ 104); that they conducted themselves in a manner consistent with an actual expectation of privacy (Doc. # 1, ¶ 105); that they sustained damages in the form of significant emotional distress and mental anguish

(Josh Duggar also alleged damages in the form of substantial lost income, as did these Plaintiffs, although they have since abandoned that claim) (Doc. # 1, ¶ 106); and the City's and County's intrusions were a proximate cause of their damages (Doc. # 1, ¶ 106).

The holding by the Arkansas Court of Appeals should likewise govern the outcome of the Plaintiffs' intrusion upon seclusion claim in this case because, as the Circuit Court and the Court of Appeals both held in *Duggar*, sufficient facts were not pleaded to support an intrusion upon seclusion claim. First, in *Duggar*, the Arkansas Court of Appeals held, as a matter of law - and despite contrary assertions by Duggar, the Plaintiffs in this case, and the Juvenile Judge, the Honorable Stacy Zimmerman, who weighed in on the question in the immediate wake of the redacted disclosures of the subject police reports - that the Arkansas Juvenile Code ***"does not protect the records at issue from disclosure."*** *See supra.* This is the only Arkansas law on this point and should dictate the result in this case with respect to the Plaintiff's claims under the Juvenile Code, particularly in light of the Arkansas Supreme Court's express refusal to even hear an appeal of the holding.

Likewise, the Arkansas Court of Appeals holding with respect to claims arising from the Child Maltreatment Act (CMA) should apply with equal force in this case, where the Plaintiff's pleadings, and attendant deficiencies, are substantively identical to those reviewed in the Duggar case. In *Duggar*, the Arkansas Court of Appeals affirmed dismissal of the intrusion upon seclusion claim on three distinct grounds (without deciding one way or the other on whether and how the CMA might apply in the context of this case of what information or records it might exempt; it certainly did not hold that the CMA effectively repealed the FOIA as to police agencies by making every record created or possessed by an such agency exempt from the FOIA), any of which would be sufficient to dismiss and all of which are substantively identical to the pleadings in this case. First, the Court of Appeals

held that Duggar failed to state facts showing that the City's and County's release of the records in contravention of the statute was intentional, holding that it "will not presume intent." *See supra.* As the Court noted in Duggar, intent must be proved, and in the pleadings phase, it must be alleged to withstand a motion to dismiss under Rule 12(b)(6). The Court of Appeals in Duggar held that, "[a]t most, the allegations reflect that the City's and County's release of the records may have been negligent or the result of a misinterpretation of the law. But there are no allegations that anyone acted intentionally." Respectfully, the substantively identical allegations in the Plaintiff's Complaint in this case reflect the same and, thus, should result in dismissal.

The Court of Appeals also held that Duggar "failed to state facts as to how he conducted himself in a manner consistent with an actual expectation of privacy" because "he ***and his family***" were subjects of a reality television series "from which a certain level of celebrity locally, nationally, and internationally was attributable to ***each and every member of the immediate family***." *See supra* (Emphases added). The Court of Appeals holding that this fact called for dismissal of Duggar's case - in the only statement of Arkansas law on this question and in a substantively identical factual situation - would certainly seem to dictate the same result in this case, particularly in light of the Arkansas Supreme Court's express refusal to even entertain an appeal of the holding.

Finally, the Court of Appeals affirmed the dismissal of Duggar's intrusion upon seclusion claim because he "failed to state how he suffered damages." *See supra.* The Court noted that Duggar made "a generalized statement that he was emotionally distressed, mentally anguished, and had 'substantial lost income,'" but that such allegations were "not sufficient to support a claim for relief." *Id.* Of course, the Plaintiff's claim of damages arising as a result of the alleged intrusion upon seclusion (Doc. # 1, ¶¶ 106-107) are substantively identical to Duggar's allegations in that regard, except that the Plaintiffs in this case have actually alleged less, as they have directly abandoned any claim for lost income.

In the end, and for the reasons set out by the Arkansas Court of Appeals in the *Duggar*

opinion (and affirmed by the Arkansas Supreme Court in its declination of any further appeal), the Plaintiffs' claim for intrusion upon should be dismissed on the pleadings under Rule 12(b)(6).

