**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION**

**JILL DILLARD, JESSA SEAWALD,**
**JINGER VUOLO, and JOY DUGGAR**                                    **PLAINTIFFS**

**VS.**                              **NO. 17-CV-05089-TLB**

**CITY OF SPRINGDALE, ARKANSAS;**
**WASHINGTON COUNTY, ARKANSAS;**
**KATHY O'KELLEY, in her individual**
**and official capacities;**
**RICK HOYT, in his individual and official capacities;**
**STEVE ZEGA, in his official capacity;**
**BAUER PUBLISHING COMPANY, L.P.;**
**BAUER MAGAZINE L.P.;**
**BAUER MEDIA GROUP, L.P.;**
**BAUER, INC.;**
**HENRICH BAUER NORTH AMERICA, INC.;**
**BAUER MEDIA GROUP USA, LLC; and**
**DOES 1-10, inclusive**                                    **DEFENDANTS**

**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

## I.  INTRODUCTION

The Plaintiffs in this case initially sued a host of Defendants under a number of legal causes of action, however, most of those claims against many of those Defendants have now been dismissed.  As against the "Separate Washington County Defendants" - Rick Hoyt and Washington County - the Plaintiffs' remaining claims are: 1) tort of invasion of privacy – public disclosure of private fact in violation of Arkansas law; 2) tort of invasion of privacy – intrusion upon seclusion in violation of Arkansas law; and 3) tort of outrage in violation of Arkansas law.  Doc. # 1. For the reasons set forth below, the Separate Washington County Defendants are entitled to qualified immunity, statutory tort immunity, vicarious liability immunity,  and summary judgment as a matter of law.

## II.  ARGUMENT

The Separate Washington County Defendants, Rick Hoyt and Washington County, are entitled to qualified immunity, statutory tort immunity, vicarious liability immunity,  and summary judgment as a matter of law with respect to the Plaintiffs' remaining claims of invasion of privacy

by public disclosure of private facts, invasion of privacy by intrusion upon seclusion, and outrage. Doc. # 1. "Summary judgment is appropriate when there is no dispute between the parties as to any genuine issues of material fact and when the moving party is entitled to a judgment as a matter of law." *Get Away Club, Inc. v. Coleman*, 969 F.2d 664 (8th Cir. 1992). All facts and inferences are looked at in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986).

For the reasons set forth below, the Separate Washington County Defendants are entitled to qualified immunity, statutory tort immunity, vicarious liability immunity,  and summary judgment as a matter of law.

### Adoption, Incorporation, & Summary Judgment Application of Motion & Brief for Judgment on the Pleadings Citations & Argument

The Defendants filed a joint motion for judgment on the pleadings in this case yesterday, in which the Defendants contended that the Arkansas Court of Appeals decision in *Duggar v. City of Springdale*, 2020 Ark.App. 220, an appeal of which was denied by the Arkansas Supreme Court (from which a presumption of approval must arise), governs this case, particularly in light of the substantively identical pleadings (and attendant deficiencies).  *See* Doc. ## 134-135.    The Defendants will not belabor those points here, but adopt and incorporate those citations and arguments herein by reference, as if set forth word for word.  Those citations and arguments apply with equal force to summary judgment (where they would be based on the undisputed facts rather than the pleadings).

### Statutory Tort Immunity Application & Analysis:

### Ark. Code Ann. §21-9-301

The remaining claims made by the Plaintiffs in this case are barred by the statutory tort immunity granted to the remaining Defendants by the Arkansas General Assembly.  That statute,

entitled "Tort liability - Immunity Declared," provides as follows, in pertinent part:

> (a) It is declared to be the public policy of the State of Arkansas that all counties … and all other political subdivisions of the state … shall be immune from liability and from suit for damages except to the extent that they may be covered by liability insurance.

Ark. Code Ann. § 21-9-301.  The immunity granted by the above-quoted statute to a county extends to the county's officials and employees. *Matthews v. Martin*, 280 Ark. 245, 658 S.W.2d 374 (1983).

Pursuant to Ark. Code Ann. § 21-9-301, the remaining claims should be dismissed because, under Ark. Code Ann. § 21-9-301, the remaining Defendants are "immune from liability and from suit for damages."  This plain, broad grant of immunity compels the dismissal of the Plaintiff's claims.

In a previous order on the Defendants' initial motions to dismiss in this case, dated May 17, 2021 the Court rejected this argument, holding that the Arkansas Supreme Court "foreclosed this argument" in the case of *Deitsch v. Tillery*, 309 Ark. 401, 833 S.W.2d 760 (1992), where it held, in pertinent part, that "Section 21-9-301 does not provide immunity for ... intentional acts ... only for negligent acts," *id.* at 407, and had "explicitly affirmed as recently as 2016" that it "has consistently held that §21-9-301 provides city employees immunity for negligent acts, but not intentional ones," explicitly declining to revisit the rule, *see Trammel v. Wright*, 2016 Ark. 147, at 5.  *See* Doc. # 62, p. 20.

Respectfully, the Defendants assert that the statutory tort immunity granted by §21-9-301 should apply to the Plaintiffs' claims in this case.  In the event that the Court is inclined to disagree[1], the Defendants would respectfully request that the Court reconsider one of its other previous rulings in this case and decline supplemental jurisdiction of these claims so that the Defendants can make their full arguments on the proper interpretation and application of §21-9-301 tort immunity.

The Defendants certainly understand that this Court is bound by Arkansas Supreme Court

---

[1] While the Defendants will certainly argue their position, they understand that this Court is bound by Arkansas Supreme Court precedent.  In fact, the Defendants' argument for declination of jurisdiction here is essentially based on the fact that this Court is bound by Supreme Court precedent to a greater degree than even the Supreme Court itself.

precedent, but respectfully contend that the Supreme Court's couching of its own precedent on municipal/county tort immunity under §21-9-301 as a binary choice between negligence and so-called "intentional torts" is an oversimplification  - and, thereby, a mischaracterization of its actual jurisprudential precedent.  The best examples of the this problem are the numerous cases where multiple courts, including the Arkansas Supreme Court, have applied §21-9-301 tort immunity to intentional tort claims.  In *Autry v. Lawrence*, 286 Ark. at 503, for instance, the Supreme Court applied the immunity to an action against a police officer for the tort of malicious prosecution. In *Harrington v. City of Greenbrier*, the Supreme Court applied this immunity to the tort of "deliberate fraud." 262 Ark. 773, 775, 561 S.W.2d 302, 304 (1978).  In *Loren D. Buttolph Trust v. Jarnagan*, the Supreme Court held that a mayor/waterworks manager was immune from liability under the statute for intentionally refusing to provide water service to a non-resident customer. 302 Ark. 393, 394 95, 789 S.W.2d 466, 467 (1990). In *City of Alexander v. Doss*, the Arkansas Court of Appeals stated that actions for trespass would be immunized under § 21-9-301. Ark. App. at 236. Additionally, the Arkansas Court of Appeals has granted immunity for intentional torts under Ark. Code Ann. § 21-9-301 and 19-10-305 (the state tort immunity statute) in at least two cases in the last year.  *See Monk v. Rogers*, 2021 Ark.App. 148 & *Elliott v. Morgan*, 2020 Ark. App. 297.

