# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## FAYETTEVILLE DIVISION

JILL DILLARD, JESSA SEAWALD,
JINGER VUOLO, and JOY DUGGAR                                                                PLAINTIFFS

VS.                                         NO. 17-CV-05089-TLB

CITY OF SPRINGDALE, ARKANSAS;
WASHINGTON COUNTY, ARKANSAS;
KATHY O'KELLEY, in her individual
and official capacities;
RICK HOYT, in his individual and official capacities;
STEVE ZEGA, in his official capacity;
BAUER PUBLISHING COMPANY, L.P.;
BAUER MAGAZINE L.P.;
BAUER MEDIA GROUP, L.P.;
BAUER, INC.;
HENRICH BAUER NORTH AMERICA, INC.;
BAUER MEDIA GROUP USA, LLC; and
DOES 1-10, inclusive                                                                          DEFENDANTS

## A28 U.S.C. §1746 FFIDAVIT

STATE OF ARKANSAS          )
                           )   ss:
COUNTY OF WASHINGTON       )

Comes now Rick Hoyt, and states, upon oath, the following:

1.   I am now retired, but I worked for the various law enforcement agencies for a total of almost 47 service years, ending with the Washington County Sheriff's Department for over 16 years. In May of 2015, I was serving as a Major at the Sheriff's Department, where my duties included management of the entire Enforcement Division and more than 100 associated personnel and management of a large departmental budget with full administrative authority.

2.   On May 21, 2015, Kelly Jensen the Enforcement Secretary at the Washington County

**Exhibit 1**

Sheriff's Department, approached me with an FOIA request from a Little Rock attorney named Abtin Mehdizadegan, with the law firm of Cross, Gunter, Witherspoon and Galchus, P.C., which was dated May 15, 2015. I was not familiar with Mr. Mehdizadegan, had never met him personally, and had never responded to a request from him before, to my recollection.

3. Mr. Mehdizadegan's request, dated May 15, 2015, was made in his own name, did not indicate that he was making the request for anyone else, and certainly did not identify any third party or client. I do recall thinking that Mr. Mehdizadegan may have been an attorney for the Duggar family. I never considered that he may have had any other client(s).

4. When Ms. Jensen brought the request to me, I read through and took some time to think about it. I told Ms. Jensen that, because it was a closed case and because I was aware of no applicable exemption, it had to be released. I did, out of an abundance of caution, ask Ms. Jensen to redact the names and identifying information of the minors named in the report. I honestly thought the requesting law firm might object even to those redactions and instructed Ms. Jensen to bring the matter back to my attention if and when that occurred.

5. At the time that I reviewed the subject FOIA request on May 21, 2015, I was not aware of any possible FOIA exemptions in the Arkansas Juvenile Code, the Child Maltreatment Act, or anywhere else in Arkansas law other than the FOIA itself. To the contrary, I believed that all FOIA exemptions were listed comprehensively in the FOIA itself, where more than 25 distinct exemptions are listed. This understanding was based on years of attendance at virtually every FOIA training course held by the Arkansas Attorney General's office (where no statute outside of the FOIA was ever discussed, to my recollection), frequent resort to the FOIA guide promulgated by that office (which I kept on my desk and referenced frequently and which dealt exclusively with the FOIA

itself), and frequent discussions with attorneys and other law enforcement colleagues at conferences and elsewhere.

6. Even today, more than 6 years later and after being apprised of other laws beyond the FOIA through this lawsuit, the legal requirements remain murky, at best. First, the Arkansas Court of Appeals has specifically held, in Josh Duggar's lawsuit, that the Juvenile Code "does not protect the records [in this case] from disclosure." With respect to the Child Maltreatment Act, and even if the Act is interpreted to include records of a Sheriff's Department (as an "other entity authorized under this chapter to perform investigations or provide services to children, individuals, or families"), I have no idea what records, or portions thereof, might be exempted. There is no case law on this point and the plain language of the statute ("Any data, records, reports, or documents that are created, collected, or compiled") would seem to indicate that it exempts literally every record in the entity's possession, effectively repealing the FOIA with respect to every law enforcement agency in the State of Arkansas. This is certainly not how any agency - or the numerous requesters and/or courts reviewing responses - are interpreting this Act. This is impossibly difficult because, as all of the FOIA training I received repeatedly emphasized, the law requires the FOIA to be construed in favor of disclosure, the co-mingling of exempt and non-exempt information never justified withholding the whole report (the exempt information had to be redacted and the remainder of the records provided), the requests had to be answered immediately, but not later than 3 days in almost all situations, and we could/would be sued and/or prosecuted if we failed to comply with the FOIA.

7. After Ms. Jensen brought me Mr. Mehdizadegan's request and I instructed her to redact the names and identifying information of the minors named in the report, I returned to my other duties and went home at the end of the day. Ms. Jensen did not return to show me her

redactions or to ask any further questions or for further instructions.

8. After arriving at home, I was watching the 6 o'clock news when a report came on about the tabloid publication of the Springdale report. The report mentioned that Judge Zimmerman had ordered Springdale to destroy their report. This was the first I had heard about any of this, including, but not limited to the fact that Springdale had released a report. I immediately made a phone call, which turned into a chain of phone calls, to determine whether our FOIA response had gone out with that afternoon's mail, which we quickly determined had occurred.

9. I had no idea that Family in Need of Services case had been opened with respect to the Duggar family until well after the County's FOIA response was sent; the County's agency assist report - the report that was redacted and sent as the County's response - did not contain any mention of, or reference to, a FINS case.

10. I have never met any of the Plaintiffs, to my knowledge and have never met any members of the Duggar family, except perhaps incidentally at large gatherings. I had no desire to harm any of them in my involvement in the disclosure of May, 2015; instead, I thought I was compelled to make the disclosure under the dictates of the Freedom of Information Act.

11. Other than insurance related to the operation of my vehicle and homeowner's insurance, neither of which are applicable to this case, I have no insurance coverage for negligence or negligent conduct of any kind. Further, while Washington County is a member of the Association of Arkansas Counties Risk Management Fund, that membership provides no coverage for negligence or negligent conduct of any kind.

### 28 U.S.C.A. § 1746 Affidavit Oath

I declare under penalty of perjury, upon oath and on personal knowledge (except where

indicated), under the laws of the United States of America, that the foregoing is true and correct.

_____
Rick Hoyt

_____
Date 10-06-21