**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**JILL DILLARD, JESSA SEAWALD,**
**JINGER VUOLO, and JOY DUGGAR**                              **PLAINTIFFS**

**VS.**                          **NO. 17-CV-05089-TLB**

**CITY OF SPRINGDALE, ARKANSAS;**
**WASHINGTON COUNTY, ARKANSAS;**
**KATHY O'KELLEY, in her individual**
**and official capacities;**
**RICK HOYT, in his individual and official capacities;**
**STEVE ZEGA, in his official capacity;**
**BAUER PUBLISHING COMPANY, L.P.;**
**BAUER MAGAZINE L.P.;**
**BAUER MEDIA GROUP, L.P.;**
**BAUER, INC.;**
**HENRICH BAUER NORTH AMERICA, INC.;**
**BAUER MEDIA GROUP USA, LLC; and**
**DOES 1-10, inclusive**                              **DEFENDANTS**

**STATEMENT OF INDISPUTABLE MATERIAL FACTS**
**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**Background**

1.      The Plaintiffs in this case are sisters and the daughters of Jim Bob and Michelle Duggar.

2.      The Duggar family, including the Plaintiffs and Josh Duggar, has regularly appeared in the past on reality television shows called 17 Kids and Counting, 18 Kids and Counting and 19 Kids and Counting which aired on a television network called TLC. The Plaintiffs have regularly appeared in reality television shows, both as minors and while they were adults, including their most recent shows called "Jill & Jessa: Counting On" and "Counting On," which also aired on TLC. Because of those TV shows, the Plaintiffs have enjoyed a a certain level of celebrity locally, nationally, and internationally.

3.      On May 20, 2015, Josh Duggar was a lobbyist for the Family Research Council and lived and worked in Washington D.C.

4.      The Plaintiffs are celebrities who and social media "influencers" who regularly

market or advertise products on various social media platforms on the bais of their celebrity. Before May 20, 2015, the Plaintiffs published a book titled "Growing up Duggar" and recently Vuolo and her husband have published a book titled "The Hope We Hold." The Plaintiffs all have, or have in the past, been represented by talent agents or agencies.

### 2002-2003: Alleged Molestations by Josh Duggar

5.      In or around 2002 and 2003, the Plaintiffs, in addition to at least one non-family member, were allegedly molested by their older brother, Josh Duggar.

### 2004: Meeting with then-State Trooper Joseph Hutchens

6.      In or around 2004, Jim Bob Duggar and one or more of the elders at his church, alogn with Josh Duggar, met with then-State Trooper Joseph Hutchens, who was the State Trooper who inspected car dealers at the time (both Jim Bob & Josh Duggar have operated used car lots). During that meeting, they admitted that Josh Duggar had molested one of more minor females. Ex. 4 Coger Affidavit, Springdale Report.

7.      Hutchens gave a "very stern talk" to Josh Duggar about what might happen if he continued such behavior, and then told them that since Josh Duggar had already gone through a treatment program (or, at least, that's what he had been told), there was nothing else to be done. Ex. 4 Coger Affidavit, Springdale Report. The Duggars did not affirmatively report the molestations to any other police officer or agency.

### December, 2006 - Oprah Appearance Canceled, Hotline Called

8.      In December of 2006, the Duggar family was scheduled to make an appearance on the Oprah Winfrey Show. On December 7, 2006, however, an email was sent to Harpo Studios in Chicago, Illinois (the producer of the Oprah Winfrey Show) that stated as follows:

BEFORE YOU AIR THE DUGGAR FAMILY FROM ARKASAS WITH ▓▓▓▓▓
YOU NEED TO KNOW THE TRUTH. THEY ARE NOT WHAT THEY SEEM TO BE.
▓▓▓▓▓▓▓▓▓▓▓▓▓▓ HAS MOLESTED ▓▓▓▓▓▓ WHILE ▓▓▓ WERE
SLEEPING AND THE PARENTS HAVE BEEN HIDING THIS SECRET FOR A LONG
TIME. JIM BOB LIES TO HIS CHURCH AND HIS FRIENDS TO MAKE HIM LOOK
GOOD. AT THIS MOMENT HE IS IN TROUBLE WITH THE CHURCH FOR LYING
ABOUT ▓▓▓▓▓▓ AND THINGS THAT CONCERN THE WAY THE CHURCH
MEMBERS REACTED. I THINK THAT YOU SHOULD KNOW THE TRUTH BEFORE
THEY MAKE A COMPLETE FOOL OF YOU AND YOUR SHOW. THEY HAVE BEEN ON
TV BEFORE AND COME ACROSS AS A PERFECT FAMILY, WHICH COULDN'T BE
FURTHER FROM THE TRUTH. THEY JUMP FROM SHOW TO SHOW TO RECEIVE
GIFTS FOR THEIR FAMILY AND TO MAKE THEM LOOK REALLY GOOD TO. PLEASE
CONSIDER THIS AND CONFRONT THEM ABOU THEIR SECRET.

