IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | | |
|---|---|---|
| JILL DILLARD, JESSA SEEWALD, JINGER VUOLO, and JOY DUGGAR | | PLAINTIFFS |
| vs. | CASE NO. 5:17-5089-TLB | |
| CITY OF SPRINGDALE, ARKANSAS; WASHINGTON COUNTY, ARKANSAS; KATHY O'KELLEY, in her individual and official capacities; ERNEST CATE, in his individual and official capacities; RICK HOYT, in his individual and official capacities; STEVE ZEGA, in his official capacity; And DOES 1-10, inclusive | | DEFENDANTS |

### DECLARATION OF KATHY O'KELLEY

I, Kathy O'Kelley, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am over the age of 18 and have personal knowledge of the information set forth in this Declaration.

2. I am the former Chief of Police for the City of Springdale Police Department ("SPD"). On May 7, 2015 I announced my retirement from SPD and law enforcement effective June 30, 2015. I was appointed to be the Chief of SPD in 2005 and served in that position until June 30, 2015. Prior to that, I was the assistant director/captain at the University of Arkansas Police Department from 2003 until 2005. I started my law enforcement career in 1981 with the City of North Little Rock Police Department where I served as a patrol officer, sergeant, lieutenant and captain up until 2003. As one of the very few women in law enforcement and law enforcement leadership in State of Arkansas during my career, I was able to succeed in my career and to be one of the few women in law enforcement leadership in the State of Arkansas through hard work, dedication to law enforcement principals and through my integrity.

EXHIBIT 2

3. In my law enforcement career, I have attained thousands of hours of training on a wide range of police issues which included the Arkansas Freedom of Information Act ("FOIA"). In the North Little Rock Police Department, I served for a period of time as the public information officer with the general responsibility of handling communications with the public and press and responding to requests for information. In this role, and later as a captain with the North Little Rock Police Department, an assistant director/captain at the University of Arkansas Police Department and the Chief of Police for the SPD, I have attended many hours of regular training on the FOIA and during my tenure as Police Chief the SPD was responsible for responding hundreds of FOIA requests. It is my knowledge that up until June 30, 2015, the SPD received hundreds if not thousands of FOIA requests every year.

4. I do not know any of the Plaintiffs in the *Dillard v. City of Springdale*, Western District of Arkansas Case No. 5:17-CV-0589 lawsuit (the "Lawsuit") and to my knowledge, I have never met any of the Plaintiffs. I recall meeting Josh Duggar on one occasion in or around 2011 before the start of a Springdale City Council meeting when he introduced himself and asked about doing a ride along with his camera crew in a Springdale patrol car. This conversation was brief and I do not recall ever meeting or talking to him again. I have not ever met or otherwise had any other interactions with the Duggar family. Prior to May 21, 2015, I had never watched an episode of the Duggars' reality television show and only had a general understanding that they had a business in town and were a part of a reality television show.

5. I first became aware of the Springdale Police Department Offense Report at issue in this litigation (the "SPD Offense Report") and the 2006 investigation into allegations that Josh Duggar had molested members of his family and possibly another person (the "Investigation") in the evening or night of May 19, 2015. In the late afternoon or early evening of May 19, 2015, I

was advised by one of my captains, Captain Ron Hritz, that the SPD had received a FOIA request for the SPD Offense Report. At my request, I was provided a copy of the SPD Offense Report so that I could read the document that night. Also later that evening, Captain Hritz forwarded to me an email from a producer with NBC Universal/Access Hollywood to Sergeant Darrell Hignite. The email indicated that there was a tabloid article regarding sexual misconduct allegations against Josh Duggar. Sgt. Hignite was mentioned in the article as being involved in the investigation, and the article included a number of details of the investigation from the SPD Offense Report. This communication concerned me because it appeared that members of the press had information about a SPD Offense Report that to my knowledge had not previously been released.

