IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JILL DILLARD, JESSA SEEWALD,                          **PLAINTIFFS**
JINGER VUOLO, and JOY DUGGAR

vs.                                    **CASE NO. 5:17-5089-TLB**

CITY OF SPRINGDALE, ARKANSAS;                         **DEFENDANTS**
WASHINGTON COUNTY, ARKANSAS;
KATHY O'KELLEY, in her individual and
official capacities;
ERNEST CATE, in his individual and official capacities;
RICK HOYT, in his individual and official capacities;
STEVE ZEGA, in his official capacity;
And DOES 1-10, inclusive

### DECLARATION OF CAPTAIN LESTER COGER,
### SPRINGDALE POLICE DEPARTMENT

I, Lester Coger, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.     I am over the age of 18 years and have personal knowledge of the information set

forth in this Affidavit.

2.     I am an employee of the City of Springdale, Arkansas, and currently serve as a

Captain with the Springdale Police Department.

3.     I have been a police officer since June 1, 1990.

4.     I have been employed as a police officer with the Springdale Police Department

since June 1, 1990.

5.     I am currently the Captain over the Criminal Investigation Division / Service

Division of the Springdale Police Department.

6.     On May 26, 2015, Chief Kathy O'Kelley, then Chief of the Springdale Police

Department, directed me to conduct an internal investigation into the possible unauthorized

release of Springdale Police Department Report Number 01-06-006986 to outside sources. At



EXHIBIT

11

that time, I was a Lieutenant with the Springdale Police Department and my duties and responsibilities included conducting investigations for the Internal Affairs Division of the Springdale Police Department.

7.      Report Number 01-06-006986 is the report that was released in redacted form by the City of Springdale on May 20, 2015, in response to a Freedom of Information Act request that is the subject of the lawsuit that is captioned above.

8.      In the course of my career, I have conducted in excess of 34 internal affairs investigations, and in excess of 700 criminal investigations.

9.      Attached hereto as Exhibit A is a true and correct copy of the Case Summary of the Springdale Police Department's Internal Affairs Investigation Report in Case No. IA2015-0002 ("IA Report") regarding the unauthorized release of Springdale Police Department Report Number 01-06-006986 to outside sources.

10.     The Case Summary and the Internal Affairs Investigation Report in Case No. IA 2015-0002 is a record that I created in the course of my duties as an investigator. The IA Report, including the Case Summary, is maintained in the normal course of the Springdale Police Department's business, and it was a normal part of my responsibility at that time to maintain such records. The IA Report and the Case Summary set forth my activities in conducting the legally authorized investigation as well as my factual findings of the legally authorized investigation.

11.     The Internal Affairs Investigation conducted reveals no any evidence that a currently employed Springdale Police Department employee or any currently employed individual of the City of Springdale inappropriately released information of any type of

document or information, which involved the Duggar Family, prompting the InTouch Magazine's release of Report 1-06-006986.

12.     This Internal Affairs Investigation conducted reveals no evidence that any laws, policies and procedures, rules and regulations, or the City of Springdale personnel and procedures manual directives were violated by any currently employed Springdale Police Department employee or any currently employed individual of the City of Springdale.

13.     Tandra Barnfield and Sherrl Lynn Colville (Townsend) provided statements that they had information regarding Josh Duggar's molestation of his sisters and shared this information with In Touch.   Both Tandra Barnfield and Sherrl Colville stated that they received the information from a former teacher and that they passed this information on to an *In Touch* reporter Melissa Roberto prior to May 20, 2015.  Following the interviews with Tandra Barnfield and Sherrl Colville there was no evidence the past Chief of Police, Kathy O'Kelley, or any other police department employee, gave either of them any information regarding report number 1-06-006986 on Josh Duggar.

14.     Information obtained on-line and from interviews I conducted revealed that Josh Duggar's molestation of his sisters was known from sources outside of the City of Springdale prior to the release of the redacted Report 1-06-006986 by the City of Springdale on May 20, 2015.

15.     I reported the results of the IA Report to Interim Police Chief Mike Peters as Chief O'Kelley, who ordered the internal affairs investigation, had retired.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Dated: October 5, 2021

LESTER COGER, CAPTAIN
SPRINGDALE POLICE DEPARTMENT

 **CITY of SPRINGDALE**

POLICE DEPARTMENT                    OFFICE OF THE CHIEF OF POLICE

May 26, 2015

Lieutenant Lester Coger:

On May 19, 2015 I received an email from Captain Hritz which contained a forwarded email from Sergeant Darrel Hignite. The contents of Sgt. Hignite's email indicate that *In Touch* magazine stated "multiple sources have seen the report" which leads one to wonder if our report have been released in its original form or information came from within the Springdale Police Department.

As a follow up to our conversations last week I have included the audit report and letters from employees and am hereby directing to look into this matter to determine if any employees may have provided direct or indirect information to *In Touch* magazine or furthered the release of information which may be in violation of departmental policy. Further information may be obtained through the Technology Department that has been requested but not yet received.

I am hereby directing you to conduct an internal investigation into the possible unauthorized release of a Springdale Police Department incident report to outside sources.

If you have any questions, please contact me at 479-750-8128.

Respectfully,

Kathy O'Kelley, Chief of Police

OFFICE OF THE CHIEF OF PO
KATHY O'KELLEY, C



**EXHIBIT**

tabbies

# Springdale Police Department

# Internal Affairs Division

**Case:** IA2015-0002

**Investigator:** Lt. Lester Coger

**Case Summary:**

On May 15, 2015 Attorneys at law Cross, Gunter, Witherspoon, & Galchus, P.C. filed the Freedom of Information Act Request with the Springdale Arkansas Police Department asking for information on the Duggar family. The FOIA was dated May 15, 2015. A copy of the FOIA is enclosed in this case file.

