IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| **JILL DILLARD, JESSA SEEWALD, JINGER VUOLO, and JOY DUGGAR** | **PLAINTIFFS** |
| vs.      CASE NO. 5:17-5089-TLB | |
| **CITY OF SPRINGDALE, ARKANSAS; WASHINGTON COUNTY, ARKANSAS; KATHY O'KELLEY, in her individual and official capacities; ERNEST CATE, in his individual and official capacities; RICK HOYT, in his individual and official capacities; STEVE ZEGA, in his official capacity; And DOES 1-10, inclusive** | **DEFENDANTS** |

**FILED UNDER SEAL**

## SPRINGDALE DEFENDANTS' STATEMENT OF UNCONTESTED MATERIAL FACTS

1. Ernest Cate ("Cate") is a licensed Arkansas attorney and the current City Attorney of the City of Springdale ("Springdale"). Cate served as Deputy City Attorney for Springdale from 1998 until 2010, and then as the elected City Attorney from 2013 until present. *Ex. 1, Declaration of Ernest Cate* ¶ 1.

2. Kathy O'Kelley ("O'Kelley") is the former Police Chief of the City of Springdale Police Department ("SPD"). Prior to the events of May 2015 at issue in this litigation, O'Kelley had announced her retirement from a 34-year career in law enforcement effective on June 30, 2015. O'Kelley was the Chief of Police for the SPD from 2005 until 2015. *Ex. 2, Declaration of Kathy O'Kelley* ¶ 2.

3. Prior to May 20, 2015, neither Cate nor O'Kelley knew of, or had ever met, the Plaintiffs Jill Dillard ("Dillard"), Jessa Seewald ("Seewald"), Jinger Vuolo ("Vuolo") or Joy Duggar ("Joy Duggar"). With the exception of a brief and inconsequential encounter each that occurred years

1

prior to the events at issue in this litigation, neither Cate nor O'Kelley has ever met any member of the Duggar family. *Ex. 1, ¶ 3; Ex. 2, ¶ 4.*

4. The Duggar family, including the Plaintiffs and Josh Duggar, has regularly appeared in the past on reality television shows called *17 Kids and Counting*, *18 Kids and Counting* and *19 Kids and Counting* which aired on a television network called TLC. The Plaintiffs have regularly appeared in reality television shows while they were adults called *Jill & Jessa Counting On* and *Counting On* which also aired on TLC. *Ex. 3, Deposition of Jessa Seewald*, 75:17-76:4; *Ex. 5, Deposition of Jinger Vuolo* 45:19-47:13.

5. On May 20, 2015, Josh Duggar was a lobbyist for the Family Research Council and lived and worked in Washington D.C. Ex. 7, Declaration of Elizabeth A. McNamara (Doc. 45), Ex. B.

6. Jim Bob Duggar served as an Arkansas State Representative and made an unsuccessful run to be a United States Senator from Arkansas. Ex. 4, Deposition of Joy Duggar Forsyth, 21:15-17.

7. The Duggar Family regularly engaged in politics, including Michelle Duggar participating in a robo-call campaign to defeat an anti-discrimination ordinance in the neighboring city of Fayetteville Arkansas. Ex. 3, 107:11-18.

8. The Plaintiffs are celebrities who have been in the in the in the public eye and social media influencers who regularly market or advertise products on various social media platforms. Ex. 5, 15:5-17:20, 109:5-111:02; Ex. 4, 63:20-65:4, 149:12-150:2, 24:5-7; Ex. 3, Deposition of Jessa Seewald 28:9-19, 93:8-97:4; Ex. 6, Deposition of Jill Dillard 14:7-18:19, 21:3-22:21. Before May 20, 2015, the Plaintiffs author a book titled "Growing up Duggar" and recently Vuolo and her husband have helped author a book titled "The Hope We Hold." Ex. 5, 15:5-17:20 14:13-21; Ex. 3, 48:22-49:13. The Plaintiffs all have, or have had in the past, been represented by talent agents or agencies. Ex. 6, 18:24-21:2; Ex. 5, 109:2-7; Ex. 4, 27:16-20.


