**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**JILL DILLARD, JESSA SEEWALD,**                                      **PLAINTIFFS**
**JINGER VUOLO, and JOY DUGGAR**

**vs.**                                      **CASE NO. 5:17-5089-TLB**

**CITY OF SPRINGDALE, ARKANSAS;**                          **DEFENDANTS**
**WASHINGTON COUNTY, ARKANSAS;**
**KATHY O'KELLEY, in her individual and**
**official capacities;**
**ERNEST CATE, in his individual and official capacities;**
**RICK HOYT, in his individual and official capacities;**
**And DOES 1-10, inclusive**

**FILED UNDER SEAL**

**SPRINGDALE DEFENDANTS' BRIEF IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

COME NOW the Separate Defendants, City of Springdale, Arkansas ("Springdale"),

City Attorney Ernest Cate, in his individual and official capacities ("Cate") and retired

Springdale Police Chief Kathy O'Kelley, in her individual and official capacities ("O'Kelley"),

(collectively the "Springdale Defendants"), by and through their undersigned attorneys, and for

their Brief in Support of Motion for Summary Judgment state as follows:

## I.      INTRODUCTION

This Court has retained jurisdiction of this matter that now consists of three Arkansas state

tort claims:  1) the tort of invasion of privacy – intrusion upon seclusion; 2) the tort of invasion of

privacy – public disclosure of private fact in violation; and 3) the tort of outrage.   Each of the

three tort claims against the Springdale Defendants is based upon the release pursuant to the

Arkansas Freedom of Information Act ("FOIA") of the redacted Springdale Police Department

("SPD") Offense Report ("SPD Offense Report") of the investigation into the criminal actions of

1

Josh Duggar in molesting the Plaintiffs as well as a non-family member. As set forth herein, Cate, as City Attorney, opined that the City was obligated to release the redacted version of the report pursuant to the FOIA. O'Kelley, then Chief of Police, relied upon, *inter alia,* the advice of the City Attorney in releasing the redacted report. The release of the report was proper and in accordance with the FOIA. For this reason, this case must be dismissed. Should this Court disagree with the Springdale Defendants' interpretation of the FOIA, the undisputed facts amount to negligence*, at most,* and woefully fail to reach the high bar required to prove the intentional torts of outrage and invasion of privacy. The Plaintiffs have not and cannot produce any facts that any of the Springdale Defendants released the report with the necessary intent to harm the Plaintiffs. To the contrary, the undisputed facts prove that the Springdale Defendants released the report with the intent only to comply with the FOIA.

This Court must apply Arkansas law to the state tort claims. *See West v. Am. Tel. & Tel. Co*., 311 U.S. 223, 61 S. Ct. 179 (1940). Arkansas case law has developed significantly since this Court denied the Springdale Defendants' motion to dismiss the three tort claims. Since that time, the Arkansas courts have definitively provided the answers to any questions that may have remained about the viability of the remaining tort claims. Plaintiffs' brother Josh Duggar filed a lawsuit advancing the same claims and legal arguments and pertaining to the release of the same SPD Offense Report. *Joshua Duggar v. City of Springdale, Arkansas, et al.*, Case No. 72CV-18-668-1, Circuit Court of Washington County, Arkansas. Josh Duggar, like the Plaintiffs in this case, alleged that the release of redacted police report by Springdale constituted an invasion of privacy and the tort of outrage. Josh Duggar's lawsuit was dismissed by the Circuit Court, and that decision was upheld in *Duggar v. City of Springdale*, 2020 Ark. App. 220, 599 S.W.3d 672. Josh Duggar petitioned the Arkansas Supreme Court for review of the Arkansas Court of Appeals

2

decision, which denied the petition. The *Duggar v. City of Springdale* case is not only instructive, but it is binding upon this Court. The Springdale Defendants adopt by reference pursuant to Fed. R. Civ. P. 10(c) the Defendants Joint Motion for Judgment on the Pleadings and supporting brief (Doc. 134 & 135). In accordance with the binding precedent, the remaining tort claims must be dismissed with prejudice and summary judgment must be afforded to the Springdale Defendants.

## II.  LEGAL STANDARD

A party moving for summary judgment must establish both the absence of a genuine dispute of material fact and its entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Nat'l Bank of Commerce of El Dorado v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999). When no material facts are in dispute, "summary judgment is a useful tool whereby needless trials may be avoided, and it should not be withheld in an appropriate case." *United States v. Porter*, 581 F.2d 698, 703 (8th Cir. 1978). In order for there to be a genuine issue of material fact, the non-moving party must produce evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. The Plaintiffs must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Id.* They cannot. The Springdale Defendants are entitled to summary judgment as a matter of law.

## III.  ARGUMENT

**A.  The Springdale Defendants were required to redact and release the SPD Offense Report pursuant to the FOIA.**

Unlike the Child Maltreatment Act ("CMA"), upon which the Plaintiffs base their claims

and until the recent case of *Duggar*, 2020 Ark. App. 220 had no interpretive cases in Arkansas, there is an extensive and wide-ranging body of case law in Arkansas to reinforce the Springdale Defendants obligations under the FOIA. The Arkansas Supreme Court has proclaimed that "the [FOIA] was passed wholly in the public interest and is to be liberally interpreted to the end that its praiseworthy purposes may be achieved. The language of the act is so clear, so positive that there is hardly any need for interpretation[.]" *City of Fayetteville v Edmark*, 304 Ark. 179, 184, 801 S.W.2d 275, 278 (1990) (quoting *Laman v. McCord*, 245 Ark. 401, 432 S.W.2d 753 (1968)). The requirements in Ark. Code Ann. § 25-19-105(f)(1-2) cannot be any clearer that there is an affirmative duty by Arkansas officials to remove or delete exempt information (i.e. "redact and release") from a public document:

(1) No request to inspect, copy, or obtain copies of public records shall be denied on the ground that information exempt from disclosure is commingled with nonexempt information.

(2) Any reasonably segregable portion of a record shall be provided after deletion of the exempt information.

