IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JILL DILLARD, et al.,                    Case No.: 5:17-CV-05089-TLB

        Plaintiff,


CITY OF SPRINGDALE; et al.,

        Defendants

## PLAINTIFFS' OPPOSITION TO WASHINGTON COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ..........................................................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND.......................................................2

     A.     Investigations into Plaintiffs' Sexual Assaults ....................................................2

     B.     Tabloid Publication of the City Defendants' "Redacted" Incident Report.............3

     C.     Washington County's Release of the Incident Report ...........................................4

     D.     Public Backlash After the Release of the Offense and Incident Reports................5

     E.     Instant Lawsuit....................................................................................................6

III.   LEGAL STANDARD ...................................................................................................7

IV.   ARGUMENT ...............................................................................................................8

     A.     Statutory Immunity Does Not Apply to Intentional Torts Under Arkansas Law. .....................................................................................................................8

          1.     The Arkansas Supreme Court Has Unequivocally Held That Statutory Immunity Does Not Apply To Intentional Tort Claims..............8

          2.     Legislative History Dictates That Statutory Immunity Does Not Apply To Intentional Tort Claims...........................................................11

          3.     The County Defendants Engaged in Intentional Conduct. ........................14

     B.     The County Defendants Are Not Entitled to Absolute or Good Faith Immunity at Common Law...............................................................................15

          1.     The County Defendants Are Not Entitled to Absolute Immunity. ............15

          2.     The County Defendants Are Not Entitled to Good Faith Immunity..........16

          3.     The Court Should Impose Sanctions Because The County Defendants' Argument On Immunity Is Unwarranted By Existing Law And Presented For An Improper Purpose.........................................17

     C.     Washington County is Vicariously Liable............................................................17

     D.     Triable Issues Of Fact Support Plaintiffs' Intentional Tort Claims.....................18

          1.     The Arkansas Court of Appeals' Ruling Is Irrelevant. .............................18

          2.     Evidence Supports That County Defendants Invaded Plaintiffs' Privacy by Intruding Upon Plaintiffs' Seclusion. .....................................19

          3.     Evidence Supports That County Defendants Publicly Disclosed Private Facts..........................................................................................22

          4.     Issues Of Material Fact Support Plaintiffs' Claim For The Tort Of Outrage..............................................................................................23

V.     CONCLUSION............................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)........................................................................................................7

*Autry v. Lawrence*,
286 Ark. 501 (1985)....................................................................................................8, 9

*Baptist Health v. Murphy*,
365 Ark. 115 (2006)........................................................................................................14

*Battle v. Harris*,
298 Ark. 241 (1989)............................................................................................8, 10, 11

*Beaulieu v. Gray*,
288 Ark. 395 (1986)....................................................................................................8, 11

*Behrens v. Pelletier*,
516 U.S. 299 (1996)........................................................................................................17

*Braden v. Mountain Home Sch. Dist.*,
903 F. Supp. 2d 729 (W.D. Ark. 2012)..........................................................................8

*Bradley v. Fisher*,
80 U.S. 347 (1872)........................................................................................................15

*Buckley v. Fitzsimmons*,
509 U.S. 259, 268-269 (1993) ........................................................................................15

*In re Bullard*,
451 B.R. 473 (Bankr. E.D. Ark.), aff'd, 449 B.R. 379 (8th Cir. 2011) ..............18, 19

*Butz v. Economou*,
438 U.S. 478 (1977)........................................................................................................16

*City of Alexander v. Doss*,
102 Ark. App. 232 (2008)................................................................................................9

*City of Fayetteville v. Romine*,
373 Ark. 318 (2008)........................................................................................................8

*Coombs v. J.B. Hunt Transport, Inc.*,
2012 Ark. App. 24 (2012)........................................................................................21, 25

*Crockett v. Essex*,
    341 Ark. 558 (2000)................................................................................24

*Davis v. Fulton Cnty. Ark.*,
    884 F. Supp. 1245 (E.D. Ark. 1995)................................................8, 18

*Deitsch v. Tillery*,
    309 Ark. 401 (1992)................................................................8, 9, 10, 11

*Dillard, et al. v. O'Kelley, et al.*,
    930 F.3d 935 (8th Cir. 2019) ...............................................................7

*Dillard, et al. v. O'Kelley, et al.*,
    961 F.3d 1046 (8th Cir. 2020) ............................................................7

*Duggar v. City of Springdale*,
    2020 Ark. App. 200 (2020)...........................................................18, 19

*Dumond v. Conlee*,
    710 F. Supp. 1270 (E.D. Ark. 1988) .................................................10

*In re Dunbar*,
    446 B.R. 306 (Bankr. E.D. Ark. 2011) .............................................22

*Elliott v. Morgan*,
    2020 Ark. App. 297 (2020)...........................................................9, 10

*Fast v. Southern Union Co., Inc.*,
    149 F.3d 885 (8th Cir. 1998) ...............................................................7

*Hagerman v. Yukon Energy Corp.*,
    839 F.2d 407 (8th Cir. 1988) .............................................................13

*Hamaker v. Ivy*,
    51 F.3d 108 (8th Cir. 1995) ...............................................................25

*Harrington v. City of Greenbrier*,
    262 Ark. 773 (1978).............................................................................9

*Imbler v. Pachtman*,
    424 U.S. 409 (1976)...........................................................................15

*Kansas City So. Ry. Co. v. Pledger*,
    301 Ark. 564 (1990)...........................................................................17

*Kingman v. Dillard's, Inc.*,
    643 F.3d 607 (8th Cir. 2011) .............................................................11

iii

*Loren D. Buttolph Trust v. Jarnagan*,
  302 Ark. 393 (1990)..................................................................................................9

*Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986)..................................................................................................7

*Monk v. Rogers*,
  2021 Ark. App. 148 (2021)..................................................................................9, 10

*Mosier v. Robinson*,
  722 F. Supp. 555 (W.D. Ark. 1989)..........................................................................10

*Owen v. City of Independence*,
  445 U.S. 622, 638 (1980)....................................................................................1, 16

