IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JILL DILLARD, et al.,                          Case No.: 5:17-CV-05089-TLB

          Plaintiffs,


CITY OF SPRINGDALE, et al.

          Defendant.

_____

**PLAINTIFFS' OPPOSITION TO SPRINGDALE DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ..................................................................................................1

II.    FACTUAL BACKGROUND .................................................................................3

    A.     Investigation into Plaintiffs' Sexual Assault................................................3

    B.     Tabloid Publication of the City Defendants' "Redacted" Incident Report.............3

    C.     Public Backlash After the Release of the Offense Report .................................5

III.   LEGAL STANDARD ............................................................................................6

IV.    ARGUMENT ........................................................................................................6

    A.     The Evidence Supports a Finding That the City Defendants Intruded Upon
       Plaintiffs' Privacy. ..................................................................................6

        1.     The City Defendants' Action Was An Intrusion.........................................7

        2.     The Intrusion Was Highly Offensive to Any Reasonable Person...............8

        3.     The Evidence Supports That The City Defendants Believed Or
            Were Substantially Certain That They Did Not Have The Legal
            Authority To Release The Offense Report. .....................................9

        4.     Plaintiffs Had a Legitimate Expectation of Privacy in The Details
            Concerning Their Sexual Abuse. ..................................................11

    B.     The Evidence Supports a Finding That The City Defendants Publicly
       Disclosed Private Facts. .........................................................................12

        1.     Material Issues of Fact Support a Finding That the City Defendants
            Publicly Disclosed Private Facts About Plaintiffs. ...................................13

        2.     Undisputed Facts Support A Finding That The City Defendants
            Believed Or Were Substantially Certain That They Were Publicly
            Disclosing A Private Information. ...............................................15

        3.     The Public Did Not Have a Legitimate Concern In The Sensitive
            Details Contained In The Offense Report.................................16

    C.     Material Issues Of Fact Support Plaintiffs' Claim For The Tort Of
       Outrage................................................................................................18

        1.     Evidence Shows That the City Defendants Knew or Should Have
            Known That The Release of The Offense Report Would Inflict
            Emotional Distress Upon Plaintiffs. ...........................................18

        2.     The City Defendants' Conduct Was Extreme And Outrageous. ..............19

        3.     Plaintiffs Suffered Emotional Distress That No One Could Be
            Expected To Endure.................................................................20

    D.     The City Defendants' Contention That They Complied With The FOIA
       Does Not Preclude A Finding That As A Matter Of Law, The City

i

Defendants Engaged In Intentional Torts Aimed at Plaintiffs..............................21

E.      The Arkansas Appellate Court's Finding in *Duggar* is Irrelevant........................22

F.      The City Defendants Are Not Entitled To Immunity. ...........................................22

V.      CONCLUSION...................................................................................................................22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Addington v. Wal-Mart Stores, Inc.*,
    81 Ark. App. 441 (2003) ............................................................................................13, 16

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ......................................................................................................11

*Ark. Gazette Co. v. Goodwin*,
    304 Ark. 204 (1990) ......................................................................................................27

*Baptist Health v. Murphy*,
    365 Ark. 115 (2006) ................................................................................................20, 26

*Bartnicki v. Vopper*,
    532 U.S. 514 (2001) ......................................................................................................23

*Coombs v. J.B. Hunt Transp., Inc.*,
    2012 Ark. App. 24 (2012) ....................................................................................... *passim*

*Crockett v. Essex*,
    341 Ark. 558 (2000) ......................................................................................................23

*Duggar v. City of Springdale*,
    2020 Ark. App. 220 (2020) ............................................................................................27

*In re Dunbar*,
    446 B.R. 306 (E.D. Ark. Bkr. 2011) ..............................................................................13, 17

*Fast v. Southern Union Co., Inc.*,
    149 F.3d 885 (8th Cir. 1998) ........................................................................................11

*Fletcher v. Price Chopper Foods of Trumann, Inc.*,
    220 F.3d 871 (8th Cir. 2000) ......................................................................11, 13, 14, 16

*Hamaker v. Ivy*,
    51 F.3d 108 (8th Cir. 1995) ..........................................................................................24

*Hopkins v. City of Brinkley*,
    2014 Ark. 139 (2014) ....................................................................................................23

*Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ......................................................................................................11

*McCambridge v. City of Little Rock*,
   298 Ark. 219 (1989)..................................................................................23

*Michaels v. Internet Entertainment Grp., Inc.*,
   5 F. Supp. 2d 823 (C.D. Cal. 1998) ...........................................................22

*Peter v. Wedl*,
   155 F.3d 992 (8th Cir. 1998) .....................................................................11

*Time, Inc. v. Firestone*,
   424 U.S. 448 (1976)...................................................................................22

*U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*,
   489 U.S. 749 (1989)...................................................................................26

*Wal-Mart Stores, Inc. v. Lee*,
   348 Ark. 707 (2002)............................................................................14, 16

*Williams v. Am. Broad. Cos., Inc.*,
   96 F.R.D. 658 (W.D. Ark. 1983) ...............................................................12

*Young v. Rice*,
   308 Ark. 593 (1992)...................................................................................27

**Statutes**

Ark. Code Ann. § 9-27-09 ..................................................................................17

Ark. Code Ann. § 9-27-309 ................................................................................22

Ark. Code Ann. § 9-27-309 ..........................................................................22, 24

Ark. Code Ann. §§ 16-90-1104 ....................................................................10, 15

Ark. Code Ann. §§ 16-90-1104(b), 12-18-101 *et seq.*....................................22

Freedom of Information Act ................................................................................6

**Other Authorities**

Abby Ohlheiser, *Josh Duggar molested four of his sisters and a babysitter,
   parents tell Fox News*, WASHINGTON POST, June 4, 2015 ........................25

I.      **INTRODUCTION**

This case stems from Defendants' unauthorized release of confidential records containing the intimate details concerning sexual molestation that Plaintiffs suffered at the hands of their older brother when they were minor children.  Defendants' disclosure led to *In Touch Weekly* featuring the confidential information about Plaintiffs' sexual abuse in a magazine article that reached millions.  Unsurprisingly, unwarranted, outrageous public shaming and embarrassment ensued, which continues to haunt Plaintiffs to this day.

