IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| JILL DILLARD, JESSA SEEWALD, JINGER VUOLO, and JOY DUGGAR,<br><br>Plaintiff,<br><br>CITY OF SPRINGDALE; WASHINGTON COUNTY; KATHY O'KELLEY; ERNEST CATE; RICK HOYT; STEVE ZEGA; BAUER PUBLISHING COMPANY, L.P.; BAUER MAGAZINE, L.P.; BAUER MEDIA GROUP, INC.; BAUER, INC.; HEINRICH BAUER NORTH AMERICA, INC.; BAUER MEDIA GROUP USA, LLC; and DOES 1-10, inclusive,<br><br>Defendant. | Case No.: 5:17-CV-05089-TLB |

**PLAINTIFFS' ADDITIONAL STATEMENT OF MATERIAL FACTS IN SUPPORT OF THEIR OPPOSITION TO CITY OF SPRINGDALE AND WASHINGTON COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

1

A. **The Investigation Into Plaintiffs' Sexual Molestation**

1. Plaintiffs are sisters who were molested by their brother when they were minor children. *See* Bledsoe Decl., Ex. 29 [Offense Report at Springdale4374].

2. On or around December 7, 2006, the Arkansas State Police Hotline Call Center received a report alleging Josh Duggar sexually abused minor children in 2002 and 2003. *See* Bledsoe Decl., Ex. 29 [Offense Report at Springdale4374-75].

3. Five days later, the Washington County Sherriff's Office conducted interviews with Plaintiffs and their parents, and investigators advised that all statements would remain confidential per Arkansas law and would not be disclosed to the public. *See* Declaration of Steven E. Bledsoe ("Bledsoe Decl."), Ex. 1 [Hoyt Dep. Ex. 29 (Incident Report)]; Ex. 22 [Dillard Dep. Tr.] at 64:4-66:17; Ex. 27 [Vuolo Dep. Tr.] at 30:14-23; Ex. 26 [Forsyth Dep. Tr.] at 9:23-10:4.

4. The contents of the interviews, including Plaintiffs' individually-identifying personal information and specific details of the molestations, were documented in the City of Springdale, Arkansas Police Department Offense Report and the Washington County, Arkansas Sherriff's Office official Incident Report. *See* City Defs.' Ex. 9B; Bledsoe Decl., Ex. 1.

5. Following the interviews, Detective Hignite completed a Family in Need of Services ("FINS") affidavit for a FINS case to be opened, which was forwarded to the Washing County Prosecutor's Office. *See* Bledsoe Decl., Ex. 29 [Offense Report at Springdale4395].

B. **The Freedom of Information Requests About The Duggar Family**

6. On May 15, 2015, Abtin Mehdizedegan of law firm Cross, Gunter, Witherspoon & Galchus, P.C. submitted a Freedom of Information Act of 1967 ("FOIA") request to the City of Springdale Police Department and the Washington County Sheriff's Office. *See* City Defs.' Ex. 14 ¶ 4; County Defs.' Ex. 2B.

7. The FOIA request sought any and all documentation relating to Plaintiffs' parents, Josh Duggar, and their previous and current addresses, and the incident report filed by Detective Hignite. *See* City Defs.' Ex. 14 ¶ 4; O'Kelley Depo, Ex. 1.

8. When the FOIA request on the Duggars was submitted, Kathy O'Kelley was the Chief of the Springdale Police Department and had the authority to approve disclosure of public record pursuant to FOIA requests. *See* Bledsoe Decl., Ex. 2 [O'Kelley Dep. Tr.] at 14:19-15:4; City Defs.' Ex. 2.

9. When the FOIA request on the Duggars was submitted, Ernest Cate was a City Attorney for Springdale, Arkansas, who advised the Springdale Police Department. *See* Bledsoe Decl., Ex. 3 [Cate Dep. Tr.] at 7:10-19; City Defs.' Ex. 1.

10. When the FOIA request on the Duggars was submitted, Rick Hoyt was a major at the Washington County Sheriff's Office who oversaw the Office's Records Department, including disclosures of public record pursuant to FOIA requests. *See* Bledsoe Decl., Ex. 4 [Hoyt Dep. Tr.] at 5:19-21.

11. On May 19, 2015, a tabloid magazine, *In Touch Weekly*, posted an article on its website under the headline "'19 Kids and Counting' Son Named in Underage Sex Probe." *See* City Defs.' Ex. 7A.

