IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| JILL DILLARD, JESSA SEEWALD, JINGER VUOLO, and JOY DUGGAR,<br><br>Plaintiff,<br><br><br><br>CITY OF SPRINGDALE; WASHINGTON COUNTY; KATHY O'KELLEY; ERNEST CATE; RICK HOYT; STEVE ZEGA; BAUER PUBLISHING COMPANY, L.P.; BAUER MAGAZINE, L.P.; BAUER MEDIA GROUP, INC.; BAUER, INC.; HEINRICH BAUER NORTH AMERICA, INC.; BAUER MEDIA GROUP USA, LLC; and DOES 1-10, inclusive,<br><br>Defendant. | Case No.: 5:17-CV-05089-TLB |

**PLAINTIFFS' RESPONSE TO SEPARATE WASHINGTON COUNTY DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS**

Plaintiffs Jill Dillard, Jessa Seewald, Jinger Vuolo and Joy Forsyth ("Plaintiffs") hereby respond to the Separate Statement of Undisputed Material Facts submitted by Rick Hoyt and Washington County ("Separate Washington County Defendants") in support of their Motion for Summary Judgment.

1.  The Plaintiffs in the case are sisters and the daughters of Jim Bob and Michelle Duggar.

    **PLAINTIFFS' RESPONSE**: Undisputed.

2.  The Duggar family, including the Plaintiffs and Josh Duggar, has regularly appeared in the past on reality television shows called 17 Kids and Counting, 18 Kids and

1

Counting and 19 Kids and Counting which aired on a television network called TLC. The Plaintiffs have regularly appeared in reality television shows, both as minors and while they were adults, including their most recent shows called "Jill & Jessa: Counting On" and "Counting On," which also aired on TLC. Because of those TV shows, the Plaintiffs have enjoyed a certain level of celebrity locally, nationally, and internationally.

**PLAINTIFFS' RESPONSE**: Undisputed as to Plaintiffs having appeared on the reality television shows 19 Kids and Counting, Jill & Jessa: Counting On, and Counting On. Disputed as to the remainder because no evidence is cited to support the remainder.

3. On May 20, 2015, Josh Duggar was a lobbyist for the Family Research Council and lived and worked in Washington D.C.

**PLAINTIFFS' RESPONSE**: Disputed as no evidence is cited to support this statement.

4. The Plaintiffs are celebrities who and social media "influencers" who regularly market or advertise products on various social media platforms on the bais [sic] of their celebrity. Before May 20, 2015, the Plaintiffs published a book titled "Growing up Duggar" and recently Vuolo and her husband have published a book titled "The Hope We Hold." The Plaintiffs all have, or have in the past, been represented by talent agents or agencies

**PLAINTIFFS' RESPONSE**: Disputed because no evidence is cited to support this statement.

### 2002-2003: Alleged Molestations by Josh Duggar

5. In or around 2002 and 2003, the Plaintiffs, in addition to at least one non-family

2

member, were allegedly molested by their older brother, Josh Duggar.

**PLAINTIFFS' RESPONSE**: Undisputed as to the fact that Plaintiffs were molested by their older brother, Josh Duggar, in or around 2002 and 2003.

### 2004: Meeting with then-State Trooper Joseph Hutchens

6. In or around 2004, Jim Bob Duggar and one or more of the elders at his church, alogn [sic] with Josh Duggar, met with then-State Trooper Joseph Hutchens, who was the State Trooper who inspected car dealers at the time (both Jim Bob & Josh Duggar have operated used car lots). During that meeting, they admitted that Josh Duggar had molested one of more minor females. Ex. 4 Coger Affidavit, Springdale Report.

**PLAINTIFFS' RESPONSE**: Undisputed as to the fact that Jim Bob Duggar went to Cpl. Hutchins' office at the State Police Headquarters and told Cpl. Hutchins about the sexual molestation  Disputed as to the remainder because no evidence is cited to support the remainder.

