IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**Exhibit 1**

| | |
|---|---|
| **JILL DILLARD, JESSA SEAWALD,** | |
| **JINGER VUOLO, and JOY DUGGAR** | **PLAINTIFFS** |
| VS. | NO. 17-CV-05089-TLB |
| **CITY OF SPRINGDALE, ARKANSAS; et al** | **DEFENDANTS** |

### REPLY TO RESPONSE TO MOTION FOR SUMMARY JUDGMENT

For the reasons set forth below, and in the summary judgment motions, briefs, and statements of fact filed by the City and County, including all supporting exhibits which are all adopted and incorporated by reference in the County's motion for summary judgment, as if set forth word for word, the Separate County Defendants are entitled to immunity and summary judgment as a matter of law.

**I.     Statutory Tort Immunity Application & Analysis: Ark. Code Ann. §21-9-301**

The Defendants have made arguments in their summary judgment motion based on an Arkansas statute which, by its plain language, immunizes all counties and their employees "from liability and from suit for damages." Ark. Code Ann.§ 21-9-301.

In a previous order on the Defendants' initial motions to dismiss in this case, the Court rejected the Defendants' argument, holding that the Arkansas Supreme Court "foreclosed this argument" in the case of *Deitsch v. Tillery*, 309 Ark. 401, 833 S.W.2d 760 (1992), where it held, in pertinent part, that "Section 21-9-301 does not provide immunity for ... intentional acts ... only for negligent acts," *id.* at 407, and had "explicitly affirmed as recently as 2016" that it "has consistently held that §21-9-301 provides city employees immunity for negligent acts, but not intentional ones," explicitly declining to revisit the rule, *see Trammel v. Wright*, 2016 Ark. 147, at 5.  Doc. # 62, p. 20.

Despite the fact that the Defendants quoted the relevant portions of the Court's previous orders in their summary judgment brief, the Plaintiffs nevertheless argue that the Defendants did not "bother to read" those orders.  That is, of course, nonsense.  Not only did the Defendants recognize the Court's prior rulings in their summary judgment motion, but also expressly recognized the fact that this Court is bound by Arkansas Supreme Court precedent.  The Defendants' argument on statutory immunity simply and respectfully contended that the Supreme Court's couching of its own precedent on municipal/county tort immunity under §21-9-301 as a binary choice between negligence and so-called "intentional torts" is an oversimplification - and, thereby, a mischaracterization of its actual jurisprudential precedent.  The Defendants cited numerous cases in support of their argument, including cases where multiple courts, including the Arkansas Supreme Court, have applied §21-9-301 tort immunity to intentional tort claims.  The Plaintiffs responded by trying to

