FILED UNDER SEAL

## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## FAYETTEVILLE DIVISION

**JILL DILLARD, JESSA SEEWALD,**                                    **PLAINTIFFS**
**JINGER VUOLO, and JOY DUGGAR**

**vs.**                                   **CASE NO. 5:17-5089-TLB**

**CITY OF SPRINGDALE, ARKANSAS;**                      **DEFENDANTS**
**WASHINGTON COUNTY, ARKANSAS;**
**KATHY O'KELLEY, in her individual and**
**official capacities;**
**ERNEST CATE, in his individual and official capacities;**
**RICK HOYT, in his individual and official capacities;**
**STEVE ZEGA, in his official capacity;**
**And DOES 1-10, inclusive**

### REPLY IN SUPPORT OF SPRINGDALE DEFENDANTS'
### MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, the Plaintiffs have a burden to produce actual material facts,

properly supported by evidence or testimony, to rebut the material facts produced by the

Defendants. Instead, Plaintiffs' Response is replete with arguments presented as fact,

mischaracterizations, inaccurate and unsupported citations to the record, and facts that are not

material to any claim. Plaintiffs have tried to create a dispute from the facts offered by the

Defendants' Statement of Material Facts ("SUMF") by making a host of unsubstantiated

objections and unsupported and immaterial factual assertions. The Plaintiffs resort to derogatory

and inflammatory language because they have no facts that support a claim for intentional

torts. Simply characterizing actions as intentional or outrageous does not create a question of

material fact necessary to defeat summary judgment.  *See Duggar v. City of Springdale,* 2020 Ark. App. 220.  Summary judgment is therefore proper[1].

For example, central to Plaintiffs' claims is the "promise of confidentiality" by the Defendants though they fail to offer proof of such an essential fact in support.  Recognizing the lack of proof, the Plaintiffs imply that the Defendants interviewed the Plaintiffs and made the promise of confidentiality.  *Pl. Resp., p.  3*.  The truth is,  Plaintiffs were interviewed by the Arkansas State Police.  *Compl., ¶*41.  Plaintiffs testified that they cannot recall any of the details of the alleged promise, including whether made by a male or female, a person in uniform or not in uniform, or even in one case whether it occurred at home or off-site.  *ASF,* Ex. 26 *(Forsyth)*, 9:5-11:21; 12:7-12:23; *ASF,* Ex. 27 (*Vuuolo*), 30:2-20; *ASF,* Ex. *22 (Dillard)*, 62:5-62:22; *ASF,* Ex. 23, (*Seewald*) 8:19-9:4.  There is no evidence that anyone with Springdale made or knew of such promise.  It is impossible for law enforcement officers to make such an unconditional promise as these records are routinely publicly released, e.g. prosecution of a criminal case.  This is just one example of many.  In the end, Plaintiffs fail to meet their burden to produce a genuine dispute of material fact, and summary judgment should be granted.

A.     **Plaintiffs have failed to meet proof with proof on the tort of invasion of privacy - intrusion upon seclusion.**

It is undisputed that Cate and O'Kelley believed they were acting as required by law, thus the Plaintiffs' Intrusion upon Seclusion claim fails.  Plaintiffs produced no facts on the crucial element that Springdale Defendants believed that they lacked the legal authority to release the redacted report. *Coombs v. J. B. Transport, Inc.,* 2012 Ark. App. 24, 4-5.  Plaintiffs do not dispute

---

[1] The Springdale Defendants adopt by reference pursuant to Fed. R. Civ. P. 10(c) the Reply in support of Defendants' Joint Motion for Judgment on the Pleadings as well as separate defendants Rick Hoyt and Washington County, Arkansas's Reply in Support of Motion for Summary Judgment and supporting briefs.

