FILED UNDER SEAL

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JILL DILLARD, JESSA SEEWALD,                              **PLAINTIFFS**
JINGER VUOLO, and JOY DUGGAR

vs.                              **CASE NO. 5:17-5089-TLB**

CITY OF SPRINGDALE, ARKANSAS;                            **DEFENDANTS**
WASHINGTON COUNTY, ARKANSAS;
KATHY O'KELLEY, in her individual and
official capacities;
ERNEST CATE, in his individual and official capacities;
RICK HOYT, in his individual and official capacities;
STEVE ZEGA, in his official capacity;
And DOES 1-10, inclusive

## DEFENDANTS' JOINT RESPONSE TO PLAINTIFFS' ADDITIONAL STATEMENT OF MATERIAL FACTS

The Defendants, Kathy O'Kelley, Ernest Cate, and City of Springdale, Arkansas, Rick Hoyt, and

Washington County, Arkansas, by and through the undersigned attorneys, for their Joint Response to

Plaintiffs' Additional Statement of Material Facts, state as follows:

General Objection:   Plaintiffs' Additional Statement of Material Facts ("ASF") contains

numerous assertions of facts throughout which are not supported by the record or by the cited testimony

or evidence in the record in violation of Fed. R. Civ. P. 56 and Local Rules 56.1(c)

### A.    The Investigation Into Plaintiffs' Sexual Molestation

1.    Plaintiffs are sisters who were molested by their brother when they were

minor children. *See* Bledsoe Decl., Ex. 29 [Offense Report at Springdale4374]. *It is*

*undisputed that the Plaintiffs are sisters who were molested by their brother Josh Duggar*

*when they were minor children, however the cited evidence does not support the proposed*

*fact.*

1

2.      On or around December 7, 2006, the Arkansas State Police Hotline Call Center received a report alleging Josh Duggar sexually abused minor children in 2002 and 2003. *See* Bledsoe Decl., Ex. 29 [Offense Report at Springdale4374-75]. *It is undisputed that on or around December 7, 2006, the Arkansas State Police Hotline Call Center received a report regarding alleged victims of sexual assault. The remainder of the proposed fact is not supported by the cited evidence.*

3.      Five days later, the Washington County Sheriff's Office conducted interviews with Plaintiffs and their parents, and investigators advised that all statements would remain confidential per Arkansas law and would not be disclosed to the public. *See* Declaration of Steven E. Bledsoe ("Bledsoe Decl."), Ex. 1 [Hoyt Dep. Ex. 29 (Incident Report)]; Ex. 22 [Dillard Dep. Tr.] at 64:4-66:17; Ex. 27 [Vuolo Dep. Tr.] at 30:14-23; Ex. 26 [Forsyth Dep. Tr.] at 9:23- 10:4. *The cited evidence does not support the proposed fact. Washington County did not interview the Plaintiffs at any time. None of the testimony cited in this alleged fact establishes that any investigators with the Washington County Sheriff's Office had any contact with the Plaintiffs or their parents, directly or indirectly.*

4.      The contents of the interviews, including Plaintiffs' individually-identifying personal information and specific details of the molestations, were documented in the City of Springdale, Arkansas Police Department Offense Report and the Washington County, Arkansas Sheriff's Office official Incident Report. *See* City Defs.' Ex. 9B; Bledsoe Decl., Ex. 1. *It is undisputed that contents of interviews were documented in the City of Springdale, Arkansas Police Department Offense Report and the Washington County, Arkansas Sheriff's Office official incident report. The remainder of the proposed fact is not supported by the cited evidence.*

5.      Following the interviews, Detective Hignite completed a Family in Need of Services ("FINS") affidavit for a FINS case to be opened, which was forwarded to the Washington County Prosecutor's Office. *See* Bledsoe Decl., Ex. 29 [Offense Report at Springdale4395]. *It is undisputed that the Offense Report states the above.*

**B.      The Freedom of Information Requests About The Duggar Family**

6.      On May 15, 2015, Abtin Mehdizedegan of law firm Cross, Gunter, Witherspoon & Galchus, P.C. submitted a Freedom of Information Act of 1967 ("FOIA") request to the City of Springdale Police Department and the Washington County Sheriff's Office. *See* City Defs.' Ex. 14 ¶4; County Defs.' Ex. 2B. *It is undisputed.*

