**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**JILL DILLARD, JESSA SEEWALD,**                              **PLAINTIFFS**
**JINGER VUOLO, and JOY DUGGAR**

**vs.**                              **CASE NO. 5:17-5089-TLB**

**CITY OF SPRINGDALE, ARKANSAS;**                              **DEFENDANTS**
**WASHINGTON COUNTY, ARKANSAS;**
**KATHY O'KELLEY, in her individual and**
**official capacities;**
**ERNEST CATE, in his individual and official capacities;**
**RICK HOYT, in his individual and official capacities;**
**STEVE ZEGA, in his official capacity;**
**And DOES 1-10, inclusive**

<u>**BRIEF IN SUPPORT OF DEFENDANTS' JOINT MOTION IN LIMINE**</u>

COME NOW the Defendants, City of Springdale, Arkansas ("Springdale"), City Attorney Ernest Cate, in his individual and official capacities ("Cate") and retired Springdale Police Chief Kathy O'Kelley, in her individual and official capacities ("O'Kelley"), (collectively the "Springdale Defendants"), and Washington County, Arkansas ("Washington County"), and former Captain Rick Hoyt ("Hoyt") (collectively the "Washington County Defendants") by and through their undersigned attorneys, and for their Brief in Support of their Joint Motion in Limine state:

1. **DEFENDANTS' PARTIAL MONETARY COVERAGE UNDER THE ARKANSAS MUNICIPAL LEAGUE'S MUNICIPAL LEGAL DEFENSE PROGRAM AND THE ARKANSAS ASSOCIATION OF COUNTIES RISK MANAGEMENT POOL.**

Defendants anticipates that Plaintiffs may attempt to introduce evidence that the Municipal Legal Defense Program and that the Arkansas Association of Counties Risk Management will be partially responsible for paying any potential judgment, exclusive of any potential punitive damages, rendered against Defendants.

Federal Rule of Evidence 401 states that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Federal Rule of Evidence 402 states, in relevant part, that "[r]elevant evidence is admissible unless any of the following provides otherwise: . . . these rules . . . ." It further states that "[i]rrelevant evidence is not admissible."

Federal Rule of Evidence 403 states that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presently cumulative evidence." Federal Rule of Evidence 411 states, in relevant part, that "[e]vidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully."

The Arkansas Municipal League Legal Defense Program and the Arkansas Association of Counties Risk Management Pool are not insurance and instead operate as a risk management pool. However, both Arkansas Municipal League Legal Defense Program and the Arkansas Association of Counties Risk Management Pool should enjoy the protection that an insurance company does from being named as a responsible party within the hearing of the jury. *Griffin v. Hilke,* 804 F.2d 1052, 1057 (8th Cir. 1986) (reference to evidence of insurance or *other indemnity* generally inadmissible). The jury's knowledge of insurance or a fund responsible for the payment of any damages might induce the jury to render an unduly generous award of damages, *id.,* or to decide the case on improper grounds. *Higgins v. Hicks Co.,* 756 F.2d 681, 684–85 (8th Cir. 1985).

The nature and extent of any funds available to Defendants does not tend to make any fact of consequence to Plaintiffs' claims more or less probable. Moreover, it would be highly prejudicial for the jury to hear that there is a pool of money available to satisfy any judgment it

may award. Therefore, evidence of such would be irrelevant and should be excluded as such. Defendant respectfully requests that this Court exclude evidence of the Arkansas Municipal League's and the Arkansas Association of Counties' coverage of the respective Defendants in this case.  Fed R. Evid.  401, 402, 403 and 411.

## 2.   INTRODUCTION OF TESTIMONY AS TO THE SEXUAL ORIENTATION OF O'KELLEY.

Defendants anticipate that Plaintiffs may offer or elicit testimony regarding the sexual orientation of Defendant O'Kelley.  Any such testimony, argument or questions seeking to elicit such testimony would be plainly irrelevant and should be prohibited under Fed R. Evid.  401, 402 and 403 as they would be probative to nothing, improper, prejudicial and a clear attempt to prejudice the jury.

It is reasonable for Defendants to anticipate the improper testimony and to request an order prohibiting such based upon the conduct and questions of Plaintiffs in discovery.  Plaintiff took the deposition of O'Kelley and asked her if she was a lesbian, whether she was bi-sexual and asserted that she was a part of the "LGBT community."   O'Kelley was further asked if she had ever been married and to whom.  No other defendant or witness in this litigation was asked questions about their marital status, their sexual orientation or their sexuality, nor are these questions remotely related to any claim or defense in this case.  Defendants anticipate that Plaintiffs may attempt to justify irrelevant testimony or questions about O'Kelley's sexual orientation or history based upon the presumed position against homosexuality espoused by the family of the Plaintiffs.

Defendants must assume that Plaintiffs may attempt to use their position against homosexuality to infer a nefarious motive to harm the Plaintiffs onto anyone who has a sexual orientation other than heterosexual.  This should not be permitted.  First, beyond the fact that this

motivation is plainly borne of unfair prejudice, the tactic is plainly calculated to incite cultural "dog whistle" issues and inflame passions to distract the jury.  It exhibits no probative value whatsoever.   Any testimony, reference or question related to the sexual orientation of O'Kelley or any other party or witness should be expressly prohibited.

