```
 1              IN THE UNITED STATES DISTRICT COURT
                  WESTERN DISTRICT OF ARKANSAS
 2                     FAYETTEVILLE DIVISION

 3   JILL DILLARD, JESSA SEEWALD,      )
     JINGER VUOLO, and JOY DUGGAR,     )
 4             PLAINTIFFS,             )
     VS.                               )
 5   CITY OF SPRINGDALE, ARKANSAS;     )
     WASHINGTON COUNTY, ARKANSAS;      ) CASE NO.
 6   KATHY O'KELLEY, in her Individual ) 17-CV-05089-TLB
     and Official Capacities; ERNEST   )
 7   CATE, in his Individual and       )
     Official Capacities; RICK HOYT,   )
 8   in his Individual and Official    )
     Capacities; STEVE ZEGA, in his
 9   Official Capacity;
     Does 1-10, Inclusive,
10             DEFENDANTS.

11          --------------------------------------

12           ORAL AND VIDEOTAPED DEPOSITION OF

13                      JINGER VUOLO

14                   September 20, 2021

15          --------------------------------------

16

17       ORAL AND VIDEOTAPED DEPOSITION OF JINGER

18  VUOLO, produced as a witness at the instance of the

19  DEFENDANTS, and duly sworn, was taken in the

20  above-styled and numbered cause on the 20th day of

21  September, 2021, from 10:02 a.m. to 3:25 p.m., before

22  Tammie L. Foreman, CCR in and for the State of

23  Arkansas, RPR, CRR, reported by machine shorthand, via

24  audio-video conference, pursuant to the Federal Rules

25  of Civil Procedure.
```




EXHIBIT 2

www.ArkansasReal

1  A.    Yes.
2  Q.    What reason do you have to believe that
3  Rick Hoyt intentionally inflicted emotional distress
4  upon you?
5  A.    I don't know.
6  Q.    Okay.  You do have a reason, you just don't know
7  what it is; is that correct?
8              MR. BLEDSOE:  Object to the form.
9  A.    (No verbal response.)
10 Q.    Is that correct?
11 A.    Yes.
12 Q.    Okay.  I am going to represent to you that
13 another one of your claims is a invasion of privacy
14 claim that asserts that private facts have been
15 publicly disclosed by the defendants.  What private
16 facts, if any, have been publicly disclosed by
17 Defendant Rick Hoyt?
18             MR. BLEDSOE:  Object to the form.
19 A.    (No verbal response.)
20 Q.    Again, we've gone several minutes radio silent
21 here.  Do you remember my question?
22             MR. BLEDSOE:  I don't think it's been
23        several minutes, but it's been some -- it's
24        been a little bit of time.  I'll agree with
25        that.

```
 1                MR. OWENS:  I set my stopwatch.  It's
 2          been more than three minutes at this point.
 3  A.    Can you repeat that question?
 4  Q.    Sure.  I am going to represent to you that one
 5  of your claims in this lawsuit is that private facts
 6  have been publicly disclosed, thereby invading your
 7  privacy.  What private facts, if any, were publicly
 8  disclosed by Defendant Rick Hoyt?
 9                MR. BLEDSOE:  Object to the form.
10  A.    I don't want to talk about the private facts.
11  Q.    Well, I can appreciate that.  I really can.  I
12  know you've been through a lot, you and your sisters
13  all have.  And I appreciate you don't want to talk
14  about it.
15                The problem is, you filed a lawsuit about
16  it, and you're accusing my client of violating your
17  right to privacy, as it were.  And so I guess I'll ask
18  you, are you refusing to answer the question?
19                MR. BLEDSOE:  Yeah.  I'm going to jump
20          in here, Jason.  You know what this lawsuit
21          is about.  Are you asking her to recount the
22          private details of -- what were the private
23          details of her molestation?  What are you
24          asking?
25                You know what's in the report, and you
```

