# EXHIBIT C

Deposition of

# Jason W. Beaman, D.O., M.S., M.P.H., FAPA

September 30, 2021

Dillard

vs.

City of Springdale



```
 1              IN THE UNITED STATES DISTRICT COURT

 2          FOR THE WESTERN DISTRICT OF ARKANSAS

 3               FAYETTEVILLE DIVISION

 4   JILL DILLARD, JESSA SEEWALD, JINGER    ) Case No.
     VUOLO, and JOY DUGGAR                  ) 5:17-CV-05089-TLB
 5                                          )
          Plaintiffs,                       )
 6                                          )
        vs.                                 )
 7                                          )
     CITY OF SPRINGDALE; WASHINGTON COUNTY; )
 8   KATHY O'KELLEY; ERNEST CATE; RICK HOYT; )
     STEVE ZEGA; BAUER PUBLISHING COMPANY,   )
 9   L.P.; BAUER MAGAZINE, L.P.; BAUER MEDIA )
     GROUP, INC.; BAUER, INC; HEINRICH BAUER )
10   NORTH AMERICA, INC; BAUER MEDIA GROUP   )
     USA, LLC; and DOES 1-10, inclusive,     )
11                                          )
          Defendants.                       )
12   _____ )

13     DEPOSITION OF JASON W. BEAMAN, D.O, M.S., M.P.H., FAPA

14              via Zoom videoteleconference

15             Thursday, September 30, 2021

16

17


18         REPORTED BY: Derek L. Hoagland

19              CSR No. 13445

20             Job No. 10089281

21

22

23

24

25
```

**Jason W. Beaman, D.O., M.S., M.P.H., FAPA**

1              IN THE UNITED STATES DISTRICT COURT

2           FOR THE WESTERN DISTRICT OF ARKANSAS

3                   FAYETTEVILLE DIVISION

4   JILL DILLARD, JESSA SEEWALD, JINGER      ) Case No.
    VUOLO, and JOY DUGGAR                    ) 5:17-CV-05089-TLB
5                                            )
         Plaintiffs,                         )
6                                            )
       vs.                                   )
7                                            )
    CITY OF SPRINGDALE; WASHINGTON COUNTY;   )
8   KATHY O'KELLEY; ERNEST CATE; RICK HOYT;  )
    STEVE ZEGA; BAUER PUBLISHING COMPANY,    )
9   L.P.; BAUER MAGAZINE, L.P.; BAUER MEDIA  )
    GROUP, INC.; BAUER, INC; HEINRICH BAUER  )
10  NORTH AMERICA, INC; BAUER MEDIA GROUP    )
    USA, LLC; and DOES 1-10, inclusive,      )
11                                           )
         Defendants.                         )
12  _____ )

13

14

15  Deposition of JASON W. BEAMAN, D.O, M.S., M.P.H., FAPA,

16  taken before Derek L. Hoagland, a Certified Shorthand

17  Reporter for the State of California, commencing at

18  9:09 a.m., Thursday, September 30, 2021, via Zoom

19  videoteleconference.

20

21

22

23

24

25

```
 1      APPEARANCES:

 2       (ALL COUNSEL APPEARING VIA VIDEOTELECONFERENCE)

 3      COUNSEL FOR PLAINTIFF
        LARSON LLP
 4      555 South Flower Street, Suite 4400
        Los Angeles, California 90071
 5      BY:  STEVE E. BLEDSOE, ESQ.
             213.436.4888
 6           slarson@larsonllp.com

 7

        COUNSEL FOR DEFENDANTS RICK HOYT, ET AL., SEPARATE
 8                   WASHINGTON COUNTY
        JASON OWENS LAW FIRM, P.A.
 9      1023 Main Street, Suite 204
        Conway, Arkansas 72032
10      BY:  JASON E. OWENS, ESQ.
             501.764.4334
11           owens@jowenslawfirm.com

12

        COUNSEL FOR SPRINGDALE DEFENDANTS
13      HARRINGTON, MILLER, KIEKLAK,
        EICHMANN & BROWN, P.A.
14      4710 S. Thompson, Suite 102
        Springdale, AR 72764
15      BY:  R. JUSTIN EICHMANN, ESQ.
             479.751.6464
16           jeichmann@arkansaslaw.com

17      -- AND --

18      KENDALL LAW FIRM, PLLC
        3706 Pinnacle Hills Parkway, Suite 201
19      Rogers, Arkansas 72758
        BY:  SUSAN KELLER KENDALL, ESQ.
20           479.464.9828
             skk@kendalllawfirm.com

21

22

23

24

25
```