### 3. No Violation of Privacy by Public Disclosure of Private Facts

In Josh Duggar's state court lawsuit, decided last year by the Arkansas Court of Appeals, the Court affirmed the dismissal of his claim of invasion of privacy by intrusion upon seclusion:

> D. Invasion of Privacy by Public Disclosure of Private Facts
>
> Public disclosure of private facts is publicity of a highly objectionable kind, given to private information about the plaintiff, even though it is true, and no action would lie for defamation. McMullen v. McHughes Law Firm, 2015 Ark. 15, 454 S.W.3d 200. To succeed on this invasion-of-privacy claim, Duggar must prove the elements set forth in Arkansas Model Jury Instruction 422, namely (1) that he sustained damages; (2) that appellees made a public disclosure of a fact about Duggar; (3) that prior to disclosure the fact was not known to the public; (4) that a reasonable person would find the disclosure highly offensive; (5) that appellees knew or should have known that the disclosed fact was private; (6) that the fact was not of legitimate public concern; and (7) that the public disclosure was the proximate cause of Duggar's damages.
>
> Duggar's claim must fail because he could not show that appellees publicly disclosed a private fact. Rule 10(d) of the Arkansas Rules of Civil Procedure pertains to forms of pleadings and states,
>
>> Required Exhibits. A copy of any written instrument or document upon which a claim or defense is based shall be attached as an exhibit to the pleading in which such claim or defense is averred unless good cause is shown for its absence in such pleading.
>
> Duggar did not attach the investigative reports upon which his complaint is based as exhibits to his complaint. Accordingly, there is no way to know what information was contained in the reports and whether they contained private facts. In the order dismissing the federal lawsuit, attached to its answer pursuant to Rule 10(d), the United State District Court found that Duggar had acknowledged in his complaint that In Touch Weekly had published a story about Duggar having been named in an underage sex probe

> before the City or the County made any records disclosures. If the information contained in the records was already disseminated or known to the public prior to the City's and County's releasing the records, then there was no public disclosure of a private fact. We are unable to determine whether the information contained in the records was private or known to the public because Duggar did not attach the records pursuant to Rule 10(d). Duggar did not state a claim upon which relief can be granted; the circuit court's dismissal was therefore proper.

*Duggar v. City of Springdale*, 2020 Ark. App. 220, 14-16.

Like the their brother, the Plaintiffs in this case did not attach the investigative reports upon which their complaint was based as exhibits to their complaint. *See* Doc. # 1. Accordingly, there is no way to know, from the pleadings, what information was contained in the reports and whether they contained private facts. Also, like Duggar, the Plaintiffs in this case have acknowledged, in their complaint, that *In Touch Weekly* had published a story about Duggar having been named in an underage sex probe before the City or the County made any records disclosures. Doc. # 1, ¶51. Again, because of the conjunction of the Plaintiff's pleading acknowledgment (that a pre-disclosure article had been published about the matter) and deficiency (failure to attached the redacted reports that were disclosed in the FOIA requests), the pleadings do not show whether the information contained in the records was private or known to the public. As such, these Plaintiffs, like their brother, failed to state a claim upon which relief can be granted.

### III. CONCLUSION

For the reasons set forth herein, and pursuant to Rule 12(b)(6), the Defendants respectfully request that Plaintiff's Complaint be dismissed on the pleadings.

14

Respectfully submitted,

Rick Hoyt, et al,
*Defendants*

By:     __Jason E. Owens__
Jason E. Owens, #2003003
Ark. Bar. No. 2003003
JASON OWENS LAW FIRM, P.A.
**Mailing Address:** P.O. Box 850
Conway, Arkansas 72033-0850
**Physical Address:** 1023 Main Street, Suite 204
Conway, Arkansas 72032
Telephone: (501) 764-4334
Telefax: (501) 764-9173
Email: owens@jowenslawfirm.com

and

Thomas N. Kieklak (Ark. Bar No. 92262)
R. Justin Eichmann (Ark. Bar No. 2003145)
Morgan S. Doughty (Ark. Bar No. 2010158)
HARRINGTON, MILLER, KIEKLAK, EICHMANN & BROWN, P.A.
4710 S. Thompson, Suite 102
Springdale, AR 72764
Phone: (479) 751-6464
Fax: (479) 751-3715
Email: mdoughty@arkansaslaw.com
Email: tkieklak@arkansaslaw.com
E-mail: jeichmann@arkansaslaw.com

and

Susan Keller Kendall (Ark. Bar No. 98119)
KENDALL LAW FIRM, PLLC
3706 Pinnacle Hills Parkway, Suite 201
Rogers, Arkansas 72758
Phone: (479) 464-9828
Fax: (479) 464-9768
Email: skk@kendalllawfirm.com

COUNSEL FOR SPRINGDALE DEFENDANTS