Federal courts applying Arkansas law have also granted immunity under the statute for so-called[2] intentional torts as well. *See Mosier v. Robinson*, 722 F. Supp. 555, 556 (W.D. Ark. 1989) (granting summary judgment to the county when a sheriff, while under the influence of alcohol, was alleged to have beaten a person in custody); *Dumond v. Conlee*, 710 F. Supp. 1270, 1273 (E.D. Ark. 1988) (finding the county to be immune under the above statute when a sheriff was alleged to have seized a castration victim's testicles, placed them in a jar, showed them to visitors in the sheriff's office, and ultimately flushed them down the toilet).

In short, the actual holdings in the cases demonstrate the willingness of all courts to apply

---

[2] Categorizing torts as intentional and/or negligent torts is not necessary to adjudicate any case and, thus, not a proper court function; to contrary, this artificial distinction was created by legal commentators.

the statute to so-called intentional torts.  These results occur precisely because they are called for by not only §21-9-301, but by Arkansas Supreme Court precedent, which has held that while a tort may be categorized as an intentional tort, an analysis of the application of immunity cannot stop with that determination. "Simply because an actor's conduct satisfies the type of intent necessary to establish the [tort], it does not follow that the same conduct is necessarily an intentional tort act that bars an application of the doctrine of qualified immunity." *Williams v. Pate*, 2015 Ark. App. 327, 463 S.W.3d 734, 737 (2015).  It is not the legal claim that the Court should look to in deciding whether immunity applies to a tort; rather, as the Arkansas Supreme Court recently made clear, the Court should look to the facts. *Trammell v. Wright*, 2016 Ark. 147, 489 S.W.3d 636 (2016); *See Autry v. Lawrence*, 286 Ark. 501, 696 S.W.2d 315 (1985) (finding that immunity applied against the state intentional tort of malicious prosecution); *See also City of Alexander v. Doss*, 102 Ark. App. 232, 283 S.W.3d 74 (2008) (qualified immunity applied to intentional tort where there was no deliberate conduct).  In this case, based on the facts - and specifically the facts related to intent (compulsory FOIA law, redaction of disclosures, no prior interactions or animus between the Plaintiffs and Defendants, etc., *see* Defendants' State of Facts) - dictate that §21-9-301 should apply pursuant to the Supreme Court's actual precedent.

In the event that the Court is inclined to disagree with the above analysis (which represents only a portion of the Defendants' full argument, as the Defendants would respectfully contend that even the full precedent of the Supreme Court on this point wrongly interprets and applies the subject statute), the Defendants would respectfully request that the Court reconsider a prior collateral ruling in this case and decline further supplemental jurisdiction of the Plaintiff's state law claims to allow the Defendants to make their full assertions of error in the only court with jurisdiction to fully rule and resolve them.  Of course, the Defendants' primary assertion on statutory tort immunity is that the clear language of the statute, which makes no distinction between so-called intentional torts and negligence, supports the Defendants' reading of A.C.A. §21-9-301 and demonstrates the error in the Supreme Court's precedent.  In its 2017 order, the Court even noted that, "in a vacuum, the

Defendants might have a good argument," before turning to its discussion of the holdings in *Deitsch* and *Trammel* and holding that those opinions were "binding." In a more recent opinion, this Court denied the Defendants' motion to decline supplemental jurisdiction of the remaining claims, which all arise under Arkansas law. *See* Doc. #118. The combination of these two orders effectively prevent the Defendants from being able to make, or obtain resolution of their argument with respect to the Supreme Court's misreading of the municipal tort immunity statute. This Court is "bound" by the Supreme Court's past opinions, leaving no room for arguments of revision of those opinions by the Defendants and, thus, effectively altering principles of *stare decisis* (since the Arkansas Supreme Court can overrule its prior opinions, but no federal court can) in a manner that operates to the Defendants' detriment. In short, this process leaves the Defendants without recourse on these arguments, which are well-founded and sincere. This one of the reasons why the Eighth Circuit has said that "[i]n the 'usual case' where all federal claims are dismissed... 'the balance of factors to be considered under the supplemental jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *St. Louis Effort for AIDS v. Lindley-Myers*, 877 F.3d 1069, 1073 (8th Cir. 2017).

Declination of supplemental jurisdiction is necessary in this case because of the Arkansas Supreme Court's departure from the plain language of the tort immunity statute. "Municipal immunity for governmental functions has been the rule in Arkansas for over a hundred years." *Matthews v. Martin*, 280 Ark. 345, 346, 658 S.W.2d 374, 375 (1983). It is true that the Arkansas Supreme Court has held that Ark. Code Ann. § 21-9-301 only immunizes municipalities and their officials/employees from some tort actions, (*see Deitsch v. Tillery*, 309 Ark. 401, 833 S.W.2d 760 (1992), *but see Autry, Harrington, Jarnagan*, *Doss*, *Monk, Elliott, Mosier, & Dumond, supra* (illustrative list of cases all applying statutory tort immunity to intentional torts)), however, no case has ever provided any explanation for how the court arrived at this misreading of the plain language of the immunity statute. In *Deitsch*, the court cited to *Waire v. Joseph*, 308 Ark. 528, 825 S.W.2d 760 (1992), and in *Waire,* the court cited to *Battle v. Harris*, 298 Ark. 241, 766 S.W.2d 431 (1989),

but neither *Waire* nor *Battle* explain the misreading or its genesis.