9.       Upon receipt of the December 7, 2006 email, the Oprah Winfrey Show did not air the

show with the Duggars.

10.      Shortly after the above-quoted email, a phone call was made to the Arkansas

Department of Human Services Hotline in which the caller disclosed information that Josh Duggar

had molested his four of his sisters and a non-family member babysitter.

### December, 2006 - Springdale Investigation & Washington County "Agency Assist"

11.      In the wake of the DHS hotline SPD Sgt. Darrell Hignite opened an investigation (the

"Investigation") of Josh Duggar following a December 7, 2006 phone call from an Arkansas State

Police Investigator. The Investigation is detailed in the "SPD Offense Report."  Washington County

performed an "agency assist" to aid the investigation.

12.      At the time of the 2006  investigation, Josh Duggar was an adult.

13.      At the conclusion of the investigation, it was concluded that the statutes of limitations

had run on Josh Duggar's alleged sex crimes; as a result, he was never arrested or charged with a

crime.

### Prior Public Knowledge About the Alleged Molestations of the Plaintiffs

14.      Prior to May of 2015, the story of the alleged molestations of the plaintiffs by their

brother was publicly known by a large number of people; in fact, in light of the fact that the

allegations were posted on the internet in 2007, the information was potentially (i.e., with an internet

connection) publicly available to everyone in the world.  *See* Ex. 3, Abtin Affidavit (and quoted

archival internet posts telling the story of the alleged molestations in 2007); Ex. 8, Tull Deposition, e. g p. 59 (everyone at their church knew - "dozens" of adults and some older children); Ex. 4, Coger Affidavit (Springdale Report establishes that a number of people knew almost ten years before May of 2015); Ex. 5, Colville Affidavit, Ex. 6, Barnfield Affidavit.

### May 15, 2015 - FOIA Request by Abtin Mehdizadegan

15.     On May 15, 2015, attorney Abtin Mehdizadegan sent FOIA requests to the City of Springdale and Washington County.  Mehdizadegan  made the FOIA requests to Springdale and Washington County in his own name and did not convey that he was even representing a client.  He certainly did not indicate the identity of any client. Ex. 3, Abtin Affidavit.

### May 19, 2021 - In Touch "Teaser" Article

16.     On May 19, 2021, at 3:12 p.m., before Washington County or Springdale had responded to the May 15 FOIA request, *In Touch Weekly* ran a "teaser" article entitled "'19 Kids and Counting' Son named in Underage Sex Probe."  The story was based on "multiple sources" who were "familiar with the case" and had "seen the police report about the matter," including at least one that was quoted as a source in a May 19, 2021 "teaser" article post.  Ex. 2-A, McNamara Affidavit, May 19 Article.

17.     The May 19 "teaser" article also referenced former Trooper Hutchens by reporting that the State Trooper to whom Jim Bob initially took Josh to confess the molestations had since been "convicted on child pornography charges" and was "serving a 56-year prison sentence."  Ex. 2-A, McNamara Affidavit, May 19 Article.

### May 20, 2021, 1:09 p.m. - Interview Request for Joseph Hutchens

18.     On May 20, 2015, at 1:09 p.m., attorney Abtin Mehdizadegan  sent a letter by fax to the Warden's office of the Wrightsville Hawkins for Males Unit, requesting an interview with Joseph T. Hutchens, the former Arkansas State Trooper to whom Jim Bob Duggar had taken his son, Josh.

4

Hutchens was housed in that prison.  Ex. 3, Abtin Affidavit.

### May 20, 2019, 8:54 p.m. - Springdale Response Sent & Received

19.      On May 20, 2015, at 8:54 p.m., attorney AbtintMehdizadegan received an email from Springdale Police Chief Kathy O'Kelley with an attachment that constituted the City of Springdale's response to Mehdizadegan's FOIA request from May 15, 2021.