6. During the morning of May 20, 2015, I instructed my staff not to release the SPD Offense Report until I had received legal advice from the City Attorney, Mr. Cate, and others about the FOIA Request and the SPD Offense Report. I remember that Mr. Cate was teaching a law enforcement training course in the late morning, and I waited until that was over so that I could speak to him about the FOIA Request and the SPD Offense Report. In the event that it would be determined necessary to release the report, Captain Hritz started to make redactions to the SPD Offense Report. I also asked Capt. Hritz to contact Jim Bob Duggar and inform him of the FOIA Request and to keep him apprised. When Mr. Cate was finished with his law enforcement training course, I spoke with him about the FOIA Request and asked for his legal advice regarding the FOIA Request. Mr. Cate informed me that he believed under the FOIA that we would have to redact and release the SPD Offense Report, but that out of an abundance of caution he wanted to speak to other attorneys, including the Washington County Juvenile Prosecutor and attorneys at the Arkansas Department of Human Services ("DHS") and the Arkansas Municipal League, to see if there was any basis to not release the report. At a point in the day I also placed a call to Lisa

McGhee, an attorney with DHS, to discuss the FOIA Request. I left a message with Ms. McGhee but she did not call me back on May 20, 2015. It was my understanding that Mr. Cate was also attempting to contact attorneys at DHS as well.

      7.      At a point in the early afternoon of May 20, 2015, Mr. Cate came to my office and participated in a phone conference with Colonel Bill Bryant, the Director of the Arkansas State Police about the FOIA Request and the SPD Offense Report. I had reached out to Col. Bryant about the FOIA Request because the Arkansas State Police is responsible for the investigations of crimes against children and child maltreatment and had extensive experience with the FOIA. I recall that Bill Sadler, the Public Information Officer for the Arkansas State Police, Col. Bryant and a legal counsel for the Arkansas State Police was on this conference call with Mr. Cate and me. Mr. Cate informed the representatives on the phone from the Arkansas State Police about the details of the FOIA Request and the SPD Offense Report. Col. Bryant and the legal counsel agreed that Springdale would be required to redact and release the SPD Offense Report. Later in that day, Mr. Cate came to my office again and we had a phone conference with Mark Hayes, who is the Director of the Arkansas Municipal League and at the time was the General Counsel for the Arkansas Municipal League. Mr. Cate and I spoke to Mr. Hayes about the FOIA Request and the SPD Offense Report and we informed him that the response to the FOIA Request was late. Mr. Hayes informed us that he was not aware of any exemption that would prohibit the release of the SPD Offense Report but he said that he would look into the question.

      8.      At some point later in the afternoon of May 20, 2015, I also placed a phone call to Mr. Mehdizadegan. I did not know Mr. Mehdizadegan and had never spoken with him before this phone call. I called Mr. Mehdizadegan because at that time there was confusion as to whether Springdale had received his FOIA request. Mr. Mehdizadegan informed me that the FOIA Request

had been sent to SPD via fax on May 15, 2015. I asked Mr. Mehdizadegan for time to check in our department to verify that the FOIA Request had been received on May 15, 2015. I recall that I asked my captains to verify when SPD had received the FOIA Request. I remember that I then called Mr. Mehdizadegan and asked him to provide me with the FOIA Request and the fax confirmation sheet as I had not yet received any confirmation from my captains. Mr. Mehdizadegan then sent the FOIA Request and the fax confirmation to me indicating that the FOIA Request had been received by SPD on May 15, 2015. I recall being embarrassed that my department had missed this FOIA Request and I remember talking to Mr. Mehdizadegan about his FOIA Request, specifically that it called for the production of a variety of records from a large number of addresses in Springdale and in other jurisdictions and that SPD would need more time to comply with the FOIA Request. Mr. Mehdizadegan told me that he was only interested in the SPD Offense Report and not with any of the other records which would be responsive to this request. I informed Mr. Mehdizadegan that I had the SPD Offense Report but that I was waiting on legal advice on whether this report could be released. After this phone call I was eventually advised several days later by Captain Ron Hritz that the FOIA Request was received by fax transmission to a common SPD printer/fax machine on May 15, 2015. The FOIA Request had been taken off the printer by an employee and placed into the office in-box of a police officer who was on vacation and so the FOIA Request went unnoticed. At no time in our conversations did Mr. Mehdizadegan inform me of the identify of his client.

9. At some point in the afternoon of May 20, 2015, I also received notification that Doug Thompson, a reporter with the Arkansas Democrat-Gazette had learned of the existence of the SPD Offense Report and had made a FOIA request for a copy. I called Doug Thompson and

explained to him that we were awaiting legal advice on whether this report could be released and I told him that I would contact him back.