On May 19, 2015 Sgt. Darrel Hignite was contacted via email by NBC Universal inquiring about report number 01-06-006986 on Josh Duggar. The email to Sgt. Hignite stated, "An article about reality star Josh Duggar will come out in the magazine *In Touch* tomorrow. It is a piece that alleges that Josh was named in an underage sex probe shortly before 2005." Sgt. Hignite advised he could not comment or discuss the report.

On Wednesday May 20, 2015 report 01-06-006986 on Josh Duggar was released via FOIA to Abtin Mehdizadegan of Attorneys at law Cross, Gunter, Witherspoon, & Galchus, P.C.

The redacted report was then published in an article on the In Touch: http://www.intouchweekly.com/posts/bombshell-duggar-police-report-jim-bob-duggar-didn-t-report-son-josh-s-alleged-sex-offenses-for-more-than-a-year-58906

1

On Thursday May 21, 2015 Chief Kathy O'Kelley directed the Division Captains, Ron Hritz, Mike Peters, Frank Gamble and Derek Hudson, to obtain a letter from each Springdale Police Department employee who had accessed report number 01-06-006986 from 01/01/2014 through to 05/20/2015.  Fourteen letters were submitted by the employees who were still currently employed by the police department.  The submitted letters have been enclosed in the case file for future reference.

On Tuesday, May 26, 2015 at 1400 hours, this investigator met with Chief Kathy O'Kelley.  Chief O'Kelley directed an Internal Affairs investigation be conducted on the possibility of a leak of confidential information from the Springdale Police Department in reference to report number 01-06-006986.

Chief O'Kelley supplied this investigator with printed information obtained from Mr. Austin Favorite of the City of Springdale IT Department.  The documents included:

1) A copy of the (Password History Listing / By Program name) report dated from: 01/01/2014 to 05/20/2015.  The above report shows each time the report number 01-06-006986 was accessed via the AS400 computer system.  The report shows 30 Police Department employees accessed the report between the above listed dates.

2) A copy of the (Password History Listing / By Program name) report dated from: 01/01/2006 to 05/20/2015.  The above report shows report 01-06-006986 was accessed 177 times by Police Department employees between the above listed dates.

   The employees listed on the above report were employed in different divisions within the police department to include:  Patrol Division, Criminal Investigation, Jail,

2

Dispatch, and secretarial positions within the police department.

Both reports list above have been enclosed in this case file for future reference.

3) A report showing eight Police Department employees who printed report number 01-06-006986.

Records show the two most recent print jobs on report 01-06-0066986 where performed by Officer Jacob Tarrant. The first printing of the report by Officer Tarrant was on 03/11/2013 and the second printing was on 06/21/2014.

The print job on 05/19/2015 by Captain Ron Hritz was prompted by this investigation, and is not being looked at for investigatory purposes.

Police Department records show Officer Jacob Tarrant was hired as a jailer for the department on 2/10/2013 through 9/13/2014. He was employed as a patrol officer on 9/10/2014.

The 06/21/2014 printing of the report by, at that time Jailer Jacob Tarrant, corresponds with Tarrant viewing the report on 06/21/2014. The report shows to have been viewed by Tarrant at workstation DDSI located in the police department jail office.

4) Lastly, e-mail copies forwarded by Sergeant Darrel Hignite giving rise for concern that sensitive information may have been generated and / or release against department policy from within Springdale Police Department.

3

After receiving the above information, all of the documents were reviewed for evidence to the possibility of an internal leak of the Josh Duggar case to *In Touch* Magazine prior to the official FOIA request from Attorneys at law Cross, Gunter, Witherspoon, & Galchus, P.C.  It was decided all of the individuals, who were still employed by the police department, and who printed a copy of report number 01-06-006986 would be interviewed.

This investigator also noted which employees had accessed the report and the amount of time the report was left open for viewing. Other employees who were in the report for a longer period of time or more frequent were also interviewed.

On May 26, 2015 this investigator reviewed the Facebook page of Officer Brian Gabbard.  No information about the Duggar family was located on his Facebook page.  No information pertaining to this investigation was obtained.

Officer Brian Gabbard was the most recent employee showing to have accessed report number 01-06-006986 through the Police Department AS400 computer system.

Officer Gabbard accessed report number 01-06-006986 on 4/03/2015 from 1204 to 1214 and on 04/15/2015 from 1148 to 1150.

On May 26, 2015 this investigator searched for the Facebook page belonging to Officer Jacob Tarrant; however, no Facebook page was located for Jacob Tarrant.

This investigator reviewed the Facebook page for Jim Bob and Michelle Duggar.  Their "Friends" lists were reviewed for any Springdale Police Department employee(s); however, access to the Jim Bob and Michelle Duggar's friends list on their Facebook pages was not accessible.

4

On May 27, 2015, this investigator reviewed 389 pages of emails submitted by the Springdale IT Department relating to any and all data transmitted via police department emails concerning the word "Duggar". No evidence was located supporting the possibility of a leak of confidential information from the Springdale Police Department.

On May 28, 2015, a letter from Officer Brian Gabbard was submitted to Captain Derek Hudson. This letter pertained to Officer Gabbard accessing report number 01-06-006986. A copy of Officer Gabbard's letter is enclosed in this case file along with the other letters submitted by employees.