9. In December of 2006, the Duggar family were scheduled to make an appearance on the Oprah Winfrey Show. On December 7, 2015, an email was sent to Harpo Studios in Chicago, Illinois (the producer of the Oprah Winfrey Show) that stated as follows:

> BEFORE YOU AIR THE DUGGAR FAMILY FROM ARKASAS WITH ▓▓▓▓▓ YOU NEED TO KNOW THE TRUTH. THEY ARE NOT WHAT THEY SEEM TO BE. ▓▓▓▓▓ HAS MOLESTED ▓▓▓▓▓ WHILE ▓▓▓▓▓ WERE SLEEPING AND THE PARENTS HAVE BEEN HIDING THIS SECRET FOR A LONG TIME. JIM BOB LIES TO HIS CHURCH AND HIS FRIENDS TO MAKE HIM LOOK GOOD. AT THIS MOMENT HE IS IN TROUBLE WITH THE CHURCH FOR LYING ABOUT ▓▓▓▓▓ AND THINGS THAT CONCERN THE WAY THE CHURCH MEMBERS REACTED. I THINK THAT YOU SHOULD KNOW THE TRUTH BEFORE THEY MAKE A COMPLETE FOOL OF YOU AND YOUR SHOW. THEY HAVE BEEN ON TV BEFORE AND COME ACROSS AS A PERFECT FAMILY, WHICH COULDN'T BE FURTHER FROM THE TRUTH. THEY JUMP FROM SHOW TO SHOW TO RECEIVE GIFTS FOR THEIR FAMILY AND TO MAKE THEM LOOK REALLY GOOD TO. PLEASE CONSIDER THIS AND CONFRONT THEM ABOU THEIR SECRET.

*Ex. 9, Declaration of Ron Hritz, Ex. B,* 13.

10. Upon receipt of the December 7, 2006 email, the Oprah Winfrey Show did not air the show with the Duggars. *Ex. 11, Declaration of Captain Lester Coger, Ex. A,* 25; *Ex. 3*, 90:20.

11. Also on December 7, 2006, a phone call was made to the Arkansas Department of Human Services Hotline in which the caller disclosed information that Josh Duggar had molested four of his sisters and a non-family member babysitter. *Ex. 9, Ex. B, 11.*

12. SPD Sgt. Darrell Hignite opened an investigation (the "Investigation") of Josh Duggar following a December 7, 2006 phone call from an Arkansas State Police Investigator. The Investigation is detailed in the "SPD Offense Report." *Ex. 9, Ex. B, 1-33.*

13. Josh Duggar was a minor at the time of the molestations, but at the time of the Investigation, Josh was an adult. *Ex. 2, ¶6.*

14. The molestation incidents at issue in the Investigation were alleged to have been perpetuated by Josh Duggar in 2002 and 2003. At the time of these incidents, Josh Duggar was a minor. The Plaintiffs were minors at the time of these incidents, as was the non-family member babysitter. *Ex. 9, Ex. B, 1-15.*

15. Jim Bob Duggar disclosed in the Investigation that "he met with the elders of his church and had told them what was going on." Jim Bob and Michelle Duggar disclosed in the Investigation that "several members of their church were aware of the situation and had been supportive." *Ex. 9, Ex. B,* 15.

16. The SPD Offense Report indicates that report of the molestations was disclosed by an individual who wrote a letter about the 2002 and 2003 incidents and placed it in a book. The book with the letter inside it was loaned out to a member of the Duggar's church. *Ex. 9, Ex. B,* 12.

17. The SPD Offense Report indicates "that it all came out because of a letter" and that the Investigation had determined "who had written the letter that started this investigation." *Ex. 9, Ex. B,* 31-32.