Further, a municipal police department report has the presumption under the FOIA of being a public record (See Ark. Code Ann. § 25-19-103(7)(A) ("[a]ll records maintained in public offices or by public employees within the scope of their employment shall be presumed to be public records). The duties imposed on Arkansas officials by the FOIA are enforced by penal provisions (Ark. Code Ann. § 25-19-104) and by civil penalties through the liberal provision for attorneys' fees and costs for the prevailing plaintiff (Ark. Code Ann. § 25-19-107).

Arkansas Courts have been unequivocal that exemptions to the FOIA are construed narrowly, and, "when the scope of an exemption is unclear or ambiguous, [the Court] interpret[s] it in a manner that **favors disclosure**." *Young v. Rice,* 308 Ark. 593, 596, 826 S.W.2d 252,254 (1992). (Emphasis added).

The Supreme Court of Arkansas has further directed:

> We liberally interpret the FOIA to accomplish its broad and laudable purpose that public business be performed in an open and public manner. Furthermore, this could broadly construe the Act in favor of disclosure. **In conjunction with these rules of construction, we narrowly construe exceptions to the FOIA to counterbalance the self-protective instincts of the government bureaucracy. A statutory provision for nondisclosure must be specific. Less than clear or ambiguous exemptions will be interpreted in a manner favoring disclosure. At the same time, we will balance the interests between disclosure and nondisclosure, using a common sense approach.**

*Thomas v. Hall,* 2012 Ark. 66, 4-5, 399 S.W.3d 387, 390 (citations omitted).

There is no case law in Arkansas that provides any deviation from this clear precedent outlined by Arkansas' highest court. As such, the FOIA cannot be ignored in this case and must be applied here where the public officials were undeniably responding to an FOIA request under the direction of courts in Arkansas who have applied an expansive interpretation to the FOIA and a narrow interpretation to exemptions for many decades, especially unclear exemptions. The individual defendants in this matter took their duties seriously as all identifying information was redacted following numerous reviews, including the Plaintiffs' names, ages, pronouns and other identification throughout the report. *SUMF* ¶¶ 35, 37-41, 43-49. The Plaintiffs allege that unknown people on the internet somehow surmised the identities of the Plaintiffs through the lengths of redactions or through esoteric information such as which daughter liked to cook. Such a standard would render the FOIA impossible to administer if such subjective and highly speculative information would have to be redacted in order for public officials to avoid obscure torts and punitive damages. This a result would lead to an absurdity and injustice which would defeat the plain purpose of the law. *Ragland v. Alpha Aviation, Inc*., 285 Ark. 182, 686 S.W.2d

391 (1985). The facts are undisputed that Cate and O'Kelley sought a wide range of legal advice as to the release of the redacted SPD Offense Report. *SUMF* ¶¶ 35, 37, 41, 43-45, 48. O'Kelley, as a non-lawyer, is entitled to rely upon this legal advice. Further, it is undisputed that Cate and O'Kelley acted without any malice or ill-will toward the Plaintiffs, and only believed that their actions in redacting and releasing the report were required by law as set forth above. *SUMF* ¶¶ 55-57.

The provisions of the CMA upon which the Plaintiffs premise their claims are not applicable to the SPD Offense Report. The CMA was not adopted until 2009, (Act 749 of 2009), three years after the creation of the SPD Offense Report. The CMA's confidentiality provisions apply to confidential information "released under this Chapter" to entities "authorized under this chapter." This provision cannot apply to the SPD Offense Report as it contains no information released to the SPD under the CMA. Notwithstanding, there is no indication that the CMA should be treated differently than any other exemption as directed by the Arkansas Supreme Court, which requires that redaction and release. Further, the application of the plain language of Ark. Code. Ann. § 12-18-104(a) of the CMA would exempt every record in possession of a law enforcement agency, and not just the information of child maltreatment. "[W]hen the scope of an exemption is unclear or ambiguous, [the Court] interpret[s] it in a manner that favors disclosure." *Young v. Rice,* 308 Ark. at 596, 826 S.W.2d at 254 (1992).

With respect to the Plaintiffs' claim that the report was released in violation of Ark. Code Ann. § 9-27-309(j), the Arkansas Court of Appeals in *Duggar v. Springdale*, specifically concluded that this provision does not protect the redacted SPD Offense Report from disclosure. *Duggar,* 2020 Ark. App. 220. Any exception to FOIA, whether Ark. Code Ann. §§ 12-18-104, 9-27-309, 16-90-1104, or others, must be reconciled with the obligation to redact and disclose as

6

directed by the Arkansas Supreme Court and General Assembly.

**B.     Springdale Defendants are Entitled to Summary Judgment on the Claim of Invasion of Privacy – Intrusion Upon Seclusion**.

To prove intrusion upon seclusion, a plaintiff must establish (1) that the plaintiff sustained damages; (2) that the defendant *intentionally* intruded physically or otherwise upon plaintiff's solitude or seclusion and *believed or was substantially certain* that the defendant lacked the necessary legal authority or personal permission, invitation, or valid consent to commit the intrusive act; (3) that the intrusion was of a kind that would be highly offensive to a reasonable person, as the result of conduct to which a reasonable person would strongly object; (4) that the plaintiff conducted himself or herself in a manner consistent with an actual expectation of privacy; and (5) that the defendant's intrusion was the proximate cause of the plaintiff's damages. *Coombs v. J.B. Hunt Transport, Inc.*, 2012 Ark. App. 24, 4–5, 388 S.W.3d 456, 460–61.  These elements cannot be established.