*Peter v. Wedl*,
  155 F.3d 992 (8th Cir. 1998) ......................................................................................7

*Robinson v. Huskins*,
  2014 WL 7184013 (W.D. Ark. Dec. 16, 2014) ..........................................................8

*Sawyer v. State*,
  327 Ark. 421 (1997)................................................................................................13

*Schotzman v. Berumen*,
  363 Ark. 215 (2005)................................................................................................12

*Smith v. Brt*,
  363 Ark. 126, 130 (2003)........................................................................................12

*Texas & P. Ry. Co. v. Abilene Cotton Oil Co.*,
  204 U.S. 426 (1907)................................................................................................12

*Thompson v. Sanford*,
  281 Ark. 365 (1984)................................................................................................12

*Trammell v. Wright*,
  2016 Ark. 147 (2016)................................................................................................8

*Travelers Ins. Co. v. Smith*,
  338 Ark. 81 (1999)..................................................................................................24

*Waire v. Joseph*,
  308 Ark. 528 (1992)......................................................................................8, 11, 17

*Wal-Mart Stores, Inc. v. Lee*,
  348 Ark. 707 (2002)..........................................................................................19, 20

*White v. City of Newport*,
  326 Ark. 667 (1996)..................................................................................................12

*Williams v. Pate*,
  2015 Ark. App. 327 (2015)........................................................................................9

**Statutes**

42 U.S.C. § 1983.....................................................................................................6, 15

Arkansas Code Annotated § 16-90-1104.......................................................................5

Arkansas Code Annotated § 19–10–305................................................................12, 13

Arkansas Code § 21-9-301.................................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 11(c)(3)..............................................................................................17

## I.  INTRODUCTION

This case stems from Defendants' unauthorized release of confidential records containing the intimate details of the incestuous sexual molestation that Plaintiffs suffered when they were minors.  Defendants' disclosure led to *In Touch Weekly* featuring the graphic confidential information about Plaintiffs' sexual abuse in an article that reached millions.  Unsurprisingly, unwarranted and outrageous public shaming and embarrassment ensued, which continues to haunt Plaintiffs to this day.

This Court should deny the Washington County and Rick Hoyt's ("County Defendants") motion for summary judgment.  First, the County Defendants are not entitled to immunity as a matter of law.  The Arkansas Supreme Court has consistently held that statutory immunity under Arkansas Code § 21-9-301 does not apply to intentional tort claims like the ones Plaintiffs bring here.  Moreover, in *Owen v. City of Independence*, the United States Supreme Court foreclosed the County Defendants' argument that the common law good faith immunity applies to municipalities and their officers.

Second, material issues of fact exist regarding Plaintiffs' tort claims, all of which must be decided by a jury.  The facts show, *inter alia,* that:



1

In light of this, the County Defendants argument there are no facts—even when construed in the light most favorable to Plaintiffs—that would support Plaintiffs' claims for invasion of privacy and tort of outrage is wishful thinking.  Their argument ignores both the facts and the law.  Starting with Plaintiffs' first invasion of privacy claim for intrusion upon seclusion, there is a triable issue of fact regarding whether Mr. Hoyt believed or was substantially certain he lacked the legal authority to release the Incident Report.  If anything, the County Defendants' misrepresentation of what Plaintiffs must show—they incorrectly contend Plaintiffs must show that the County Defendants intended to violate the law—confirms as much.  Next, consider Plaintiffs' second invasion of privacy claim for public disclosure of private facts.  Despite knowing that once in the hands of *In Touch Weekly*, the Incident Report would be disseminated widely, Hoyt did nothing to stop the publication.  This creates a triable issue of fact on the public disclosure aspect of this claim.  Nor is there any question that Plaintiffs demonstrate a triable issue of fact exists as to the private facts part of this claim.  The shoddy redactions rubber-stamped by Hoyt left significant identifying private information available for the world to see.

Finally, take Plaintiffs' outrage claim.  Again, the County Defendants overstate the requisite intent.  Contrary to their assertion, all Plaintiffs must show is that they knew or should have known that their conduct would naturally and probably result in emotional distress.  And this issue is for a jury, too.

Simply put, the County Defendants ask the Court to outright ignore, if not excuse, their crass, outrageous, and unacceptable actions.  The County Defendants' cynicism and callousness should not be rewarded.  This case must be sent to a jury, and the County Defendants' motion must be denied.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Investigations into Plaintiffs' Sexual Assaults



**B.      Tabloid Publication of the City Defendants' "Redacted" Incident Report**

Nearly ten years later, on May 15, 2015, the Washington County and the City of Springdale received a FOIA request from a law firm representing In Touch magazine.  (*Id.* ¶ 6.) The request made by lawyer Abtin Mehdizadegan sought all files related to or mentioning Josh, Plaintiffs' parents, and any of the addresses purportedly related to their family, including the Incident Report filed by Detective Hignite.  (*Id.* ¶ 7.)  A few days later, on May 19, 2015, In Touch posted an article on the *In Touch Weekly* website titled, "19 Kids and Counting' Son Named in Underage Sex Probe."  (*Id.* ¶ 11.)  The website also included a promotion for sales of the hardcopy version for "the latest inside Josh Duggar's shocking past, pick up the new issue of *In Touch Weekly*, on newsstands tomorrow!"  (*Id.* ¶ 12.)  Access Hollywood, another tabloid, sent an email to the City of Springdale Police Department the same day, informing them that the story about Josh would be published the next day.  (*Id.* ¶ 13.)

3



**C.**      **Washington County's Release of the Incident Report**



On the same day, Judge Zimmerman, a juvenile court judge for the Circuit Court of Washington County, Arkansas ruled that the City's Offense Report should be destroyed in order to protect the identity of the victims, one of whom was still a minor.  (*Id.* ¶ 44.)  Judge Zimmerman pointed specifically to Arkansas Code Annotated section 16-90-1104's prohibition against law enforcement disclosure of information "directly or indirectly identifying the victim of a sex [crime]."  (*Id.*)  Only then, after Judge Zimmerman's ruling, did Defendant Hoyt seek external guidance regarding whether the Incident Report was exempt from FOIA.  (*Id.* ¶ 45.)