Material issues of fact exist regarding Plaintiffs' tort claims, all of which must be decided by a jury.  The following facts are undisputed:

- prior to the release of the Offense Report, the City Defendants were aware of an article about Josh Duggar's alleged molestation of an unidentified family member and knew that they were releasing the Offense Report to the media;

- the City Defendants knew that the Offense Report contained detailed information about the sexual abuse of minor children;

- the City Defendants knew that the redacted Offense Report identified the names of the victims' parents ("James Robert Duggar" and "Michelle Annette Duggar"), identified Josh as the perpetrator, identified four of Josh's sisters as the victims, contained identifying information about the four victims, and contained the specific graphic details of the molestations;

- prior to the release of the Offense Report, the City Defendants did not obtain court approval or wait for an opinion from the Arkansas Municipal League or for an opinion from the Department of Human Services on whether the Offense Report could be released;

- the City Defendants did not ask for an extension of time to respond to a Freedom of Information Act ("FOIA") request seeking the release of the Offense Report, but instead rushed to release it late at night, far past business hours;

- the City Defendants did not check whether Family In Need Services ("FINS") was involved in connection with the sexual abuse documented in the Offense Report, despite knowing that the Offense Report involved minor children and the Offense Report stating that the matter was referred to FINS;

- the City Defendants did not redact the parents' names, Plaintiffs' address, or other identifying information from the Offense Report, allowing readers to identify Plaintiffs as the victims of sexual abuse and their brother as the perpetrator; and

- the City Defendants performed no analysis to determine whether a reader of the redacted Offense Report could determine the identity of the victims of the sexual abuse.

Despite all of this, the City Defendants argue that there are no facts—even when construed in the light most favorable to Plaintiffs—that would support Plaintiffs' claims for invasion of privacy and tort of outrage. But this argument ignores both the facts and law. Start with Plaintiffs' first invasion of privacy claim for intrusion upon seclusion. There is a triable issue as to whether Mr. Cate and Ms. O'Kelley believed or were substantially certain they lacked the authority to release the Offense Report. If anything, the City Defendants' misrepresentation of what Plaintiffs must show—they incorrectly contend that Plaintiffs must establish that they intended to violate the law—confirms as much. Next consider Plaintiffs' second invasion of privacy claim for public disclosure of private facts. Despite knowing that once released, the Offense Report would make the lurid details of Plaintiffs' sexual assaults public, the City Defendants rushed to release the Offense Report, which, along with other facts detailed below, creates a triable issue on the public disclosure aspect of this claim. Nor is there any question Plaintiffs create a triable issue on the private facts part of this claim, as the shoddy redactions in the Offense Report left significant identifying private information available for the world to see for the first time. Finally, take Plaintiffs' outrage claim. Again, the City Defendants overstate the requisite intent. Contrary to their assertion, all Plaintiffs must show is that they knew or should have known that their conduct would naturally and probably result in emotional distress. And this issue is for a jury, too.

Simply put, the City Defendants ask the Court to outright ignore, if not excuse, their crass and unacceptable actions aimed at Plaintiffs who are minor victims of incestuous sexual abuse. The City Defendants' cynicism and callousness should not be rewarded. This case must be sent to a jury, and the City Defendants' motion must be denied.

## II.    FACTUAL BACKGROUND[1]

### A.    Investigation into Plaintiffs' Sexual Assault

Plaintiffs are sisters who were sexually assaulted by their older brother when they were minor children.  In December 2006, the Springdale Police Department received a tip from an anonymous source that Plaintiffs and one other female had been sexually assaulted on several occasions in 2002 and 2003 by Plaintiffs' brother, Josh Duggar.  (Plaintiffs' Additional Statement of Material Fact ("ASF") ¶ 2.)  As a result, the Springdale Police Department initiated an investigation, and police investigators interviewed Plaintiffs and their siblings, who were minors at the time of the interviews as well as their parents and Josh.  (*Id.* ¶¶ 1, 3.)  Plaintiffs and their parents were promised that their statements, taken at the Children's Safety Center in Washington County, Arkansas, would remain confidential and not be disclosed to the public.  (*Id.* ¶ 3.)  These interviews sought individually-identifying personal information, and intimate and specific details of the alleged sexual molestations.  (*Id.* ¶ 4.)  These extensive interviews were detailed in the official Offense Report maintained by the City of Springdale, then-police chief Kathy O'Kelley and city attorney Earnest Cate (collectively, the "City Defendants"), and an Incident Report maintained by the County of Washington and Rick Hoyt, then-major at the County Sheriff's Office (collectively, the "County Defendants").  (*Id.*)  Following the interviews, the Springdale Police Department, by and through Detective Hignite, filled out a FINS affidavit and faxed it to the Washington County FINS office for a FINS case to be opened.  (*Id.* ¶ 5.)  The FINS affidavit was also forwarded to the Washington County prosecutor's office.  (*Id.*)

### B.    Tabloid Publication of the City Defendants' "Redacted" Incident Report

Nearly ten years later, on May 15, 2015, the Washington County and the City of Springdale received a FOIA request from a law firm representing In Touch magazine.  (*Id.* ¶ 6.)  The request made by lawyer Abtin Mehdizadegan sought all files related to or mentioning Josh, Plaintiffs' parents, and any of the addresses purportedly related to their family, including the

---

[1] For sake of brevity, Plaintiffs incorporate herein by reference the procedural history set forth in their opposition to the County Defendants' motion for summary judgment.  (Dkt. 149.)

Incident Report filed by Detective Hignite.  (*Id.* ¶ 7.)  A few days later, on May 19, 2015, In Touch posted an article on the *In Touch Weekly* website titled, "19 Kids and Counting' Son Named in Underage Sex Probe."  (*Id.* ¶ 11.)  The website also included a promotion for sales of the hardcopy version for "the latest inside Josh Duggar's shocking past, pick up the new issue of *In Touch Weekly*, on newsstands tomorrow!"  (*Id.* ¶ 12.)  Access Hollywood, another tabloid, sent an email to the City of Springdale Police Department the same day, informing them that the story about Josh would be published the next day.  (*Id.* ¶ 13.)  Access Hollywood's email was forwarded to Defendant O'Kelley.  (*Id.* ¶ 14.)  The tip from Access Hollywood led the Springdale Police Department to suspect that there was a "leak," which led to an internal investigation about how the information about Josh became known to the media.  (*Id.* ¶ 14.)