12. The article promoted sales of the hardcopy version: "for the latest inside Josh Duggar's shocking past, pick up the new issue of *In Touch Weekly*, on newsstands tomorrow!" *See* City Defs.' Ex. 7A.

13. On May 19, 2015, Access Hollywood sent an email to the City of Springdale Police Department stating that *In Touch Tomorrow* would publish an article about Josh the next day. *See* Bledsoe Decl., Ex. 6 [Springdale0671].

14. Upon receiving the email from Access Hollywood, Captain Ron Hritz at the Springdale Police Department sent an email to Defendant O'Kelley and others stating, "Sounds like we have a leak." *See* Bledsoe Decl., Ex. 6 [Springdale0669].

15. O'Kelley forwarded Captain Hritz's email to Cate and stated that "[l]et's have a conversation about this—we were preparing to release the report …" *See* Bledsoe Decl., Ex. 6 [Springdale0669].

16. O'Kelley also forwarded Captain Hritz's email to the City of Arkansas Mayor Doug Sprouse, stating "HERE IS AN INTERESTING TURN OF EVENTS FOR THE DUGGAR FAMILY – WE ARE PREPARING TO REDACT AND RELEASE THE INVESTIGATION BUT THIS IS A NEW TWIST TO THE ORIGINAL REQUEST – NOW WE ARE HEADING TO THE TABLOID NEWS!" *See* Bledsoe Decl., Ex. 7 [Springdale2888].

    **C.**    <u>**Springdale Police Department's Release of the Offense Report**</u>

17. On May 20, 2015, O'Kelley communicated with Mehdizedegan and told him that the Springdale Police Department would release the Offense Report that evening. *See* City Defs.' Ex. 2 ¶ 8.

18. On May 20, 2015, O'Kelley also spoke with Doug Thompson, a reporter at Arkansas Democratic Gazette and decided to provide him with a copy of the Offense Report. *See* City Defs.' Ex. 2 ¶ 8.

19. Prior to the release of the Offense Report, O'Kelley and Cate asked Mark Hayes, Director at the Arkansas Municipal League, why they should not release the Offense Report pursuant to a FOIA request. *See* Bledsoe Decl., Ex. 2 [O'Kelley Dep. Tr.] at 104:1-13; Ex. 3 [Cate Dep. Tr.] at 22:25-24:9.

20. In response, Hayes stated that he needed to look into the issue. *See* Bledsoe Decl., Ex. 2 [O'Kelley Dep. Tr.] at 97:13-17; Ex. 3 at 23:2-16.

4

21. Prior to the release, O'Kelley and Cate did not speak with anyone at the Department of Human Services about whether the Offense Report may be released or seek court approval. *See* Bledsoe Decl., Ex. 2 [O'Kelley Dep. Tr.] at 97:13-17, 134:19-22; Ex. 3 [Cate Dep. Tr.] at 23:2-16, 35:9-14.

22. When O'Kelley and Cate asked other City Attorney and a juvenile prosecutor about the release of the Offense Report, they asked for a reason why the Offense Report may not be released, not whether the Offense Report should be released. *See* Bledsoe Decl., Ex. 3 [Cate Dep. Tr.] 12:23-13:20, 23:17-25, 28:11-20)

23. Hritz called Jim Bob Duggar prior to the release and told him the Offense Report would be released, before Cate or anyone else approved the release of the Offense Report. *See* Bledsoe Decl., Ex. 2 [O'Kelley Dep. Tr.] 105:23-106:12.

24. Hritz applied redactions to the Offense Report, leaving the names of the victims' parents, their address, and other personally identifying information unredacted. *See* Bledsoe Decl., Ex. 2 [O'Kelley Dep. Tr.] 121:9-122:1; City Defs.' Ex. 9, Ex. B.

25. At 8:58 p.m., O'Kelley emailed a copy of the Offense Report to Mehdizedegan and Thompson before the redacted report was approved for release by Cate or anyone else. *See* Bledsoe Decl., Ex. 9 [Ex. 4 to O'Kelley Depo.]; Ex. 2 [O'Kelley Dep. Tr.] 87:11-25, 88:10-20; Ex. 25 [Springdale2863]. O'Kelley and Cate did not analyze whether the redactions were sufficient to protect personal identifying information of the victims. *See Bledsoe Decl.* Ex. 2 [O'Kelley Dep. Tr.] 115:1-24; Ex. 3 [Cate Dep. Tr.] 86:10-18.