7. Hutchens gave a "very stern talk" to Josh Duggar about what might happen if he continued such behavior, and then told them that since Josh Duggar had already gone through a treatment program (or, at least, that's what he had been told), there was nothing else to be done. Ex. 4 Coger Affidavit, Springdale Report. The Duggars did not affirmatively report the molestations to any other police officer or agency.

**PLAINTIFFS' RESPONSE**:  Disputed because the cited evidence does not support this statement.   Plaintiffs object to the evidence as it is hearsay.  Fed. R. Evid. 801.

8. In December of 2006, the Duggar family was scheduled to make an appearance

3

on the Oprah Winfrey Show. On December 7, 2006, however, an email was sent to Harpo Studios in Chicago, Illinois (the producer of the Oprah Winfrey Show) that stated as follows:

> BEFORE YOU AIR THE DUGGAR FAMILY FROM ARKASAS WITH ███████ YOU NEED TO KNOW THE TRUTH. THEY ARE NOT WHAT THEY SEEM TO BE. ███████ HAS MOLESTED ███████ WHILE ███████ WERE SLEEPING AND THE PARENTS HAVE BEEN HIDING THIS SECRET FOR A LONG TIME. JIM BOB LIES TO HIS CHURCH AND HIS FRIENDS TO MAKE HIM LOOK GOOD. AT THIS MOMENT HE IS IN TROUBLE WITH THE CHURCH FOR LYING ABOUT ███████ AND THINGS THAT CONCERN THE WAY THE CHURCH MEMBERS REACTED. I THINK THAT YOU SHOULD KNOW THE TRUTH BEFORE THEY MAKE A COMPLETE FOOL OF YOU AND YOUR SHOW. THEY HAVE BEEN ON TV BEFORE AND COME ACROSS AS A PERFECT FAMILY, WHICH COULDN'T BE FURTHER FROM THE TRUTH. THEY JUMP FROM SHOW TO SHOW TO RECEIVE GIFTS FOR THEIR FAMILY AND TO MAKE THEM LOOK REALLY GOOD TO. PLEASE CONSIDER THIS AND CONFRONT THEM ABOU THEIR SECRET.

**PLAINTIFFS' RESPONSE**: Undisputed that an email was sent to Harpo Studios. Disputed as to the remainder because no evidence is cited to support the remainder.

9. Upon receipt of the December 7, 2006 email, the Oprah Winfrey Show did not air the show with the Duggars.

**PLAINTIFFS' RESPONSE**: Disputed because no evidence is cited to support this statement.

10. Shortly after the above-quoted email, a phone call was made to the Arkansas Department of Human Services Hotline in which the caller disclosed information that Josh Duggar had molested his four of his sisters and a non-family member babysitter.

**PLAINTIFFS' RESPONSE**: Disputed. The Springdale Police Department Offense Report ("Offense Report") states that "The Harpo Studies had faxed the letter to the Department of Human Services Hot Line. The report was then opened for investigation." Bledsoe Decl., Ex. 29 [Offense Report].

11. In the wake of the DHS hotline SPD Sgt. Darrell Hignite opened an investigation

4

(the "Investigation") of Josh Duggar following a December 7, 2006 phone call from an Arkansas State Police Investigator. The Investigation is detailed in the "SPD Offense Report." Washington County performed an "agency assist" to aid the investigation.

**PLAINTIFFS' RESPONSE**: Disputed. Det. Hignite was given a copy of the email by Inv. Taylor on or about December 12, 2006. Thereafter interviews were started. Bledsoe Decl., Ex. 29 [Offense Report]. The Washington County Sheriff's Office was also asked to provide an agency assist. Bledsoe Decl., Ex. 1 [Incident Report]. Additionally, no evidence is cited by Defendants to support this statement.