distinguish those cases, even accusing the Defendants of mischaracterizing those cases. The Plaintiffs begin by accusing the Defendants of "blatantly misstating Arkansas law," beginning with the opinion of the Arkansas Supreme Court in *Autry v. Lawrence*, 286 Ark. 501 (1985), which the Plaintiffs incredibly claim "did not involve an intentional tort at all," despite the fact that the case literally begins with the sentence: "***This is a malicious prosecution case.***" Doc. # 150, p. 8; *see also Autry*, 286 Ark. at 501 (emphases added). The annotation in the Arkansas Code likewise summarized the case as follows: "A city police officer acting in his official capacity when he presented evidence to the prosecutor which resulted in plaintiff's arrest ***was immune from an action for malicious prosecution.***" Ark. Code Ann. 21-9-301, (summarizing *Autry v. Lawrence*, 286 Ark. 501, 696 S.W.2d 315 (1985))(emphases added). The Plaintiffs at least agree that the Supreme Court granted immunity under 21-9-301 in *Autry*, but point to the language in *Autry* that, despite granting immunity in "a malicious prosecution case," such immunity was purportedly only available for "acts of negligence." Because the Plaintiffs chose to lambast the Defendants for allegedly mischaracterizing the case (while arguing that a case described by the Court as "a malicious prosecution case" somehow "did not involve an intentional tort at all"), they offer no explanation as to why the Arkansas Supreme Court could immunize a public officer in a case alleging a purported intentional tort while continuing to state that immunity covered only "acts of negligence." Likewise, the Plaintiffs bemoan the Defendants' alleged "sophistry" in their treatment of the Supreme Court's opinion in *Buttolph Trust v. Jarnagan*, where the Plaintiffs claim that the Arkansas Supreme Court "affirmed the trial court's finding that the Plaintiff had establish an intentional tort." Doc. # 150, p. 15 (*citing Jarnagan*, 302 Ark. at 394). The Plaintiffs' summary of *Jarnagan* is inaccurate and misleading. In *Jarnagan*, the Plaintiff had sought a writ of mandamus and sued for damages in the same lawsuit. The trial court dismissed the writ of mandamus action on the pleadings and dismissed suit for damages as improperly joined. The Arkansas Supreme Court disagreed with the trial court's treatment of the suit for damages, finding that it should have been severed rather than dismissed. The Supreme Court, nevertheless held that remand was unnecessary because the public official was entitled to immunity under A.C.A. §21-9-301, even though the Plaintiff had alleged (the matter was proceeding on a motion to dismiss) that the city mayor had intentionally refused to provide water services. In the end, if anything, the *Jarnagan* supports the Defendants' arguments even better than they let on in their summary judgment brief because the Supreme Court directly granted §21-9-301 on allegations of intentional misconduct. *Id.* Again, because the Plaintiffs mischaracterize the procedural history of the case, they don't even try to explain why the Arkansas Supreme Court could immunize a mayor in the face of such allegations.

       The Plaintiffs attempt to criticize and/or distinguish the other cases cited by the Defendants where

statutory immunity was granted in cases alleging intentional torts. They argue that two cited federal cases, *Mosier* and *Dumond*, which indisputably immunized public officials from intentional tort claims under §21-9-301, predate *Deitsch* and are, thus, in Plaintiff's view, irrelevant. The Defendants disagree, of course, as the basis for the pronouncement in *Deitsch* was historical application to negligence claims, but not intentional tort claims. *Mosier* and *Dumond* are two of several cases that disprove this historical application assertion. Plaintiffs also argue that two recent Arkansas Court of Appeals opinions cited by the Defendants, *Monk* and *Elliott*, actually did not actually grant statutory immunity. This is flatly wrong with respect to *Monk*, where the Court held that "the circuit court did not err in finding that Monk's state- law claims, including the slander and conspiracy claims, are barred by statutory immunity." *Monk v. Rogers*, 2021 Ark.App. 148. In *Elliott*, the Court actually held, in pertinent part, that the deputy sheriff "was entitled to summary judgment on the claims of malicious prosecution and false imprisonment based on *qualified* immunity." *Elliott v. Morgan*, 2020 Ark. App. 297 (emphasis added).

Finally, in perhaps their most important response argument on statutory immunity, the Plaintiffs effectively come around to the Defendants' argument. While the Plaintiffs initially accuse the Defendants of "sophistry" in their treatment of *City of Alexander v. Doss*, 102 Ark. App. 232 (2008), their ultimate treatment of the case falls in line with the view of precedent urged by the Defendants. The Plaintiffs first claim that *Doss* "did not involve an intentional tort", despite conceding that a claim for trespass - universally categorized as an intentional tort - was made. Doc. # 150, p. 15. The Plaintiffs then make an argument that is almost identical to the one advanced by the Defendants in their summary judgment motion when they agree that "the alleged trespass in *Doss* was negligent conduct." *Id.* Of course, in addition to itemizing a number of cases where §21-9-301immunity was afforded in intentional tort cases, the Defendants also cited to, and quoted, a number of cases for the propositions (1) that the Arkansas Supreme Court precedent is not nearly as rigid or formulaic as some of its pronouncements might indicate (i.e., not automatically inapplicable unless the plaintiff expressly states a negligence claim, as the Plaintiffs appear to urge) and (2) that public officers should be immunized under §21-9-301, even in many cases where a tort is generally categorized as an intentional tort and even in many cases where the elements of that tort are satisfied. Indeed, as the Supreme Court has expressly held in recent years (long after the *Deitsch* opinion): "Simply because an actor's conduct satisfies the type of intent necessary to establish the [tort], it does not follow that the same conduct is necessarily an intentional tort act that bars an application of the doctrine of qualified immunity." *Williams v. Pate*, 2015 Ark. App. 327, 463 S.W.3d 734, 737 (2015). The Supreme Court has also recently held that it is not the legal claim that the Court should look to in deciding whether immunity applies to a tort; rather, the courts should look to