that Separate Defendants undertook a wide range of actions to determine how to respond to the FOIA request by law. *Def. Br. Summ. J.* (Doc. 142), p. 10.  Based on the FOIA, their extensive experience, and guidance from multiple sources, Separate Defendants believed that releasing the redacted report was not only legal but required of them as city officials. *Id.*

Plaintiffs argue that Cate and O'Kelley did not wait for more information.  The delayed responses ultimately received from DHS and the Arkansas Municipal League suggested only additional redactions, not withholding from release. (*SUMF* ¶50; *SUMF,* Ex. 1 *Aff. Cate* ¶14).  Plaintiffs do not even speculate that additional redactions would have prevented the internet sleuths from guessing any identities.  Regardless, there is no question of fact that Cate or O'Kelley believed their conduct was legal and proper.  Plaintiffs unsuccessfully disregard the fact that both Cate and O'Kelley received and relied upon legal advice in forming their belief that they were acting within the confines of the law.  Plaintiffs attempt to nullify these facts by asserting that acting under legal advice is not an affirmative defense, but this misses the point. *Def. Br. Summ. J.* pp. 10-11.  The undisputed facts are dispositive to the required element that the tortfeasor must hold the belief of a lack legal authority to make an intrusion.  Here the exact opposite is true.  Cate and O'Kelley believed they were acting legally and in good faith.

Plaintiffs also assert a "rush to release".   This is nothing more than a self-serving characterization of the process to respond to the FOIA in the time required by law.  Plaintiffs ignore the deadlines within the FOIA, but Cate and O'Kelley, as municipal officials in Arkansas had no such luxury. *SUMF,* Ex. 1 ¶11; *SUMF,* Ex. 2 ¶8.  The unsupported characterization does nothing to create a question of fact as to the intent or good faith of Cate and O'Kelley.  There is no actual fact produced by Plaintiffs to dispute the facts that defeat their Intrusion Upon Seclusion claim, nor is there a single case cited.

At best, all Plaintiffs can establish is negligence.  The dearth of proof led Plaintiffs to attach a cache of citizen complaints from the days after the release.  One of these commenters gives his strong opinion about the release and cites to Arizona law.  *ASMF,* Ex. 19-20 (Doc. 152-19; 152-20).  For the reasons set forth in *Def. Mot. Summ. J*., pp. 7-14, the Plaintiffs cannot meet this critical element nor the other required elements of the tort of intrusion upon seclusion.

**B.     Plaintiffs have failed to meet proof with prior on the tort of invasion of privacy - public disclosure of private facts.**

The facts of the public knowledge and the inevitable disclosure of the details of the molestations set forth in *Def. Mot. Summ. J*., pp. 15-18 are not disputed by the Plaintiffs. Without disputing the public knowledge, Plaintiffs advance a novel theory that there are gradients of public knowledge.  This argument ignores the inevitable and concurrent disclosures of the details of the molestations, but nevertheless the Plaintiffs have offered no cases to support their novel argument. The Plaintiffs are simply trying to create a jury question by circumventing their Rule 56 burden.  For the reasons set forth in *Def. Mot. Summ. J*., pp. 14-20, the Plaintiffs cannot meet this critical element nor the other required elements of the tort of public disclosure of private facts.

**C.     Plaintiffs have failed to meet proof with proof on the tort of outrage and summary judgment is proper.**

The uncontested facts of the release of the Offense Report fall way short of establishing the tort of outrage against Cate and O'Kelley.  "[T]he tort of outrage is not easily established and requires clear-cut proof; merely describing the conduct as outrageous does not make it so." *Ross v. Patterson*, 307 Ark. 68, 817 S.W.2d 418 (1991) (citing *Givens v. Hixson*, 275 Ark. 370, 372, 631 S.W.2d 263, 264 (1982).  Thus, the <u>actual conduct</u>, and not the description of the conduct as outrageous, requires such "clear-cut proof."  Courts in Arkansas have established that "one is subject to liability for outrage if he or she willfully or wantonly causes severe emotional distress

4

to another by extreme and outrageous conduct" and further describing such conduct as to "go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society." *Tandy Corp. v. Bone*, 283 Ark. 399, 404, 678 S.W.2d 312, 314 (1984). This very high standard is why Arkansas courts have such a narrow view of outrage. See *Ross, supra*.