7.      The FOIA request sought any and all documentation relating to Plaintiffs' parents, Josh Duggar, and their previous and current addresses, and the incident report filed by Detective Hignite. *See* City Defs.' Ex. 14 ¶4; O'Kelley Depo, Ex. 1. *It is undisputed that the FOIA request sought public records relating to Josh Duggar, his parents, and their associates, and the incident report filed by Detective Hignite. The remainder of the proposed fact is not supported by the cited evidence.*

8.      When the FOIA request on the Duggars was submitted, Kathy O'Kelley was the Chief of the Springdale Police Department and had the authority to approve disclosure of public record pursuant to FOIA requests. *See* Bledsoe Decl., Ex. 2 [O'Kelley Dep. Tr.] at 14:19-15:4; City Defs.' Ex. 2. *It is undisputed that Kathy O'Kelley was the Chief of Police of the Springdale Police Department beginning in 2005 and continuing for approximately ten (10) years. The remainder of the proposed fact is not supported by the cited evidence.*

9.      When the FOIA request on the Duggars was submitted, Ernest Cate was a City Attorney for Springdale, Arkansas, who advised the Springdale Police Department. *See*

BledsoeDecl., Ex. 3 [Cate Dep. Tr.] at 7:10-19; City Defs.' Ex. 1. *It is undisputed.*

10.     When the FOIA request on the Duggars was submitted, Rick Hoyt was a major at the Washington County Sheriff's Office who oversaw the Office's Records Department, including disclosures of public record pursuant to FOIA requests. *See* Bledsoe Decl., Ex. 4 [Hoyt Dep. Tr.] at 5:19-21. *It is undisputed that Rick Hoyt was a major at the Washington County Sheriff's Office when the FOIA request was submitted. The remainder of the proposed fact is not supported by the cited evidence.*

11.     On May 19, 2015, a tabloid magazine, *In Touch Weekly*, posted an article on itswebsite under the headline "'19 Kids and Counting' Son Named in Underage Sex Probe." *See*City Defs.' Ex. 7A. *It is undisputed.*

12.     The article promoted sales of the hardcopy version: "for the latest inside Josh Duggar's shocking past, pick up the new issue of *In Touch Weekly*, on newsstands tomorrow!" *See* City Defs.' Ex. 7A. *It is undisputed that a portion of the article is stated above.*

13.     On May 19, 2015, Access Hollywood sent an email to the City of Springdale Police Department stating that *In Touch Tomorrow* would publish an article about Josh the nextday. *See* Bledsoe Decl., Ex. 6 [Springdale0671]. *It is undisputed that a portion of the email is stated above.*

14.     Upon receiving the email from Access Hollywood, Captain Ron Hritz at the Springdale Police Department sent an email to Defendant O'Kelley and others stating, "Soundslike we have a leak." *See* Bledsoe Decl., Ex. 6 [Springdale0669]. *It is undisputed that a portion of the email is stated above.*

15.     O'Kelley forwarded Captain Hritz's email to Cate and stated that "[l]et's

have a conversation about this—we were preparing to release the report ..." *See* Bledsoe Decl., Ex. 6[Springdale0669]. *It is undisputed that a portion of the email is stated above.*

16.     O'Kelley also forwarded Captain Hritz's email to the City of Arkansas Mayor Doug Sprouse, stating "HERE IS AN INTERESTING TURN OF EVENTS FOR THE DUGGAR FAMILY – WE ARE PREPARING TO REDACT AND RELEASE THE INVESTIGATION BUT THIS IS A NEW TWIST TO THE ORIGINAL REQUEST – NOW WE ARE HEADING TO THE TABLOID NEWS!" *See* Bledsoe Decl., Ex. 7 [Springdale2888]. *It is undisputed that the email is stated above.*

### C.     Springdale Police Department's Release of the Offense Report

17.     On May 20, 2015, O'Kelley communicated with Mehdizedegan and told him that the Springdale Police Department would release the Offense Report that evening. *See* City Defs.' Ex. 2 ¶8. *It is undisputed, although the cited evidence does not support the proposed fact.*

18.     On May 20, 2015, O'Kelley also spoke with Doug Thompson, a reporter at Arkansas Democratic Gazette and decided to provide him with a copy of the Offense Report. *See* City Defs.' Ex. 2 ¶8. *It is undisputed that O'Kelley spoke with Doug Thompson on May 20, 2015, but the cited evidence does not support the proposed fact.*