**3.   INTRODUCTION OF EVIDENCE REGARDING THE CANCELLATION OF *19 KIDS AND COUNTING* OR THE PLAINTIFFS' FINANCIAL CONDITION OR FINANCIAL LOSS.**

Defendants anticipate that the Plaintiffs may attempt to introduce testimony or evidence regarding financial loss from the cancellation of the family's television show, *19 Kids and Counting*, by the television network TLC.  Defendants further anticipate that the Plaintiffs will attempt to offer evidence or testimony about the financial condition, or financial loss, of the Plaintiffs following the release of the redacted offense reports.  The above-described information is inadmissible under Fed. R. Evid.  401, 402, 403 and as such, should be excluded.

In order to protect the Plaintiffs from discovery requests from the Plaintiffs as to the financial condition or financial loss of the Plaintiffs, during the April 29, 2021 Status Conference, counsel for the Plaintiffs stated to the Court that the Defendants were not seeking any damages related to the financial condition of the Defendants or for financial loss after the release of the redacted offense reports. With the assurance to this Court that any such financial claims or damages would not be sought by the Plaintiffs, the Defendants were thereby not permitted discovery on any such issues.  As such, the Plaintiffs should not be able to offer testimony or evidence regarding the financial loss due to the cancellation of *16 Kids and Counting*, or any adverse financial condition or other financial loss.

The admission of evidence or testimony related to the financial condition or financial loss following, or as a cause of, the release of the redacted offense reports would be prejudicial to the

Defendants since discovery was not permitted on these subjects, and furthermore would not be relevant, would cause delay, waste time and would confuse the jury since no financial damages are being sought.

### 4. REFERENCE TO THE PLAINTIFFS AS VICTIMS IN FRONT OF THE JURY OR TO CHARACTERIZE THE DEFENDANTS ACTIONS AS "RE-VICTIMIZATION".

The Defendants anticipate that the Plaintiffs will attempt to call the Plaintiffs "victims" in front the jury and will attempt characterize the Defendants actions as "re-victimization". The Defendants move this Court to prohibit the Plaintiffs from the use of "victim" terminology including referring to the Plaintiffs as "victims" or the use of related terms such as "revictimization." Victim terminology is an unnecessary characterization and description of the Plaintiffs that are designed to invoke the sympathy and/or passion of the jury, as well as create prejudice. The term incorrectly implies the existence of a "criminal" legal proceeding and serves only to inflame certain jurors to violate their oath not to let bias, sympathy, or prejudice play any part in their deliberations. It further serves to confuse the wrongful acts of Josh Duggar in molesting the Plaintiffs with those acts of the Defendants in releasing a police report pursuant to the Arkansas Freedom of Information Act. The "victim" terminology references irrelevant under Fed. R. Evid. 401, and presents a danger of unfair prejudice under Fed. R. Evid. 403. *See Chism v. New Holland N. Am., Inc.,* No. 2:07CV00150 JTR, 2010 WL 11520495, at *4 (E.D. Ark. Feb. 1, 2010); *Jordan v. Enrique Ventura,* No. 4:17-CV-4011, 2019 WL 1199517, at *2 (W.D. Ark. Mar. 13, 2019). Plaintiffs should be ordered to refer to themselves as "plaintiffs" or by their own names which are viable, non-prejudicial alternatives to "victim."

### 5. PROHIBIT THE TESTIMONY OF JIM BOB DUGGAR.

Based on Plaintiffs' Pre-trial Disclosures, Defendants expect that Jim Bob Duggar will be called by the Plaintiffs to testify. Jim Bob Duggar should not be permitted to testify because he has intentionally dodged and avoided service, hiding behind locked gates and fleeing the state and avoiding service through his counsel, so he would not have to produce documents or answer questions under oath in a deposition during an expedited discovery period prior to trial. Despite multiple attempts over several months to serve Jim Bob Duggar with a subpoena *duces tecum* and for his deposition, Defendants have been unable to obtain service on Mr. Duggar. In addition to multiple attempts by a civil process server to obtain service, counsel for Defendants has contacted counsel for Mr. Duggar in good faith attempt to secure his attendance at a deposition as well as to obtain documentation responsive to the subpoena. Mr. Duggar, not unlike other witnesses involved in the control of the Plaintiffs' lives and affairs, have acted in bad faith to gain an unfair advantage. Defendants would be significantly prejudiced at trial because they have not had the opportunity to conduct an investigation of any testimony that Mr. Duggar may present at trial because Mr. Duggar has evaded service of Defendant's subpoena duces tecum and intentionally evaded service of a subpoena for a deposition from Defendants. Defendants have no opportunity to investigate Mr. Duggar's now disclosed testimony or prepare to offer rebuttal evidence. If this Court would permit the trial testimony of Mr. Duggar, then the Defendants would respectfully request that the Court order him to sit for a deposition prior to trial.