1   know what she told the people at the Child
2   Safety Center.  So it seems like you're
3   trying to get her to repeat the details of
4   her molestation, which that's the problem.
5   What she doesn't want to do is be
6   essentially victimized again by you.  Not
7   that you've ever victimized her.  But I
8   think that's the problem with the question.
9        MR. OWENS:  Well --
10       MR. BLEDSOE:  You're asking her --
11       MR. OWENS:  -- I'd rather you not -- I'd
12  rather you not jump in and coach the witness
13  at this point.  You know as well as I that
14  federal court pleadings is notice pleading,
15  not fact pleading.
16       I'm asking for the facts.  You've
17  asserted a claim.  All four of these
18  plaintiffs have asserted a claim that their
19  privacy was invaded by the public disclosure
20  of private facts.  I'm simply asking her
21  what private facts are we talking about.
22       MR. BLEDSOE:  Jinger, you don't have to
23  talk about the details of the molestation.
24  But you can answer the question, but you
25  don't need to go into the details.

1  A.   Can you repeat that question --
2  Q.   Sure.
3  A.   -- one more time?
4  Q.   Yeah.  One of your claims in this lawsuit is
5  that private facts have been publicly disclosed,
6  thereby invading your privacy.  What private facts are
7  we talking about?
8           MR. BLEDSOE:  Object to the form.
9  A.   I don't want to talk about the private details
10 of my abuse.
11 Q.   Okay.  In May of 2015, were you secluded?
12           MR. BLEDSOE:  Object to the form.
13 A.   Can you repeat that?
14 Q.   Sure.  In May of 2015, were you secluded?
15           MR. BLEDSOE:  Object to the form.
16 A.   What do you mean by that?
17 Q.   Well, I'm going to represent to you that one of
18 your claims in this lawsuit is that the defendants
19 intruded upon your seclusion, thereby violating your
20 privacy or invading your privacy, I should say.  Were
21 you secluded in May of 2015?
22           MR. BLEDSOE:  Object to the form.  This
23       is a nonsensical question.  I don't --
24       Jason, this is completely harassing.  You
25       know it and I know it.  And that's a legal

```
 1   conclusion.  This is ridiculous.  I don't
 2   know why -- you haven't asked -- you didn't
 3   ask that question in any other depositions,
 4   and this is just ridiculous, frankly.
 5         MR. OWENS:  Are you instructing your
 6   client not to answer the question?
 7         MR. BLEDSOE:  If she understands what
 8   you're asking, she can answer.  But it
 9   obviously calls for a legal conclusion.
10   This is -- this is just ridiculous and it's
11   harassing.
12         MR. OWENS:  I don't -- I disagree,
13   frankly.  I'm asking her the most basic
14   questions I can ask her about her claims.
15         MR. BLEDSOE:  No.  You know exactly what
16   happened and what was disclosed and why we
17   have this lawsuit.  And so the notion that
18   you have to ask these questions is
19   ridiculous.
20         Now, if you want to ask how it affected
21   her and things like that, that's a
22   legitimate area of inquiry.  But I
23   haven't -- okay.
24         I've been very contained in my
25   objections in these depositions, but I don't
```



```
 1  tell you to keep these molestations private and within
 2  the family?
 3  A.    I didn't want to talk about it.
 4  Q.    Okay.  I understand that.  My question is, did
 5  anybody in the family, or anywhere else, tell you not
 6  to talk about it?
 7  A.    That's a stupid question.  I would never talk
 8  about my abuse.  I would not be going out talking
 9  about my abuse.  It's just --
10  Q.    Yeah.  So my question is a little bit different
11  than that.  I understand that you didn't want to,
12  didn't have that desire.  I'm asking you did anybody
13  tell you not to.
14  A.    I don't think so.  I don't recall.
15  Q.    Did you know, prior to May of 2015, that Josh
16  had molested other of your sisters and maybe somebody
17  outside the family?
18  A.    Yes.
19  Q.    How did you learn about that?
20  A.    My parents.
21  Q.    Okay.  Is it true that Josh molested someone
22  after he had confessed to your parents that he had
23  molested others?
24  A.    I don't know.
25  Q.    Okay.  Do you recall Josh being sent away after
```