Jason W. Beaman, D.O., M.S., M.P.H., FAPA

```
 1    did in this case involved what's called a record review?

 2    A.       I think that's fair.

 3    Q.       What is a record review?

 4    A.       Well, as it relates to this case, I would say

 5    that I formed my opinion by relying on records and not

 6    through evaluating the plaintiffs.

 7    Q.       Does an assessment based on a record review

 8    contain any limitations, as opposed to an assessment --

 9    withdrawn.

10             Is it true that an assessment based on a record

11    review has significant limitations in arriving to

12    opinions supported by evidence that reaches the level of

13    medical or scientific certainty that is the standard for

14    a forensic examinations?

15    A.       I'm sorry.  You're going to have to repeat that.

16    Q.       Sure.  Well, does the fact that your opinion is

17    based on a record review rather than your own

18    examination and interview of the plaintiffs and tests

19    that you had conducted in connection with plaintiffs,

20    does that present any limitations in your ability to

21    give an opinion in this case?

22    A.       Well, it would depend on the opinions that I

23    would be asked to give.  So (inaudible) specific

24    opinion, I could tell you whether or not my not doing an

25    evaluation would limit that opinion.
```

```
 1    Q.      Anywhere in your expert report that you identify

 2    any limitations that -- on your opinion based on the

 3    fact that you did not conduct interviews or perform any

 4    testing in connection with the plaintiffs?

 5    A.      No.

 6    Q.      Do you believe that your opinions would be

 7    assisted or -- withdrawn.

 8            Do you believe that your ability to provide

 9    opinions in this case would be assisted if you were able

10    to interview the plaintiffs yourself and perform your

11    own testing?

12    A.      The -- you're asking about the opinions that I

13    listed in regards to Dr. Wynne's evaluation?

14    Q.      I'm talking about your ability to assess the

15    plaintiffs?

16    A.      But I did not assess the plaintiffs.

17    Q.      Okay.  So is it fair to say in this case, you

18    did not perform any sort of independent assessment of

19    plaintiffs, you just were retained to critique the work

20    that Dr. Wynne had done?

21    A.      To assess procedures, methods, evaluation, and

22    opinion of Dr. Wynne.

23    Q.      So you were retained to critique Dr. Wynne, not

24    to perform your own evaluation, correct?

25    A.      I was not retained to evaluate the plaintiffs.
```

1   Q.        Okay.  Are any of the plaintiffs in this case

2   suffering any sort of emotional trauma as a result of

3   the fact that the details of their sexual abuse were

4   published in the national media?

5   A.        Well, I think you would have to define emotional

6   trauma.  And I would say that Dr. Wynne's opinion in his

7   assessment was that they were suffering from emotional

8   trauma.

9   Q.        Okay.  But what's your definition of emotional

10  trauma?

11  A.        So trauma is a -- I think, a big word.  There

12  are different reactions that individuals have to a

13  situation, and it can be from momentary anxiety to

14  stress.  And then when you say "trauma," it's speaking

15  to a person's reaction to a specific situation.  So

16  emotional trauma, emotions are feelings, and so trauma,

17  that causes a change in your feelings.

18  Q.        Let me ask you this.

19            Have you formed an opinion one way or another

20  whether any of the plaintiffs in this case have suffered

21  emotional distress as a result of the release of the

22  details of their sexual molestation by their brother to

23  the national media?

24  A.        I have formed an opinion that that evidence does

25  or does not exist in Dr. Wynne's evaluation.

1    Q.       And that's not my question.  My question to you

2    is:  Have you formed an opinion one way or another

3    whether the plaintiffs in this case have suffered

4    emotional distress as a result of the release of the

5    details of their sexual molestation by their brother to

6    the national media?

7    A.       Again, "emotional distress" is kind of a vague

8    word.  If you want to tell me what your definition of

9    emotional distress is, I will tell you whether or not I

10   believe they have it.

11   Q.       Okay.  What's your definition of emotional

12   distress?

13   A.       So emotion, again, being feelings, distress

14   being a sense of being uncomfortable.

15   Q.       Okay.  Using your definition of emotional

16   distress, have you formed an opinion whether the

17   plaintiffs in this case have suffered emotional distress

18   as a result of the release of the details of their

19   sexual molestation by their brother to the national

20   media?