In *Deitsch*, the Supreme Court simply stated that Ark. Code Ann. § 21-9-301 was never interpreted to include intentional torts committed by public officials. 241 Ark at 245, 766 S.W.2d at 433. The language of Ark. Code Ann. § 21-9-301 is clear and unambiguous and, under the rules of statutory construction, the statute should be applied to all tort claims for damages.  "The first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language." *Quanex Ark. Okla. Gas Corp. v. Macsteel Div. of Quanex*, 370 Ark. 481, 485, 262 S.W.3d 147, 150 (2007) (citing *Weiss v. McFadden*, 353 Ark. 868, 120 S.W.3d 545 (2003). "Where the language of a statute is clear and unambiguous and susceptible of a sensible construction, resort to extrinsic and collateral aids in construing it is not permitted. *Britt v. State*, 261 Ark. 488, 495, 549 S.W.2d 84, 87 (1977) (citing *Cross v. Graham*, 224 Ark. 277, 272 S.W.2d 682 (1954)). "A statute is ambiguous only where it is open to two or more constructions, or where it is of such obscure or doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning." *City of Fort Smith v. Carter*, 364 Ark. 100, 108, 216 S.W.3d 594, 599 (2005) (citing *ACW, Inc. v. Weiss*, 329 Ark. 302, 947 S.W.2d 770 (1997).  Statutes are construed "so that no word is left void, superfluous or insignificant," and every word is given meaning and effect if possible. *Weiss v. Maples*, 369 Ark. 282, 286, 253 S.W.3d 907, 911 (2007); *Jeske*, 365 Ark. at 279, 229 S.W.3d at 23.  The language of Ark. Code. Ann. § 21-9-301 is clear and unambiguous. *See Hardin v. City of Devalls Bluff*, 256 Ark. 480, 483, 508 S.W.2d 559, 562 (1974) (quoting *Sullivan, Adm'r. v. Pulaski Cnty.*, 247 Ark. 259, 445 S.W.2d 94 (1969) (stating that a previous version of the act was "a statement of public policy that is plain and unambiguous and leaves no room for doubt.").

The statute plainly states that municipalities "shall be immune from liability and from suit for damages." Ark. Code Ann. § 21-9-301 (a). It is the court's duty "to declare what the law is, and not what it ought to be."  *Hardin*, 256 Ark. at 485.  No language in the statute indicates that the immunity applies only to negligent torts.  Conversely, the counterpart tort immunity statute that

applies to state employees, Ark. Code Ann. § 19-10-305, contains an exception to immunity for malicious acts or omissions.  No such exception language is in the municipal tort immunity statute. Had the legislature intended to include such limiting language, it could have - and presumably would have  - done so.

In addition to the plain language of the statute, the legislative history also supports the Defendants' reading.  The intent of the Legislature in enacting Ark. Code Ann. § 21-9-301 was to protect municipalities from "high judgments," whether from negligent or intentional torts. "The basic rule of statutory construction is to give effect to the intent of the legislature." *Weiss v. Maples*, 369 Ark. at 286; *State ex rel. Ark. Dep't of Parks and Tourism v. Jeske*, 365 at 285. "[W]e ascertain the legislative intent from the language used in the statute itself." *Britt v. State*, 261 at 495.  In a concurring opinion in *Southwest Ark. Communications, Inc. v. Arrington*, the Honorable Justice Glaze lamented that the lack of a system of record keeping for proceedings in the General Assembly makes it difficult to construe the intent of the legislators. 296 Ark. 141, 149, 753 S.W.2d 267, 271 (1988) (Glaze J., concurring). The paucity of information regarding legislative history in Arkansas makes it necessary to rely on the Act itself and its title to ascertain the intent of the legislature. *Id.* at 148, 270; *See also Consumers Utilities Rate Advocacy Division v. Ark. Public Svc. Comm'n*, 99 Ark. App. 228, 235, 258 S.W.3d 758, 765 (2007) ("The title of an act, while not part of the law, may be referred to in order to help ascertain the intent of the General Assembly").

Here, Ark Code. Ann. § 21-9-301 was initially enacted as Act 165 in 1969. The title of the Act reads as follows:

> AN ACT to Declare It to Be the Public Policy of the State of Arkansas That the State and Its Political Subdivision Shall Not Be Liable for Tort Under the Laws of the State of Arkansas and to Provide That No Action Shall Be Maintained Therefor; to Require All Political Subdivisions to Carry Liability Insurance On Their Motor Vehicles; to Declare An Emergency; and for Other Purposes.

Section 4 of the Act reads:

> It is hereby found and determined by the General Assembly that because of the decision of the Arkansas Supreme Court in *Parish v. Pitts*, 244 Ark. 1239, municipalities and all units of local government are in imminent danger of

bankruptcy because of tort lawsuits and vital public services are in danger of being discontinued. Therefore, an emergency is hereby declared to exist and this Act being immediately necessary to protect the public peace, health and safety, shall take effect immediately on its passage and approval.

In *Thompson v. Sanford*, the Supreme Court recognized that the valid legislative purpose of Ark. Code. Ann. § 21-9-301 involved the need for immunity to protect governmental entities "from exposure to high judgments which would destroy them." 281 Ark. 365, 368, 663 S.W.2d 932, 934 (1984); *see also White v. City of Newport*, 326 Ark. 667, 672, 933 S.W.2d 800, 803 (1996). There is no indication that the concern expressed by the legislature in Section 4 of the Act was limited only to negligent torts. Actions based on so-called intentional torts have just as much potential to result in high judgments as do actions based on negligence. There is nothing to indicate that the legislature intended to protect governmental entities from only judgments resulting only from some tort claims and not others.

The Defendants also contend that the Arkansas Supreme Court has also misread the statute's language that guarantees that the Defendants are immune "from liability ***and from suit*** for damages." Ark. Code Ann. 21-9-301 (emphasis added).  The Arkansas Supreme Court has held "that the immunity afforded by § 21-9-301 is an affirmative defense that must be specifically pled and proven in order to be considered . . . ." *Vent v. Johnson*, 2009 Ark. 92, 303 S.W.3d 46, 53. Specifically, it is "incumbent upon the [Defendants] to plead and prove that [they are] entitled to immunity due to a lack of insurance." *Id.*   This is, respectfully, a misreading of the tort immunity statute, as such a scheme - lack of insurance as an affirmative defense - would necessarily strip every defendant of the "immunity from suit" they have been guaranteed under Ark. Code Ann. §21-9-301.  No public defendant, regardless of the existence or lack of liability insurance, could ever repel a suit at its inception (i.e., motion to dismiss), regardless of the defendant's actual lack of insurance and/or the plaintiff's failure to plead the existence of liability insurance, thereby causing immune parties to endure the rigors of litigation before being granted their "immunity from suit."