20.      Springdale's 33-page attachment in response to the FOIA request contained significant redactions and the unredacted portions did not contain any of the Plaintiffs' names.

21.      The redacted Springdale reports added no information or details that were not already known publicly.

### May 21, 2015, 11:10 a.m. - *In Touch Weekly* Article

22.      On May 21, 2015, at 11:10 a.m., *In Touch Weekly* posted another article online, this time entitled "Bombshell Duggar Police Report: Jim Bob Duggar Didn't Report Son Josh' alleged sex offenses for more than a year."  The story did not reveal the identities of any of Josh's alleged victims.  Ex. 2-B, McNamara Affidavit, May 21 Article.

### May 21, 2015 - Interview of Joseph Hutchens

23.      On May 21, 2015, attorney Mehdizadegan sent his paralegal to interview the former State Trooper, Joseph Hutchens, at the prison.  The paralegal audio-recorded this interview and brought the recording back to Mehdizadegan, who listened to the recording that afternoon. Ex. 3, Abtin Affidavit.

24.      Hutchens's interview responses told the whole story of the alleged molestations, including, but not limited to the fact that Josh Duggar's sisters were his victims.  This interview was made public. Ex. 3, Abtin Affidavit.

### May 21, 2015 - FOIA Response by Washington County Sent by U.S. Mail

25.      On May 21, 2015, Kelly Jensen, the Enforcement Secretary at the Washington County Sheriff's Department, approached Major Rick Hoyt with an FOIA request from a Little Rock

attorney named Abtin Mehdizadegan, with the law firm of Cross, Gunter, Witherspoon and Galchus, P.C. The request was dated May 15, 2015.

26. When he reviewed the subject FOA request on May 21, 2015, Major Hoyt was not familiar with Mr. Mehdizadegan, had never met him personally, and had never responded to a request from him before.

27. Mehdizadegan's FOIA request, dated May 15, 2015, was made in his own name, did not indicate that he was making the request for anyone else, and certainly did not identify any third party or client.

28. When he reviewed the subject FOA request on May 21, 2015, Major Hoyt thought that Mr. Mehdizadegan may have been an attorney for the Duggar family, but never considered that he may have had any other client(s).

29. When Ms. Jensen brought the request to Hoyt, he read through it and took some time to think about it. Hoyt told Ms. Jensen that, because it was a closed case and because he was aware of no applicable exemption, it had to be released. Hoyt did, out of an abundance of caution, ask Ms. Jensen to redact the names and identifying information of the minors named in the report. Hoyt thought that the requesting law firm might object even to those redactions and instructed Ms. Jensen to bring the matter back to his attention if and when that occurred.

30. At the time that he reviewed the subject FOIA request on May 21, 2015, Rick Hoyt was not aware of any possible FOIA exemptions in the Arkansas Juvenile Code, the Child Maltreatment Act, or anywhere else in Arkansas law other than the FOIA itself. To the contrary, he believed that all FOIA exemptions were listed comprehensively in the FOIA itself, where more than 25 distinct exemptions are listed. This understanding was based on years of attendance at virtually every FOIA training course held by the Arkansas Attorney General's office (where no statute outside of the FOIA was ever discussed), frequent resort to the FOIA guide promulgated by that office (which he kept on his desk and referenced frequently and which dealt exclusively with the FOIA itself), and frequent discussions with attorneys and other law enforcement colleagues at conferences

and elsewhere.

31.     After Ms. Jensen brought Mr. Mehdizadegan's request and Hoyt instructed her to redact the names and identifying information of the minors named in the report, Hoyt returned to his other duties and went home at the end of the day.  Jensen did not return to show Hoyt her redactions or to ask any further questions or for further instructions.

32.     After arriving at home, Hoyt was watching the 6 o'clock news when a report came on about the tabloid publication of the Springdale report.  The report mentioned that Judge Zimmerman had ordered Springdale to destroy their report.  This was the first Hoyt had heard about any of this, including, but not limited to the fact that Springdale had released a report.  Hoyt immediately made a phone call, which turned into a chain of phone calls, to determine whether the County's FOIA response had gone out with that afternoon's mail, which they quickly determined had occurred.

33.     At the time of County's May 21, 2015 FOIA response, Rick Hoyt had no idea that a Family in Need of Services (FINS) case had been opened with respect to the Duggar family; the County's agency assist report - the report that was redacted and sent as the County's response - did not contain any mention of, or reference to, a FINS case.