10. In all of the communications and correspondences that I had on May 20, 2015, I received consistent opinions that the SPD Offense Report would have to be redacted and released pursuant to the FOIA and I was never informed by any attorney or person that I spoke with on that day that I the SPD Offense Report should be withheld from disclosure. With this being the case, I continued to review the redactions to the SPD Offense Report and asked Capt. Hritz and Mr. Cate to also continue to review the SPD Offense Report and make redactions. Throughout the evening, we continued to find additional redactions of places where there was a pronoun, an age or any type of identifying information that could be redacted. I recall that Mr. Cate informed me at some point in the late afternoon of May 20, 2015 that it was still his opinion that the SPD Offense Report had to be redacted and released pursuant to law. I also recall discussing with Mr. Cate that we would release the report later tonight, after several reviews of the redactions, to Mr. Mehdizadegan and then afterwards to Mr. Thompson. As we had a copy of the SPD Offense Report and were in the process of completing the necessary redactions, I did not believe there was any justification or possibility of delaying the release any longer.

11. Later that night, at approximately a few minutes before 9:00 p.m., I sent the redacted SPD Offense Report to Mr. Mehdizadegan via email transmission, and then to Mr. Thompson by email transmission as well. I also sent a redacted copy of the SPD Offense Report to Col. Bryant as a courtesy as the Arkansas State Police was now dealing with similar FOIA requests, and I also sent a copy to Mr. Cate.

12. The next morning, May 21, 2015 before 7:45 a.m., I recall that I was informed by that the Arkansas Municipal League advised that we should redact the names of Jim Bob and

Michelle Duggar from the SPD Offense Report out of an abundance of caution. I recall reaching out to Mehdizadegan and Mr. Thompson to see if they would accept a new version of the redacted SPD Offense Report with Jim Bob and Michelle Duggar redacted throughout. I was eventually informed by both men that they could not honor this request.

13. Also on May 21, 2015, I was contacted by Mr. Cate who informed me that he received a copy of an Order from Judge Stacey Zimmerman ordering that the SPD Offense Report be destroyed. Mr. Cate advised me that SPD would need to destroy the entire file containing the SPD Offense Report. I then ordered my command staff to destroy the SPD Offense Report file. Prior to receiving this information from Mr. Cate, I was not aware of any case regarding the Duggar family in juvenile court or otherwise.

14. I provided the redacted SPD Offense Report in response to the FOIA Request at the advice of legal counsel that Springdale was required by law to redact and release the SPD Offense Report. During the day of May 20, 2015, I participated in phone calls and conversations seeking other legal opinions regarding the FOIA Request and the SPD Offense Report from several officials and attorneys knowledgeable and aware of the FOIA and applicable Arkansas law and never received any indication that SPD Offense Report should not be redacted and released.

15. It is my personal knowledge that during my 34-year law enforcement career, it was the widespread practice of law enforcement agencies across Arkansas to redact and release police offense reports of adult offenders. For such police offense reports, it is my personal knowledge that it was the practice of law enforcement agencies across Arkansas was to redact the names and other identifying information of juveniles and victims of sexual offenses from such reports prior to releasing the redacted reports pursuant to an FOIA request. In my 34-year career in law enforcement, it is my personal knowledge that I never received or observed any training, nor

received or heard any opinion to the country of this practice to redact and release police offense reports of adult offenders.

16. In the days that followed the release of the SPD Offense Report, I spoke to my command staff about my concerns that the May 19, 2015 email to Sgt. Hignite indicated that the May 19, 2015 *In Touch* story stated "multiple sources have seen the report." Out of concern that there could have been a leak of the SPD Offense Report, I ordered an internal investigation report on May 26, 2014 into a possible unauthorized release of the SPD Offense Report. This investigation was led by Lieutenant Lester Coger of the SPD Internal Affairs Division. The investigation was not completed before I retired on June 30, 2015. I have never seen a copy of this internal investigation report nor was I consulted about any of the contents or findings of this report after my retirement.

17. In all of the actions that I have recounted in this affidavit, including but not limited to all actions related to the processing of the FOIA Request and the release of the SPD Offense Report, I believed that I was acting under the advice of legal counsel and that it was both my job and duty to follow this advice and to do what I understood was my duty. Before the evening of May 19, 2020, I was not aware of the FOIA Request, the SPD Offense Report or the fact that there had been a 2006 investigation into molestation allegations involving Josh Duggar, and as such prior to the evening of May 19, 2020 I did not have a conversation with any person about the these events as they were completely unknown to me. I have no recollection of being informed of this investigation in 2006 and to my knowledge there are no records that indicate that I was informed of this investigation. In all of my actions related to the processing of the FOIA Request and the release of the SPD Offense Report, I acted without any malice or ill will towards the Plaintiffs in

this matter or towards anybody in Duggar family and it was not my intent to do anything in that regard other than to comply with the obligations under the FOIA.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Dated: October 5, 2021

_____
Kathy O'Kelley