On May 28, 2015 at 1148 hours, this investigator conducted a digitally recorded interview with Officer Brian Gabbard. Officer Gabbard read and signed he understood the employee Garrity statement form. A copy of the audio recording and a video recording has been enclosed in the case file.

Officer Brian Gabbard stated he did know the Duggar family personally and had been to their residence when the oldest daughter of the Duggar family was married.

Officer Gabbard admitted to viewing the report on Josh Duggar out of curiosity when he heard other officers mentioning the report in question. Officer Gabbard stated he was not able to view the narratives due to the narratives being pass-word protected.

Officer Gabbard advised he did not print report number 01-06-006986. Officer Gabbard stated he did not release any information in relation on the report, nor speak to anyone in reference to report number 01-06-006986.

Computer Records show Officer Gabbard accessed report number 1-06-006986 on the following dates: 04/03/2015 from 1204 to 1214; and 04/15/2015 from 1148 to 1150.

Computer Records show Officer Gabbard did not print a copy of report number 1-06-006986.

On May 29, 2015 at 0925 hours this investigator conducted a digitally recorded interview with Officer Chad Wilson. Officer Wilson read and signed he understood the employee Garrity statement form. A copy of the audio recording and a video recording has been enclosed in the case file.

Officer Chad Wilson had a difficult time remembering when he accessed report number 01-06-006986. Records show Officer Wilson accessed the report on 6/3/2010 from 0500 to 0526; 06/03/2010 from 0614 to 0614; on 2/26/2011 from 1003 to 1134; and 12/31/2013 from 2123 to 2145.

Officer Wilson printed the report number 01-06-006986  on 6/3/2010. Officer Wilson stated he printed the report initially because he was "curious" and the report narratives were pass-worded. By printing the report, Officer Wilson was able to view the password protected narratives, etc.

Officer Wilson stated he does not personally know anyone in the Duggar family. Officer Wilson advised he never released any information nor discussed any details in reference to report number 01-06-006986.

On June 15, 2015 at 1720 hours this investigator conducted a digitally recorded interview with Officer Jacob Tarrant. Officer Tarrant read and signed he understood the employee Garrity statement form. A copy of the audio recording and a video recording has been enclosed in the case file.

6

Officer Jacob Tarrant could not remember accessing report number 01-06-006986. Records show Officer Tarrant accessed the report on 3/11/2013 from 1227 to 1228, again on the same date from 1230 to 1230 and a third time on the same date from 1230 to 1233.

Officer Tarrant accessed the report a fourth time on 3/23/14 from 0836 to 0837 and a fifth time on 6/21/2014 from 1106 to 1107. Officer Tarrant shows to have printed the report on 3/11/2013 and again on 6/21/2014. Officer Tarrant stated he does not recall ever printing the report.

Officer Tarrant recalled being made aware of the incident being reported to the Springdale Police Department and involving Josh Duggar by a fellow employee working in the jail with him named Chasity Williams.

Officer Tarrant stated he does not personally know anyone in the Duggar family. Officer Tarrant advised he did speak to his wife about the incident; however, he stated having not read the narrative he did not have any particulars to the incident. Officer Tarrant said he never released any information nor discussed the incident with anyone other than his wife.

On June 16, 2015 at 0945 hours I received a copy of an interview posted on the internet from Captain Mike Peters. The interview was conducted on the Reporter's Notebook ("Live" Shift by msnbc) with Beth Fouhy. The interview conducted by Beth Fouhy involved Alexander Hitchen the General News Editor with *InTouch Weekly*. This interview has been enclosed in this case file for future reference if needed.

Mr. Hitchen stated in the interview the Duggar Family had always been a point of interest with *InTouch Magazine*. He said *InTouch* began to research on the internet any information referencing the Duggar family.

7

This internet based research prompted *InTouch* to send a reporting team to Springdale Arkansas. This reporting team through "speaking with people", acquired enough information to believe the "Springdale Police Department" had investigated alleged sexual assault criminal acts of Josh Duggar.

Mr. Hitchen stated *InTouch Magazine* at this point did not have a copy of the police report. He went on to say *InTouch* hired a law firm (Cross, Gunter, Witherspoon & Galchus, P.C.) to submit a Freedom of Information Act request to the Springdale Police Department. The FOIA requested specific addresses, dates, and individuals names the reporting team had gathered during their initial investigation. (The FOIA Request from Cross, Gunter, Witherspoon & Galchus, P.C. is enclosed in this case file).

Mr. Hitchen does not insinuate *InTouch Magazine* had previously received a copy of any police reports from the Springdale Police Department. Mr. Hitchen does not give any statements advising there were any "inside sources" of any type which forwarded any sensitive information to InTouch Magazine. *In Touch* state they received information from individuals interviewed by the InTouch reporters.

On June 18, 2015 at 1347 hours this investigator conducted a digitally recorded interview with Springdale Police Department employee Crystal McDonald. Mrs. McDonald read and signed she understood the employee Garrity statement form. A copy of the audio recording and a video recording has been enclosed in the case file.

Computer Records show Crystal McDonald accessed report number 1-06-006986 on the following dates: 2/14/2008 from 1508 to 1509; 2/14/2008 from 1515 to 1516; and 5/1/2008 from 1332 to 1333.

8

Computer Records show Crystal McDonald printed a copy of report number 1-06-006986 on 2/14/2008.

Crystal McDonald could not recall printing a copy of the report. She stated she did not speak about, nor give any information regarding, report number 1-06-006986 to any other person(s).