18. Kaeleigh Holt Tull ("Tull") is the individual who wrote the letter referenced in the SPD Offense Report. Tull is the daughter of Jim Holt. The Holt family were close friends with the Duggars. The Holts and Duggars were in the group of people who attended regular worship or church gatherings at various homes. *Ex. 8, (Draft) Deposition of Tull* 35:20-36:11, 38:8-13.

19. On March 30, 2003, Tull was informed by her parents that Josh Duggar has molested 4 of his younger sisters and another person. Tull was 15 years old at the time and was betrothed to Josh Duggar in an arrangement that was approved by the parents of both children. *Ex. 8,* 14:24-15:25, 16:16-17:4, 20:23.

20. The betrothal was placed on hold and there was a lot of distrust between the Duggar and Holt families. The relationship between the became strained. *Ex. 8,* 22:5-16.

21. Josh Duggar was sent by his father to a facility in Little Rock for a couple of months and returned home on before July 18, the birthday of Jim Bob Duggar. During this time, the

molestation incidents were not well known by people in their gathering. *Ex. 8,* 23:15-24:12, 25:17-25.

22. Tull recalls that the betrothal with Josh Duggar later ended when Josh Duggar was lied about viewing pornography. *Ex. 8,* 29:22-32:6.

23. The incidents of molestation were not well known until the Duggars were reported to DHS by the Oprah Winfrey Show. *Ex. 8,* 27:8-11, 35:10-14.

24. In 2003, Tull had written a letter to an author of a book that she was reading providing the details of the molestation incident. The letter was never sent, but instead was placed inside of a book on her bookshelf. The letter detailed that Josh Duggar had molested his sisters. *Ex. 8,* 35:19-36:23, 38:8-13.

25. In 2006, the book containing the letter about molestations incident was loaned out by Tull to a friend, Gabrielle Reno, who discovered the letter and showed it to her parents. The Reno family then told other parents who attended the gatherings about the letter and then there was a whole group of people who knew about the molestations at that time. *Ex. 8,* 36:4-39:7.

26. The information in the letter changed the nature of the gatherings and split the group into multiple factions and caused a permanent split between the families that attended the gatherings. The molestation incidents and the contact with the Oprah Winfrey Show caused the families to split into three factions – people that felt like the Duggar family should not have been turned in, people who felt like the Duggar family should have been turned in and people who wanted to stay out of it entirely. *Ex. 8,* 39:3-40.

27. Over a hundred people were a part of the gathering and basically everybody in the church was aware of the molestation allegations. Some of the families who learned about the molestations left the gatherings. *Ex. 8,* 59:7-60, 60:10-17.

28. Several families who were members of the gatherings told their children not to talk about the molestation incidents. *Ex. 8,* 44:4-45:19.

29. Dasha Nichols was shown Tull's letter by the Reno family. Dasha Nichols sent the email to Harpo Studio informing them of the molestation incidents by Josh Duggar. *Ex. 8,* 57:22-58-18.

30. On May 15, 2020, a Little Rock attorney named Abtin Mehdizadegan sent a request under the Arkansas Freedom of Information Act ("FOIA") to the SPD via fax transmission (the "FOIA Request"). The FOIA Request was erroneously placed into the office in-box of a police officer who was on a vacation, thus the existence of the FOIA Request was not known by SPD until the afternoon of May 19, 2015. *Ex. 2,* ¶ 8; *Ex. 9,* ¶ 4; *Ex. 14, Affidavit of Abtin Mehdizadegan* ¶ 4.

31. The FOIA Request sought SPD records from January 1, 1998 until December 31, 2008 related to Josh, Jim Bob and Michelle Duggar as well as all records related a series of 17 physical addresses. The FOIA Request specifically sought "an incident report…that was responded to by Darrell Hignite." *Ex. 10, FOIA Request* 1-2.