**1.   The Plaintiffs cannot prove that the Springdale Defendants intentionally intruded.**

**a.     The Springdale Defendants did not "intrude."**

The Plaintiffs cannot establish any facts that the Springdale Defendants "intruded" upon their seclusion.   The Restatement provides varying examples of intrusions that fall into three categories:  the physical intrusion, the sensory intrusion, and the other investigatory intrusion. Restatement (Second) of Torts § 652B cmt. b. A physical intrusion is an intrusion "into a place in which the plaintiff has secluded himself, as when the defendant forces his way into the plaintiff's room in a hotel[.]" *Id.*  A sensory intrusion is an intrusion "by the use of the defendant's senses ... to oversee or overhear the plaintiff's private affairs, as by looking into his upstairs windows with binoculars or tapping his telephone wires." *Id.* An "other investigatory intrusion" is "some other

form of investigation ... into [the plaintiff's] private concerns." *Id.* Examples of "some other form[s] of investigation" include "opening [the plaintiff']s private and personal mail, searching his safe or his wallet, examining his private bank account, or compelling him by a forged court order to permit an inspection of his personal documents." *Id.* This tort requires actions on the defendant's part in the nature of prying or intrusion which is offensive or objectionable to a reasonable person." *Fletcher v. Price Chopper Foods of Trumann, Inc.,* 220 F.3d 871, 875-76 (8th Cir.2000) (*quoting Williams v. American Broad. Cos., Inc.,* 96 F.R.D. 658, 669 (W.D.Ark.1983)).

The Plaintiffs do not allege any conduct on the part of the Springdale Defendants that falls into any of the three categories of intrusion. There is no dispute that the information contained in the SPD Offense Report was in the ordinary course of business in investigating the criminal activity of Josh Duggar. *SUMF* ¶12. Instead, the Plaintiffs allege that the *release* of the redacted SPD Offense Report constituted an intrusion. Thus, the Plaintiffs gloss over the distinction between a claim for intrusion upon seclusion and a claim for public disclosure of private facts and conflate the operative terms of "intrusion" with that of "public disclosure." "Intrusion requires a specific intrusive action as opposed to disclosing private information." *In re Dunbar*, 446 B.R. 306, 313–14 (Bankr. E.D. Ark. 2011) (dismissing intrusion claim finding that the filing of an unredacted proof of claim does not constitute intrusion as the tort requires a specific intrusive action as opposed to disclosing private); *Steinbuch v. Hachette Book Grp.,* No. 4:08 CV 00456 JLH, 2009 WL 963588, at *1 (E.D. Ark. Apr. 8, 2009) (dismissing intrusion claim finding allegations of distribution of information through the internet, a book, and otherwise did not allege an "intrusion."); *compare with Fletcher v. Price Chopper Foods of Trumann, Inc.,* 220 F.3d at 875-76 (finding defendant intruded when it *obtained* information but dismissed intrusion claim because defendant could have *obtained* the information through valid means); *see also, Nothstein*

*v. USA Cycling,* 499 F.Supp.3d 101 (E.D. Pa. 2020) (release of investigation report properly obtained is not an intrusion); *Malverty v. Equifax Info. Servs.,* LLC, 407 F.Supp.3d 1257 (M.D. Fla. 2019) (disseminating credit report is not an "intrusion").

Prosser on Torts explains that one commits an intrusion by invading another's home or other quarters, an illegal search, eavesdropping upon private conversations, peering into the windows of a home, persistent and unwanted telephone calls, unauthorized prying into a bank account, or the like. Prosser & Keeton on the Law of Torts 854-55 (W. Page Keeton, Dan B. Dobbs, Robert E. Keeton, & David G. Owen, eds., 5th ed.1984); *see also Wal-Mart Stores, Inc. v. Lee,* 348 Ark. 707, 74 S.W.3d 634 (2002); *Dunlap v. McCarty,* 284 Ark. 5, 9, 678 S.W.2d 361, 364 (1984). Plaintiffs allege no facts of physical invasion, eavesdropping, spying or prying. Instead, they allege only a release of information lawfully obtained, and release is not an element of the intrusion claim. Plaintiffs have failed to prove facts constituting an intrusion, and their claims must be dismissed.

> **b.** **Plaintiffs cannot prove that the City, Cate or O'Kelley *intentionally* intruded or *believed* that they lacked the legal authority to release the redacted report.**

Even if the redacted SPD Offense Report was protected from release under any statutory provision, the Plaintiffs in this case, like the plaintiff in *Duggar v. City of Springdale,* have failed to come forward with any facts that prove that the Springdale Defendants' release of the records in contravention of the statute was *intentional*. As the Arkansas Court of Appeals held in *Duggar*, 2020 Ark. App. 220, 11-14, this Court cannot presume intent. Rather, the Plaintiffs must establish facts showing that the Springdale Defendants' release of the records in contravention of Arkansas law was intentional. *Id.* They have not and cannot. *SUMF* ¶¶ 55-57. The Arkansas Court of Appeals explained in *Duggar*, 2020 Ark. App. 220, 11-14, regarding the exact same issues:

**At most, the facts reflect that the City's and County's release of the records may have been negligent or the result of a misinterpretation of the law. But there are no facts that anyone acted intentionally.**

*Id. (Emphasis added).*   Because the Plaintiffs have adduced no facts of intent to intrude, their claim must be dismissed.

Likewise, the Plaintiffs in this case have not and cannot prove that any one of the defendants *believed or was substantially certain* that they lacked the necessary legal authority to release of the redacted SPD Offense Report.  Notably, the standard is not whether the Defendants lacked authority but whether they *believed* that they lacked such authority.  The undisputed facts prove that Cate and O'Kelley *believed* or *were substantially certain* not only that that they had the legal authority to release the SPD Offense Report but that they had the legal obligation to do so under FOIA.  *SUMF* ¶ 56.

In addition to his years of experience in responding to hundreds of FOIA requests, Cate also sought the opinions of:  1) the deputy Springdale City Attorney, who also had significant experience in the FOIA;  2) Terra Stephenson, who was the Juvenile Prosecutor at that time and is now a District Judge in Washington County; 3) Colonel Bill Bryant, the Director of the Arkansas State Police, along with legal counsel for the Arkansas State Police; 4) Judge Jeff Harper, former, long-serving City Attorney at Springdale, and was at that time an elected District Judge in Washington County; and 5) Mark Hayes, who is the current Executive Director of the Arkansas Municipal League and at that time was the General Counsel of the Arkansas Municipal League. *SUMF* ¶ 41, 42-45, 48.  All of these individuals opined that the city was required to redact and release the SPD Offense Report pursuant to FOIA.  *Id.*  Moreover, O'Kelley, a non-lawyer, relied upon her training, her years of experience in responding to FOIA requests, her own

communications with Colonel Bill Bryant and legal counsel for the Arkansas State Police, and most remarkably, the legal advice of Cate, the City Attorney, in determining the City's obligation to release the redacted report. *SUMF* ¶ 57. Cate, as the City Attorney, regularly provides legal advice to employees of the City, including the Chief on various matters including the FOIA. O'Kelley instructed Ron Hritz, a Captain with SPD working on the FOIA response, not to release the report until she had the opportunity to receive legal advice from Cate. *SUMF* ¶ 37. See *Nothstein v. USA Cycling,* 499 F.Supp.3d 101 (E.D. Pa. 2020) (dismissing intrusion claim where defendant relied upon advice of counsel).