**D.     Public Backlash After the Release of the Offense and Incident Reports**



### E.   Instant Lawsuit

On May 18, 2017, Plaintiffs brought suit against Defendants Kathy O'Kelley; Ernest Cate; the City of Springdale, Arkansas; Rick Hoyt; Steve Zega[1]; the Washington County, Arkansas; and others asserting the following causes of action: (1) Invasion of Privacy – Public Disclosure of Private Fact; (2) Invasion of Privacy – Appropriation; (3) Invasion of Privacy – Intrusion Upon Seclusion; (4) Tort of Outrage; (5) Violation of the Arkansas Constitution – Due Process; (6) Violation of 42 U.S.C. § 1983 – Fourteenth Amendment; and (7) Violation of 42 U.S.C. § 1983 – *Monell*.

The City and County Defendants brought a motion to dismiss on qualified immunity grounds.  (Dkt. 22, 29.)  However, this Court found that Plaintiffs pled sufficient facts to set out a violation of their constitutional rights that were clearly established at the time the violation occurred, and thus, Defendants were not entitled to qualified immunity on Plaintiffs' claims rooted in the Arkansas and United States Constitution.  (Dkt. 62 at 18.)  This Court also held that Plaintiffs' intentional tort claims are not entitled to qualified immunity under Arkansas law and that Plaintiffs stated sufficient facts to allege each of the tort claims arising under state law.  (*Id.* at 19-26.)

---

[1] Defendant Steve Zega, Washington County's attorney, was voluntarily dismissed by Plaintiffs after discovery revealed that Zega had no involvement in the release of the Incident Report. (Dkt. 133.)

On July 12, 2019, the Eighth Circuit affirmed this Court's ruling.  *Dillard, et al. v. O'Kelley, et al.*, 930 F.3d 935 (8th Cir. 2019).  Nonetheless, on June 15, 2020, the Eighth Circuit, sitting *en banc*, reversed the initial panel's decision and held that the City and County Defendants were entitled to qualified immunity from Plaintiffs' constitutional rights claims. *Dillard, et al. v. O'Kelley, et al.*, 961 F.3d 1046 (8th Cir. 2020).  In doing so, the Eighth Circuit reinstated the remainder of the initial panel's decision holding that Plaintiffs' intentional tort claims—(1) Invasion of Privacy – Public Disclosure of Private Fact; (2) Invasion of Privacy – Intrusion Upon Seclusion; and (3) Tort of Outrage—are not subject to qualified immunity under Arkansas law.  *Id.* at 1055.  Plaintiffs' three intentional tort claims now remain.

## III.   LEGAL STANDARD

Summary judgment is only proper when the record shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *Fast v. Southern Union Co., Inc.*, 149 F.3d 885, 889 (8th Cir. 1998).  "At the summary judgment stage, the court should not weigh the evidence, make credibility determinations, or attempt to determine the truth of the matter.  Rather, the court's function is to determine whether a dispute about a material fact is genuine."  *Peter v. Wedl*, 155 F.3d 992, 996 (8th Cir. 1998) (quoting *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996)).  A genuine issue of material fact exists if: "(1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party."  *Peter*, 155 F.3d at 996  (quoting *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995)). All factual inferences must be resolved in favor of the non-movant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Before finding that no genuine issue for trial exists, the court must first be satisfied that no reasonable trier of fact could find for the non-movant.  *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## IV.    ARGUMENT

### A.    Statutory Immunity Does Not Apply to Intentional Torts Under Arkansas Law.

#### 1.    The Arkansas Supreme Court Has Unequivocally Held That Statutory Immunity Does Not Apply To Intentional Tort Claims.

As this Court and the Eighth Circuit held on Defendants' motions to dismiss, the Arkansas Supreme Court has unequivocally held that the statutory immunity under Arkansas Code § 21-9-301 does not apply to intentional tort claims.  In ruling on Defendants' motions to dismiss based on qualified immunity, this Court stated that in *Deitsch v. Tillery*, 309 Ark. 401, 407 (1992), the Arkansas Supreme Court "has expressly foreclosed" the argument that section 21-9-301 applies to intentional tort claims "in terms that could not have been more clear."  (Dkt. 62 at 20.)  Other courts have repeatedly reached the same conclusion.  *See, e.g., Battle v. Harris*, 298 Ark. 241, 245 (1989); *Beaulieu v. Gray*, 288 Ark. 395, 399 (1986); *Waire v. Joseph*, 308 Ark. 528, 534 (1992); *Davis v. Fulton Cnty. Ark.*, 884 F. Supp. 1245, 1262 (E.D. Ark. 1995); *City of Fayetteville v. Romine*, 373 Ark. 318, 321 (2008); *Robinson v. Huskins*, 2014 WL 7184013, *3 (W.D. Ark. Dec. 16, 2014); *Braden v. Mountain Home Sch. Dist.*, 903 F. Supp. 2d 729, 739 (W.D. Ark. 2012) ("A public official is subject to suit for the commission of an intentional tort.") (citations omitted); *Trammell v. Wright*, 2016 Ark. 147, *5 (2016) ("This court has consistently held that section 21-9-301 provides city employees with immunity from civil liability for negligent acts, but not for intentional acts.").

In the face of overwhelming case law against them, the County Defendants resort to blatantly misstating Arkansas law.  For example, the County Defendants misrepresent that in *Autry v. Lawrence*, 286 Ark. 501 (1985), the Arkansas Supreme Court applied the statutory immunity to "the tort of malicious prosecution."  (Mot. at 4.)  But *Autry* did not involve an intentional tort at all.  Rather, the case involved "the duty of a police officer who routinely, and as required by his job, reports evidence to a prosecutor in doubtful cases to get a professional opinion on whether there is probable cause to make an arrest."  *Autry*, 285 Ark. at 503.  And in holding that the police officer was entitled to the statutory immunity, the Arkansas Supreme

Court made it clear that the statutory immunity was only available to "municipal agents and employees for acts of *negligence* committed in their official capacities." *Id.* (emphasis added).