The next day, on May 20, 2015, the City Defendants rushed the release of the Offense Report in response to the FOIA request, releasing it late at night.  (*Id.* ¶¶ 17-31.)  Even though an Arkansas statute prohibited that all records relating to a FINS case be kept private, the City Defendants did not check whether a FINS case was filed in connection with the Offense Report. Fully armed with the information that the Offense Report would be published by the media, the City Defendants did not wait for an opinion from the Arkansas Municipal League or the Department of Human Services to make sure their disclosure complied with the applicable law. (*Id.* ¶¶ 19-21, 25, 27-28.)  Even before the City Defendants sought any external advice about the disclosure, Defendant O'Kelley was preparing to release the Offense Report.  (*Id.* ¶ 15.)  Indeed, Defendant O'Kelley sent the partially-redacted Offense Report to Mehdizadegan and a local news organization around 9 p.m., a few minutes before Defendant Cate, a City Attorney, approved the public distribution of the redacted Offense Report, without any analysis to determine whether a reader of the redacted Offense Report could determine the identity of the victims of the sexual abuse.  (*Id.* ¶¶ 25-26.)  Plaintiffs' parents' names and their address were not redacted from the Offense Report.  (*Id.* ¶ 24.)  After informing Jim Bob Duggar, Plaintiffs' father, that the City was preparing to release the Offense Report, Defendant O'Kelley's late-night release made sure that the Duggars could not get a court order to stop the release.  Indeed,

by the time Mr. Duggar got a court order the next day preventing the release of the Offense Report, it had already been sent to the media.

The morning after the City Defendants emailed the redacted Offense Report to Mehdizadegan and a local news organization, the Arkansas Municipal League informed Defendant O'Kelley that the City Defendants' redactions were insufficient and that the release of the Offense Report likely violated the Arkansas statute prohibiting disclosure of the identity of sex crime victims.  (*Id.* ¶¶ 27-28.)  Defendant O'Kelley emailed Mehdizadegan, asking that In Touch magazine not use the previously released Offense Report, but he did not comply.  (*Id.* ¶¶ 29-30.)  On May 21, 2015, In Touch magazine published the redacted Offense Report, which contained the specific, graphic details of Plaintiffs' sexual molestations and sufficient information for readers to identify Plaintiffs as the victims.  (*Id.* ¶ 35.)

C.   **Public Backlash After the Release of the Offense Report**

On the same day, Judge Zimmerman, a juvenile court judge for the Circuit Court of Washington County, Arkansas ruled that the City's Offense Report should be destroyed in order to protect the identity of the victims, one of whom was still a minor.  (*Id.* ¶ 44.)  Judge Zimmerman pointed specifically to Arkansas Code Annotated section 16-90-1104's prohibition against law enforcement disclosure of information "directly or indirectly identifying the victim of a sex [crime]."  (*Id.*)

Plaintiffs, who featured in a reality television show called *19 Kids and Counting*, were almost immediately subjected to perverse abuse and harassment from the public following the release of the redacted Offense and Incident Reports.  (*Id.* ¶ 53.)  The release of intimate details about their incestuous sexual abuse and resulting public backlash have harmed Plaintiffs in a profound way mentally and emotionally.  (*See id.* ¶¶ 54-58.)  Plaintiffs received an enormous volume of hateful and hurtful comments on their social media accounts and had to block certain words or phrases from the comment section of their accounts so that they did not have to encounter daily taunts from the public regarding their identities as sexual assault victims of their brother.  (*Id.* ¶ 54.)  Because of the overwhelming media attention and paparazzi that became

aimed at Plaintiffs, Plaintiffs had to avoid public outings and leave their hometown to an undisclosed location out of Arkansas for almost a year.  (*Id.* ¶ 57.)  And despite all efforts to mitigate the harm, Defendants' improper release continues to taunting and hurtful scorn towards Plaintiffs until this day.  (*Id.* ¶ 54.)

### III.   LEGAL STANDARD

Summary judgment is only proper when the record shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *Fast v. Southern Union Co., Inc.*, 149 F.3d 885, 889 (8th Cir. 1998).  "At the summary judgment stage, the court should not weigh the evidence, make credibility determinations, or attempt to determine the truth of the matter.  Rather, the court's function is to determine whether a dispute about material fact is genuine."  *Peter v. Wedl*, 155 F.3d 992, 996 (8th Cir. 1998) (quoting *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996)).  A genuine issue of material fact exists if: "(1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party."  *Peter*, 155 F.3d at 996  (quoting *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995)).  All factual inferences must be resolved in favor of the non-movant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Before finding that no genuine issue for trial exists, the court must first be satisfied that no reasonable trier of fact could find for the non-movant.  *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### IV.   ARGUMENT

#### A.   The Evidence Supports a Finding That the City Defendants Intruded Upon Plaintiffs' Privacy.[2]

To prevail on an invasion of privacy—intrusion upon seclusion, a plaintiff must prove: "(1) an intrusion (2) that is highly offensive (3) into some matter in which a person has a legitimate expectation of privacy."  *Fletcher v. Price Chopper Foods of Trumann, Inc.*, 220 F.3d

---

[2] Throughout their Motion, the City Defendants repeatedly overstate the intent that Plaintiffs must establish on their three remaining tort claims.  This misdirection is telling but unavailing. Plaintiffs' discussion of their claims below contains the correct statement of the law.

871, 875-76 (8th Cir. 2000) (citing *Williams v. Am. Broad. Cos., Inc.*, 96 F.R.D. 658, 669 (W.D. Ark. 1983)).  Material issues of fact exist for all three elements, which precludes summary judgment on this claim.

1.    The City Defendants' Action Was An Intrusion.

The City Defendants ask the Court to adopt an extremely narrow view that an intrusion for this tort only has three categories: the physical intrusion, the sensory intrusion, and other investigative intrusion, such as prying or spying.  (Mot. at 7.)  But that is not the law.  Under Arkansas law, "[a]n intrusion may occur physically *or otherwise*."  *Coombs v. J.B. Hunt Transp., Inc.*, 2012 Ark. App. 24, *5 (2012) (citing Arkansas Model Jury Instructions; Civil 420) (emphasis added); *see also Williams*, 96 F.R.D. at 669 ("This tort requires actions on the defendant's part in the nature of prying or intrusion which is offensive or objectionable to a reasonable person.").  In *Coombs*, the appellate court reversed the trial court's order granting summary judgment on the plaintiff's intrusion upon seclusion claim, stating that "protection is afforded not just for the physical realm but for a person's emotional sanctum and to safeguard the notions of civility and personal dignity."  *Id.*  The *Coombs* court found that a factual issue existed on the plaintiff's intrusion upon seclusion claim when the defendants encroached upon the plaintiff's "personal dignity" while the plaintiff was intoxicated in his shared hotel room by inviting others to look at him in his debilitated state and subjecting him to ridicule.  *Id.* at *6.  Importantly, and contrary to the City Defendants' cramped reading, this finding was not limited to a physical, sensory, or investigatory intrusion.  *See id.* at *5 (citing *Sanders v. Am. Broadcasting Cos.*, 20 Cal. 4th 907, 909 (1999)).