26. O'Kelley forwarded a copy of the report to Cate at 9:04 p.m. for Cate's review. *See* Bledsoe Decl., Ex. 10 [Ex. 10 to O'Kelley Dep., at Springdale0916]

27. On May 21, 2015, Hayes at the Arkansas Municipal League forwarded an email

5

from Cate enclosing the Offense Report to others at the Arkansas Municipal League. Hayes' email stated, "Please review ASAP. An [sic] FOIA request has been made and the city believes it must release in the redacted form as attached. Can they release under juvenile criminal statutes? (The suspect was never charged.) have they redacted sufficiently, in particular does the name of the parents need to be redacted? We are facing a 9am or so deadline if not earlier." *See* Bledsoe Decl., Ex. 10 [Ex. 10 to O'Kelley Dep., at Springdale0916].

28. Amanda LaFever responded to Haye's email stating that Arkansas Code Annotated § 16-90-1104 provided that the Offense Report was exempt from disclosure under the FOIA. *See* Bledsoe Decl., Ex. 10 [Ex. 10 to O'Kelley Dep., at Springdale0915].

29. Upon receiving LaFever's email, O'Kelley emailed Mehdizedegan requesting not to use the Offense Report sent on May 20, 2015. *See* Bledsoe Decl., Ex. 11 [Ex. 3 to O'Kelley Dep. at Springdale1594].

30. Abtin replied to O'Kelley's email stating that he had already sent the Offense Report to his client and "it may be too late." *See* Bledsoe Decl., Ex. 11 [Ex. 3 to O'Kelley Dep. at Springdale1594].

31. O'Kelley also emailed Cate that morning, forwarding an email from Abtin recommending that "everyone consult Ark. Code Ann. Section 16-90-1102 (West) for a good night's sleep: 'Failure to comply with this subchapter does not create a claim for damages against a government employee, official, or entity.'" *See* Bledsoe Decl., Ex. 12 [Springdale1684].

32. Gina Bacchiocchi from Radar Online submitted a FOIA request to the Springdale Police Department stating, "I previously called last week and requested a copy of a police report involving Josh Duggar's alleged sexual offenses, but was told nothing involving minor parties

6

could be disclosed to the public. However, In Touch magazine published the full report today, citing the FOIA." Bacchiocchi's email also asked, "Since I was told the FOIA does not override laws to protect minor victims, can you explain how the police report was initially released? Was it not through a FOIA request, as In Touch Weekly claims?" *See* Bledsoe Decl., Exs. 13, 14 [Springdale0966 and 2554].

33. That same day, Captain Hritz sent an email to Jim Bob Duggar with a copy of an updated version of the redacted Offense Report. Hritz's email stated that he was told to release this copy to the media. *See* Bledsoe Decl., Ex. 25 [Springdale2863].

34. The Springdale Police Department conducted an internal investigation into how the media became aware of Josh Duggar's molestation after the release of the Offense and Incident Reports. The investigation revealed that the Offense and Incident Reports were password protected and not available to most of the employees at the Springdale Police Department and the Washington County Sheriff's Office. City Defs.' Ex. 11, Ex. A.

35. At the time of the release of the Offense Report by the City, Plaintiff Joy Forsyth was a minor child. *See* Bledsoe Decl., Ex. 1 [Ex. 29 to Hoyt Depo].

   **D.   Washington County's Release of the Incident Report**

35. On May 21, 2015, In Touch magazine published the Offense Report released from the City. City Defs.' Ex. 2B.

36. The same day, Hoyt ordered that the Incident Report be released to Mehdizedegan pursuant to the FOIA request. *See* Bledsoe Decl., Ex. 15 [Ex. 30 to Hoyt Depo]; Ex. 4 [Hoyt Dep. Tr.] 16:6-17.

37. Hoyt reviewed the Incident Report for a few minutes and ordered a County employee to redact the juvenile information from the Incident Report. *See* Bledsoe Decl., Ex. 4 [Hoyt Dep. Tr.] 15:18-22; 16:15-17.

38. An employee at the Sheriff's Office redacted some information from the Incident Report, but Plaintiffs' current and former addresses, Josh's name, and other personal details, including age of at least one of Plaintiffs at the time of the molestation, were not redacted. *See* Bledsoe Decl., Ex, 4 [Hoyt Dep. Tr.] 15:23-16:21, Ex. 1 [Ex. 29 to Hoyt Dep.].