12. At the time of the 2006 investigation, Josh Duggar was an adult.

**PLAINTIFFS' RESPONSE**: Undisputed that Josh Duggar was 18 years old at the time of the 2006 investigation.

13. At the conclusion of the investigation, it was concluded that the statutes of limitations had run on Josh Duggar's alleged sex crimes; as a result, he was never arrested or charged with a crime.

**PLAINTIFFS' RESPONSE**: Undisputed that Det. Hignite was unable to locate an offense inside the statute of limitations. Bledsoe Decl., Ex. 29 [Offense Report]. Disputed as to the remainder because it is not supported by cited evidence.

14. Prior to May of 2015, the story of the alleged molestations of the plaintiffs by their brother was publicly known by a large number of people; in fact, in light of the fact that the allegations were posted on the internet in 2007, the information was potentially (i.e., with an internet connection) publicly available to everyone in the world. *See* Ex. 3, Abtin Affidavit (and

5

quoted archival internet posts telling the story of the alleged molestations in 2007); Ex. 8, Tull Deposition, e. g p. 59 (everyone at their church knew - "dozens" of adults and some older children); Ex. 4, Coger Affidavit (Springdale Report establishes that a number of people knew almost ten years before May of 2015); Ex. 5, Colville Affidavit, Ex. 6, Barnfield Affidavit.

**PLAINTIFFS' RESPONSE**: Disputed. The molestations of the individual Plaintiffs by Josh Duggar, including the identities of the specific victims, the intimate and specific details concerning how each Plaintiff was molested, and the number of times the molestations occurred, were not "publicly known by a large number of people." The cited evidence does not support this statement. The cited evidence only shows that certain select people may have been aware of a rumor that Josh Duggar had sexually molested someone. For example, the Abtin affidavit supports that the identities of Plaintiffs and the intimate details of their assault was not known. The cited portion of Tull's deposition does not state that "everyone at their church knew." Plaintiffs object to the Abtin affidavit as an improper opinion testimony. Fed. R. Evid. 701. Plaintiff further objects to the Tull affidavit because it lacks foundation. Fed. R. Evid. 602.

15. On May 15, 2015, attorney Abtin Mehdizadegan sent FOIA requests to the City of Springdale and Washington County. Mehdizadegan made the FOIA requests to Springdale and Washington County in his own name and did not convey that he was even representing a client. He certainly did not indicate the identity of any client. Ex. 3, Abtin Affidavit.

**PLAINTIFFS' RESPONSE**: Undisputed that FOIA requests were transmitted by Abtin Mehdizadegan to the City of Springdale Police Department and to the Washington County Sheriff's Office on May 15, 2015. Disputed as to the remainder because no evidence is cited to support the remainder.

6

16. On May 19, 2021, at 3:12 p.m., before Washington County or Springdale had responded to the May 15 FOIA request, *In Touch Weekly* ran a "teaser" article entitled "'19 Kids and Counting' Son named in Underage Sex Probe." The story was based on "multiple sources" who were "familiar with the case" and had "seen the police report about the matter," including at least one that was quoted as a source in a May 19, 2021 "teaser" article post. Ex. 2-A, McNamara Affidavit, May 19 Article.

**PLAINTIFFS' RESPONSE**: Undisputed that on May 19, 2015, *In Touch Weekly* published an article entitled "'19 Kids and Counting' Son named in Underage Sex Probe." Disputed as to the remainder because it is not supported by the cited evidence. The article contained in City Defs' Ex. 2-A states that "The charge being pursued while Josh was a minor was sexual assault in the fourth degree, multiple sources who have seen the police report . . . told *In Touch*."

17. The May 19 "teaser" article also referenced former Trooper Hutchens by reporting that the State Trooper to whom Jim Bob initially took Josh to confess the molestations had since been "convicted on child pornography charges" and was "serving a 56-year prison sentence." Ex. 2-A, McNamara Affidavit, May 19 Article.