the facts. *Trammell v. Wright*, 2016 Ark. 147, 489 S.W.3d 636 (2016). The Plaintiffs offered no response to these holdings in their Response, nor to the Defendants' attendant argument that, in this case, the facts - and specifically the facts related to intent (compulsory FOIA law, redaction of disclosures, no prior interactions or animus between the Plaintiffs and Defendants, etc., *see* Defendants' State of Facts) - dictate that §21-9-301 should apply pursuant to the Supreme Court's actual precedent. To the contrary, their ultimate reading of *Doss* squares with the Defendants' view of the precedent as a more nuanced analysis, based on the facts, that calls for the courts to analyze whether the claims involve, and whether the plaintiff can offer evidence to establish, a sufficient level of wilfulness, malice, or other intentionally tortious actions by the public officer rather than by automatically declining to afford immunity based on arbitrary labels.

This difference in viewpoint is critically important in this case. The Plaintiffs urge the Court to deny any request for statutory immunity based simply and solely on their general categorization of their claims as intentional torts. When actually discussing those claims in their briefing, however, the Plaintiffs urge the Court to apply the lowest negligence-level, "could have, should have" intent requirements. This approach, respectfully, does not comply with the actual precedent of the Arkansas Supreme Court. Rather, under the Supreme Court's actual precedent, statutory immunity under § 21-9-301 should apply to bar the Plaintiffs' claims.

## II. Qualified Immunity

In addition to statutory tort immunity under Ark. Code Ann. 21-9-301(a), *supra*, Defendant Hoyt is entitled to qualified immunity as a matter of law with respect to the Plaintiffs' remaining claims. The Plaintiffs respond with a single argument, namely, that a 1980 Supreme Court case, *Owen v. City of Independence*, 445 U.S. 622 (1980) does not allow qualified immunity to be afforded to municipalities (e.g., counties or cities). This is, of course, a true and correct statement of the law and a fundamental premise underlying the Supreme Court's qualified immunity jurisprudence over the last fifty years. However, this holding from *Owen* does not restrict, in any way, an individual public officer's qualified immunity. In fact, the Separate County Defendants stated this exact proposition in their initial summary judgment brief while explaining the distinctions between the separate immunities provided by Ark. Code Ann. §21-9-301(a) and qualified immunity:

> The scope and availability of qualified immunity, which may only be raised by individuals, is also fundamentally different from state statutory tort immunity, which applies to both individuals and entities,...public officers have qualified immunity from liability in their individual capacity unless they violate a clearly established right of which a reasonable person would know.

Doc. # 138, p. 14 (internal citations omitted).

Aside from stating perhaps the most fundamental premise of qualified immunity law - that qualified

4

immunity does not apply to entities, a point expressly made by the Defendants in their summary judgment brief - the Plaintiffs offer no other argument(s) in response to the Defendants' assertion of qualified immunity[1] and certainly do not argue that qualified immunity is not available to individual public officers like Rick Hoyt (it certainly is and has already been afforded to the remaining individual defendants in this case, albeit with respect to their federal claims). They also fail to offer any citations to any case(s) that would have put the individual defendants on reasonable notice that their conduct violated clearly established law.