As set forth above, Plaintiffs rely on a promise of confidentiality that they have failed to support. In addition, Plaintiffs have failed to address any of the facts which are material to their claim for outrage, including the facts that Cate and O'Kelley lacked prior knowledge of the Plaintiffs (*SUMF*, ¶3) when Cate and O'Kelley learned of the Investigation or the FOIA Request (*SUMF*, ¶¶35, 37, 39), and the good faith belief held by both that the release was required by law and did not involve any malice or ill will (*SUMF*, ¶¶55-56).

In addition, the Plaintiffs have not met any of the factors to establish that the conduct was extreme and outrageous. These factors include the conduct at issue, the period of time over which the conduct took place, the relation between the plaintiff and defendant, and defendant's knowledge that plaintiff is peculiarly susceptible to emotional distress by reason of physical or mental peculiarity. *See Hamaker v. Ivy*, 51 F. 3d 108 (8ᵗʰ Cir. 1995)(citing *Hess v. Treece*, 286 Ark. 434, 693 S.W. 792 (1985)). Cate and O'Kelley believed their actions were required by law and sought out legal opinions before the release, which reflects the good faith of their conduct. *Hess* distinguishes various conducts in outrage cases of a limited duration, which is the case here, as opposed to cases where the conduct lasted months and years. Plaintiffs cannot establish that the brief FOIA response period meets this factor. It is also undisputed that the parties did not know each other or have any type of relationship before the release. Thus, none of the factors under Arkansas law to determine whether conduct is extreme and outrageous can be established.

The facts of the conduct in *Hamaker* may not be comparable, but the analysis is applicable. In *Hamaker*, officials intentionally created a fake arrest warrant to scare a citizen with limited cognitive abilities into believing that he was going to be arrested. Thus, the conduct was clearly intentional and described by the Court as "rather nasty." The plaintiff brought a § 1983 claim, which resolved in favor of the defendants, and an outrage claim. The Court stated "[In] general, misconduct under color of authority is a claim properly brought under § 1983, not under tort of outrage." *Hamaker*, 51 F.3d at 111. The Plaintiffs repeatedly describe the conduct of Cate and O'Kelley as outrageous while providing no facts to meet the high burden for extreme and outrageous conduct. Declaring a good faith ministerial function as outrageous cannot meet the high burden required by the tort of outrage.

Finally, the Plaintiffs have failed to present proof of mental distress sufficient to reach the high bar required for the tort of outrage, i.e., that no reasonable person could be expected to endure it. *Coombs,* 2012 Ark. App. 24. Since the release of the SPD Offense Report, it is undisputed that none of the Plaintiffs have sought medical care for any issues related to the release (*SUMF,* ¶6), have been prescribed medications (*SUMF* ¶65), have been diagnosed by a physician with any mental or emotional problems (*SUMF* ¶69), have sought or received psychiatric, psychological or therapy treatment with the exception of Dillard who attends therapy sessions with her husband for marital issues, issues with her family and the "daily stressors of life" (*Id.*), and none of the Plaintiffs can detail their emotional pain or anguish in any fashion other than broad and summary fashion. *SUMF* ¶68. As such, the Plaintiffs cannot meet the high bar to establish damages under the tort of outrage.