19.     Prior to the release of the Offense Report, O'Kelley and Cate asked Mark Hayes, Director at the Arkansas Municipal League, why they should not release the Offense Report pursuant to a FOIA request. *See* Bledsoe Decl., Ex. 2 [O'Kelley Dep. Tr.] at 104:1-13; Ex. 3 [Cate Dep. Tr.] at 22:25-24:9. *It is undisputed that O'Kelley and Cate consulted Mark Hayes regarding the FOIA request and the release of the Offense Report, however the cited evidence does not support the proposed fact.*

20.     In response, Hayes stated that he needed to look into the issue. *See*

BledsoeDecl., Ex. 2 [O'Kelley Dep. Tr.] at 97:13-17; Ex. 3 at 23:2-16. *It is undisputed that Hayes stated that he needed to look into the issues, however the cited evidence does not support the proposed fact.*

21.     Prior to the release, O'Kelley and Cate did not speak with anyone at the Department of Human Services about whether the Offense Report may be released or seek courtapproval. *See* Bledsoe Decl., Ex. 2 [O'Kelley Dep. Tr.] at 97:13-17, 134:19-22; Ex. 3 [Cate Dep. Tr.] at 23:2-16, 35:9-14. *It is undisputed that O'Kelley and Cate called DHS multiple times but did not receive a call back prior to the release of the Offense Report and that they did not seek court approval prior to the release of the Offense Report.*

22.     When O'Kelley and Cate asked other City Attorney and a juvenile prosecutor about the release of the Offense Report, they asked for a reason why the Offense Report may notbe released, not whether the Offense Report should be released. *See* Bledsoe Decl., Ex. 3 [Cate Dep. Tr.] 12:23-13:20, 23:17-25, 28:11-20). *The cited evidence does not support the proposed fact that O'Kelley asked the other City Attorney and juvenile prosecutor about the Offense Report. The cited evidence supports that Cate asked the other City Attorney and a Juvenile Prosecutor for a reason why he would not have to release out of an abundance of caution.*

23.     Hritz called Jim Bob Duggar prior to the release and told him the Offense Reportwould be released, before Cate or anyone else approved the release of the Offense Report. *See* Bledsoe Decl., Ex. 2 [O'Kelley Dep. Tr.] 105:23-106:12. *The cited evidence does not support the proposed fact.*

24.     Hritz applied redactions to the Offense Report, leaving the names of the victims'parents, their address, and other personally identifying information unredacted. *See*

Bledsoe Decl., Ex. 2 [O'Kelley Dep. Tr.] 121:9-122:1; City Defs.' Ex. 9, Ex. B. *It is*
*undisputed that Hritz applied redactions to the Offense Report, leaving the names of Jim Bob*
*and Michelle Duggar's and the address. The cited evidence does not support the remainder*
*of the proposed fact.*

25.     At 8:58 p.m., O'Kelley emailed a copy of the Offense Report to
Mehdizedegan and Thompson before the redacted report was approved for release by Cate or
anyone else. *See* Bledsoe Decl., Ex. 9 [Ex. 4 to O'Kelley Depo.]; Ex. 2 [O'Kelley Dep. Tr.]
87:11-25, 88:10-20; Ex. 25 [Springdale2863]. O'Kelley and Cate did not analyze whether the
redactions were sufficient to protect personal identifying information of the victims. *See*
*Bledsoe Decl.* Ex. 2 [O'Kelley Dep. Tr.] 115:1-24; Ex. 3 [Cate Dep. Tr.] 86:10-18. *It is*
*undisputed that O'Kelley emailed a copy of the Offense Report to Mehdizedegan and*
*Thompson at 8:58 p.m. The cited evidence does not support the remainder of the proposed*
*fact.*

26.     O'Kelley forwarded a copy of the report to Cate at 9:04 p.m. for Cate's review.
*See* Bledsoe Decl., Ex. 10 [Ex. 10 to O'Kelley Dep., at Springdale0916]. *It is undisputed that*
*O'Kelley forwarded a copy of the report to Cate at 9:04 p.m. The cited evidence does not*
*support the remainder of the proposed fact.*

27.     On May 21, 2015, Hayes at the Arkansas Municipal League forwarded an email
from Cate enclosing the Offense Report to others at the Arkansas Municipal League. Hayes'
email stated, "Please review ASAP. An [sic] FOIA request has been made and the city
believes it must release in the redacted form as attached. Can they release under juvenile
criminal statutes? (The suspect was never charged.) have they redacted sufficiently, in
particular does the name of the parents need to be redacted? We are facing a 9am or so

deadline if not earlier." *See* Bledsoe Decl., Ex. 10 [Ex. 10 to O'Kelley Dep., at Springdale0916]. *It is undisputed.*