Below is a brief timeline of attempts Defendants' counsel has made to serve Mr. Duggar via process server and through contact with his attorney, Bob Ballinger. Opposing counsel has conveyed that they do not represent Mr. Duggar nor can produce him for a deposition.

- August 24, 2021 – Process server attempts service of subpoena to Jim Bob and Michelle Duggar at their residence, after several attempts over several hours to reach them through the call box at their gate, by waving and honking her car horn, during which the process server observed several people moving in and out of the home and in the yard, the process

server observed a family member approach on a side road to the home and was able to make contact with her but Jim Bob would not emerge and the process server left her card and a message regarding the subpoena.

- September 2, 2021 – Mr. Ballinger indicated via email he would reach out to Jim Bob and Michelle Duggar and discuss acceptance of the subpoena duces tecum on their behalf. Defendants' counsel followed up on September 7, 2021 but received no response from Mr. Ballinger.

- September 17, 2021 – Process server attempts service at a business owned by the Duggars as well as the Duggar home. The process server made contact with members of the Duggar family at the business but was unable to make contact with anyone at the residence due to a locked gate. The process server attempted to make contact with anyone at the residence by using a call box at the gate entrance but was only met by a drone flown from the Duggar residence. The process server attempted to communicate that she is attempting service to the hovering drone but no one responded from the home.

- September 18, 2021 – The process server monitored the business and Duggar residence for several hours in an attempt to make contact with Jim Bob and Michelle Duggar.

- September 19, 2021 – The process server monitored Duggar residence for several hours in an attempt to make contact with Jim Bob and Michelle Duggar.

- September 20, 2021 – The process server attempted service at Duggar residence at two different times and is met with only a drone flown from the Duggar residence.

- September 20, 2021 - Defendants' counsel informed Mr. Ballinger via email that they would be seeking assistance from the Court due to the Duggars evading service. On that same day, Mr. Ballinger indicated that the Duggars were on a month-long family trip out west and would be returning in mid-October.

- September 21, 2021 - Defendants' counsel indicated to Mr. Ballinger via email that it was not an issue that the Duggars were out of town as the depositions could be set up via zoom and provided available dates to Mr. Ballinger.

- September 22, 2021 – Mr. Ballinger informed Defendants' counsel for the first time that he had not been retained to represent the Duggars in this matter.

*See* Exhibit 5, Affidavit of Dana Martin and Exhibit 6, email correspondence with Bob Ballenger, attorney for Jim Bob Duggar.

The process server hired by Defendants spent approximately fifteen (15) hours attempting to serve Jim Bob and Michelle at both their business and home, as well as the Duggar's current church, but Jim Bob intentionally avoided service of process. Their residence is highly secure with

cameras, drones and gates. The process server made several attempts of speaking to a daughter of Jim Bob, speaking into the call box at the gate of the home and speaking to the hovering drones that were sent out from the residence but received no response, although there were at least fifteen (15) cars at this home at times when the process server made such attempts. Ex. 5, Affidavit of Dana Martin. During and following these unsuccessful attempts at service, undersigned counsel worked in good faith through the legal counsel for Mr. Duggar, who, after agreeing to check about accepting service, suddenly declared that the witness was out of state for a month and then, when invited to set up a deposition via zoom, Mr. Duggar's counsel stated that he did represent Mr. Duggar in this matter. Exhibit 6, Email Correspondence with Bob Ballenger. All of the above represent a bad faith effort and intention to avoid service of legal process, and the Court should not permit Mr. Duggar to decide now to participate in this litigation after his intentional efforts to avoid good faith discovery. In the alternative, the Court should order Jim Bob Duggar to sit for a deposition as a condition of testimony at trial.

6. **INTRODUCTION OF ANY EVIDENCE OR ANY MENTION OF OUT OF COURT STATEMENTS MADE TO PLAINTIFFS' EXPERT WITNESS**

In the Plaintiffs' Pretrial Disclosures, Plaintiffs indicated that they intend to introduce the Plaintiffs' Experts' reports and rebuttal reports as well as any supporting documents and exhibits to the reports, including hours of videos of unsworn, self-serving statements of each Plaintiff as well as the transcripts of same. In the course of discovery, the Plaintiffs have provided unsigned and unsworn expert reports and addendums for each Plaintiff. The reports were provided by Robert Wynne, Ph.D. ("Wynne") with some input from Dr. Gilbert Kliman ("Kliman"). Per the Plaintiffs' disclosures, Kliman will not be called to testify at the trial on this matter. The expert reports are unsworn and have not been signed by either Wynne or Kliman. Attached to the reports

are various items including hours of video interviews of the Plaintiffs along with transcriptions of the videos.  The interviews were unsworn.