21   A.       I believe by their reports to Dr. Wynne that the

22   plaintiffs were uncomfortable and had a change in their

23   feelings when -- which is my definition of emotional

24   distress, so -- when the sexual abuse perpetrated on

25   them by their brother was disclosed too the media.

```
 1    Q.       What's your definition of emotional trauma?

 2    A.       It would be similar to emotional distress,

 3    distress being uncomfortable, but trauma being permanent

 4    or semipermanent damage.

 5    Q.       Have you formed an opinion whether any of the

 6    plaintiffs in this case have suffered emotional trauma

 7    as a result of the release of the details of their

 8    sexual molestation by their brother to the national

 9    media and to the public?

10    A.       By my definition of trauma, using a, you know,

11    prolonged damage, my opinion would be that they did not.

12    Q.       By the way, do you have any daughters?

13    A.       I do.

14    Q.       How many?

15             MS. OWENS:  Object to form.

16             THE DEPONENT:  Yeah, I don't know that I feel

17    comfortable talking about my family, and it's definitely

18    not related to my expert opinion.

19    BY MR. BLEDSOE:

20    Q.       I just want to see -- I want to see what your

21    life experience is.

22             You're married, right?

23    A.       Again, I don't know that my marital status

24    really has anything to do with my expert opinion.

25    Q.       Are you married?
```

1   challenges.  She continued to be harassed and haunted by

2   social media, and she characterized herself as vigilant,

3   emotionally on edge, and angry.

4   **Q.      Anything else?**

5   A.      Not that I can recall.

6   **Q.      What is the current -- there was a beep, so I'll**

7   **start over.  Withdrawn.**

8



**Dillard vs.
City of Springdale**



```
23    Q.        Anything else?

24    A.        Not that I can recall.

25
```





```
17   Q.      Okay.  Now, going back to page 8 of Exhibit 34,

18   under No. 2, it goes on to read:

19           "Dr. Wynne agreed that she over-reported.  He

20   just believed that she did it as a cry for help."

21           Do you see that?

22   A.      Yes.

23   Q.      So No. 2, because it's not up, but I remember

24   seeing that -- oh, it's still on the screen.  Can you

25   see it on the screen?
```

```
 1    that be being exposed to sexual violence?
 2    A.      It would be -- I'm sorry.
 3            Can you repeat your question?
 4    Q.      Sure.  If someone re-experiences sexual
 5    violence, is that tantamount to experiencing sexual
 6    violence?
 7    A.      Well, they experience the sexual violence to
 8    begin with, so it would be an extenuation of the sexual
 9    violence that they initially had.
10    Q.      How traumatic is re-experiencing sexual
11    violence?
12    A.      That certainly depends on the individual and the
13    circumstances regarding that assault.
14    Q.      The criteria in Section A says:
15            "Exposure to actual or threatened," and it goes
16    on to say, "sexual violence."
17            Do you see that?
18    A.      I do.
19    Q.      How would you compare re-experiencing sexual
20    violence to exposure to actual or threatened sexual
21    violence?
22    A.      I would find it to be an extenuation of the
23    sexual violence.
24    Q.      What do you mean when you say an extenuation of
25    the sexual violence?
```

Jason W. Beaman, D.O., M.S., M.P.H., FAPA

1    A.       That someone is sexually assaulted and there's

2    trauma associated with that, and if they reexperience

3    that through reminders or something like that, it is an

4    extenuation of the sexual violence that they had.  It's

5    a -- it's part of that initial sexual assault.

6    Q.       What is the definition of sexual trauma, if you

7    know?  And, frankly, we can put it up on the screen.  I

8    don't mean to -- this doesn't need to be a memory

9    contest.  I don't want to be unfair.  Let's do that.

10   Let me withdraw the question.

11            We are going to put something up on the screen,

12   an exhibit.  Hang on.  It's going to take me a minute to

13   find my copy of this exhibit.

14            All right.  I will represent to you that we have

15   put up the definition of sexual trauma as found in the

16   American Psychological Association Dictionary of

17   Psychology.

18            Do you see that?

19   A.       I do.

20   Q.       Do you know what the American Psychological

21   Association Dictionary of Psychology is?

22   A.       No.

23   Q.       Okay.  Well, we'll go forward anyways.

24            Do you see in the American Psychological

25   Association Dictionary of Psychology that the definition

```
 1                      REPORTER'S CERTIFICATE

 2    STATE OF CALIFORNIA              )    ss.

 3    I, DEREK L. HOAGLAND, CSR #13445, State of California,

 4    do hereby certify:

 5    That prior to being examined, the witness named in the

 6    foregoing proceeding was by me sworn to testify to the

 7    truth, the whole truth and nothing but the truth;

 8    That said proceeding was taken down by me by stenotype

 9    at the time and place therein stated and thereafter

10    transcribed under my direction into computerized

11    transcription.

12    I further certify that I am not of counsel nor attorney

13    for nor related to the parties hereto, nor am I in any

14    way interested in the outcome of this action.

15    Further, that if the foregoing pertains to

16    the original transcript of a deposition in a federal

17    case, before completion of the proceedings, review of

18    the transcript [ X ] was [  ] was not requested.

19    In compliance with section 8016 of the Business and

20    Professions Code, I certify under penalty of perjury

21    that I am a certified shorthand reporter with license

22    number 13445 in full force and effect.

23    Witness my hand this October 15, 2021.

24                                _____

25                                DEREK L. HOAGLAND, CSR #13445
```