Another problem created by the Supreme Court's misreading of "immunity from suit" as an

9

affirmative defense (the two are very different concepts with opposite burdens of proof) is that it requires immune public defendants to "prove a negative," namely that they lack liability insurance. This "Salem witch trial" test is notoriously fraught, which  explains why such burdens have all but disappeared from American law.  Of course, it would be no problem at all for the plaintiff to conduct a reasonable investigation before filing her complaint in order to plead the existence of applicable liability insurance, if any.  This would be a very simple exercise in light of Arkansas' robust Freedom of Information Act and its requirements for prompt disclosures (generally 3 days).  This would also be simple because, as a matter of fact, no city or county in the State of Arkansas carries general liability insurance.  Requiring each county and city to prove the absence of the same in every case is, thus, a doubly onerous, unnecessary, and extra-statutory requirement.  In this case, of course, the Plaintiff has not pled the existence of any applicable liability insurance and the Defendants should therefore be entitled to this statutory "immunity from suit" and dismissed from this case.

Alternatively, if the Court is inclined to require proof of the absence of liability insurance, two affidavits (Hoyt and Norman) are attached as exhibits hereto, establishing the lack of liability insurance for the Separate Washington County Defendants.  The Separate County Defendants do not have liability insurance.  *Id.* The County's membership in the Association of Arkansas Counties Risk Management Fund (AACRMF) also does not negate immunity, as the courts have specifically found, on multiple occasions over decades, that "the AACRMF is not liability insurance" and that "coverage for negligent tort liability is expressly excluded" from AACRMF membership.[3]  *See Hearnsberger v. Bradley County*, 2007 U.S. Dist.Ct. LEXIS 60383, 2007 WL 2350287,   No. 06-2076 (W. D. Ark. 2007) (citing *Kauffman v. Board of Trustees of the Ass'n of Ark. Counties Risk Mgmt. Fund*, No. 87-2076 (W. D. Ark. 1988)) & *Elliott v. Morgan*, 2020 Ark. App. 297. Additionally, as the United States District Court for the Western District of Arkansas held in the *Hearnsberger* case, "even if [the] County had negligence/tort liability insurance, the proper

---

[3] The Defendants have also asserted this fact by affidavit and the Plaintiff can offer no rebutting proof.

defendant to such a suit would be the alleged insurer." *Id.* (citing Ark. Code Ann. § 23-79-210).

In the end, the Defendants believe, and respectfully contend that the Arkansas Supreme Court's precedent is substantively different from the formulaic and binary way in which it has sometimes been couched (by the Supreme Court). Under the Supreme Court's actual precedent, statutory tort immunity under § 21-9-301 should apply to bar the Plaintiffs' claims. In the event that the Court is inclined to disagree with this analysis, the Defendants would respectfully request that the Court decline further supplemental jurisdiction of the Plaintiff's state law claims to allow the Defendants to make their full assertions of error in court with jurisdiction to fully rule and resolve them.

## Qualified Immunity

At least two immunities should bar the Plaintiff's claims against remaining Defendants in this case: (1) statutory tort immunity under Ark. Code Ann. §21-9-301, *see supra*, and (2) qualified good faith immunity under the common law. Unfortunately, these immunities have been subject to a confusing, and ultimately incorrect, conflation in Arkansas (at least in summary dicta, although they have actually been applied separately and differently). However, qualified good faith immunity should nevertheless apply to immunize the Defendants from the Plaintiffs' claims against them. Qualified immunity has nearly always been litigated, in both state and federal courts, in the context of claims of constitutional violation (apparently because of the broad statutory tort immunities granted to public officials by most states, like A.C.A. §§21-9-301 and 19-10-305, *supra* and because there is no federal equivalent to common law state torts[4]). The same immunity, however, applies to all claims against public officials, even those brought under state common law causes of action.

In developing the modern jurisprudence of qualified immunity (again, in the context of constitutional litigation under 42 U.S.C. §1983), the U.S. Supreme Court has carefully and repeatedly explained that the modern qualified immunity defense is not a product of judicial fiat, but

---

[4] Although the Federal Tort Claims Act (FTCA) does create some tort liability under federal statutory law, individuals officers cannot be sued under the FTCA. Additionally, in suing the entity, no liability will attach if the allegedly wrongful acts or omissions were discretionary.

an application and development of the immunities universally available to all public officers - against

all claims - at common law (and certainly prior to 1871):

> Section 1983 on its face admits of no defense of official immunity. It subjects to liability "every person" who, acting under color of state law, commits the prohibited acts. In *Tenney v. Brandhove*, 341 U.S. 367, 376, 95 L. Ed. 1019, 71 S. Ct. 783 (1951), however, we held that Congress did not intend § 1983 to abrogate immunities "well grounded in history and reason." Certain immunities were so well established in 1871, when § 1983 was enacted, that "we presume that Congress would have specifically so provided had it wished to abolish" them. *Pierson v. Ray*, 386 U.S. 547, 554-555, 18 L. Ed. 2d 288, 87 S. Ct. 1213 (1967). *See also Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 258, 69 L. Ed. 2d 616, 101 S. Ct. 2748 (1981). Although we have found immunities in § 1983 that do not appear on the face of the statute, "we do not have a license to establish immunities from § 1983 actions in the interests of what we judge to be sound public policy." *Tower v. Glover*, 467 U.S. 914, 922-923, 81 L. Ed. 2d 758, 104 S. Ct. 2820 (1984). "Our role is to interpret the intent of Congress in enacting § 1983, not to make a freewheeling policy choice." *Malley v. Briggs*, 475 U.S. 335, 342, 89 L. Ed. 2d 271, 106 S. Ct. 1092 (1986).
>
> Since *Tenney*, we have recognized two kinds of immunities under § 1983. Most public officials are entitled only to qualified immunity. *Harlow v. Fitzgerald*, 457 U.S. 800, 807, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982); *Butz v. Economou*, 438 U.S. 478, 508, 57 L. Ed. 2d 895, 98 S. Ct. 2894 (1978). Under this form of immunity, government officials are not subject to damages liability for the performance of their discretionary functions when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. at 818. In most cases, qualified immunity is sufficient to "protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Butz v. Economou*, 438 U.S. at 506.
>
> We have recognized, however, that some officials perform "special functions" which, because of their similarity to functions that would have been immune when Congress enacted § 1983, deserve absolute protection from damages liability. *Id.*, at 508. HN2 "The official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed*, 500 U.S. at 486; *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 432, 124 L. Ed. 2d 391, 113 S. Ct. 2167, and n. 4 (1993). Even when we can identify a common-law tradition of absolute immunity for a given function, we have considered "whether § 1983's history or purposes nonetheless counsel against recognizing the same immunity in § 1983 actions." *Tower v. Glover*, 467 U.S. at 920. Not surprisingly, we have been "quite sparing" in recognizing absolute immunity for state actors in this context. *Forrester v. White*, 484 U.S. 219, 224, 98 L. Ed. 2d 555, 108 S. Ct. 538 (1988).