34.     Rick Hoyt has never met any of the Plaintiffs and has never met any members of the Duggar family, except perhaps incidentally at large gatherings.  Hoyt had no desire to harm any of them in his involvement in the County's disclosure of May, 2015; instead, he thought he was compelled to make the disclosure under the dictates of the Freedom of Information Act.

### May 26, 2015, 1:53 p.m. - *In Touch Weekly* Article

35.     On May 26, 2015, at 1:53 p.m., *In Touch Weekly* posted another article online, this time entitled "Josh Duggar's Youngest Molestations Victim May Have Been As Young As Five Years Old."  The story did not reveal the identities of any of Josh's alleged victims.  Ex. 2-C, McNamara Affidavit, May 26 Article.

## May 27, 2015 - FOIA Response by Washington County Received

36.     On May 27, 2015, attorney Abtin Mehdizadegan received, by U.S. Mail, Washington County's response to his FOIA request from May 15, 2021.  Ex. 3, Abtin Affidavit.

37.     Washington County's 7-page disclosure contained significant redactions and the unredacted portions of the disclosure did not contain any of the Plaintiff's names.  Ex. 3, Abtin Affidavit.

38.     The redacted Washington County disclosure added no new information or details that were not already known publicly.  Ex. 3, Abtin Affidavit.

## June 3, 2015 - *In Touch Weekly* and *Deadline* Articles & Megyn Kelly Interview

39.     On June 3, 2015, *In Touch Weekly* posted another article online, this time entitled "Josh Duggar Chilling Molestation Confession in New Police Report."  The story did not reveal the identities of any of Josh's alleged victims.  Ex. 2-D, McNamara Affidavit, June 3 Article.

40.     Also on June 3, 2015, Deadline posted an article previewing, and then reviewing, the interviews of Plaintiffs Jessa Sewald and Jill Dillard by Megyn Kelly.  The article stated that the interview "will be the fist time that any o f Josh Duggar's victims have been named," as the article also noted that "[a]ll police reports ... redacted the names of the victims."  Ex. 9, Deadline June 3 Article.

41.     That evening, in their interview with Megyn Kelly, Plaintiffs Jessa Seawald and Jill Dillard publicly identified themselves as victims of molestation by their brother.

42.     As a matter of fact, no media, government, or other source ever identified Plaintiffs Jessa Seawald and/or Jill Dillard as victims of molestation by their brother prior to their Megyn Kelly interview (where they identified themselves as such).

43.     As a matter of fact, no media, government, or other source ever identified any of Josh Duggar's molestation victims other than Plaintiffs Jessa Seawald and/or Jill Dillard (at least prior to this case, where two others appear to have identified themselves as such by joining as Plaintiffs in this suit).

8

**No Liability**

44.     There are no facts that demonstrate the Plaintiffs were secluded in any way congizable at law with relation to the subject matter of this suit; to the contrary, they have conducted national television interviews and talked on their own reality show about the subject matter of this suit, have published books, posted on social media, and have otherwise behaved in a highly extroverted fashion for the last 10-15 years, at least.

45.     There are no facts that show that any private facts that were publicly disclosed by Rick Hoyt and/or Washington County.

46.     There are no facts that show that any private facts that were publicly disclosed for the first time by Rick Hoyt and/or Washington County.

47.     There are no facts that show that Washington County or Rick Hoyt intentionally inflicted emotional distress on any of the Plaintiffs.

48.     There are no facts that show that Washington County or Rick Hoyt engaged in extreme or outrageous behavior.

**No Damages**

49.     The Plaintiffs have not sought or received any counseling, therapy, and/or medical treatment for any issues that allegedly arose from the disclosure of the redacted police reports more than 6 years ago; ██████████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████

50.     ████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████

Respectfully submitted,
Rick Hoyt & Washington County,
*Separate Washington County Defendants*

By:        /s/Jason E. Owens
Jason E. Owens, #2003003
Ark. Bar. No. 2003003
JASON OWENS LAW FIRM, P.A.
**Mailing Address:** P.O. Box 850
Conway, Arkansas 72033-0850
**Physical Address:** 1023 Main Street, Suite 204
Conway, Arkansas 72032
Telephone: (501) 764-4334
Telefax: (501) 764-9173
Email: owens@jowenslawfirm.com