On June 18, 2015 at 1455 hours this investigator conducted a digitally recorded interview with City Attorney's Office employee Lynda Belvedresi.   Mrs. Belvedresi read and signed she understood the City of Springdale employee Garrity statement form.  A copy of the audio recording and a video recording has been enclosed in the case file.

Computer Records show Lynda Belvedresi accessed report number 1-06-006986 on the following dates: 5/1/2007 from 1016 to 1021; 8/7/2013 from 1601 to 1604; and again on 8/7/2013 from 1606 to 1607.

Computer Records show Lynda Belvedresi printed a copy of report number 1-06-006986 on the following date:  3/12/2007.

Lynda Belvedresi did recall viewing the report.  She advised the Springdale City Attorney at the time, requested Mrs. Belvedresi keep statistics on possible cases which could be construed as "domestic abuse crimes", etc.

Mr. Belvedresi could not recall printing a copy of the report.  She stated she did not speak about, nor give any information regarding, report number 1-06-006986 to any other person(s).

On June 19, 2015 at 1521 hours this investigator conducted a digitally recorded interview with Springdale Police Sergeant Jake Franklin.   Sgt. Franklin read and signed he understood the

employee Garrity statement form.  A copy of the audio recording and a video recording has been enclosed in the case file.

Computer Records show Sgt. Franklin accessed report number 1-06-006986 on the following dates: 5/12/2011 from 0618 to 0620.

Computer Records show Sgt. Franklin printed a copy of report number 1-06-006986 on 10/25/2007.

Sgt. Franklin did recall viewing the report.  He advised he was assigned to the Criminal Investigation Division and assisted, at that time, Det. Darrel Hignite with different aspects of the Josh Duggar case.  Sgt. Franklin stated he would have only printed the report while assisting with the investigation.

Sgt. Franklin advised he was assigned to the Patrol Division on 05/12/2011 when he viewed the report.  He stated it is not uncommon for him to review major cases he has worked in the past to see if there have been any updates.

Sgt. Franklin stated he confided in his wife and step-father regarding report number 1-06-006986.  Sgt. Franklin stated he feels confident neither would ever speak of the report.  Sgt. Franklin's wife is a nurse and step-father is a retired law enforcement officer and both understand the importance of confidentiality.  Sgt. Franklin said he never released any information nor discussed the incident with anyone other than his wife or step-father.

On June 22, 2015 at 818 hours   this   investigator   conducted   a digitally recorded interview with Springdale Police Dispatcher Christina Burks.  Mrs. Burks read and signed she understood the employee Garrity statement form.  A copy of the audio recording and a video recording has been enclosed in the case file.

Christina Burks could remember accessing the report number 01-06-006986. Records show she accessed the report on 12/08/2008 from 1200 to 1200. Records also show Christina Burks printed the report on 12/08/2008.

Christina Burks could not recall printing a copy of the report. She advised when accessing the report all the narratives were pass-worded. Burks said she did not speak about nor give any information regarding report number 1-06-006986 to any other person(s).

On June 22, 2015 at 1355 hours this investigator conducted a digitally recorded interview with Springdale Police Jailer Chasity Williams. She was read and signed she understood the employee Garrity statement form. A copy of the audio recording and a video recording has been enclosed in the case file.

Chasity Williams could remember accessing the report number 01-06-006986. Records show she accessed the report on 12/02/2012 from 0634 to 0808. Williams advised she learned of the report on Josh Duggar from a past Springdale Police Department jailer named Justin Rogers.

No records show Williams printed the report; however, she advised the other jailers and her in the jail office printed a copy of the report on 12/02/2012 the same day she accessed the report.

Williams stated in her interview, she was advised by other employees, if she printed a copy of the report, the password protected narratives could be read. Williams said only two of the narratives actually printed correctly so they were unable to read all of the report.

Chasity Williams stated she does not personally know anyone in the Duggar family or any friends of the Duggar family. She

advised she did not speak to anyone about the incident in question; nor, did she ever release any information or discuss the incident with anyone.

On July 2, 2015 at 2235 hours, this investigator conducted a digitally recorded interview with Dispatcher supervisor Tricia Woodard.  Tricia Woodard read and signed she understood the employee Garrity statement form.  A copy of the audio recording and a video recording has been enclosed in the case file.

Tricia Woodard stated she did know the Duggar family personally due to having attended the Temple Baptist Church in the past with the Duggar family.  Tricia Woodard said she viewed the report out of curiosity when she heard the Duggar family members had been called to the Springdale Police Department Criminal Investigation Division.  Tricia Woodard stated she was not able to view the narratives due to them being pass-worded.

Tricia Woodard advised she printed report number 01-06-006986 in order to view the narratives.  Tricia Woodard stated she did not release any information in relation to this report, nor speak to anyone in reference to report number 01-06-006986.

Computer Records show Tricia Woodard accessed report number 1-06-006986 on the following dates: 5/10/2008 from 0151 to 0152; and again on 05/10/2008 from 0155 to 0155; 02/16/2009 from 0144 to 0144.

Computer Records show Tricia Woodard printed a copy of report number 1-06-006986 on 05/10/2008.  Tricia Woodard said she would have shredded the report after reading the information.

On July 2, 2015 at 2359 hours, this investigator conducted a digitally recorded interview with Springdale Dispatcher Matt Fritchie.  Matt Fritchie read and signed he understood the

12

employee Garrity statement form.  A copy of the audio recording and a video recording has been enclosed in the case file.

Computer Records show Matt Fritchie accessed report number 1-06-006986 on the following date: 02/03/2015 from 0451 to 0452.