32. On May 19, 2015, at 3:12 pm, *In Touch Weekly* published a story on their website that Josh Duggar was named in a police report as the "alleged offender" in an underage sexual abuse probe. The story states that "multiple sources who have seen the police report and are familiar with the case" provided *In Touch Weekly* with information. The story included details of the Investigation, including the involvement of former State Trooper Police trooper and that Sgt. Darrel Hignite was the officer who led the investigation. The story also quoted a source that said "I saw and read the report and it clearly stated that Jim Bob brought his son Josh into the Arkansas State Police and spoke to a state trooper about Josh's involvement in alleged inappropriate touching with a minor." *Ex. 11, Ex. A,* 1, 15; *Ex. 7, Ex. A.*

6

33.     *In Touch Weekly* received the tip about the May 19, 2015 Josh Duggar story through Sherrl Colville ("Colville") (a/k/a Sherri Townsend, a/k/a Sherrl Colville) and Tandra Barnfield ("Barnfield").  Prior to May 15, 2015, Colville took a picture in front of the Duggar residence in Tontitown, Arkansas in which Barnfield and her same-sex girlfriend were kissing.  The photo was taken in protest due to Michelle Duggar's opposition to a proposed anti-discrimination ordinance in Fayetteville, Arkansas and in response to a call from Michelle Duggar on Facebook to receive photos of other married couples kissing. The photo was placed on social media and went "viral". A reporter from *In Touch* contacted Barnfield to ask why the photo had gone viral and Barnfield revealed to the reporter the story of the molestation by Josh Duggar.  The reporter then contacted Colville who confirmed that she had been reminded of the story by a retired high school teacher and that the molestation incidents were known in the community.  Colville's nephew was friends with a former SPD dispatcher, Cecil Clifton ("Clifton"), and Clifton had knowledge of the SPD Offense Report. Colville contacted the reporter for *In Touch* and provided her the information about Clifton and his knowledge of the SPD Offense Report.  *Ex. 12, Affidavit of Colville* ¶¶ 2-7; *Ex. 15*, *Affidavit of Tandra Barnfield* ¶¶ 3-6.

34.     Rumors alleging Josh Duggar's molestation of his sisters were known in the community and on the internet for years. *Ex. 12,* ¶¶ 1, 8;   *Ex. 15*, ¶ 7;   *Ex. 14*, ¶¶ 8-9; *Ex. 8,* 59:7-60, 60:10-17, 44:4-45:19.

35.     In the afternoon of May 19, 2015, O'Kelley became first aware of the Investigation and the SPD Offense Report by Capt. Ron Hritz who informed her that there was an FOIA request for the report.  Capt. Hritz informed O'Kelley that he believed that the response to the FOIA request was late.  O'Kelley asked for a copy of the report and read it that night of May 19, 2015. *Ex. 2,* ¶ 5*;   Ex. 9,* ¶¶ 4-6.

36. Also on the night of May 19, 2015, O'Kelley was sent an email that had been sent to Sgt. Hignite from a producer with NBC Universal/Access Hollywood that copied the May 19, 2015 article about Josh Duggar. O'Kelley noted that the email to Sgt. Hignite contained information from the SPD Offense Report. *Ex. 2, ¶ 5; Ex. 9, ¶ 7.*

37. The following morning on May 20, 2015, O'Kelly informed Cate about the FOIA request and asked Capt. Hritz to contact the Duggar family to inform them of the FOIA request and to keep them updated. O'Kelley also instructed her staff not to release the SPD Offense Report until legal advice was received from Cate. O'Kelley asked Capt. Hritz to make redactions to the SPD Offense Report. *Ex. 2, ¶6; Ex. 9, ¶¶ 9-10.*

38. Capt. Hritz spoke to Jim Bob Duggar on the morning of May 20, 2015 and advised Mr. Duggar that SPD may be required to release the redacted SPD Offense Report. *Ex. 9, ¶ 11.*

39. Later that morning, O'Kelley informed Cate of the FOIA request and Cate was provided with a copy of the redacted SPD Offense Report. This was the first time that Cate became aware of either the Investigation or the SPD Offense Report. *Ex. 1, ¶ 4.*