Further negating any intent to intrude or knowledge that they lacked legal authority to release the report, O'Kelley requested that Capt. Hritz notify Jim Bob Duggar, *before the release* of the SPD Offense Report, of the City's receipt of the FOIA, the urgency to respond and the City's obligations to release the redacted Offense Report, which Capt. Hritz did. *SUMF* ¶ 37. Cate, O'Kelley and Hritz conducted multiple rounds of redactions to ensure that the released SPD Offense Report redacted the identifying information of the victims. *SUMF* ¶ 48. Moreover, O'Kelley ordered an internal affairs investigation into any potential unauthorized release of the SPD Offense Report. *SUMF* ¶ 58. The investigation was not concluded until after the planned retirement of O'Kelley and, as such, was reported to Chief Mike Peters. *SUMF* ¶ 59. The investigation indicated no wrongdoing on the part of O'Kelley or any current SPD employees. *Id*.

Plaintiffs have failed to produce any facts establishing that the Springdale Defendants intended to intrude upon the seclusion of the Plaintiffs in releasing the redacted SPD Offense Report. At best, the Plaintiffs have asserted a cause of action for negligence for which the Springdale Defendants are entitled to immunity as set forth, *infra.*

**2. The alleged intrusion was not highly offensive to a reasonable person.**

For the same reason that the Plaintiffs cannot establish an "intrusion", *supra,* they cannot establish that an "intrusion" was "highly offensive." The SPD Offense Report was released in response to an FOIA request and in accordance with Arkansas law.

**3. Per Arkansas law, the Plaintiffs did not conduct themselves in a manner consistent with an actual expectation of privacy.**

The Plaintiffs have failed to conduct themselves in a manner consistent with the actual expectation of privacy. Again, the Arkansas Court of Appeals decision in *Duggar*, 2020 Ark. App. 220, 11-14, is not only instructive but binding on this issue. In *Duggar v. City of Springdale* the plaintiff complained of the *same* release of the *same* report regarding the *same* members of the *same* celebrity family. The Court of Appeals held that because "[Duggar] *and his family*" were subjects of a reality television series "from which a certain level of celebrity locally, nationally, and internationally was attributable to *each and every member of the immediate family,*" he did not conduct himself in a manner consistent with an actual expectation of privacy. *Id.* (Emphases added). The Court of Appeals held that this fact called for dismissal of Duggar's privacy claim. For the same reason that the Court of Appeals dismissed Duggar's privacy claim, so to must this Court dismiss Plaintiffs' same privacy claim.

Furthermore, it is undisputed that none of the Springdale Defendants released the specific identity of any of the Plaintiffs. *SUMF* ¶¶ 40, 48, 66. The Plaintiffs admit that the Springdale Defendants did not identify the names and other identifying information of the Plaintiffs in the SPD Offense Report. *SUMF* ¶ 66. Instead, the Plaintiffs allege that, because there were only five sisters alive at the time of the abuse as reported in the SPD Offense Report, the Plaintiffs, each being one of the five sisters, could be identified as *potentially* one of the victims by someone with a weight of knowledge about the family. It was not until two of the Plaintiffs, Dillard and Seewald,

12

appeared on national television that their identities as two of the victims in the SPD Offense Report were released. *SUMF* ¶ 60. It was only upon the filing of this lawsuit that Plaintiffs Vuolo and Forsythe were identified as the remaining two sisters abused by their brother.

The self-identification by the Plaintiffs on national television underscores the celebrity status of the Plaintiffs. The Plaintiffs regularly appeared as children on reality television shows with names that evolved over time to be *19 Kids and Counting*, and as adults they have regularly appeared on a reality television show whose name evolved over time to be known as *Counting On*. *SUMF* ¶ 4. All of the Plaintiffs are celebrities and social media influencers who market or advertise products on various social media platforms, and who have authored books about their lives. *SUMF* ¶ 8. All of the Plaintiffs are currently, or have in the past, been represented by talent agents. *Id*. Unlike many celebrities who may be known by the public for an artistic or athletic talent, the Plaintiffs are known for sharing some of the most intimate aspects of their lives, including the privacy of their home, their daily mundane activities, romantic or spousal relationships, childbirth and many other aspects of their personal lives with television and internet consumers of this type of entertainment. *SUMF* ¶¶ 4, 8.

Perhaps nothing better illustrates that the personal lives of the Plaintiffs were in the public arena than their choreographed interview on the Megyn Kelly show on June 2-3, 2015 arranged by their agent, Chad Gallagher (*SUMF* ¶¶ 60-64) or the June 19, 2015 email from Chad Gallagher to the Plaintiffs that outlined the efforts to retain the television show and to reintroduce Josh Duggar subject to getting a "read on TLCs plans to factor that in." *SUMF* ¶ 64. The plan as outlined by Mr. Gallagher was for the Plaintiffs and others in the Duggar family to be "slowly easing into posting again" but that they "do not want to stir the pot." *Id*. There were also plans to post a "nice little blog from Ben and Jessa", announce "Jill and Derick's new adventure" and that

"we will also likely do our own announcing of Josh and Anna's sweet new baby." *Id.* These public relations efforts in June of 2015 are indicative of a sophisticated public relations campaign for celebrities in the public eye who intended to remain in the public eye. It is notable that the fifth victim, a non-family member and non-celebrity, has not been the subject of such tabloid publications, national television shows, interviews or lawsuits.