And contrary to the County Defendants' distortion of *Loren D. Buttolph Trust v. Jarnagan*, 302 Ark. 393 (1990), the court there did not hold that a city "was immune from liability under the statute for intentionally refusing to provide water services." (Mot. at 4.) Instead, in *Jarnagan*, the Arkansas Supreme Court affirmed the trial court's finding that the plaintiff failed to establish an intentional tort. *Jarnagan*, 302 Ark. at 394. The County Defendants' sophistry is unavailing. And the County Defendants doubled down in this sophistry in their discussion of *City of Alexander v. Doss*, 102 Ark. App. 232 (2008), which also did not involve an intentional tort. (*See* Mot. at 4.) In *Doss*, the plaintiff claimed that "the City had failed to properly maintain the drainage ditch that resulted in the alleged erosion of Doss's property." *Doss*, 102 Ark. App. at 236. Accordingly, the court found that liability for plaintiff's damages "would have to be based either on negligent maintenance of the ditch or trespass." *Id.* Thus, the alleged trespass in *Doss* was negligent conduct—*not* deliberate or intentional conduct.

*Williams v. Pate*, 2015 Ark. App. 327, *6 (2015) is instructive. There, the court interpreted *Doss* and explained that "the conduct in [*Doss*] was not deliberate, and the alleged trespasser had no knowledge that the property owner regarded it as trespass." The *Williams* court then contrasted *Doss* against a situation involving a deliberate trespass, concluding that a "deliberate, knowing trespass [] bars application of the doctrine of qualified immunity." *Id.* The County Defendants also misrepresent *Harrington v. City of Greenbrier*, 262 Ark. 773 (1978). In deciding defendants' motion for summary judgment, the court affirmed that plaintiff's pleadings and affidavits failed to raise an issue of fact to be submitted to the court or jury, and thus, it never reached the issue of statutory immunity. 262 Ark. at 774. The Arkansas Supreme Court never applied statutory immunity to "the tort of 'deliberate fraud'" as Defendants claim.[2] (Mot. at 4.)

---

[2] *Harrington* suggested that if the plaintiff could state a claim for deceit, the defendant may be entitled to the statutory immunity. 262 Ark. at 774. However, as with *Monk* and *Elliott*, *Harrison* was also decided prior to the Arkansas Supreme Court's holding in *Deitsch* and does not suggest that Arkansas law on the statutory immunity is unclear.

Similarly, in *Monk v. Rogers*, 2021 Ark. App. 148 (2021) and *Elliott v. Morgan*, 2020 Ark. App. 297 (2020), the Arkansas Court of Appeals did not find that the statutory immunity applied to an intentional tort.  (*See* Mot. at 4.)  In *Monk*, the court found that the plaintiff "failed to plead sufficient facts to support the claim of malicious intent."  *Monk*, 2021 Ark. App. 148, *4 ("State officials and employees are afforded statutory immunity from civil liability and from suit for nonmalicious acts made within the course and scope of their employment.").  And in *Elliott*, the appellate court affirmed the trial court's finding that there was no evidence to support the plaintiff's intentional tort claims for defamation and abuse of process, not that the statutory immunity applied to those intentional torts.  2020 Ark. App. 297, *7, *10.  Put simply, the County Defendants are taking cases in which courts grant summary judgment on the *merits* of intentional torts and misrepresenting the holdings of those cases by claiming that the courts granted summary judgment because the public defendants were immune from liability.  Not so.

Finally, while two federal cases cited by the County Defendants alluded that the municipal defendants may be immune from intentional tort claims, both federal cases were decided before the Arkansas Supreme Court's holding in *Deitsch*.  And as this Court has previously explained, *Deitsch* is the case that "expressly foreclose[s]" the argument that section 21-9-301 applies to intentional tort claims.  (*See* Dkt. 62 at 20.)  Thus, while the district court in *Mosier v. Robinson*, 722 F. Supp. 555, 556 (W.D. Ark. 1989) and *Dumond v. Conlee*, 710 F. Supp. 1270, 1273 (E.D. Ark. 1988), stated that the public defendants are entitled to the statutory immunity as to the plaintiff's state law claims, these cases predated *Deitsch*, and thus, cannot overrule the clear holding in *Deitsch* and its progeny that section 21-9-301 does not apply to intentional tort claims.

Indeed, as the Arkansas Supreme Court stated in *Battle*, Arkansas courts "have never interpreted that [statutory] immunity to include intentional torts committed by those officials." 298 Ark. at 245.  To the extent that there was any confusion, as this Court previously recognized, the Arkansas Supreme Court's holding in *Deitsch* in 1992 clarified that the statutory immunity does not apply to intentional tort claims.  (Dkt. 62 at 20.)  As a matter of law, the County

Defendants are not entitled to the statutory immunity under Arkansas law.

### 2. Legislative History Dictates That Statutory Immunity Does Not Apply To Intentional Tort Claims.

Turning a blind eye to the decades of precedent by the Arkansas Supreme Court, the County Defendants next contend that the plain language of section 21-9-301 provides that the statutory immunity should apply to intentional torts as well as negligent torts and that the legislative history supports the County Defendants' novel interpretation.

Arkansas Code section 21-9-301 states:

(a) It is declared to be the public policy of the State of Arkansas that all counties, municipal corporations, school districts, public charter schools, special improvement districts, law enforcement agencies for and certified law enforcement officers employed by a public or private institution of higher education, and all other political subdivisions of the state and any of their boards, commissions, agencies, authorities, or other governing bodies shall be immune from liability and from suit for damages except to the extent that they may be covered by liability insurance.

(b) No tort action shall lie against any such political subdivision because of the acts of its agents and employees.