The evidence supports a finding that the City Defendants intruded upon Plaintiffs' seclusion by violating Plaintiffs' "emotional sanctum" and "notions of civility and personal dignity."  *See id.*, at *5.  As a matter of common sense, revealing garish details about one's sexual abuse as a minor, which were obtained under the promise of confidentiality, violates a person's emotional sanctum and the notions of personal dignity.  The cases cited in the motion do not preclude a finding that the City Defendants, in releasing the intimate details about

7

Plaintiffs' sexual abuse to the media, intruded upon Plaintiffs' emotional sanctum and personal dignity.  (*See* Mot. at 8, 9.)  For example, the City Defendants did not merely "disclose private information" as the defendant in *Dunbar* who failed to redact the plaintiff's date of birth and health information in its proof of claim filed with the bankruptcy court.  *In re Dunbar*, 446 B.R. 306, 308 (E.D. Ark. Bkr. 2011).  To the contrary, the City Defendants released the confidential Offense Report without sufficient redactions to protect Plaintiffs' personal identifying information.  (ASF, ¶ 3.)  Worse yet, the City Defendants rushed the release before the court or other legal authorities could stop the release, knowing that the media would publish it.  (*Id.* ¶¶ 11-15, 25, 35, 44.)  *See In re Dunbar*, 446 B.R. at 313-14 (unreasonable intrusion upon seclusion requires "a specific intrusive action as opposed to disclosing private information"); *see also Fletcher*, 220 F.3d at 876 (a jury could find defendant's conduct intrusive when defendant misrepresented to a nurse to obtain a confidential medical information about plaintiff).  Construing all facts in favor of Plaintiffs, a jury could find that the City Defendants took a specific intrusive action against Plaintiffs.

2.   <u>The Intrusion Was Highly Offensive to Any Reasonable Person.</u>

The City Defendants next argue that because Plaintiffs cannot prove that the City Defendants' conduct was intrusive, they cannot prove that the intrusion was highly offensive to a reasonable person.  (Mot. at 12.)  This argument has no merit.  As stated above, Arkansas law has defined "intrusion" for purposes of this tort as a conduct that violates an "emotional sanctum" and "notions of civility and personal dignity."  *Coombs*, 2012 Ark. App. 24, *5.

A jury could find that the release of sensitive, lurid details of sexual abuse that was obtained from minor children under the promise of confidentiality is highly offensive to any reasonable person.  It does not take an expert to determine that an unauthorized disclosure of graphic details concerning one's sexual abuse would be highly offensive to anyone.  Moreover, Arkansas courts have upheld far less intrusive conduct to be "highly offensive."  *See, e.g.*, *Addington v. Wal-Mart Stores, Inc.*, 81 Ark. App. 441, 456 (2003) (reversing order granting summary judgment and finding that factual issues exist on whether search of employee's home

for stolen goods constituted intrusion upon seclusion); *Wal-Mart Stores, Inc. v. Lee*, 348 Ark. 707, 724-25 (2002) (substantial evidence supported a jury's finding that employer's search of stolen goods at employee's home constituted intrusion upon seclusion); *Coombs*, 2012 Ark. App. 24, *5 (subjecting a person to ridicule while he was intoxicated in a shared hotel room was highly offensive).  The City Defendants failed to establish that in construing all facts in Plaintiffs' favor, there is no genuine dispute that the City Defendants' intrusion was highly offensive to any reasonable person.  Common sense and Arkansas law dictate otherwise.

    3.    <u>The Evidence Supports That The City Defendants Believed Or Were Substantially Certain That They Did Not Have The Legal Authority To Release The Offense Report.</u>

An intrusion occurs when an actor "believes, or is substantially certain, that he lacks the necessary legal or personal permission to commit the intrusive act."  *Fletcher*, 220 F.3d at 876 (citing *O'Donnell v. United States*, 891 F.2d 1079, 1083 (3d Cir. 1989)).  The City Defendants' claim that they sought the opinions of another Springdale City Attorney and the law enforcement does not preclude a finding that they believed or were substantially certain that they lacked the legal authority to release the Offense Report.  (Mot. at 10.)  Even assuming that the City Defendants relied on legal counsel's opinions in releasing the Offense Report, nothing in Arkansas law suggests that advice of counsel provides a defense to this tort.  Based on the undisputed facts, a jury could find that the City Defendants rushed the release of the Offense Report because they believed that they did not have the legal authority to do so.

It is undisputed that the City Defendants rushed the release of the Offense Report late at night without waiting for an opinion from the Arkansas Municipal League and without hearing from the Department of Human Services.  (ASF, ¶¶ 19-21, 25, 27-28.)  In fact, when the City Defendants asked Mark Hayes, Director of Legal Services at the Arkansas Municipal League, whether the Offense Report may be released, Hayes responded that he needed to look into the issue more and did not approve the release.  (*Id.* ¶¶ 19-20.)  The City Defendants readily admit that prior to the release, they could not get in touch with anyone at the Department of Human

Services who oversees child protection programs.  (*Id.* ¶ 21.)  The City Defendants also admit that they knew that the Offense Report involved the minor perpetrator and victims, but they did not check whether a FINS case was opened in connection with the Offense Report, despite one being referred to in the Offense Report and despite that Arkansas law prohibits disclosure of all records relating to a FINS case.  (*Id.* ¶¶ 1, 5, 21.)  Moreover, the City Defendants admit that when they sought the opinions from other City Attorney or the law enforcement, they framed the issue as why they should not release the Offense Report, not whether the law allowed them to disclose the Offense Report.  (*Id.* ¶ 22.)  Nor did the City Defendants seek a court order on their plan to release the Offense Report.  (*Id.* ¶ 21.)  In fact, the City Defendants represented to Jim Bob Duggar that the report had not yet been released, when it in fact had been.  (*Id.* ¶ 33.)

Indeed, the morning after the City Defendants rushed to release the Offense Report, the Arkansas Municipal League sent an email to the City Defendants informing them that the release of the Offense Report violated Arkansas Code § 16-90-1104, which prohibits the law enforcement from disclosing the identity of sex crime victims.  (*Id.* ¶¶ 27-28.)  While Defendant Cate claims that he reviewed various statutes to confirm that the law permitted the release of the Offense Report, a citizen complaint submitted to the City after the release reveals that by simple Google search, the City Defendants could have learned that Arkansas law prohibited the disclosure of information contained in the Offense Report.  (*Id.* ¶ 52.)  After the release, a reporter also sent an email to the City asking how In Touch magazine obtained a copy of the Offense Report, stating that when she sought a disclosure of the Offense Report previously, she was informed that the City could not disclose the Offense Report because it involved minor children.  (*Id.* ¶ 32.)