39. Hoyt did not review the redactions, follow up to make sure that the County employee followed his instructions, or request an extension of time to respond to the FOIA request. *See* Bledsoe Decl., Ex. 4 [Hoyt Dep. Tr.] 19:12-16, 29:6-10, 30:3-9.

40. Before the release of the Incident Report, Hoyt did not conduct any legal research, consult anyone, or seek a court order about whether the Incident Report may be released. *See* Bledsoe Decl., Ex. 4 [Hoyt Dep. Tr.] 20:22-21:25.

41. The Incident Report was sent to Mehdizedegan via U.S. Mail. *See* Bledsoe Decl., Ex. 4 [Hoyt Dep. Tr.] 23:23-24:1.

42. Hoyt knew that the Incident Report contained information about minor children. *See* Bledsoe Decl., Ex. 4 [Hoyt Dep. Tr.] 16:15-17.

43. At the time of the release of the Incident Report by the County, Plaintiff Joy Forsyth was a minor child. *See* Bledsoe Decl., Ex. 4 [Hoyt Dep. Tr.] 23:23-24:1.

**E.     Judge Zimmerman's Order**

44. On May 21, 2015, Judge Zimmerman, a juvenile court judge for the Circuit Court of Washington County, Arkansas, entered an order expunging the Offense Report from the public record to protect the identities of the victims. Judge Zimmerman pointed to Arkansas Code Annotated § 16-90-1104's prohibition against law enforcement disclosure of information "directly or indirectly identifying the victim of a sex crime." *See* Bledsoe Decl., Ex. 16 [Ex. 24 to O'Kelley Dep.].

45. After learning of Judge Zimmerman's ruling, on May 22, 2015, Hoyt reached out

to Judge Zimmerman about whether the Incident Report may be released.  *See* Bledsoe Decl., Ex. 4 [Hoyt Dep. Tr.] 22:25-23:8; 24:9-22.

46. After receiving Hoyt's inquiry, Judge Zimmerman called the County Sheriff's Office and told them not to release the Incident Report.  *See* Bledsoe Decl., Ex. 4 [Hoyt Dep. Tr.] 24:23-25.

47. Hoyt did not do anything to retrieve the Incident Report from mail or prevent Mehdizedegan from disseminating the Incident Report, although the Incident Report was sent to an address over 200 miles away via the Postal Service.  *See* Bledsoe Decl., Ex. 4 [Hoyt Dep. Tr.] 17:17-24; 25:10-26:13.

48. On May 26, 2015, In Touch published the Incident Report with a title, "Josh Duggar's Youngest Molestation Victim May Have Been As Young As 5-Years Old." City Defs.' Ex. 2C.

49. That same day, a citizen submitted a complaint to the Springdale Police Department stating, "To say she was complying with the 'FOIA' law is incorrect.  That law does not apply to children without a court order. All the years I spent being very careful when matriculating student transcripts, NEVER did we divulge legal information about a minor without a court order."  *See* Bledsoe Decl., Ex. 17 [Springdale 0209].

50. On June 4, 2015, Dorothy Blackman, another citizen wrote to the Springdale Police Department, stating, "As a member of the FOI Society, I find it abhorrent that Chief O'Kelley would hide behind the FOIA and an apparent 'discussion' with the Springdale City Attorney to justify the public vetting of a privately protected affidavit… Such affidavits are EXPLICITLY excluded from FOI standards due to the age of the alleged perpetrator and out of concern for the public disclosure of its victims."  *See* Bledsoe Decl., Ex. 18 [Springdale 0504].

51. On June 5, 2015, another citizen submitted a complaint to the Springdale Police Department stating, "I noticed that the parents' names of the 'babysitter' were conveniently redacted, why not the parents' names of the other victims?" *See* Bledsoe Decl., Ex. 19 [Springdale 0203].

52. On June 5, 2015, a citizen named Michael Zoltowski emailed O'Kelley, stating, "You claim to have researched whether or not you were required to release the information on the Duggar family, when you received a FOIA request for it. It took me just 5 secs via a google search to find the document attached, which states quite clearly that you were NOT to release them, same as Judge Stacey Zimmerman's ruling." *See* Bledsoe Decl., Ex. 20 [Springdale 0230].