**PLAINTIFFS' RESPONSE**: Undisputed.

18. On May 20, 2015, at 1:09 p.m., attorney Abtin Mehdizadegan sent a letter by fax to the Warden's office of the Wrightsville Hawkins for Males Unit, requesting an interview with Joseph T. Hutchens, the former Arkansas State Trooper to whom Jim Bob Duggar had taken his

7

son, Josh. Hutchens was housed in that prison. Ex. 3, Abtin Affidavit.

**PLAINTIFFS' RESPONSE**: Undisputed.

19. On May 20, 2015, at 8:54 p.m., attorney AbtintMehdizadegan [sic] received an email from Springdale Police Chief Kathy O'Kelley with an attachment that constituted the City of Springdale's response to Mehdizadegan's FOIA request from May 15, 2021.

**PLAINTIFFS' RESPONSE**: Undisputed that at 8:54 p.m. on May 20, 2015, Mehdizadegan received an email with a copy of the Offense Report in response to the FOIA request.

20. Springdale's 33-page attachment in response to the FOIA request contained significant redactions and the unredacted portions did not contain any of the Plaintiffs' names.

**PLAINTIFFS' RESPONSE**: Undisputed that the Offense Report contained redactions of Plaintiffs' names. Disputed as to the remainder as opinion, including the opinion that Springdale's attachment contained significant redactions. For example, the attachment did not contain redactions of Plaintiffs' parents' names or their address.

21. The redacted Springdale reports added no information or details that were not already known publicly.

**PLAINTIFFS' RESPONSE**: Disputed. The Offense Report contained personal identifying information about the sexual assault victims that was not previously known to the public. *See* Bledsoe Decl., Ex. 29 [Offense Report]. Plaintiffs' identities, and especially the specific, intimate details of Plaintiffs' sexual assault were not previously known. *See* City Defs'

8

Ex. 2-A [Abtin Affidavit posts].

22. On May 21, 2015, at 11:10 a.m., *In Touch Weekly* posted another article online, this time entitled "Bombshell Duggar Police Report: Jim Bob Duggar Didn't Report Son Josh' alleged sex offenses for more than a year." The story did not reveal the identities of any of Josh's alleged victims. Ex. 2-B, McNamara Affidavit, May 21 Article.

**PLAINTIFFS' RESPONSE**: Undisputed that on May 21, 2015, at 11:10 a.m., *In Touch Weekly* posted an article entitled, "Bombshell Duggar Police Report: Jim Bob Duggar Didn't Report Son Josh's alleged sex offenses for more than a year." Disputed as to the remainder because the cited evidence does not support it. The article contained the entire Offense Report, which Plaintiffs' identities as victims could be deduced. See Bledsoe Decl., Ex. 29 [Offense Report].

23. On May 21, 2015, attorney Mehdizadegan sent his paralegal to interview the former State Trooper, Joseph Hutchens, at the prison. The paralegal audio-recorded this interview and brought the recording back to Mehdizadegan, who listened to the recording that afternoon. Ex. 3, Abtin Affidavit.

**PLAINTIFFS' RESPONSE**: Undisputed.

24. Hutchens's interview responses told the whole story of the alleged molestations, including, but not limited to the fact that Josh Duggar's sisters were his victims. This interview was made public. Ex. 3, Abtin Affidavit.

**PLAINTIFFS' RESPONSE**: Disputed because the cited response does not support that Hutchins's interview responses "told the whole story."

9

Plaintiffs also object to the statement on the grounds that it includes hearsay and lacks foundation. Fed. R. Evid. 602, 801.

25. On May 21, 2015, Kelly Jensen, the Enforcement Secretary at the Washington County Sheriff's Department, approached Major Rick Hoyt with an FOIA request from a Little Rock attorney named Abtin Mehdizadegan, with the law firm of Cross, Gunter, Witherspoon and Galchus, P.C. The request was dated May 15, 2015.