### III.    Plaintiff's Improper Sanctions Motion

On the basis of their responsive arguments, the Plaintiffs assert that "the County Defendants' argument on their entitlement to the statutory and absolute/qualified immunity is unwarranted by existing law" and that "the County Defendants bring their motion for an improper purpose: causing unnecessary delay." The Plaintiffs go on to reference an April 29th status conference in which the undersigned counsel advised the Court and counsel of the holding of *Behrens v. Pelletier*, 516 U.S. 299 (1996), which held, in part, that a public officer raising qualify immunity may execute an interlocutory appeal of the denial of qualified immunity both after a motion to dismiss and after a motion for summary judgment. The Plaintiffs then falsely assert that the undersigned counsel "indicated that if the Court denied said motion [for summary judgment], the County Defendants intended to seek an interlocutory appeal." Doc. # 150. First, that is not what the undersigned counsel said at the conference; in fact, counsel said almost exactly the opposite:

> Obviously, I can't prognosticate about the likelihood of any further interlocutory appeals in this case because we don't know how the facts are going to shake out, and certainly don't know how the Court would rule based on the full factual recitations of the parties.

Doc. # 112, p. 25, lines 3-7.

In addition to their false statements about the undersigned counsel's remarks at the April 29th hearing, the Plaintiffs' imbedded sanctions motion actually violates Rule 11 in and of itself. While the Plaintiffs base their sanctions request on Rule 11(c)(3), the provision that governs sanctions "On the Court's Initiative," that is not the situation presented by the Plaintiffs' affirmative request/motion imbedded in its summary judgment response brief. The applicable provision is 11(c)(2), which governs motions for sanctions. That provision provides, in pertinent part, that "any motion for sanctions must be made separately from any other motion" and "must not be filed or presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets."

---

[1] The Plaintiffs do offer arguments regarding absolute immunity in their Response brief. The Defendants will not belabor that issue except to respectfully ask the Court to consider the position of a ministerial public officer (and layman in the law) who is tasked with responding to FOIA requests without any statutory provision for pre-disclosure review by any court, effectively creating a quasi-judicial decision for the officer.

Fed. R. Civ. Proc. 11(c)(2). Of course, the Plaintiffs' imbedded motion for sanctions violates both of these mandatory requirements, in addition to being based on false statements.

Even if the Plaintiffs' imbedded motion for sanctions was properly made (it is not), the Plaintiff's underlying argument(s) fails as a matter of fact and law. The Plaintiffs apparently assert - without expressly stating as much or affirmatively citing Rule 11(b), or any case law imposing sanctions under any remotely similar circumstance, that the undersigned counsel has violated Rule 11(b) because, according to the Plaintiffs, "the County Defendants' argument on their entitlement to the statutory and absolute/qualified immunity is unwarranted by existing law" and because "the County Defendants bring their motion for an improper purpose: causing unnecessary delay." The former contention is addressed in the reply arguments above (and in the initial summary judgment brief), but it is important to note that the Plaintiffs (1) make no argument that §21-9-301 statutory immunity and qualified immunity are not separate immunities, (2) make no argument that qualified immunity is not available to individual defendants in tort actions in Arkansas, and (3) make no argument in response to Defendant Rick Hoyt's claim for qualified immunity in this case.

With respect to the latter proposition - that the undersigned counsel raises the immunity defenses for the purpose of causing unnecessary delay - the basis for the contention is unclear. Were the immunity issues as easily decided as the Plaintiffs contend, it would surely take the Court no time to dispense with them. Perhaps the Plaintiffs are - on the basis of their misstatement of the undersigned counsel's remarks at the April conference - seeking sanctions for an appeal that has not yet been taken (or even considered) on a ruling that has not yet been issued (and which the Defendants are entitled to take as a matter of law). Of course, sanctions would certainly not be appropriate on such a chilling, speculative, and/or premature basis.

**IV.     No County Liability - No Allegations & Vicarious Liability Immunity**

Of the Plaintiffs' remaining three claims in this case, two were not even alleged against Washington County. Those two claims, for invasion of privacy by intrusion upon seclusion (¶¶ 101-114) and for the tort of outrage (¶¶ 115-126), do not purport to be made against Washington County, instead expressly making allegations only against the "CITY DEFENDANTS, DEFENDANT HOYT, and IN TOUCH DEFENDANTS." *Id.* The Plaintiffs' Response brief makes no argument that either of these claims is asserted against Washington County.