The Plaintiffs submitted the following additional facts which fail to meet the high bar:

- Dillard alleges the receipt of harassing messages online and on Instagram, articles, paparazzi attention, and that she appeared on television to "say it wasn't right that this stuff was out there." *ASF*, Ex. 22.
- Seewald alleges anger, frustration, shame, humiliation and embarrassment; did not go shopping the day; felt horrible to show her face in public; avoided social media; cried; was subjected to crude comments on social media; and appeared on television because "we have been on TV for a while, people expected us to, like, you know, respond somehow." *ASF*, Ex. 23, p. 128.
- Vuolo testified that she was subjected to negative comments from online "trolls" and blocked words on social media. *ASF*, Ex. 27.
- Forsyth testified to online communications and blocking words on social media; paparazzi attention and relocated for about a month. *ASF*, Ex. 26.

Plaintiffs allege that they avoided public outings for almost a year following the release but fail to offer any evidence in support. In fact, this assertion is contrary to the testimony of Plaintiff Forsyth. *ASF*, Ex. 26. Plaintiffs further allege damages from the release relying on the unsworn report of Dr. Robert Wynn, their expert witness. *ASF*, ¶57, 58; *ASF*, Ex. 5, 8, 24 and 28. Wynn's report is unsigned and unsworn and the statements provided by the Plaintiffs to Wynn are, likewise, unsworn. As such, any citation to Wynn's report constitutes inadmissible evidence. Fed. R. Civ. P. 56(c); *Banks v. Deere*, 829 F.3d 661, 668 (8th Cir. 2016) ("unsworn and unattested statements" could not be considered in deciding motion for summary judgment). Plaintiffs have failed to present proof to survive summary judgment. Finally, with respect to the tort of outrage as well as the torts of invasion of process, the City Defendants did not harass the Plaintiffs and cannot be considered the proximate cause of emotional distress caused by the alleged harassment of third-parties online or paparazzi.

For the reasons set forth herein, as well as the Springdale's Defendant's Motion for Summary Judgment and the incorporated pleadings, Cate and O'Kelley should be afforded qualified, good faith, and statutory immunity. Additionally, the City of Springdale should be afforded vicarious liability immunity as provided by law.

Respectfully Submitted,

R. Justin Eichmann (Ark. Bar No. 2003145)
E-mail:  jeichmann@arkansaslaw.com
Thomas N. Kieklak (Ark. Bar No. 92262)
Email:  tkieklak@arkansaslaw.com
Morgan S. Doughty (Ark. Bar No. 2010158)
HARRINGTON, MILLER, KIEKLAK,
EICHMANN & BROWN, P.A.
4710 S. Thompson, Suite 102
Springdale, AR  72764
Phone: (479) 751-6464
Fax: (479) 751-3715
Email:  mdoughty@arkansaslaw.com
                    and
Susan Keller Kendall (Ark. Bar No. 98119)
KENDALL LAW FIRM, PLLC
3706 Pinnacle Hills Parkway, Suite 201
Rogers, Arkansas 72758
Phone: (479) 464-9828
Fax: (479) 464-9768
Email:  skk@kendalllawfirm.com
COUNSEL FOR SPRINGDALE, DEFENDANTS

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that on the 27th day of October 2021, a true and correct copy of the above and foregoing was filed using the Court's CM-ECF System, which effected service on all counsel of record:

| | |
|---|---|
| Steven E. Bledsoe<br>Stephen G. Larson<br>Jen C. Won<br>LARSON O'BRIEN, LLP<br>555 S. Flower Street<br>Suite 4400<br>Los Angeles, CA 90071<br>(213) 436-4888<br>sbledsoe@larsonobrienlaw.com<br>slarson@larsonllp.com<br>jwon@larsonllp.com | Shawn B. Daniels<br>DANIELS FIRM<br>129 W. Sunbridge Drive<br>Fayetteville, AR 72703<br>479-521-7000<br>Fax: 479-437-2007<br>shawn@danielsfirm.com |

Jason Owens (Ark. Bar No. 2003003)
JASON OWENS LAW FIRM, P.A.
1023 Main St., Suite 204
Conway, Arkansas 72033
(501) 764-4334
owens@jowenslawfirm.com

R. Justin Eichmann (Ark. Bar No. 2003145)