28.      Amanda LaFever responded to Hayes' email stating that Arkansas Code Annotated § 16-90-1104 provided that the Offense Report was exempt from disclosure under the FOIA. *See* Bledsoe Decl., Ex. 10 [Ex. 10 to O'Kelley Dep., at Springdale0915]. *It is undisputed that LaFever sent an email containing Arkansas Code Annotated § 16-90-1104 to Hayes, however the cited evidence does not support the remainder of the proposed fact.*

29.      Upon receiving LaFever's email, O'Kelley emailed Mehdizedegan requesting not to use the Offense Report sent on May 20, 2015. *See* Bledsoe Decl., Ex. 11 [Ex. 3 to O'Kelley Dep. at Springdale1594]. *It is undisputed that O'Kelley emailed Mehdizedegan requesting not to use the Offense Report sent on May 20, 2015, however the cited evidence does not support the remainder of the proposed fact.*

30.      Abtin replied to O'Kelley's email stating that he had already sent the Offense Report to his client and "it may be too late." *See* Bledsoe Decl., Ex. 11 [Ex. 3 to O'Kelley Dep. at Springdale1594]. *It is undisputed that a portion of the email is stated above.*

31.      O'Kelley also emailed Cate that morning, forwarding an email from Abtin recommending that "everyone consult Ark. Code Ann. Section 16-90-1102 (West) for a good night's sleep: 'Failure to comply with this subchapter does not create a claim for damages against a government employee, official, or entity.'" *See* Bledsoe Decl., Ex. 12 [Springdale1684]. *It is undisputed that a portion of the email is stated above.*

32.      Gina Bacchiocchi from Radar Online submitted a FOIA request to the Springdale Police Department stating, "I previously called last week and requested a copy of a police report involving Josh Duggar's alleged sexual offenses, but was told nothing

involving minor parties could be disclosed to the public. However, In Touch magazine published the full report today, citing the FOIA." Bacchiocchi's email also asked, "Since I was told the FOIA does not override laws to protect minor victims, can you explain how the police report was initially released? Was it not through a FOIA request, as In Touch Weekly claims?" *See* Bledsoe Decl., Exs. 13, 14 [Springdale0966 and 2554]. *It is undisputed that a portion of the emails are stated above.*

33.    That same day, Captain Hritz sent an email to Jim Bob Duggar with a copy of an updated version of the redacted Offense Report. Hritz's email stated that he was told to release this copy to the media. *See* Bledsoe Decl., Ex. 25 [Springdale2863]. *It is undisputed that Hritz sent Duggar a copy of the updated version of the redacted Offense Report on May 21, 2015, although the phrase "that same day" is unsupported by any evidence.*

34.    The Springdale Police Department conducted an internal investigation into how the media became aware of Josh Duggar's molestation after the release of the Offense and Incident Reports. The investigation revealed that the Offense and Incident Reports were password protected and not available to most of the employees at the Springdale Police Department and the Washington County Sheriff's Office. City Defs.' Ex. 11, Ex. A. *It is undisputed that the Springdale Police Department conducted an internal investigation to determine if any employees may have provided direct or indirect information to In Touch magazine or furthered the release of information and the investigation revealed that the Offense Report was password protected but the proposed fact is only a partial recitation of the investigation and the cited evidence does not support the remainder of the proposed fact*

35.    At the time of the release of the Offense Report by the City, Plaintiff Joy Forsyth was a minor child. *See* Bledsoe Decl., Ex. 1 [Ex. 29 to Hoyt Depo]. *It is undisputed,*

*however the cited evidence does not support the proposed fact.*

### D.    Washington County's Release of the Incident Report

35.    On May 21, 2015, In Touch magazine published the Offense Report released from the City. City Defs.' Ex. 2B. *The cited evidence does not support the proposed fact.*

36.    The same day, Hoyt ordered that the Incident Report be released to Mehdizedegan pursuant to the FOIA request. *See* Bledsoe Decl., Ex. 15 [Ex. 30 to Hoyt Depo]; Ex. 4 [Hoyt Dep. Tr.] 16:6-17. *It is undisputed, however the cited evidence further indicates that Hoyt requested that the juvenile information be redacted.*