Federal Rule of Evidence 702 permits the admission of expert opinion testimony not opinions contained in documents prepared out of court. Fed. R. Evid. 702.  Expert reports are inadmissible hearsay because they are out-of-court statements offered to prove the truth of the matter asserted and fall within the definition of hearsay in Fed. R. Evid. 801(c)(2). *Bianco v. Globus Med., Inc.*, 30 F.Supp.3d 565, 570 (E.D.Tex.2014); *United States v. Lasley*, No. 14–CR–45–LRR, 2014 WL 6775539, at *6 (N.D. Iowa Dec. 2, 2014) (finding an expert's written report is hearsay and not admissible under the residual exception); *Devorak v. United States*, Civ. No. 01–1415 (RHK/AJB), 2002 WL 34715899, at *2 (D. Minn. Oct. 30, 2002) (barring admission of written expert report as hearsay); *Law v. Nat'l Collegiate Athletic Ass'n*, 185 F.R.D. 324, 342 (D. Kan. 1999) (stating that an expert's written report generally inadmissible); *Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 728 (6th Cir. 1994) ("Rule 702 permits the admission of expert opinion testimony not opinions contained in documents prepared out of court."); *Bruhn Farms Joint Venture v. Fireman's Fund Ins. Co.*, No. 13-CV-4106-CJW, 2017 WL 752282, at *9 (N.D. Iowa Feb. 27, 2017).  The Plaintiffs will suffer no prejudice as Wynne is available and intends to testify at trial.   With respect to Kliman, the Plaintiffs have simply made the decision not to call him as an expert and, as such, his unsigned and unsworn "review" of Wynne's report is inadmissible.

With respect to the volumes of exhibits attached to the expert reports, including videos and transcripts of the Plaintiffs' unsworn, self-serving, out of court statements, these too are inadmissible.  While experts are allowed to rely on hearsay in forming their opinions, "their testimony is not a vehicle by which evidence that is otherwise inadmissible may be

introduced." *Id.* (citation omitted).  Before such data may be admitted, however, the Court must determine that "their probative value in helping the jury evaluate the [expert's] opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703.  Submission of a written expert report as well as unsworn, self-serving, out of court statements, to the jury will undoubtedly call undue attention to the expert's trial testimony and the unsworn out of court statements of the Plaintiffs.  Additionally, the jury will be overwhelmed and confused by the shear amount of material.  Accordingly, the expert reports and the attached exhibits must be excluded as the risk of prejudice substantially outweighs any probative value. Fed. R. Evid. 403, 801, and 703; *see also, L. v. Nat'l Collegiate Athletic Ass'n,* 185 F.R.D. 324, 342 (D. Kan. 1999).   Moreover, many of the unsworn statements provided by the Plaintiffs are inconsistent with the sworn testimony provided in the course of depositions and which the Defendants intend to elicit at trial.  Providing the jury with videos and transcriptions of the unsworn testimony of the Plaintiffs while limiting the Defendants to sworn testimony in Court will only compound the prejudice to the Defendants.

### 7. SPEAKING OBJECTIONS OR MAKING GRATITIOUS OR PEJORATIVE REMARKS

During depositions in this case, the Plaintiffs' counsel regularly made speaking objections, which often included gratuitous comments about his opinion of the questions posed by counsel for the Defendants.  For instance, in the deposition of Plaintiff Jessa Seewald, the undersigned counsel was questioning about the link between the Plaintiffs and the details that they claim were disclosed about each of them (one of the Plaintiffs' many evidentiary failures in this case is their failure to show any link between any one of them and particular details of their individual molestations).  In questioning Plaintiff Seewald on this point, counsel asked her whether she had been molested by her brother in the laundry room (that location had not been redacted from the report, but the name had, so neither undersigned counsel nor the public knows, as of today, who was molested in the

laundry room).  When she answered no, counsel asked who had been molested in the laundry room.  She essentially refused to answer this highly relevant question and her lawyer interjected with a speaking objection covering roughly a half page of the transcript.  In that objection, he referred to counsel's questions as "gross."  Ex. 1, Seewald Deposition, pp. 59-63.  In another instance, counsel for the Plaintiff counsel interjected a long speaking objection to a question to Plaintiff Vuolo about which private facts were publically disclosed by Hoyt.  Plaintiffs' attorney, in a speaking objection, asserted that undersigned counsel was trying to re-victimize the deponent, called the question "nonsensical" and "harassing".  Ex. 2, Vuolo Deposition, pp. 20-24.  In yet another instance, the deponent Vuolo responded to a question about whether she had been instructed by anybody in the family or others not to talk about the molestations and she responded "That's a stupid question."  Id. p. 39. Respectfully, all counsel should be ordered to make the substance of their objections outside the hearing of the jury and to completely avoid gratuitous and/or pejorative remarks, remarks which would precede any objection to prevent them, confusing the issues, misleading the jury, and being unfairly prejudicial. Fed. R. Evid. 401, 402, and 403.