*Buckley v. Fitzsimmons*, 509 U.S. 259, 268-269, 113 S. Ct. 2606, 2612-2613, 125 L. Ed. 2d 209, 221-223 (1993).

The above quotation from *Buckley* - and similar language from a number of other Supreme

Court cases - fairly stands for the proposition that, under U.S. Supreme Court precedent (that,

12

respectfully, binds both this Court and the Arkansas Supreme Court), all public officials are ***at least*** entitled to qualified immunity in ***all cases***, except where it can be shown that they violated clearly established law.

The application of the common law immunities discussed in *Buckley, supra*, which substantially pre-date the enactment of statutory tort immunity in Ark. Code Ann. §21-9-301 or §19-10-305 by 75-100 years or more (during which time no Arkansas case ever abolished or even restricted qualified good faith immunity) to all claims against public officers, including the tort claims remaining against the Defendants in this case makes sense in light of the fundamental legal distinctions between private and public actors. Public actors are obligated to perform a multitude of affirmative duties prescribed by law (e.g., answering requests under the Freedom of Information Act), whereas private citizens have almost none in most cases (where they do, such duties are usually an incident of the citizen's choice, as in regulations related to licensure in a certain professions). In light of this stark difference, which were even more stark in England and early America, the common law afforded immunity to public actors - (1) who act on the citizenry's behalf in all of their duties and (2) whose adverse judgments would likely be paid with tax proceeds collected for other reasons (the Arkansas Constitution clearly found this notion repugnant, granting a cause of action for illegal exaction to any aggrieved citizen)  - unless the law provided reasonable notice of the illegality of their actions.

Based on *Buckley, supra,* and other pronouncements of the Supreme Court, the Defendants are entitled to absolute immunity and/or qualified immunity under the common law. The Arkansas Supreme Court has expressly recognized the applicability of qualified immunity to claims against public officers and, respectfully, when it hasn't conflated common law and statutory immunities in summary dicta[5] (and even sometimes even when it has), it has actually applied the same qualified

---

[5] Some of this confusion and conflation appears to derive from using the same phrases or names for different concepts.  The statutory tort immunity in A.C.A. §21-9-301 is, indeed, "qualified" in at least one sense, namely, that it applies only in the absence of liability insurance. Qualified immunity, however, is generally the name used to describe the very different, and

immunity analysis applied under federal law, namely questioning whether the conduct of the public officer violated "clearly established law." *See, e.g., Elliott v. Morgan*, 2020 Ark. App. 297, 6, 603 S.W.3d 570, 574-575 (2020) (citing *Martin v. Hallum*, 2010 Ark. App. 193, at 9, 374 S.W.3d 152, 158 (2010)). Of course, this is fundamentally different from the binary application of the absolute statutory immunity available under A.C.A. §21-9-301 or §19-10-305 (state statutory tort immunity), where there is no substantive analysis conducted  at all (instead, the only question is whether the cause of action falls within the ambit of the statue; if so, immunity applies and the claim is barred).

The scope and availability of qualified immunity, which may only be raised by individuals, is also fundamentally different from state statutory tort immunity , which applies to both individuals and entities, see *Davis v. Fulton County*, 884 F. Supp. 1245 (E.D. Ark. 1995).  This is true because the purposes for each immunity, are very different.  While the purpose of state statutory immunity is to avoid high judgments that might destroy municipal entities and transfer tax revenues from intended uses to private benefit, *see supra*, the purpose of qualified immunity is to allow public officers to carry out their duties as they think right, rather than acting out of fear for their own personal fortunes. *Id.* (citing *Greiner v. City of Champlin*, 27 F.3d 1346 (8th Cir.1994)). Toward this end, public officers have qualified immunity from liability in their individual capacity unless they violate a clearly established right of which a reasonable person would know. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).

In this case, the Plaintiffs allege unique - in fact, entirely novel - claims against the remaining Defendants.  The undersigned counsel has been unable to locate any case(s) that was decided prior to May of 2015 and with claims and facts even remotely similar to the those alleged in the Plaintiffs' Complaint.  The *Duggar* case is the only analog and it was decided years after the events in this case - and it affirmed the dismissal of all claims.  Certainly, there are no cases that have ever imposed liability in this or a similar factual context and under the legal theories advanced by the Plaintiffs'

---

much older, defense that bars all suits against public officers unless it can be pleaded and proven that the officer violated clearly established law.

Complaint.  As such, the Defendants are entitled to qualified immunity as a matter of law.

**A.**     **No Official Capacity/County Liability - No Allegations & Vicarious Liability Immunity**

Of the Plaintiffs' remaining three claims in this case, two were not even alleged against Washington County.  Those two claims, for invasion of privacy by intrusion upon seclusion (¶¶ 101-114) and for the tort of outrage (¶¶ 115-126), do not purport to be made against Washington County, instead expressly making allegations only against the "CITY DEFENDANTS, DEFENDANT HOYT, and IN TOUCH DEFENDANTS." *Id.* This is contrasted to the Plaintiffs' claim for invasion of privacy by public disclosure of private facts  (Doc. # 1, ¶¶ 77-91), which is made, in part, against the "COUNTY DEFENDANTS."

With respect to the only claim even ostensibly made against Washington County, for public disclosure of private facts (and any other claims the Plaintiffs may assert were made against the County), the  Plaintiffs actually allege no discrete acts or omissions by Washington County (Doc. # 1, ¶¶ 77-91) and Washington County is immune from vicarious liability.  Ark. Code Ann. 21-9-301(b) states clearly that "[n]o tort action shall lie against any such political subdivision because of the acts of its agents and employees.  Vicarious liability is simply not actionable against Washington County.

As a final note, and even if Washington County did not enjoy statutory immunity from vicarious liability (it does), vicarious liability can never be imposed where, as here, no violation occurred.  *See infra* discussion.  For all of these reasons, Washington County is entitled to summary judgment as a matter of law.

**B.**     **No Individual Capacity Liability for Rick Hoyt - Qualified & Statutory Immunity**

The Plaintiffs' primary claims against the Separate Washington County are directed toward Rick Hoyt, a former (now retired) Major at the Washington County Sheriff's Department.  Hoyt was, without dispute, involved in the disclosure of a redacted Washington County agency assist report in May of 2015, in response to a FOIA request, but the Plaintiff cannot establish that Hoyt committed any of the torts they allege against him and certainly cannot establish that he did so maliciously or

in violation of clearly established law.  As such, Hoyt is entitled to qualified immunity, statutory tort immunity, and summary judgment as a matter of law.