Computer Records show Matt Fritchie did not print a copy of report number 1-06-006986.  Matt Fritchie stated he did not speak about, nor give any information regarding, report number 1-06-006986 to any other person(s).

During the interview above with Tricia Woodard, she mentioned a dispatcher named Makayla Sims.  Makayla received a Facebook message on 05/15/2015 from a former Springdale dispatcher named Cecil Clifton.  The message was captured via a cell phone camera by Makayla Sims and their correspondence is enclosed in this case file.

The Facebook message stated the following:

May 15, 19:25 William Cecil Clifton on mobile:
"Can you look in house at josh Duggar and get me that date, the charge, and the report number for the sexual ass case or whatever it was where he molested his siblings.  I am going to FOI it to show casey's aunt she's curious and she can't find it.  I am like omg it's there haha let me get the info so we can FOI that shit instead"

May 17, 00:32 Makala Sims:
"Yea I don't think I can do that… Tricia said you could call the front office Monday morning"

William Cecil Clifton on mobile:
"Okay. I actually don't need it anymore.  She called and they said they didn't exist but I know they do.  But is doesn't matter. Thanks though!!"

13

May 17, 00:32 Makayla Sims:
"Yea I've never actually read the report but I was shocked to see that something like that"

May 20, 20:57 Makayla Sims:
https://www/facebook.com/oboogie71/posts/10153285727610539
"There a story about josh duggar and his inappropriate touching"

William Cecil Clifton on mobile:
"Haha I saw that.  An officer sold them out I guess.  Because one of the stories was talking about the person that sold them out was involved in the investigation and stuff."

Cecil Clifton shows to have accessed report number 01-06-006986 on the following dates:

12/04/2009 from 0709 to 0709.
01/15/2011 from 1738 to 1738.
06/21/2011 from 1638 to 1638.
06/21/2011 from 1643 to 1644.
07/23/2011 from 2015 to 2016.

Attorneys at law Cross, Gunter, Witherspoon, & Galchus, P.C. filed the Freedom of Information Act Request asking for information on the Duggar family dated May 15, 2015.  This is the same day Cecil Clifton contacted Makala Sims requesting Makayla give him "the date, the charge, and the report number of the report Josh Duggar.

On May19, 2015 at 16:45:09 CDT there was an email sent to Sgt. Darrel Hignite from Genevieve Wong (NBCUniversal) requesting information about the Josh Duggar case.

The message from Cecil Clifton to Makala Sims requesting a copy of report number 01-06-006986 was sent on May 15, 2015.  The

redacted report1-06-006986 was sent to Abtin Mehdizadegan from the above named law office on May 20, 2015 at 8:58 p.m. by Chief Kathy O'Kelley.

This confirms Cecil Clifton requested the Josh Dugger report information five days prior to the report being released to the attorneys hired by *In Touch* Magazine and four days prior to Sgt. Hignite being contacted by NBC Universal.

An email from Blaine Todfield / Subject: *In Touch* Exclusive: 19 KIDS AND COUNTING SON NAMED IN UNDERAGE SEX PROBE, stated, "<u>a source familiar with the case told *In Touch*</u>". The email also stated, "<u>I saw and read the report and it clearly stated that Jim Bob brought his son Josh into the Arkansas State Police and spoke to a state trooper about Josh's involvement in alleged inappropriate touching with a minor</u>, on source to *In Touch*."

On July 3, 2015 at 1400 hours, I received a call back from Cecil Clifton.  Mr. Clifton said he is residing in Texas and agreed to speak with me on the phone.  The telephone call was recorded and transcribed.  The recording and transcription are enclosed in the case file.

Mr. Clifton confirmed he had sent Dispatcher Makayla Sims a Facebook message requesting a copy of the Josh Dugger report. Mr. Clifton advised me he had been contacted by a friend who inquired if a sexual assault case had ever been filed on Josh Duggar.  Cecil Clifton would not give this investigator the name of the person contacting him for information on the above report.

Mr. Clifton stated this friend told him she was curious if a report existed because she had located information posted on the internet about Josh Duggar and the possible sexual assault allegations.

15

Mr. Clifton advised this friend there was a report file on Josh Duggar, and to go to the police department to obtain a copy. The friend advised she needed the report number. Mr. Clifton stated this is why he sent a Facebook message to Makayla Sims requesting the report information on Josh Duggar.

I asked Mr. Clifton if he had been contacted by any new media and inquired if Mr. Clifton had released any of the information on the report. Mr. Clifton's responded, "Ah...no, not from *In-Touch*."
This unknown "friend" told Mr. Clifton she had gone to the Springdale Police Department and asked if there were any reports on Josh Duggar and was told there was not a report, etc.

Mr. Clifton stated he told her there was a report filed on Josh Duggar. Mr. Clifton would not elaborate if he gave his "friend" any details about the report. He stated he was just trying to get the report number on Josh Duggar so she could FOIA the report.

Once again, Mr. Clifton would not state the identity of his friend who requested the information reference the report on Josh Duggar. I requested Mr. Clifton contact his female friend to call me and I gave Mr. Clifton my phone number.

On July 3, 2015 at 1510 hours, I received a text message from Cecil Clifton. The message read as follows:



On July 3, 2015 at 1618 hours, this investigator received a second phone call from Cecil Clifton.  The telephone call was recorded and transcribed.  The recording and transcription are enclosed in the case file.