40. Cate reviewed the redacted SPD Offense Report in the late morning of May 20, 2015 and was unable to ascertain the identity of either the suspect or any of the victims. Cate remained unaware of the identity of the victims until Dillard and Seewald publicly disclosed their identity on the Megyn Kelley Show on or about June 3-5, 2015. *Ex. 1, ¶ 5.*

41. Cate was asked at that time by O'Kelley for his legal advice regarding the FOIA request and the release of the SPD Offense Report. Cate informed O'Kelley that he believed that the report would have to be redacted and released, but he also suggested that they seek out other officials and attorneys for their opinions since he was aware that there was already an article online that included facts of the Investigation and the SPD Offense Report. *Ex. 1, ¶ 6; Ex. 9, ¶ 12.*

42. On May 20, 2015 in the early afternoon, Abtin Mehdizadegan sent a letter to the Arkansas Department of Corrections seeking to interview Joseph T. Hutchins.  *Ex. 14*, ¶ 5.

43. Cate then spoke with the Deputy City Attorney Sarah Sparkman who agreed that the SPD Offense Report would have to be redacted and released pursuant to the FOIA. Cate then called the Washington County Juvenile Prosecutor, Terra Stephenson, who offered her opinion that the SPD Offense Report would have to be redacted and released pursuant to the FOIA. Cate also called District Judge Jeff Harper who offered his opinion that the SPD Offense Report would have to be redacted and released pursuant to the FOIA. Cate attempted throughout the day to contact attorneys at the Arkansas Department of Human Services, but did not receive return call that day. *Ex. 1,* ¶ 7.

44. Cate and O'Kelley then participated in a conference call with Colonel Bill Bryant, the Director of the Arkansas State Police, Bill Sadler the information officer for the Arkansas State Police and the legal counsel for the Arkansas State Police, who all offered their opinion that the SPD Offense Report would have to be redacted and released pursuant to the FOIA. *Ex. 1,* ¶ 8.

45. Cate and O'Kelley then spoke to Mark Hayes, the then General Counsel and now the current Executive Director of the Arkansas Municipal League about the FOIA request and the SPD Offense Report. Cate and O'Kelley were informed by Mr. Hayes that he believed that they would need to redact and release the SPD Offense Report. Mr. Hayes informed Cate and O'Kelley that he would continue to review the question. *Ex. 1,* ¶ 10.

46. O'Kelley had several phone calls with Abtin Mehdizadegan in the afternoon of May 20, 2015. In the first phone call, O'Kelley asked Mr. Mehdizadegan if he had confirmation that SPD had received his FOIA request because they could not find that it had been received by the

department. Mr. Mehdizadegan informed O'Kelley that his May 15, 2015 letter was received by fax and that he had the fax confirmation sheet that it had been received by SPD. After having reviewed the May 15, 2015 FOIA Request, O'Kelley called back Mr. Mehdizadegan to inform him that SPD would need more time to fulfill the request since it would require a search of several names as well as many addresses. Mr. Mehdizadegan indicated that he only wanted the SPD Offense Report and would not require a search of any other documents. O'Kelley informed Mr. Mehdizadegan that she had a copy of the SPD Offense Report, but was waiting on legal advice on whether it could be released. *Ex. 2,* ¶ 8.

47. In the afternoon of May 20, 2015, O'Kelley was notified that Doug Thompson, a reporter with the Arkansas Democrat-Gazette had submitted an FOIA request for the SPD Offense Report. O'Kelley called Mr. Thompson and explained that they were waiting on legal advice as to whether the SPD Offense Report could be released. *Ex. 2,* ¶ 9.

48. All persons who were contacted by Cate and O'Kelley on May 20, 2015 agreed that the SPD Offense Report must be redacted and released later that evening, O'Kelley was informed by Cate that the SPD Offense Report must be released. O'Kelley, Cate and Capt. Hrtiz reviewed the report several times for additional redactions in an effort to over-redact in order to make sure that any identifying information was redacted. *Ex. 1,* ¶¶ 7-11; *Ex. 2,* ¶ 10; *Ex. 9,* ¶¶ 13-14.