The Plaintiffs intrusion upon seclusion claim must be dismissed having failed to adduce facts to establish the necessary elements.

**C.     Springdale Defendants are entitled to summary judgment on the claim of invasion of privacy – public disclosure of private facts.**

To succeed on an invasion of privacy- public disclosure of private facts claim, the Plaintiffs must prove: (1) that they sustained damages; (2) that Springdale Defendants made a public disclosure of a fact about the Plaintiffs; (3) that prior to disclosure the fact was not known to the public; (4) that a reasonable person would find the disclosure highly offensive; (5) that the Springdale Defendants knew or should have known that the disclosed fact was private; (6) that the fact was not of legitimate public concern; and (7) that the public disclosure was the proximate cause of the Plaintiffs' damages. *Duggar,* 2020 Ark. App. 220, 14–15. Notably, the elements of this tort, as set forth by the Arkansas Court of Appeals, differ from the elements as stated in the Restatement (Second) of Torts.

**1.     The Springdale Defendants did not make a public disclosure of a fact about any one of the Plaintiffs.**

It is still unclear what specific "facts" that Plaintiffs allege that the Springdale Defendants released about them. As set forth, *supra,* it is undisputed that none of Springdale Defendants released the Plaintiffs' identities in the redacted SPD Offense Report. *SUMF* ¶¶ 40, 48, 66. The Plaintiffs self-identified as victims on national television and by the filing of this lawsuit. SUMF

14

¶ 60. Even then, the Plaintiffs have presented no facts that the Springdale Defendants identified any one of the Plaintiffs as any one of the specific victims mentioned in the SPD Offense Report, thereby disclosing the specific abuse suffered by the Plaintiffs.

**2. The Incidents of molestation were known to the public.**

The Plaintiffs cannot meet the necessary element that before the disclosure the fact was not known to the public. It is undisputed that the facts regarding Josh Duggar's molestation of his sisters was public before the release of the SPD Offense Report. The broad public knowledge of the molestation is fatal to the Plaintiffs' claim. The undisputed facts establish the following:

- In 2003, the details of the molestation incidents by Josh Duggar were revealed to the Holt Family, who were in a church group, called a gathering, with the Duggar family and others. On March 30, 2003, Kaeleigh Holt Tull, who was 15 years old at the time and betrothed to Josh Duggar, was informed by her parents the detail of the molestation incidents by Josh Duggar. She wrote a letter providing the details of the molestation incidents by Josh Duggar. The letter was never sent, but instead was placed inside of a book on her bookshelf. *SUMF* ¶¶ 15-16, 18, 19, 24.

- In 2006, the book containing the letter about the incidents of molestation by Josh Duggar was loaned by Tull to a friend, Gabrielle Reno, who discovered the letter and showed it to her parents. The Reno family then told other members of the gathering and the details of the molestation incidents became well known. *SUMF* ¶ 25.

- The Reno family showed Kaeleigh Tull's Letter to Dasha Nichols. *SUMF* ¶ 29.

- Dasha Nichols wrote an email to the Oprah Winfrey Show, who had scheduled the Duggar family to appear for a televised interview, with information that Josh Duggar had molested his sisters. The molestation incidents became well known. *SUMF* ¶¶ 23, 29.

- Once the information in the letter was known, the gathering split into multiple factions which then caused a permanent split in the gathering. *SUMF* ¶ 26.

- Over a hundred people were a part of the gathering and basically everybody in the church was aware of the molestation allegations. Some of the families who learned about the molestations left the gatherings. *SUMF* ¶ 26-27.

- The details of the molestation incidents by Josh Duggar became known in the community and appeared on the internet and could be found by internet searches. *SUMF*, ¶ 34.

- Sherrl Colville and Tandra Barnfield knew of the incidents of molestation by Josh Duggar and told Melissa Roberto, a reporter for *In Touch Weekly* before the May 15, 2015 FOIA Request was sent to Springdale. Melissa Roberto was informed that Cecil Clifton, a former employee of SPD, had reviewed the SPD Offense Report and that information from Cecil Clifton was shared with Melissa Roberto. *SUMF*, ¶ 33.

- On May 19, 2015, In Touch Weekly published an article naming Josh Duggar in an underage sexual abuse probe that quotes "multiple sources who have seen the police report and are familiar with the case". The story contains details of the investigation contained in the Offense Report, including the name of the SPD investigator and that Josh Duggar had confessed Joseph Hutchins, a former Arkansas State Trooper. *SUMF*, ¶ 32.

- Prior to the release by the City of Springdale on May 20, 2015, Washington County placed its report in the mail. As alleged by the Plaintiffs, the Washington County report was "under-redacted" and permitted the public to identify each of the Plaintiffs as among the victims. Compl., ¶6. The Washington County report was placed in the mail, unable to be retrieved, at the time of the release of the SPD Offense Report.

The non-redacted information contained in redacted SPD Offense Report was not private nor would it have otherwise remained private. Josh Duggar's molestation of the Plaintiffs was considered publicly in open court at the May 5, 2021 Detention Hearing in the pending criminal matter of *United States of America v. Joshua James Duggar,* United States District Court, Western District of Arkansas, Fayetteville Division, Case No. 5:21-CF-50014. *SUMF* ¶ 73. This Court may take judicial notice of the transcript that is filed for record in a matter pending before this Court. *See Stutzka v. McCarvile*, 420 F.3d 757, 760 n.2 (8th Cir. 2005). In the hearing, the Magistrate Judge, heard testimony from federal agents regarding Josh Duggar's past sexual abuse of his sisters. The Magistrate stated in open court:

> THE COURT: There's a problem, though. And that is that your family and you have chosen to live a very high-profile life out in the public. And while you may not be the architect of that decision, that's where we find ourselves. And although you have not ever been convicted of any crimes, you have admitted to past conduct, touching minor children, that concerns the Court. That's a very public admission. I'm not telling anybody involved in this hearing or you something that you don't know. That is concerning. We're not here to adjudicate that. We're not here to punish you for that. I just

> want to tell you that it concerns me, when I have to make this decision, to know that you have admitted to that conduct in the past. And what concerns me about it the most is the age of your sisters when that conduct was admitted, and the age of these children in the alleged evidence against you -- 11, 10, 9, 5 -- that concerns the Court quite a lot.