As an initial matter, this Court squarely rejected the County Defendants' assertion that the plain language of section 21-9-301 provides immunity to intentional torts. (Dkt. 62 at 20.) As this Court previously stated, "interpretations of Arkansas law by the Arkansas Supreme Court are binding" on federal district courts. (*Id.*; s*ee also Kingman v. Dillard's, Inc.*, 643 F.3d 607, 615 (8th Cir. 2011) (in interpreting state law, federal courts are bound by the decisions of the highest state court).) And as detailed above, the Arkansas Supreme Courts have consistently held that the statutory immunity only applies to negligent torts. *See supra*, *Battle*, 298 Ark. at 245; *Waire*, 308 Ark. at 534; *Beaulieu*, 288 Ark. at 399; *Deitsch*, 309 Ark. at 407, *etc.*

The legislative history also does not support the County Defendants' novel interpretation of section 21-9-301. Complaining that the lack of record keeping makes it difficult to construe the legislative intent, the County Defendants contend that section 21-9-301 intended to protect municipalities from "high judgments," and therefore the legislature must have intended the statute to apply to both negligent and intentional torts. (Mot. at 8, citing *Thompson v. Sanford*,

281 Ark. 365, 368 (1984).)  The County Defendants' argument ignores that the statutory purpose is twofold—not just to mitigate exposure from high judgments.  In ruling on the statute's constitutionality, the Arkansas Supreme Court in *Thompson* found that the purpose of section 21-9-301 was not only "to make these government entities bear some responsibility for wrongs to individuals harmed by their negligence, but also to prevent these same entities from exposure to high judgments which would destroy them."  *Thompson*, 281 Ark. at 368; *see also White v. City of Newport*, 326 Ark. 667, 672 (1996) ("the municipal tort immunity statute works in such a way that it makes city governments bear some responsibility . . . but prevents the cities from being exposed to high judgments that would destroy them").

Moreover, the County Defendants ignore that when a statute derogates common law remedies, as section 21-9-301 does, it must be strictly construed.  *See Schotzman v. Berumen*, 363 Ark. 215, 223 (2005); *Texas & P. Ry. Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 437 (1907).  Section 21-9-301 abrogated the remedies available against a municipal or county government at common law.  *White*, 326 Ark. at 671 (statutory immunity abrogated a remedy that existed at common law).  As such, it should be strictly construed not to take away the rights existed at common law.  *Abilene*, 204 U.S. at 437.  Accepting the County Defendants' unprecedented interpretation would mean that a plaintiff could not state a tort claim of any nature against a governmental entity or official, which contravenes the legislative intent.  *See Thompson*, 281 Ark. at 368; *White*, 326 Ark. at 672.

The County Defendants further argue that unlike Arkansas Code § 19-10-305, the immunity statute for state employees, which expressly excludes the immunity for malicious acts or omissions, section 21-9-301 lacks such an exception.  According to the County Defendants, the lack of express exception for malicious acts in section 21-9-301 suggests that the legislature did not intend to limit the scope of section 21-9-301 to only negligent torts.  But in *Smith v. Brt,* the Arkansas Supreme Court held otherwise.  363 Ark. 126, 130 (2003).  In *Brt*, the court stated that "interpretation of section 21-9-301 must begin with the analysis this court has used in interpreting the counterpart qualified immunity statute that applies to state employees codified at

Ark. Code Ann. § 19–10–305." *Id*.  Relying on the counterpart statute for state employees, the court concluded that "section 21-9-305 provides city employees with immunity from civil liability for negligent acts, but not for intentional acts." *Id.*

Indeed, section 21-9-301 was amended multiple times by the legislature, including as recently as April 2021.  If the legislature intended to overturn the Arkansas Supreme Court's interpretation of the statute and extend the statutory immunity to intentional torts, it would have done so.  *See Sawyer v. State*, 327 Ark. 421, 424 (1997) ("The legislature is presumed to be familiar with this court's interpretation of its statutes, and if it disagrees with those interpretations, it can amend the statutes.").  Without the legislative amendment extending the statutory immunity to intentional torts, the Arkansas Supreme Court's interpretation of the statute remains the law and is binding on this Court.

Nevertheless, the County Defendants insist that if this Court were inclined to follow the Arkansas Supreme Court's binding precedent (as it must), then it should decline supplemental jurisdiction of Plaintiffs' remaining state law claims so that the County Defendants can advocate for their novel interpretation of section 21-9-301 in state court.  (Mot. at 11.)

The County Defendants' argument amounts to a motion for reconsideration of their joint motion to dismiss the remaining state claims without prejudice.  (*See* Dkt. 109.)  In their joint motion for dismissal without prejudice, Defendants previously argued that this Court should decline the supplemental jurisdiction over Plaintiffs' state law claims because Plaintiffs' federal claims were dismissed on appeal.  (Dkt. 110.)  This Court declined to do so and found that "retaining jurisdiction would best serve the interests of judicial economy, convenience, and fairness to the litigants."  (Dkt. 118.)  As the County Defendants' repeated arguments do not correct manifest errors of law or present newly discovered evidence, this Court should reject their improper attempt at rehashing the same arguments couched in a motion for summary judgment.  *See Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1988) ("Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence.").

Finally, the County Defendants' argument that both the County and Hoyt do not have liability insurance is a non-sequitur.  (Mot. at 10.)  While section 21-9-301 prevents recovery for damages "except to the extent that they may be covered by liability insurance," the statute does not apply to the claims at issue.  As such, whether the County Defendants have liability insurance is irrelevant.

### 3.    The County Defendants Engaged in Intentional Conduct.

The County Defendants also contend that based on the facts relating to intent, section 21-9-301 should not apply to Plaintiffs' intentional tort claims.  (See Mot. at 5.)  While the County Defendants are correct that the court should look beyond the pleadings to determine whether the alleged conduct is intentional, here, sufficient evidence supports a jury's finding that the County Defendants' conduct was intentional.

Under Arkansas law, "intentional torts involve consequences which the actor believes are substantially certain to follow his actions."  *Baptist Health v. Murphy*, 365 Ark. 115, 123 (2006) (citing *Miller v. Ensco, Inc.*, 286 Ark. 458, 460 (1985)).