The fact that the City Defendants informed Jim Bob Duggar, Plaintiffs' father, that the Offense Report would be released, does not suggest that the City Defendants believed or were substantially certain that they had the permission to release the Offense Report.  (*See* Mot. at 11.) The City Defendants released the Offense Report to the media later that night, before the Duggars could obtain a court order to stop them.  (*See* ASF, ¶ 25, 44.)  Indeed, the day after the

release, Judge Zimmerman issued an order that the Offense Report must be destroyed.  (*Id.*)  The fact that the City Defendants felt they needed to call Jim Bob Duggar before the release, and rushed to release the Offense Report a few hours later, only underscores that the City Defendants believed they did not have the authority or permission to release the Offense Report.  Their contrary arguments are nothing more than advocate afterthoughts.  Under these circumstances, a jury could find that the City Defendants believed or were substantially certain that they did not have the legal authority or permission to release the Offense Report.

4.     Plaintiffs Had a Legitimate Expectation of Privacy in The Details Concerning Their Sexual Abuse.

The City Defendants claim that because Plaintiffs featured in a reality television show, they did not conduct themselves in a manner consistent with the expectation of privacy in the matters contained in the Offense Report.  This cynical claim is also without merit.

The plaintiff in an invasion-of-privacy case must have conducted himself or herself in a manner consistent with an actual expectation of privacy.  *Lee*, 348 Ark. at 727 (citations omitted).  It is the expectation of privacy that is the "touchstone" of a claim for intrusion upon seclusion.  *Id*. at 720; *Addington*, 81 Ark. App. at 456.  And, privacy "is not a binary, all-or-nothing characteristic."  *Coombs*, 2012 Ark. App. 24, *5.  "A person's visibility to some does not necessarily strip him of the right to remain secluded from others."  *Id*. at *5 (citations omitted).  As the Arkansas appellate court stated in *Coombs*, "There are degrees and nuances to societal recognition of our expectations of privacy: the fact that the privacy one expects in a given setting is not complete or absolute does not render the expectation unreasonable as a matter of law."  *Id.* at **5-6.

Ample evidence supports a finding that Plaintiffs conducted themselves in a manner consistent with the actual expectation of privacy about their sexual abuse, and in fact, expected that the details of their sexual abuse would remain private.  *Fletcher*, 220 F.3d at 877 (intrusion upon seclusion rests on conduct on the part of the claimant to keep the matter secret).  It is undisputed that the details of the Offense Report were obtained under the promise of

11

confidentiality.  (ASF, ¶ 3.)  It is also undisputed that a FINS case was opened about the molestation, evidencing that the details of the Offense Report were meant to be kept confidential, apart from the public record.  (*Id.* ¶ 5; *see* Ark. Code Ann. § 9-27-09 (FINS hearings are closed to the public and all records are confidential)).

While the City Defendants point to the fact that two of the Plaintiffs identified themselves as the victims of the molestation *after* the release of the Offense Report, this is a red herring, as the City Defendants can cite to no instance where Plaintiffs disclosed their molestation *before* the release.  (*See* Mot. at 13.)  In fact, none of the facts cited by the City Defendants supports a finding that Plaintiffs did not conduct themselves in a manner consistent with the actual expectation of privacy, as Plaintiffs clearly did so.  Plaintiffs, besides with their immediate family and Investigator Taylor, have never talked to or mentioned their sexual assault to anyone else prior to the City Defendants' release of the Offense Report.  (Declaration of Steven E. Bledsoe ("SEB Decl."), Ex. 22, at 98:4-6; Ex. 23, at 9:23-10:4; Ex. 27, at 38:15-17; Ex. 26, at 128:16-22.)  The fact that the City Defendants redacted the names of Plaintiffs from the Offense Report (Mot. at 12) is irrelevant to whether Plaintiffs had an expectation of privacy in the matters contained in the Offense Report.  And the fact that a public relations agent, Chad Gallagher, tried to rehabilitate Plaintiffs' family in the public eye after the disclosure (Mot. at 13-14) only underscores that Plaintiffs had an actual expectation of privacy in the details concerning their sexual abuse, which was lost when the City Defendants improperly released the Offense Report.  Because genuine issues of fact support Plaintiffs' claim for invasion of privacy – intrusion upon seclusion, the City Defendants' motion for summary judgment must be denied.

**B.     The Evidence Supports a Finding That The City Defendants Publicly Disclosed Private Facts.**

To prevail on an invasion of privacy—public disclosure of private facts claim, a plaintiff must show that the defendant publicized a matter which is "of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public."  *In re Dunbar*, 446 B.R. at 314.  The City Defendants callously contend that they did not disclose any

private fact about Plaintiffs because the disclosed matter was known to some people and because they redacted Plaintiffs' names and other personal identifying information from the Offense Report.  Shockingly, the City Defendants also claim that their disclosure was not highly offensive and that the lurid details contained in the Offense Report, which concern an incestuous sexual abuse that happened over thirteen years ago, was of a legitimate concern to the public. None of these offensive arguments have merit.  The evidence supports a finding that the City Defendants publicly disclosed private facts about Plaintiffs that were highly offensive and not of legitimate concern to the public.

   1. <u>Material Issues of Fact Support a Finding That the City Defendants Publicly Disclosed Private Facts About Plaintiffs.</u>

  The City Defendants' contention that they redacted the names of Plaintiffs and other personal identifying information from the Offense Report does not preclude a finding that as a matter of law, they disclosed private facts about Plaintiffs.  It is undisputed that the FOIA request was specifically about Josh Duggar and the Duggar family, (ASF, ¶ 7) and therefore, anyone who reviewed the Offense Report could identify the Duggar children as the victims of the sexual abuse regardless of the redactions.  It is also undisputed that the City Defendants did not redact the names of Plaintiffs' parents or their address.  (*Id.*, ¶ 24.)  The Offense Report also disclosed the year when the investigation took place and the fact that both the perpetrator and the victims were minor children at the time.  (*Id.*, ¶ 29.)  These undisputed facts support a finding that the City Defendants disclosed information about Plaintiffs, even with the purported redactions.

  Nor does the fact that the molestation was known to some people foreclose a finding that the disclosed matter was private.  The City Defendants attempt to shirk their responsibility by contending that some people in Plaintiffs' church community knew that Josh Duggar molested a family member, and one of the people in the community wrote to the Oprah Winfrey show about the molestation.  (*See* Mot. at 15.)  But, a genuine dispute exists on whether the disclosed matter was private, and neither of these facts conclusively proves otherwise.