### F. Public Backlash Against Plaintiffs After The Release

53. Plaintiffs, who featured in a reality television show called *19 Kids and Counting*, were subjected to perverse abuse and harassment from the public following the release of the poorly redacted Offense and Incident Reports. *See* Bledsoe Decl., Ex. 21 [JD000001-000017]; Ex. 23 [Seewald Dep. Tr.] 38:24-39:22; 53:7-54:15; 63:25-64:7; 67:18-22; Ex. 22 [Dillard Dep. Tr.] 79:23-80:7; 80:17-81:3; 91:15-24; 94:2-13; Ex. 27 [Vuolo Dep. Tr.] 73:4-17; 85:22-86:20; 92:7-93:22; Ex. 26 [Forsyth Dep. Tr.] 36:6-14; 41:7-18; 54:22-55:6).

54. Plaintiffs received and continue to receive the enormous volume of hateful and hurtful comments on their social media accounts and had to block certain words or phrases from the comment section of their accounts. *See* Bledsoe Decl., Ex. 21 [JD000001-000017]; Ex. 23 [Seewald Dep. Tr.] 38:24-39:22; 53:7-54:15; 63:25-64:7; 67:18-22; Ex. 22 [Dillard Dep. Tr.] 79:23-80:7; 80:17-81:3; 91:15-24; 94:2-13; Ex. 27 [Vuolo Dep. Tr.] 73:4-17; 85:22-86:20; 92:7-93:22; Ex. 26 [Forsyth Depo] 36:6-14; 41:7-18; 54:22-55:6.

55. Because of the attacks from the public against Plaintiffs and the humiliation they experienced, Plaintiffs avoided public outings for almost a year following the release of the

Offense and Incident Reports. *See* Bledsoe Decl., Ex. 21 [JD000001-000017]; Ex. 23 [Seewald Dep. Tr.] 38:24-39:22; 53:7-54:15; 63:25-64:7; 67:18-22; Ex. 22 [Dillard Dep. Tr.] 79:23-80:7; 80:17-81:3; 91:15-24; 94:2-13; Ex. 27 [Vuolo Dep. Tr.] 73:4-17; 85:22-86:20; 92:7-93:22; Ex. 26 [Forsyth Dep. Tr.] 36:6-14; 41:7-18; 54:22-55:6.

56. Two Plaintiffs, Dillard and Seewald, also felt compelled to appear at a television interview to clarify the details concerning their sexual molestation. *See* Bledsoe Decl., Ex. 22 [Dillard Dep. Tr.] 95:12-21; Ex. 23 [Seewald Dep. Tr.] 128:17-129:10.

57. The overwhelming attention from the public and paparazzi forced Plaintiffs and their parents to leave their homes and relocate to out of the state for over a year. *See* Bledsoe Decl., Ex. 24 [Wynne Report, JD004649-JD004677].

58. Plaintiffs are still haunted by the emotional, psychological, and interpersonal damage resulting from the release of the Offense and Incident Reports. *See* Bledsoe Decl., Ex. 5 [Wynne Report; JD004498-004521, at 15-17]; Ex. 24 [JD004649-004677, at 20-22]; Ex. 8 [JD004820-4844, at 17-18]; Ex. 28 [JD005006-5030, at 16-17].

59. A relentless public shaming and negative publicity concerning Plaintiffs' molestation led to the termination of the reality television show, *19 Kids and Counting*. *See* Bledsoe Decl., Ex. 23 [Seewald Dep. Tr.] 39:23-40:2.

Respectfully submitted,


By: */s/ Steven E. Bledsoe*
    Stephen G. Larson (admitted *pro hac vice*)
    *slarson@larsonllp.com*
    Steven E. Bledsoe (admitted *pro hac vice*)
    *sbledsoe@larsonllp.com*
    Jen C. Won (admitted *pro hac vice*)
    *jwon@larsonllp.com*
    **LARSON LLP**
    555 South Flower Street, Suite 4400
    Los Angeles, California 90071
    Telephone: (213) 436-4888
    Facsimile: (213) 623-2000

    Shawn B. Daniels (Ark. Bar No. 99126)
    *shawn@danielsfirm.com*
    DANIELS FIRM
    129 W. Sunbridge Drive
    Fayetteville, AR 72703
    Telephone: (479) 521-7000
    Facsimile: (479) 437-2007

    Attorneys for Plaintiffs JILL DILLARD, JESSA SEEWALD, JINGER VUOLO, and JOY DUGGAR