**PLAINTIFFS' RESPONSE**: Undisputed.

26. When he reviewed the subject FOA request on May 21, 2015, Major Hoyt was not familiar with Mr. Mehdizadegan, had never met him personally, and had never responded to a request from him before.

**PLAINTIFFS' RESPONSE**: Disputed because no evidence is cited to support this statement.

27. Mehdizadegan's FOIA request, dated May 15, 2015, was made in his own name, did not indicate that he was making the request for anyone else, and certainly did not identify any third party or client.

**PLAINTIFFS' RESPONSE**: Undisputed that the FOIA request by Abtin Mehdizadegan did not state he was making the request on behalf of another. Disputed as to the remainder because no evidence is cited to support this statement. Also disputed that the FOIA request by Abtin Mehdizadegan was made in his own name as it was made on behalf of the law firm Cross, Gunter, Witherspoon & Galchus, P.C., which is printed on the letter.

10

28. When he reviewed the subject FOA request on May 21, 2015, Major Hoyt thought that Mr. Mehdizadegan may have been an attorney for the Duggar family, but never considered that he may have had any other client(s).

**PLAINTIFFS' RESPONSE**: Disputed because no evidence is cited to support this statement. Mr. Hoyt testified at the deposition that he "thought they [Cross Gunter Law Firm] maybe represented the Duggars." *See* Bledsoe Decl., Ex. 4 [Hoyt Dep. Tr.] 28:23-29:3.

29. When Ms. Jensen brought the request to Hoyt, he read through it and took some time to think about it. Hoyt told Ms. Jensen that, because it was a closed case and because he was aware of no applicable exemption, it had to be released. Hoyt did, out of an abundance of caution, ask Ms. Jensen to redact the names and identifying information of the minors named in the report. Hoyt thought that the requesting law firm might object even to those redactions and instructed Ms. Jensen to bring the matter back to his attention if and when that occurred.

**PLAINTIFFS' RESPONSE**: Disputed because no evidence is cited to support this statement. Hoyt testified that he spent about 10 minutes reviewing the unredacted Incident Report when Kelly Jensen first brought it to him. And although he "didn't know of anything in the law that would let [him] release [the report]," he directed Ms. Jensen to take out the juvenile information because "it will buy some time." *See* Bledsoe Decl., Ex. 4 [Hoyt Dep. Tr.] 15:18-16:17.

30. At the time that he reviewed the subject FOIA request on May 21, 2015, Rick Hoyt was not aware of any possible FOIA exemptions in the Arkansas Juvenile Code, the Child

11

Maltreatment Act, or anywhere else in Arkansas law other than the FOIA itself. To the contrary, he believed that all FOIA exemptions were listed comprehensively in the FOIA itself, where more than 25 distinct exemptions are listed. This understanding was based on years of attendance at virtually every FOIA training course held by the Arkansas Attorney General's office (where no statute outside of the FOIA was ever discussed), frequent resort to the FOIA guide promulgated by that office (which he kept on his desk and referenced frequently and which dealt exclusively with the FOIA itself), and frequent discussions with attorneys and other law enforcement colleagues at conferences and elsewhere.

**PLAINTIFFS' RESPONSE**: Disputed because no evidence is cited to support this statement. Hoyt testified that he did not review any Arkansas statutes, including Arkansas Code, §§ 12-18-104, 16-90-1104 and Arkansas Juvenile Code, § 9-27-309, concerning the release of the Incident Report prior to his release of it. *See* Bledsoe Decl., Ex. 4 [Hoyt Dep. Tr.] 21:16-22:11.

31. After Ms. Jensen brought Mr. Mehdizadegan's request and Hoyt instructed her to redact the names and identifying information of the minors named in the report, Hoyt returned to his other duties and went home at the end of the day. Jensen did not return to show Hoyt her redactions or to ask any further questions or for further instructions.