The only remaining claim actually asserted against Washington County is the Plaintiffs' claim for invasion of privacy by public disclosure of private facts (Doc. # 1, ¶¶ 77-91), which is made, in part, against the "COUNTY DEFENDANTS." The Plaintiffs have never alleged any discrete acts or omissions by Washington County. *See* Doc. # 1, ¶¶ 77-91. The Plaintiffs' summary judgment Response brief does not

contest this point. Instead, the Plaintiffs allege only that Washington County is vicariously liable, despite the language of Ark. Code Ann. 21-9-301(b), which states clearly that "[n]o tort action shall lie against any such political subdivision because of the acts of its agents and employees."

The Arkansas Supreme Court considered the application of the vicarious liability immunity set out in Ark. Code Ann. 21-9-301(b) to an intentional tort claim more than 40 years ago in *Harrington v. Greenbrier*, 262 Ark. 773, 561 S.W.2d 302 (1978) and found it applicable:

> There remains the possibility, argued in the brief, that the plaintiff's execution of the deed was induced by deliberate fraud, in that the city had a present intention not to perform its promise. In that event, however, the cause of action would be one for deceit, which is an action for a tort outside the contract. The legislature has declared that no tort action shall lie against a municipal corporation on account of the acts of its agents and employees. It follows that the affidavit also falls short of establishing a cause of action in tort. Thus the summary judgment was correct.

*Harrington v. Greenbrier*, 262 Ark. at 775-776 (internal citations omitted).

### V. No Liability For Hoyt- Summary Judgment & Immunity

The Plaintiffs' response to Defendant Hoyt's motion for summary judgment is almost entirely premised upon platitudes, accusatory rhetoric, attempts at emotional manipulation, and the alleged "common sense" of their counsel. In stark relief, the Plaintiffs deem the most important precedent in this case - the *Duggar* opinion issued last year by the Court of Appeals in an analytically identical case, and thereafter approved by the Arkansas Supreme Court when it rejected an appeal from that opinion - as "irrelevant."

The fallacies in the Plaintiffs' Response to Hoyt' motion are too numerous to itemize, particularly in anything approaching the Court's pre-set page limit for replies. Additionally, the County Defendants' original moving papers respond to most of the Plaintiffs' arguments and will not be belabored here. The County Defendants will respond briefly to three of the more notable issues where the Plaintiffs' aruguments fail. First, the Plaintiffs' arguments attempt to thread a legal needle with respect to intent. The Plaintiffs simultaneously argue that their remaining claims require a sufficiently high level of intent to bar statutory immunity under Ark. Code Ann. §21-9-301, but then argue that, in actually adjudging those claims, a much lower negligence-style, "could have" or "should have" standard should apply. The Plaintiffs cannot have it both ways. In the end, the *Duggar* opinion faithfully sets out the intent requirements on all three of the remaining claims. That opinion also set out why the Plaintiffs' brother failed to prove the necessary level of intent; those holdings, which addressed the intent of the same Defendants in the context of the same disclosures apply with (at least) equal force to the Plaintiffs in this case. In fact, the undisputed facts in this case evince even less intent than was alleged in the *Duggar* case.

The Plaintiffs also try to have it both ways with respect to the timing and scope of public knowledge

of their respective molestations by their brother and the relative public disclosure of the same. They have no evidence to rebut the evidence in the records that dozens, if not hundreds, of people knew that Josh Duggar had molested his sisters prior to the challenged disclosures in this case and that accounts of these molestations were posted on the internet. The Plaintiffs appear to argue that all of this prior knowledge and even internet disclosure is immaterial because it did not go viral, to use a phrase; instead, the Plaintiffs claim that the outrageous, intrusive, and public disclosure occurred when the Defendants disclosed redacted reports to a single individual, ultimately seeking, improperly, to impute liability to the Defendants for successive subsequent disclosures by third parties. In the end, a "public" disclosure can occur only once and, in this case, it occurred long before the disclosures challenged in this case.