37.    Hoyt reviewed the Incident Report for a few minutes and ordered a County employee to redact the juvenile information from the Incident Report. *See* Bledsoe Decl., Ex. 4 [Hoyt Dep. Tr.] 15:18-22; 16:15-17. *It is undisputed that Hoyt reviewed the Incident Report for ten minutes and ordered a County employee to redact the juvenile information from the Incident Report.*

38.    An employee at the Sheriff's Office redacted some information from the Incident Report, but Plaintiffs' current and former addresses, Josh's name, and other personal details, including age of at least one of Plaintiffs at the time of the molestation, were not redacted. *See* Bledsoe Decl., Ex, 4 [Hoyt Dep. Tr.] 15:23-16:21, Ex. 1 [Ex. 29 to Hoyt Dep.]. *This proposed fact is undisputed with the exception of "other personal details" as that term is undefined.*

39.    Hoyt did not review the redactions, follow up to make sure that the County employee followed his instructions, or request an extension of time to respond to the FOIA request. *See* Bledsoe Decl., Ex. 4 [Hoyt Dep. Tr.] 19:12-16, 29:6-10, 30:3-9. *It is undisputed.*

40.     Before the release of the Incident Report, Hoyt did not conduct any legal research, consult anyone, or seek a court order about whether the Incident Report may be released. *See* Bledsoe Decl., Ex. 4 [Hoyt Dep. Tr.] 20:22-21:25. *It is undisputed.*

41.     The Incident Report was sent to Mehdizedegan via U.S. Mail. *See* Bledsoe Decl.,Ex. 4 [Hoyt Dep. Tr.] 23:23-24:1. *It is undisputed.*

42.     Hoyt knew that the Incident Report contained information about minor children. *See* Bledsoe Decl., Ex. 4 [Hoyt Dep. Tr.] 16:15-17. *It is undisputed.*

43.     At the time of the release of the Incident Report by the County, Plaintiff JoyForsyth was a minor child. *See* Bledsoe Decl., Ex. 4 [Hoyt Dep. Tr.] 23:23-24:1. *It is undisputed, however the cited evidence does not support the proposed fact.*

E.     **Judge Zimmerman's Order**

44.     On May 21, 2015, Judge Zimmerman, a juvenile court judge for the Circuit Courtof Washington County, Arkansas, entered an order expunging the Offense Report from the public record to protect the identities of the victims. Judge Zimmerman pointed to Arkansas Code Annotated § 16-90-1104's prohibition against law enforcement disclosure of information "directly or indirectly identifying the victim of a sex crime." *See* Bledsoe Decl., Ex. 16 [Ex. 24 to O'Kelley Dep.]. *It is undisputed with the exception that the Order stated the reason was to protect the identity of the Movant in Case No. J 2007-38 not to "protect the identifies of the victims."*

45.     After learning of Judge Zimmerman's ruling, on May 22, 2015, Hoyt reached out to Judge Zimmerman about whether the Incident Report may be released. *See* Bledsoe Decl., Ex. 4 [Hoyt Dep. Tr.] 22:25-23:8; 24:9-22. *It is undisputed that Hoyt spoke to Judge*

*Zimmerman's assistant and not to Judge Zimmerman.*

46.     After receiving Hoyt's inquiry, Judge Zimmerman called the County Sheriff's Office and told them not to release the Incident Report. *See* Bledsoe Decl., Ex. 4 [Hoyt Dep. Tr.]24:23-25. *It is undisputed.*

47.     Hoyt did not do anything to retrieve the Incident Report from mail or prevent Mehdizedegan from disseminating the Incident Report, although the Incident Report was sent to an address over 200 miles away via the Postal Service. *See* Bledsoe Decl., Ex. 4 [Hoyt Dep. Tr.]17:17-24; 25:10-26:13. *The cited evidence is incomplete; see Hoyt Dep. Tr. 23:16-24:8 (Hoyt made calls to check whether the Report had been mailed and to check the outgoing mail bin.)*

48.     On May 26, 2015, In Touch published the Incident Report with a title, "Josh Duggar's Youngest Molestation Victim May Have Been As Young As 5-Years Old." City Defs.'Ex. 2C. *The cited evidence does not support the alleged fact.*

49.     That same day, a citizen submitted a complaint to the Springdale Police Department stating, "To say she was complying with the 'FOIA' law is incorrect. That law does not apply to children without a court order. All the years I spent being very careful when matriculating student transcripts, NEVER did we divulge legal information about a minor without a court order." *See* Bledsoe Decl., Ex. 17 [Springdale 0209]. *It is undisputed that a portion of the email is stated above.*