## 8.  EXCLUDING THE TESTIMONY OF PLAINTIFFS' LIFE CARE PLAN EXPERT ROBERT WYNNE, PH.D.

Plaintiffs have disclosed an expert, Robert Wynne, Ph.D. (("Wynne"), who plans to testify at trial regarding Plaintiff's future medical and psychological needs.   During his deposition, Wynne") identified several areas in which he plans to offer testimony. With respect to expert testimony, Fed. R. Evid. 702 provides

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

*Id.* Thus, the minimum standards for expert testimony under federal law require that the witness being sufficiently qualified to opine on a particular subject and that his or her opinion be based upon a reliable foundation. *Id.* During his deposition, Wynne provided testimony regarding his qualifications, his opinions in this case, and the basis for those opinions, which revealed that he does not possess the knowledge, skill, experience, training, or education necessary to offer opinions regarding Plaintiffs' present or future medical condition or opine about future needs for care.   Because Wynne's opinions lack foundational reliability, Defendants move for an Order precluding his testimony as to future medical or psychological needs.

Wynne is not a physician and has received no medical training outside the area of psychotherapy. Ex. 3, Wynne Deposition, pp. 9-10. In his life care plan, Wynne provides estimates regarding the amount of counseling that each Plaintiff will need in the future as well as medical recommendations. He admits, however, that he has never reviewed any of Plaintiffs' medical records and that he does not have a clear understanding of their medical history.   *Id*., pp. 43-44. He had also has never even reviewed the police reports that were disclosed and did not know which information was actually disclosed. *Id.*, pp. 20-21.  Although he is aware that some of the Plaintiffs very little counseling in the past, Wynne admits that he does not know where they sought counseling, how long each has been in counseling, whether they are still receiving counseling or whether they would even be willing to attend counseling. *Id*., p 17-19, 25-27, 32, 34, 35, 93. Wynne acknowledges that the Plaintiffs do not take any medications currently and that he is not qualified to testify about medications or the future need for medications even though his current medical treatment plan recommends continuous use of such medications.  *Id*, pp. 50, 66.  Wynne admits that he was not part of any decision making in the life plan with regard to medication

12

recommendations but that he trusts that Dr. Kliman was "making a ballpark figure".  Id, pp. 66-67.

Notwithstanding his admitted lack of knowledge regarding Plaintiffs medical history, Wynne seeks to offer the opinion that the Plaintiffs suffer from psychological distress and will require a lifetime of counseling and treatment, literally until the end of Plaintiffs' lives. When asked to provide the basis for this opinion, Wynne testified under oath that his only basis for this opinion was the approximately 1.5-hour conversation he had with each Plaintiff and possibly recommendations made of Dr. Kliman, a physician who has never met any of the Plaintiffs.

Accordingly, because Wynne has no knowledge of Plaintiffs' past or current psychological conditions other than that which he obtained during a 1.5 hour video conference with each Plaintiff, his testimony regarding Plaintiffs' need for future counseling should be excluded pursuant to Fed. R. Evid. 702 as lacking in sufficient facts and data.  Defendants have filed a separate motion and supporting brief to exclude Wynne's testimony (Doc. 143, 144) and incorporate that motion and brief are incorporated herein via Fed. R. Civ. P. 10(c).

## 9. INTRODUCTION OF ANY EVIDENCE OR MENTION REGARDING TESTIMONY FROM NON-TESTIFYING EXPERTS.

Defendants anticipate that the Plaintiffs will attempt to introduce, refer to and rely upon opinions or testimony of witnesses designated as experts who will not appear at trial, including to mention the opinion, review, contribution or testimony of Glibert Kliman, M.D., all of which should be prohibited.  Plaintiffs' use of any aspect of such a witness would offend the Federal Rules of Evidence in several respects.  Any mention or use of the testimony or opinion or any participation of an expert who did not appear at trial would lack foundation and be prohibited by the Fed. R. Evid. 802 as it would comprise plain hearsay and would not fit into any exception to the hearsay rule.

Further, since the lack of any foundation for such testimony would render it inadmissible under Fed. R. Evid. 702 and 703.  Defendants have filed a brief in support of their Motion to Exclude Testimony (Doc. 143,144) addressing testimony or opinion which may be offered by Plaintiffs, which is incorporated herein, and specifically addressing the lack of foundation supporting expert testimony offered by Plaintiffs, rendering it unusable.  Permitting such testimony would also violate Fed. R. Evid. 705, as Defendants would have no way of determining what, if any, underlying facts or data were used to support such expert opinions or testimony.

Defendants would be unfairly and severely prejudiced by the Plaintiffs' use of testimony or opinion of any expert witness who does not appear and that prejudice would far outweigh any other consideration, as it would also violate the need for personal knowledge required by Fed. R. Evid. 602.  This is true even though the testimony or opinion would be offered as expert testimony, for, as discussed above, there is no foundation to support any such opinion.  Without any foundation and without personal knowledge, no witness should be permitted to mention, refer to or acknowledge any opinion or testimony of any witness who does not appear.  Lastly, the nature of such opinion or testimony, being highly prejudicial and lacking any foundation, renders it irrelevant as well, in violation of Fed. R. Evid. 401, 402 and 403.   Defendants expect Plaintiffs to present their expert, Robert Wynne, Ph.D. and, as set forth herein, Wynne has not the education, credentials nor experience to give the opinions or testimony of a medical doctor, and he has testified to as much under oath.  The Court should enter an order prohibiting Wynne or any other witness or counsel from mentioning or referring in any way to the opinion, review, contribution, collaboration, testimony or action of Gilbert Kliman, M.D. or any other expert witness not in attendance at trial.