### 1.    No Violation of Privacy by Intrusion Upon Seclusion

The Plaintiffs' claim for invasion of privacy by intrusion upon seclusion fails as a matter of law.  In a lawsuit filed by the Plaintiffs' brother, decided last year by the Arkansas Court of Appeals, and thereafter rejected for further appeal by the Arkansas Supreme Court (signaling that Court's approval of the opinion), the Court recited the standard for a claim of intrusion upon seclusion as follows:

> Arkansas recognizes intrusion as one of the four actionable forms of invasion of privacy. *Pingatore v. Union Pac. R.R. Co.*, 2017 Ark. App. 459, 530 S.W.3d 372. To prove intrusion upon seclusion, a plaintiff must establish (1) that the plaintiff sustained damages; (2) that the defendant intentionally intruded physically or otherwise upon plaintiffs  solitude or seclusion and believed or was substantially certain that the defendant lacked the necessary legal authority or personal permission, invitation, or valid consent to commit the intrusive act; (3) that the intrusion was of a kind that would be highly offensive to a reasonable person, as the result of conduct to which a reasonable person would strongly object; (4) that the plaintiff conducted himself or herself in a manner consistent with an actual expectation of privacy; and (5) that the defendant's intrusion was the proximate cause of the plaintiff's damages. *Coombs*, 2012 Ark. App. 24, at 4-5, 388 S.W.3d at 460-61.

*Duggar v. City of Springdale*, 2020 Ark. App. 220, 11-14.  Relevant case law states that intrusion upon seclusion may occur in a variety of context but never mentions a situation even remotely analogous to the one at hand. *Coombs v. J.B. Hunt Transport, Inc.,* 388 S.W.3d 456, 460 (Ark. App. 2012) (*citing Wal–Mart Stores v. Lee, 348 Ark. 707, 74 S.W.3d 634 (2002); CBM of Cent. Ark. v. Bemel, 274 Ark. 223, 623 S.W.2d 518 (1981); Huskey v. Nat'l Broadcasting Co., 632 F.Supp. 1282 (N.D.Ill.1986).* This makes sense, as there are four types of invasion of privacy torts so that a broader spectrum of conduct can be proscribed.  This case - where the Plaintiffs allege some sort of emotional intrusion by the disclosure of a redacted police report to an individual third paty - simply does not fit the cause of action, especially when the plaintif is so clearly not secluded.  The Court of Appeals held as much in *Duggar* and the Supreme Court implicitly affirmed by rejecting Duggar's appeal.

In this case, the Plaintiffs allege that their privacy was invaded by the remaining Defendants in May of 2015 when the Defendants allegedly intruded upon their seclusion by releasing certain investigatory reports - which indisputably redacted the Plaintiff's names - related to their alleged molestation by their brother. Of course, their brother pursued the exact same claim which was related to the exact same disclosure, and the dismissal of his claim was affirmed just last year by the Arkansas Court of Appeals. Critically, Duggar appealed that decision to the Arkansas Supreme Court, which rejected the appeal, which must be presumed as the Supreme Court's agreement with the Court of Appeals (particularly in light of the novelty of the questions presented, where the Supreme Court has jurisdiction presumably would have gotten involved if the Court of Appeals got it wrong). Respectfully, that opinion governs this case and dictates the dismissal of the same claim related to the same disclosures in this case.

Even if the Court is inclined not to dismiss this claim on the pleadings, for the same reasons and in the same manner set out in *Duggar* (and affirmed, if implicitly, by the Supreme Court in rejecting the appeal), the indisputable facts and governing law of this case establish that Defendant Hoyt is entitled to statutory tort immunity, qualified immunity, and summary judgment as a matter of law.

First, the Plaintiffs' intrusion claim fails because the Plaintiffs cannot show that the County's release of the records, even if arguably in contravention of some Arkansas statute (*see infra discussion*), was "intentional." As the Court of Appeals emphasized (and the Supreme Court agreed) in *Duggar*: "This ... court will not presume intent. It must be proved." In *Duggar*, the Court of Appeals found pleadings that reflected, at most, that the release of the records "may have been negligent or the result of a misinterpretation of the law," failed to state a claim as a matter of law.

The Plaintiffs in this case, like their brother, cannot prove that Separate Defendant Hoyt (or Washington County, if they're even alleging that) intentionally violated the law. To the contrary, the undisputed proof establishes that, at most, Hoyt was negligent and/or misinterpreted the law. The 8th Circuit has similarly held that "an intrusion occurs when an actor believes, or is substantially

certain, that he lacks the necessary legal or personal permission to commit the intrusive act." *Fletcher*, 220 F.3d at 876 (citing *O'Donnell v. United States,* 891 F.2d 1079, 1083 (3d Cir.1989)). Here, the legal conclusions urged by the Plaintiffs would be tenuous at best and entirely meritless to the extent that they try to show that Hoyt intentionally violated the law.   The Court of Appeals has now held conclusively - in *Duggar* -  that the Arkansas Juvenile Code - the statutory chapter upon which the Plaintiffs and Judge Zimmerman rested most or all of their legal objections to the disclosures challenged in this case - "does not protect the records at issue from disclosure." *Duggar, supra*.  While the Court of Appeals did not rule  one way or the other on the applicability and/or effect of the Child Maltreatment Act (CMA), the secondary statute relied upon by the Plaintiffs in this case, there is no proof in the record that Rick Hoyt even knew of the existence of the CMA and certainly no evidence that he intentionally or maliciously flouted its requirements.  In fact, it's hard to imagine how he could have even do so, since the requirements of that statute are so unclear, especially against the backdrop of the Arkansas FOIA.  There is certainly no case law interpreting the CMA's interaction with the FOIA and the CMA is missing a "regarding clause" and, thus, could not advise a FOIA responder (even one that was aware of the existence of the CMA, which Hoyt was not) as to what specific information is exempted.  The plain language of the statute ("Any data, records, reports, or documents that are created, collected, or compiled") would  seem to indicate that it exempts literally every record in every law enforcement entity's possession, effectively repealing the FOIA with respect to every law enforcement agency in the State of Arkansas, however, that is certainly not how any agency - or the numerous requesters and/or  courts reviewing responses - are interpreting this Act across the State.  If something less than every document created by or in possession of any law enforcement document is exempted, the statute does not indicate what records or information might be exempt.  This is particularly problematic in light of the provisions of the FOIA (which is required to be construed in favor of disclosure), which require that exempt information be redacted and the remainder of the record(s) provided, that requests be answered immediately, but not later than 3 days in almost all situations, and that public employees

could/would be sued and/or prosecuted for failing to comply with the FOIA.  Against this factual and legal background, the Plaintiff cannot establish that Hoyt intentionally or maliciously violated the law (and certainly not the clearly established law) in making the subject disclosure.  Since the Court cannot presume intent, Hoyt is entitled to qualified and statutory immunity and summary judgment as a matter of law.