During the second phone conversation, Mr. Clifton advised he had spoken to his friend again about the Josh Duggar report.  He advised his friend had stated she did not know any details about the report, but did know that a report on Josh Duggar had been filed with the Springdale Police Department.  Mr. Clifton said his friend stated she was the person who notified *In Touch* reference the above information.

Mr. Clifton reiterated he did not give her any information about the report, only that a report did in fact exist on Josh Dugger because he had personally seen the report.  He advised *In Touch* had contacted the above friend due to her posting a photograph of her sister and her sister's wife kissing in front of the Duggar's house.

17

Mr. Clifton advised the photo went viral on the internet and this is the reason *In Touch* had contacted the females above.

On July 4, 2015 at 2248 hours, this investigator conducted a digitally recorded interview with Springdale Dispatcher Makayla Sims. Makayla Sims read and signed she understood the employee Garrity statement form. A copy of the audio recording and a video recording has been enclosed in the case file.

Computer Records show Makayla Sims accessed report number 1-06-006986 on the following date: 05/12/2014 from 2120 to 2120.

Computer Records show Makayla Sims did not print a copy of report number 1-06-006986. Matt Fritchie stated he did not speak about nor give any information regarding report number 1-06-006986 to any other person(s).

Makayla Sims explained she went to high school with Cecil Clifton. She mentioned Clifton being employed as a dispatcher when she began to work in the dispatch center.

Makayla received two additional Facebook messages from Cecil Clifton in addition to the above documented messages. Makayla Sims forwarded this investigator the additional messages and they have been enclosed in this case file.

On July 6, 2015 this investigator obtained information on the two females who kissed in front of the Duggar residence while holding their Oklahoma marriage license. They are identified as Tandra Rena Barnfield and Samantha Arron Barnfield (Muzny).

Facebook research on Tandra Barnfield and Samantha Barnfield (Muzny) revealed several posts supporting marriage equality and LGBT rights. Several Facebook page screenshots referencing the

Duggars' are enclosed in this case file.   One of the photographs from Tandra Barnfield's included the following:



The hand written note on the article above reads, "Tandra, We did it!  Thanks for being awesome," Signed Melissa Roberto.  There is also a letter above to Tandra from Melissa Roberto thanking

19

Tandra and Sherrl for "for being responsive over the last few weeks."  Melissa Roberto is the reporter from *In Touch* who contacted Tandra Barnfield after the photo of Tandra and Samantha was posted on the Facebook and Instagram account.

The above photo of the hand written letter also mentions a "Sherri".  I conducted a Facebook page of Tandra Barnfield and Samantha Barnfield.  Tandra Barnfield has her friends set on private.  Sam Barnfield listed only one "Sherri" as a friend which name showed as a Sherri McFerrin Townsend from Springdale Arkansas.

A research of Sherri McFerrin Townsend's Facebook page revealed a list of "Family and Relationship".  In the list of "Family and Relationship", Tan R. Barnfield is displayed as the Sister of Sherri Townsend.

A friends search on the Facebook Page of Sherri McFerrin Townsend shows ex-Springdale Dispatcher Cecil Clifton listed on her friends list.  Screen shots of Sherri McFerrin Townsend's Facebook page have displaying the above information has been enclosed in this case file for future reference.

On July 15, 2015 at 0845 hours, this investigator researched the information located on Samantha Muzny.  Her data revealed a possible phone number.  This phone number was called and the grandmother of Samantha Muzny was contacted.  She advised a message would be given to Samantha Muzny to contact this investigator at the Springdale Police Department.

On July 16, 2015 a message was left on this investigators office phone from Tandra Barnfield.  On the above date at 1440 hours, Tandra Barnfield called back and we spoke on the phone. Mrs. Barnfield agreed to explain her involvement with *In Touch* and the story about Josh Duggar.

Tandra Barnfield stated the following during the phone interview:

1. Tandra Barnfield and Samantha Muzny kissed in front of the Duggar's house in Tontitown Arkansas.

2. Sherrl Lynn Colville (Townsend) is Tandra Barnfield's biological sister who took the photograph.

3. The photograph was posted on Facebook and the photograph went "viral".

4. Tandra Barnfield was then contacted by *In Touch* inquiring why she had kissed Samantha Muzny in front of the Duggar's residence.

5. Tandra Barnfield told *In Touch* to contact Sherrl Colville about the report on Josh Duggar inappropriately touching underage girls.

6. Tandra Barnfield spoke with *In Touch* about the report on Josh Duggar due to being upset at the anti-gay messages sent out on the internet by Michelle Duggar.

7. Tandra Barnfield contacted ex-Springdale police dispatcher Cecil Clifton to inquire about the steps to filing an FOIA for the Josh Duggar report.

8. Tandra Barnfield stated she, as well as her sister Sherrl Lynn Colville (Townsend), was the "casey's aunt" whom Cecil Clifton referred to in his Facebook message to Makayla Sims.

9. Tandra Barnfield stated no one at the Springdale Police Department, to include Chief Kathy O'Kelley had anything

to do with *In Touch* having knowledge of, or obtaining a copy of, the Josh Duggar report.

10.   Tandra Barnfield said she had been given information about the Josh Duggar report while talking to a school teacher who had knowledge of the report being filed on Josh Duggar.

11.   Tandra Barnfield stated she does not know any employees of the Springdale Police Department and has never spoken to Chief Kathy O'Kelley.

The telephone call with Tandra Barnfield was recorded and transcribed. The recording and transcription are enclosed in the case file.