49. At approximately a few minutes for 9:00 pm on May 20, 2015, O'Kelley sent the redacted SPD Offense Report to Mr. Mehdizadegan by email transmission. A few minutes later, O'Kelley sent the same redacted SPD Offense Report to Mr. Thompson by email transmission. Mr. Mehdizadegan testifies that the redacted SPD Offense Report confirmed much of the information that had been already made public before that date. *Ex. 2,* ¶ 11; *Ex. 14,* ¶ 7.

50. The next morning on May 21, 2015, a communication from the Arkansas Municipal League to Cate indicated that that it was their opinion that out of an abundance of caution, the names of Jim Bob and Michelle Duggar should be redacted from the SPD Offense Report. O'Kelley contacted Mr. Mehdizadegan and Mr. Thompson to ask them to accept a new version of the SPD Offense Report with the redaction of the name of Jim Bob and Michelle Duggar. *Ex. 1,* ¶ 12.

51. On May 21, 2015, Joseph T. Hutchins was interviewed by a paralegal for Abtin Mehdizadegan. The interview was audio-recorded and Mr. Mehdizadegan listened to the interview that day. Joseph T. Hutchins' interview "told the whole story of the molestations, including, but not limited to the fat that Josh Duggar's sisters were among his victims." The details of this interview were made public. *Ex. 14,* ¶ 10.

52. Later in the day of May 21, 2015, an attorney for the Duggar family emailed to Cate a copy of an ex parte order from the Juvenile Court of Washington County to destroy the SPD Offense Report and related case files. The order was from Case No. J 2007-38, which was case that neither Springdale or its officers were a party. Neither Cate, O'Kelley or Capt. Hrtiz had any knowledge of *In Re: J.D. et al.* (Case No. J 2007-38). Subsequently, Springdale received a series of ex parte orders and letters from the Juvenile Court containing various advisory opinions on the release of the SPD Offense Report. *Ex. 1, Declaration of Cate* ¶ 14; *Ex. 2,* ¶ 13; *Ex. 9,* ¶ 15.

53. After the receipt of subsequent ex parte orders and letters through attorneys for the Duggar family, and in one case from a member of the public, Springdale retained outside counsel to move for a limited intervention into *In Re: J.D. et al.* (Case No. J 2007-38) in order to challenge the basis and authority for the ex parte orders and letters that had been received and to address additional FOIA requests that had been received by Springdale for a wide range of documents which could

be associated to the SPD Offense Report, including a recorded 911 call related to the subject matter of the SPD Offense Report. This motion to intervene was denied by the Juvenile Court. *Ex. 1*, ¶15.

54. Outside counsel represented Springdale in a FOIA lawsuit filed by the Arkansas Democrat-Gazette and Doug Thompson in the Washington Circuit Court seeking the release of the 911 call and the letters received from Juvenile Court. Springdale had withheld the release of those documents due to the orders received from the Juvenile Court. One of the Plaintiff's in this action intervened into this FOIA lawsuit seeking to oppose the release of these records. The Washington County Circuit Court ordered the redaction and release of the recorded 911 call as well as the letter from the Juvenile Court. *Ex. 1*, ¶ 16.

55. The Plaintiffs testified that they have no knowledge of any evidence of a malicious basis or bad intention on behalf of Cate or O'Kelley for the release of the SPD Offense Report. *Ex. 3,* 114:11-116:17; *Ex. 4*, 36:20-23, 128:4-9; *Ex. 5*, 112:22-113:14, 114:22-23, 115:13-20, 117:3-19, 118:1-11; *Ex. 6*, 172:3-25, 173:15-174:24, 198:14-22.