*SUMF* ¶ 73.    As such, there could be no guarantee, promise or expectation that the information contained in the redacted – or unredacted – SPD Offense Report would not be released, particularly considering the nature of Josh Duggar's criminal acts.

Furthermore, there was nothing that prevented individuals with knowledge of the details of the molestations from disclosing the information.  In fact, "multiple sources who have seen the police report and are familiar with the case" provided information to *In Touch Weekly* before the release of the Redacted SPD Offense Report.  *SUMF* ¶ 32.  Prior to the release of the SPD Offense Report, *In Touch Weekly* was aware that Josh Duggar had confessed to the molestations to Joseph T. Hutchens, a former Arkansas state trooper now incarcerated with the Arkansas Department of Corrections on a conviction related to child sexual abuse images.  *SUMF* ¶¶ 32, 42.  On the afternoon of May 20, 2015, *prior to the release* of the SPD Offense Report, Mehdizadegan arranged for the interview of Joseph T. Hutchens for the next day.  *Id*. On May 21, 2015, the paralegal for Mehdizadegan interviewed Joseph T. Hutchens in a recorded interview.  In the interview, Hutchens "told the entire story of the molestations" including but not limited to that Josh Duggar's sisters were among his victims.  *SUMF* ¶ 52. This information from Joseph Hutchens was published by *In Touch Weekly* and others.

Just as the famous "Schrödinger's Cat" thought experiment where a cat in a box is simultaneously alive and dead, the details of the molestation were known by hundreds in the Duggar's church gathering, many others throughout the community and on the internet, the press

(at least HARPO, NBC and *In Touch Weekly*), an incarcerated former Arkansas State Trooper who gave a full account of the molestations to a tabloid, and were also contained in another police report, not as well redacted, that had been placed in the mail prior to the release of the SPD Offense Report for eventual delivery. But in this instance the cat was neither alive or dead, and it certainly was not in a box as it was well out of the bag. "There is no liability when the defendant merely gives further publicity to information about the plaintiff which is already public." *McNally v. Pulitzer Pub. Co.,* 532 F.2d 69, 79 (8th Cir. 1976). Facts known by an extended group of people cannot be considered private. *See, e.g., Sipple v. Chronicle Publ'g Co.,* 154 Cal App. 3d 1040, 1045, 1047 (Cal. Ct. App. 1984) (dismissing public disclosure of private facts claim where despite his family not knowing, "[t]he undisputed facts reveal that prior to publication of the newspaper articles in question appellant's homosexual orientation and participation in gay community activities had been known by hundreds of people.") As testified by Abtin Mehdizadegan, the redacted Springdale reports was duplicative or otherwise "confirmed much of the information that had already been made public before that date [May 20, 2015]." *SUMF* ¶ 49.

3. **The disclosure was not highly offensive but in accordance with the FOIA.**

For the reasons stated in Section II(B)(2), *supra,* the disclosure was not highly offensive.

4. **The Plaintiffs cannot prove that the Springdale Defendants knew or should have known that the disclosed fact was private.**

Nonetheless, the Plaintiffs have presented no facts that the Springdale Defendants knew or should have known that the redacted SPD Offense Report was private. While not themselves privy to the very public nature of the information as set forth above, the Springdale Defendants believed for the reasons stated, *supra,* that they were legally obligated and required to release the redacted SPD Offense Report. The Plaintiffs have produced no *facts* that the Springdale Defendants knew

18

or should have known that the report was not subject to the FOIA.  Instead, the Plaintiffs take issue with the Springdale Defendants' legal interpretation of Arkansas FOIA law.  Even if the Springdale Defendants interpretation of the law was mistaken, the Plaintiffs can offer no facts that the Springdale Defendants had the *intent* to release a private fact in contravention of the law.  To the contrary, the only facts evidence an intent to comply with the law, specifically, the FOIA.  *SUMF* ¶¶ 55-57.  This Court cannot presume intent to the contrary.  *Duggar,* 2020 Ark. App. 220, 14. The Plaintiffs must prove it.  *Id.*   They have failed to do so, and their claims, which amount to negligence at most, must be dismissed.

**5.  It is undisputed that the redacted SPD Offense Report is a legitimate public concern.**

In determining whether the facts were of a legitime public concern, the following factors should be considered:  (1) the social value of the fact published; (2) the depth of the intrusion into the Plaintiffs' private affairs; (3) the extent to which the Plaintiffs voluntarily placed themselves into a position of public notoriety, (4) the nature of the state's interest in preventing the disclosure; (5) whether the fact publicized concerned events that occurred in the past, whether there is any continued public interest in the fact published.   *Ark. Model Jury Instr.* 422.

The SPD Offense Report is a report of the criminal activity of Josh Duggar that was investigated when he was and adult.  Reports of the investigation of crimes, including those without an arrest, or matters pertaining to criminal activity are matters of legitimate public interest as a matter of law. *See Cox Broad. Corp. v. Cohn,* 420 U.S. 469, 492, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975) ("commission of crime, prosecutions resulting from it, and judicial proceedings arising from the prosecutions ... are without question events of legitimate concern to the public).   The redacted report pertained to events that occurred over eight years prior to the release of the report. However, there has been continued public interest in the information due to celebrity status of the

Duggar family and Josh Duggar's continued public transgressions, including federal criminal charges. With respect to the depth of the intrusion, the identities of the Plaintiffs (including ages, pronouns and other identifying information) were redacted in accordance with the FOIA. Public speculation as to the identity of the Plaintiffs, either through the length of certain redactions or by fan awareness of esoteric trivia of the Duggar family was due to celebrity status and not to any wrongdoing or under-redacting on the part of the Springdale Defendants. The public speculation merely underscores the extent to which the Plaintiffs were in a position of public notoriety, thereby weighing in favor that the release was of a legitimate public concern.