Because the evidence supports a finding that the County Defendants acted intentionally, the County Defendants are not entitled to the statutory immunity.

### B. The County Defendants Are Not Entitled to Absolute or Good Faith Immunity at Common Law.

The County Defendants argue that they are entitled to absolute immunity or good faith qualified immunity. (Mot. at 11, 13.)  The County Defendants, again, misrepresent the law.

### 1. The County Defendants Are Not Entitled to Absolute Immunity.

In *Buckley v. Fitzsimmons*, the case upon which the County Defendants rely, the United States Supreme Court recognized that "some officials perform 'special functions' which, because of their similarity to functions that would have been immune when Congress enacted § 1983, deserve absolute protection from damages liability."  509 U.S. 259, 268-269 (1993) (citing *Butz v. Economou*, 438 U.S. 478, 508 (1977)).  The Supreme Court has been "'quite sparing' in recognizing absolute immunity for state actors," *Buckley*, 509 U.S. at 269 (citing *Forrester v. White*, 484 U.S. 219, 224 (1988)), extending absolute immunity to only conduct that is "intimately associated with the judicial process" of legal proceedings.  *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976).  For example, the Supreme Court ruled in *Bradley v. Fisher* that because the function of a judge is so vitally important, and because the very nature of the position is likely to expose judges to suit from aggrieved parties, judges deserve absolute immunity for acts taken within their judicial capacity in order to preserve integrity of the judiciary.  80 U.S. 335, 347 (1872).  The Supreme Court also found that prosecutors were entitled to absolute immunity for certain conduct taken as "advocates for the state" as prosecutorial conduct is "intimately associated with the judicial process."  *Imbler*, 424 U.S. at 431.  In the administrative context, the

Supreme Court identified two "quasi-judicial" roles that are closely akin to the judicial functions protected by absolute immunity: adjudicatory functions and prosecutorial functions. *See Butz*, 438 U.S. at 513. Thus, an administrative official claiming absolute immunity must establish that the challenged conduct was "functionally comparable" to that of a judge or a prosecutor who would normally be entitled to absolute immunity for taking the same actions under the circumstances as alleged. *Id*. at 513. If the administrative official's conduct fails to satisfy the test warranting the extension of absolute immunity to a judge or a prosecutor in similar situations, the official's claim must also fail. *Id*. at 514.

The County Defendants do not—and cannot—claim that their conduct in releasing the Incident Report was "functionally comparable" to that of a judge or a prosecutor. *See id.* at 513. To the contrary, they contend that Plaintiffs' legal theories are "entirely novel." (Mot. at 14.) Under the clear Supreme Court precedents, the County Defendants' claim of absolute immunity is frivolous at best because the conduct at issue was never intimately associated with the judicial process.

### 2.     The County Defendants Are Not Entitled to Good Faith Immunity.

The County Defendants further claim that they are entitled to qualified good faith immunity under common law. The County Defendants' claim that the good faith immunities are "universally available to all public officers" is patently false.

In *Owen v. City of Independence*, the Supreme Court held that "the municipality may not assert the good faith of its officers or agents as a defense to liability." 445 U.S. 622, 638 (1980). Rejecting the County Defendants' claim that the common law immunity predated the statutory immunity "by 75-100 years or more" (Mot. at 13), *Owen* found "no tradition so well grounded in history and reason" that would extend to municipalities "a qualified-immunity based on the good faith of their officers." *Id.* at 650. The Supreme Court in *Owen* also dismissed the concern that "high judgments [] might destroy municipal entities," (*see* Mot. at 14), stating that "[i]t hardly seems unjust to require a municipal defendant which has violated a citizen's [] rights to compensate him for the injury suffered thereby." *Id.* at 654. The Supreme Court stated that if

the municipalities were entitled to a good faith defense, "many victims of municipal malfeasance would be left remediless" and that "the injustice of such a result should not be tolerated." *Id.*

Thus, the County Defendants are not entitled to qualified immunity based on good faith defense at common law. As the Supreme Court stated in *Owen*, extending immunity to the County Defendants who callously released the confidential information about minor sexual abuse victims to the media would create an injustice that should not be tolerated.

### 3. The Court Should Impose Sanctions Because The County Defendants' Argument On Immunity Is Unwarranted By Existing Law And Presented For An Improper Purpose.

As detailed above, the County Defendants' argument on their entitlement to the statutory and absolute/qualified immunity is unwarranted by existing law. Additionally, the County Defendants bring their motion for an improper purpose: causing unnecessary delay. At the April 29, 2021 status conference, counsel for the County Defendants stated that the County Defendants anticipate filing a motion for summary judgment on qualified immunity grounds. Counsel also indicated that if the Court denied said motion, the County Defendants intended to seek an interlocutory appeal under *Behrens v. Pelletier*, 516 U.S. 299 (1996). (April 29, 2021 Status Conference Hearing Transcript at 24:21- 25:23; 32:12-19.). This Court should impose sanctions for the County Defendants' patent misrepresentation of the case law and raising the immunity argument for an improper purpose of causing an unnecessary delay. *See* Fed. R. Civ. P. 11(c)(3).

### C. Washington County is Vicariously Liable.

The County Defendants also advance a novel argument that under subsection (b) of section 21-9-301 providing that "[n]o tort action shall lie against any such political subdivision because of the acts of its agents and employees", the Washington County is not vicariously liable for Defendant Hoyt's tortious conduct. (Mot. at 15.) However, as discussed above, section 21-9-301 as a whole does not apply to intentional tort claims, and no court has held that subsection (b) should apply to intentional tort claims, apart from subsection (a). The County Defendants' interpretation severing subsection (b) from subsection (a) finds no support in Arkansas law. *See Kansas City So. Ry. Co. v. Pledger,* 301 Ark. 564 (1990); *Waire v. Joseph*, 308 Ark. 528,

534 (1992) (All statutes relating to the same subject matter must be construed together).