  The ample evidence supports a finding that while a few people may have known that Josh

had molested a family member prior to the disclosure, the sensitive details about individual molestation, including the identity of the victims, were kept private.  (*See* ASF, ¶ 3; SEB Decl., Ex. 22, at 98:4-6; Ex. 23, at 9:23-10:4; Ex. 27, at 38:15-17; Ex. 26, at 128:16-22 .)  Rumors on the Internet about Josh's molestation similarly do not suggest that the public knew what happened to Plaintiffs.  (*See* Mot. at 15.)  In Touch magazine's article about Josh Duggar's "underage sex probe" prior to the release of the Offense Report also did not identify the victims or describe the assault.  (ASF, ¶ 11.)  In fact, the very reason why the media made the FOIA requests about the Offense Report is because the details about the molestation, including the identity of the victims, were unknown.  (*See id.*)  Until the City Defendants' release, the details of Plaintiffs' molestation were not publicly known, which is why the reality television show that featured Plaintiffs and their brother Josh was cancelled following the release of the Offense Report, and not before.  (*Id.*, ¶ 59.)  Likewise, prior to the release of the reports by the City and County, the Plaintiffs suffered no online or other taunting or abuse as a result of their molestations.  That taunting and abuse started immediately after the release of the reports, confirming that it was the release of the reports that made the information public.

The fact that the Washington County's Incident Report was under-redacted and that Josh's molestation was discussed in open court at the May 5, 2021, detention hearing on Josh's pending criminal case is a pure non-sequitur.  (Mot. at 16.)  Both of these events occurred *after* the City Defendants' improper disclosure.  Indeed, the fact that Josh's molestation was discussed in open court six years after the disclosure only emphasizes that the details of the sexual assault and the identity of the victims were only made public knowledge as a result of the Defendants' release of the Incident and Offense Reports.

The City Defendants next cynically argue that even if they had not released the Offense Report, the details of the molestations would have been discovered by the public.  (Mot. at 17.) This is a mere speculation.  The fact that a former state trooper who knew about Josh's molestation gave an interview to Mehdizadegan, or that some people told In Touch magazine about the molestation does not suggest that the public already knew about the minor victims'

identity or the lurid details of the molestation prior to the release.  Rumors about the molestation could not have provided the specific and intimate details that the public learned by reading the Offense Report.  Thus, there is more than sufficient evidence for a jury to find that the City Defendants' release of the Offense Report publicly disclosed private facts about Plaintiffs.

2.  <u>Undisputed Facts Support A Finding That The City Defendants Believed Or Were Substantially Certain That They Were Publicly Disclosing A Private Information.</u>

Under Arkansas law, "intentional torts involve consequences which the actor believes are substantially certain to follow his actions."  *Baptist Health v. Murphy*, 365 Ark. 115, 123 (2006) (citing *Miller v. Ensco, Inc.*, 286 Ark. 458, 460 (1985)).  The City Defendants attempt to confuse the issue by arguing that Plaintiffs cannot prove the intent to disclose a private fact in violation of Arkansas law.  (Mot. at 19.)  But the relevant inquiry is not whether the City Defendants intended to violate the law; rather, it is whether the City Defendants believed or were substantially certain that they were disclosing a private fact about Plaintiffs.

The City Defendants' contention that they believed they were complying with the FOIA does not suggest that as a matter of law, they did not intend to disclose a private fact about Plaintiffs.  (Mot. at 18-19.)  Genuine issues of dispute exist as to whether the City Defendants actually believed their disclosure was permitted by the law.  It is undisputed that even before Defendant Cate purportedly sought the external advice and conducted his own legal research, Defendant O'Kelley was already preparing to release the Offense Report.  (ASF, ¶ 15.)  It is also undisputed that the City Defendants did not ask for an extension of time to respond to Mehdizadegan's FOIA request, despite that they did not obtain an approval from the court, the Arkansas Municipal League, or the Department of Human Services.  (*Id.*, ¶ 39.)  In fact, prior to the disclosure, the Arkansas Municipal League specifically informed the City Defendants that they were uncertain whether the Offense Report may be disclosed, and they needed additional time to look into this issue.  (*Id.*, ¶¶ 19-20.)  It is also undisputed that Defendant O'Kelley rushed the release of the Offense Report late at night, even before Defendant Cate, legal counsel for the City, had a chance to approve the redactions in the Offense Report.  (*Id.*, ¶ 25.)

On the other hand, ample evidence supports an inference that the City Defendants believed or were substantially certain that they were publicly disclosing private facts about Plaintiffs.  It is undisputed that the Offense Report was kept confidential, even among the City employees.  (ASF, ¶ 34.)  The Springdale Police Department's investigation to determine who "leaked" the information about Josh Duggar to the media underscores that the details about Plaintiffs' molestations were confidential.  (*Id.*)  In fact, an email from a reporter after the disclosure states that prior to the City Defendants' release, the Springdale Police Department denied the request to obtain a copy of the Offense Report pursuant to a FOIA request, stating that the law prohibited them from releasing a juvenile record.  (*Id.*, ¶ 32.)  A jury could easily find that the City Defendants believed or were substantially certain that their release of the Offense Report—which was being released pursuant to the FOIA request about Josh Duggar and his family—would publicly disclose the confidential details contained in the Offense Report.

In light of these circumstances, the City Defendants' contention that they merely intended to comply with the FOIA and did not intend to publicly disclose the private facts about Plaintiffs is specious at best.  In any event, as a matter of law, even if the City Defendants believed their actions complied with Arkansas law, it does not preclude a finding that the City Defendants believed or were substantially certain that they were publicly disclosing private facts about Plaintiffs.

        3.    <u>The Public Did Not Have a Legitimate Concern In The Sensitive Details Contained In The Offense Report.</u>

The City Defendants contend that the matters contained in the Offense Report was disclosed pursuant to a FOIA request and therefore of a legitimate public concern.  This argument defies common sense and the law.

The City Defendants' motion fails to establish that the disclosed matters were of a legitimate public concern.  (*See* Mot. at 19-20.)  Under Arkansas law, the following factors may weigh in on whether the disclosed matter was of a legitimate public concern: (1) the social value of the fact published; (2) the depth of the intrusion into a plaintiff's private affairs; (3) the extent

16

to which a plaintiff voluntarily placed herself into a position of public notoriety; (4) the nature of the state's interest in preventing the disclosure; and (5) whether the fact publicized concerned events that occurred in the past.  Ark. Model Jury Instruction; Civil 422.  None of the factors suggests that the matters contained in the Offense Report was of a legitimate public concern.