**PLAINTIFFS' RESPONSE**: Disputed because no evidence is cited to support this statement.

32. After arriving at home, Hoyt was watching the 6 o'clock news when a report came on about the tabloid publication of the Springdale report. The report mentioned that Judge

12

Zimmerman had ordered Springdale to destroy their report. This was the first Hoyt had heard about any of this, including, but not limited to the fact that Springdale had released a report. Hoyt immediately made a phone call, which turned into a chain of phone calls, to determine whether the County's FOIA response had gone out with that afternoon's mail, which they quickly determined had occurred.

**PLAINTIFFS' RESPONSE**: Disputed because no evidence is cited to support this statement. Hoyt testified that he first became aware of Judge Zimmerman's order on May 21, 2015, when "[i]t was on television when I went home on the 21st." *See* Bledsoe Decl., Ex. 4 [Hoyt Dep. Tr.] 22: 25-23:8.

33. At the time of County's May 21, 2015 FOIA response, Rick Hoyt had no idea that a Family in Need of Services (FINS) case had been opened with respect to the Duggar family; the County's agency assist report - the report that was redacted and sent as the County's response – did not contain any mention of, or reference to, a FINS case.

**PLAINTIFFS' RESPONSE**: Disputed because no evidence is cited to support this statement.

34. Rick Hoyt has never met any of the Plaintiffs and has never met any members of the Duggar family, except perhaps incidentally at large gatherings. Hoyt had no desire to harm any of them in his involvement in the County's disclosure of May, 2015; instead, he thought he was compelled to make the disclosure under the dictates of the Freedom of Information Act.

**PLAINTIFFS' RESPONSE**: Disputed because no evidence is cited to support this statement. Plaintiffs also object to the statement as it is not a fact but contains an opinion.

13

Case 5:17-cv-05089-TLB Document 158-1 *RESTRICTED* Filed 10/20/21 Page 14 of 20
Case 5:17-cv-05089-TLB Document 158 Filed 10/26/21 Page 14 of 20 PageID #: 3620
PageID #: 2426

35. On May 26, 2015, at 1:53 p.m., *In Touch Weekly* posted another article online, this time entitled "Josh Duggar's Youngest Molestations Victim May Have Been As Young As Five Years Old." The story did not reveal the identities of any of Josh's alleged victims. *See* City Defs' Ex. 2-C, [McNamara Affidavit, May 26 Article].

**PLAINTIFFS' RESPONSE**: Undisputed that on May 26, 2015, *In Touch Weekly* posted the article entitled "Josh Duggar's Youngest Molestations Victim May Have Been as Young as Five Years Old." Disputed as to the remainder because no evidence is cited to support the remainder. The article stated that the victims were Josh Duggar's younger sisters and revealed the age of those sisters. *See* City Defs' Ex. 2-C.

36. On May 27, 2015, attorney Abtin Mehdizadegan received, by U.S. Mail, Washington County's response to his FOIA request from May 15, 2021. Ex. 3, Abtin Affidavit.

**PLAINTIFFS' RESPONSE**: Undisputed that the affidavit states as such. Plaintiffs object to the statement on the grounds that no document is provided to support the statement, including the time of the receipt.

37. Washington County's 7-page disclosure contained significant redactions and the unredacted portions of the disclosure did not contain any of the Plaintiff's names. Ex. 3, Abtin Affidavit.

**PLAINTIFFS' RESPONSE**: Undisputed that Abtin Mehdizadegan's affidavit states the attachment "contained substantial redactions," but disputed that the Incident Report did in fact contain significant redactions. *See* Bledsoe Decl., Ex 1 [Incident Report]. Plaintiffs further

14

object to the statement as it includes an improper opinion statement. Fed. R. Evid. 701.

38. The redacted Washington County disclosure added no new information or details that were not already known publicly. Ex. 3, Abtin Affidavit.