Finally, the Plaintiffs repeatedly, and improperly, lump their claims together, repeatedly asserting that their identities were disclosed by the Defendants (despite the redaction of their names and other identifying information), along with the "details" of their molestations. The Defendants would respectfully suggest there is no evidence in the record sufficient to establish either of these assertions, at least prior to Plaintiffs' own public confirmations of their status as their brother's victims. This point is illustrated by the exercise of an attempt to "fill in" the redacted "blanks" in the disclosures by the City and County. Even at this late date, six years after the disclosures and after all of the Plaintiffs' have publicly confirmed their identities as their brother's victims, this is a difficult or impossible task, precisely because there is no publicly available information - and certainly no evidence in this summary judgment record - to link the Plaintiffs with the details of their respective molestations. This is critical, of course, where the Plaintiffs must establish that discrete private facts about them were publicly disclosed.

### VI. Plaintiff Has Burden of Proof, Even on Summary Judgment - *Celotex* "Scintilla Rule"

In their response to the Defendants' summary judgment statement of facts, the Plaintiffs dispute most of the statements of fact offered by the County Defendants with a statement that the Defendant's factual assertion was disputed on the basis that "no evidence was cited to support the statement." While criticism of the undersigned counsel's inconsistent citations to record in the County Defendants' statement of facts is fair, the County Defendants submitted only 9 short affidavits in support of their motion and statement of facts. Often those affidavits were recited nearly verbatim in the statement of the facts. In short, there is very little doubt about the location of the evidentiary support for most of the County Defendants' statements of fact.

Regardless of citations to the record or even evidentiary support, however, the Plaintiffs' repeated attempts to "dodge" inconvenient facts alleging a lack of evidence on the Defendants' part fails as a matter of law. In *Celotex v. Catrett,* 477 U.S. 317 (1986), the seminal case on interpreting the federal summary

8

judgment rule, F.R.C.P. 56(c), the Supreme Court carefully explained that a party seeking summary judgment always has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, ***if any***,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (Emphasis added). The *Celotex* Court held ultimately that a summary judgment movant need not even submit supporting affidavits in order to prevail. The case may properly be cited for the proposition that a party moving for summary judgment may shift the burden of proof simply by asserting that the plaintiff will be unable to offer any proof on an essential element of his case (generally referred to as the "scintilla rule"). The Court, in reaching its conclusion, explained that its holding in *Adickes v. Kress,* 398 U.S. 144, a 1970 case which construed Rule 56(c), did not mean that the burden is on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact, with respect to an issue on which the non-moving party bears the burden of proof, but instead, the moving party may discharge its burden by pointing out to the district court that "there is an absence of evidence to support the non-moving party's case." The movant may carry its burden "with or without supporting affidavits." *See Celotex supra.* It is the non-movant who must go beyond the pleadings and by affidavit, depositions or other *substantive* evidence designate specific facts showing that there is a genuine issue for trial. *Id.* (Emphasis added).

In the end, then, on summary judgment, it is entirely deficient for a non-moving plaintiff to dispute factual statements made by the moving defendants on the basis that they lack evidentiary support (and certainly on the basis that the evidentiary support was not fully cited). In the cases where the Plaintiffs have made assertion, the Court must assume the facts asserted by the Defendants, both under Celotex and it s progeny and under Local Rule 56.1(c)(where a nonmoving party fails to respond to a statement of fact by the moving party, it must be deemed admitted).

                                                      Respectfully submitted,
                                                      Rick Hoyt & Washington County,
                                                      *Separate Washington County Defendants*

By:     /s/Jason E. Owens
           Jason E. Owens, #2003003
           Ark. Bar. No. 2003003
           JASON OWENS LAW FIRM, P.A.
           **Mailing Address:** P.O. Box 850
           Conway, Arkansas 72033-0850
           **Physical Address:** 1023 Main Street, Suite 204
           Conway, Arkansas 72032
           Telephone: (501) 764-4334
           Telefax: (501) 764-9173
           Email: owens@jowenslawfirm.com