50.     On June 4, 2015, Dorothy Blackman, another citizen wrote to the Springdale Police Department, stating, "As a member of the FOI Society, I find it abhorrent that Chief O'Kelley would hide behind the FOIA and an apparent 'discussion' with the Springdale City Attorney to justify the public vetting of a privately protected affidavit . . Such affidavits are

EXPLICITLY excluded from FOI standards due to the age of the alleged perpetrator and out ofconcern for the public disclosure of its victims." *See* Bledsoe Decl., Ex. 18 [Springdale 0504]. *It is undisputed that a portion of the email is stated above.*

51.     On June 5, 2015, another citizen submitted a complaint to the Springdale Police Department stating, "I noticed that the parents' names of the 'babysitter' were conveniently redacted, why not the parents' names of the other victims?" *See* Bledsoe Decl., Ex. 19 [Springdale 0203]. *It is undisputed that a portion of the citizen complaint is stated above.*

52.     On June 5, 2015, a citizen named Michael Zoltowski emailed O'Kelley, stating, "You claim to have researched whether or not you were required to release the information on the Duggar family, when you received a FOIA request for it. It took me just 5 secs via a google search to find the document attached, which states quite clearly that you were NOT to release them, same as Judge Stacey Zimmerman's ruling." *See* Bledsoe Decl., Ex. 20 [Springdale 0230]. *It is undisputed that a portion of the email is stated above.*

**F.     Public Backlash Against Plaintiffs After The Release**

53.     Plaintiffs, who featured in a reality television show called *19 Kids and Counting*, were subjected to perverse abuse and harassment from the public following the release of the poorly redacted Offense and Incident Reports. *See* Bledsoe Decl., Ex. 21 [JD000001-000017]; Ex. 23 [Seewald Dep. Tr.] 38:24-39:22; 53:7-54:15; 63:25-64:7; 67:18-22; Ex. 22 [Dillard Dep.Tr.] 79:23-80:7; 80:17-81:3; 91:15-24; 94:2-13; Ex. 27 [Vuolo Dep. Tr.] 73:4-17; 85:22-86:20; 92:7-93:22; Ex. 26 [Forsyth Dep. Tr.] 36:6-14; 41:7-18; 54:22-55:6). *It is undisputed the Plaintiffs have received negative comments from the public or online and that two of the Plaintiffs described these comments as harassing. The cited*

13

*evidence does not characterize the negative comments as "perverse abuse." The cited evidence also reflects negative comments that due not relate to the release.*

54.     Plaintiffs received and continue to receive the enormous volume of hateful and hurtful comments on their social media accounts and had to block certain words or phrases from the comment section of their accounts. *See* Bledsoe Decl., Ex. 21 [JD000001-000017]; Ex. 23 [Seewald Dep. Tr.] 38:24-39:22; 53:7-54:15; 63:25-64:7; 67:18-22; Ex. 22 [Dillard Dep. Tr.] 79:23-80:7; 80:17-81:3; 91:15-24; 94:2-13; Ex. 27 [Vuolo Dep. Tr.] 73:4-17; 85:22-86:20; 92:7-93:22; Ex. 26 [Forsyth Depo] 36:6-14; 41:7-18; 54:22-55:6. *It is undisputed the Plaintiffs stated  that they received negative comments on their social media accounts and had to block certain words or phrases from the comment section of their accounts, but the cited evidence does not support the characterization of an "enormous volume" of the comments or a description of the comments as "hateful and hurtful" though, certain Plaintiffs testified that comments made them feel hurt.*

55.     Because of the attacks from the public against Plaintiffs and the humiliation theyexperienced, Plaintiffs avoided public outings for almost a year following the release of the

Offense and Incident Reports. *See* Bledsoe Decl., Ex. 21 [JD000001-000017]; Ex. 23 [Seewald Dep. Tr.] 38:24-39:22; 53:7-54:15; 63:25-64:7; 67:18-22; Ex. 22 [Dillard Dep. Tr.] 79:23-80:7; 80:17-81:3; 91:15-24; 94:2-13; Ex. 27 [Vuolo Dep. Tr.] 73:4-17; 85:22-86:20; 92:7-93:22; Ex. 26 [Forsyth Dep. Tr.] 36:6-14; 41:7-18; 54:22-55:6. *It is undisputed that at least one of the Plaintiffs avoided public outings for approximately 6-12 months, the remainder is not supported by the cited evidence for the proposed fact.*