**10. INTRODUCTION OF TESTIMONY OR EVIDENCE OF ALLEGED EMOTIONAL DISTRESS CAUSED BY THE ACTIONS OF THIRD PARTIES**.

The Plaintiffs have indicated that they intend to introduce testimony or evidence that they suffered emotional distress due to the actions of third parties including tabloid reporters who were present outside the Duggar home after the release of the police reports, as well as other third parties, many unknown or anonymous, who allegedly posted messages to the Plaintiffs' various social media platforms.  The Plaintiffs do not allege nor can they prove that the Defendants were present outside the Duggar's' home or that the Defendants posted on-line comments to the Plaintiffs' various social media platforms.  To allow the introduction of evidence of third party actions would be highly prejudicial and undoubtedly confuse the jury regarding the issues before this Courtd. The Defendants cannot be held liable for the intentional actions of unknown third parties.  Any alleged emotional distress to the Plaintiffs caused by the intentional acts of third parties must be excluded pursuant to Fed. R. Evid. 401, 402, 403 and 802.

The Plaintiffs, for various reasons related to their celebrity status and the views that they have espoused that are considered to be controversial by some members of the public, have been the subject of media and on-line social media attention – both positive and negative.  Adding to the controversial celebrity status of the Plaintiffs, within days of the release of the incident reports at issue here, it was released that their brother, Josh Duggar, then a lobbyist for the conservative Christian organization the Family Research Council, a conservative Christian organization, used the online dating site Ashley Madison and engaged in an extra-marital affair with a prostitute, and is now facing criminal charges relating to child sexual abuse material.

Introduction of evidence of the intentional acts of third parties would unfairly prejudice the Defendants, would confuse the issues, mislead the jury, and needlessly waste time at the trial.  In the event that evidence of the intentional acts of third parties were to be introduced, then the

Defendants will necessarily introduce evidence of the positive messages and support that the Plaintiffs garnered after the release of the incident report.  Additionally, the Defendants will necessarily seek to introduce evidence of the various views espoused by the Duggars considered to be controversial by third parties, the negative media and on-line social media attention that they received as a result, and how that also contributed to their alleged emotional distress.

The issues before this Court and the jury are alleged emotional distress caused by the alleged intentional acts of the Defendants – not third parties.  To the extent that the actions of third parties caused the emotional distress of the Plaintiffs, such evidence must be excluded as it would undoubtedly prejudice the Defendants and confuse the issues in that they cannot be held accountable for the intentional actions of third parties.    In addition to being highly prejudicial, it is irrelevant and also constitutes hearsay.  Such evidence is inadmissible pursuant to Fed. R. Evid. 401, 402, 403, and 802.

## 11. INTRODUCTION OF EX PARTE ORDERS OF JUDGE STACY ZIMMERMAN.

Plaintiffs have indicated that they intend to use or introduce the *ex parte* orders of Judge Zimmerman regarding the Springdale disclosures in this case (she issued no similar order(s) about the County disclosures).  Springdale was not a party to the case before Judge Zimmerman, have never been permitted to view the case file and was denied the opportunity to intervene.  Zimmarman's orders are inadmissible, however, and should be excluded.  First, these orders are inadmissible as hearsay (*see* Fed. R. Evid. 801; *Cronquist v. City of Minneapolis*, 237 F.3d 920, 927 (8th Cir. 2001)) and, even if offered by Judge Zimmerman from the witness stand, improper opinion testimony (the Plaintiffs have certainly not retained or disclosed Judge Zimmerman as an expert witness).   *See* Fed. R. Evid. 401-403 & 704; *see also Hogan v. Am. Tel. & Tel. Co.*, 812 F.2d 409, 411-412 (8th Cir. 1987)).  Offering court opinions to the jury entirely invades the Court's

province of instructing the jury on the law and would lead to the endless introduction of court opinions by the parties (here, the Defendants would certainly ask to introduce the Eighth Circuit's *en banc* opinion and the Arkansas Court of Appeals opinion in the *Duggar* case). This is simply not how a trial works, however. Expert opinion on questions of law that are for the court to decide are not proper and will not be allowed. *See Dow Corning Corp. v. Safety Nat'l Cas. Corp.*, 335 F.3d 742, 751 (8th Cir. 2003). It is the role of the parties to introduce evidence, not hearsay ex parte opinions about the matter.