The Court of Appeals also affirmed the dismissal of Duggar's case because he "failed to state facts as to how he conducted himself in a manner consistent with an actual expectation of privacy." Of course, Duggar and the Plaintiffs in this case were, and are, in *exactly* the same position in this regard.  It is indisputable that the Plaintiffs in this case, like their brother, were subjects of a reality television series, and that they achieved a "a certain level of celebrity" from that show; in fact, the *Duggar* opinion expressly assumed that this celebrity "was attributable to each and every member of the immediate family," including the Plaintiffs in this case. This allegation, in the view of the Court of Appeals, negated any claimed expectation of privacy as a matter of law in the *Duggar* case (and the Supreme Court agreed, as it rejected Duggar's appeal) and must have the same effect here. The Plaintiffs in this case, who all starred on "19 Kids and Counting" in exactly the same manner as their brother, cannot show that they actually expected any greater privacy than their co-star and brother.

The Court of Appeals also affirmed dismissal of Duggar's Complaint because he "failed to state how he suffered damages," making only "a generalized statement that he was emotionally distressed, mentally anguished, and had 'substantial lost income,'" which the Court of Appeals (and the Supreme Court, by rejection of the appeal) held was "not sufficient" as a matter of law. The Plaintiffs in this case have not alleged and cannot prove any more than did their brother in the *Duggar* case with regard to damages. While the Duggars have retained an expert witness, a California psychotherapist, to give testimony about a purported "life care plan," that plan is entirely speculative (the plan assigns more than 1.2 million dollars in purported damages for future therapy, medication consults, medication, and medical care that has not yet been provided and for conditions

19

that have not yet been diagnosed, despite the passage of more than 6 years since the events allegedly giving rise to this action (during which time all Plaintiffs have testified to improvement), but which "might" at some point in the future) and should be excluded. Without this entirely speculative life care plan, the Plaintiffs can only offer their own testimony to vague allegations of mental anguish and emotional distress (unlike their brother, the Plaintiffs have expressly abandoned all lost income claims). These are exactly the same damages rejected by the Court of Appeals (and by the Supreme Court, in rejecting the appeal) in the *Duggar* case.

### 2.       No Invasion of Privacy by Public Disclosure of Private Facts

The Plaintiffs' public disclosure of private facts claim also fails as against the Separate Washington County Defendants. In the *Duggar* case, the Arkansas Court of Appeals recited the standard for a claim of invasion of privacy by public disclosure of private facts, as follows:

> Public disclosure of private facts is publicity of a highly objectionable kind, given to private information about the plaintiff, even though it is true, and no action would lie for defamation. *McMullen v. McHughes Law Firm*, 2015 Ark. 15, 454 S.W.3d 200. To succeed on this invasion-of-privacy claim, [a civil plaintiff] must prove the elements set forth in Arkansas Model Jury Instruction 422, namely (1) that he sustained damages; (2) that appellees made a public disclosure of a fact about Duggar; (3) that prior to disclosure the fact was not known to the public; (4) that a reasonable person would find the disclosure highly offensive; (5) that appellees knew or should have known that the disclosed fact was private; (6) that the fact was not of legitimate public concern; and (7) that the public disclosure was the proximate cause of Duggar's damages.

*Duggar v. City of Springdale*, 2020 Ark. App. 220, 14-16.

For a number of reasons, the Plaintiffs' claim of a public disclosure of private facts fails as a matter of law with respect to the Separate Washington County Defendants. First, the Plaintiffs cannot establish that any private facts were publicly disclosed by Rick Hoyt. To the contrary, it is undisputed that the Plaintiffs' names were all redacted from the 7-page Washington County "agency assist" report that was disclosed in response to the FOIA request in this case. Even with respect to the redactions, the Plaintiffs cannot prove intentionality (1) because the act of redacting the names is contraindicative of an intentional or malicious violation of the law and (2) because the undisputed fact is that Hoyt did not personally perform the redactions.

20

In the *Duggar* case, the Court of Appeals held that, because Duggar did not attach the redacted investigative reports upon which his claims were based (neither did the Plaintiffs in this case), the Court could not determine "what information was contained in the reports and whether they contained private facts." That is because, as the Court of Appeals also noted in *Duggar*, In Touch Weekly had published an article about Duggar having been named in an underage sex probe before the City or the County made any records disclosures. The Court of Appeals expressly held that "If the information contained in the records was already disseminated or known to the public prior to the City's and County's releasing the records, then there was no public disclosure of a private fact."

In this case, the Plaintiffs attempt to "thread" an interesting legal "needle" with respect to the distinction between private and public facts. The Plaintiffs cannot dispute that the core facts at issue in this case were widely known prior to the challenged disclosures. In addition to the "teaser" article published online by In Touch Weekly, testimony in this case (in addition to press accounts) establishes that dozens, if not hundreds, of people knew that Josh Duggar had molested his sisters prior to the challenged disclosures. *See* Affidavits by Tandra Barnfield and Sherrl Colville. Despite the undisputed fact of prior and widespread public knowledge, the Plaintiffs appear to assert that this fact was, nonetheless, private, until the Defendants released redacted police reports that did not contain any of their names to a ***single*** person (the attorney who made the FOIA request), apparently because that person then forwarded the information on to other people (his undisclosed client in the media), who effectively forwarded the information more broadly by way of the internet. This approach cannot prevail. If information was not public when known by dozens or hundreds of people prior to the disclosures, it cannot become public by being forwarded, in redacted form to one person. *See* Deposition Transcript of Kaeleigh Tull at 36-37 (whereas she testified that she wrote a note regarding the facts of this matter in a book in 2003 and lent out the book to a friend in 2006 who then told the information to her parents, who told the information to other parents). In fact, the Eighth Circuit has specifically held that the disclosure of even private information to one other person was

not sufficient to state a public disclosure of private facts claim. *Wood v. Natl. Computer Sys., Inc.*, 814 F.2d 544, 545 (8th Cir. 1987); *see also C.L., M.L. ex rel. C.A.L. v. Village of Riverside*, 13 C 1476, 2013 WL 4538836, at 4 (N.D. Ill. Aug. 27, 2013) (releasing a report to two people not sufficient to prove the publication element of a public disclosures of private facts claim and holding that the publica actor was entitled to qualified immunity).