On July 20, 2015 at 1008 hours, this investigator was contacted by Sherrl Lynn (Townsend) (McFerrin) Colville. Sherrl Colville agreed to come by the Springdale Police Department for an interview. Sherrl Colville arrived at the police station and the interview was conducted in the Internal Affairs Office. It was explained to Mrs. Colville the interview would be recorded. A copy of the audio recording and a video recording has been enclosed in the case file.

Sherrl Colville explained the following during the interview. Sherrl Colville advised the situation began when Michelle Duggar expressed opposition to Fayetteville Arkansas' proposed anti-discrimination ordinance. Sherrl Colville stated she has a "gay son and a gay sister, and is very defensive of them."

Sherrl Colville explained, around the time one of the Duggar's daughters was to be married; Michelle Duggar posted a request on their Facebook page to receive photos of other married couples kissing.

22

Sherrl Colville said this annoyed her and she lived down the street from the Duggar residence. Sherrl Colville said Tandra Barnfield, Samantha Muzny, and her decided to take a photo of Tandra and Samantha kissing in front of the Duggar residence and post the photograph on the Duggar Facebook page. The three also posted the photograph on other personal social media pages.

Sherrl Colville stated several people picked up the photograph and the picture went viral in the United States and internationally. She was then contacted by RADAR On-line for an interview. Sherrl Colville gave her identity to RADAR On-line. She conducted an interview with RADAR On-line. The interview referenced the photograph of Tandra and Samantha kissing, and Michelle Duggar's opposition to the LGBT rights and the robocall Michelle sent in regard to the anti-discrimination ordinance.

Sherrl Colville said she was contacted by a past high school teacher. She did not want to give the teachers identity. The teacher reminded Sherrl of the Josh Duggar allegations of "child molestation."

Sherrl Colville told her sister, Tandra Barnfield, about the Josh Duggar story and the allegations of sexual misconduct. Tandra Barnfield was later contacted by *In Touch* reporter, Melissa Roberto, due to the photograph of Tandra and Samantha kissing in front of the Duggar residence.

Tandra Barnfield then revealed the Josh Duggar story of sexual misconduct to *In Touch* reporter Melissa Roberto. Tandra told Melissa Roberto she should contact her sister Sherrl Colville for more detail of the Josh Duggar Story.

*In Touch* reporter, Melissa Roberto, made contact with Sherrl Colville and they discussed the Josh Duggar sexual assault allegations. Sherrl Colville contacted her nephew named Casey

Haines. (This is the "Casey" mentioned in the Facebook message from ex-Springdale Dispatcher Cecil Clifton to Springdale Dispatcher Makayla Sims.)

Sherrl Colville stated Casey Haines is good friends with Cecil Clifton. Sherrl Colville contacted Cecil Clifton. Cecil told Sherrl the report on Josh Duggar for sexual assault did exist at the Springdale Police Department. She stated Cecil Clifton then explained to her some FOIA procedures to obtain the report on Josh Duggar.

Sherrl Colville stated she contacted Melissa Roberto with the above information about the police report. Sherrl Colville stated, later on, she read where *In Touch* posted a copy of the report on Josh Duggar and then everything "blew up."

A copy of the audio recording and a video recording of the interview with Sherrl Colville has been enclosed in the case file for future reference if needed. This interview was transcribed and the transcription is also enclosed in this case file.

The FOIA request from Cross, Gunter, Witherspoon & Galchus, P. C. requested the following: "We are seeking the following records involving, relating, to , and/or mentioning the individuals and/or the addresses set forth in Table 1 below, from January 1, 1998 until December 31, 2008.

The report 1-06-006986 file against Josh Duggar was on December 7, 2006. The report above stated the actual incident took place approximately three and a half years prior to the above date. With the FOIA request dating back to January 1, 1998, it would appear *In Touch* did not have any information of the exact date of the incident, the date of the actual report, or a "copy of the report" to reference for their FOIA request.

**Conclusion:**

Information on the Internet gives rise to suspicions' Josh Duggar had inappropriately touched his younger sisters and a family babysitter. There were reports of "sin in the camp" and Josh Duggar being sent away for "rehabilitation" dating back as early as 2008 and possible early dates.

It has be reported, Oprah Winfrey canceled the Duggar family's taping of a show and sent them home after learning of allegations of Josh Duggar's "molesting underage girls, some of who included his sisters."

Josh Duggar and his parents spoke to an Arkansas State Trooper and confessed to the Trooper he had inappropriately touched four of his sisters and a family babysitter.

During the initial investigation on Josh Duggar, copies of the case file were forwarded the Washington County Prosecutor's Office for review; however, due to the statute of limitations no charges were filed on Josh Duggar.

An interview posted on-line conducted by Beth Fouhy with Alexander Hitchen, the General New Editor with InTouch Weekly, reported how Alexander Hitchen was able to obtain the information on Josh Duggar. This interview in no way implicated any of the information was leaked from the Springdale Police Department or its employees.

Cecil Clifton, a former Springdale Police Department Dispatcher, shows to have accessed report number 01-06-006986 a total of five times during his employment at the police department. Mr. Clifton stated in his on phone interview the "Josh Duggar case" was discussed often in the police department dispatch center.

25

Evidence shows Cecil Clifton was contacted by a "friend" (Sherrl Colville) requesting the report number of the alleged incident involving Josh Duggar. This "friend" (Sherrl Colville) was reported to be the sister of Tandra Barnfield.

Sherrl Colville took a photograph of Tandra Barnfield and Samantha Barnfield (Muzny) kissing in front of the Duggar's residence in Tontitown, Arkansas. The photo was posted on Facebook and Instagram and grew in popularity.