56. O'Kelley and Cate believed that the redaction and release of the SPD Offense Report pursuant to a valid FOIA Request was required by law. *Ex. 1*, ¶ 7; *Ex. 2,* ¶ 14. O'Kelley and Cate both acted without malice or ill will towards the Plaintiffs or towards anybody in the Duggar family. *Ex. 1*, ¶ 4; *Ex. 2*, ¶ 17.

57. O'Kelley sent the SPD Offense Report in response to the FOIA Request upon the advice of legal counsel. *Ex. 2, ¶* 14; Ex. 1, ¶¶ 7-12.

58. On May 26, 2015, O'Kelley ordered an internal investigation into whether there was an unauthorized release of the SPD Offense Report. *Ex. 2,* ¶ 16*; Ex. 11,* ¶ 6.

59. The internal investigation report into the unauthorized release of the SPD Offense Report concluded that no current Springdale employee or official was involved in the release of information to *In Touch Weekly*. The investigation concluded after O'Kelley's retirement and found no wrongdoing on the part of O'Kelley or Cate. *Ex. 11,* ¶¶ 11,15; *Ex. 13, Declaration of Mike Peters* ¶¶ 7-9.

60. On or about June 3-5, 2015, Jim Bob and Michelle Duggar and the Plaintiffs Dillard and Seewald appeared on the Megyn Kelley Show on the Fox News Network. Dillard and Seewald disclosed for the first time on this Megyn Kelley show that they were victims of molestation by Josh Duggar. *Ex. 3,* 48:1-5; *Ex. 6,* 195:1-196:19; *Ex. 5,* 9:6-10, 115:21-23, 121:21-123:4; *Ex. 16*.

61. The participation of Jim Bob and Michelle Duggar and the Plaintiffs Dillard and Seewald was arranged by an agent and "PR person" named Chad Gallagher. *Ex. 3,* 129:19-130:5; *Ex. 6,* 195:1-200:22, *Ex. 6* to Dep.

62. The appearance of Jim Bob and Michelle Duggar and the Plaintiffs Dillard and Seewald was arranged by agent Chad Gallagher, who provided Jim Bob and Michelle Duggar, as well as the Plaintiffs Dillard and Seewald with the questions that they would be asked ahead of time in the interview. *Id*; *Ex. 6, Ex. 8* to Dep., *Ex. 9* to Dep.

63. Chad Gallagher arranged with the Megyn Kelly Show that Jessa Seewald and Jill Dillard would reveal their identify as victims on or about the June 3-5, 2015 television show. *Ex. 3,* 48:1-5, 129:19-130:5; *Ex. 6,* 195:1-200:22, *Ex. 5* to Dep.

64. On June 19, 2015, Chad Gallagher sent the Duggar family, including the Plaintiffs, an email setting with an update and a public relations strategy. The email states that Jim Bob and Michelle Duggar will be meeting with TLC "to discuss ideas on moving the series forward". The email also explains that "we are slowing easing into posting again" but that they "do not want to

13

stir the pot." The email continues that this week "we posted a nice little blog post from Ben and Jessa", will "next announce Jill and Derick's new adventure" and that "we will also likely do our own announcing of Josh and Anna's sweet new baby." Finally, the email states "we are also thinking about additional sit-down interviews at some point – especially for Josh but are looking to see if we can get a read on TLCs plans to factor that in." *Ex. 6,* 195:1-200:22, *Ex.* 12 to Dep.

65. None of the Plaintiffs have sought or received counseling, treatment or medical care for anything related to the release of the SPD Offense Report. *Ex. 3,* 56:6-9, 66: 25-67:2; *Ex. 4,* 22:24-25:1, 25:17-21; *Ex. 5,* 41:19-23; *Ex. 6,* 102:2-3.

66. None of the Plaintiffs are identified in the SPD Offense Report. *Ex. 9, Ex. B*, 1-33. The Plaintiffs admit that their names and other identifying information was redacted from the SPD Offense Report. *Ex. 3*, 82:17-22, 13:2-5; *Ex. 4,* 29:22-24; Ex. 5 9:22-24; *Ex. 6,* 77:18-25.

67. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Ex. 3*, 56:6-9; *Ex. 4,* 24:1-4; *Ex. 5,* 50:17-19; *Ex. 6*, 101:10-13.

68. Plaintiffs could only testify to vague statements regarding mental anguish related to the release of the SPD Report. *Ex.* 3, 82:4-16; *Ex. 4*, 33:16-36:4; *Ex.* 5, 47:20-49:8; *Ex. 6,* 101:14-102:3.

69. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Ex. 3*, 66:13-67:2; *Ex. 4,* 23:22-25; *Ex. 5,* 49:20-50:16; *Ex. 6*, 101:14-102:3.

70. Three of the Plaintiffs could not specifically describe any medical problems caused by the release of the SPD Report. Ex. 3, 55:8-56:9; Ex. 4, 62:22-63:6; *Ex. 5,* 58:19-24. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *6,* 101:14-102:3.

71. All of the Plaintiffs are fully-functioning adults who are married, have children, provide a stream of income, do not take medications, and do not require the treatment of a medical provider for any injury related to the release of the SPD report.  *Ex. 3*, 70:7-71:23;  *Ex. 4*, 68:16-70:8; *Ex. 5*, 62:16-25, 100:11-101:11;  *Ex. 6, 102:24-103:14*

72. The City of Springdale does not carry insurance to cover the claims in this case.  *Ex. 18, Affidavit of Mayor Doug Sprouse.*

73. On May 5, 2021, the molestation of Josh Duggar's sisters was considered in open court during a detention hearing for Josh Duggar in his pending criminal trial.  *Ex.* 17, Transcript of Detention Hearing.

Respectfully Submitted,

R. Justin Eichmann (Ark. Bar No. 2003145)
Thomas N. Kieklak (Ark. Bar No. 92262)
Morgan S. Doughty (Ark. Bar No. 2010158)
HARRINGTON, MILLER, KIEKLAK,
EICHMANN & BROWN, P.A.
4710 S. Thompson, Suite 102
Springdale, AR  72764
Phone: (479) 751-6464
Fax: (479) 751-3715
Email:  mdoughty@arkansaslaw.com
Email:  tkieklak@arkansaslaw.com
E-mail:  jeichmann@arkansaslaw.com
*and*
Susan Keller Kendall (Ark. Bar No. 98119)
KENDALL LAW FIRM, PLLC
3706 Pinnacle Hills Parkway, Suite 201
Rogers, Arkansas 72758
Phone: (479) 464-9828
Fax: (479) 464-9768
Email:  skk@kendalllawfirm.com

**COUNSEL FOR SPRINGDALE DEFENDANTS**

Case 5:17-cv-05089-TLB Document 144 Filed 10/06/21 Page 15 of 16 PageID #: 1361

## CERTIFICATE OF SERVICE

  I, the undersigned, do hereby certify that on the 6th day of October 2021, a true and correct copy of the above and foregoing was filed using the Court's CM-ECF System, which effected service on all counsel of record:

| | |
|---|---|
| Steven E. Bledsoe<br>Stephen G. Larson<br>Jen C. Won<br>LARSON O'BRIEN, LLP<br>555 S. Flower Street<br>Suite 4400<br>Los Angeles, CA 90071<br>(213) 436-4888<br>sbledsoe@larsonobrienlaw.com<br>slarson@larsonllp.com<br>jwon@larsonllp.com | Shawn B. Daniels<br>DANIELS FIRM<br>129 W. Sunbridge Drive<br>Fayetteville, AR 72703<br>479-521-7000<br>Fax: 479-437-2007<br>shawn@danielsfirm.com |
| Jason Owens (Ark. Bar No. 2003003)<br>JASON OWENS LAW FIRM, P.A.<br>1023 Main St., Suite 204<br>Conway, Arkansas 72033<br>(501) 764-4334<br>owens@jowenslawfirm.com | |

               R. Justin Eichmann (Ark. Bar No. 2003145)