With respect to the state's interest in the release of the information, Arkansas Courts have considered the governmental interest of information requested under the FOIA. In *Hopkins v. City of Brinkley,* 2014 Ark. 139, 432 S.W.3d 609 (2014), the Court analyzed whether to protect the home address, phone number and payment history of a female water customer from multiple requests by a male citizen seeking her information. The Court, in citing the same maxims of the Arkansas FOIA set forth *supra*, found that the public interest outweighed the privacy interest of the female water customer. See also *McCambridge v. City of Little Rock*, 298 Ark. 219, 766 S.W.2d 909 (1989) (intimate details contained in a handwritten suicide and other personal details could not be kept from disclosure for the FOIA because that the governmental interest in disclosure under the FOIA outweighed the father's privacy interest). The Springdale Defendants further incorporate Bauer's Brief in Support of Motion to Dismiss on the issue of legitimate public concern pursuant to Fed. R. Civ. P. 10(c), Docket No. 44, pp. 16-20.

**D. Springdale Defendants are entitled to summary judgment on the claim of outrage.**

In order to establish a prima facie case for their outrage claims, the Plaintiffs must show: (1) Springdale Defendants *intended* to inflict emotional distress or willfully and wantonly knew

20

or should have known that emotional distress would be the likely result of their conduct; (2) the conduct was extreme and outrageous; (3) the actions of the Springdale Defendants were the cause of the Plaintiffs' distress; and (4) the emotional distress sustained by the Plaintiff was so severe that no reasonable person could be expected to endure it. *Finch v. Texarkana Sch. Dist. No. 7 of Miller Cty.*, 557 F. Supp. 2d 976, 984–85 (W.D. Ark. 2008); *Thornton v. Squyres*, 317 Ark. 374, 376, 877 S.W.2d 921 (1994).

As this Court has previously held:

> "The test for outrage is an extremely narrow test that is committed by the most heinous conduct." *Forrest City Mach. Works, Inc. v. Mosbacher,* 312 Ark. 578, 585, 851 S.W.2d 443, 447 (1993). "Merely describing the conduct as outrageous does not make it so." Fuqua v. Flowers, 341 Ark. 901, 907, 20 S.W.3d 388, 392 (2000). Extreme and outrageous conduct is conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.*" M.B.M. Co., Inc. v. Counce*, 268 Ark. 269, 280, 596 S.W.2d 681, 687 (1980).

*Wolfe v. Fayetteville, Arkansas Sch. Dist.*, 600 F. Supp. 2d 1011, 1022 (W.D. Ark. 2009). The type of conduct that constitutes outrage must be determined on a case-by-case basis. *Holman v. Flores*, 2018 Ark. App. 298, 551 S.W.3d 1. The tort of outrage is narrowly viewed by Arkansas appellate courts, which require clear-cut proof to establish the elements. *Id.* Merely describing conduct as outrageous does not make it so. *Id.* The tort of outrage "should not and does not open the doors of the courthouse to every slight insult or indignity one must endure in life." *Id.* at 6–7, 551 S.W.3d at 4 (citing *Kiersey v. Jeffrey*, 369 Ark. 220, 222, 253 S.W.3d 438, 441 (2007)).

### 1. The Plaintiffs cannot prove that the Springdale Defendants *intended* to inflict emotional distress.

The Plaintiffs must provide facts that the Springdale Defendants intended to inflict emotion distress on the Plaintiffs by the release of the redacted police report and not simply that they

intended to release the report itself and that the release resulted in emotional distress. The distinction is significant. Requisite intent requires that the actor intend "the *consequences* of an act," not simply "the act itself." *Kawaauhau v. Geiger*, 523 U.S. 57, 61–62, 118 S. Ct. 974, 977, 140 L. Ed. 2d 90 (1998). The Plaintiffs have failed to provide an iota of evidence that any of the Springdale Defendants acted with the *intent* to *inflict emotional distress* upon any of the Plaintiffs. For the same reasons that the Plaintiffs cannot prove intent to invade the privacy of the Plaintiffs, they cannot prove that any of the Springdale Defendants *intended* to inflict severe emotional distress on any one of the Plaintiffs.

What is essentially a negligence claim, at best, cannot be transformed into an intentional tort by inserting the words intentional at strategic points. If that were not so, most negligence claims could be converted to intentional torts merely by alleging the defendant intentionally took some action as opposed to intentionally causing harm. Moreover, simply because a presumably negligent act results in alleged extreme emotional distress (or even death or disfigurement) does not transform the tort to one that is intentional. The Arkansas Supreme Court is clear that to establish a claim for an intentional tort, there must be facts that the intentional or deliberate act was performed with a desire to bring about the harm as a consequence of the act. *Miller v. Ensco, Inc.,* 286 Ark. 458, 692 S.W.2d 615 (1985). If public servants, individually, and municipalities protected by tort immunity are compelled to defend FOIA matters under the rubric of outrage claims seeking millions of dollars, this Court will have extended the concept far beyond anything envisioned by the Arkansas Supreme Court and render absurd and unjust results. *See Deitsch v. Tillery,* 309 Ark. 401, 411–12, 833 S.W.2d 760, 765 (1992).

The Plaintiffs in this case, like Josh Duggar in his state court case, alleged that the SPD Offense Report was released in violation of the CMA and the Juvenile Code. In affirming the

dismissal of Josh Duggar's intentional tort claims, the Court of Appeals affirmed the circuit court dismissal because "Duggar makes no allegation that any person intended to inflict emotional distress upon him." *Duggar*, 2020 Ark. App. 220. The decision of *Duggar v. Springdale* requires this Court to dismiss the Plaintiffs' claims as they have produced no facts that any of the Springdale Defendants intended to inflict emotional distress upon the Plaintiffs.

2. **The Springdale Defendants took no action and engaged in no conduct that could remotely be classified as "extreme and outrageous," "beyond all possible bounds of decency," and "utterly intolerable in a civilized community"**

The Springdale Defendants actions in releasing the redacted SPD Offense Report in what they believed to be required by the FOIA, can, in no way, be described as "extreme and outrageous," "beyond all possible bounds of decency," and utterly intolerable in a civilized community." The Springdale Defendants' actions in responding to an FOIA request, even if they were mistaken in doing so, cannot meet this high standard. For the same reasons that they cannot establish intent, the Plaintiffs cannot meet this difficult element of the tort of outrage.