To the contrary, in *Davis v. Fulton County, Ark.*, the court found that under section 21-9-301, the defendant county may be vicariously liable for the intentional torts committed by its agent "if the agent's tortious conduct is taken in furtherance of the agency, *i.e.*, where the agent is (ostensibly) acting for the benefit of the principal."  884 F. Supp. 1245, 1262-63 (E.D. Ark. 1995) (collecting cases).

Here, Defendant Hoyt was acting as the Washington County's agent in releasing the Incident Report.  Defendant Hoyt was overseeing the Records Department at the Washington County Sheriff's Office at the time of the release.  (ASF, ¶ 10.)  Hoyt authorized the release of the Incident Report in his official capacity as the Major at the Sheriff's Office.  (*Id.*)  Thus, Washington County is vicariously liable for Hoyt's improper release of the Incident Report.

### D.      Triable Issues Of Fact Support Plaintiffs' Intentional Tort Claims.[3]

#### 1.      The Arkansas Court of Appeals' Ruling Is Irrelevant.

As a threshold matter, the County Defendants' reliance on the Arkansas Court of Appeals' ruling in *Duggar v. City of Springdale*, 2020 Ark. App. 200 (2020) is misguided.  In *Duggar*, the Arkansas appellate court affirmed the trial court's dismissal of Josh Duggar's complaint based on the pleadings and found that Duggar failed to state a claim against the City and County Defendants.  2020 Ark. App. 220 (2020).  Unlike Duggar's complaint in state court, which did not allege that the County's release of the record was intentional, this Court already found, and the Eighth Circuit affirmed, that Plaintiffs sufficiently alleged intentional tort claims against Defendants.  (Dkt. 62.)

The Arkansas Court of Appeals' ruling in *Duggar* has no preclusive effect on the instant proceeding.  In determining whether a prior judgment has preclusive effect on the present lawsuit, a federal court must apply the substantive law of the state in which the prior judgment was entered.  *In re Bullard*, 451 B.R. 473, 478 (Bankr. E.D. Ark.), aff'd, 449 B.R. 379 (8th Cir.

___

[3] Throughout their Motion, the County Defendants repeatedly overstate the intent that Plaintiffs must establish to prevail on these claims.  This misdirection is telling, but unavailing.  Plaintiffs' discussion of their claims below contains the correct statement of the law.

2011).  "In Arkansas, a party asserting the doctrine of collateral estoppel must prove four elements: (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been litigated in the prior action; (3) the issue must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgment."  *Id.*  The County Defendants fail to prove all four elements.[4]  The issue decided in *Duggar*—whether the complaint stated sufficient facts to allege claims for tort of outrage and invasion of privacy are not before this Court.  The issue here is whether the County Defendants met their burden to show that no genuine dispute of fact exists as to Plaintiffs' claims.  And, as further explained below, factual issues exist whether the County Defendants are liable for Plaintiffs' intentional tort claims, all of which must be decided by a jury.

### 2. Evidence Supports That County Defendants Invaded Plaintiffs' Privacy by Intruding Upon Plaintiffs' Seclusion.

The tort of invasion of privacy—intrusion upon seclusion "consists of three parts: (1) an intrusion; (2) that is highly offensive; (3) into some matter in which a person has a legitimate expectation of privacy."  *Wal-Mart Stores, Inc. v. Lee*, 348 Ark. 707, 721 (2002).

The County Defendants do not contend that their intrusion was not highly offensive.  But the County Defendants attempt to confuse the issue by claiming that Hoyt did not intentionally violate the law by releasing the Incident Report, and therefore Plaintiffs cannot prove an intentional intrusion upon Plaintiffs' seclusion.  (Mot. at 17.)  This is a red herring, as the relevant inquiry is not whether Hoyt intentionally violated or misinterpreted the law.  Instead, what matters is whether Hoyt, in releasing the Incident Report, believed or was substantially certain that he lacked the legal authority or permission to do so.  *See Lee*, 348 Ark. at 720 ("An intrusion occurs when an actor believes, or is substantially certain, that he lacks the necessary legal or personal permission to commit the intrusive act.") (citations omitted); *see also* Ark. Model Jury Instr., Civil AMI 420 (intrusion occurs when defendant "believed or was

_____

[4] To the extent that the County Defendants argue that summary judgment should be granted based on the pleadings, (Mot. at 16, 17), Plaintiffs incorporate herein by reference their opposition to Defendants' joint motion for judgment on the pleadings in entirety.  (*See* Dkt. 148.)

substantially certain that [he][she] lacked the necessary legal authority or personal permission, invitation, or valid consent to commit the intrusive act").



The County Defendants also callously contend that Plaintiffs had no expectation of privacy about the disclosed matters because they were featured in a reality show.  (*See* Mot. at 19.)  Whether Plaintiffs conducted themselves "in a manner consistent with an actual expectation of privacy" is a question of fact.  *See Lee*, 348 Ark. at 727.  The fact that Plaintiffs appeared in a reality television show does not lead to the conclusion that as a matter of law, Plaintiffs had no legitimate expectation of privacy about the highly-personal and sensitive information contained

in the Incident Report.

In Arkansas, "[a] person's visibility to some does not necessarily strip him of the right to remain secluded from others." *Coombs v. J.B. Hunt Transport, Inc.*, 2012 Ark. App. 24, *5 (2012). An intrusion into a person's seclusion therefore occurs when a conduct violates not only "a person's emotional sanctum" but also "the notions of civility and personal dignity." *Id.* There is ample evidence supporting a finding that Plaintiffs expected the matters contained in the Incident Report to be private and conducted themselves in a manner consistent with their expectation of privacy. █████████████████████████████████████████████████████ █████████████████████████████████████████████████████ ████████████████████████ In fact, the very reason the media sought the Incident Report was because what happened to Plaintiffs was *not* publicly known. (*See id.*) A jury could find that by disclosing the graphic details of Plaintiffs' molestations, which were shared with the law enforcement under the promise of confidentiality, the County Defendants violated Plaintiffs' emotional sanctum and dignity.