The explicit details contained in the Offense Report, including the identities of the minor victims and the specific details about their individual molestations, had no social value.  The fact that Josh Duggar was charged with a federal crime over six years after the release of the Offense Report does not suggest that the Offense Report was of a legitimate public concern at the time of the disclosure.

And, as described above, there is no evidence even remotely suggesting that Plaintiffs voluntarily disclosed their molestation and its details prior to the release.  The City Defendants again blame the fact that Plaintiffs featured in a reality television show to shirk their responsibility.  However, this fact does not prove that Plaintiffs had no expectation of privacy in the intimate details documented in the Offense Report, which were provided to the law enforcement under the promise of confidentiality.  (ASF, ¶ 3.)  *See Michaels v. Internet Entertainment Grp., Inc.*, 5 F. Supp. 2d 823, 841-42 (C.D. Cal. 1998) (broadcast of videotape recording of sexual relations between famous actress and rock star not a matter of legitimate public concern); W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser & Keeton on Law of Torts § 117, p. 857 (5th ed. 1984) (stating that there is little expectation of privacy in mundane facts about a person's life, but that "portrayal of ... intimate private characteristics or conduct" is "quite a different matter"); *Time, Inc. v. Firestone*, 424 U.S. 448, 454-55 (1976) (despite interest of public, divorce of wealthy person not a "public controversy").

Moreover, the public interest in disclosure of public record embodied in the FOIA does not override the state interest in preventing disclosure of the identity of sex crime victims.  Indeed, the disclosure was prohibited by the law.  *See* Ark. Code Ann. §§ 16-90-1104(b), 12-18-101 *et seq*., Ark. Code Ann. § 9-27-309 *et seq.*  And, pursuant to Arkansas law, FINS hearings are closed to the public, and all records are confidential.  Ark. Code Ann. § 9-27-309.

17

Nor is there any doubt that the disclosure of sexual molestation that Plaintiffs suffered as minor children were deeply intrusive and did not further any government interest. None of the cases cited by the City Defendants suggests otherwise.  (*See* Mot. at 20.)  Certainly, disclosing the details of sexual abuse that one suffered as a child is far more humiliating than a disclosure of a person's home address in *Hopkins v. City of Brinkley*, 2014 Ark. 139 (2014); s*ee also Bartnicki v. Vopper*, 532 U.S. 514, 533 (2001) ("some intrusions on privacy are more offensive than others"); *Hopkins*, 2014 Ark. 139, 9 (person has privacy in matters "that the individual wants to [keep] and has kept private or confidential . . . and that to a reasonable person would be harmful or embarrassing if disclosed.").  Moreover, the public had no interest in disclosure of the sensitive details about Plaintiffs' molestation, as it did in the disclosure of private matters in *McCambridge v. City of Little Rock*, 298 Ark. 219, 230-31 (1989), which was disclosed by the government to depict how the crime occurred, why the police considered the case closed, and why no further government action should be taken.  (*See* Mot. at 20).  The City Defendants' argument that the public had a legitimate concern over the details contained in the Offense Report has no merit.  This claim also must be heard by a jury.

## C.    Material Issues Of Fact Support Plaintiffs' Claim For The Tort Of Outrage.

To prevail on a tort of outrage claim, a plaintiff must prove: (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was "extreme and outrageous," was "beyond all possible bounds of decency," and was "utterly intolerable in a civilized community"; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it.  *Crockett v. Essex*, 341 Ark. 558, 563 (2000).  Material issues fact support each of the elements, which precludes summary judgment.

### 1.    Evidence Shows That the City Defendants Knew or Should Have Known That The Release of The Offense Report Would Inflict Emotional Distress Upon Plaintiffs.

The evidence supports a finding that the City Defendants knew or should have known

that the release of the Offense Report would inflict emotional distress upon Plaintiffs.  It is undisputed that the Offense Report was kept confidential and the interviews contained therein were provided under the promise of confidentiality.  (ASF, ¶ 3, 34.)  Critically here, under Arkansas law, FINS hearings are closed to the public, and all records are confidential.  Ark. Code Ann. § 9-27-309.

As a matter of common sense, the disclosure to the world of lurid details about sexual abuse against her will would cause severe emotional distress to anyone.  And there is more than sufficient evidence for a jury to conclude that in releasing the Offense Report, the City Defendants knew that the media would publish the details about Plaintiffs' sexual abuse.  The City Defendants admit that prior to the release, they received a tip that the media would publish an article about Josh Duggar and anticipated that the Offense Report they released would also be published by the media.  (*Id.*, ¶¶ 13-15.)  Defendant Cate readily admits that prior to the release, he did an Internet search and learned that the rumors about Josh Duggar's molestation were going around.  (Def's Ex. 1.)  The City Defendants also acknowledge that the FOIA request specifically mentioned Josh Duggar and his family, and therefore, they knew the recipient of the Offense Report would be able to determine that the molestation concerned the Duggar children. (*Id.*, ¶¶ 6-7.)  It is also undisputed that the City Defendants did not redact Plaintiffs' parents' names and their address from the Offense Report, leaving the identity of the victims obvious. (*Id.*, ¶ 24.)  Given the lurid details of the sexual abuse in the Offense Report and the City Defendants' disclosure with the knowledge that the media would publish the Offense Report, a jury could find that the City Defendants believed or were substantially certain that the disclosure would inflict emotional distress to Plaintiffs.

2.     The City Defendants' Conduct Was Extreme And Outrageous.

This case presents a textbook tort of outrage.  The public disclosure of the intimate details of the minor victims' sexual molestation, which were only provided to the authorities under the promise of confidentiality, amounts to conduct that goes beyond all possible bounds of decency. *Hamaker v. Ivy*, 51 F.3d 108, 110 (8th Cir. 1995) (tort of outrage involves "conduct that is

19

so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society")(citations omitted).  Notably, some news outlets, including The Associated Press and The Washington Post, refrained from publishing the specific details from the Offense Report, recognizing that the disclosure is extreme and outrageous.  (Abby Ohlheiser, *Josh Duggar molested four of his sisters and a babysitter, parents tell Fox News*, WASHINGTON POST, June 4, 2015, https://www.washingtonpost.com/news/acts-of-faith/wp/2015/06/03/what-to-expect-from-the-fox-news-interview-with-josh-duggars-parents/.)  While the tort of outrage must be determined on a case-by-case basis, it does not take an expert to conclude that the City Defendants' improper disclosure amounted to an utterly atrocious, outrageous conduct that should not be tolerated in a civilized society.