**PLAINTIFFS' RESPONSE**: Undisputed that Abtin Mehdizadegan's affidavits states that "The redacted Washington County reports added no information or details that were not already public." Plaintiffs object to the statement because it lack foundation and includes an improper opinion statement. Fed. R. Evid. 701.

39. On June 3, 2015, *In Touch Weekly* posted another article online, this time entitled "Josh Duggar Chilling Molestation Confession in New Police Report." The story did not reveal the identities of any of Josh's alleged victims. Ex. 2-D, McNamara Affidavit, June 3 Article.

**PLAINTIFFS' RESPONSE**: Undisputed that on June 3, 2015, *In Touch Weekly* posted an article titled "Josh Duggar Chilling Molestation Confession In New Police Report." Disputed as to the remainder because no evidence is cited to support the remainder. The article states that Josh Duggar sexually molested his sisters and a family friend, including his "5-year-old sister." *See* City Defs' Ex. 2-D.

40. Also on June 3, 2015, Deadline posted an article previewing, and then reviewing, the interviews of Plaintiffs Jessa Sewald [sic] and Jill Dillard by Megyn Kelly. The article stated that the interview "will be the fist [sic] time that any of Josh Duggar's victims have been named," as the article also noted that "[a]ll police reports ... redacted the names of the victims." Ex. 9, Deadline June 3 Article.

**PLAINTIFFS' RESPONSE**: Undisputed that the cited evidence states this, but the

15

article lacks foundation and is contrary to the evidence given the almost immediate abuse that was directed at Plaintiffs upon the release of the Offense and Incident Reports.

41. That evening, in their interview with Megyn Kelly, Plaintiffs Jessa Seawald [sic] and Jill Dillard publicly identified themselves as victims of molestation by their brother.

**PLAINTIFFS' RESPONSE**: Disputed because no evidence is cited to support this statement.

42. As a matter of fact, no media, government, or other source ever identified Plaintiffs Jessa Seawald [sic] and/or Jill Dillard as victims of molestation by their brother prior to their Megyn Kelly interview (where they identified themselves as such).

**PLAINTIFFS' RESPONSE**: Disputed because no evidence is cited to support this statement. For example, the Offense Report released by the County included the personal identifying information about Plaintiffs, including the age of one victim. Bledsoe Decl., Ex. 29 [Offense Report]. Following the release of the Incident and Offense Reports, Plaintiffs' identities as the victims of sexual molestation became known based on the personally identifying information in the Incident and Offense Reports. *See* Bledsoe Decl., Exs. 1, 29 and City Defs' Ex. 2-A [Offense Report, Incident Report, May 19, 2015 article].

43. As a matter of fact, no media, government, or other source ever identified any of Josh Duggar's molestation victims other than Plaintiffs Jessa Seawald [sic] and/or Jill Dillard (at least prior to this case, where two others appear to have identified themselves as such by joining as Plaintiffs in this suit).

16

**PLAINTIFFS' RESPONSE**: Disputed because no evidence is cited to support this statement. Following the release of the Incident and Offense Reports, Plaintiffs' identities as the victims of sexual molestation became known based on the personally identifying information in the Incident and Offense Reports. *See* Bledsoe Decl., Exs. 1, 29 and City Defs' Ex. 2-A [Offense Report, Incident Report, May 19, 2015 article].

44. There are no facts that demonstrate the Plaintiffs were secluded in any way congizable [sic] at law with relation to the subject matter of this suit; to the contrary, they have conducted national television interviews and talked on their own reality show about the subject matter of this suit, have published books, posted on social media, and have otherwise behaved in a highly extroverted fashion for the last 10-15 years, at least.

**PLAINTIFFS' RESPONSE**: Disputed because no evidence is cited to support this statement. Plaintiffs further object to the statement as it contains a legal conclusion and opinions. Fed. R. Evid. 704. Prior to the release of the Incident Report, Plaintiffs never publicly disclosed the details of their molestation. *See* Bledsoe Decl., Ex. 22- [Dillard Dep. Tr.] 98:4-6; Ex. 23 – [Seewald Dep. Tr.] 9:23-10:4; Ex. 27– [Vuolo Dep. Tr.] 38:15-17; Ex. 26- [Forsyth Dep. Tr.] 128:16-22.