56.     Two Plaintiffs, Dillard and Seewald, also felt compelled to appear at a

14

television interview to clarify the details concerning their sexual molestation. *See* Bledsoe Decl., Ex. 22 [Dillard Dep. Tr.] 95:12-21; Ex. 23 [Seewald Dep. Tr.] 128:17-129:10. *It is undisputed that Dillard and Seewald chose to appear at a television interview, although the stated reason for doing so is not supported by the cited evidence.*

57.     The overwhelming attention from the public and paparazzi forced Plaintiffs and their parents to leave their homes and relocate to out of the state for over a year. *See* Bledsoe Decl., Ex. 24 [Wynne Report, JD004649-JD004677]. *The cited evidence does not support the alleged fact. Additionally, the Wynne Report is unverified and is not sworn, thus inadmissible pursuant to Fed. R. Civ. P. 56. Further, the report of Dr. Wynne is inadmissible for reasons set forth in the Motion to Exclude Testimony of Witnesses Designated by Plaintiffs as Experts* (Doc. 143).

58.     Plaintiffs are still haunted by the emotional, psychological, and interpersonal damage resulting from the release of the Offense and Incident Reports. *See* Bledsoe Decl., Ex. 5 [Wynne Report; JD004498-004521, at 15-17]; Ex. 24 [JD004649-004677, at 20-22]; Ex. 8 [JD004820-4844, at 17-18]; Ex. 28 [JD005006-5030, at 16-17]. *The Wynne Report is unverified and is not sworn, thus inadmissible pursuant to Fed. R. Civ. P. 56. Further, the report of Dr. Wynne is inadmissible for reasons set forth in the Motion to Exclude Testimony of Witnesses Designated by Plaintiffs as Experts* (Doc. 143).

59.     A relentless public shaming and negative publicity concerning Plaintiffs' molestation led to the termination of the reality television show, *19 Kids and Counting*. *See* Bledsoe Decl., Ex. 23 [Seewald Dep. Tr.] 39:23-40:2. *It is undisputed that the reality tv show, 19 Kids and Counting was terminated, although the stated reason of relentless public shaming and negative publicity concerning Plaintiffs' molestation is not supported by the*

*cited evidence does not support the alleged statement.*

Respectfully Submitted,

DEFENDANTS

R. Justin Eichmann (Ark. Bar No. 2003145)
E-mail: jeichmann@arkansaslaw.com
Thomas N. Kieklak (Ark. Bar No. 92262)
Email: tkieklak@arkansaslaw.com
HARRINGTON, MILLER, KIEKLAK,
EICHMANN & BROWN, P.A.
4710 S. Thompson, Suite 102
Springdale, AR  72764
Phone: (479) 751-6464
Fax: (479) 751-3715

Susan Keller Kendall (Ark. Bar No. 98119)
KENDALL LAW FIRM, PLLC
3706 Pinnacle Hills Parkway, Suite 201
Rogers, Arkansas 72758
Email:  skk@kendalllawfirm.com
Phone: (479) 464-9828
Fax: (479) 464-9768

Jason E. Owens
Ark. Bar No. 2003003
JASON OWENS LAW FIRM
Mailing Address: P.O. Box 850
Conway, AR 72033-0850
Physical Address:  1023 Main ST, Suite 204
Conway, AR  72032
Telephone:  (501) 764-4334
Fax:  (501) 764-9173
Email:  owens@jowenslawfirm.com

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that on the 27th day of October, 2021, a true and correct copy of the above and foregoing Motion to Compel served upon the following the CM/ECF electronic filing system:

| | |
|---|---|
| Steven E. Bledsoe<br>Stephen G. Larson<br>Jen C. Won<br>LARSON O'BRIEN, LLP<br>555 S. Flower Street<br>Suite 4400<br>Los Angeles, CA 90071<br>(213) 436-4888<br>sbledsoe@larsonobrienlaw.com<br>slarson@larsonllp.com<br>jwon@larsonllp.com | Shawn B. Daniels<br>DANIELS FIRM<br>129 W. Sunbridge Drive<br>Fayetteville, AR 72703<br>479-521-7000<br>Fax: 479-437-2007<br>shawn@danielsfirm.com |

R. Justin Eichmann