In addition to the baseline impropriety of introducing court opinions believed to be relevant to the issues (or calling the authoring judge(s) to testify about those opinions, which would effect the same outcome), Judge Zimmerman's orders in this case have largely been abrogated - if not overruled - by the Arkansas Court of Appeals in the *Duggar* case, where Court of Appeals held as a matter of law  - and in direct abrogation of Judge Zimmerman's orders, which were based almost entirely on the provisions of the Arkansas Juvenile Code - that the Arkansas Juvenile Code **_"does not protect the records at issue from disclosure."_**  *Duggar v. City of Springdale*, 2020 Ark. App. 220, 14. Even if the parties were permitted to introduce court opinions as evidence, they certainly should not be permitted to introduce bad law as evidence.

## 12. INTRODUCTION OF TESTIMONY OR EVIDENCE OF THE DEFENDANTS' POLICIES OR ALLEGATIONS OF A FAILURE TO TRAIN OR SUPERVISE ON THE PART OF THE DEFENDANTS.

Defendants anticipate that Plaintiffs may attempt to introduce testimony or evidence of the Springdale or Washington County policies and procedures with regard to training and supervision. Any evidence related to the policies or any allegations that there was a failure to train or supervise on the part of the City or County is irrelevant as the official capacity claims and the *Monell* claim were dismissed at the onset of the case. *See* Doc. 62. Any probative value of the described evidence

is substantially outweighed by its danger of, confusing the issues, misleading the jury, and being unfairly prejudicial. Fed. R. Evid. 401, 402, and 403.

Springdale and Washington County policies are not important to the resolution of the case nor is the evidence necessary for the jury to reach a decision. "Confusion of the issues warrants exclusion of relevant evidence if admission of the evidence would lead to litigation of collateral issues." *Firemen's Fund Ins. Co. v. Thein*, 63 F.3d 754, 758 (8th Cir. 1995). Any evidence put forth by the Plaintiffs of policies or allegations of a failure to train or supervise, since such claims were dismissed, would unnecessarily confuse the jury on the issues. Additionally, this evidence would be unfairly prejudicial because the jury could make their decision based on whether they believe O'Kelley, Cate or Hoyt were properly trained or if Springdale or Washington County had unconstitutional policies instead of the facts and circumstances of Plaintiffs' state law tort claims. As the Plaintiffs' claims against Springdale and Washington County rest on vicarious liability, such evidence and testimony regarding a failure to train or supervise has no relevance to the torts asserted against the individual Defendants in this matter.

For these reasons, Defendants respectfully request that this Court exclude mention or introduction of the any policies of the City or County as well as any allegations of a failure to train or supervise on the part of the City or County, as such claims against the Defendants were dismissed in this matter.

### 13. EXCLUDING STEVE ZEGA FROM TRIAL AND A CNN ARTICLE REGARDING COMMENTS MADE BY STEVE ZEGA.

The Plaintiffs' pretrial disclosures filing indicates that they intend to call former Washington County Attorney Steve Zega as a witness at the trial of this case. Additionally, the Plaintiffs have indicated that they may use or introduce a CNN article about certain comments that

Zega made about the subject disclosures after they occurred.  Neither should be permitted in this case.

Steve Zega is the former appointed County Attorney for Washington County, but he had no part in the disclosures in this case and, thus, has no personal knowledge relevant to this case.  *See* Ex. 4, Zega Deposition. With no such involvement in the disclosures in this case, Plaintiffs dismissed Zega as a defendant in this case.  Doc. 136. The Plaintiffs now intend to call Zega as a witness for the same reason they want to use or introduce the CNN article about his post-disclosure comments, namely, because they want to elicit Zega's legal conclusions as to the relative legality of the subject disclosures (Zega largely believes, and has testified, that his legal opinion is that the disclosures were barred by Arkansas statutory law, despite the Court of Appeals' recent pronouncements to the contrary).  Zega has not been retained by the Plaintiffs as an expert witness and has certainly not been properly disclosed under Fed. R. Civ. P. 26 as such.  Instead, the Plaintiffs' interest in calling Zega - or otherwise getting his legal opinions in front of jury, including by use of the CNN article - is purely to offer legal conclusion from a witness with no personal knowledge relevant to the case and in a manner that would invade - indeed, usurp -  the provinces of both the court and the jury.   Such proof is inadmissible and should be excluded.  *See* Fed. R. Evid. 401-403 & 704; see also *Hogan v. Am. Tel. & Tel. Co.*, 812 F.2d 409, 411-412 (8th Cir. 1987).

### 14. PRECLUDING PLAINTIFFS, THEIR ATTORNEYS, AND THEIR WITNESSES FROM MAKING "GOLDEN RULE" ARGUMENTS.

Eliciting or providing testimony, or making general statements or arguments that reference generalities regarding fears, concerns or the current state of local, state or federal government, or any other entity, collecting, maintaining, protecting, releasing, manipulating, having control over or storing information which could be considered private or secret or to contain personal or

potentially embarrassing information is highly prejudicial, and not relevant. This information would only be introduced or mentioned for the sole purpose of portraying the individual and governmental Defendants as bad actors and would be nothing more than a thinly-veiled golden rule argument, designed to inflame the jurors' passions and fears, all of which would be in violation of the Fed. R. Evid. 401, 402 and 403. *See, e.g., Lovett ex rel. Lovett v. Union Pac. R. Co.,* 201 F.3d 1074, 1083 (8th Cir. 2000) (discussing that golden rule arguments are "universally condemned because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence") (internal quotation marks and citation omitted).