Of course, the Plaintiffs now want to hold the remaining Defendants liable for the more widespread publication of the redacted reports that were actually published more broadly by a private media company that is not a current party to this litigation.  The Plaintiffs cannot establish the Rick Hoyt or Washington County knew that the redacted report would be forwarded by the requesting attorney or that they knew the identity of the attorney's client (or even that he had a client).  To the contrary, the undisputed proof establishes that they knew none of these things.

The Plaintiffs also cannot show that any of the facts disclosed in the redacted Washington County report were not publicly known at the time of the disclosures.  It is undisputed that dozens or hundreds of people knew about Josh Duggar's molestation of his sisters prior to May of 2015.  It is also undisputed that Washington County's disclosure was not received by the attorney requesting the information until May 27, 2021 and that the first article about the Washington County disclosure did not occur until June 3, 2021, two weeks after the Springdale disclosures, after the requesting FOIA attorney interviewed Joseph Hutchens (the State Trooper to whom Jim Bob and Josh initially disclosed the events) and after the events and attendant facts were fully ventilated by the press and even the Plaintiffs themselves.  In fact, the *In Touch* article about Washington County's redacted disclosure first appeared online on June 3, 2021 (not naming any of the Plaintiffs as victims and/or describing the details of any of their respective molestations), the same day that two of the Plaintiffs appeared with Megyn Kelly on a nationally televised interview where they confirmed, for the first time, that they were among Josh's victims.  A *Deadline* article posted that same day correctly noted that the Megyn Kelly interview "will be the first time any of the Josh Duggar's alleged victims have been named."  *See* Ex. __.

### 3.    No Outrage

In Josh Duggar's case asserting the same claims in state court, the Arkansas Court of Appeals

recited the standard for outrage, as follows:

> The tort of outrage—also known as the intentional infliction of emotional distress—subjects an actor to civil liability for committing extreme and outrageous behavior. *Sawada v. Walmart Stores, Inc.*, 2015 Ark. App. 549, 473 S.W.3d 60. To succeed on an outrage claim, a plaintiff must demonstrate four elements: (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was "extreme and outrageous," "beyond all possible bounds of decency," and "utterly intolerable in a civilized community"; (3) the actions of the defendant were the cause of the plaintiffs distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it. *Id.* at 15, 473 S.W.3d at 60. The type of conduct that constitutes outrage must be determined on a case-by-case basis. *Holman v. Flores*, 2018 Ark. App. 298, 551 S.W.3d 1. The tort of outrage is narrowly viewed by Arkansas appellate courts, which require clear-cut proof to establish the elements. *Id.* Merely describing conduct as outrageous does not make it so. *Id.* The tort of outrage "should not and does not open the doors of the courthouse to every slight insult or indignity one must endure in life." *Id.* at 6-7, 551 S.W.3d at 4 (citing *Kiersey v. Jeffrey*, 369 Ark. 220, 222, 253 S.W.3d 438, 441 (2007)).

*Duggar v. City of Springdale*, 2020 Ark .App. 220, 10.

In this case, as in *Duggar*, makes no allegation, and here can present no proof, that any

person intended to inflict emotional distress upon them.  Instead, they allege that the City and County

Defendants "acted intentionally and unreasonably ***in releasing***" the reports.  Doc. # 1, ¶¶116 & 117

(emphasis added).   But they do not allege, and cannot prove, that the Defendants intentionally

violated the law in doing so or that any of them intended to inflict emotional distress upon any of the

Plaintiffs, whom they had never met.  In fact, the Plaintiffs in this case specifically avoided alleging

intentional infliction of emotional distress (as opposed to intentional fulfillment of any FOIA

request) by any of the City or County Defendants in this case (presumably because, as discovery has

borne out, they had no colorable basis to make such an unfounded allegation), instead alleging - as

did Duggar in state court - that the City and County Defendants acted with "reckless disregard" in

relation to their outrage claim.  Doc. # 1, ¶118; *see also* Wash. Co. Circ. Ct., Case # 72CV-18-668-1,

Duggar's Complaint (March 9, 2018), ¶ 25. Such allegations were not sufficient for the Arkansas

23

Court of Appeals in *Duggar* and likewise call for summary judgment here.

The Plaintiffs in this case - like Duggar  - also failed to allege *how* they suffered mental distress as a result of the allegedly outrageous conduct by the City and County Defendants.  This was important to the Court of Appeals, because, as it noted in its opinion. "comfort, upset, embarrassment, anxiety, loss of sleep, and depression do not meet the "mental distress" element of the tort of outrage." *Id.*  (citing *Coombs v. J.B. Hunt Transport, Inc.*, 2012 Ark. App. 24, 388 S.W.3d 456 & *Kiersey, supra*).  The Court of appeals noted that Duggar did not even allege this type of mental distress, but simply that the allegedly outrageous conduct caused him "severe emotional distress."  The Plaintiffs in this case make a substantively identical allegation in their outrage claim, asserting only that the City and County Defendants' allegedly outrageous conduct caused them "several emotional, mental, and psyshological distress." Doc. #1, 119.  The addition of synonymous, conclusory adjectives to the Plaintiff's substantively identical allegations certainly does not save the Plaintiffs' outrage claim.  *See, e.g., Zink, supra.*   To the contrary, the Arkansas Court of Appeals opinion controls and dictates the dismissal of the Plaintiffs' outrage claim here for (at least) precisely the same reasons articulated in the *Duggar* case.

### III. Conclusion

For the reasons set forth herein, the Separate Washington County Defendants are entitled to statutory tort immunity, qualified immunity, vicarious liability immunity, and summary judgment as a matter of law.

Respectfully submitted,

Rick Hoyt & Washington County,
*Separate Washington County Defendants*

By:      /s/Jason E. Owens
         Jason E. Owens, #2003003
         Ark. Bar. No. 2003003
         JASON OWENS LAW FIRM, P.A.
         **Mailing Address:** P.O. Box 850
         Conway, Arkansas 72033-0850

24

**Physical Address:** 1023 Main Street, Suite 204
Conway, Arkansas 72032
Telephone: (501) 764-4334
Telefax: (501) 764-9173
Email: owens@jowenslawfirm.com