Sherrl Colville conducted an interview with RADAR On-line. The interview referenced the photograph of Tandra and Samantha kissing, and Michelle Duggar's opposition to the LGBT rights and the robocall Michelle sent in regard to the anti-discrimination ordinance.

Sherrl Colville was contacted by a past school teacher who reminded Sherrl of the Josh Duggar sexual assault allegations. Sherrl Colville discussed the Josh Duggar sexual assault allegations mentioned above with Tandra Barnfield.

Tandra Barnfield was contacted by *In Touch* reporter, Melissa Roberto; earlier this year after Barnfield posted the above photo on the internet. Tandra Barnfield told *In Touch* reporter, Melissa Roberto about the story of Josh Duggar's sexual assault allegations.

Springdale Police Department Dispatcher, Makayla Sims received a Facebook message from Cecil Clifton requesting Makayla give him "the date, the charge, and the report number of the report Josh Duggar.

Cecil Clifton was contacted for a phone interview and stated he had been contacted by the person who notified *In Touch* about Josh Duggar. Cecil Clifton would not release to this investigator the

26

name(s) of the person referenced above.  We understand now the people in question are Casey Haines and his aunt Sherrl Colville.

It is confirmed Sherrl Colville is the sister of Tandra Barnfield who was "thanked" in a letter by the *In Touch* reporter named Melissa Roberto.

Sherrl McFerrin Townsend's (Colville) Facebook "Family and Relationship" page list has Tandra Barnfield listed as her sister. Ex-Springdale dispatcher Cecil Clifton is listed as a friend on Sherrl Townsend's Facebook page.  Sherrl stated in her interview she often speaks with Cecil Clifton

Daily Mail published an exclusive documenting how and why Tandra Barnfield provided information that led to Josh Duggar, quote: "being exposed for molesting four of his sisters and a family babysitter."

Both Tandra Barnfield and Sherrl Colville did not state in their interviews the past Chief of Police Kathy O'Kelley, nor any other police department employee, gave them any information regarding report number 1-06006986 on Josh Duggar.

This Internal Affairs Investigation conducted does not reveal any evidence a current employed Springdale Police Department employee or any current employed individual of the City of Springdale inappropriately released information of any type document or information, which involved the Duggar Family, prompting the InTouch Magazine's release of Report 1-06-006986.

This Internal Affairs Investigation conducted does not reveal any evidence the following laws; policies and procedures; rules and regulations; or the City of Springdale personnel and procedures manual directives; where violated by any current employed

Springdale Police Department employee or any current employed individual of the City of Springdale

Springdale Police Department Policy & Procedures
Springdale Police Department Rules and Regulations
City of Springdale Personnel and Procedures Manual

## **Springdale Police Department Policy & Procedures**

Policy Number 54.1 / III Procedures / (A) (3) (b) (1) (a) Personnel authorized to release information.
b. Personnel authorized to release information
    1.  Personnel authorized to release information
        a. Information about newsworthy occurrences and follow-up to those occurrences may be released by the following personnel.

        PIO or designee in his absence
        Division or Unit Commander
        The Chief of Police or his/her designated representative

## **Springdale Police Department Rules and Regulations**

13.01 Dereliction of duty on the part of any employee detrimental to the proper performance of the functions of the Department is cause for disciplinary action.

13.01a Failure to observe and give effect to the policies of the City of Springdale or this Department.

13.03 No officer shall engage in any personal conduct or act which, if brought to the attention of the public, could result in

justified unfavorable criticism of that officer or the Department. No officer shall be involved personally in disturbances or <u>police incidents</u> to his/her discredit.

13.18 Employees shall not engage in conduct unbecoming an Employee of the Department. Conduct unbecoming is any conduct which adversely affects the moral, operations or efficiency of the Department or any conduct which has a tendency to adversely affect, lower, or destroy public respect and confidence in the Department of the employee. Conduct unbecoming also includes any conduct which brings the Department or employee into disrepute or brings discredit upon the employee or Department. Employees shall conduct themselves at all times, both on and off duty, in such a manner as to reflect most favorably on the Department.

## City of Springdale Personnel and Procedures Manual

3.5 Guidelines for Appropriate Conduct:
A. Misconduct:

1.   Violation of the laws of the United States or the State of Arkansas or ordinances of the City;

   a. Freedom of Information: 25-19-104 Penalty Any person who negligently violates any of the provisions of this chapter shall be guilty of a Class C misdemeanor.
   b. Ark. Code Ann. 9-27-352 and 9-28-217 (Confidentiality of Juvenile Records)

29

2.  Conduct on or off the job that discredits the City or affects the employee's ability to perform effectively, such as the commission of an act or acts offending to public morals or decency.

4.  Violation of the policies of the City, including the policies contained in this manual and Executive Orders, <u>or failure to properly observe the rules and regulations of the City, department, or division;</u>

13.  Employees shall not engage in conduct unbecoming an employee of the City or their department.    Conduct unbecoming is any conduct which adversely affects the morale, operations, or efficiency of the City or any department within the City or any conduct which has a tendency to adversely affect, lower, or destroy public respect and confidence in the City, the department or the employee. Conduct unbecoming also includes any conduct which brings the City, the department or employee into disrepute or brings discredit upon the employee, department or City;

3.7 Conduct With the Media:

To endure that only accurate and up-to-date information is provided to the media, each department head shall designate either themselves or another employee of the department to act as a department spokesperson.    The department head or designated spokesperson (or any designated alternates) shall be the only person authorized to speak on behalf of their department.

**End of Report**