3. **The Plaintiffs have failed to present proof of mental distress sufficient to reach the high bar required for the tort of outrage, i.e., that no reasonable person could be expected to endure it**

The Plaintiffs in this case, like Duggar in the state court case, have failed to prove facts of mental distress sufficient to reach the high bar required for the tort of outrage, i.e., that no reasonable person could be expected to endure it. As the Arkansas Court of Appeals explained in the *Duggar* case, "discomfort, upset, embarrassment, anxiety, loss of sleep, and depression do not meet the 'mental distress' element of the tort of outrage." *Id. (*citing *Coombs* 2012 Ark. App. 24). The Court of Appeals noted that Duggar did not even allege this type of mental distress; he simply asserted that the conduct caused him "severe emotional distress." The Plaintiffs in this case make substantively identical allegation in their outrage claim, asserting only that the Springdale

23

Defendants' allegedly outrageous conduct caused the Plaintiffs "several emotional, mental, and psychological distress." Doc. #1, 119. The addition of synonymous, conclusory adjectives to the Plaintiff's substantively identical allegations certainly does not save the Plaintiffs' outrage claim. *Duggar,* 2020 Ark. App. 220, 10–11.

The facts established in the course of discovery equally fall short of meeting the high bar required of the tort of outrage.  Since the release of the redacted SPD Offense Report, none of the Plaintiffs have sought medical care for any issues related to the release (*SUMF* ¶ 6 ), none of the Plaintiffs have been prescribed medications (*SUMF* ¶ 65), none of the Plaintiffs have been diagnosed by a physician with any mental or emotional problems (*SUMF* ¶ 69), in the 6 years since the release none of the Plaintiffs have sought out or received any psychiatric, psychological or therapy help or services with the exception of Jill Dillard who attends therapy session with her husband over marital issues, issues with her family and the "daily stressors of life" (*Id.*), and none of the Plaintiffs can detail their emotional pain or anguish in any fashion other than broad and summary fashion. (*SUMF* ¶ 68).  As such, the Plaintiffs cannot meet the high bar to establish damages under the tort of outrage.

E.     **Springdale Defendants are entitled to qualified, statutory and vicarious liability immunity.**

The Springdale Defendants assert and are entitled to both qualified immunity and statutory immunity based on Ark. Code Ann. § 21-9-301(a) and Arkansas Supreme Court precedents for the reasons set forth in Separate Defendants Hoyt and Washington County's Motion for Summary Judgment and brief in support which are incorporated herein through Fed. R. Civ. P. 10(c).  For the purposes of statutory immunity under § 21-9-301(a), the City of Springdale does not carry liability insurance that would cover any of the claims in this action.  *SUMF* ¶ 72.  The Plaintiffs

have alleged no discrete acts or omissions on the part of Springdale. Instead, they rely upon the doctrine of vicarious liability. Arkansas Code Annotated § 21-9-301(b) states clearly that "[n]o tort action shall lie against any such political subdivision because of the acts of its agents and employees." Pursuant to the plain language of the statute, Springdale is not vicariously liable for the acts of O'Kelley and Cate. Even if Springdale did not enjoy statutory immunity from vicarious liability (it does), vicarious liability can never be imposed when, as here, no violation of law occurred. As such, Springdale is entitled to summary judgment as a matter of law.

**F.      Defendants Does 1-10 must be dismissed with prejudice.**

In their Complaint, the Plaintiffs have named Does 1-10 as defendants in this matter. The deadline to serve the Doe Defendants and to amend the pleadings or new parties has passed and accordingly, this action against Does 1-10 must be dismissed with prejudice.

## IV.      CONCLUSION

WHEREFORE, for the reasons set forth in this brief, and as set forth in the incorporated Motion of Judgment on the Pleadings, the Springdale Defendants pray that this Court grants summary judgment in its favor thereby dismissing Plaintiffs Complaint with prejudice and in its entirety.

Respectfully Submitted,

R. Justin Eichmann (Ark. Bar No. 2003145)
Thomas N. Kieklak (Ark. Bar No. 92262)
Morgan S. Doughty (Ark. Bar No. 2010158)
HARRINGTON, MILLER, KIEKLAK,
EICHMANN & BROWN, P.A.
4710 S. Thompson, Suite 102
Springdale, AR  72764
Phone: (479) 751-6464

Fax: (479) 751-3715
Email: mdoughty@arkansaslaw.com
Email: tkieklak@arkansaslaw.com
E-mail: jeichmann@arkansaslaw.com

and

Susan Keller Kendall (Ark. Bar No. 98119)
KENDALL LAW FIRM, PLLC
3706 Pinnacle Hills Parkway, Suite 201
Rogers, Arkansas 72758
Phone: (479) 464-9828
Fax: (479) 464-9768
Email: skk@kendalllawfirm.com

**COUNSEL FOR SPRINGDALE DEFENDANTS**

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that on the 6th day of October 2021, a true and correct copy of the above and foregoing was filed using the Court's CM-ECF System, which effected service on all counsel of record:

| | |
|---|---|
| Steven E. Bledsoe<br>Stephen G. Larson<br>Jen C. Won<br>LARSON O'BRIEN, LLP<br>555 S. Flower Street<br>Suite 4400<br>Los Angeles, CA 90071<br>(213) 436-4888<br>sbledsoe@larsonobrienlaw.com<br>slarson@larsonllp.com<br>jwon@larsonllp.com | Shawn B. Daniels<br>DANIELS FIRM<br>129 W. Sunbridge Drive<br>Fayetteville, AR 72703<br>479-521-7000<br>Fax: 479-437-2007<br>shawn@danielsfirm.com |
| Jason Owens (Ark. Bar No. 2003003)<br>JASON OWENS LAW FIRM, P.A.<br>1023 Main St., Suite 204<br>Conway, Arkansas 72033<br>(501) 764-4334<br>owens@jowenslawfirm.com | |

R. Justin Eichmann (Ark. Bar No. 2003145)