Finally, common sense defies the County Defendants' contention that Plaintiffs did not sustain damage as a result of their improper disclosure. (Mot. at 19, 20.) The public disclosure of intimate details about minor victims' sexual molestation against their will would cause severe mental damage to anyone. It does not take an expert to determine that the County Defendants' unauthorized release of the Incident Report damaged Plaintiffs' personal dignity and is still traumatizing them (although both Plaintiffs' and Defendants experts have opined just that). (*See* ASF, ¶¶ 53-55.) Because triable issues of fact permeate Plaintiffs' claim for invasion of privacy—intrusion upon seclusion, the motion for summary judgment must be denied.

### 3. Evidence Supports That County Defendants Publicly Disclosed Private Facts.

To prevail on an invasion of privacy—public disclosure of private facts claim, a plaintiff must show that the defendant publicized a matter which is "of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." *In re Dunbar*, 446 B.R. 306, 314 (Bankr. E.D. Ark. 2011).

The County Defendants do not dispute that the information contained in the Incident Report was not of legitimate concern to the public or its disclosure was highly offensive. And, the County Defendants' assertion that they did not know the Incident Report would be published by the media, and therefore they did not intend to publicize a private fact, is controverted by Defendant Hoyt's testimony. (Mot. at 22.)



*See* Ark. Model Jury Instr., Civil AMI 422 ("'public disclosure' means communicating to the public at large or to so many persons that the matter is substantially certain to become one of public knowledge.").

Notwithstanding that the Incident Report was kept confidential even within the Washington County Sheriff's Office (*see id.*, ¶ 34), the County Defendants also contend that the

22

disclosed fact was not private because the "core facts at issue in this case were widely known." (Mot. at 21.)  This watered-down characterization of the facts ignores that the disclosure revealed the graphic details about the sexual abuse, including the identities of the minor victims.  (ASF, ¶ 48.)



The County Defendants also argue that the details contained in the Incident Report were already disclosed to the media by the City Defendants, and therefore, the County Defendants' release did not disclose anything unknown to the public.  (Mot. at 22.)  However, whether the Incident Report revealed additional information to the media that were not disclosed by the City's Offense Report is a question for a jury.  The fact that the City Defendants released the Incident Report first does not, as a matter of law, preclude a finding that the County Defendants publicly disclosed private facts that were documented in the Incident Report.  These significant issues of material fact preclude the motion for summary judgment on Plaintiffs' claim for invasion of privacy—public disclosure of private facts.

### 4.    Issues Of Material Fact Support Plaintiffs' Claim For The Tort Of Outrage.

To prevail on a tort of outrage claim, a plaintiff must prove: (1) the actor intended to

23

inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was "extreme and outrageous," was "beyond all possible bounds of decency," and was "utterly intolerable in a civilized community"; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it. *Crockett v. Essex*, 341 Ark. 558, 563 (2000).

The County Defendants try to brush this claim aside, contending that they did not intend to inflict emotional distress upon Plaintiffs whom they never met. (Mot. at 23.) But intent for the tort of outrage can be inferred when a defendant "knows or should know in light of surrounding circumstances that his actions will naturally and probably result in emotional distress." *Travelers Ins. Co. v. Smith*, 338 Ark. 81, 89 (1999); s*ee also* Ark. Model Jury Instr., Civil AMI 404 (intent element is met if the person "knows or should know in the light of surrounding circumstances that his conduct will naturally and probably result in emotional distress and continues such conduct in reckless disregard of the consequences.").

The evidence supports a finding that in light of the surrounding circumstances, the County Defendants knew or should have known that their release of the Incident Report would cause emotional distress to Plaintiffs. As a matter of common sense, the disclosure of lurid details surrounding one's sexual abuse would cause severe emotional distress to anyone.

Under these circumstances, a jury could find that the County Defendants knew or should have known that their release of the Incident Report would cause emotional

distress to Plaintiffs who were the minor victims of incestuous sexual abuse.

This case is textbook tort of outrage. The public disclosure of the intimate details of the minor victims' sexual molestation, which were only provided to the authorities under the promise of confidentiality, amounts to conduct that goes beyond all possible bounds of decency. *Hamaker v. Ivy*, 51 F.3d 108, 110 (8th Cir. 1995) (tort of outrage involves "conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society") (citations omitted). Here, the jury could readily conclude that the improper disclosure amounted to an utterly atrocious, outrageous conduct that should not be tolerated in a civilized society.

The evidence also supports a finding that Plaintiffs sustained the type of emotional distress "so severe that no reasonable person could be expected to endure it." *Coombs*, 2012 Ark. App. at 10. The disclosure of intimate details about one's sexual abuse would be intolerably humiliating to anyone. A reasonable jury could find that as a result of the County Defendants' disclosure, Plaintiffs sustained emotional distress that no reasonable person could be expected to endure. Because these factual issues remain, a jury must hear Plaintiffs' claim for the tort of outrage.

## V.  CONCLUSION

Construing all facts in Plaintiffs' favor, there is more than sufficient evidence from which a jury could find for Plaintiffs on each of their claims. The Court should deny the County Defendants' motion for summary judgment.

Respectfully submitted,


By: */s/ Steven E. Bledsoe*
    Stephen G. Larson (admitted *pro hac vice*)
    *slarson@larsonllp.com*
    Steven E. Bledsoe (admitted *pro hac vice*)
    *sbledsoe@larsonllp.com*
    Jen C. Won (admitted *pro hac vice*)
    *jwon@larsonllp.com*
    **LARSON LLP**
    555 South Flower Street, Suite 4400
    Los Angeles, California 90071
    Telephone: (213) 436-4888
    Facsimile: (213) 623-2000

    Shawn B. Daniels (Ark. Bar No. 99126)
    *shawn@danielsfirm.com*
    DANIELS FIRM
    129 W. Sunbridge Drive
    Fayetteville, AR 72703
    Telephone: (479) 521-7000
    Facsimile: (479) 437-2007

    Attorneys for Plaintiffs JILL DILLARD, JESSA
    SEEWALD, JINGER VUOLO, and JOY
    DUGGAR