> 3. Plaintiffs Suffered Emotional Distress That No One Could Be Expected To Endure.

The evidence also supports a finding that Plaintiffs sustained the type of emotional distress "so severe that no reasonable person could be expected to endure it."  *Coombs*, 2012 Ark. App. 24 at *9.  The disclosure of intimate details about one's sexual abuse as a minor would be intolerably humiliating to anyone.  The City Defendants' conduct did not merely cause Plaintiffs "severe, emotional, mental, and psychological distress."  (Mot. at 24.)  The disclosure forced Plaintiffs—who are the minor victims of sexual abuse—to relive their painful past.  *See* Bledsoe Decl., Ex. 31 [Beaman Dep. Tr.]  90:17-94:7.  Making matters worse, following the disclosure, Plaintiffs were subjected to harsh comments about their sexual abuse almost daily and publicly criticized for their decision to forgive their brother for the molestation.  (ASF, ¶ 53.)  It is undisputed that Plaintiffs' lives were thrown into turmoil as a result of the release.  Plaintiffs were constantly chased by paparazzi and had to avoid public outings for almost a year following the release.  (*Id.* ¶¶ 53-57.)  Plaintiffs' family, including their parents, had to relocate out of the state to a hidden location where they would not face a relentless public shaming.  (*Id.* ¶ 57.)  A reasonable jury could find that as a result of the City Defendants' disclosure, Plaintiffs sustained

emotional distress that no reasonable person could be expected to endure.  Because these factual issues remain, a jury must hear Plaintiffs' claim for the tort of outrage.

**D.  The City Defendants' Contention That They Complied With The FOIA Does Not Preclude A Finding That As A Matter Of Law, The City Defendants Engaged In Intentional Torts Aimed at Plaintiffs.**

The City Defendants' contention that they released the Offense Report pursuant to the FOIA does not shield them from liability for their intentional torts.  The City Defendants attempt to confuse the issue and contend that Plaintiffs cannot prove intent because the City Defendants were complying with the FOIA and they had no ill-will toward Plaintiffs.  (Mot. at 6.)  The City Defendants' disingenuous contention that they believed the FOIA required them to release the Offense Report does not preclude a finding that as a matter of law, the City Defendants committed intentional torts aimed at Plaintiffs.  *See, e.g.*, *U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 763 n.13 (1989) (the statutory meaning under the FOIA is not the same as "the question whether a tort action might lie for invasion of privacy").  Not surprisingly, the City Defendants fail to cite any law suggesting that compliance with the FOIA provides a defense to intentional tort claims.  Thus, whether the City Defendants complied with the FOIA or believed they were complying with the statute is irrelevant to whether they are liable for intentional torts.

Similarly, the City Defendants' argument that their conduct did not violate the Arkansas law prohibiting the disclosure of juvenile criminal record misses the point.  To begin, a genuine dispute exists whether the City Defendants believed or were substantially certain that they did not have the legal authority to release the Offense Report.  (*See supra*, at III.B.2.)  More importantly, Plaintiffs do not need to prove that the City Defendants intended to violate a law.  Plaintiffs' claim is that the City Defendants believed or were substantially certain that their conduct would invade Plaintiffs' privacy and inflict emotional distress upon them.  *See Murphy*, 365 Ark. at 123.  As described above, the evidence supports a finding that the City Defendants believed or were substantially certain that the release of the Offense Report would invade Plaintiffs' privacy and inflict emotional distress upon them.

Even if their intent to comply with the FOIA can negate the intent required for an intentional tort (it cannot), the scope of FOIA is not unfettered as the City Defendants claim. The City Defendants' suggestion that the FOIA required them to release the Offense Report is simply untrue.  The Arkansas Supreme Court has denied a disclosure pursuant to the FOIA when the disclosure would constitute an unwarranted invasion of privacy.  *See Young v. Rice*, 308 Ark. 593, 597 (1992).  In *Young v. Rice*, the Arkansas Supreme Court held that when a release of the record pertaining to an individual "might subject the person to embarrassment, harassment, disgrace," the public policy behind the FOIA does not outweigh an individual's right to privacy. *Id.* at 598; *see also Ark. Gazette Co. v. Goodwin*, 304 Ark. 204, 285 (1990) (public interest in disclosure under FOIA must yield to constitutional rights).  The City Defendants' reliance on the FOIA is misguided.

### E.      The Arkansas Appellate Court's Finding in *Duggar* is Irrelevant.

The Arkansas Court of Appeals' finding in *Duggar v. City of Springdale*, 2020 Ark. App. 220 (2020) is not binding on this Court and has no preclusive effect.  To the extent that the City Defendants' motion relies on the Arkansas Court of Appeals' ruling in *Duggar*, Plaintiffs incorporate their argument set forth in their opposition to the County Defendants' motion for summary judgment.  (Dkt. 149, at 18-19.)

### F.      The City Defendants Are Not Entitled To Immunity.

Finally, the City Defendants' argument that they are entitled to qualified, statutory, and vicarious liability (Mot. at 24) is unwarranted by existing law and presented for an improper purpose of causing an unnecessary delay.  Plaintiffs incorporate herein by reference their argument concerning Defendants' statutory, absolute, qualified, and vicarious immunity set forth in their opposition to the County Defendants' motion for summary judgment.  (Dkt. 149, at 8-18.)

## V.      CONCLUSION

Construing all facts in Plaintiffs' favor, there is more than sufficient evidence from which a jury could find for Plaintiffs on each of their claims.  The Court should deny the City

Defendants' motion for summary judgment.

Respectfully submitted,

By: _/s/ Steven E. Bledsoe_

Stephen G. Larson (admitted _pro hac vice_)
_slarson@larsonllp.com_
Steven E. Bledsoe (admitted _pro hac vice_)
_sbledsoe@larsonllp.com_
Jen C. Won (admitted _pro hac vice_)
_jwon@larsonllp.com_
**LARSON LLP**
555 South Flower Street, Suite 4400
Los Angeles, California 90071
Telephone: (213) 436-4888
Facsimile: (213) 623-2000

Shawn B. Daniels (Ark. Bar No. 99126)
_shawn@danielsfirm.com_
DANIELS FIRM
129 W. Sunbridge Drive
Fayetteville, AR 72703
Telephone: (479) 521-7000
Facsimile: (479) 437-2007

Attorneys for Plaintiffs JILL DILLARD, JESSA
SEEWALD, JINGER VUOLO, and JOY
DUGGAR