45. There are no facts that show that any private facts that were publicly disclosed by Rick Hoyt and/or Washington County.

**PLAINTIFFS' RESPONSE**: Disputed because no evidence is cited to support this statement. The Incident Report contains private facts that were publicly disclosed by Rick Hoyt and/or Washington County that were not previously known to the public. *See* Bledsoe Decl., Ex.

17

1 [Incident Report]. Plaintiffs object to the statement as it is not a fact but an improper opinion statement.

46. There are no facts that show that any private facts that were publicly disclosed for the first time by Rick Hoyt and/or Washington County.

**PLAINTIFFS' RESPONSE**: Disputed because no evidence is cited to support this statement. Plaintiffs direct the Court to the Incident Report, which contains private facts that were publicly disclosed by Rick Hoyt and/or Washington County. The Incident Report contains private facts that were publicly disclosed by Rick Hoyt and/or Washington County that were not previously known to the public. *See* Bledsoe Decl., Ex. 1 [Incident Report]. Plaintiffs object to the statement as it is not a fact but an improper opinion statement.

47. There are no facts that show that Washington County or Rick Hoyt intentionally inflicted emotional distress on any of the Plaintiffs.

**PLAINTIFFS' RESPONSE**: Disputed because no evidence is cited to support this statement. Plaintiffs direct the Court to Rick Hoyt's testimony that he did nothing to stop the release of the Incident Report, prior to Abtin Mehdizadegan's receipt of it, upon discovering it should not have been released. *See* Bledsoe Decl., Ex. 4 [Hoyt Dep. Tr.] 23:9-26:13. Plaintiffs object to the statement as it is not a fact but an improper legal conclusion and opinion statement. Fed. R. Evid. 704.

48. There are no facts that show that Washington County or Rick Hoyt engaged in extreme or outrageous behavior.

**PLAINTIFFS' RESPONSE**: Disputed because no evidence is cited to support this statement. Hoyt testified at deposition that he only spent 10 minutes reviewing the unredacted Incident Report, and directed Kelly Jensen to redact juvenile information to "buy some time," indicating he had suspicion that it should not have been released. *See* Bledsoe Decl., Ex 4 [Hoyt Dep. Tr.] 15:18-16:17. Hoyt also testified that he did nothing to stop the release of the Incident Report, prior to Abtin Mehdizadegan's receipt of it, upon discovering it should not have been released. Bledsoe Decl., Ex. 4 [Hoyt Dep. Tr.] 23:9-26:13. Plaintiffs object to the statement as it is not a fact but an improper legal conclusion and opinion statement. Fed. R. Evid. 704.



        Respectfully submitted,

By: */s/ Steven E. Bledsoe*
    Stephen G. Larson (admitted *pro hac vice*)
    *slarson@larsonllp.com*
    Steven E. Bledsoe (admitted *pro hac vice*)
    *sbledsoe@larsonllp.com*
    Jen C. Won (admitted *pro hac vice*)
    *jwon@larsonllp.com*
    **LARSON LLP**
    555 South Flower Street, Suite 4400
    Los Angeles, California 90071
    Telephone: (213) 436-4888
    Facsimile: (213) 623-2000

    Shawn B. Daniels (Ark. Bar No. 99126)
    *shawn@danielsfirm.com*
    **DANIELS FIRM**
    129 W. Sunbridge Drive
    Fayetteville, AR 72703
    Telephone: (479) 521-7000
    Facsimile: (479) 437-2007

    Attorneys for Plaintiffs JILL DILLARD, JESSA SEEWALD, JINGER VUOLO, and JOY DUGGAR