Defendants anticipate that the Plaintiffs and their attorneys will attempt to mention, introduce or make arguments about the current state of governmental control or possession of personal or private information in an attempt to appeal to personal bias, concerns or fears of the jury. Statements or arguments that reference generalities regarding governmental conduct and handling of such information is not relevant to plaintiffs' claims and is highly prejudicial.

Even if discussion of private or potentially embarrassing information in the possession of a governmental entity were in some way relevant, it should still be excluded under Fed. R. Evid. 403, as it is unfairly prejudicial to the Defendants. Introduction or argument about private or personal information collected, stored or maintained by governmental entities generally or the current state of such has little to no probative value. It is not related to the key disputes, because general discussion or broad generalizations have no relation to the specific conduct of the individual defendants nor the laws and process they followed when they released the redacted reports that are the subject of this litigation. Nor is such a discussion or allusion important to the resolution of the case. At the same time, any mention, reference, or argument about private or

personal information collected, stored or maintained by governmental entities generally would be unfairly prejudicial to the Defendants. These statements or arguments would have the intention to inflame the jurors' passions and fears, and the purpose of making those statements or arguments would be to present Hoyt, Cate and O'Kelley as bad actors, and that would be nothing more than a thinly-veiled golden rule argument, which could lead the jurors to make a decision on an improper basis. *See Lovett ex rel. Lovett v. Union Pac. R. Co.,* 201 F.3d 1074, 1083 (8th Cir. 2000) (discussing that golden rule arguments are "universally condemned because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence") (internal quotation marks and citation omitted).

For these reasons, Defendants respectfully request that this Court prohibit the mention or reference to generalities regarding fears, concerns or the current state of local, state or federal government, or any other entity, collecting, maintaining, protecting, releasing, manipulating, having control over or storing information which could be considered private or secret or to contain personal or potentially embarrassing information.

## CONCLUSION

The Defendants request that the Court order all parties, their attorneys, and their witnesses to refrain from mentioning or alluding to in any fashion whatsoever, directly or indirectly, the matters set forth herein. If counsel for any party should be of the opinion at any time during the trial that matters contained herein which the Court has ruled as inadmissible have become admissible or the Court's ruling unclear, it is requested that the Court order counsel to approach the bench for a discussion outside the hearing of the jury prior to mentioning such matter. Defendants also request that the Court order all counsel to make the Court's ruling on the matters contained herein known to the parties and their witnesses so that the matters which the Court rules

are inadmissible will not be inadvertently mentioned at trial. Therefore, Defendants move this Court to issue liminal orders to exclude all evidence, testimony, or argument, regarding the information contained in their Joint Motion in Limine and brief in support for the reasons set forth in this brief.

WHEREFORE, the Defendants pray that the Court grant their Joint Motion in Limine and for all other just and proper relief to which they are entitled.

Respectfully Submitted,

R. Justin Eichmann (Ark. Bar No. 2003145)
Thomas N. Kieklak (Ark. Bar No. 92262)
Morgan S. Doughty (Ark. Bar No. 2010158)
HARRINGTON, MILLER, KIEKLAK,
EICHMANN & BROWN, P.A.
4710 S. Thompson, Suite 102
Springdale, AR  72764
Phone: (479) 751-6464
Fax: (479) 751-3715
E-mail:  jeichmann@arkansaslaw.com
Email:  tkieklak@arkansaslaw.com
Email:  mdoughty@arkansaslaw.com

and

Susan Keller Kendall (Ark. Bar No. 98119)
KENDALL LAW FIRM, PLLC
3706 Pinnacle Hills Parkway, Suite 201
Rogers, Arkansas 72758
Phone: (479) 464-9828
Fax: (479) 464-9768
Email:  skk@kendalllawfirm.com

And

Jason E. Owens
Ark. Bar No. 2003003
JASON OWENS LAW FIRM
P.O. Box 850
Conway, AR 72032
Telephone: (501) 764-4334
Fax:  (501) 764-9173

Email:  owens@jowenslawfirm.com

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that on the 12th day of November, a true and correct copy of the above and foregoing was filed using the Court's CM-ECF System, which effected service on all counsel of record:

| | |
|---|---|
| Steven E. Bledsoe<br>Stephen G. Larson<br>Jen C. Won<br>LARSON O'BRIEN, LLP<br>555 S. Flower Street<br>Suite 4400<br>Los Angeles, CA 90071<br>(213) 436-4888<br>sbledsoe@larsonobrienlaw.com<br>slarson@larsonllp.com<br>jwon@larsonllp.com | Shawn B. Daniels<br>DANIELS FIRM<br>129 W. Sunbridge Drive<br>Fayetteville, AR 72703<br>479-521-7000<br>Fax: 479-437-2007<br>shawn@danielsfirm.com |

R. Justin Eichmann (Ark. Bar No. 2003145)